JONATHAN A. SHAPIRO (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:   (650) 858-6101
Fax:   (650) 858-6100
jonathan.shapiro@wilmerhale.com

Attorney for Defendant Life Insurance
Company of the Southwest

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50,<br><br>Defendants. | Case No. **CV 10 4852 JCS**<br><br>**NOTICE OF REMOVAL**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to 28 U.S.C. §§ 1332, 1367, 1441, 1446, and 1453, Defendant Life Insurance Company of the Southwest ("LSW") removes the above-captioned civil action, formerly pending in the Superior Court of the State of California, County of San Francisco, No. 10-504020, to this Court. As grounds for removal, LSW states the following:

## Introduction

1.     Plaintiff Joyce Walker is a resident of San Diego, California. *See* Exhibit A, ¶ 16 (Complaint) ("Ex. A").

2.     Plaintiff Kim Bruce Howlett is a resident of San Diego, California. *See* Ex. A, ¶ 17.

1   3.    Plaintiff Muriel Lynn Spooner is a resident of San Diego, California. *See*
2   Ex. A, ¶ 18.

3   4.    Defendant LSW is, and was at the time this matter was filed,
4   incorporated under the laws of the State of Texas, with its principal place of business
5   in Dallas, Texas. *See* Ex. A, ¶ 19.

6   5.    On September 24, 2010, Plaintiffs filed the instant action in the Superior
7   Court of the State of California, County of San Francisco, although they did not serve
8   LSW until September 27, 2010. A copy of the Complaint is attached as Exhibit A.

9   6.    LSW now removes this action to this Court pursuant to 28 U.S.C. §§
10  1332, 1367, 1441, 1446, and 1453. This Court has removal jurisdiction over this
11  action on at least two separate bases, as set forth below.

12  **First Ground For Removal: Class Action Removal Jurisdiction**

13  7.    This Court has removal jurisdiction of this action pursuant to 28 U.S.C. §
14  1332(d) (federal jurisdiction over class actions as established by the Class Action
15  Fairness Act). Pursuant to § 1332(d)(2), a putative "class action" may be removed to
16  the appropriate United States District Court if (in relevant part): (a) the amount in
17  controversy with respect to the putative class exceeds $5,000,000, exclusive of interest
18  and costs, and (b) there is "minimum diversity" insofar as any member of the putative
19  class is a citizen of a state different from any defendant.

20  8.    This action is a putative "class action" within the meaning of §§
21  1332(d)(1)(B) and 1453(a) because Plaintiffs (i) seek to bring it "on behalf of
22  themselves and others similarly situated;" (*see* Ex. A ¶ 1) and (ii) seek to represent a
23  class of persons in a civil action filed under Cal. Code Civ. Proc. §§ 378-84 and Cal.
24  Bus. & Prof. Code 17200 et seq., which are "statute[s] or rule[s] of judicial procedure
25  authorizing an action to be brought by 1 or more representative persons as a class
26  action." The exclusions of 28 U.S.C. § 1332(d)(5)(A) do not apply. *See* Ex. A, ¶ 59
27  (there are "hundreds or thousands" of class members).

28

1   9.  There is more than $5,000,000 in controversy. Under § 1332(d)(6), the
2 amount in controversy in a putative class action is determined by aggregating the
3 amount at issue in the claims of all members of the putative class. Here, the three
4 named Plaintiffs alone claim compensatory damages in excess of $237,000. *See* Ex.
5 A, ¶ 43 ($81,366.21 alleged losses by Walker); ¶ 48 ($101,750 alleged losses by
6 Howlett,); ¶ 53 ($54,686.83 alleged losses by Spooner). The Complaint asserts that
7 there are "hundreds or thousands" of similarly situated persons in the class. *See* Ex.
8 A, ¶ 59.

9   10.  The requisite "minimum diversity" of citizenship exists under 28 U.S.C.
10 §§ 1332(d)(2) and (d)(7). Plaintiffs, all citizens of California, seek to represent a class
11 of LSW policyholders who are also citizens of California. *See* Ex. A, ¶ 56 (defining
12 putative class as policy holders in California). Defendant LSW is a citizen of Texas
13 because it is a corporation incorporated under the laws of Texas, with a principal place
14 of business in Dallas, Texas (*see* Ex. A, ¶ 19). 28 U.S.C. § 1332(c)(1). Thus, LSW is
15 a citizen of a state different from at least one putative class member (and indeed is a
16 citizen of a state different from all putative class members), and the requisite diversity
17 exists under 28 U.S.C. § 1332(d)(2)(A).

18   11.  Accordingly, this Court has jurisdiction over this matter pursuant to 28
19 U.S.C. § 1332(d), and it may be removed to this Court under 28 U.S.C. §§ 1441,
20 1446, and 1453(b).

21        **Second Ground For Removal:  Diversity Jurisdiction**

22   12.  This Court also separately has removal jurisdiction of this action pursuant
23 to 28 U.S.C. § 1332(a) (diversity jurisdiction where more than $75,000 is in
24 controversy).

25   13.  The required diversity under 28 U.S.C. § 1332(a)(1) exists because, as set
26 forth above, LSW is a citizen of Texas and Plaintiffs are citizens of California. *See*
27 supra ¶¶ 1-4.

28

1    14.    The amount in controversy exceeds $75,000, exclusive of interests and

2    costs, as further described below. *See* 28 U.S.C. § 1332.

3    15.    Plaintiff Walker alleges that she paid $224,000 in insurance premiums

4    and incurred a "net loss in excess of $81,366.21." Ex. A, ¶ 43. She also seeks

5    punitive damages and attorneys' fees. *See* Ex. A, ¶ 33.

6    16.    Plaintiff Howlett alleges that she paid $105,750 in insurance premiums

7    and that her loss exceeds that amount. Ex. A, ¶ 48. She also seeks punitive damages

8    and attorneys' fees. *See* Ex. A, ¶ 33.

9    17.    Plaintiff Spooner alleges that she paid $59,500 in insurance premiums

10   and incurred a "net loss in excess of $54,686.83." Spooner also seeks punitive

11   damages and attorneys' fees. *See* Ex. A, ¶ 33. Plaintiff's claim clearly exceeds the

12   required amount in controversy because, for purposes of determining the amount in

13   controversy, Ninth Circuit courts at least double the amount claimed as actual

14   damages where, as here, plaintiff also seeks recovery of punitive damages and

15   attorneys' fees. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir.

16   2007).

17   18.    The Court also has supplemental jurisdiction over Plaintiff Spooner

18   under 28 U.S.C. § 1367 regardless of whether she independently satisfies the amount

19   in controversy requirement because (as detailed above) Plaintiffs Walker and Howlett

20   satisfy the amount in controversy requirement. *See Exxon Mobil Corp. v. Allapattah*

21   *Services, Inc.*, 545 U.S. 546, 566-67 (2005) (supplemental jurisdiction over plaintiff

22   who does not meet amount in controversy requirement proper if other plaintiffs in

23   case do satisfy amount in controversy requirement).

24   19.    Accordingly, this Court has jurisdiction over this matter pursuant to 28

25   U.S.C. §§ 1332(a) and 1367, and it may be removed to this Court under 28 U.S.C. §§

26   1441 and 1446.

27

28

1 **Compliance With Procedural Requirements**

2    20.    Because this Notice of Removal was filed within 30 days of receipt of the
3 Complaint and Summons, each served upon LSW on September 27, 2010, this Notice
4 of Removal is timely under 28 U.S.C. § 1446(b).

5    21.    Removal to this District and Division is proper pursuant to 28 U.S.C. §
6 1441(a), since the U.S. District Court for the Northern District of California embraces
7 the place where the state court action was formerly pending.

8    22.    Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process,
9 pleadings and orders served upon LSW in the state court action are attached hereto.

10    23.    Pursuant to 28 U.S.C. § 1446(d), LSW has served this Notice of Removal
11 on the Plaintiff and has filed a Notice of Defendant's Notice of Removal with the
12 Superior Court.

13    WHEREFORE, Defendant LSW prays that this action be removed to this Court.

14

15 **DEMAND FOR JURY TRIAL**

16    LSW hereby demands a trial by jury in the above-captioned matter.

17

18

19

20

21

22

23

24

25

26

27

28

1

Respectfully submitted,

2

3

LIFE INSURANCE COMPANY OF THE
SOUTHWEST

4

5

By its attorney:

6

7

Jonathan A. Shapiro (257199)

8

WILMER CUTLER PICKERING HALE AND
DORR LLP

9

950 Page Mill Road

10

Palo Alto, CA 94304
Tel:   (650) 858-6101

11

Fax:   (650) 858-6100

12

jonathan.shapiro@wilmerhale.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **PROOF OF SERVICE**

2
3

    I am employed in the County of Santa Clara, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 950 Page Mill Road, Palo Alto, California 94304.

4

    On October 26, 2010, I served the foregoing document(s) described as:

5

### **NOTICE OF REMOVAL AND DEMAND FOR JURY TRIAL**

6

on each interested party, as stated on the attached service list.

7
8
9

☐    **(BY ELECTRONIC MAIL)**  I caused the foregoing document to be served electronically by electronically mailing a true and correct copy through Wilmer Cutler Pickering Hale and Dorr LLP's electronic mail system to the e-mail address(es), as set forth below.

10
11
12

☐    **(BY OVERNIGHT DELIVERY SERVICE)**  I served the foregoing document by Federal Express Overnight Express, an express service carrier which provides overnight delivery, as follows.  I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the attached service list, with fees for overnight delivery paid or provided for.

13
14

☐    (BOX DEPOSIT)  I deposited such envelopes or packages in a box or other facility regularly maintained by the express service carrier.

15
16
17
18
19

☒    By putting a true and correct copy thereof, together with a signed copy of this declaration in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

20

    I declare under penalty of perjury under the laws of the State of California that the foregoing

21

is true and correct.

22

    Executed on October 26, 2010, at Palo Alto, California.

23
24

_____
Latricia Baltodano

25
26
27
28

-7-
NOTICE OF REMOVAL

1

2

**SERVICE LIST**

| | |
|---|---|
| Charles N. Freiberg<br>Brian P. Brosnahan<br>Jacob N. Foster<br>KASOWITZ, BENSON, TORRES & FRIEDMAN LLP<br>101 California Street, Suite 2300<br>San Francisco, CA 94111<br><br>Harvey R. Levine<br>Craig A. Miller<br>Levine & Miller<br>550 West C Street, Suite 1810<br>San Diego, CA 92101-8596 | Attorneys for Plaintiffs |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


. CT Corporation

LAW DEPARTMENT

2010 SEP 29 A 11: 0

RECEIVED

**Service of Process
Transmittal**
09/27/2010
CT Log Number 517346636

|||||||||||||||||||||||||||||||||||||||||||||

**TO:** Rhonda Miller
National Life Insurance Company
Law Dept M500, One National Life Drive
Montpelier, VT 05604-

**RE:** **Process Served in California**

**FOR:** Life Insurance Company of the Southwest (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Joyce Walker, et al., Pltfs. vs. Life Insurance Company of the Southwest, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Stipulation Form, Statement Form, Notice, Cover Sheet(s), Complaint, Demand for Jury Trial |
| **COURT/AGENCY:** | San Francisco County, Superior Court, CA<br>Case # CGC10504020 |
| **NATURE OF ACTION:** | Insurance Litigation - Class Action - Unlawful Business Practices - Fradulent marketing and sale of indexed universal life insurance policies |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/27/2010 at 12:35 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // February 25, 2010 at 9:00 a.m. - Case Management Conference // no later than 15 days bfore the Case Management Conference - file and serve a Case Management Statement |
| **ATTORNEY(S) / SENDER(S):** | Brian P. Brosnhan<br>Kasowitz, Benson, Torres & Friedman LLP<br>101 California Street<br>Suite 2300<br>San Francisco, CA 94111<br>415-421-6140 |
| **REMARKS:** | Please Note: Page(s) 2 of 2 of the Civil Case Cover Sheet(s) not received with process at time of service. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 790359276501 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of 1 / DH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

COPY    12:35 AM 9.27. [b]

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>**(AVISO AL DEMANDADO):**<br><br>Life Insurance Company of the Southwest , *a Texas Corporation*<br><br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**<br><br>Joyce Walker, Kim Bruce Howlett and Muriel Spooner, on behalf of themselves and others similarly situated | **FOR COURT USE ONLY**<br>**(SOLO PARA USO DE LA CORTE)**<br><br>LAW DEPARTMENT<br><br>2010 SEP 29  A 11: 08<br><br>RECEIVED |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es:)  Superior Court of San Francisco<br><br>Civic Center Courthouse<br>400 McAllister Street, San Francisco, CA 94102 | **CASE NUMBER:**<br>(Número del Caso):<br>**CGC-10-504020** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Brian P. Brosnahan, KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,(415) 421-6140
101 California Street, Suite 2300, San Francisco, CA 94111

| | | | | |
|---|---|---|---|---|
| DATE:<br>(Fecha)  **SEP 2 4 2010** | CLERK OF THE COURT<br>Clerk, by<br>(Secretario) | | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify):  **LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas Corporation**

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

# Alternative Dispute Resolution (ADR) Program Information Package

LAW DEPARTMENT

2010 SEP 29  A 11: 08

RECEIVED

# Alternatives to Trial

# There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1)   Judicial Arbitration
2)   Mediation
3)   The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration.  If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision.  In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  A case is ordered to arbitration after the Case Management Conference.  An arbitrator is chosen from the Court's Arbitration Panel.  Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference.  Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision.  Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations.  The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case.  The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### *Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by BASF pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $250 per party administration fee, parties select a specific mediator from the list of approved mediation providers or BASF will help them select an appropriate mediator for the matter. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at **www.sfbar.org/mediation** or you may call BASF at 415-982-1600.

### *Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**<br><br>**DEPARTMENT  212** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**　　☐ **Mediation Services of BASF**　☐ **Judicial Mediation**
☐ **Binding arbitration**　　　　　　　　　　　　　　　　　　　Judge _____
☐ **Non-binding judicial arbitration**　　　　　　　　　　　　　Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:　·

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  05/10　　　　　　　　**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: |
|---|

Date:                    Time:            Dept.:          Div.:          Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2009] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courtinfo.ca.gov |
|---|---|---|

**CM-110**

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

**· CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**10. d.** The party or parties are willing to participate in *(check all that apply):*

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify):*

  **e.** ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  **f.** ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  **g.** ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

  ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

  **a.** ☐ Insurance carrier, if any, for party filing this statement *(name):*

  **b.** Reservation of rights: ☐ Yes ☐ No

  **c.** ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

  ☐ Bankruptcy ☐ Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

  **a.** ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

    ☐ Additional cases are described in Attachment 14a.

  **b.** ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other Issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| | ► | |
|---|---|---|
| _____ | | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

| | ► | |
|---|---|---|
| _____ | | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Page 4 of 4



# Superior Court of California
## County of San Francisco



**HON. JAMES J. MCBRIDE**
PRESIDING JUDGE

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable Gail Dekreon | The Honorable A. James Robertson, II |
| The Honorable Ernest H. Goldsmith | The Honorable Jeffrey S. Ross |
| The Honorable Curtis Karnow | The Honorable John K. Stewart |
| The Honorable Charlene P. Kiesselbach | The Honorable Richard Ulmer |
| The Honorable Tomar Mason | The Honorable Monica F. Wiley |
| The Honorable Anne-Christine Massullo | The Honorable Mary E. Wiss |
| The Honorable Ronald Quidachay | |

Parties interested in Judicial Mediation should file the Stipulation to Alternative Dispute Resolution form indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated on the form but assignment to a particular judge is not guaranteed. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

03/2010 (rw)

CASE NUMBER: CGC-10-504020  JOYCE WALKER, et al VS. LIFE INSURANCE COMPANY O

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | | |
|---|---|---|
| **DATE:** | **FEB-25-2011** | LAW DEPARTMENT |
| **TIME:** | **9:00AM** | · 2010 SEP 29  A 11: 09 |
| **PLACE:** | **Department 212** | RECEIVED |
| | **400 McAllister Street** | |
| | **San Francisco, CA  94102-3680** | |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
without an appearance at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.
(SEE LOCAL RULE 4)**

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

**See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges**

# COPY

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>KASOWITZ, BENSON, TORRES & FRIEDMAN LLP<br>CHARLES N. FREIBERG (SBN 70890), BRIAN P. BROSNAHAN (SBN 112894)<br>JACOB N. FOSTER (SBN 250785)<br>101 California St., Ste. 2300, San Francisco, CA 94111<br>TELEPHONE NO.: (415) 421-6140   FAX NO.: (415) 398-5030<br>ATTORNEY FOR *(Name):* Joyce Walker, Kim Bruce Howlett and Muriel Spooner | FILED<br>SAN FRANCISCO COUNTY<br>SUPERIOR COURT<br><br>2010 SEP 24  AM 1: 05<br><br>CLERK OF THE COURT<br>BY: ___ ELLIS QUINN |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Francisco, CA 94102<br>BRANCH NAME: Civic Center | 2010 SEP 29  A II: 09 |
| CASE NAME:<br>Walker, Howlett, Spooner, et al. v. Life Insurance Co. of the Southwest | |

| CIVIL CASE COVER SHEET<br>☑ Unlimited   ☐ Limited<br>(Amount         (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CGC-10-504020<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☑ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 24, 2010
Brian P. Brosnahan
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

# COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP<br>CHARLES N. FREIBERG (SBN 70890), BRIAN P. BROSNAHAN (SBN 112894)<br>JACOB N. FOSTER (SBN 250785)<br>101 California St., Ste. 2300, San Francisco, CA 94111    LAW DEPARTMENT<br>TELEPHONE NO: (415) 421-6140    FAX NO: (415) 398-5030<br>ATTORNEY FOR (Name): Joyce Walker, Kim Bruce Howlett and Muriel Spooner | FILED<br>SAN FRANCISCO COUNTY<br>SUPERIOR COURT<br><br>2010 SEP 24   AM 1: 05<br><br>CLERK OF THE COURT<br>BY:<br>_____<br>DEPUTY CLERK |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco |
|---|
| STREET ADDRESS: 400 McAllister Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Francisco, CA 94102 |
| BRANCH NAME: Civic Center |

| CASE NAME:<br>Walker, Howlett, Spooner, et al. v. Life Insurance Co. of the Southwest |  |
|---|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-10-504020<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [✓] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify):
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 24, 2010

Brian P. Brosnahan
(TYPE OR PRINT NAME)            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

# COPY

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2010 SEP 24  AM 1: 05

CLERK OF THE COURT

2010 SEP 29  A 11:009

CASE MANAGEMENT CONFERENCE SET

FEB 2 5 2011 -9:00 AM

DEPARTMENT 212

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

LAW DEPARTMENT

RECEIVED

LEVINE & MILLER
HARVEY R. LEVINE (SBN 61879)
CRAIG A. MILLER (SBN 116030)
550 West C Street, Suite 1810
San Diego, CA 92101-8596
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiffs,
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### CITY AND COUNTY OF SAN FRANCISCO

CGC-10-504 020

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and Does 1-50, <br><br> Defendant. | **CLASS ACTION** <br><br> CASE NO.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Action Filed: |

Complaint

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

Plaintiffs Joyce Ann Walker, Kim Bruce Howlett, and Muriel Lynn Spooner (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, allege, upon knowledge as to their own acts and otherwise upon information and belief, as follows:

## OVERVIEW

1.      This class action seeks to redress the unfair, unlawful, and fraudulent business acts and practices of defendant Life Insurance Company of the Southwest ("LSW" or "Defendant") with respect to its indexed universal life insurance policies. LSW sells indexed universal life insurance policies, including the SecurePlus Provider policy and the SecurePlus Paragon policy, to individuals throughout California. LSW represents that the policies are retirement or investment vehicles and deceptively presents projected investment gains that will purportedly provide the policyholder with significant yearly income for life. LSW does not specifically disclose and identify the cost of buying and maintaining the policies but instead conceals these very substantial costs within the projected earnings of the policies. LSW also does not disclose material risks that the policies will not perform as illustrated. As a result of these misrepresentations and nondisclosures, policyholders are induced to invest substantial assets in the policies, in many cases by cashing out their retirement accounts or selling their homes. Once policyholders realize that the policies are not what LSW represented, they are unable to take their money out of the policies without paying enormous surrender charges.

2.      SecurePlus Provider and SecurePlus Paragon are equity-indexed universal life insurance policies that have a fixed interest rate component as well as an indexed account option. Life insurance is designed to provide a death benefit to a designated beneficiary upon the death of the insured person. Indexed universal life insurance policies allow a policyholder also to accumulate cash value based on the performance of certain stock indices. The indexed account option accumulates cash value in the policy based on the performance of the Standard & Poor's (S&P) 500. The actual interest credited to the policy's cash value is determined by changes in the S&P 500, the "participation rate," (i.e., the percentage at which the policyholder is given

1 │ credit for gains in the S&P 500), and any cap that may be imposed on the policyholder's gain in

2 │ a single year.

3 │     3.     LSW engaged in unlawful, unfair, and fraudulent business acts and practices by

4 │ developing, encouraging, and implementing a scheme to sell the policies. LSW's unlawful

5 │ scheme involves marketing the policies as retirement or investment vehicles, concealing the true

6 │ cost of the policies from policyholders, concealing the risks that the policies will not perform as

7 │ represented, and misrepresenting the safety and security of the policies as investment or

8 │ retirement vehicles. The centerpiece of LSW's deceptive scheme is the use of policy

9 │ illustrations that were created by LSW. The illustrations are distributed to prospective

10 │ policyholders through agents or brokers who rely on LSW's illustrations to sell the policies.

11 │     4.     In perpetuating its unlawful scheme, LSW disregards and violates the express,

12 │ detailed provisions of the California Insurance Code that govern the use of life insurance

13 │ illustrations. Insurance Code Section 10509.955(b)(1) states, "When using an illustration in the

14 │ sale of a life insurance policy, an insurer or its producers or other authorized representatives shall

15 │ not do any of the following: . . . (1) Represent the policy as anything other than a life insurance

16 │ policy." LSW's marketing scheme and its policy illustrations violate the statute by touting the

17 │ policies as retirement or investment vehicles.

18 │     5.     The "Life Insurance Illustration" ("Illustration") is copyrighted by LSW. A cover

19 │ page used by LSW describes the policies as follows:

# LSW

Life Insurance Company of the Southwest

A Revolutionary Concept in Financial Independence

## Revolutionary Life

*Life Insurance You Don't Have to Die to Use*

Since the insured person must die in order to use the main feature of all life insurance, LSW is

necessarily marketing the policies as something other than a life insurance policy, i.e., a

retirement or investment plan. Interior pages of the Illustration focus on "Retirement Income"

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1  and the purportedly superior investment features of the policies. LSW represents that the

2  policies will provide "[c]ash accumulation for additional retirement income, college expenses or

3  to meet emergencies." LSW also uniformly represents that the policies are retirement or

4  investment plans that provide policyholders with financial independence through streams of

5  income, and this, rather than any life insurance benefits, is the primary basis on which the

6  policies are sold. LSW markets the policies as retirement or investment vehicles without regard

7  to whether the policyholder actually wants or needs life insurance.

8       6.     The Illustration includes deceptive presentations of two sets of projected policy

9  values (labeled the "guaranteed basis values" and "current basis values"), and these presentations

10  are virtually the sole focus of the illustrations. Indeed, the specific and significant expenses that

11  will be incurred by the policyholder because the policies are life insurance policies are almost

12  entirely omitted from the Illustration. Instead, these charges are deceptively embedded in the

13  policy value illustrations, effectively hiding the costs from policyholders. The result is that the

14  disclosures focus almost entirely on the earnings or income generation capabilities of the policies

15  and not on the cost of the insurance features of the policies. LSW fails to separately identify and

16  disclose, among other things, the following expenses that are charged annually or monthly by

17  LSW: the monthly cost of insurance charge; premium expense charge; the monthly percent of

18  accumulated value charge (for the SecurePlus Paragon policy); and the monthly policy fee.

19  LSW's failure to separately identify and disclose these expenses is particularly misleading in

20  light of its disclosure of a "Monthly Administrative Charge" and its statement that the policies

21  are subject to only "One Policy Fee." While a reasonable policyholder would believe that the

22  "Monthly Administrative Charge" includes all expenses that will be charged by LSW, in fact the

23  "Monthly Administrative Charge" does not include any of the expenses described above.

24       7.     Projected index crediting from gains in the S&P 500 is highly dependent on

25  nonguaranteed variables, including market performance, participation rates, index earnings caps,

26  and allocation of policy premiums among different crediting strategies. Policy expenses can

27  render illusory any projected gains from indexing, and LSW's illustrations, by concealing these

28  expenses, makes the policies appear to be much more favorable investments than they are in

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1    reality. Unless credited index gains exceed administrative and insurance costs, the cash values of

2    the policies are depleted. While LSW deceptively represents that the policies will remain in

3    force indefinitely, and universal life insurance is touted to provide policyholders with permanent

4    life insurance, depletion of cash value will ultimately cause the policies to lapse. Though LSW

5    markets the policies as providing retirement income through policy loans, the Illustration does

6    not disclose that policy lapse exposes the policyholder to liability for ordinary income taxes on

7    any policy loans outstanding at the time of lapse. Such liability could be enormous and in many

8    or most cases would be realized and incurred only *after* the loan proceeds needed to pay the tax

9    had already been spent.

10      8.    Although the policies are marketed under the "SecurePlus" brand name as safe

11    and secure investment or retirement vehicles, LSW conceals material risks that the policies will

12    not perform as illustrated but will, instead, lapse unless additional money is paid into the

13    policies. LSW conceals these risks by concealing the substantial policy expenses discussed

14    above and by projecting non-guaranteed values based only upon index crediting scenarios that

15    assume essentially constant rates of return derived from the S&P 500. Although LSW knows

16    that the rates of return from index crediting tied to the S&P 500 will be highly variable, it

17    conceals the substantial risks of policy failure that such variability introduces given LSW's

18    deduction of substantial cost of insurance and administrative expenses, which occur whether or

19    not the S&P 500 experiences positive or negative returns. Cost of insurance deductions increase

20    if the accumulated value of the policy decreases, so the expenses that LSW charges to the policy

21    tend to increase if the S&P 500 performs poorly, which in turn reduces the accumulated value of

22    the policy, thus reducing the principal amount available to generate earnings should there be an

23    improvement in the performance of the S&P 500.

24      9.    LSW also markets and sells the policies on the basis that they will provide

25    guaranteed returns to policyholders, even if the projected returns are not realized. However, the

26    guaranteed values used in the Illustration are misrepresented as annual guarantees when in fact

27    they are calculated upon policy termination (or in five-year intervals in the case of the

28    SecurePlus Provider) on the basis of *average* annual guarantees, and they are further deceptive

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1  and misleading because the guaranteed values are calculated based on net premiums (i.e., after
2  deduction of all of the costs described above, which are not specifically identified and disclosed).
3  Though LSW knows that policyholders will not receive an annual guarantee, it fails to disclose
4  this material information to policyholders in the Illustration. This is particularly misleading
5  because policyholder gains in certain indexed account options are subject to an annual cap (e.g.,
6  a limit of 10% even if the S&P 500 rose 20%), but the minimum floor provided by the
7  guaranteed values is not provided annually. The Illustration also fails to disclose that even the
8  "guaranteed" values are not actually guaranteed but are dependent on LSW's claims-paying
9  ability.

10    10.    The Illustration created by LSW obfuscates the nature and economic terms of the
11  policies. The terms of the policies and their projected performance are incomprehensible to a
12  typical policyholder because of the misleading and insufficient information provided in the
13  Illustrations.

14    11.    LSW's misrepresentations and omissions induce policyholders to purchase the
15  policies. Policyholders reasonably rely on LSW's representations and nondisclosures and on the
16  expert and superior knowledge of LSW. LSW deliberately misrepresents the nature and
17  economic terms of the transaction through the Illustrations. For example, Plaintiff Joyce Walker
18  paid $224,000 in premiums before she discovered that her policy was not the reasonably safe and
19  secure retirement or investment vehicle that had been represented to her. Plaintiff Kim Howlett
20  paid $105,750 and Plaintiff Muriel Spooner paid $59,500, before they made that discovery.

21    12.    Any policyholder who purchases one of the policies is in a precarious situation.
22  The projected gains are contingent upon numerous nonguaranteed variables, but the costs of the
23  policies are invariably significant. These costs significantly diminish the accumulation of value
24  in the policies, regardless of whether the projected gains are realized. In the event that a
25  policyholder discovers LSW's misrepresentations and omissions, she must pay a huge "surrender
26  charge" if she wishes to terminate the policies.

27    13.    As detailed below, LSW's unlawful scheme violates the detailed legal
28  requirements of the California Insurance Code that govern the regulation of life insurance. LSW

1 violates Insurance Code Section 10509.955(b)(1) by selling the policies as retirement or

2 investment plans rather than on the basis of their life insurance benefits. The Illustrations

3 provided by LSW also violate the express requirements of Insurance Code Sections

4 10509.955(b)(6), 10509.955(b)(2), 10509.955(b)(3), 10509.950; 10509.955; 10509.971;

5 10509.972, 10509.956(a)(13), and 10509.956(b)(4) by, among other things, misrepresenting the

6 costs of the policies, misrepresenting the risks, safety, and security of the policies, treating policy

7 lapse in a misleading manner, deceptively presenting the guaranteed values, failing to define key

8 terms, and implying that nonguaranteed elements are annual guarantees.

9     14.    LSW's conduct in marketing and selling the policies also violates California's

10 common law of fraudulent concealment and California's Unfair Competition Law (Cal. Bus. &

11 Prof. Code Section 17200, et seq.). As a result of LSW's unlawful, unfair, and fraudulent

12 business acts and practices, Plaintiffs and the class have incurred damages and have suffered

13 injury in fact and lost money or property and are entitled to compensatory and punitive damages

14 as well as declaratory, injunctive, and restitutionary relief as set forth below.

15 **VENUE**

16     15.    Venue in this county is proper under California Code of Civil Procedure

17 Section 395(a) because the Defendant does not reside in California, has not designated a

18 principal business office in California, and Plaintiffs designated this county in their Complaint.

19 **THE PARTIES**

20     16.    Plaintiff Joyce Walker (formerly, Joyce Schmidtbauer) is a resident of San Diego,

21 California.

22     17.    Plaintiff Kim Bruce Howlett is a resident of San Diego, California.

23     18.    Plaintiff Muriel Lynn Spooner is a resident of San Diego, California.

24     19.    Defendant Life Insurance Company of the Southwest is, and at all relevant times

25 was, a corporation organized and existing under the laws of the State of Texas with its principal

26 place of business in Dallas, Texas.

27     20.    Plaintiffs are currently unaware of the identities of Does 1 through 50, who were

28 the agents of LSW or who conspired with LSW to commit the misconduct described herein.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## LSW'S UNFAIR, UNLAWFUL AND FRADULENT MARKETING AND SALE OF INDEXED UNIVERSAL LIFE POLICIES

21.     Plaintiffs are informed and believe and based thereon allege that, at all relevant times, LSW was an issuer of life insurance policies, including so-called indexed or "equity-indexed" universal life insurance policies.

22.     Life insurance generally refers to a form of insurance that pays on the death of the insured person, who is typically the policyholder. The purpose of life insurance is to provide a death benefit to a designated beneficiary upon the death of the insured. Equity-indexed universal life insurance policies allow a policyholder to allocate premium payments towards the investment or cash value of the policy and accumulate cash value based on the performance of certain stock indices.

23.     The California Insurance Code imposes detailed requirements on the use of life insurance illustrations, including prescribing minimum standards to be followed when illustrations are used, and specifying disclosures that are required in connection with illustrations. Insurance Code Section 10509.955(b)(1) states, "When using an illustration in the sale of a life insurance policy, an insurer or its producers or other authorized representatives shall not do any of the following: . . . (I) Represent the policy as anything other than a life insurance policy." LSW's marketing scheme, which uses the policy illustrations as its centerpiece, violates Section 10509.955(b)(1).

24.     Plaintiffs are informed and believe and based thereon allege that LSW developed, marketed, and sold equity-indexed universal life insurance policies, including SecurePlus Provider and SecurePlus Paragon. SecurePlus Provider and SecurePlus Paragon provide policyholders with an indexed account option that is used to allocate premium payments to accounts whose performance is tied to the S&P 500. The actual interest credited to the policies' cash value is determined by changes in the S&P 500, the "participation rate," (i.e., the percentage at which the policyholder is given credit for gains in the S&P 500), and any cap that may be imposed on the policyholder's gain in a single year.

25.     Plaintiffs are informed and believe and based thereon allege that, at all relevant

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1 times, LSW developed, marketed, and sold the policies in the State of California.

2      26.    LSW markets and sells the policies through agents or brokers who rely upon an

3 Illustration format that is provided by LSW. Through its unlawful, unfair, and fraudulent

4 business acts and practices, LSW induces policyholders to purchase the policies by marketing

5 them as an investment or retirement plan and misrepresenting their material costs and risks.

6 Specifically, LSW, through its standardized Illustration, misrepresents to policyholders that their

7 policies will provide them with retirement income and financial independence. The Illustration

8 markets the policies primarily as an investment or retirement vehicle and not primarily as an

9 insurance policy. For example, a cover page used on the Illustration states:

A Revolutionary Concept in Financial Independence

# Revolutionary Life

*Life Insurance You Don't Have to Die to Use*

Interior pages of the Illustration emphasize how the policies will generate "Retirement Income,"

"Cash accumulation," and **"financial peace of mind."** These references tout the policies as

retirement or investment plans.

     27.    LSW conceals and fails to disclose that a substantial part of the premiums paid by

the policyholder will not be invested in the indexing option and instead will be used to pay an

array of administrative or insurance charges. LSW further conceals and fails to disclose that the

premiums used to pay these costs will not return any investment income. The Illustration does

not disclose the cost of insurance charges of the plan or most administrative costs of the plan;

these are embedded in the projected policy values but are not separately identified or disclosed.

LSW conceals and fails to disclose, among others, the following costs that are charged annually

or monthly by LSW:

    a.  Monthly cost of insurance charge (this cost varies with the policyholder, the policyholder's age, and the accumulated value of the policy. By way of example, in Mr. Howlett's case, the costs deducted were approximately $480 per month);

    b.  Premium expense charge (6% of the premiums paid by Mr. Howlett and Ms. Spooner, and 5% of the premiums paid by Ms. Walker);

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

c. The monthly percent of accumulated value charge (This charge of .04% applies to the SecurePlus Paragon policy); and a

d. Monthly policy fee of $5 per month.

28.     LSW also made misleading partial disclosures by disclosing a "Monthly Administrative Charge" and by stating that the policy is subject to only "One Policy Fee." Since the "Monthly Administrative Charge" is the only charge disclosed in the Illustration and the policy is stated to be subject to only "One Policy Fee," a reasonable policyholder would assume that the "Monthly Administrative Charge" includes all costs that will be deducted from the policy values. In fact, the Monthly Administrative Charge does not include any of the expenses listed above, all of which are charged by LSW in addition to the Monthly Administrative Charge.

29.     LSW's misrepresentations and omissions regarding the cost of the policies also make the policies appear to be more attractive investments than they are in reality. For example, the premium expense charge is comparable to a front-end mutual fund load because such loads are deducted at the outset and reduce, often by approximately 5%, the amount invested. Whereas mutual fund loads are disclosed to buyers, LSW does not disclose the premium expense charge. As a result, policyholders are unable to evaluate the relative costs of the policies *vis a vis* other investments such as mutual funds.

30.     In addition to failing to disclose the expenses of the policies, the Illustrations also conceal material risks that the policies will not perform as illustrated and misrepresent the safety and security of the policies as retirement or investment vehicles. Such concealment and misrepresentation is effected in several ways in addition to concealment of policy expenses. First, the Illustrations are extremely complex and are incomprehensible to the typical policyholder. Second, key terms essential to the projections of non-guaranteed values (i.e., "Current Basis A" and "Current Basis B") are not defined. Third, the Illustrations project non-guaranteed values using an essentially constant rate of return, without year-to-year variability. The Illustrations suggest that it is reasonable to project non-guaranteed values this way because the projected rates of return are less than the historical average returns of the S&P 500. But

1  LSW conceals from policyholders the fact – of which it is well aware – that policy performance
2  is highly dependent on the variability of rates of return.  Because policy expenses such as cost of
3  Insurance charges and administrative costs are being deducted from the accumulated value of the
4  policy each year, variability in annual rates of return can have a very substantial impact on policy
5  value regardless of the *average* rate of return.  This effect is aggravated by the fact that cost of
6  insurance deductions increase with the "net amount at risk," which is the difference between the
7  death benefit and the accumulated value of the policy.  This means that as the accumulated value
8  of a policy decreases, cost of insurance deductions increase, which further drives down the
9  accumulated value of the policy.  This in turn drives up cost of insurance deductions.

10

11     31.     Policy expenses, including cost of insurance charges, are deducted from
accumulated policy values even if the policy earns low or no returns in a particular year.  A
12  succession of low return years can produce a downward spiral in policy value from which the
13  policy cannot recover – leading to policy lapse and the loss of the policyholder's entire
14  investment in the policy.  This risk is especially great as the policyholder ages because 1) the
15  cost of insurance charge also increases with age (because mortality risk increases with age); and
16  2) policy withdrawals taken to provide living expenses after retirement reduce accumulated
17  policy value and thus reduce the amount that can generate policy earnings.  A policy that is
18  sufficiently well funded to provide retirement income in a scenario with constant rates of return
19  may lapse or "crater" if rates of return are variable – even if the *average* rate of return is the
20  same in the two scenarios.  The Illustration also does not disclose that the risk of policy failure
21  increases if the policyholder takes advantage of the "flexible premium" option under the policy
22  to reduce the amount paid in.
23

24     32.     LSW is aware that annual rates of return will not resemble the constant, average
25  rates of return depicted in its Illustrations but will instead be highly variable.  But LSW does not
26  disclose the risks that variable rates of return pose for the safety and security of the policies as
27  retirement or investment vehicles.  Instead, LSW conceals those risks by depicting only constant
28  rate of return scenarios, which are inherently misleading.  A policy may have a substantial risk of

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

failure, but still appear to be reasonably safe and secure based on LSW's misleading Illustrations depicting only constant return scenarios. Thus, although the policies are called "SecurePlus" policies and marketed as safe and secure investment or retirement vehicles, the riskiness of the policies is concealed from policyholders.

33.     The Illustrations also treat the question of policy lapse in a deceptive manner by failing to use an asterisk, as required by California Insurance Code Section 10509.956(a)(13), to draw attention to the fact that the policies will lapse if further premiums are not paid.  Instead, the Illustration indicates that policyholders would still be charged $0 in premiums.  As a result of these misrepresentations and omissions, policyholders are deceived to believe that the planned periodic premium payments are sufficient to allow policyholders to continue the policies in force, and withdraw money from the cash value of the policies, without paying any further premiums, even after the policies have lapsed due to nonpayment of premiums.

34.     In addition to misrepresenting and concealing the risk of policy lapse, the Illustrations also conceal the consequences of policy lapse for policyholders who have taken out loans against the cash value of their policies.  The Illustrations do not disclose that if the policyholder borrows against any cash value built up in the policy, and then the policy lapses, the policyholder will owe income taxes – at tax rates charged on ordinary income rather than capital gains – on policy earnings borrowed from the policy.

35.     The Illustrations also misrepresent the guaranteed rate of return under the policies. The Illustrations falsely represent that policyholders will be entitled to a guaranteed annual rate of return.  The representation is false and misleading because the "guaranteed" rate of return is presented as a guaranteed annual rate of return but is in fact calculated upon policy termination (or in five-year intervals in the case of the SecurePlus provider) on the basis of an *average* rate over the lifetime of the policy.  The misrepresentation of the guaranteed values as annual guarantees is particularly misleading because the cap on gains in certain indexed account options applies annually.  A reasonable policyholder would believe that if the policy guarantees, by way

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  of example 2.5%, that the policy will in fact provide him with a 2.5% gain even in a year where

2  the S&P 500 is flat.  Not so.  If the policy was in effect for four years in which the S&P 500 had

3  zero gains for the first three years and a 10% gain in the fourth year, the policyholder would not

4  receive her guarantee of 2.5% for years one, two, and three, and a 10% gain in year four, for a

5  total gain of 17.5%.  Instead, the policyholder would only receive a 10% gain because the

6  average gain of 2.5% equals or exceeds the guaranteed rate of return over the four year lifetime

7  of the policy.[1]  The guaranteed values are further deceptive and misleading because the

8  guaranteed values are calculated based on net premiums (i.e., after deduction of all of the costs

9  described above, which are undisclosed), and because they are dependent on the claims-paying

10  ability of LSW.

11   

     36.  The Illustrations also make the policies appear to be more attractive than they

12  actually are because the participation rates and cap rates used to project policy performance can

13  be reduced by LSW at any time.  Thus, if the S&P 500 has a succession of good years,

14  policyholders may not reap all of the anticipated benefits of that success because LSW can

15  reduce participation and/or cap rates, resulting in lower earnings being credited to the policies.

16   

17       37.  LSW developed, encouraged, and implemented its scheme with disregard for, and

18  in violation of, the California Insurance Code.  The provisions of the California Insurance Code

19  violated by LSW are designed to prevent the deceptive and misleading use of life insurance

20  illustrations and include:

21   

     a.  Insurance Code Section 10509.955(b)(1), which states, "When using an

22  illustration in the sale of a life insurance policy, an insurer or its producers or other authorized

23  representatives shall not do any of the following: . . . (1) Represent the policy as anything other

24  than a life insurance policy."  LSW violates this provision by developing, encouraging, and

25   

26   

27  [1] This example uses simple interest instead of compound interest for ease of presentation. Plaintiffs make no contention at this time concerning whether LSW would augment the 10% gain

28  to account for compounding of an average annual rate of return.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111

1  implementing an unlawful and fraudulent scheme to market and sell the policies as a retirement

2  or investment vehicle, using policy illustrations as the centerpiece of that scheme.  For example,

3  the Illustrations used in the sale of the LSW policies purchased by Ms. Walker, Mr. Howlett, and

4  Ms. Spooner represented the policies as retirement or investment plans that would give them

5  financial independence through streams of income and this, rather than any life insurance

6  benefit, was the basis on which these policies were sold.

7          b.     Insurance Code Section 10509.955(b)(6), which prohibits an insurer from

8  providing "an applicant with an incomplete illustration."  LSW violates this provision by:

9                 i.   Failing to disclose the economic costs of the insurance aspects of

10                     the policies, including the premium expense charge, deductions for

11                     the cost of insurance, the monthly percent of accumulated value

12                     charge (for the SecurePlus Paragon policy), and the monthly policy

13                     fee;

14                ii.  Using the term "guaranteed values" without disclosing that the

15                     values are not annual guarantees, are calculated based on net

16                     premiums (i.e., only after deduction of costs which are

17                     undisclosed), and are not truly guaranteed because they are

18                     dependent on the claims-paying ability of LSW.

19               iii.  Failing to disclose the material risks of policy failure that arise due

20                     to the fact that rates of return in the S&P 500 will not be

21                     experienced at a constant level, as depicted in the Illustrations, but

22                     will instead be highly variable.

23          c.     Insurance Code Section 10509.955(b)(2), which states that an insurer shall

24  not "[u]se or describe nonguaranteed elements in a manner that is misleading or has the capacity

25  or tendency to mislead."  LSW violates this provision by using the earnings projections to

26  conceal the costs of the policies, which are embedded in the earnings projections, and by

27  providing illustrations which falsely portray that the annual income will be paid even if the

28  policies have lapsed because they earned only the guaranteed values.  LSW also violates this

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

provision by failing to disclose the impact that variability in the rates of return experienced by the S&P 500 may have on the risks of policy failure, including but not limited to the fact that cost of insurance charges will be higher if the accumulated value of the Policy does not increase as depicted in the Illustrations.

d.     Insurance Code Section 10509.950, which requires insurers to "define terms used in the illustration in language that is understandable by a typical person within the segment of the public to which the illustration is directed."  LSW violates this provision by:

      i.   Defining the "Monthly Administrative Charge" as "an administrative charge which is deducted from the accumulated value of the policy each month" but excluding most administrative charges from the amount disclosed as the "Monthly Administrative Charge";

      ii.  Designing the Illustration to obfuscate the nature and economic terms of the policies by providing misleading and insufficient information;

      iii. Failing to define the terms "Current Basis A" and "Current Basis B."

e.     Insurance Code Section 10509.956(b)(4), which requires that all key terms be defined. LSW violates this provision by failing to provide in the Illustration an explanation of how the cost indexes are to be used and failing to define "Account Value Enhancement," "Basic Strategy," "Current Basis A," and "Current Basis B."

f.     Insurance Code Section 10509.955(b)(3), which states that an insurer may not "[s]tate or imply that the payment or amount of nonguaranteed elements is guaranteed." LSW violates this provision by misrepresenting the guaranteed values as annual rates of return. In fact, they are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus provider) on the basis of *average* annual guarantees, and are further deceptive and misleading because the guaranteed values are calculated based on net premiums, but many of the costs deducted from the premiums are not disclosed. The Illustration also fails to disclose that

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  the "guaranteed" values are not really guaranteed because they are dependent on the claims-

2  paying ability of the insurer.

3  　　　　g.　　Insurance Code Section 10509.956(a)(13), which requires that "If a

4  contract premium is due, the premium outlay display shall not be left blank or show zero unless

5  accompanied by an asterisk or similar mark to draw attention to the fact that the policy is not

6  paid up." LSW violates this provision by showing a zero for the premium outlay display instead

7  of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse

8  without further payment of premiums.

9  　　　　38.　　LSW's unlawful scheme to market the policies as investment or retirement

10  vehicles, and its unlawful and material misrepresentations, concealment, and omissions

11  described above led Plaintiffs and the class members to submit applications to purchase the

12  policies. As part of the application process, LSW solicited confidential and private information

13  from Plaintiffs and class members, including medical history information and the results of

14  health examinations. Only after Plaintiffs and the class applied to purchase the policies, and

15  submitted confidential medical information, did LSW deliver the policies and certain other

16  information concerning the terms of the policies. To the extent that the policies themselves, or a

17  Life Insurance Buyer's Guide or other information delivered along with the policies, clarified or

18  contradicted the Illustration, Plaintiffs and the class did not receive these additional disclosures

19  until after Plaintiffs and the class had incurred the effort and inconvenience of the application

20  process and had decided to purchase the policies. Further, delivery of the policies and other

21  information cannot cure the failure of the Illustration to conform to the Insurance Code's

22  requirements for policy illustrations.

23  　　　　39.　　As a result of LSW's unlawful, unfair, and fraudulent business acts and practices,

24  Plaintiffs and the class have suffered injury in fact and lost money or property. In reliance on

25  LSW's material misrepresentations and omissions, Plaintiffs and the class purchased the policies,

26  paid the undisclosed cost of insurance and other administrative charges, and were required to pay

27  surrender charges if they learned the truth and terminated the policies.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## PLAINTIFFS' PURCHASE AND RENEWAL OF LSW POLICIES

**Plaintiff Joyce Walker**

40.     Plaintiff Joyce Walker purchased SecurePlus Provider policy no. LS0156670 from LSW, with a policy date of December 27, 2007. This policy accumulates interest or cash value based in part on the performance of the S&P 500. In connection with Ms. Walker's purchase of her policy, she was presented with several policy Illustrations. Her initial premium was to be $112,637, with a total of five planned periodic premium payments of $112,637 annually.[2]

41.     LSW marketed the policy to Ms. Walker by engaging in numerous unlawful, unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38, above.

42.     Ms. Walker is not an insurance or investment expert and was therefore unfamiliar with the insurance and investment terminology, actuarial assumptions, and other technical investment and insurance terms used in the Illustration and the policy. Ms. Walker trusted in LSW's expert and superior knowledge, as well as its long-standing experience, in accepting the representations of the Illustration and purchasing the policy.

43.     After making two periodic payments of $112,000 each, Ms. Walker discovered, inter alia, that the policy was not the reasonably safe and secure retirement vehicle that it had been represented to be. After LSW denied Ms. Walker's request for a refund of premiums, her only options were to surrender the policy and incur a very high "surrender charge," or to forfeit her entire $224,000. Ms. Walker ultimately decided to surrender her policy, incurring a surrender penalty of $55,013.42, which was taken out of the purported "accumulated cash value" of $197,647.21. Ms. Walker received $142,633.79 from LSW for a net loss in excess of $81,366.21.

44.     Absent LSW's misrepresentations and failure to disclose the material information

---

[2] Although Ms. Walker's policy listed a planned annual premium of $112,637, the annual premium actually charged by LSW was $112,000.

1  described in paragraphs 21-38, above, Ms. Walker would not have purchased the policy.

2  **Plaintiff Kim Bruce Howlett**

3      45.    Plaintiff Kim Bruce Howlett purchased SecurePlus Paragon policy no.

4  LS0149017 from LSW, with a policy date of September 26, 2007.  This policy accumulates

5  interest or cash value based in part on the performance of the S&P 500.  In connection with

6  Mr. Howlett's purchase of his policy, he was presented with several policy Illustrations.  His

7  initial premium was $105,750, with a total of five planned periodic premium payments of

8  $105,750 annually.

9      46.    LSW marketed the policy to Mr. Howlett by engaging in numerous unlawful,

10  unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38,

11  above.

12      47.    Mr. Howlett is not an insurance or investment expert and was therefore unfamiliar

13  with the insurance and investment terminology, actuarial assumptions, and other technical

14  investment and insurance terms used in the Illustration and the policy.  Mr. Howlett trusted in

15  LSW's expert and superior knowledge, as well as its long-standing experience, in accepting the

16  representations of the illustration and purchasing the policy.

17      48.    After making one initial periodic payment of $105,750, Mr. Howlett discovered,

18  inter alia, that the policy was not the reasonably safe and secure retirement vehicle that it had

19  been represented to be. After LSW denied Mr. Howlett's request for a refund of premiums, his

20  only options were to surrender the policy and incur a very high "surrender charge," or to forfeit

21  his entire $105,750.  Since the surrender charge exceeded the cash value of Mr. Howlett's policy,

22  he has not surrendered his policy.  Mr. Howlett's loss exceeds $105,750.

23      49.    Absent LSW's misrepresentations and failure to disclose the material information

24  described in paragraphs 21-38, above, Mr. Howlett would not have purchased the policy.

25  **Plaintiff Muriel Lynn Spooner**

26      50.    Plaintiff Muriel Lynn Spooner purchased SecurePlus Provider policy no.

27  LS0149018 from LSW, with a policy date of October 5, 2007.  This policy accumulates interest

28  or cash value based in part on the performance of the S&P 500.  In connection with

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Ms. Spooner's purchase of her policy, she was presented with several policy Illustrations. Her initial premium was $59,500, with a total of five planned periodic premium payments of $59,500 annually.

51. LSW marketed the policy to Ms. Spooner by engaging in numerous unlawful, unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38, above.

52. Ms. Spooner is not an insurance or investment expert and was therefore unfamiliar with the insurance or investment terminology, actuarial assumptions, and other technical investment and insurance terms used in the Illustration and the policy. Ms. Spooner trusted in LSW's expert and superior knowledge, as well as its long-standing experience in the business, in accepting the representations of the illustration and purchasing the policy.

53. After making one initial periodic payment of $59,500, Ms. Spooner discovered that the policy was not the reasonably safe and secure retirement vehicle that it had been represented to be. After LSW denied Ms. Spooner's request for a refund of premiums, her only options were to surrender the policy and incur a very high "surrender charge," or to forfeit her entire $59,500. Ms. Spooner ultimately decided to surrender her policy. She incurred a surrender penalty of $31,981.82, which was taken out of the purported "accumulated cash value" of $36,794.45. Ms. Spooner received $4,813.17 from LSW for a net loss in excess of $54,686.83.

54. Absent LSW's misrepresentations and failure to disclose the material information described in paragraphs 21-38, above, Ms. Spooner would not have purchased the policy.

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to California Code of Civil Procedure Section 382.

56. The class that Ms. Walker, Mr. Howlett, and Ms. Spooner seek to represent is composed of and defined as follows:

> All persons who purchased an indexed universal life insurance policy, including but not limited to persons who purchased a SecurePlus Provider policy or SecurePlus Paragon policy, from

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

Life Insurance Company of the Southwest on or after September 24, 2006 and who resided in California at the time the policy was initially issued.

57.    Specifically excluded from the class are past or present officers, directors, agents, brokers, or employees of the Defendant, or its parents or subsidiaries; any agents, brokers, or others who sold policies for the Defendant, or its parents or subsidiaries; any entity in which the Defendant has a controlling interest; the affiliates, legal representatives, attorneys or assigns of the Defendant, or its parents or subsidiaries; any judge, justice or judicial officer presiding over this matter and the staff and immediate family of any such judge, justice or judicial officer.

58.    As more fully set forth below, this action is appropriately brought as a class action pursuant to California Code of Civil Procedure Section 382 because: there is a sufficiently numerous, ascertainable class; a well-defined community of interest; and certification will provide substantial benefits to litigants and the courts.

**Numerosity and Ascertainability**

59.    The class members are so numerous that the individual joinder of all class members is impracticable under the circumstances of this case.  Plaintiffs are informed and believe that the class has hundreds or thousands of members, whose identities can be determined from the records of LSW.

**Community of Interest**

60.    There is a well defined community of interest in the questions of law and fact involved because there are (A) predominant common questions of law or fact; (B) the class representatives have claims typical of the class; and (C) the class representatives can adequately represent the class.

A.    **Predominant Common Questions of Law or Fact**

61.    Common questions of law and fact exist as to all class members and predominate over any possible questions that might affect only individual class members.  These common questions of law and fact include, among others:

a.    Whether LSW marketed the policies as retirement or investment plans;

b.    Whether LSW failed to separately identify and disclose in the Illustrations

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1  the costs of the policies (including cost of insurance charges, the monthly percent of accumulated

2  value charge (for the SecurePlus Paragon policy), and the monthly policy fee);

3        c.     Whether LSW failed to disclose in the Illustrations that the guaranteed

4  values would not provide policyholders with annual guarantees, were calculated based on net

5  premiums, and were not really guaranteed because they were dependent on the company's

6  claims-paying ability.

7        d.     Whether LSW concealed the material risks and consequences of policy

8  failure and misrepresented the safety and security of the policies as investment or retirement

9  vehicles.

10        e.     Whether LSW violated the California Insurance Code;

11        f.     Whether LSW's practices, as alleged herein, violate California's common

12  law of fraudulent concealment.

13        g.     Whether LSW's practices, as alleged herein, violate California's Unfair

14  Competition Law.

15    **B.**    <u>**Typicality**</u>

16       62.    Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner's claims

17  are typical of those of the class members. Plaintiffs' claims are based on the same legal theories

18  as the claims of the other class members and are based on the same acts of fraudulent

19  concealment and the same unlawful, unfair or fraudulent business acts or practices. Plaintiffs

20  and class members suffered injury in fact and lost money or property as a result of LSW's

21  common course of conduct as complained of herein.

22    **C.**    <u>**Adequacy**</u>

23       63.    Plaintiffs will fairly and adequately protect the interests of the class members.

24  Plaintiffs and the other class members were injured by the same acts of fraudulent concealment

25  and the same unlawful, unfair or fraudulent business acts or practices, and Plaintiffs have no

26  interests that are adverse to the interests of absent class members. Plaintiffs have retained

27  counsel with substantial experience and success in the prosecution of complex class actions,

28  consumer protection litigation and litigation challenging the practices of insurance companies.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

<u>Certification Will Provide Substantial Benefits to Litigants and the Court</u>

64.    This action is appropriate as a class action under California Code of Civil Procedure Section 382. Questions of law and fact common to the class members predominate and a class action is superior to any other possible method for the fair and efficient adjudication of the controversy.

a.    Common questions of law and fact predominate, and individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

b.    Class members have little interest in individually controlling the prosecution of separate actions. The substantial fees and costs required to challenge LSW's wrongful conduct greatly exceed the damages suffered by any individual class member and it would not be feasible or desirable for individual class members to prosecute separate actions against the Defendant.

c.    There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rather, the expense and burden of litigation would make it difficult or impossible for individual class members to maintain individual actions. Moreover, even if such individual litigation were practicable, the cost to the court system of adjudication of individualized litigation would be substantial. This action will result in an orderly and expeditious administration of class claims. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### (For Fraudulent Concealment)

65.    Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner reallege paragraphs 1-64, above, and incorporate them as if fully set forth herein.

66.    LSW has a duty to disclose to Plaintiffs the truth about the policies for the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1   following reasons, without limitation:

2      a.  LSW has a duty to disclose based on its statutory obligations under

3   Insurance Code Sections 330, 332, and 10509, et seq. Section 330 states that "[n]eglect to

4   communicate that which a party knows, and ought to communicate, is concealment." Section

5   332 requires that "[e]ach party to a contract of insurance shall communicate to the other, in good

6   faith, all facts within his knowledge which are or which he believes to be material to the contract

7   and as to which he makes no warranty, and which the other has not the means of ascertaining."

8   Section 10509, *et seq.*, as alleged in paragraph 37, above, imposes duties on LSW not to use

9   deceptive, misleading, or incomplete life insurance illustrations.

10      b.  LSW also has a duty to disclose as a result of its partial disclosures, which

11   contained only half-truths or were otherwise false or misleading, as alleged in this Complaint,

12   including specifically, but without limitation:

13        i. Since LSW discloses a "Monthly Administrative Charge" and

14        states that the policy is subject to only "One Policy Fee," a

15        reasonable policyholder would assume that the "Monthly

16        Administrative Charge" includes all charges that will be deducted

17        from the policy values. Because LSW also charged policyholders

18        premium expense charges, monthly percent of accumulated value

19        charge (for the SecurePlus Paragon policy), monthly cost of

20        insurance charges, and a monthly policy fee, its representations

21        were misleading and gave rise to a duty to disclose all the costs to

22        policyholders.

23        ii. LSW represents to policyholders that they will receive a

24        guaranteed return, but this representation is false and misleading

25        because the guaranteed values used in the illustrations are

26        calculated upon policy termination (or in five year intervals in the

27        case of the SecurePlus Provider) on the basis of average annual

28        rates of return, are calculated based on net premiums, and are not

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

in fact guaranteed because they are dependent on the claims-paying ability of the insurer. Because LSW's representations were false and misleading, they gave rise to a duty to disclose to policyholders the truth about the guaranteed values.

iii. LSW represents that the policies are reasonably safe and secure investment or retirement vehicles, but conceals the risks that the policies will not perform as illustrated by (1) concealing the true costs of the policy in the earnings projections; (2) using Illustrations that are extremely complex and incomprehensible to the typical policyholder; (3) not defining key terms that are essential to the projections of non-guaranteed values; and (4) projecting non-guaranteed values based upon index crediting scenarios that assume constant rates of return derived from the S&P 500. These representations are misleading, *inter alia*, because the rates of return from index crediting tied to the S&P 500 are highly variable and the variability of annual rates of return can have a very substantial impact on policy value and cost of insurance deductions, and can lead to a downward spiral in policy value from which the policy cannot recover. Because LSW's representations were misleading, they gave rise to a duty to disclose to policyholders the likelihood of year-to-year variability in rates of return and the associated risks of policy failure, as further discussed in paragraphs 6-10; 27-38, above.

iv. LSW markets the policies as investment or retirement vehicles, from which loans can be taken to provide retirement or other income, but LSW's Illustrations do not disclose the tax consequences of this arrangement if the Policy lapses, i.e., that the policyholder would owe taxes, at ordinary income tax rates, on any

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 04111

part of the loan that was taken from policy earnings. Because LSW's marketing of the policies as vehicles from which to draw retirement income through policy loans was misleading, this gave rise to a duty to disclose the potentially devastating consequences of that practice if the policy lapses.

c.      LSW additionally has a duty to disclose because it had superior knowledge about its fraudulent and unlawful marketing of the policies as investment or retirement vehicles and concealment of the material costs and risks. As between LSW and its policyholders, information regarding the costs and material risks of the policies were known or accessible only to LSW, LSW knew that policyholders were purchasing their policies based on their unawareness of the costs and material risks of the policies, and LSW knew that policyholders were unaware of these facts or could not reasonably discover these facts.

67.     LSW fraudulently conceals the following material facts, without limitation:

a.      LSW conceals the economic costs of the insurance aspects of the policies, including the premium expense charge, deductions for the cost of insurance, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy fee. In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

b.      LSW conceals that the "guaranteed values" are calculated based on net premiums (i.e., only after deduction of undisclosed costs), are not calculated based on annual rates of return, and that they are not in fact guaranteed but are dependent on the claims-paying ability of LSW. In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

c.      LSW conceals material risks that the policies will not perform as illustrated but will, instead, fail (i.e., lapse) unless additional money is paid into the policies. In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

d.      LSW's Illustrations conceal the adverse tax consequences of policy lapse

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  if the policyholder has outstanding policy loans.  In failing to disclose such information, LSW

2  intends that policyholders rely on such nondisclosures in deciding whether to purchase the

3  policies.

4      68.    LSW's omissions were material in that there was a substantial likelihood that a

5  reasonable prospective purchaser of the policies would have considered them important when

6  deciding whether or not to purchase the policies.

7      69.    Plaintiffs relied on these fraudulent omissions in purchasing their policies and are

8  informed and believe that the class members likewise relied on these omissions in deciding to

9  purchase their policies. LSW's fraudulent omissions were a direct and proximate cause of

10  Plaintiffs' injury in fact and loss of money or property.  If not for LSW's fraudulent omissions,

11  Plaintiffs and, on information and belief, the class members would not have purchased their

12  policies.  As a result of these omissions, Plaintiffs and the class members have incurred damages,

13  including cost of insurance charges and other administrative charges, the reduction in policy

14  value as a result of the undisclosed material risks and consequences of policy lapse, and the

15  surrender charges that Plaintiffs and class members were required to pay if they learned the truth

16  and terminated their policies.

17      70.    The conduct of LSW as alleged above was despicable conduct that was carried on

18  by LSW with a willful and conscious disregard of the rights or safety of Plaintiffs and the class,

19  that has subjected Plaintiffs and the class to cruel and unjust hardship in conscious disregard of

20  their rights, and that involved deceit or concealment of one or more material facts known to

21  LSW with the intention on the part of LSW of thereby depriving Plaintiffs and the class of

22  property or legal rights or otherwise causing injury.  Plaintiffs are informed and believe that

23  LSW authorized or ratified the wrongful conduct of its agents or employees alleged above and

24  that such authorization or ratification was done on the part of an officer, director, or managing

25  agent of LSW.  Plaintiffs and the class are accordingly entitled to an award of punitive or

26  exemplary damages.

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## SECOND CAUSE OF ACTION
### (For Violation of California's Unfair Competition Law)

71.     Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner reallege paragraphs 1-70, above, and incorporate them as if fully set forth herein.

72.     California Business & Professions Code Section 17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent acts or practices and any unfair, deceptive, untrue or misleading advertising.

73.     LSW used and continues to use unlawful, unfair or fraudulent acts or practices in connection with the marketing and sale of the policies.  Such acts and practices have continued and will continue unabated unless enjoined.

74.     LSW's unlawful acts or practices are described in paragraphs 1-54 & 66-70, above, and include LSW's violation of the following California laws:

a.     Insurance Code Section 10509.955(b)(1), which states, "When using an illustration in the sale of a life insurance policy, an insurer or its producers or other authorized representatives shall not do any of the following: . . . (1) Represent the policy as anything other than a life insurance policy."  LSW violates this provision by developing, encouraging, and implementing an unlawful and fraudulent scheme to market and sell the policies as retirement or investment vehicles, using policy Illustrations as the centerpiece of that scheme.  For example, the Illustrations used in the sale of the LSW policies purchased by Ms. Walker, Mr. Howlett, and Ms. Spooner represented the policies as retirement or investment plans that would give them financial independence through streams of income and this, rather than any life insurance benefit, was the primary basis on which these policies were sold.

b.     Insurance Code Section 10509.955(b)(6), which prohibits an insurer from providing "an applicant with an incomplete illustration."  LSW violates this provision by:

i.     Failing to disclose the economic costs of the insurance aspects of the policies, including the premium expense charge, deductions for the cost of insurance, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

fee;

    ii.  Using the term "Monthly Administrative Charge," which does not include any of the costs listed above, all of which are charged in addition to the monthly administrative fee;

    iii.  Using the term "guaranteed values" without disclosing that the values are not annual guarantees, are calculated based on net premiums (i.e., only after deduction of undisclosed costs), and are not truly guaranteed but are dependent on the claims-paying ability of LSW.

    iv.  Failing to disclose the material risks and consequences of policy lapse.

    c.  Insurance Code Section 10509.955(b)(2), which states that an insurer shall not "[u]se or describe nonguaranteed elements in a manner that is misleading or has the capacity or tendency to mislead." LSW violates this provision by failing to disclose separately and comprehensibly the costs that are charged, by embedding such charges in the earnings projections, and by providing Illustrations which falsely portray that the annual income will be paid even if the policies lapsed because they earned only the guaranteed values. LSW also violates this provision by failing to disclose the impact that variability in the rates of return experienced by the S&P 500 may have on the risks of policy failure, including but not limited to the fact that cost of insurance deductions will be higher if the accumulated value of the policy does not increase as depicted in the Illustrations.

    d.  Insurance Code Section 10509.950, which requires insurers to "define terms used in the illustration in language that is understandable by a typical person within the segment of the public to which the illustration is directed." LSW violates this provision by:

    i.  Defining the "Monthly Administrative Charge" as "an administrative charge which is deducted from the accumulated value of the policy each month" but excluding most administrative charges from the amount disclosed as the "Monthly Administrative

Charge";

    ii.  Designing the Illustration to obfuscate the nature and economic terms of the policies by providing misleading and insufficient information.

    iii.  Failing to define the terms "Account Value Enhancement," "Basic Strategy," "Current Basis A," and "Current Basis B."

e.    Insurance Code Section 10509.956(b)(4), which requires that all key terms be defined. LSW violates this provision by failing to provide an explanation of how the cost indexes are to be used and failing to define "Account Value Enhancement," "Basic Strategy," "Current Basis A," and "Current Basis B."

f.    Insurance Code Section 10509.955(b)(3), which states that an insurer may not "[s]tate or imply that the payment or amount of nonguaranteed elements is guaranteed." LSW violates this provision by misrepresenting the guaranteed values as annual rates of return. In fact, they are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus Provider) on the basis of average annual guarantees, and are further deceptive and misleading because the guaranteed values are calculated based on net premiums, but many of the costs deducted from the premiums are not disclosed. The Illustration also fails to disclose that the "guaranteed" values are not really guaranteed because they are dependent on the claims-paying ability of the insurer.

g.    Insurance Code Section 10509.956(a)(13), which requires that "If a contract premium is due, the premium outlay display shall not be left blank or show zero unless accompanied by an asterisk or similar mark to draw attention to the fact that the policy is not paid up." LSW violates this provision by showing a zero for the premium outlay display instead of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse without further payment of premiums.

h.    Insurance Code Section 330, which provides, "Neglect to communicate that which a party knows, and ought to communicate, is concealment," and Insurance Code Section 332, which provides, "Each party to a contract of insurance shall communicate to the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." LSW violated these provisions by failing to disclose material facts concerning the policies, including but not limited to the policy expenses, the material risks of policy failure, and the tax consequences of policy lapse, as described in Paragraphs 1-14 & 24-54, above.

i.      Insurance Code Section 780, which provides "An insurer or officer or agent thereof, or an insurance broker or solicitor, shall not cause or permit to be issued, circulated or used, any misrepresentation of the following: (a) The terms of a policy . . . (b) the benefits or privileges promised thereunder . . . ." LSW violates this provision by its use of misleading policy Illustrations as described in Paragraph 1-14 & 24-54, above.

j.      Civil Code Section 1572 and California's common law of fraudulent concealment. LSW violated these provisions as described in Paragraphs 66-69, above.

75.     LSW's fraudulent acts or practices are described in paragraphs 1—50 & 66-70, above, and include the following, without limitation:

a.      LSW does not inform, disclose to, or advise policyholders of the costs of the policies as life insurance policies; these costs are deceptively embedded in the policy value illustrations, effectively hiding the costs from policyholders. LSW makes misleading partial disclosures by disclosing a "Monthly Administrative Charge" and stating that the policy is subject to only "One Policy Fee," when in fact the "Monthly Administrative Charge" does not include all the costs that are charged, including the premium expense charge; cost of insurance charges; the monthly percent of accumulated value charge (for the SecurePlus Paragon policy); and the monthly policy fee. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

b.      LSW does not inform, disclose to, or advise policyholders that the guaranteed values used in the illustrations are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus Provider) on the basis of average annual rates of return, are calculated based on net premiums, and are not really guaranteed because they are dependent

on the claims-paying ability of the insurer. This is particularly likely to deceive policyholders because any caps on interest credited to the policies are applied annually. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

c.     LSW conceals the material risks that the policy will not perform as illustrated and misrepresents the safety and the security of the policies as retirement or investment vehicles. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

d.     LSW conceals the adverse tax consequences that can occur if the policy lapses while a policy loan is outstanding. The nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

e.     LSW misrepresents that a policyholder will be able to make cash withdrawals for the rest of his or her life without having the policy lapse. The illustrations provided by LSW show a zero for the premium outlay display instead of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse without further payment of premiums. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

f.     LSW provides policyholders with illustrations that contain numerous other incomplete and misleading features, as described more fully in paragraph 37, above. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

g.     LSW provides policyholders with illustrations that obfuscate the nature and economic terms of the policies. Through its use of illustrations that violate the California Insurance Code, through the use of illustrations that are deceptive and misleading, and through the sheer complexity of presentation, LSW markets the policies in a manner that makes material terms incomprehensible to a typical person within the segment of the public to which the illustration is directed. The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

1  policyholders.

2  76.  LSW's unfair acts or practices are described in paragraphs 1-50 & 66-70, above,

3  and include the following, without limitation:

4  a.  LSW developed, encourages, and implements an unlawful and fraudulent

5  scheme to market and sell the policies as retirement or investment vehicles, using policy

6  Illustrations as the centerpiece of that scheme.  For example, the Illustrations used in the sale of

7  the LSW policies purchased by Ms. Walker, Mr. Howlett, and Ms. Spooner represented the

8  policies as retirement or investment plans that would give them financial independence through

9  streams of income and this, rather than any life insurance benefit, was the primary basis on

10 which these policies were sold.

11 b.  LSW does not inform, disclose to, or advise policyholders that the cost of

12 the policies as life insurance policies is almost entirely omitted from the Illustration.  LSW

13 makes misleading partial disclosures by disclosing a "Monthly Administrative Charge" and

14 stating that the policy is subject to only "One Policy Fee," when in fact the "Monthly

15 Administrative Charge" does not include all the costs that are charged, including premium

16 expense charges; cost of insurance deductions; the monthly percent of accumulated value charge

17 (for the SecurePlus Paragon policy); and the monthly policy fee.

18 c.  LSW does not inform, disclose to, or advise policyholders that the

19 guaranteed values used in the Illustrations are calculated upon policy termination (or in five-year

20 intervals in the case of the SecurePlus Provider) on the basis of average annual rates of return,

21 are calculated based on net premiums, and are not guaranteed because they are dependent on the

22 claims-paying ability of the insurer.

23 d.  LSW conceals the material risks that the policy will not perform as

24 illustrated and misrepresents the safety and the security of the policies as retirement or

25 investment vehicles.

26 e.  LSW conceals the adverse tax consequences that can occur if the policy

27 lapses while a policy loan is outstanding.

28 f.  LSW misrepresents that a policyholder will be able to make cash

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  withdrawals for the rest of his or her life without the policy lapsing. The Illustrations provided

2  by LSW show a zero for the premium outlay display instead of showing an asterisk or similar

3  mark to draw attention to the fact that the policies will lapse without further payment of

4  premiums.

5          g.    LSW provides policyholders with illustrations that contain numerous other

6  incomplete and misleading features, as described more fully in paragraph 37, above.

7          h.    LSW provides policyholders with illustrations that obfuscate the nature

8  and economic terms of the policies. Through its use of illustrations that violate the California

9  Insurance Code, through the use of illustrations that are deceptive and misleading, and through

10  the sheer complexity of presentation, LSW markets the policies in a manner that makes material

11  terms incomprehensible to policyholders.

12          i.    LSW's nondisclosures and misrepresentations in its Illustrations and

13  marketing practices are unfair because the gravity of harm to policyholders far outweighs any

14  utility of LSW's conduct. The injury to policyholders is substantial, including loss of substantial

15  money or property; this substantial injury is not outweighed by any benefit to consumers or

16  competition as a result of LSW's wrongful acts; and policyholders themselves cannot reasonably

17  avoid the injury since the Illustrations and marketing practices are deliberately calculated to

18  conceal the truth and to obfuscate the nature and economic terms of the transaction.

19          j.    LSW's nondisclosures and misrepresentations are also unfair because they

20  threaten an incipient violation of the law or violate the policy or spirit of the law, including but

21  not limited to the unlawful acts described in paragraph 74, above.

22      77.    Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner relied on

23  LSW's misrepresentations, concealment, and omissions described above. Plaintiffs suffered

24  injury in fact and have lost money or property as a result of LSW's acts of unfair competition.

25  Absent LSW's acts of unfair competition, Plaintiffs and, on information and belief, the class

26  members would not have purchased the policies. LSW's acts of unfair competition should be

27  enjoined and the Court should make such other orders or judgments as may be necessary to

28  prevent such acts, including a declaration that each Plaintiff and class member is entitled to

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  rescind his or her policy. Plaintiffs also seek an order restoring to Plaintiffs and the class all

2  money or property which may have been acquired by LSW by means of such unfair competition.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiffs pray for judgment against LSW, as follows:

5  a.  For an Order determining that this action may be maintained as a class action and

6  providing class certification as requested herein;

7  b.  For compensatory and punitive damages against LSW based on its fraudulent

8  concealment as alleged herein.

9  c.  For preliminary and permanent injunctive relief against LSW enjoining LSW

10  from engaging in the unlawful, unfair, and fraudulent practices alleged herein;

11  d.  For a restoration of all money or property which may have been acquired by LSW

12  by means of unfair competition;

13  e.  For declaratory relief regarding the unlawful, unfair, and fraudulent practices

14  alleged herein, including a declaration that each Plaintiff and class member is entitled to rescind

15  his or her policy;

16  f.  For reasonable attorneys' fees, and all costs, expenses and disbursements,

17  including, without limitation, filing fees and reasonable costs of suit, including, but not limited to

18  an award of attorneys' fees, costs, expenses and disbursements under California Civil Code

19  Section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine as appropriate;

20  and

21  k.  For such other and further relief as this Court deems just and proper.

22  Dated: September 24, 2010          Respectfully submitted,
                                      KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
23

24

25

26  By: _____
      CHARLES N. FREIBERG
27    BRIAN P. BROSNAHAN
      JACOB N. FOSTER
28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

LEVINE STEINBERG MILLER & HUVER
HARVEY R. LEVINE
CRAIG A. MILLER

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT, and
MURIEL SPOONER, on behalf of themselves and all others
similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Complaint
34

## DEMAND FOR JURY TRIAL

Plaintiffs JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL LYNN SPOONER, on behalf of themselves and all others similarly situated, demand a trial by jury of all issues that may be so tried as of right.

DATED: September 24, 2010

KASOWITZ BENSON TORRES & FRIEDMAN LLP

By _____
    Charles N. Freiberg
    Brian P. Brosnahan
    Jacob N. Foster

LEVINE STEINBERG MILLER & HUVER
    HARVEY R. LEVINE
    CRAIG A. MILLER

Attorneys For Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600



# www.sfbar.org/mediation

QUESTIONS?

## adr@sfbar.org or 415-982-1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

Arrow

Page 1 of 1

FROM: Dena Harris (213)337-4615
CT - Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO:   **Rhonda Miller (802)229-3280**
**National Life Insurance Company**
**Law Dept M500**
**One National Life Drive**
**Montpelier, VT 05604**
Ref: SOP/0413900/517348636/Dena Harris



FedEx Revenue Barcode

CAD#: 8318649
SHIP DATE: 28SEP10
WEIGHT: 1 LB



DELIVERY ADDRESS (FedEx-EDR)

TRK #  **7903 5927 6501**    FORM
0201

**05604**  -VT-US

**STANDARD OVERNIGHT**

**BTV**

**XH MVLA**

**WED**
**AM**
Deliver by:
29SEP10



CLS101110021

LAW DEPARTMENT

2010 SEP 29  A 11: 08

RECEIVED