# EXHIBIT A

1  MICHAEL B. HORROW (State Bar #162917)
   DONAHUE & HORROW, LLP
2  1960 E. Grand Ave., Suite 1215
   El Segundo, California 90245
3  Telephone: (310) 322-0300
   Facsimile: (310) 322-0302
4  Email: mhorrow@donahuehorrow.com

5
   Attorneys for Plaintiffs,
6  BRUCE M. KRALL, on behalf of themselves
   and all others similarly situated
7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   CENTRAL DIVISION

12

13 BRUCE M. KRALL, on behalf of himself and all    Case No.: SACV 09-1043-JVS(RNBx)
   others similarly situated,
14                                                  *Assigned for all purposes to the Honorable James V.
                  Plaintiffs,                       Selna*
15
          vs.                                       **FOURTH AMENDED CLASS ACTION
16                                                  COMPLAINT FOR FRAUD, NEGLIGENT
   LIFE INSURANCE COMPANY OF THE                    MISREPRESENTATION, AND
17 SOUTHWEST, and DOES 1 through 10,                VIOLATION OF THE UNFAIR
   inclusive,                                       COMPETITION LAW; DEMAND FOR
18                                                  JURY TRIAL**
                  Defendant.
19

20

21        Plaintiff, BRUCE M. KRALL ("MR. KRALL"), by his attorneys, brings the action against

22 LIFE INSURANCE COMPANY OF THE SOUTHWEST ("LSW"), on behalf of himself and all

23 others similarly situated, and for this complaint allege, pursuant to his own investigation and

24 knowledge, and otherwise upon information and belief, as follows:

25                         **SYNOPSIS OF CASE**

26    1.  This class action is brought on behalf of all persons who, beginning in 2005, purchased a

27        Revolutionary Life Policy, California Policy Form number 8212CA in the state of California,

28

*(left margin, vertical text)* DONAHUE & HORROW, LLP

*(right margin, stamp)* FILED  2010 OCT 25 PM 3:11  CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA  BY: ___

**DONAHUE & HORROW, LLP**

1   and who have been damaged by LSW's deceptive misrepresentations concerning

2   performance of these contracts and the likelihood that benefits illustrated prior to purchase of

3   the contracts could ever be achieved.

4   2. The LSW Revolutionary Policy is a life insurance contract where the interest credits to the

5   contract's investment portion referred to as the "Accumulated Value". The "Accumulated

6   Value" is based on LSW determined factors applied to a contractual formula using the

7   performance of an external index such as the Standard & Poor's 500 index without

8   dividends.

9   3. To entice purchasers of these high-cost insurance contracts, LSW used printed illustrations

10   touting the benefits of the "historical performance" of the Standard & Poor's 500 index in an

11   amount far greater than the Standard & Poor's 500 index actually returned. LSW

12   deliberately misrepresented the actual rates of return of the Standard & Poor's 500 index in

13   the printed LSW Revolutionary Life Policy Illustrations to achieve millions of dollars of

14   sales from unsuspecting policyholders and to maximize its sales and profits.

15   4. Plaintiffs allege that LSW's conduct was fraudulent, negligent, in violation of California

16   Insurance Code Sections 10509.950 et seq. and in violation of the Unfair Competition Law.

17   Plaintiffs also allege that LSW committed fraud at the point of sale of these insurance

18   contracts with Plaintiff and class members.

19   **JURISDICTION AND VENUE**

20   5. MR. KRALL purchased his LSW Revolutionary Life insurance policy from Defendant while

21   living in Orange County, California and he paid his premiums were paid from Orange

22   County, California. Defendant is incorporated and organized under the laws of the State of

23   Texas and has its corporate headquarters at 1300 West Mockingbird Lane, Dallas, Texas

24   75247-4921.

25   6. Upon information and belief, the amount in controversy exceeds $5,000,000 for

26   representative Plaintiffs and class members collectively, exclusive of interest and costs, by

27   virtue of the combined increase of premium to all class members nationwide, and the revenue

28   and profit reaped by Defendant from its transactions with Plaintiff and the Class, as a direct

1    and proximate result of the wrongful conduct alleged herein, and by virtue of the statutory

2    damages alleged herein and equitable relief sought.

3    7.   Venue is proper within the State of California.  Defendant maintains offices, has agents,

4         transacts business, and is found within this state.  Moreover, a substantial part of the events

5         and omissions giving rise to the claims alleged herein arose in part within this state.

6                                                   **PARTIES**

7    8.   Plaintiff, BRUCE M. KRALL, is a former policyholder of a Revolutionary Life insurance

8         policy issued by the LIFE INSURANCE COMPANY OF THE SOUTHWEST with Policy

9         Number LS0136686 and under policy form 8212CA(0305).  Plaintiff purchased his policy on

10        March 27, 2007 from an LSW appointed agent (Gerald Wolfe).  MR. KRALL currently

11        resides in Ladera Ranch, CA.  *See* Exhibit "A", BRUCE M. KRALL's LSW Revolutionary

12        Life policy.

13   9.   Defendant LIFE INSURANCE COMPANY OF THE SOUTHWEST is a stock life insurer

14        that is wholly owned by National Life Insurance Company of Montpelier, Vermont, a

15        member of a mutual holding company.  LSW's life insurance revenue for 2008 was $174

16        million and annuity revenue was slightly over $1 billion.  The company is licensed in all

17        states of the United States of America except for New York State as well as the District of

18        Columbia.  LSW is a Texas domiciled life insurer with its main administrative office in

19        Dallas, Texas with an additional administrative office in Montpelier, Vermont.  National Life

20        Insurance Company is wholly owned by its policyholders.  *See* Exhibit "B", Life Insurance

21        Company of the Southwest's 2009 Annual Statement.

22   10.  The true names or capacities, whether individual, corporate, associate, or otherwise, of

23        Defendants, DOES 1 through 10, are unknown to plaintiff who therefore sues said

24        Defendants by such fictitious names. Plaintiff is informed and believes and on such

25        information and belief alleges that each of the Defendants sued herein as a DOE is legally

26        responsible in some manner for the events and happenings referred to herein, and will ask

27        leave of this court to amend this complaint to insert their true names and capacities in place

28        and instead of the fictitious names when the same become known to plaintiff.

**DONAHUE & HORROW, LLP**

**PLAINTIFF BRUCE M. KRALL**

11. Plaintiff MR. KRALL purchased policy number LS0136686 from LSW through its then appointed insurance agent Gerald Wolfe of Juris Wealth Management of 8001 Irvine Center Drive, 4th floor, Irvine, CA 92618.  Mr. Wolfe used the title when signing letters "Attorney at Law & Wealth Coach."  Mr. Wolfe represented to MR. KRALL at all times that he was a California licensed insurance agent representing LSW.  Plaintiff MR. KRALL relied on the special knowledge, training and skill of LSW's appointed and licensed insurance agent Wolfe and the representations made in the written illustrations dated November 29, 2006 and insurance policy materials when he purchased the LSW Policy.  MR. KRALL also relied on Wolfe's written promises and specialized training and knowledge based on his representations that he was a licensed California insurance agent in purchasing this LSW policy.

12. On November 29, 2006, KRALL was presented a Life Insurance Illustration by Wolfe on LSW letterhead and clearly marked as a document from LSW. *See* Exhibit "C."  In the Life Insurance Illustration, LSW represented the following notable facts about the LSW Revolutionary Life insurance policy form 8212CA(0305):

- On Page 10, LSW stated that the "assumed interest rate" for Equity Indexed Strategy I based upon the historical performance, from 1984 to the present, of the S&P 500 Index with a Participation Rate of 140.00% and an Index Earnings Cap of 10.00% was 8.40%.

13. Based on the affirmative representations in the LSW Illustration of November 29, 2006 and the expectations set forth about its performance, MR. KRALL purchased LSW Revolutionary Life insurance form number 8212CA(0305) with an effective date of March 27, 2007 when he was age 47.  The Face Amount was $5,175,000.  The planned premium was $180,000 payable annually.  The contract had a Percent of Premium Expense Charge of 5%, Monthly Administrative Charge of $2,462.42 and a Monthly Policy Fee of $5.  The surrender charge for accessing the accumulated value was $98,635.50 in the first year, $143,709.75 in the second year then reducing

DONAHUE & HORROW, LLP

1    annually from there to zero in contract years 11 and later.

2    14. After consideration of the suggestions from LSW and Wolfe, MR. KRALL agreed to

3    Equity Indexed Strategy 1 – Point to Point Index with an Initial Participation Rate of

4    140% and an initial Earnings Cap of 10%.

5    15. MR. KRALL paid two annual premiums or a total of $360,000 as of October 1, 2009.

6    16. After seeing the Policy value diminish rapidly, on October 8, 2009, MR. KRALL

7    surrendered the LSW Policy (*See* Exhibit "D"). At the time of surrender, the

8    Accumulated Cash Value in MR. KRALL's LSW Policy was $273,041.59.  MR.

9    KRALL then paid a $127,719 "Surrender Penalty" and was sent a check for

10   $145,322.59.  As a result of the misleading representations made to him by LSW in

11   its Illustration of November 29, 2006, MR. KRALL paid $360,000 in premium

12   dollars and subsequently received only $145,322.59.  MR. KRALL lost $214,677.41

13   while owning this LSW Policy from March 27, 2007 to October 8, 2009.

14   17. MR. KRALL relied on the November 29, 2006 LSW Illustration to his detriment.

15   LSW falsely represented on Page 10 of the Illustration that the Assumed Interest Rate

16   for Equity Index Strategy 1 based upon historical performance, from 1984 to the

17   present, of the S & P 500 Index with a Participation Rate of 140.00% and Index

18   Earnings Cap of 10.00% was **8.4%**.  The subsequent pages in the Illustration (i.e.

19   pages 12 to 15) used a current weighted average interest rate of 7.69% in the first year

20   and then rates greater than 8.01% after policy year two.  The Illustration culminates

21   with a rate of 8.39% in policy year fifty five (55) by estimating a projected

22   Accumulated Policy Value of greater than 80 million dollars ($80,093,928 on page

23   13).

24   18. LSW knew the representation of the 8.4% rate was false when it authorized ad

25   ratified the presentation of this November 29, 2006 Illustration to KRALL as part of

26   the sales process.  LSW knew and expected consumers like MR. KRALL would rely

27   on the Illustration in purchasing the LSW Revolutionary Life Insurance Policy.

28   \\\

DONAHUE & HORROW, LLP

19. Attached as Exhibit "E" is the Declaration of David N. Fuller CFA, ASA. Mr. Fuller is an expert in financial valuation consulting services with more than twenty years experience in this field. Mr. Fuller recreated the historical performance as represented by the LSW November 29, 2006 Illustration using the same parameters-notably from Page 10 of the Illustration "from 1984 to the present, of the S & P 500 Index with a Participation Rate of 140.00% and Index Earnings Cap of 10.00%" and found that "...8.4% was not historically achievable over any 10-year period or longer." According to Mr. Fuller, "...since 1926 to 2006, there were only two five-year periods when this level of return could have been achieved or exceeded. The first was 1984-1989 and the second was 1994-1999. Historically, the highest 10-year and 20-year periods for Index Strategy 1 were 7.5%." *See* Paragraph 11 of the Declaration of David N. Fuller CFA, ASA, attached hereto as Exhibit "E".

20. Based on the LSW Illustration dated November 29, 2006, MR. KRALL purchased the LSW Policy and paid $360,000 in premiums. He justifiably and reasonably relied on the Policy values based on the specialized nature of the product as it was presented by LSW and its appointed agent Gerald Wolfe. As a result, MR. KRALL lost more than $200,000 when he surrendered the Policy on October 8, 2009.

## LSW VIOLATED CALIFORNIA INSURANCE CODE SECTION 10509-955 (b) BY MISLEADING KRALL AS TO THE "NONGUARANTEED" ELEMENTS IN THE REVOLUTIONARY LIFE POLICY

21. At Page 10 of the November 29, 2006 Illustration presented to Mr. Krall by Wolfe and titled "Non-Guaranteed Assumed Interest Rate Disclosure", LSW represented that there were nonguaranteed Participation Rates and Index Earnings Cap for the Equity Indexed Strategies. However, LSW never identified the Participation Rate and Earnings Rates that were "nonguaranteed".

\\\

DONAHUE & HORROW, LLP

**DONAHUE & HORROW, LLP**

22. A reasonable consumer reading Page 10 of the November 29, 2006 Illustration would not be able to determine that the contractually guaranteed Participation Rate was really 100% and **not** the 140% quoted throughout the Policy Illustration or that the Indexed Earnings Cap was actually only guaranteed minimally at 3% and **not** the 10% as used throughout the Policy Illustration to show potential Accumulated Policy Values.  There was nothing in the Illustration presented to MR. KRALL on that day or ever that clearly showed the contractually guaranteed elements for the Participation Rate and Earnings Cap versus the nonguaranteed elements.  Instead, LSW mixed and matched the guaranteed and nonguaranteed rates and caps together confusing the purchaser and in violation of California law.  This is a misleading description of non-guaranteed elements prohibited by California Insurance Code 10509.955 (b)(2).

23. The LSW Illustration presented to Mr. Krall on November 29, 2006 violated the following statutory requirements contained in the California Insurance Code Sections because:

    1)    Under 10509.955 (a) (2), it failed to identify the business address of the producer or insurer's authorized representative, Mr. Gerald Wolfe;

    2)    Under 10509.955 (a) (5), it failed to identify the form number as the Policy Form stated on the illustrations was 8212(0305) and the policy form issued to Mr. Krall was 212CA(0305);

    3)    Under 10509.955 (b) (4), LSW is prohibited from using a Policy Illustration that did not comply with the requirements of the California Insurance Code;

    4)    Under 10509.956 (a) (8), the guaranteed elements were not shown before the corresponding nonguaranteed elements;

    5)    Under 10509.956 (c) (1) (C) (ii), LSW was required to use the nonguaranteed credited interest at rates that were the average of the guaranteed rates and the rates contained in the Illustration scale and LSW did not.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and on behalf of all other members of the Class, defined as:

> All LSW former and current policyholders who purchased the LSW Revolutionary Life policy form number 8212CA(0305) or predecessor or subsequent forms from LSW from 2005 to the present in the State of California, and who at the time of purchase or policy delivery were presented with a Policy Illustration that misrepresented the historical rate of return of the S&P 500 Index as filtered through the LSW Revolutionary Life Policy's parameters.

25. Upon information and belief, there are hundreds of class members throughout the State of California. Therefore, individual joinder of all members of the Class would be impracticable.

26. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal or factual questions include:

   a.   Whether LSW falsely presented the Accumulated Policy Values as part of its Revolutionary Life Policy Illustrations for policy form number 8212CA(0305) or predecessor or subsequent forms from LSW from 2005 to the present in the State of California;

   b.   Whether LSW's actions described herein violate California's Unfair Competition Laws;

   c.   Whether LSW breached its contracts with the Plaintiff and the Class; and

   d.   The appropriate measure of damages, restitution and/or other remedies.

27. Plaintiff's claims are typical of the claims of the Class, in that Plaintiffs are LSW Revolutionary Life policyholders who were not informed of LSW's conduct alleged throughout this Third Amended Complaint, and have received notice that LSW is not providing expected benefits under the contract.

28. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class members he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action

DONAHUE & HORROW, LLP

DONAHUE & HORROW, LLP

1  litigation.  Plaintiff and his counsel will adequately protect the interests of the Class.

2  29. A class action is superior to other available means for the fair and efficient

3  adjudication of this dispute.  The damages suffered by each individual class member

4  likely will be relatively small, especially given the burden and expense of individual

5  prosecution of the complex litigation necessitated by LSW's conduct.  Thus, it would

6  be virtually impossible for the class members individually to effectively redress the

7  wrongs done to them.  Moreover, even if the class members could afford individual

8  actions, it would still not be preferable to class wide litigation.  Individualized actions

9  present the potential for inconsistent or contradictory judgments.  By contrast, a class

10  action presents far fewer management difficulties and provides the benefits of single

11  adjudication, economies of scale, and comprehensive supervision by a single court.

12  **FIRST CAUSE OF ACTION**

13  **(Fraud)**

14  30. Plaintiff hereby repeats and realleges the foregoing paragraphs of this Third

15  Amended Complaint and incorporates the same as though fully set forth herein.

16  31. LSW falsely represented on Page 10 of the Illustration that the Assumed Interest Rate

17  for Equity Index Strategy 1 based upon historical performance, from 1984 to the

18  present, of the S & P 500 Index with a Participation Rate of 140.00% and Index

19  Earnings Cap of 10.00% was **8.4%**.  The subsequent pages in the Illustration (i.e.

20  pages 12 to 15) used a current weighted average interest rate of 7.69% in the first year

21  and then rates greater than 8.01% after policy year two.  The Illustration culminates

22  with a rate of 8.39% in policy year fifty five (55) by estimating a projected

23  Accumulated Policy Value of greater than 80 million dollars ($80,093,928 on page

24  13).

25  32. LSW knew the representation of the 8.4% rate was false when it authorized ad

26  ratified the presentation of this November 29, 2006 Illustration to KRALL as part of

27  the sales process.  LSW knew and expected consumers like MR. KRALL would rely

28  on the Illustration in purchasing the LSW Revolutionary Life Insurance Policy.

33. Attached as Exhibit "E" is the Declaration of David N. Fuller CFA, ASA. Mr. Fuller is an expert in financial valuation consulting services with more than twenty years experience in this field. Mr. Fuller recreated the historical performance as represented by the LSW November 29, 2006 Illustration using the same parameters- notably from Page 10 of the Illustration "from 1984 to the present, of the S & P 500 Index with a Participation Rate of 140.00% and Index Earnings Cap of 10.00%" and found that "…8.4% was not historically achievable over any 10-year period or longer." According to Mr. Fuller, "…since 1926 to 2006, there were only two five-year periods when this level of return could have been achieved or exceeded. The first was 1984-1989 and the second was 1994-1999. Historically, the highest 10-year and 20-year periods for Index Strategy 1 were 7.5%." *See* Paragraph 11 of the Declaration of David N. Fuller CFA, ASA, attached hereto as Exhibit "E".

34. Mr. Fuller stated under oath that "The stated period "from 1984 to present" for Index Strategy 1…would not have grown at an 8.4% CAGR [compounded annual growth rate]. Depending on the actual dates applied, the actual CAGR for SPX with the portfolio restrictions from 1984 would have been approximately **6.8%.** If the historical average five-year growth rate had been applied in the Defendant's projections, the results in the Defendant's presentation to the Plaintiffs would have been materially different. The average 5-year return for Index Strategy 1, with the Portfolio Restrictions, was 5.9% since 1926 through the end of 2006, as calculated in Schedule A.2. In the 55-year example, if a hypothetical client invested $1.00 at 8.38%, at the end of 55 years, the $1.00 would have compounded to $83.60. If the same client invested $1.00 at the 20-year historical average of 6.0%, he would have $24.65 at the end of 55 years. By increasing the rate approximately 2.4% over 55 years, the projected ending value is ***inflated by approximately 240%***." *See* Declaration of David N. Fuller CFA, ASA, attached hereto as Exhibit "E".

35. LSW made these affirmative misrepresentations to MR. KRALL, and engaged in this fraudulent conduct, with the purpose of inducing Plaintiff to rely upon them and to act in reliance thereon. Plaintiff justifiably relied upon LSW's written representations

DONAHUE & HORROW, LLP

1  and specifically the November 29, 2006 Illustration and KRALL further reasonably

2  relied upon LSW to not conceal from him material information regarding the

3  historical performance, from 1984 to the present, of the S & P 500 Index with a

4  Participation Rate of 140.00% and Index Earnings Cap of 10.00% and its impact on

5  cost, benefits, cash values, and out of pocket premiums payable by LSW under this

6  Policy.

7  36. As a result of Plaintiff's reliance on these representations and lack of knowledge of

8  such fraud, Plaintiff suffered economic losses as outlined above and incorporated

9  herein and consequential damages in an amount to be proven at the time of trial.

10 37. Based on the LSW Illustration dated November 29, 2006, KRALL purchased the

11  LSW Policy and paid $360,000 in premiums.  He justifiably and reasonably relied on

12  the Policy values based on the specialized nature of the product as it was presented by

13  LSW and its appointed agent Gerald Wolfe.  KRALL lost more than $200,000 when

14  he surrendered the Policy on October 8, 2009. *See* Exhibit "D".

15 38. The aforementioned acts were performed by LSW with malice, fraud, and oppression

16  and were authorized and ratified by directors, officers and managing agents of

17  defendant compelling and warranting the imposition of punitive damages.

18           **SECOND CAUSE OF ACTION**

19            **(Negligent Misrepresentation)**

20 39. Plaintiff hereby repeats and realleges all of the foregoing paragraphs of this Third

21  Amended Complaint and incorporate the same as though fully set forth herein.

22 40. LSW negligently failed to reveal the accurate Accumulated Policy Value information

23  to Plaintiff KRALL, and intended by this misrepresentation and omission to induce

24  Plaintiff KRALL to alter his position and purchase the LSW Policy (Exhibit "A")

25  with the expectation that the income provided by such Policy would be greatly in

26  excess of the income LSW was aware was likely to be provided.  Plaintiff was

27  ignorant of the truth concealed by LSW, and acted in justifiable reliance on LSW's

28  misconduct in purchasing and paying on the Policy.

DONAHUE & HORROW, LLP

**THIRD CAUSE OF ACTION**

**(Unfair Competition)**

41. Plaintiff hereby repeats and realleges the foregoing paragraphs of this Third Amended Complaint and incorporate the same as though fully set forth herein.

42. As alleged herein, LSW prepared a false and misleading illustration that indicated a certain result even though LSW knew that such a result was not achievable thereby misleading consumers and misrepresenting what the Policy could actually do. LSW's Policy language itself also provided no language informing a reasonable person that its sales promises and representations should be ignored and were not true. Plaintiff relied on these materials, including LSW's affirmative false disclosure when evaluating whether to purchase the Policy.

43. After selling the Policy in this manner, and despite providing written literature and statements to Plaintiff encouraging the retention of the Policy, LSW did not inform Plaintiff that its illustrated result was not sustainable and that it was impossible for the results to occur as promised on the illustration.

44. As a result of Plaintiff's reasonable reliance on these representations and lack of knowledge of such false statements, Plaintiff purchased the Policy and suffered economic losses as outlined above and incorporated herein and consequential damages in an amount to be proven at the time of trial.

45. Such conduct constitutes unfair competition as defined under California law and *California Business & Professions Code* section 17200 et seq. ("UCL"), constituting unfair, fraudulent, and/or unlawful business practices, and further constitutes false advertising under *California Business & Professions Code* section 17500 et seq. and *California Insurance Code* section 790.03, et. seq. Plaintiffs have suffered the required injury in fact, and have lost money or property, as the result of LSW's misconduct described above, conferring Plaintiff with standing to proceed with this UCL claim.

\\\

DONAHUE & HORROW, LLP

**DONAHUE & HORROW, LLP**

46. Plaintiff respectfully requests that the Court enjoin LSW from future acts of those described herein and to apply equitable remedies to cure the harms suffered by Plaintiff and others as a proximate result of defendants' conduct.

47. Such injunctive relief will confer on the general public significant benefits. Such enforcement of these rights under their policies is necessary to halt defendants' conduct and to restore the benefits lost to thousands of covered persons, and the financial burden of such enforcement is, in the interests of justice, borne by the responsible parties. Thus, an award of attorney's fees for prosecution of this cause of action, and all fees incurred in proving the merits of same, to Plaintiff's counsel payable by defendants, is appropriate under *Code of Civil Procedure* section 1021.5 or upon any other basis approved by the Court.

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1. Compensatory damages against defendants in an amount to be proven at trial, including any damages as may be provided for by statute;

2. Punitive damages in an amount appropriate to punish or set an example of these defendants;

3. Reasonable attorneys' fees;

4. An injunction restraining LSW from engaging in the above-referenced UCL violations and notifying affected California policyholders of certain facts;

5. For costs of suit incurred herein; and

6. For such other and further relief as the court deems just and proper.


DATED: October 22, 2010                        DONAHUE & HORROW, LLP

                                               MICHAEL B. HORROW
                                               Attorneys for Plaintiff

\\\

**DONAHUE & HORROW, LLP**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

DATED: October 22, 2010

DONAHUE & HORROW, LLP

MICHAEL B. HORROW
Attorneys for Plaintiff

# EXHIBIT "A"

We, Life Insurance Company of the Southwest, agree to pay the Death Benefit to the Beneficiary, subject to the terms of this policy, when we receive at our Administrative Office due proof that the Insured died while this policy was in force.

Equity-Indexed Flexible Premium Adjustable Benefit Life Insurance. Flexible premiums are payable through the end of the Premium Payment Period or until the prior death of the Insured. The adjustable Death Benefit is payable upon the death of the Insured. This policy is nonparticipating.

Right to Review Policy. This policy, at any time within ten days after its receipt by the Owner, may be returned in person or by mail to us or to the agent through whom it was bought. Upon such return, the policy will be deemed void as of its Effective Date. We will then refund any premium paid.

| | |
|---|---|
| Effective Date: | 03/27/2007 |
| Policy Number: | LS0136686 |
| Face Amount: | $5,175,000 |
| Insured: | Bruce M Krall |
| Issue Age: | 47 |
| Owner: | As stated in the application unless later changed |
| Beneficiary: | As stated in the application unless later changed |

The data and the terms on this and all following pages are part of this policy.

This contract is a legal contract between the contract Owner and Life Insurance Company of the Southwest. READ YOUR POLICY CAREFULLY.

Signed for Life Insurance Company of the Southwest at Dallas, Texas, as of the Date of Issue, by

Chairman of the Board

President

Secretary



LIFE INSURANCE COMPANY OF THE SOUTHWEST

ADMINISTRATIVE OFFICE MAILING ADDRESS:
LIFE INSURANCE COMPANY OF THE SOUTHWEST, ONE NATIONAL LIFE DRIVE, MONTPELIER, VT 05604
CUSTOMER SERVICE: 800-732-8939

HOME OFFICE ADDRESS:
LIFE INSURANCE COMPANY OF THE SOUTHWEST, 1300 WEST MOCKINGBIRD LANE, DALLAS, TX 75247
LSW IS A STOCK COMPANY.

8212CA(0305)

# CUSTOMER SERVICE INFORMATION

We are here to serve you

As our policyholder, your satisfaction is very important to us. Should you have a valid claim, or any question about the policy or the premium for it, we fully expect to provide service promptly and fairly. If you do have any questions, please contact the agent who sold the policy or write or call our administrative offices:

<div align="center">

Life Insurance Company of the Southwest ("LSW")
One National Life Drive
Montpelier, Vermont 05604
Attention: Customer Service

Telephone: 1-800-732-8939

</div>

Should you feel you are not being treated fairly, we want you to know you may contact the California Department of Insurance with your complaint and seek assistance from the governmental agency that regulates insurance.

To contact the Department, write or call:

<div align="center">

Consumer Services Division
California Department of Insurance
300 So. Spring Street
Los Angeles, California 90013

Consumer Hotline: 1-800-233-9045

</div>

8016CA(0697)

Cat. No. 44699

UA53HM                                    DATA SECTION


POLICY NUMBER:  LS0136686              EFFECTIVE DATE:  MAR. 27, 2007
                                       MATURITY DATE:   MAR. 27, 2080

        INSURED:  BRUCE M KRALL

      ISSUE AGE:  47                        FACE AMOUNT:      $5175000

            OWNER: AS STATED IN THE APPLICATION UNLESS LATER CHANGED
      BENEFICIARY: AS STATED IN THE APPLICATION UNLESS LATER CHANGED

                       MONTHLY POLICY DATE: 27TH

                     DEATH BENEFIT OPTION: B

        MINIMUM MONTHLY PREMIUM:      $4641.36
        PLANNED PERIODIC PREMIUM:     $180000.00 PAYABLE ANNUALLY
    FOR PREMIUM PAYMENT PERIOD:  MAR. 27, 2007 TO MAR. 27, 2080

    THIS POLICY MAY TERMINATE PRIOR TO THE END OF THE PREMIUM PAYMENT PERIOD IF
    PREMIUMS PAID ARE INSUFFICIENT TO CONTINUE COVERAGE. PREMIUMS IN ADDITION
    TO THE PLANNED PERIODIC PREMIUM MAY BE NECESSARY TO KEEP THIS COVERAGE IN FORCE.

    POLICY LOANS AND WITHDRAWALS WILL REDUCE THE CASH SURRENDER VALUE OF THIS
    POLICY AND MAY RESULT IN TERMINATION OF THIS POLICY PRIOR TO THE DEATH OF
    THE INSURED.

              MINIMUM FACE AMOUNT:     $25000.00
                  WITHDRAWAL FEE:          $25.00 FOR EACH WITHDRAWAL

    ADDITIONAL BENEFIT RIDERS:
        RIDER FOR ACCELERATED BENEFITS 1
        RIDER FOR ACCELERATED BENEFITS 2
        RIDER FOR ACCELERATED BENEFITS 3
        OVERLOAN PROTECTION RIDER

    THE LOAN INTEREST RATE IS VARIABLE.  THE LOAN INTEREST RATE AT THE EFFECTIVE
    DATE IS  5.80%.

                                 DATA SECTION
                                 COVER PAGE

DATA SECTION

GUARANTEED BASIS OF CALCULATIONS

FACE AMOUNT:      $5175000
EFFECTIVE DATE:   MAR. 27, 2007

ACCUMULATED VALUE INTEREST RATE:   0.16516% COMPOUNDED MONTHLY, WHICH IS
                                   EQUIVALENT TO  2.00% COMPOUNDED PER YEAR

MORTALITY TABLE:   COMMISSIONERS 2001 CSO ULTIMATE MALE NON-SMOKER
                   AGE LAST BIRTHDAY

THE INSURED HAS BEEN CLASSIFIED A PREFERRED NON-TOBACCO.

TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
(PER $1,000 PER MONTH)

| ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE |
|---|---|---|---|---|---|
| 47 | .03710 | 72 | 2.60426 | 97 | 26.45342 |
| 48 | .04859 | 73 | 2.88497 | 98 | 28.14901 |
| 49 | .05963 | 74 | 3.18679 | 99 | 29.96423 |
| 50 | .07509 | 75 | 3.51565 | 100 | 31.70427 |
| 51 | .09497 | 76 | 3.88671 | 101 | 33.25265 |
| 52 | .34679 | 77 | 4.31857 | 102 | 34.90475 |
| 53 | .38431 | 78 | 4.82063 | 103 | 36.66691 |
| 54 | .43185 | 79 | 5.38383 | 104 | 38.53573 |
| 55 | .48524 | 80 | 6.01260 | 105 | 40.51145 |
| 56 | .54029 | 81 | 6.69705 | 106 | 42.61697 |
| 57 | .59369 | 82 | 7.42303 | 107 | 44.86020 |
| 58 | .64709 | 83 | 8.21697 | 108 | 47.25110 |
| 59 | .70967 | 84 | 9.10125 | 109 | 49.79713 |
| 60 | .78562 | 85 | 10.08656 | 110 | 52.50694 |
| 61 | .87827 | 86 | 11.17261 | 111 | 55.39319 |
| 62 | .98597 | 87 | 12.34897 | 112 | 58.46521 |
| 63 | 1.10372 | 88 | 13.60255 | 113 | 61.73550 |
| 64 | 1.22650 | 89 | 14.92103 | 114 | 65.21324 |
| 65 | 1.35433 | 90 | 16.23779 | 115 | 68.91186 |
| 66 | 1.48387 | 91 | 17.53725 | 116 | 72.84242 |
| 67 | 1.61928 | 92 | 18.90234 | 117 | 77.01849 |
| 68 | 1.76227 | 93 | 20.34569 | 118 | 81.45131 |
| 69 | 1.92286 | 94 | 21.87059 | 119 | 83.33333 |
| 70 | 2.11028 | 95 | 23.38520 | MATURITY | 83.33333 |
| 71 | 2.33795 | 96 | 24.86843 | DATE | |

DATA SECTION
FIRST OF FOUR PAGES

DATA SECTION

DEFINITION OF LIFE INSURANCE TEST: GUIDELINE PREMIUM TEST

GUIDELINE SINGLE PREMIUM:    $1323512.31
GUIDELINE LEVEL PREMIUM:     $281426.79

TABLE OF DEATH BENEFIT STANDARD FACTORS

| ATTAINED AGE | DEATH BENEFIT FACTOR | ATTAINED AGE | DEATH BENEFIT FACTOR | ATTAINED AGE | DEATH BENEFIT FACTOR |
|---|---|---|---|---|---|
| 47 | 2.030 | 59 | 1.340 | 71 | 1.130 |
| 48 | 1.970 | 60 | 1.300 | 72 | 1.110 |
| 49 | 1.910 | 61 | 1.280 | 73 | 1.090 |
| 50 | 1.850 | 62 | 1.260 | 74 | 1.070 |
| 51 | 1.780 | 63 | 1.240 | 75 - 90 | 1.050 |
| 52 | 1.710 | 64 | 1.220 | 91 | 1.040 |
| 53 | 1.640 | 65 | 1.200 | 92 | 1.030 |
| 54 | 1.570 | 66 | 1.190 | 93 | 1.020 |
| 55 | 1.500 | 67 | 1.180 | 94+ | 1.010 |
| 56 | 1.460 | 68 | 1.170 | | |
| 57 | 1.420 | 69 | 1.160 | | |
| 58 | 1.380 | 70 | 1.150 | | |

DATA SECTION
SECOND OF FOUR PAGES

DATA SECTION

FACE AMOUNT:    $5175000
EFFECTIVE DATE:  MAR. 27, 2007

AS OF THE EFFECTIVE DATE, THE FOLLOWING RATES ARE APPLICABLE TO INTEREST
CREDITING STRATEGIES TO WHICH YOU MAY DIRECT YOUR PREMIUM. THESE RATES
ARE IN EFFECT UNTIL FURTHER NOTICE.

FIXED-TERM STRATEGY
    FIXED-TERM SEGMENT LENGTH:    5 YEARS
    MINIMUM FIXED-TERM SEGMENT INTEREST RATE:    2.00% ANNUAL EFFECTIVE RATE
    INITIAL FIXED-TERM SEGMENT INTEREST RATE:    4.25% ANNUAL EFFECTIVE RATE


EQUITY INDEXED STRATEGY 1 - POINT TO POINT
    INDEX:    STANDARD & POOR'S 500
        INDEX
    EQUITY INDEXED TERM:    5 YEARS
    INITIAL PARTICIPATION RATE:    140%
    GUARANTEED MINIMUM PARTICIPATION RATE:    100%
    INITIAL INDEX EARNINGS CAP:    10.00%
    GUARANTEED MINIMUM INDEX EARNINGS CAP:    3.00%


EQUITY INDEXED STRATEGY 2 - POINT TO AVERAGE
    INDEX:    STANDARD & POOR'S 500
        INDEX
    EQUITY INDEXED TERM:    5 YEARS
    INITIAL PARTICIPATION RATE:    130%
    GUARANTEED MINIMUM PARTICIPATION RATE:    30%
    INITIAL INDEX EARNINGS CAP:    NO CAP
    GUARANTEED MINIMUM INDEX EARNINGS CAP:    NO CAP

DATA SECTION

FACE AMOUNT:      $5175000
EFFECTIVE DATE:  MAR. 27, 2007

PERCENT OF PREMIUM EXPENSE CHARGE: 5%

MONTHLY ADMINISTRATIVE CHARGE:     $2462.42

MONTHLY POLICY FEE:    $5.00

SURRENDER CHARGES

| POLICY YEAR | SURRENDER CHARGE |
|---|---|
| 1 | $98635.50 |
| 2 | 143709.75 |
| 3 | 127719.00 |
| 4 | 111728.25 |
| 5 | 95789.25 |
| 6 | 79850.25 |
| 7 | 63859.50 |
| 8 | 47920.50 |
| 9 | 31981.50 |
| 10 | 15990.75 |
| 11 AND LATER | 0.00 |

DATA SECTION
PRVR        LS0136686        FOURTH OF FOUR PAGES

DATA SECTION

ACCELERATED BENEFITS RIDER 1

POLICY NUMBER:          LS0136686

INSURED:                BRUCE M KRALL

EFFECTIVE DATE:         MAR. 27, 2007

MONTHLY COST:           NONE

DATA SECTION
ACCELERATED BENEFITS RIDER 1 - PAGE 1 OF 1

DATA SECTION

ACCELERATED BENEFITS RIDER 2

POLICY NUMBER:            LS0136686

INSURED:                  BRUCE M KRALL

EFFECTIVE DATE:           MAR. 27, 2007

MONTHLY COST:             NONE

DATA SECTION

ACCELERATED BENEFITS RIDER 3

POLICY NUMBER:            LS0136686

INSURED:                  BRUCE M KRALL

EFFECTIVE DATE:           MAR. 27, 2007

MONTHLY COST:             NONE

DATA SECTION

OVERLOAN PROTECTION RIDER

POLICY NUMBER :          LS0136686
INSURED        :          BRUCE M KRALL
EFFECTIVE DATE:           MAR. 27, 2007

THE INSURED HAS BEEN CLASSIFIED A PREFERRED NON-TOBACCO.

PERCENT OF ACCUMULATED VALUE EXERCISE CHARGE

| ATTAINED AGE | EXERCISE CHARGE PERCENTAGE | ATTAINED AGE | EXERCISE CHARGE PERCENTAGE | ATTAINED AGE | EXERCISE CHARGE PERCENTAGE |
|---|---|---|---|---|---|
| 75 | 3.33 | 84 | 3.88 | 93 | 1.75 |
| 76 | 3.40 | 85 | 3.94 | 94 | 0.89 |
| 77 | 3.47 | 86 | 4.00 | 95 | 0.90 |
| 78 | 3.55 | 87 | 4.03 | 96 | 0.91 |
| 79 | 3.60 | 88 | 4.10 | 97 | 0.93 |
| 80 | 3.65 | 89 | 4.13 | 98 | 0.94 |
| 81 | 3.73 | 90 | 4.17 | 99+ | 0.97 |
| 82 | 3.79 | 91 | 3.39 | | |
| 83 | 3.85 | 92 | 2.59 | | |

DATA SECTION
RIDER FOR OVERLOAN PROTECTION - PAGE 1 OF 1

# INDEX

| Section | Page |
|---|---|
| **GENERAL TERMS OF THIS POLICY** | |
| Consideration | 1 |
| Entire Contract | 1 |
| Representations | 1 |
| Incontestability | 1 |
| Policy Effective Dates | 2 |
| Policy Months, Years and Anniversaries | 2 |
| Misstatement of Age or Sex | 2 |
| Attained Age | 3 |
| Payment of Benefits | 3 |
| Postponement of Benefits | 3 |
| Basis of Values | 3 |
| Notices | 4 |
| Annual Report | 4 |
| Projection Report | 4 |
| **ROLES IN THIS POLICY** | |
| Owner | 4 |
| Beneficiary | 5 |
| Trust Beneficiary | 5 |
| Change of Beneficiary | 5 |
| Assignments | 6 |
| Spendthrift Provision | 6 |
| **PREMIUMS** | |
| Policy Protection Period | 6 |
| Payment of Premiums | 6 |
| Net Premium | 7 |
| Grace Period | 7 |
| Reinstatement | 9 |
| **DEATH BENEFIT AND POLICY CHANGES** | |
| Death Benefit | 10 |
| Death Benefit Options | 10 |
| Changes in Face Amount and Death Benefit Option | 11 |
| Suicide Limitation | 12 |
| **INTEREST CREDITING STRATEGIES** | |
| Basic Strategy | 13 |
| Fixed-Term Strategy | 13 |
| Equity-Indexed Strategies | 14 |

| Section | Page |
|---|---|
| **POLICY VALUES** | |
| Accumulated Value | 16 |
| Monthly Deduction | 16 |
| Monthly Cost of Insurance | 17 |
| **CASH SURRENDER AND WITHDRAWALS** | |
| Cash Surrender Value | 17 |
| Withdrawals | 18 |
| **POLICY LOANS** | |
| Policy Loans | 18 |
| Loan Value | 19 |
| Loan Interest Rate | 19 |
| General Loan Terms | 20 |
| **PAYMENT OPTIONS** | |
| Option Effective Date | 20 |
| General Payment Option Terms | 21 |
| Choice of Option | 21 |
| Change of Payment Option | 21 |
| Lump Sum Removal of Proceeds Applied Under a Payment Option | 21 |
| Option 1 -Payment of Interest Only | 22 |
| Option 2 -Payments for a Stated Time | 22 |
| Option 3 -Payments for Life | 23 |
| Option 4 -Payments of a Stated Amount | 25 |
| Option 5 - Life Annuity | 25 |
| Option 6 - Joint and Two-Thirds Annuity | 25 |
| Option 7 - 50% Survivor Annuity | 26 |

Any riders and Endorsements and a copy of the application, follow page 27

We, Life Insurance Company of the Southwest, agree to pay the Death Benefit to the Beneficiary, subject to the terms of this policy, when we receive at our Administrative Office due proof that the Insured died while this policy was in force.

# GENERAL TERMS OF THIS POLICY

### CONSIDERATION

This policy is issued in consideration of the application and payment of the first premium. We will incur no liability if no premium is paid.

### ENTIRE CONTRACT

On the Effective Date the entire contract between the parties is this policy and a copy of the application and all riders and endorsements which are attached at issue. Any change of this contract must be written and may be made only by one of our authorized officers or registrars. We will send the Owner a copy of any application for a change which we approve. It and any additional Data Section shall become part of this contract on the effective date of such change.

### REPRESENTATIONS

Any statement made by or for the Insured shall be deemed a representation and not a warranty. Unless such statement is in the attached application or in any subsequent application, it shall not be used to:

1. make this policy void; or
2. make any increase in Face Amount void; or
3. make any Reinstatement void; or
4. defend any claim.

### INCONTESTABILITY

After this policy has been in force during the life of the Insured for two years from the Effective Date of the policy, we will not contest it; however,

1. we may contest any increase in Face Amount for which an application is required until such increase has been in force during the life of the Insured for two years from its Effective Date; and
2. we may contest any Reinstatement until such Reinstatement has been in force during the life of the Insured for two years from its Effective Date.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

POLICY EFFECTIVE
DATES

> The insurance coverage goes into effect on the Effective Date shown in the Data
> Section.
>
> Any increase in Face Amount for which an application is required shall become
> effective on the Monthly Policy Date on or next following the date we approve
> the application for such increase in Face Amount.
>
> Any increase in Face Amount for which an application is not required shall
> become effective on the Monthly Policy Date on or next following the date we
> receive the request for such increase unless otherwise provided by the policy.
>
> Any decrease in Face Amount requested shall become effective on the Monthly
> Policy Date on or next following the date we receive the request for such
> decrease.
>
> Any Reinstatement of this policy shall become effective on the Monthly Policy
> Date on or next following the date we approve the application for
> Reinstatement.
>
> Any change of Death Benefit Option shall become effective on the Monthly
> Policy Date on or next following the date we receive the request for such
> change.

POLICY MONTHS,
YEARS AND
ANNIVERSARIES

> Policy Months, Years and Anniversaries shall be measured from the Effective
> Date. The Monthly Policy Date shown in the Data Section occurs on the same
> day each month or on the last day of any month having no such date. The
> Effective Date is the first Monthly Policy Date.

MISSTATEMENT OF
AGE OR SEX

> The Issue Age shown in the Data Section is the age of the Insured on his or her
> last birthday as of the Effective Date. It is based on the information shown in
> the application.
>
> If the age or sex of the Insured has been misstated, we will adjust the Face
> Amount to be the amount it would have been had the Monthly Deduction on
> the date the adjustment takes effect been based on the correct age and sex of the
> Insured. The adjustment shall take effect on the Monthly Policy Date on or next
> following the date we receive proof to our satisfaction of such misstatement. If
> the Insured has died, we will adjust the Face Amount as of the last Monthly
> Policy Date prior to the Insured's death.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305) *Page 2*

ATTAINED AGE

The Attained Age of the Insured on any date is the Issue Age shown in the Data Section plus the number of Policy Years and Months which have passed since the Effective Date.

PAYMENT OF
BENEFITS

We will pay all benefits under this policy at our Administrative Office. Before payment of any Death Benefit we may investigate the death.

POSTPONEMENT OF
BENEFITS

We may delay payment of any amounts which are payable as a result of Cash Surrender or Withdrawal for up to six months after we receive written request in a form satisfactory to us. If we defer such payment for more than 30 days, we will pay interest at a rate not less than 2.00% per year or as mandated by state law, from the date we receive such request to the date of payment.

We may also delay payment of any amounts which are payable as a result of a Policy Loan for up to six months after we receive written request in a form satisfactory to us.

We have the right to postpone payment which is derived from any amount recently paid to us by check or draft, until we are satisfied the check or draft has been paid by the bank or other financial institution on which it is drawn.

BASIS OF VALUES

The guaranteed values for this policy are equal to or greater than those required by the law of the state where this policy is delivered. The guaranteed values are based on the Accumulated Value Interest Rate and Mortality Table shown in the Data Section. A detailed statement of the method of computing values has been filed in the state in which this policy is delivered.

This policy meets the minimum nonforfeiture requirements of the state where this policy is delivered.

The Paid Up Annuity Values, and all tabled values in Payment Options, are based on the 2000 Table for Individual Annuitant Mortality (IAM) and compound interest at a rate of 1.50% per year.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)                                                                                     *Page 3*

NOTICES

Unless this policy provides otherwise, any requests for changes or notices:

1. from us to the Owner shall be sent to the last address known to us of the Owner; and
2. from us to an assignee shall be sent to the last address known to us of such assignee; and
3. from the Owner or an assignee to us must be in writing and received by us at our Administrative Office in Montpelier, Vermont.

ANNUAL REPORT

At least once each Policy Year we will send a report to the Owner. The report will show, as of its date:

1. the Accumulated Value; and
2. the Cash Surrender Value; and
3. any debt to us on this policy; and
4. the Death Benefit.

The report will also show a summary of transactions of the previous year and any information required by law.

PROJECTION
REPORT

The Owner may request, in writing, a report which projects future values and future Death Benefits for this policy. The report will also show any information required by law. We may charge a fee for the report, not to exceed $25. The Projection Report will be based on:

1. data the Owner gives us as to Face Amount and premiums; and
2. such assumptions as either the Owner or we specify.

# ROLES IN THIS POLICY

OWNER

The Owner may:

1. exercise the rights under this policy; and
2. assign the policy; and
3. release or discharge the policy; and
4. change the policy if we agree to such change; and
5. enjoy the benefits under this policy.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

These actions may be taken without the consent and against the interest of any Beneficiary and any contingent owner. If the Owner cannot change the Beneficiary, these actions may be taken only by the Owner and the Beneficiary jointly. These actions may be taken only while the Insured is alive.

BENEFICIARY

The Owner has the right to change the Beneficiary. If the Owner expressly waives this right, no change can be made. Unless later changed, the Beneficiary shall be as stated in the application. The interest of any Beneficiary who dies before the Insured shall vest in the Owner unless otherwise stated.

If used, the term "children" of any person shall include only lawful children born to or legally adopted by that person.

We may rely on an affidavit by any person who in our judgment knows the facts to identify any Beneficiary or payee not specified by name. All our liability shall cease when we pay on the basis of such affidavit.

TRUST
BENEFICIARY

Unless an authorized officer or registrar of the Company explicitly agrees in writing, the following provision shall apply when a trust is named as Beneficiary.

In no event is the Company responsible for the application or disposition of any proceeds it pays to a Trust Beneficiary. Payment to a Trust Beneficiary is a full discharge of the liability of the Company. If a designated trust provides for successor trustees, the designation in this policy includes successor trustees. Likewise, if the trust allows amendments, the trust, if so amended, remains as a designated Beneficiary.

A Trust Beneficiary is considered to be a Beneficiary who did not survive the Insured if:

1. the trust has been terminated; or
2. the specified testamentary trust does not qualify as such; or
3. for any other reason a Trust Beneficiary is not entitled to any proceeds.

CHANGE OF
BENEFICIARY

If the Owner has the right, a new Beneficiary may be named from time to time during the life of the Insured by filing at our Administrative Office written notice in such form as we may require. When notice is received at our Administrative Office, the change shall take effect on the date the notice is signed whether or not the Insured is living at the time of receipt. We will not be liable for any payment we make before receipt of the written notice at our Administrative Office.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

ASSIGNMENTS

We are not responsible for the validity or effect of any assignment of this policy. We will not recognize any assignment until it has been filed at our Administrative Office. The interest of any Beneficiary whom the assignor can change and of any contingent owner shall be transferred to the assignee by the terms of any assignment. If the assignee acquires a right to proceeds, they shall be paid in one sum even though a Payment Option may be in effect at the time the assignment was signed.

SPENDTHRIFT
PROVISION

If we receive at our Administrative Office written request by the Owner for this Spendthrift Provision, then, to the extent allowed by law:

1. only the Owner may transfer, anticipate, commute, or encumber the proceeds of this policy; and
2. only legal process against the Owner may affect the proceeds of this policy.

Any proceeds payable after this request is withdrawn by the Owner shall not be affected by this provision.

# PREMIUMS

POLICY
PROTECTION
PERIOD

The first 60 policy months following the Effective Date of this policy is referred to as the Policy Protection Period. An increase in coverage does not initiate a new Policy Protection Period.

PAYMENT OF
PREMIUMS

The first premium is due on the Date of Issue. This first premium cannot be less than the Minimum Monthly Premium shown in the Data Section.

During the Policy Protection Period the payment of cumulative premiums, in excess of withdrawals and loans, at least equal to the Minimum Monthly Premiums payable since the Effective Date of the policy will keep the policy in force to the next Monthly Policy Date, as long as the Accumulated Value is sufficient to provide for Monthly Deductions. Otherwise, this policy will remain in force as long as the Cash Surrender Value is sufficient to provide for Monthly Deductions.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

The Planned Periodic Premiums are the premiums the Applicant has chosen to pay. Planned Periodic Premiums may be paid on an annual, semi-annual, quarterly, or monthly basis. The Owner may change the amount or frequency of such premiums at any time by sending a written notice to us at our Administrative Office. However, we may limit any increase in either amount or frequency.

Premiums in addition to the Planned Periodic Premiums may be necessary to keep this policy and the coverages provided by this policy and any additional benefit riders in force.

We will accept Unscheduled Premiums, which are premiums in addition to the Planned Periodic Premiums. We may limit the number and amount of Unscheduled Premiums.

All premiums are limited by a minimum and a maximum. The minimum is $25 per premium. The maximum is the limit imposed by the Internal Revenue Code for qualifying the policy as "Life Insurance" for Federal Income Tax purposes, or such lower amount as we may set. We will not accept any premium in excess of the maximum. We will return any premiums not accepted and any interest credited to such premiums to the Owner within 60 days after the end of the Policy Year in which the premiums were received.

The first premium may be paid to us either through our duly authorized agent in exchange for a receipt signed by that agent or at our Administrative Office. All later premiums must be paid to us at our Administrative Office.

No premium will be accepted on or after the Maturity Date.

NET PREMIUM

A Net Premium is determined by multiplying a premium received times 1 minus the Percent of Premium Expense Charge stated in the Data Section.

GRACE PERIOD

If on any Monthly Policy Date the Cash Surrender Value is less than the Monthly Deduction on such date, a Grace Period shall start, unless:

1. the policy is within the Policy Protection Period; and
2. the Accumulated Value less any debt to us on this policy is greater than the Monthly Deduction on that date; and
3. the cumulative premiums paid since the policy's Effective Date, less any withdrawals and less any debt to us on this policy, are greater than or equal to the cumulative Minimum Monthly Premiums due since the policy's Effective Date.

A Grace Period shall be 61 days. During a Grace Period this policy shall remain in force.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

The premium needed to keep the policy in force beyond a Grace Period which ends during the Policy Protection Period shall equal the greater of (a) or (b) where:

    a)   equals the sum of the Minimum Monthly Premiums in effect on the policy over all of the months from the Effective Date of the policy to the start of the Grace Period, plus all withdrawals, plus three times the Minimum Monthly Premium in effect at the beginning of the Grace Period, plus any debt to us on this policy, less all premiums paid; and where

    b)   equals the premium which will be sufficient to produce an Accumulated Value, net of policy debt, equal to two times the Monthly Deduction due on the date the Grace Period began.

The premium needed to keep the policy in force beyond a Grace Period which ends after the Policy Protection Period shall be the premium sufficient to produce a Cash Surrender Value equal to three times the Monthly Deduction due on the date the Grace Period began.

We will mail notice of the premium needed to the Owner. If such premium is unpaid on the later of:

1. the last day of the Grace Period; or
2. the 31ˢᵗday after such notice is sent;

then this policy shall terminate without value.

A Grace Period will not begin solely because payments of Planned Periodic Premiums are discontinued. Whether or not premiums are paid, Monthly Deductions will be made from the Accumulated Value. No interest will be credited to this policy during a Grace Period. The terms of this Grace Period provision will determine if and when a Grace Period starts.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)          *Page 8*

REINSTATEMENT

If this policy terminates after the end of a Grace Period, it may be reinstated. It must be reinstated on a Monthly Policy Date within five years from the start of such Grace Period and prior to the Maturity Date.

For Reinstatement we will require:

1. an application for Reinstatement; and
2. proof to our satisfaction that the Insured is insurable; and
3. payment of an amount determined as follows:

    a) If Reinstatement occurs during a Policy Protection Period, the required payment shall be an amount equal to the premium which will be sufficient to produce an Accumulated Value, net of policy debt, four times the Monthly Deduction due on the date the Grace Period began, or, if greater:

        i. the sum of the Minimum Monthly Premiums in effect on the policy over all the months from the Effective Date of this policy to the start of the Grace Period; plus
        ii. all withdrawals; plus
        iii. three times the Minimum Monthly Premium shown in the Data Section; plus
        iv. any debt to us on this policy; less
        v. all premiums paid.

    b) If Reinstatement occurs after the Policy Protection Period, the required payment shall be a premium which will make the Cash Surrender Value sufficient to provide:

        i. two times the Monthly Deduction due on the date the Grace Period began; plus
        ii. three times the Monthly Deduction due on the date of Reinstatement.

We will send the Owner notice of the required payment upon request.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)
*Page 9*

In the event of Reinstatement:

1. the Accumulated Value of the policy at the time of final lapse will be restored along with the Cash Value available for deductions at the time that the Grace Period began; and
2. the schedule of Surrender Charges for the policy months following the date the Grace Period began shall become the schedule of Surrender Charges for the policy months following the date of Reinstatement; and
3. the schedule of Monthly Administrative Charges per Thousand for the policy months following the date the Grace Period began shall become the schedule of Monthly Administrative Charges per Thousand for the policy months following the date of Reinstatement.

# DEATH BENEFIT AND POLICY CHANGES

## DEATH BENEFIT

We will pay the Death Benefit to the Beneficiary when we receive at our Administrative Office due proof that the Insured died while this policy was in force. We will pay the Death Benefit in one sum unless a Payment Option is chosen. If the Death Benefit is paid in one sum, it shall be increased by interest from the date of the Insured's death to the date of payment. We will set the rate of interest at not less than 2.00% per year or as mandated by state law.

## DEATH BENEFIT OPTIONS

The Owner may elect either of two Death Benefit Options, Option A or Option B, for the period prior to the Insured's Attained Age 120. The Death Benefit Option is stated in the Data Section.

Option A. Under Option A, the Death Benefit is equal to the greater of:

1. the Face Amount of the policy on the date of the Insured's death; or
2. the Death Benefit Factor shown in the Data Section multiplied by the Accumulated Value on the date of the Insured's death;

less the amount of any Monthly Deductions then due and any debt to us on this policy.

Option B. Under Option B, the Death Benefit is equal to the greater of:

1. the Face Amount plus the Accumulated Value of the policy on the date of the Insured's death; or
2. the Death Benefit Factor shown in the Data Section multiplied by the Accumulated Value on the date of the Insured's death;

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

less the amount of any Monthly Deductions then due and any debt to us on this policy.

**CHANGES IN FACE AMOUNT AND DEATH BENEFIT OPTION**

The Owner may request any of the following changes. We will make a change subject to the conditions stated. These changes may be made only while the Insured is living and after the first Policy Anniversary. We will send the Owner a revised or additional Data Section if any of these changes is made.

Face Amount Increases. We will require an application from the Owner and proof to our satisfaction that the Insured is then insurable. An increase in Face Amount must satisfy the minimum Face Amount requirements of the policy and shall be effective upon the Monthly Policy Date on or next following our approval.

Face Amount Decreases. We will require a written request from the Owner. A decrease in Face Amount shall be effective upon the Monthly Policy Date on or next following our receipt of the request.

Decreases shall not be permitted which would reduce the sum of the Face Amount to less than any of the following:

1. the minimum insurance amount for which the policy would qualify as "Life Insurance" for Federal Income Tax purposes under the Internal Revenue Code; or
2. the Minimum Face Amount shown in the Data Section; or
3. 75% of the largest total Face Amount in force at any time in the twelve policy months prior to our receipt of the request.

A decrease in Face Amount will affect units of Face Amount in the reverse order in which they were created.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)                                                                                   *Page 11*

Death Benefit Option Changes.The Death Benefit Option may be changed once each Policy Year after the first Policy Anniversary prior to the Insured's Attained Age 120. We will require a written request from the Owner. A change will be effective on any Monthly Policy Date requested. The change may be made only if after such change the policy would qualify as "Life Insurance" for Federal Income Tax purposes under the Internal Revenue Code. The Minimum Monthly Premium will be recomputed to reflect the change in Options.

1. Upon a change from Option A to Option B, the Face Amount shall decrease by an amount equal to the Accumulated Value of the policy just prior to the Effective Date of the change. However, the change may be made only if after such change the Face Amount would not be less than the Minimum Face Amount shown in the Data Section.

2. Upon a change from Option B to Option A, the Face Amount shall increase by an amount equal to the Accumulated Value just prior to the Effective Date of the change. No additional Surrender Charges shall be imposed solely because of this change.

**SUICIDE
LIMITATION**

If the Insured dies within two years of the Effective Date as the result of suicide, while sane or insane, we will pay only a sum equal to:

1. the premiums paid; less
2. any withdrawals made; less
3. any debt to us on this policy.

A similar two-year period shall apply to any increase in Face Amount for which an application is required. Such period shall begin on the Effective Date of any such increase. During such period if the Insured dies as the result of suicide, while sane or insane, we will pay, in lieu of any such increase in Face Amount, only a sum equal to the Cost of Insurance that we have deducted from the Accumulated Value for such increase.

Payment will be made to the Beneficiary.

If this policy is reinstated, a similar two-year period shall start from the Effective Date of Reinstatement. During such period, if the Insured dies as the result of suicide, while sane or insane, we will pay only a sum equal to:

1. the premiums paid since the Effective Date of Reinstatement; less
2. any withdrawals made since the Effective Date of Reinstatement; less
3. any debt to us on this policy.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

# INTEREST CREDITING STRATEGIES

Accumulated Value in this policy is apportioned into one or more segments distinguished by their interest crediting strategies. Four interest crediting strategies are made available under this policy.

### BASIC STRATEGY

Interest will be credited to the Accumulated Value in the Basic Strategy on a daily basis at a rate not less than 2.00% per year.

The Basic Strategy Minimum Value for a Policy Year is equal to 12.5 times the Monthly Deduction due on the first day of that Policy Year. It will remain unchanged until the first day of the next Policy Year.

All Net Premiums are paid into the Basic Strategy. On the 21st day of each month, the Accumulated Value in the Basic Strategy that is in excess of the Basic Strategy Minimum Value, subject to a minimum amount of $50.00, will be transferred to one or more of the following three interest crediting strategies according to an allocation selected by the Applicant at the time of policy application. The Owner has the right to change the allocation selection.

### FIXED-TERM STRATEGY

Each transfer of Accumulated Value made to this strategy creates a distinct Fixed-Term Segment. Each Fixed-Term Segment will have a duration of five years. Interest will be credited to the Accumulated Value in each Fixed-Term Segment on a daily basis at a rate not less than 2.00% per year. Interest rates payable on Accumulated Value in any given segment may vary over the lifetime of that segment, and different Fixed-Term Segments may be credited interest at different rates.

Accumulated Value cannot be transferred out of any Fixed-Term Segment prior to the end of its five-year duration unless the interest rate credited to Accumulated Value in such segment falls below the interest rate initially credited to the segment. Under that scenario, the Owner may request that the Accumulated Value in this Fixed-Term Segment be immediately transferred to the Basic Strategy. Otherwise, the Accumulated Value within a segment will be automatically transferred to the Basic Strategy at the end of the segment's five-year duration.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

EQUITY-INDEXED
STRATEGIES

Each transfer of Accumulated Value made to an Equity-Indexed Strategy creates a distinct Equity-Indexed Segment. Each Equity-Indexed Segment will have a duration of five years. Index Earnings will be credited to the Accumulated Value in each segment on each anniversary of the creation of that segment.

**Equity-Indexed Strategy 1 (Point-to-Point).** Index Earnings will be credited to Accumulated Value in each segment within this Equity-Indexed Strategy on each anniversary of the creation of that segment based on the performance of the Index on such anniversary.

**Equity-Indexed Strategy 2 (Point-to-Average).** Index Earnings will be credited to Accumulated Value in each segment within this Equity-Indexed Strategy on each anniversary of the creation of that segment based on the performance of the Index averaged throughout the preceding twelve months.

**Index.** Index refers to the Standard & Poor's 500 Index, excluding dividend income. It will be used in the determination of Index Earnings made to each segment within an Equity-Indexed Strategy. If the publication of the Index is discontinued, a suitable index will be substituted and you will be notified of such index.

**Index Value.** The Index Value as of any date is the published value of the Index at the close of business on that date. If no value was published on that date, the last published value of the Index will be used.

**Annual Index Growth.** The Annual Index Growth for an Equity-Indexed Segment is calculated on each anniversary of the creation of that segment.

The Annual Index Growth for the Equity-Indexed Strategy 1 is the following:

1. the Index Value as of the current anniversary of the Equity Indexed Segment; minus
2. the Index Value as of the preceding anniversary of the Equity Indexed Segment; this difference divided by
3. the Index Value as of the preceding anniversary of the Equity Indexed Segment.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)                                                                                      Page 14

Annual Index Growth for the Equity-Indexed Strategy 2 is the following:

1. the sum of the Index Values for each day the Index Value was published between the preceding anniversary of the Equity-Indexed Segment and the current anniversary of the Equity-Indexed Segment, excluding the Index Value for the preceding anniversary but including the Index Value for the current anniversary; divided by

2. the number of days the Index Value was published between the preceding anniversary and the current anniversary excluding the preceding anniversary but including the current anniversary; minus

3. the Index Value as of the preceding anniversary of the Equity-Indexed Segment; this difference divided by

4. the Index Value as of the preceding anniversary of the Equity-Indexed Segment.

**Participation Rate.** Each Equity-Indexed Segment will have a Participation Rate. The Participation Rate is determined in advance for each twelve-month period and is subject to change on each anniversary of the creation of a segment. The Participation Rate will never be less than the Guaranteed Minimum Participation Rate for the applicable strategy shown in the Data Pages.

**Index Earnings Cap.** Each Equity-Indexed Segment will have an Index Earnings Cap. The Index Earnings Cap is determined in advance for each twelve-month period and is subject to change on each anniversary of the creation of a segment. The Index Earnings Cap for a segment will never be less than the Guaranteed Minimum Cap for the applicable strategy shown in the Data Pages.

**Index Earnings.** The Index Earnings for each Equity-Indexed Segment are calculated on each anniversary of the creation of a segment as follows:

1. the Annual Index Growth for the segment multiplied by the segment's Participation Rate, with this product adjusted so that it is no less than zero and no greater than the segment's Index Earnings Cap; multiplied by

2. the value of the Equity-Indexed Segment at the end of the previous day.

Index Earnings are not calculated or credited between anniversaries of a given segment.

On the fifth anniversary of each Equity-Indexed Segment, Index Earnings will be increased as necessary so that the annual rate of Index Earnings over the five-year length of the segment is at least equal to the guaranteed minimum rate of 2.00%.

The Owner may not elect to transfer Accumulated Value in an Equity-Indexed Segment out of that segment prior to its fifth anniversary. On the fifth anniversary of the creation of a segment, the Accumulated Value in the Equity-Indexed Segment is automatically transferred to the Basic Strategy.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

If the Accumulated Value of the policy is being calculated in connection with the termination of the policy, the Index Earnings for each Equity-Indexed Segment over all full years completed during its elapsed duration will be increased as necessary so that the annual rate of Index Earnings over those full years is at least equal to 2.00%.

# POLICY VALUES

ACCUMULATED
VALUE

The Accumulated Value on the policy Effective Date is the initial Net Premium minus the initial Monthly Deduction.

The Accumulated Value on any other date is equal to the sum of the values of the Basic Strategy, the Fixed-Term Strategy, the Equity-Indexed Strategy 1, and the Equity-Indexed Strategy 2.

MONTHLY
DEDUCTION

The Monthly Deduction due on a Monthly Policy Date shall be the Monthly Cost of Insurance, plus the Monthly Administrative Charge Per Thousand Dollars of Face Amount, plus the Monthly Policy Fee, plus the monthly cost of any additional benefit riders in force on this policy.

Monthly Deductions will be taken from the Accumulated Value of the policy in the following order:

1. first, from the Basic Strategy until exhausted;
2. second, from the Fixed-Term Strategy until exhausted;
3. third, from the Equity Indexed Strategy 2 until exhausted;
4. fourth, from the Equity Indexed Strategy 1 until exhausted.

If the Fixed-Term Strategy and/or the Equity Indexed Strategies have multiple segments, deductions are made in the reverse order in which the segments were created.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

MONTHLY COST
OF INSURANCE

The Monthly Cost of Insurance shall be based on the risk classification and duration of this policy, and the Insured's sex and Issue Age.

The Monthly Cost of Insurance for a given segment is equal to:

1. the applicable Monthly Cost of Insurance Rate; multiplied by
2. the excess of:

   a) the Death Benefit plus any debt to us on such date, divided by the sum 1 plus the monthly Accumulated Value Interest Rate shown in the Data Section; over
   b) the Accumulated Value of this policy on such date.

# CASH SURRENDER AND WITHDRAWALS

CASH SURRENDER
VALUE

The Owner may, by written request to us, surrender this policy while the Insured is living for its Cash Surrender Value. We may require that the policy be returned to us. When this policy has been surrendered, it shall be null and void and all rights shall cease.

The Cash Surrender Value on any day shall be equal to:

1. the Accumulated Value on such day; less
2. any Surrender Charge which applies on such day; less
3. any debt to us on this policy.

The Surrender Charges are shown in the Data Section.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

WITHDRAWALS

After the first Policy Anniversary and prior to the last day of the Premium Payment Period, the Owner may make withdrawals by written request to us. Withdrawals shall be subject to all of the following terms.

1. Withdrawals may be made only on a Monthly Policy Date which follows receipt of such request.
2. A Withdrawal Fee of $25.00 will be charged for each withdrawal made.
3. The amount withdrawn may not exceed the Cash Surrender Value on the Monthly Policy Date less three times the Monthly Deduction for such Monthly Policy Date.
4. The Accumulated Value will be decreased by the amount of the withdrawal.
5. If Death Benefit Option A is in effect on the date of the withdrawal, the Face Amount of the policy will be reduced by an amount equal to the amount of the withdrawal plus the Withdrawal Fee.

Withdrawals, including the Withdrawal Fee, are made from the Accumulated Value in the following order:

1. first, from the Basic Strategy until exhausted;
2. second, from the Fixed-Term Strategy until exhausted;
3. third, from the Equity Indexed Strategy 2 until exhausted;
4. fourth, from the Equity Indexed Strategy 1 until exhausted.

If the Fixed-Term Strategy and/or the Equity Indexed Strategies have multiple segments, withdrawals are made in the reverse order of which the segments were created.

We may defer payment of any withdrawal for not more than six months. If we defer such payment for more than 30 days, we will pay interest from the date we receive such request to the date of payment at a rate not less than 2.00% or as mandated by state law.

# POLICY LOANS

POLICY LOANS

We will loan an amount up to the Loan Value of the policy less the amount of any outstanding debt, at any time after the first Policy Year. At the time of the loan the policy must be in force. The policy shall be the sole security for the loan and must be duly assigned to us.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

## LOAN VALUE

The Loan Value on any day is equal to:

1. the Accumulated Value on such day; less
2. the Surrender Charge on such day; less
3. three times the Monthly Deductions due on the most recent prior Monthly Policy Date.

## LOAN INTEREST RATE

Any loan shall bear interest from the date the loan is made. The Loan Interest Rate may change from Policy Year to Policy Year.

The Loan Interest Rate on the Effective Date of the policy is stated in the Data Section. Such rate shall apply to any debt to us on this policy until the rate is changed by us. We may change the Loan Interest Rate only on a Policy Anniversary, after which the changed rate will apply to any new or existing debt to us on the policy. The Loan Interest Rate is subject to a minimum annual interest rate of 3.00% and shall not exceed the Maximum Rate allowed. The Maximum Rate allowed is the greater of:

1. the Published Monthly Average for the calendar month ending two months before the calendar month in which the Policy Anniversary occurs; or
2. the yearly Accumulated Value Interest Rate shown in the Data Section plus 1%.

The Published Monthly Average shall be the Moody's Corporate Bond Yield Average - Monthly Average Corporates, as published by Moody's Investors Service, Inc., or any successor to it. If at any time that Published Monthly Average is no longer published, a substantially similar average, established under the law of the state where this policy was delivered, shall be used.

If on any Policy Anniversary the Maximum Rate then allowed is at least 0.50% per year less than the Loan Interest Rate in effect for this policy during the prior Policy Year, we will decrease the Loan Interest Rate for this policy. If on any Policy Anniversary the Maximum Rate then allowed is at least 0.50% per year more than the Loan Interest Rate in effect on this policy during the prior Policy Year, we may increase such Loan Interest Rate. If increased, it shall be increased to a rate not greater than the Maximum Rate then allowed.

We will give to the Owner:

1. notice of the Loan Interest Rate in effect for this policy at the time a loan is made; and
2. at least 30 days' advance notice of any increase in the Loan Interest Rate, if there is any debt to us on this policy.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

In no event shall the Loan Interest Rate exceed the highest loan interest rate allowed by law of the state in which this policy is delivered.

**GENERAL LOAN
TERMS**

After the loan is made, loan interest shall be due on the next and all later Policy Anniversaries. If any interest is not paid when due, it shall be added to the loan and bear interest on the same terms.

The debt secured by this policy includes loans, unpaid loan interest and accrued loan interest not otherwise due.

All or any part of the debt may be paid to us at any time prior to:

1. the death of the Insured; and
2. surrender of the policy.

However, during a Grace Period the debt may not be repaid. Unless the Owner specifies, any payment to us shall be deemed a premium payment and not payment of the debt. At the death of the Insured or upon the surrender of the policy, all debt shall become due at once. It shall be paid from the policy values.

We may defer any policy loan, other than one to pay premiums on our policies, for not more than six months.

# PAYMENT OPTIONS

In lieu of a lump sum settlement, all or part of the proceeds of this policy may be applied under a Payment Option. When proceeds are applied under a Payment Option, all other rights and benefits under this policy shall cease.

In addition to the following options, other payment options may be available.

**OPTION EFFECTIVE
DATE**

The Option Effective Date is the date the proceeds become payable.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

**GENERAL PAYMENT OPTION TERMS**

If the proceeds to be placed under a Payment Option are less than $5,000, we may pay them in one sum to the payee who otherwise would receive the first payment under the option. If any payments would be less than $100, we will change the frequency to provide payments of at least $100.

If the proceeds are assigned on the Option Effective Date, we will pay the assignee's share in one sum and place only the balance under the option. After the Option Effective Date neither the payments nor the remaining value may be assigned or encumbered. To the extent the law permits, they are not subject to any claims against the payee.

We may require proof to our satisfaction that any payee is alive on the date any payment is due.

**CHOICE OF OPTION**

Choice of an option may be made:

1. by the Owner if the Insured is living; or
2. by the Beneficiary if the Insured is not living and if no option is in effect.

Equivalent payments for 12-, 6-, 3-, or 1-month intervals may be chosen. The options are described in terms of monthly payments. We will quote the amount of other payments on request.

We may issue a document stating the terms of the option.

**CHANGE OF PAYMENT OPTION**

The right to change Payment Options exists under Options 1, 2, and 4. At the time of change the remaining value under the old option shall become the proceeds to be placed under the new option.

**LUMP SUM REMOVAL OF PROCEEDS APPLIED UNDER A PAYMENT OPTION**

Lump sum payments may be taken from the remaining proceeds placed under Payment Options 1, 2, and 4.

Under Options 1 and 4 all or any part of the remaining value may be taken at any time, though no more than four transactions may be made during any calendar year.

*Life Insurance Company of the Southwest*

*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

Under Option 2 the entire remaining value may be taken at any time.

No lump sum removal of proceeds may be made under Options 3, 5, 6, or 7.

**OPTION 1
-PAYMENT OF
INTEREST ONLY**

Interest at a rate of 1.50% per year shall be paid either for:

1. the life of a chosen human being; or
2. a chosen period.

We may pay more interest in any given year. Upon the earlier of the death of the chosen human being or the end of the chosen period, any remaining value will be paid. The first payment shall be made one month after the Option Effective Date. If the payee is not a human being, payments may not continue for more than 30 years.

**OPTION 2
-PAYMENTS FOR A
STATED TIME**

Equal monthly payments shall be made for a stated number of years. The first payment shall be made on the Option Effective Date. The amount of each monthly payment is shown in the table. The monthly payments are based on an interest rate of 1.50% per year. We may pay more interest in any year.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

Option 2 Table
Monthly Payments for Each $1,000 of Proceeds

| Stated Number of Years | Monthly Payments |
|---|---|
| 5 | 17.28 |
| 6 | 14.51 |
| 7 | 12.53 |
| 8 | 11.04 |
| 9 | 9.89 |
| 10 | 8.96 |
| 11 | 8.21 |
| 12 | 7.58 |
| 13 | 7.05 |
| 14 | 6.59 |
| 15 | 6.20 |
| 16 | 5.85 |
| 17 | 5.55 |
| 18 | 5.27 |
| 19 | 5.03 |
| 20 | 4.81 |
| 21 | 4.62 |
| 22 | 4.44 |
| 23 | 4.28 |
| 24 | 4.13 |
| 25 | 3.99 |
| 26 | 3.86 |
| 27 | 3.75 |
| 28 | 3.64 |
| 29 | 3.54 |
| 30 | 3.44 |

OPTION 3
-PAYMENTS FOR
LIFE

Equal monthly payments shall be made for any guaranteed period chosen and thereafter during the life of a chosen human being. The first payment shall be made on the Option Effective Date. The amount of each monthly payment depends on the age and sex of the chosen human being on the Option Effective Date and on any guaranteed period chosen. We may require proof to our satisfaction of such age. We may require like proof that such human being is alive on the date any payment is due. The guaranteed period may be five or ten years or a Refund period. A Refund period extends until the sum of the payments is equal to the proceeds placed under the option. The monthly payments are based on an interest rate of 1.50% per year. We may pay more interest in any year during the guaranteed period. We will quote the amount of monthly payments for lower ages and guaranteed periods not shown in the Option 3 Table on request.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

Option 3 Table
Monthly Payments for Each $1,000 of Proceeds

(Amounts shown are for the age nearest birthday on the Option Effective Date)

Guaranteed Period

| | Male | | | Female | | |
|---|---|---|---|---|---|---|
| Age | None | 10 Years | Refund | None | 10 Years | Refund |
| 50 | $3.24 | $3.22 | $3.02 | $3.00 | $2.99 | $2.86 |
| 51 | 3.31 | 3.29 | 3.08 | 3.06 | 3.05 | 2.91 |
| 52 | 3.39 | 3.36 | 3.13 | 3.13 | 3.11 | 2.96 |
| 53 | 3.47 | 3.44 | 3.19 | 3.19 | 3.18 | 3.02 |
| 54 | 3.55 | 3.51 | 3.25 | 3.26 | 3.25 | 3.07 |
| 55 | 3.63 | 3.60 | 3.31 | 3.34 | 3.32 | 3.13 |
| 56 | 3.73 | 3.68 | 3.38 | 3.41 | 3.39 | 3.19 |
| 57 | 3.82 | 3.77 | 3.45 | 3.50 | 3.47 | 3.26 |
| 58 | 3.92 | 3.87 | 3.52 | 3.58 | 3.56 | 3.32 |
| 59 | 4.03 | 3.97 | 3.60 | 3.68 | 3.64 | 3.39 |
| 60 | 4.15 | 4.07 | 3.67 | 3.78 | 3.74 | 3.46 |
| 61 | 4.27 | 4.19 | 3.76 | 3.88 | 3.83 | 3.54 |
| 62 | 4.40 | 4.30 | 3.84 | 3.99 | 3.94 | 3.62 |
| 63 | 4.54 | 4.42 | 3.93 | 4.11 | 4.05 | 3.70 |
| 64 | 4.69 | 4.55 | 4.02 | 4.23 | 4.16 | 3.79 |
| 65 | 4.85 | 4.69 | 4.12 | 4.37 | 4.28 | 3.88 |
| 66 | 5.02 | 4.83 | 4.23 | 4.51 | 4.41 | 3.98 |
| 67 | 5.20 | 4.98 | 4.33 | 4.66 | 4.55 | 4.08 |
| 68 | 5.39 | 5.13 | 4.45 | 4.83 | 4.69 | 4.19 |
| 69 | 5.60 | 5.29 | 4.57 | 5.00 | 4.84 | 4.30 |
| 70 | 5.82 | 5.45 | 4.70 | 5.19 | 5.00 | 4.43 |
| 71 | 6.05 | 5.62 | 4.82 | 5.39 | 5.17 | 4.55 |
| 72 | 6.30 | 5.79 | 4.96 | 5.61 | 5.34 | 4.68 |
| 73 | 6.57 | 5.96 | 5.11 | 5.85 | 5.52 | 4.82 |
| 74 | 6.85 | 6.14 | 5.25 | 6.11 | 5.71 | 4.98 |
| 75 | 7.15 | 6.32 | 5.41 | 6.39 | 5.91 | 5.13 |
| 76 | 7.47 | 6.51 | 5.59 | 6.69 | 6.11 | 5.30 |
| 77 | 7.82 | 6.69 | 5.75 | 7.01 | 6.31 | 5.47 |
| 78 | 8.19 | 6.87 | 5.93 | 7.36 | 6.52 | 5.66 |
| 79 | 8.59 | 7.05 | 6.14 | 7.74 | 6.73 | 5.85 |
| 80 | 9.01 | 7.22 | 6.34 | 8.16 | 6.93 | 6.04 |
| 81 | 9.47 | 7.39 | 6.55 | 8.60 | 7.13 | 6.29 |
| 82 | 9.95 | 7.56 | 6.77 | 9.09 | 7.33 | 6.50 |
| 83 | 10.47 | 7.71 | 7.00 | 9.61 | 7.52 | 6.76 |
| 84 | 11.02 | 7.86 | 7.25 | 10.18 | 7.69 | 7.00 |
| 85+ | 11.61 | 8.00 | 7.52 | 10.79 | 7.86 | 7.26 |

+ Higher ages the same

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

OPTION 4
-PAYMENTS OF A
STATED AMOUNT

Equal monthly payments of a stated amount shall be made until the proceeds, with interest at 1.50% per year on the unpaid balance, are used up. The first payment shall be made on the Option Effective Date. The amount chosen must be at least $10 per month for each $1,000 of proceeds placed under this option. We may add more·interest to the unpaid balance in any year, which will extend the number of payments. The last payment will be for the balance only.

OPTION 5 - LIFE
ANNUITY

Equal monthly payments shall be made in the same manner as Option 3 except:

1. the amount of each payment shall be based on our current settlement rates on the Option Effective Date; and
2. no additional interest shall be paid.

OPTION 6 - JOINT
AND TWO-THIRDS
ANNUITY

Equal monthly payments shall be made while two chosen human beings are both living. Upon the death of either, two-thirds of the amount of such payments shall continue during the life of the survivor. The first payment shall be made on the Option Effective Date. The amount of each monthly payment depends on the ages and sexes of the chosen human beings on the Option Effective Date. We may require proof to our satisfaction of their ages. We may require like proof that any chosen human being is alive on the date any payment conditioned on the life of such human being is due. The initial amount of each monthly payment is shown in the table. We will quote the amount of monthly payments for any other age combination on request. The monthly payments are based on an interest rate of 1.50% per year. No additional interest shall be paid.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive \* Montpelier, Vermont 05604 \* (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane \* Dallas, Texas 75247*

Option 6 Table
Monthly Payments for Each $1,000 of Proceeds

(Amounts shown are for the age nearest birthday on the Option Effective Date)

| Ages of Both | One Male and One Female | Ages of Both | One Male and One Female |
|---|---|---|---|
| 50 | $2.97 | 68 | $4.72 |
| 51 | 3.03 | 69 | 4.89 |
| 52 | 3.09 | 70 | 5.06 |
| 53 | 3.16 | 71 | 5.25 |
| 54 | 3.22 | 72 | 5.46 |
| 55 | 3.29 | 73 | 5.68 |
| 56 | 3.37 | 74 | 5.91 |
| 57 | 3.45 | 75 | 6.16 |
| 58 | 3.53 | 76 | 6.43 |
| 59 | 3.62 | 77 | 6.72 |
| 60 | 3.72 | 78 | 7.04 |
| 61 | 3.82 | 79 | 7.37 |
| 62 | 3.92 | 80 | 7.74 |
| 63 | 4.04 | 81 | 8.12 |
| 64 | 4.16 | 82 | 8.54 |
| 65 | 4.28 | 83 | 8.99 |
| 66 | 4.42 | 84 | 9.48 |
| 67 | 4.57 | 85+ | 9.99 |

+ Higher ages the same

OPTION 7 - 50%
SURVIVOR
ANNUITY

Equal monthly payments shall be made during the life of the chosen primary human being. Upon the death of the chosen primary human being, 50% of the amount of such payments shall continue during the life of the chosen secondary human being. The first payment shall be made on the Option Effective Date. The amount of each monthly payment depends on the ages and sexes of the chosen human beings on the Option Effective Date. We may require proof to our satisfaction of their ages. We may require like proof that any chosen human being is alive on the date any payment conditioned on the life of such human being is due. The initial amount of each monthly payment is shown in the table. We will quote the amount of monthly payments for any other age combination on request. The monthly payments are based on an interest rate of 1.50% per year. No additional interest shall be paid.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)

Option 7 Table
Monthly Payments for Each $1,000 of Proceeds

(Amounts shown are for the age nearest birthday on the Option Effective Date)

| Ages of Both | Male Primary Female Secondary | Female Primary Male Secondary | Ages of Both | Male Primary Female Secondary | Female Primary Male Secondary |
|---|---|---|---|---|---|
| 50 | $2.96 | $2.85 | 68 | $4.67 | $4.44 |
| 51 | 3.01 | 2.90 | 69 | 4.83 | 4.60 |
| 52 | 3.07 | 2.96 | 70 | 5.00 | 4.76 |
| 53 | 3.14 | 3.02 | 71 | 5.19 | 4.93 |
| 54 | 3.20 | 3.08 | 72 | 5.38 | 5.12 |
| 55 | 3.27 | 3.15 | 73 | 5.59 | 5.32 |
| 56 | 3.35 | 3.22 | 74 | 5.82 | 5.53 |
| 57 | 3.43 | 3.29 | 75 | 6.06 | 5.77 |
| 58 | 3.51 | 3.37 | 76 | 6.31 | 6.01 |
| 59 | 3.60 | 3.45 | 77 | 6.59 | 6.28 |
| 60 | 3.69 | 3.53 | 78 | 6.88 | 6.57 |
| 61 | 3.79 | 3.62 | 79 | 7.20 | 6.89 |
| 62 | 3.89 | 3.72 | 80 | 7.54 | 7.22 |
| 63 | 4.00 | 3.82 | 81 | 7.90 | 7.59 |
| 64 | 4.12 | 3.93 | 82 | 8.29 | 7.98 |
| 65 | 4.24 | 4.05 | 83 | 8.71 | 8.40 |
| 66 | 4.38 | 4.17 | 84 | 9.16 | 8.86 |
| 67 | 4.52 | 4.30 | 85+ | 9.64 | 9.34 |

+ Higher ages the same

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8212CA(0305)                                                                 Page 27

# FIXED NET COST LOAN ENDORSEMENT

This endorsement introduces a Fixed Net Cost Loan option into the policy to which it is attached. The following text is added to the Policy Loans section of the policy:

"Fixed Net Cost Loan

As an alternative to loans on which interest is charged as described within the Loan Interest Rate provision of this policy, a loan may be taken which has a fixed net cost known in advance.

When a Fixed Net Cost Loan is made, Accumulated Value in the amount of the loan and any unpaid loan interest will be removed from the Interest Crediting Strategies in the following order:

1. first, from the Basic Strategy until exhausted;
2. second, from the Fixed-Term Strategy until exhausted;
3. third, from the Equity Indexed Strategy 2 until exhausted; and
4. fourth, from the Equity Indexed Strategy 1 until exhausted.

If the Fixed-Term Strategy and/or the Equity Indexed Strategies have multiple segments, deductions will be made in the reverse order in which the segments were created.

The Accumulated Value removed from the Interest Crediting Strategies will be held apart from other Accumulated Value in this policy in a collateral account where it will be credited the same interest rate that will be charged on the Fixed Net Cost Loan.

Repayments of a Fixed Net Cost Loan, including payments of loan interest, will be applied to the outstanding loan balance, and the amount repaid will be deposited into the Basic Strategy. The amount of Accumulated Value held in the collateral account will also be reduced by the amount of the repayment.

This option may not be selected until the beginning of the tenth policy year. Any outstanding Policy Loans made prior to that time must be repaid before a Fixed Net Cost Loan can be taken. The policy may not have a Fixed Net Cost Loan on it at the same time that a non-Fixed Net Cost Loan is in effect."

The second paragraph of the Accumulated Value provision of this policy has been revised as follows:

"The Accumulated Value on any other date is equal to the sum of the values of the Basic Strategy, the Fixed-Term Strategy, the Equity Indexed Strategy 1, the Equity Indexed Strategy 2, and the value of any loan collateral account."

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

Signed for Life Insurance Company of the Southwest at Dallas, Texas, by

*Jacque Lynn Benton*

Secretary

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8314(0206)

# INDEX

| Section | Page |
|---|---|
| OVERLOAN PROTECTION RIDER | 1 |
| EXERCISE OF RIDER | |
| Interest Crediting Strategies | 1 |
| Effect on Policy Loans | 1 |
| Conditions of Rider Exercise | 2 |
| COST OF THIS RIDER | 2 |
| GENERAL TERMS | |
| Reinstatement | 2 |
| Termination | 2 |
| Effective Date | 3 |

8315(0206)

# OVERLOAN PROTECTION RIDER

We, Life Insurance Company of the Southwest, agree to the exercise of this rider subject to the conditions stated below.

In the absence of this Overloan Protection Rider, when the debt to us on the policy causes the policy to enter a Grace Period, additional premium must be paid or the policy will lapse. Alternatively, exercise of this rider before the policy lapses will maintain life insurance protection. This rider may be exercised, subject to the Conditions of Rider Exercise enumerated below, if all of the following conditions are met:

1. the Insured's Attained Age is greater than or equal to 75; and
2. the policy to which this rider is attached must have been in force for at least fifteen years from the policy Effective Date; and
3. outstanding debt on the policy must exceed the total Face Amount of the policy; and
4. the outstanding debt to us divided by the excess of the Accumulated Value over the Surrender Charge must exceed 0.95.

Notification will be sent to you when these conditions have been met. The rider must be exercised within sixty days of the date we mail notification. If not exercised within that sixty days, the rider will be terminated.

# EXERCISE OF RIDER

Upon exercise of this rider, the policy to which it is attached will be modified as described below.

INTEREST
CREDITING
STRATEGIES

The Index Earnings for each Equity Indexed Segment will be increased as necessary so that the annual rate of Index Earnings for the elapsed term of that segment is at least equal to 2.00%.

All values from the Fixed Term Strategy and the Equity Indexed Strategies will then be transferred to the Basic Strategy. No further transfers from the Basic Strategy to any interest crediting strategy may be made.

EFFECT ON POLICY
LOANS

Any Policy Loan which is not a Fixed Net Cost Loan will be rewritten as a Fixed Net Cost Loan. No additional policy loans may be made on the policy.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8315(0206)                                                                 Page 1

CONDITIONS OF
RIDER EXERCISE

The following conditions will become effective:

1. no additional premiums may be paid into the policy;
2. withdrawals will no longer be allowed;
3. Monthly Deductions will cease;
4. any additional benefit riders whose monthly cost was included in the Monthly Deduction will be terminated; and
5. the policy Death Benefit Option will be switched to Option A if Option B is in effect. No further change in Death Benefit Option will be permitted.

# COST OF THIS RIDER

When this rider is exercised, there will be a one time Exercise Charge. The Exercise Charge will be equal to the product of the Exercise Charge Percentage shown on the Overloan Protection Rider Data Page for the Attained Age at the time of exercise multiplied times the Accumulated Value of the policy. The Exercise Charge will be deducted from the Basic Strategy of the policy.

# GENERAL TERMS

REINSTATEMENT

If this rider is in force at the time of policy lapse, it may be reinstated upon policy reinstatement.

TERMINATION

This rider will terminate on the earliest of the following:

1. the date that the policy to which this rider is attached terminates or matures; or
2. sixty days following our mailing of notification that the conditions for exercising this rider have been met; or
3. the Monthly Policy Date following the receipt of written request to terminate this rider.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

EFFECTIVE DATE

The effective date of this rider is the policy Effective Date unless a later date is shown below.

Signed for Life Insurance Company of the Southwest at Dallas, Texas, by

*Jacque Lynn Benton*

Secretary

Rider effective date if different from policy Effective Date: _____

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8315(0206)                                                                                              *Page 3*

# ACCELERATED BENEFITS RIDER 1

This rider adds benefits to your policy. It is issued in consideration of the application and your request for coverage. There is no additional cost for this benefit.

### BENEFIT

We will pay the Accelerate Benefits Amount to the Owner during the lifetime of the Insured. Such benefit will be paid:

1. upon election by the Owner; and
2. in lieu of payment of the full death benefit of the policy or Other Insured Rider upon death of the Insured; and
3. subject to the terms of this rider.

### ACCELERATED BENEFITS AMOUNT

The Accelerated Benefits Amount ("Amount" ) will be determined when the Owner elects Accelerated Benefits. It will be determined as of the Election Date. The following factors may be used in the determination of the Amount:

1. the Cash Surrender Value of the policy or rider; and
2. future premiums payable under the policy or rider; and
3. future expected lifetime of the Insured; and
4. any administrative fee assessed; and
5. the Accelerated Benefits Interest Rate in effect.

### ACCELERATED BENEFITS INTEREST RATE

We will declare the Accelerated Benefits Interest Rate. It will not exceed the greater of:

1. the yield on 90-day U.S. Treasury Bills on the Election Date; and
2. the maximum adjustable policy loan interest rate allowed by law on the Election Date.

The Amount will be paid in one lump sum.

### MAXIMUM AMOUNT

We reserve the right to set a maximum amount that we will pay under this and any other Accelerated Benefits Rider on the life of any insured person. If we do so, it will be no less than $500,000.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

## FULL ELECTION

Under a Full Election, the Amount will be paid in lieu of any future death benefit under this policy or rider. The Amount must first be applied to pay all debt to us on this policy or rider. The policy or rider to which this rider is attached will terminate on the Election Date.

## PARTIAL ELECTION

Under a Partial Election, the Amount will be paid in lieu of a portion of any future death benefit payable under this policy or rider.

The Amount must first be applied on a pro rata share of any outstanding debt to us on this policy. A pro rata share of such debt will remain. The debt will be reduced by the percentage of the death benefit accelerated.

The portion of the life insurance coverage that remains in force must not be less than our minimum issue limit for this plan of insurance. The new premiums and charges for the remaining portion will be as if the contract had been originally issued at the reduced amount.

## TERMINAL ILLNESS

Accelerated Benefits can be elected only if the Insured is Terminally Ill. Terminally Ill means that the Insured under this rider has been certified by a Physician as having an illness or chronic condition which can reasonably be expected to result in death in 24 months or less from the date of certification.

## PHYSICIAN

A Physician is a duly licensed medical Physician who is recognized by the law of the state in which treatment is received. Physician does not include the Owner, the Insured, or a member of the Owner or the Insured's immediate families.

## DISPOSITION OF ADDED BENEFIT RIDERS

Upon a Full Election, all riders attached to the policy will terminate as if the Insured had died on the election date.

Upon a Partial Election, all riders will continue to be effective subject to the terms and conditions of each rider.

Upon a Full Election or Accelerated Benefits for coverage under an Other Insured Rider, all riders providing additional benefits to the Other Insured will terminate as if the Other Insured had died on the election date. The policy and all other attached riders will continue to be in force and effective subject to the terms and conditions of the policy and the other riders.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8052(0798)

Upon a Partial Election of Accelerated Benefits for coverage under an Other Insured Rider, the policy and all the attached riders will continue to be in force and effective subject to the terms and conditions of the policy and the other riders.

ELECTION DATE

The Election Date is the date that the Application for Election of Accelerated Benefits is signed by the Owner of this policy.

ELECTION

To elect Accelerated Benefits, the Owner must complete an Application for Election of Accelerated Benefits. We will provide this Application at the Owner's request. The Owner must provide us with the written consent of any assignee and any irrevocable beneficiaries. We may request that the contract accompany the Application to our Administrative Office.

LEGAL
REQUIREMENTS

If the Owner is required by law to elect Accelerated Benefits to meet the claims of creditors, whether in bankruptcy or otherwise, Accelerated Benefits will not be available.

If the Owner is required by a government agency to elect Accelerated Benefits to apply for, obtain, or keep a government benefit or entitlement, Accelerated Benefits will not be available.

INCONTESTABILITY

This rider is contestable on the same basis as the policy or rider to which it is attached.

PROOF OF
TERMINAL ILLNESS

We must receive written proof satisfactory to us that the Insured is Terminally Ill. Such written proof must include a statement from a Physician certifying that the Insured is Terminally Ill.

We have the right to have the Insured examined by a physician of our own choice when and as often as we may reasonably require while an election of Accelerated Benefits is pending. Such examination will be made at our expense.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

**TERMINATION OF ACCELERATED BENEFIT FOR EACH INSURED**

Coverage for each Insured under this rider shall terminate on the earliest of:

1. the Election Date for Accelerated Benefits of the Insured; or
2. the date the life coverage for the Insured terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate the Insured's coverage under this rider.

**TERMINATION OF RIDER**

This entire rider shall terminate on the earliest of:

1. the Election Date for Accelerated Benefits of the last remaining covered Insured; or
2. the date the policy terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate this rider.

**EFFECTIVE DATE**

The Effective Date of this rider is the policy's Date of Issue or Other Insured Rider's Effective Date unless a later date is shown in the policy's Data Section.

*Jacque Lynn Benton*

Secretary

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8052(0798)

# ACCELERATED BENEFITS RIDER 2

This rider adds benefits to your policy. It is issued in consideration of the application and your request for coverage. There is no additional cost for this benefit.

BENEFITS

We will pay the Accelerated Benefits Amount to the Owner during the lifetime of the Insured. Such benefit will be paid:

1. upon election by the Owner; and
2. in lieu of payment of the full death benefit of the policy or Other Insured Rider upon death of the Insured; and
3. subject to the terms of this rider.

TAXATION

The Accelerated Benefits provided under this rider may or may not qualify for favorable tax treatment under the Internal Revenue Code. Benefits that are used to pay for qualified long-term care services may qualify for favorable tax treatment. Certain benefits not exceeding a per diem limit specified in the Internal Revenue Code may also qualify for favorable tax treatment. Accelerated Benefits that qualify for favorable tax treatment will be excludable from your income and not subject to federal taxation. Tax laws relating to Accelerated Benefits are complex. You are advised to consult with a qualified tax advisor about circumstances under which you could receive Accelerated Benefits excludable from income under federal law.

ACCELERATED
BENEFITS AMOUNT

The Accelerated Benefits Amount ("Amount" ) will be determined when the Owner elects Accelerated Benefits. It will be determined as of each Election Date. The following factors may be used in the determination of the Amount:

1. The Death Benefit accelerated; and
2. the Cash Surrender Value of the policy or rider; and
3. future premiums payable under the policy or rider; and
4. future expected lifetime of the Insured; and
5. any administrative fee assessed; and
6. the Accelerated Benefits Interest Rate in effect.

Each Amount will be paid in a lump sum.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8095(0399)                                                                                    Page 1

ACCELERATED
BENEFITS INTEREST
RATE

We will declare the Accelerated Benefits Interest Rate. It will not exceed the greater of:

1. the yield on 90-day U.S. Treasury Bills on the Election Date; and
2. the maximum adjustable policy loan interest rate allowed by law on each Election Date.

MAXIMUM
BENEFITS AMOUNT

The maximum Death Benefit accelerated in any year is the lesser of 24% of the life insurance coverage on the initial Election Date or $240,000. This amount is prorated over other periods of time for either Periodic or Final Elections.

We reserve the right to set a maximum amount that we will pay under this and any other Accelerated Benefits Rider on the life of any insured person. If we do so, it will be no less than $500,000.

PERIODIC
ELECTIONS

Under a Periodic Election, the Amount will be paid in lieu of a portion of any future death benefit payable under this policy or rider. Periodic elections can not be made more frequently than once each month.

The Amount must first be applied on a pro rata share of any outstanding debt to us on this policy. A pro rata share of such debt will remain. If applicable, the Cash Value, Cash Surrender Value, Accumulated Value, and Surrender Charge will also be reduced by the percentage of the death benefit accelerated.

The portion of the life insurance coverage that remains in force may be less than our minimum issue limit for this plan of insurance. The new premiums and charges for the remaining portion will be as if the contract had been originally issued at the reduced amount.

FINAL ELECTION

Under a Final Election, the Amount will be paid in lieu of any remaining future death benefit under this policy or rider. The Amount must first be applied to pay all debt to us on this policy or rider. The policy or rider to which this rider is attached will terminate on the Election Date.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

CHRONICALLY ILL

> Accelerated Benefits can be elected under this rider only if the Insured is Chronically Ill. Chronically Ill means that the Insured has been certified, within the last 12 months, by a Licensed Health Care Practitioner as:
>
> 1. being unable to perform (without substantial assistance from another person) at least two Activities of Daily Living for a period of at least 90 consecutive days; or
> 2. requiring substantial supervision for a period of at least 90 consecutive days by another person to protect oneself from threats to health and safety due to Severe Cognitive Impairment.
>
> Activities of Daily Living are bathing, continence, dressing, eating, toileting, and transferring.
>
> Severe Cognitive Impairment means deterioration or loss in intellectual capacity that is measured by clinical evidence and standardized tests which reliably measure impairment in:
>
> 1. short-term or long-term memory; or
> 2. orientation to people, places, or time; or
> 3. deductive or abstract reasoning.

LICENSED HEALTH
CARE
PRACTITIONER

> A Licensed Health Care Practitioner is a duly licensed medical Physician, a registered professional nurse, or a licensed social worker and does not include the Owner, the Insured, or a member of the Owner or Insured's immediate families. "Immediate Family" means a child, spouse, parent, grandparent, or grandchild of the Licensed Health Care Practitioner.

LIMITATION ON
PAYMENTS

> During the first two years that this rider is in effect, we will not accept an Application for Election of Accelerated Benefits under this rider.
>
> Benefits will not be available under this rider if the Insured is eligible for Accelerated Benefits under another rider.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

DISPOSITION OF
ADDED BENEFIT
RIDERS

> Upon a Periodic Election, all riders will continue to be effective subject to the terms and conditions of each rider.
>
> Upon a Final Election, all riders attached to the policy will terminate as if the Insured had died on the election date.
>
> Upon a Periodic Election of Accelerated Benefits for coverage under an Other Insured Rider, the policy and all the attached riders will continue to be in force and effective subject to the terms and conditions of the policy and the other riders.
>
> Upon a Final Election of Accelerated Benefits for coverage under an Other Insured Rider, all riders providing additional benefits to the Other Insured will terminate as if the Other Insured had died on the election date. The policy and all the other attached riders will continue to be in force and effective subject to the terms and conditions of the policy and the other riders.

ELECTION DATE

> The Election Date is the date that the Application for Election of Accelerated Benefits is signed by the Owner of this policy.

ELECTION

> To elect Accelerated Benefits, the Owner must complete an Application for Election of Accelerated Benefits. We will provide this Application at the Owner's request. The Owner must provide us with the written consent of any assignee and any irrevocable beneficiaries. We may request that the contract accompany the Application to our Administrative Office.

LEGAL
REQUIREMENTS

> If the Owner is required by law to elect Accelerated Benefits to meet the claims of creditors, whether in bankruptcy or otherwise, Accelerated Benefits will not be available.
>
> If the Owner is required by a government agency to elect Accelerated Benefits to apply for, obtain, or keep a government benefit or entitlement, Accelerated Benefits will not be available.

INCONTESTABILITY

> This rider is contestable on the same basis as the policy or rider to which it is attached.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

PROOF OF
CHRONICALLY ILL

We must receive written proof satisfactory to us that the Insured is Chronically Ill. Such written proof must include a statement from a Licensed Health Care Practitioner certifying that the Insured is Chronically Ill.

We have the right to have the Insured examined by a Licensed Health Care Practitioner of our own choice when and as often as we may reasonably require while an election of Accelerated Benefits is pending. Such examinations will be made at our expense.

TERMINATION OF
ACCELERATED
BENEFITS FOR
EACH INSURED

Coverage for each Insured under this rider shall terminate on the earliest of:

1. the Final Election Date for Accelerated Benefits of the Insured; or
2. the date the life coverage for the Insured terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate the Insured's coverage under this rider.

TERMINATION OF
RIDER

This entire rider shall terminate on the earliest of:

1. the Final Election Date for Accelerated Benefits of the last remaining covered Insured; or
2. the date the policy terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate this rider.

EFFECTIVE DATE

The Effective Date of this rider is the policy's Date of Issue or Other Insured Rider's Effective Date unless a later date is shown in the policy's Data Section.

*Jacque Lynn Benton*

Secretary

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

# INDEX

| SECTION | PAGE |
|---|---|
| ACCELERATED BENEFITS RIDER 3 | |
| Benefits | 1 |
| Taxation | 1 |
| Accelerated Benefits Amount | 1 |
| Accelerated Benefits Interest Rate | 2 |
| Qualifying Event | 2 |
| Maximum Death Benefit That May Be Accelerated | 3 |
| Limitation on Payments | 3 |
| Claims | 4 |
| Full Election | 4 |
| Partial Election | 4 |
| Disposition of Added Benefit Riders | 5 |
| Election Date | 5 |
| Election | 5 |
| Legal Requirements | 5 |
| Incontestability | 5 |
| Termination of Accelerated Benefits for Each Insured | 6 |
| Termination of Rider | 6 |
| Effective Date | 6 |

# ACCELERATED BENEFITS RIDER 3

This rider adds benefits to your policy. It is issued in consideration of the application and your request for coverage. There is no additional cost for this benefit.

**BENEFITS**

We will pay the Accelerated Benefits Amount to the Owner during the lifetime of the Insured. Such benefit will be paid:

1. upon election by the Owner; and
2. in lieu of payment of the full death benefit of the policy or Other Insured Rider upon death of the Insured; and
3. subject to the terms of this rider.

**TAXATION**

The Accelerated Benefits provided under this rider may or may not be taxable. Tax laws relating to Accelerated Benefits are complex. You are advised to consult with a qualified tax advisor regarding the tax treatment of any benefit paid under this rider.

**ACCELERATED
BENEFITS AMOUNT**

The Accelerated Benefits Amount ("Amount") will be determined by us when the Owner files a claim for Accelerated Benefits. It will be determined as of each Election Date. The following factors may be used by us in the determination of the Amount:

1. the Death Benefit accelerated; and
2. the Cash Surrender Value of the policy or rider; and
3. future premiums payable under the policy or rider; and
4. our assessment of the future expected lifetime of the Insured; and
5. any administrative fee assessed; and
6. the Accelerated Benefits Interest Rate in effect.

Each Amount will be paid in a lump sum. The Amount paid will never exceed the Death Benefit accelerated. It will never be less than the Cash Surrender Value, if any, corresponding to the portion of the Death Benefit accelerated.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

ACCELERATED
BENEFITS INTEREST
RATE

> We will declare the Accelerated Benefits Interest Rate. It will not exceed the greater of:
>
> 1. the yield on 90-day U.S. Treasury Bills on the Election Date; and
> 2. the maximum adjustable policy loan interest rate allowed by law on each Election Date.

QUALIFYING EVENT

> An Accelerated Benefit can be elected under this rider only if the Insured experiences a Qualifying Event covered under this rider while the policy and this rider are in force. The Qualifying Events covered under this rider are:
>
> 1. Heart Attack (myocardial infarction) - The death of a portion of the heart muscle resulting from inadequate blood supply to the relevant area. Heart Attack does not include angina or the chance finding of electrocardiographic (EKG) changes indicative of a previous heart attack. The diagnosis of Heart Attack must be based on the presence of all of the following:
>
>    a) Chest pain;
>    b) Associated new EKG changes which support the diagnosis; and
>    c) Elevation of cardiac (heart) enzymes above standard laboratory levels.
>
> 2. Stroke - A cerebrovascular accident or infarction (death) of brain tissue caused by hemorrhage, embolism, or thrombosis lasting more than 24 hours and producing measurable neurological deficit which persists for at least 30 consecutive days following the occurrence of the Stroke. Stroke does not include transient ischemic attacks.
>
> 3. Diagnosis of Cancer. Cancer means a disease manifested by the presence of one or more malignant tumors and characterized by the uncontrolled growth and spread of malignant cells and the invasion of normal tissue. Cancer does not include:
>
>    a) Any skin cancer, except invasive malignant melanoma into the dermis or deeper;
>    b) Pre-malignant lesions, benign tumors, or polyps; and
>    c) Carcinoma in-situ.
>
> 4. Diagnosis of End Stage Renal Failure. End Stage Renal Failure means the irreversible and total failure of both kidneys which requires the undergoing of renal transplantation or regular renal dialysis.

5. Major Organ Transplant - The receipt by transplant of any of the following organs or tissues: heart, lung, liver, kidney, pancreas, or bone marrow.

6. Diagnosis of ALS(Amyotrophic Lateral Sclerosis) by a qualified Physician.

7. Blindness - The total and permanent loss of sight in both eyes as a result of disease or injury. Total loss of sight in an eye is defined as corrected vision of 20/200 or worse.

**MAXIMUM DEATH BENEFIT THAT MAY BE ACCELERATED**

The Owner may elect to accelerate all or a portion of the Insured's Death Benefit in force under the policy on the Election Date.

We reserve the right to set a maximum death benefit that may be accelerated under this and any other Accelerated Benefits Rider on the life of any insured person. If we do so, it will be no less than $500,000.

**LIMITATION ON PAYMENTS**

No Accelerated Benefit will be paid under this rider for any Qualifying Event that occurs on or before the 30th day following the effective date of this rider unless such Qualifying Event directly resulted from accidental injury.

No Accelerated Benefit will be paid under this rider for any Qualifying Event that directly results from self-inflicted injury or attempted suicide.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

CLAIMS

You must send us a written request to file a claim under this rider utilizing a form provided by us. Any claim for benefits for a given Qualifying Event must be filed within 365 days following the occurrence of such Qualifying Event.

Before any benefit can be paid under this rider, you must furnish us with written proof satisfactory to us that the Insured has experienced a Qualifying Event covered under this rider. Such proof will include but not be limited to:

1. A certification from a Physician that the Insured has experienced a Qualifying Event covered under this rider; and
2. Complete records of the Insured's medical history, diagnoses, and treatments.

We have the right to have the Insured examined by a Physician of our own choice when and as often as we may reasonably require while a claim for Accelerated Benefits is pending. Such examinations will be made at our expense.

Physician means a doctor of medicine or osteopathy, practicing within the scope of his or her license issued by the jurisdiction in the United States of America in which his or her services are rendered. Physician does not include the Owner, the Insured, or a member of the Owner's or the Insured's Immediate Families. Immediate Family means a person's parents, stepparents, grandparents, spouse, children (adopted, natural, or step), siblings, grandchildren, or in-laws.

FULL ELECTION

Under a Full Election, the Amount will be paid in lieu of any future death benefit under this policy or rider. The Amount must first be applied to pay all debt to us on this policy or rider. The policy or rider to which this rider is attached will terminate on the Election Date.

PARTIAL ELECTION

Under a Partial Election, the Amount will be paid in lieu of a portion of any future death benefit payable under this policy or rider.

The Amount must first be applied to pay a pro rata share of any outstanding debt to us on this policy. Upon a Partial Election, the Insured's life insurance Face Amount or Coverage Amount, and if applicable, the Cash Value, Cash Surrender Value, Accumulated Value, Surrender Charge, and outstanding debt under the policy will be reduced in the same proportion as the reduction in the Insured's death benefit.

The portion of the life insurance coverage that remains in force may be less than our minimum issue limit for this plan of insurance. The new premiums and charges for the remaining portion will be as if the contract had been originally issued at the reduced amount.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

DISPOSITION OF
ADDED BENEFIT
RIDERS

>Upon a Partial Election, all riders will continue to be effective subject to the terms and conditions of each rider. If the Insured is eligible for periodic elections of Accelerated Benefits under another rider, the maximum death benefit that may be accelerated under future periodic elections under such other rider will be reduced in the same proportion as the reduction in the Insured's death benefit upon a Partial Election of benefits under this rider.

>Upon a Full Election, all riders attached to the policy will terminate as if the Insured had died on the Election Date.

ELECTION DATE

>The Election Date is the date that the Application for Election of Accelerated Benefits is signed by the Owner of this policy.

ELECTION

>To elect Accelerated Benefits, the Owner must complete an Application for Election of Accelerated Benefits. We will provide this Application to the Owner once we determine that Accelerated Benefits are payable under this rider. To elect Accelerated Benefits, the Owner must complete this Application and return it to us within 60 days following its receipt. The Owner must provide us with the written consent of any assignee and any irrevocable beneficiaries. We may request that the contract accompany the Application to our Administrative Office.

LEGAL
REQUIREMENTS

>If the Owner is required by law to elect Accelerated Benefits to meet the claims of creditors, whether in bankruptcy or otherwise, Accelerated Benefits will not be available.

>If the Owner is required by a government agency to elect Accelerated Benefits to apply for, obtain, or keep a government benefit or entitlement, Accelerated Benefits will not be available.

INCONTESTABILITY

>This rider is contestable on the same basis as the policy or rider to which it is attached.

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

TERMINATION OF
ACCELERATED
BENEFITS FOR
EACH INSURED

Coverage for each Insured under this rider shall terminate on the earliest of:

1. the Full Election Date for Accelerated Benefits of the Insured; or
2. the date the life coverage for the Insured terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate the Insured's coverage under this rider.

TERMINATION OF
RIDER

This entire rider shall terminate on the earliest of:

1. the Full Election Date for Accelerated Benefits of the last remaining covered Insured; or
2. the date the policy terminates; or
3. the Monthly Policy Date following our receipt of the Owner's written request to terminate this rider.

EFFECTIVE DATE

The Effective Date of this rider is the policy's Date of Issue or Other Insured Rider's Effective Date unless a later date is shown in the policy's Data Section.

*Jacque Lynn Benton*

Secretary

*Life Insurance Company of the Southwest*
*Administrative Office: One National Life Drive * Montpelier, Vermont 05604 * (800) 732-8939*
*Home Office: 1300 West Mockingbird Lane * Dallas, Texas 75247*

8165(0703)                                                                 *Page 6*

# EXHIBIT "B"

LIFE AND ACCIDENT AND HEALTH COMPANIES - ASSOCIATION EDITION



# ANNUAL STATEMENT

For the Year Ended December 31, 2009
of the Condition and Affairs of the

## Life Insurance Company of the Southwest

NAIC Group Code.....634,  634                    NAIC Company Code..... 65528                    Employer's ID Number..... 75-0953004
(Current Period) (Prior Period)

Organized under the Laws of Texas                   State of Domicile or Port of Entry  Texas                   Country of Domicile   US
Incorporated/Organized..... March 7, 1955                                     Commenced Business..... January 2, 1956
Statutory Home Office                          1300 West Mockingbird Lane..... Dallas ..... TX ..... 75247-4921
                                               (Street and Number)    (City or Town, State and Zip Code)
Main Administrative Office                     1300 West Mockingbird Lane..... Dallas ..... TX ..... 75247-4921                   214-638-7100
                                               (Street and Number)    (City or Town, State and Zip Code)                         (Area Code) (Telephone Number)
Mail Address                                   P. O. Box 569080..... Dallas ..... TX ..... 75356-9080
                                               (Street and Number or P. O. Box)    (City or Town, State and Zip Code)
Primary Location of Books and Records          1300 West Mockingbird Lane..... Dallas ..... TX ..... 75247-4921                   214-638-7100
                                               (Street and Number)    (City or Town, State and Zip Code)                         (Area Code) (Telephone Number)
Internet Web Site Address                      www.lifeofsouthwest.com
Statutory Statement Contact                    Michele Renee Hollifield                                                          214-638-9335
                                               (Name)                                                                           (Area Code) (Telephone Number) (Extension)
                                               mhollifield@nationallife.com                                                     214-638-9140
                                               (E-Mail Address)                                                                 (Fax Number)

### OFFICERS

| Name | Title | Name | Title |
|------|-------|------|-------|
| 1. Wade Hampton Mayo | President & CEO | 2. Jacque Lynn Crawford | Secretary |
| 3. Robert Earl Colton | Treasurer | 4. Craig Alan Smith | VP & Appointed Actuary |

### OTHER

| | | | |
|---|---|---|---|
| Geoffrey Samuel Bird  # | Vice President | Thomas Hyde Brownell | Sr. VP & Chief Investment Officer |
| Gregory Henry Doremus | Sr. Vice President | Maryann (nmn) Ellis | Vice President |
| Michele Susan Gatto | Executive Vice President | Joyce Bloom LaRosa  # | Vice President |
| Eric (nmn) Lopez | Vice President | Carl Joseph Lutz | Executive Vice President |
| Elizabeth Hill MacGowan | Vice President | Donald Paul Messier  # | Vice President |
| Edward Jones Perry III | Executive Vice President | Ruth Barra Smith | Sr. Vice President |
| Michael Curran Ward | Vice President | Keith William Young | Vice President |

### DIRECTORS OR TRUSTEES

| | | |
|---|---|---|
| Mehran (nmn) Assadi | Thomas Hyde Brownell | Carl Joseph Lutz | Edward Jones Perry III |
| Wade Hampton Mayo | | | |

State of....... Texas
County of..... Dallas

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| (Signature) | | (Signature) | | (Signature) |
|---|---|---|---|---|
| Wade Hampton Mayo | | Jacque Lynn Crawford | | Robert Earl Colton |
| 1. (Printed Name) | | 2. (Printed Name) | | 3. (Printed Name) |
| President & CEO | | Secretary | | Treasurer |
| (Title) | | (Title) | | (Title) |

Subscribed and sworn to before me                          a. Is this an original filing?                          Yes [X]   No [ ]

This _____ day of _____          2010          b. If no          1. State the amendment number _____
                                                                       2. Date filed _____
                                                                       3. Number of pages attached _____

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## ASSETS

| | Current Year | | | Prior Year |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | | | Net Admitted | |
| | | Nonadmitted | Assets | Net |
| | Assets | Assets | (Cols. 1 - 2) | Admitted Assets |
| 1. Bonds (Schedule D) | 6,238,951,367 | | 6,238,951,367 | 5,183,028,334 |
| 2. Stocks (Schedule D): | | | | |
| 2.1 Preferred stocks | 11,021,775 | | 11,021,775 | 36,169,970 |
| 2.2 Common stocks | | | 0 | |
| 3. Mortgage loans on real estate (Schedule B): | | | | |
| 3.1 First liens | 835,480,546 | | 835,480,546 | 868,143,003 |
| 3.2 Other than first liens | | | 0 | |
| 4. Real estate (Schedule A): | | | | |
| 4.1 Properties occupied by the company (less $......0 encumbrances) | | | 0 | |
| 4.2 Properties held for the production of income (less $......0 encumbrances) | | | 0 | |
| 4.3 Properties held for sale (less $......0 encumbrances) | | | 0 | |
| 5. Cash ($...(6,997,561), Sch. E-Part 1), cash equivalents ($...59,023,533, Sch. E-Part 2) and short-term investments ($...39,177,073, Sch. DA) | 131,203,046 | | 131,203,046 | 34,801,147 |
| 6. Contract loans (including $......0 premium notes) | 155,669,047 | | 155,669,047 | 149,936,789 |
| 7. Other invested assets (Schedule BA) | 21,089,896 | | 21,089,896 | 20,703,792 |
| 8. Receivables for securities | 320,454 | | 320,454 | 9,365,404 |
| 9. Aggregate write-ins for invested assets | 683,646,229 | 0 | 683,646,229 | 108,896,513 |
| 10. Subtotals, cash and invested assets (Lines 1 to 9) | 8,075,382,349 | 0 | 8,075,382,349 | 6,409,103,152 |
| 11. Title plants less $......0 charged off (for Title insurers only) | | | 0 | |
| 12. Investment income due and accrued | 79,415,152 | | 79,415,152 | 57,014,615 |
| 13. Premiums and considerations: | | | | |
| 13.1 Uncollected premiums and agents' balances in course of collection | 261,803 | | 261,803 | 227,347 |
| 13.2 Deferred premiums, agents' balances and installments booked but deferred and not yet due (including $......0 earned but unbilled premiums) | 5,729,409 | | 5,729,409 | 5,851,582 |
| 13.3 Accrued retrospective premiums | | | 0 | |
| 14. Reinsurance: | | | | |
| 14.1 Amounts recoverable from reinsurers | 492,111 | | 492,111 | 657,222 |
| 14.2 Funds held by or deposited with reinsured companies | 172,925 | | 172,925 | 260,446 |
| 14.3 Other amounts receivable under reinsurance contracts | 1,997 | | 1,997 | 2,730 |
| 15. Amounts receivable relating to uninsured plans | | | 0 | |
| 16.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 | 9,947,737 |
| 16.2 Net deferred tax asset | 54,533,642 | 23,465,277 | 31,068,365 | 10,377,178 |
| 17. Guaranty funds receivable or on deposit | 542,942 | | 542,942 | 637,270 |
| 18. Electronic data processing equipment and software | 933,233 | 902,397 | 30,836 | 12,324 |
| 19. Furniture and equipment, including health care delivery assets ($......0) | 172,898 | 172,898 | 0 | |
| 20. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 | |
| 21. Receivables from parent, subsidiaries and affiliates | 6,555,492 | | 6,555,492 | 11,515,812 |
| 22. Health care ($......0) and other amounts receivable | 15,911,922 | 15,911,922 | 0 | |
| 23. Aggregate write-ins for other than invested assets | 10,425,205 | 246,248 | 10,178,958 | 9,947,476 |
| 24. Total assets excluding Separate Accounts, Segregated Accounts and Protected Cell Accounts (Lines 10 to 23) | 8,250,531,173 | 40,698,841 | 8,209,832,337 | 6,525,364,390 |
| 25. From Separate Accounts, Segregated Accounts and Protected Cell Accounts | | | 0 | |
| 26. TOTALS (Lines 24 and 25) | 8,250,531,173 | 40,698,841 | 8,209,832,337 | 6,525,364,390 |

| DETAILS OF WRITE-INS | | | | |
|---|---|---|---|---|
| 0901. Spx options - long positions | 679,750,812 | | 679,750,812 | 106,753,825 |
| 0902. Futures contracts | 3,895,417 | | 3,895,417 | 2,961,719 |
| 0903. CDS book value adj | | | 0 | (818,731) |
| 0998. Summary of remaining write-ins for Line 9 from overflow page | 0 | 0 | 0 | 0 |
| 0999. Totals (Lines 0901 thru 0903 plus 0998) (Line 9 above) | 683,646,229 | 0 | 683,646,229 | 108,896,513 |
| 2301. Corporate Owned Life Insurance | 10,106,279 | | 10,106,279 | 9,749,524 |
| 2302. Items not allocated | 85,585 | 14,494 | 71,071 | 195,945 |
| 2303. Prepaid Expenses | 203,760 | 203,760 | 0 | |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | 29,601 | 27,993 | 1,608 | 2,007 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398) (Line 23 above) | 10,425,205 | 246,248 | 10,178,958 | 9,947,476 |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## LIABILITIES, SURPLUS AND OTHER FUNDS

| | | 1<br>Current Year | 2<br>Prior Year |
|---|---|---|---|
| 1. | Aggregate reserve for life contracts $....7,104,045,804 (Exhibit 5, Line 9999999) less $........0 | | |
| | Included in Line 6.3 (Including $....882,338 Modco Reserve) | 7,104,045,804 | 5,319,492,660 |
| 2. | Aggregate reserve for accident and health contracts (Exhibit 6, Line 17, Col. 1) (Including $........0 Modco Reserve) | 747,165 | 780,679 |
| 3. | Liability for deposit-type contracts (Exhibit 7, Line 14, Col. 1) (Including $........0 Modco Reserve) | 55,883,509 | 49,961,084 |
| 4. | Contract claims: | | |
| | 4.1   Life (Exhibit 8, Part 1, Line 4.4, Col. 1 less sum of Cols. 9, 10 and 11) | 7,364,702 | 6,976,156 |
| | 4.2   Accident and health (Exhibit 8, Part 1, Line 4.4, sum of Cols. 9, 10 and 11) | 24,300 | 24,300 |
| 5. | Policyholders' dividends $........0 and coupons $........0 due and unpaid (Exhibit 4, Line 10) | | |
| 6. | Provision for policyholders' dividends and coupons payable in following calendar year - estimated amounts: | | |
| | 6.1   Dividends apportioned for payment (including $........0 Modco) | 24,551 | 24,075 |
| | 6.2   Dividends not yet apportioned (including $........0 Modco) | | |
| | 6.3   Coupons and similar benefits (including $........0 Modco) | | |
| 7. | Amount provisionally held for deferred dividend policies not included in Line 6 | | |
| 8. | Premiums and annuity considerations for life and accident and health contracts received in advance less $........0 | | |
| | discount; including $....1,555 accident and health premiums (Exhibit 1, Part 1, Col. 1, sum of Lines 4 and 14) | 149,844 | 133,322 |
| 9. | Contract liabilities not included elsewhere: | | |
| | 9.1   Surrender values on canceled contracts | | |
| | 9.2   Provision for experience rating refunds, including $........0 accident and health experience rating refunds | | |
| | 9.3   Other amounts payable on reinsurance, including $........0 assumed and $........0 ceded | | |
| | 9.4   Interest Maintenance Reserve (IMR, Line 6) | 29,829,908 | 6,662,051 |
| 10. | Commissions to agents due or accrued - life and annuity contracts $....4,255,965, accident and health $........0 | | |
| | and deposit-type contract funds $........0 | 4,255,965 | 3,345,559 |
| 11. | Commissions and expense allowances payable on reinsurance assumed | | |
| 12. | General expenses due or accrued (Exhibit 2, Line 12, Col. 6) | 5,345,969 | 4,457,591 |
| 13. | Transfers to Separate Accounts due or accrued (net) (including $........0 accrued for expense | | |
| | allowances recognized in reserves, net of reinsured reinsurance) | | |
| 14. | Taxes, licenses and fees due or accrued, excluding federal income taxes (Exhibit 3, Line 9, Col. 5) | 1,088,971 | 1,075,030 |
| 15.1 | Current federal and foreign income taxes, including $........0 on realized capital gains (losses) | 13,736,756 | |
| 15.2 | Net deferred tax liability | | |
| 16. | Unearned investment income | 160,013 | 155,061 |
| 17. | Amounts withheld or retained by company as agent or trustee | 1,031,722 | 1,192,257 |
| 18. | Amounts held for agents' account, including $........0 agents' credit balances | 4,521,041 | 4,437,062 |
| 19. | Remittances and items not allocated | 17,710,248 | 16,057,067 |
| 20. | Net adjustment in assets and liabilities due to foreign exchange rates | | |
| 21. | Liability for benefits for employees and agents if not included above | | |
| 22. | Borrowed money $........0 and interest thereon $........0 | | |
| 23. | Dividends to stockholders declared and unpaid | | |
| 24. | Miscellaneous liabilities: | | |
| | 24.1   Asset valuation reserve (AVR Line 16, Col. 7) | 7,937,065 | 13,822,529 |
| | 24.2   Reinsurance in unauthorized companies | | |
| | 24.3   Funds held under reinsurance treaties with unauthorized reinsurers | 209,751 | 299,049 |
| | 24.4   Payable to parent, subsidiaries and affiliates | 229,892 | 231,311 |
| | 24.5   Drafts outstanding | | |
| | 24.6   Liability for amounts held under uninsured plans | | |
| | 24.7   Funds held under coinsurance | | |
| | 24.8   Payable for securities | | |
| | 24.9   Capital notes $........0 and interest thereon $........0 | | |
| 25. | Aggregate write-ins for liabilities | 483,312,603 | 76,088,170 |
| 26. | Total liabilities excluding Separate Accounts business (Lines 1 to 25) | 7,717,522,823 | 6,105,243,023 |
| 27. | From Separate Accounts Statement | | |
| 28. | Total liabilities (Line 26 and 27) | 7,717,522,823 | 6,105,243,023 |
| 29. | Common capital stock | 3,000,000 | 3,000,000 |
| 30. | Preferred capital stock | | |
| 31. | Aggregate write-ins for other than special surplus funds | 0 | 0 |
| 32. | Surplus notes | 30,000,000 | 30,000,000 |
| 33. | Gross paid in and contributed surplus (Page 3, Line 33, Col. 2 plus Page 4, Line 51.1, Col. 1) | 165,972,114 | 165,972,114 |
| 34. | Aggregate write-ins for special surplus funds | 8,246,061 | |
| 35. | Unassigned funds (surplus) | 285,091,340 | 221,149,253 |
| 36. | Less treasury stock, at cost: | | |
| | 36.1   ....0.000 shares common (value included in Line 29 $........0) | | |
| | 36.2   ....0.000 shares preferred (value included in Line 30 $........0) | | |
| 37. | Surplus (Total Lines 31 + 32 + 33 + 34 + 35 - 36) (including $........0 in Separate Accounts Statement) | 489,309,516 | 417,121,367 |
| 38. | Totals of Lines 29, 30 and 37 (Page 4, Line 55) | 492,309,515 | 420,121,367 |
| 39. | Totals of Lines 28 and 38 (Page 2, Line 28, Col. 3) | 8,209,832,337 | 6,525,364,380 |

### DETAILS OF WRITE-INS

| | | | |
|---|---|---|---|
| 2501. | Spx options - short positions | 451,923,735 | 70,062,379 |
| 2502. | Broker deposits on Loaned Securities | 7,150,505 | 3,987,227 |
| 2503. | Interest payable surplus note | 880,051 | 880,051 |
| 2598. | Summary of remaining write-ins for Line 25 from overflow page | 3,358,312 | 1,156,513 |
| 2599. | Totals (Lines 2501 thru 2503 plus 2598) (Line 25 above) | 483,312,603 | 76,088,170 |
| 3101. | | | |
| 3102. | | | |
| 3103. | | | |
| 3198. | Summary of remaining write-ins for Line 31 from overflow page | 0 | 0 |
| 3199. | Totals (Lines 3101 thru 3103 plus 3198) (Line 31 above) | 0 | 0 |
| 3401. | Net DTA SSAP 10R | 8,246,061 | |
| 3402. | | | |
| 3403. | | | |
| 3498. | Summary of remaining write-ins for Line 34 from overflow page | 0 | 0 |
| 3499. | Totals (Lines 3401 thru 3403 plus 3498) (Line 34 above) | 8,246,061 | 0 |

3

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**
## SUMMARY OF OPERATIONS

| | 1 Current Year | 2 Prior Year |
|---|---|---|
| 1. Premiums and annuity considerations for life and accident and health contracts (Exhibit 1, Part 1, Line 20.4, Col. 1, less Col. 11) | 1,574,649,424 | 1,229,793,191 |
| 2. Considerations for supplementary contracts with life contingencies | | |
| 3. Net investment income (Exhibit of Net Investment Income, Line 17) | 528,978,313 | 461,414,824 |
| 4. Amortization of Interest Maintenance Reserve (IMR) (Line 6) | 644,964 | (386,581) |
| 5. Separate Accounts net gain from operations excluding unrealized gains or losses | | |
| 6. Commissions and expense allowances on reinsurance ceded (Exhibit 1, Part 2, Line 26.1, Col. 1) | 510,252 | 406,438 |
| 7. Reserve adjustments on reinsurance ceded | | |
| 8. Miscellaneous Income: | | |
|   8.1 Income from fees associated with investment management, administration and contract guarantees from Separate Accounts | | |
|   8.2 Charges and fees for deposit-type contracts | | |
|   8.3 Aggregate write-ins for miscellaneous income | 692,695 | 647,454 |
| 9. Totals (Lines 1 to 8.3) | 2,105,465,648 | 1,391,895,327 |
| 10. Death benefits | 25,771,590 | 24,108,131 |
| 11. Matured endowments (excluding guaranteed annual pure endowments) | 821,927 | 270,175 |
| 12. Annuity benefits (Exhibit 8, Part 2, Line 8.4, Cols. 4 + 8) | 59,907,286 | 34,855,365 |
| 13. Disability benefits and benefits under accident and health contracts | 893,166 | 1,109,569 |
| 14. Coupons, guaranteed annual pure endowments and similar benefits | | |
| 15. Surrender benefits and withdrawals for life contracts | 472,309,985 | 516,307,175 |
| 16. Group conversions | | |
| 17. Interest and adjustments on contract or deposit-type contract funds | 8,482,005 | (5,921,400) |
| 18. Payments on supplementary contracts with life contingencies | 102,031 | 103,230 |
| 19. Increase in aggregate reserves for life and accident and health contracts | 1,166,186,838 | 610,822,398 |
| 20. Totals (Lines 10 to 19) | 1,731,555,377 | 1,183,584,672 |
| 21. Commissions on premiums, annuity considerations and deposit-type contract funds (direct business only) (Exhibit 1, Part 2, Line 31, Col. 1) | 184,806,116 | 155,729,890 |
| 22. Commissions and expense allowances on reinsurance assumed (Exhibit 1, Part 2, Line 26.2, Col. 1) | | |
| 23. General insurance expenses (Exhibit 2, Line 10, Columns 1, 2, 3 and 4) | 37,524,002 | 38,744,619 |
| 24. Insurance taxes, licenses and fees, excluding federal income taxes (Exhibit 3, Line 7, Cols. 1 + 2 + 3) | 5,957,711 | 4,973,411 |
| 25. Increase in loading on deferred and uncollected premiums | (13,597) | (193,218) |
| 26. Net transfers to or (from) Separate Accounts net of reinsurance | | |
| 27. Aggregate write-ins for deductions | (323,313) | (203,335) |
| 28. Totals (Lines 20 to 27) | 1,959,506,196 | 1,380,736,041 |
| 29. Net gain from operations before dividends to policyholders and federal income taxes (Line 9 minus Line 28) | 145,959,452 | 11,159,286 |
| 30. Dividends to policyholders | 36,636 | 20,898 |
| 31. Net gain from operations after dividends to policyholders and before federal income taxes (Line 29 minus Line 30) | 145,922,816 | 11,138,388 |
| 32. Federal and foreign income taxes incurred (excluding tax on capital gains) | 53,493,402 | 7,931,989 |
| 33. Net gain from operations after dividends to policyholders and federal income taxes and before realized capital gains or (losses) (Line 31 minus Line 32) | 92,359,414 | 3,206,398 |
| 34. Net realized capital gains (losses) (excluding gains (losses) transferred to the IMR) less capital gains tax of $____7,212,705 excluding taxes of $____(10,931,883) transferred to the IMR) | (40,594,950) | (40,211,892) |
| 35. Net income (Line 33 plus Line 34) | 51,774,524 | (37,005,494) |

### CAPITAL AND SURPLUS ACCOUNT

| | | |
|---|---|---|
| 36. Capital and surplus, December 31, prior year (Page 3, Line 38, Col. 2) | 420,121,367 | 364,626,639 |
| 37. Net income (Line 35) | 51,774,524 | (37,005,494) |
| 38. Change in net unrealized capital gains (losses) less capital gains tax of $____0 | (2,459,097) | 1,052 |
| 39. Change in net unrealized foreign exchange capital gains (loss) | | |
| 40. Change in net deferred income tax | 2,453,176 | 10,814,192 |
| 41. Change in nonadmitted assets | 4,821,338 | (10,054,680) |
| 42. Change in liability for reinsurance in unauthorized companies | | |
| 43. Change in reserve on account of change in valuation basis, (increase) or decrease (Exhibit 5A, Line 9999999, Col. 4) | 1,666,683 | |
| 44. Change in asset valuation reserve | 5,895,484 | 22,058,569 |
| 45. Change in treasury stock (Page 3, Lines 38.1 and 38.2 Col. 2 minus Col. 1) | | |
| 46. Surplus (contributed to) withdrawn from Separate Accounts during period | | |
| 47. Other changes in surplus in Separate Accounts Statement | | |
| 48. Change in surplus notes | | |
| 49. Cumulative effect of changes in accounting principles | | |
| 50. Capital changes: | | |
|   50.1 Paid in | | |
|   50.2 Transferred from surplus (Stock Dividend) | | |
|   50.3 Transferred to surplus | | |
| 51. Surplus adjustment: | | |
|   51.1 Paid in | | 50,681,074 |
|   51.2 Transferred to capital (Stock Dividend) | | |
|   51.3 Transferred from capital | | |
|   51.4 Change in surplus as a result of reinsurance | | |
| 52. Dividends to stockholders | | |
| 53. Aggregate write-ins for gains and losses in surplus | 8,246,061 | 0 |
| 54. Net change in capital and surplus for the year (Lines 37 through 53) | 72,198,143 | 55,494,727 |
| 55. Capital and surplus, December 31, current year (Lines 36 + 54) (Page 3, Line 38) | 492,309,515 | 420,121,367 |

### DETAILS OF WRITE-INS

| | | |
|---|---|---|
| 08.301. COLI valuation change | 356,755 | 363,063 |
| 08.302. Miscellaneous income | 164,407 | 179,568 |
| 08.303. Interest on agents debit balances | 163,392 | 118,485 |
| 08.398. Summary of remaining write-ins for Line 8.3 from overflow page | (21,925) | (11,663) |
| 08.399. Totals (Lines 08.301 thru 08.303 plus 08.398) (Line 8.3 above) | 662,695 | 647,454 |
| 2701. Reserve adjustment of modified coinsurance | (330,771) | (210,587) |
| 2702. Fines and penalties | 3,685 | 9,251 |
| 2703. Changes in agents def comp | (7,191) | (5,206) |
| 2798. Summary of remaining write-ins for Line 27 from overflow page | 10,783 | 3,207 |
| 2799. Totals (Lines 2701 thru 2703 plus 2798) (Line 27 above) | (323,313) | (203,335) |
| 5301. Surplus Adj Net DTA SSAP 10R | 8,246,061 | |
| 5302. | | |
| 5303. | | |
| 5398. Summary of remaining write-ins for Line 53 from overflow page | 0 | 0 |
| 5399. Totals (Lines 5301 thru 5308 plus 5398) (Line 53 above) | 8,246,061 | 0 |

4

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## CASH FLOW

| | 1 Current Year | 2 Prior Year |
|---|---|---|
| **CASH FROM OPERATIONS** | | |
| 1. Premiums collected net of reinsurance | 1,574,565,861 | 1,229,551,959 |
| 2. Net investment income | 330,830,264 | 216,410,347 |
| 3. Miscellaneous income | 808,192 | 1,053,893 |
| 4. Total (Lines 1 through 3) | 1,906,232,257 | 1,447,016,829 |
| 5. Benefit and loss related payments | 544,908,644 | 579,290,426 |
| 6. Net transfers to Separate Accounts, Segregated Accounts and Protected Cell Accounts | | |
| 7. Commissions, expenses paid and aggregate write-ins for deductions | 225,120,052 | 193,602,415 |
| 8. Dividends paid to policyholders | 26,161 | 19,832 |
| 9. Federal and foreign income taxes paid (recovered) net of $........0 tax on capital gains (losses) | 26,061,217 | 5,633,231 |
| 10. Total (Lines 5 through 9) | 796,126,075 | 778,570,905 |
| 11. Net cash from operations (Line 4 minus Line 10) | 1,110,106,183 | 668,445,925 |
| **CASH FROM INVESTMENTS** | | |
| 12. Proceeds from investments sold, matured or repaid: | | |
| 12.1 Bonds | 2,610,051,827 | 845,806,874 |
| 12.2 Stocks | | 215,109 |
| 12.3 Mortgage loans | 40,838,057 | 53,436,837 |
| 12.4 Real estate | | |
| 12.5 Other invested assets | 1,304,592 | 6,366,019 |
| 12.6 Net gains or (losses) on cash, cash equivalents and short-term investments | | 679 |
| 12.7 Miscellaneous proceeds | 9,044,950 | 0 |
| 12.8 Total investment proceeds (Lines 12.1 to 12.7) | 2,661,237,725 | 905,825,518 |
| 13. Cost of investments acquired (long-term only): | | |
| 13.1 Bonds | 3,652,427,414 | 1,422,442,989 |
| 13.2 Stocks | | 5,237,725 |
| 13.3 Mortgage loans | 11,700,000 | 112,710,000 |
| 13.4 Real estate | | |
| 13.5 Other invested assets | 5,575,056 | 17,013,870 |
| 13.6 Miscellaneous applications | 5,605,682 | 23,278,917 |
| 13.7 Total investments acquired (Lines 13.1 to 13.6) | 3,675,308,152 | 1,580,683,501 |
| 14. Net increase (decrease) in contract loans and premium notes | 5,732,257 | 12,887,845 |
| 15. Net cash from investments (Line 12.8 minus Lines 13.7 minus Line 14) | (1,019,802,683) | (686,945,829) |
| **CASH FROM FINANCING AND MISCELLANEOUS SOURCES** | | |
| 16. Cash provided (applied): | | |
| 16.1 Surplus notes, capital notes | | |
| 16.2 Capital and paid in surplus, less treasury stock | | 10,000,000 |
| 16.3 Borrowed funds | | |
| 16.4 Net deposits on deposit-type contracts and other insurance liabilities | (43,395) | (878,672) |
| 16.5 Dividends to stockholders | | |
| 16.6 Other cash provided (applied) | 6,141,795 | (713,268) |
| 17. Net cash from financing and miscellaneous sources (Lines 16.1 to 16.4 minus Line 16.5 plus Line 16.6) | 6,098,401 | 8,410,061 |
| **RECONCILIATION OF CASH, CASH EQUIVALENTS AND SHORT-TERM INVESTMENTS** | | |
| 18. Net change in cash, cash equivalents and short-term investments (Line 11 plus Line 15 plus Line 17) | 96,401,900 | (10,089,543) |
| 19. Cash, cash equivalents and short-term investments: | | |
| 19.1 Beginning of year | 34,801,146 | 44,890,688 |
| 19.2 End of year (Line 18 plus Line 19.1) | 131,203,046 | 34,801,146 |
| Note: Supplemental disclosures of cash flow information for non-cash transactions: | | |
| 20.0001 | | |

Annual Statement for the year 2009 of the   Life Insurance Company of the Southwest

## ANALYSIS OF OPERATION BY LINES OF BUSINESS

| | 1 Total | 2 Industrial Life | Ordinary 3 Life Insurance | 4 Individual Annuities | 5 Supplementary Contracts | 6 Credit Life (Group and Individual) | Group 7 Life (Group and Individual) | 8 Annuities | 9 Group | Accident and Health 10 Group | 11 Credit (Group and Individual) | 11 Other | 12 Aggregate of All Other Lines of Business |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Premiums and annuity considerations for life and accident and health contracts | 1,574,849,424 | | 154,335,894 | 1,306,664,848 | | | 894,763 | 93,179,301 | | | | 37,993 | 19,388,620 |
| 2. Considerations for supplementary contracts with life contingencies | | | | | 74,916 | | | | | | | | 447,198 |
| 3. Net investment income | 528,976,313 | | 31,175,296 | 346,962,511 | | 74,916 | | 131,494,506 | | | | 37,662 | |
| 4. Amortization of Interest Maintenance Reserve (IMR) | 844,984 | | 81,037 | 116,291 | | | | | | | | | |
| 5. Separate Accounts net gain from operations excluding unrealized gains or losses | 0 | | | | | | | | | | | | |
| 6. Commissions and expense allowances on reinsurance ceded | 510,292 | | 510,220 | | | | | | | | | 32 | |
| 7. Reserve adjustments on reinsurance ceded | 0 | | | | | | | | | | | | |
| 8. Miscellaneous Income: | | | | | | | | | | | | | |
| 8.1 Fees associated with income from investment management, administration and contract guarantees from SA | 0 | | | | | | | | | | | | |
| 8.2 Charges and fees for deposit-type contracts | 0 | | | | | | | | | | | | |
| 8.3 Aggregate write-ins for miscellaneous income | 867,696 | | 836,116 | 1,883,314,977 | | | 878,680 | 218,674,157 | | | | (42) | 165,493 |
| 9. Totals (Lines 1 to 8.3) | 2,106,453,643 | | 218,396,333 | 1,883,314,977 | 74,916 | | 898,863 | 218,674,157 | | | | 155,645 | 20,001,258 |
| 10. Death benefits | 26,771,569 | | 25,892,710 | | | | 265,879 | | | | | | |
| 11. Matured endowments (excluding guaranteed annual pure endowments) | 621,877 | | 621,877 | | | | | | | | | | |
| 12. Annuity benefits | 39,907,965 | | | 38,148,399 | | | 2,130 | 3,759,491 | | | | 46,354 | |
| 13. Disability benefits and benefits under accident and health contracts | 593,169 | | | | | | | | | | | | |
| 14. Coupons, guaranteed annual pure endowments and similar benefits | 0 | | | | | | | | | | | | |
| 15. Surrender benefits and withdrawals for life contracts | 472,909,985 | | 11,140,472 | 371,029,738 | | | 41,955 | 90,698,820 | | | | | |
| 16. Group conversions | 0 | | | | | | | | | | | | |
| 17. Interest and adjustments on contract or deposit-type contract funds | 6,492,605 | | 76,816 | 6,824,660 | (8,725) | | 1,830 | 66,482 | | | | | |
| 18. Payments on supplementary contracts with life contingencies | 102,091 | | | | 102,031 | | | | | | | | |
| 19. Increase in aggregate reserves for life and accident and health contracts | 1,498,188,636 | | 74,399,986 | 1,096,133,614 | (159,704) | | (69,335) | 45,909,891 | | | | (281,54) | |
| 20. Totals (Lines 10 to 19) | 2,051,965,877 | | 112,031,199 | 1,470,635,340 | (66,398) | | 191,065 | 140,429,184 | | | | 12,940 | (83,29) |
| 21. Commissions on premiums, annuity considerations and deposit-type contract funds (direct business only) | 194,606,116 | | 83,142,623 | 116,273,584 | | | 191,065 | 4,868,949 | | | | 259 | 0 |
| 22. Commissions and expense allowances on reinsurance assumed | 0 | | | | | | | | | | | | |
| 23. General insurance expenses | 37,534,002 | | 12,800,973 | 10,884,166 | | | 2,809 | 9,150,156 | | | | 26,879 | 20,004,564 |
| 24. Insurance taxes, licenses and fees, excluding federal income taxes | 5,597,711 | | 4,483,199 | 1,758,736 | | | 752 | 111,932 | | | | 3,045 | |
| 25. Increase in loading on deferred and uncollected premiums | (15,691) | | (20,036) | | | | 4,568 | | | | | | |
| 26. Net transfers to or (from) Separate Accounts net of reinsurance | 0 | | 0 | 0 | 0 | | 0 | 0 | | | | | (7,334,333) |
| 27. Aggregate write-ins for deductions | (223,315) | | (319,801) | 0 | 0 | | 0 | 0 | | | | | |
| 28. Totals (Lines 20 to 27) | 2,289,460,458 | | 92,179,563 | 1,610,452,392 | (66,398) | | 201,194 | 150,781,409 | | | | 42,021 | 12,670,251 |
| 29. Net gain from operations before dividends to policyholders and federal income taxes (Line 9 minus Line 28) | 140,869,452 | | 24,475,582 | 30,862,515 | 141,314 | | 676,056 | 63,886,747 | | | | 113,624 | 20,004,584 |
| 30. Dividends to policyholders | 39,639 | | 38,636 | | | | | | | | | 1,003 | |
| 31. Net gain from operations after dividends to policyholders and before federal income taxes (Line 29 minus Line 30) | 146,622,818 | | 24,136,916 | 36,682,575 | 141,314 | | 676,056 | 63,886,747 | | | | 113,624 | 20,004,584 |
| 32. Federal income taxes incurred (excluding tax on capital gains) | 53,465,402 | | 8,860,114 | 13,315,023 | 51,810 | | 247,498 | 23,422,566 | | | | 41,068 | 7,334,333 |
| 33. Net gain from operations after dividends to policyholders and federal income taxes and before realized capital gains or (losses) (Line 31 minus Line 32) | 92,359,414 | | 15,288,802 | 23,347,552 | 89,504 | | 427,558 | 40,463,781 | | | | 71,066 | 12,670,251 |

### DETAILS OF WRITE-INS

| | 1 Total | 2 Industrial Life | 3 Life Insurance | 4 Individual Annuities | 5 Supplementary Contracts | 6 Credit Life | 7 Group Life | 8 Annuities | 9 | 10 Group | 11 Credit | 11 Other | 12 Aggregate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08.301 CDU valuation charge | 356,763 | | 356,763 | | | | | | | | | | 356,763 |
| 08.302 Miscellaneous income | 164,407 | | 263,577 | 288 | | | | | | | | (42) | (100,814) |
| 08.303 Interest on agents debit balances | 165,392 | | | 250,039 | | | | | | | | | (67,448) |
| 08.398 Summary of remaining write-ins for Line 8.3 from overflow page | (21,850) | | (21,850) | 0 | 0 | | 0 | 0 | | | | 0 | 0 |
| 08.399 Totals (Lines 08.301 thru 08.303 plus 08.398) (Line 8.3 above) | 822,695 | | 806,118 | 251,127 | | | 878,680 | | | | | (42) | 165,493 |
| 2701 Reserve adjustment on modified coinsurance | (336,371) | | | | | | | | | | | | |
| 2702 Fines and penalties | 3,855 | | (336,371) | | | | | | | | | | 3,855 |
| 2703 Change to agents def comp | (7,191) | | (7,191) | | | | | | | | | | (7,191) |
| 2798 Summary of remaining write-ins for Line 27 from overflow page | 10,783 | | 10,783 | 0 | 0 | | 0 | 0 | | | | 0 | 0 |
| 2799 Totals (Lines 2701 thru 2703 plus 2798) (Line 27 above) | (328,913) | | (319,801) | 0 | 0 | | 0 | 0 | | | | 0 | (83,29) |

(a) Includes the following amounts for FEGLI/SGLI: Line 1 .......... 0   Line 10 .......... 0   Line 16 .......... 0   Line 23 .......... 0   Line 24 .......... 0.

6

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## ANALYSIS OF INCREASE IN RESERVES DURING THE YEAR

| | 1 Total | 2 Industrial Life | Ordinary | | | | Group | |
|---|---|---|---|---|---|---|---|---|
| | | | 3 Life Insurance | 4 Individual Annuities | 5 Supplementary Contracts | 6 Credit Life (Group and Individual) | 7 Life Insurance | 8 Annuities |
| **Involving Life or Disability Contingencies (Reserves)** | | | | | | | | |
| **(Net of Reinsurance Ceded)** | | | | | | | | |
| 1. Reserve December 31, prior year | 5,949,492,660 | | 351,593,776 | 4,511,222,549 | 1,072,465 | | 11,092,222 | 1,244,501,656 |
| 2. Tabular net premiums or considerations | 1,430,477,731 | | 128,830,895 | 1,220,793,259 | | | 30,250 | 60,821,508 |
| 3. Present value of disability claims incurred | 0 | | | | XXX | | | |
| 4. Tabular interest | 186,011,482 | | 37,673,169 | 100,482,739 | 30,760 | | 431,210 | 37,157,594 |
| 5. Tabular less actual reserve released | 215,670,485 | | 1,258,761 | 168,690,623 | (108,078) | | (64,615) | 27,590,792 |
| 6. Increase in reserve on account of change in valuation basis | 1,688,683 | | 1,689,683 | | | | | |
| 7. Other increases (net) | 0 | | | 2,053,398 | | | | (7,693,389) |
| 8. Totals (Lines 1 to 7) | 7,728,319,051 | | 501,231,036 | 5,821,669,555 | 1,015,469 | 0 | 11,489,116 | 1,388,027,172 |
| 9. Tabular cost | 89,277,055 | | 88,096,347 | | XXX | | 183,708 | |
| 10. Reserves released by death | 4,867,047 | | 4,640,334 | | XXX | | 226,713 | XXX |
| 11. Reserves released by other terminations (net) | 15,363,818 | | 15,321,243 | | | | 42,573 | |
| 12. Annuity, supplementary contract, and disability payments involving life contingencies | 547,705,531 | | 844,676 | 444,000,193 | 102,411 | | 2,198 | 97,616,916 |
| 13. Net transfers to or (from) Separate Accounts | 0 | | 0 | | 0 | | 0 | |
| 14. Total deductions (Lines 9 to 13) | 619,213,249 | | 76,594,500 | 444,000,193 | 102,411 | | 469,130 | 97,616,916 |
| 15. Reserve December 31, current year | 7,194,045,802 | | 424,636,496 | 5,377,369,365 | 912,758 | 0 | 11,029,986 | 1,290,411,267 |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT OF NET INVESTMENT INCOME

| | | 1<br>Collected<br>During Year | 2<br>Earned<br>During Year |
|---|---|---|---|
| 1. | U.S. government bonds | (a)............2,992,870 | ............4,211,728 |
| 1.1 | Bonds exempt from U.S. tax | (c) | |
| 1.2 | Other bonds (unaffiliated) | (a)............334,141,735 | ............344,625,411 |
| 1.3 | Bonds of affiliates | (a) | |
| 2.1 | Preferred stocks (unaffiliated) | (b)............715,790 | ............715,790 |
| 2.11 | Preferred stocks of affiliates | (b) | |
| 2.2 | Common stocks (unaffiliated) | | |
| 2.21 | Common stocks of affiliates | | |
| 3. | Mortgage loans | (c)............53,537,168 | ............53,510,385 |
| 4. | Real estate | (d) | |
| 5. | Contract loans | | ............8,493,517 | ............8,927,747 |
| 6. | Cash, cash equivalents and short-term investments | (e)............39,902 | ............55,928 |
| 7. | Derivative instruments | (f)............125,878,628 | ............124,009,923 |
| 8. | Other invested assets | | ............320,567 | ............312,110 |
| 9. | Aggregate write-ins for investment income | | ............167,478 | ............167,478 |
| 10. | Total gross investment income | | ............526,057,595 | ............536,556,578 |
| 11. | Investment expenses | | (g)............5,770,235 | |
| 12. | Investment taxes, licenses and fees, excluding federal income taxes | | (g)............1,139 | |
| 13. | Interest expense | | (h)............2,250,000 | |
| 14. | Depreciation on real estate and other invested assets | | (i)............0 | |
| 15. | Aggregate write-ins for deductions from investment income | | ............57,000 | |
| 16. | Total deductions (Lines 11 through 15) | | ............7,588,365 | |
| 17. | Net Investment Income (Line 10 minus Line 16) | | ............528,978,313 | |

### DETAILS OF WRITE-INS

| | | | |
|---|---|---|---|
| 0901. | Income on loaned securities | ............167,478 | ............167,478 |
| 0902. | | | |
| 0903. | | | |
| 0998. | Summary of remaining write-ins for Line 9 from overflow page | ............0 | ............0 |
| 0999. | Totals (Lines 0901 thru 0903 plus 0998) (Line 9 above) | ............167,478 | ............167,478 |
| 1501. | Investment services between affiliates | | ............57,000 |
| 1502. | | | |
| 1503. | | | |
| 1598. | Summary of remaining write-ins for Line 15 from overflow page | | ............0 |
| 1599. | Totals (Lines 1501 thru 1503 plus 1598) (Line 15 above) | | ............57,000 |

(a) Includes $....11,045,022 accrual of discount less $....9,369,872 amortization of premium and less $....14,579,567 paid for accrued interest on purchases.

(b) Includes $....0 accrual of discount less $....0 amortization of premium and less $....0 paid for accrued dividends on purchases.

(c) Includes $....0 accrual of discount less $....0 amortization of premium and less $....0 paid for accrued interest on purchases.

(d) Includes $....0 for company's occupancy of its own buildings; and excludes $....0 interest on encumbrances.

(e) Includes $....0 accrual of discount less $....0 amortization of premium and less $....0 paid for accrued interest on purchases.

(f) Includes $....0 accrual of discount less $....0 amortization of premium.

(g) Includes $....0 investment expenses and $....0 investment taxes, licenses and fees, excluding federal income taxes, attributable to Segregated and Separate Accounts.

(h) Includes $....2,250,000 interest on surplus notes and $....0 interest on capital notes.

(i) Includes $....0 depreciation on real estate and $....0 depreciation on other invested assets.

## EXHIBIT OF CAPITAL GAINS (LOSSES)

| | | 1<br>Realized<br>Gain (Loss)<br>on Sales<br>or Maturity | 2<br>Other<br>Realized<br>Adjustments | 3<br>Total Realized<br>Capital Gain (Loss)<br>(Columns 1 + 2) | 4<br>Change in<br>Unrealized<br>Capital Gain (Loss) | 5<br>Change in<br>Unrealized<br>Foreign Exchange<br>Capital Gain (Loss) |
|---|---|---|---|---|---|---|
| 1. | U.S. government bonds | ....1,192,988 | | ....1,192,988 | | |
| 1.1 | Bonds exempt from U.S. tax | | | | | |
| 1.2 | Other bonds (unaffiliated) | ....14,193,665 | ....(29,731,753) | ....(15,538,088) | ....(951,956) | |
| 1.3 | Bonds of affiliates | | | ....0 | | |
| 2.1 | Preferred stocks (unaffiliated) | | | ....0 | | |
| 2.11 | Preferred stocks of affiliates | | | ....0 | | |
| 2.2 | Common stocks (unaffiliated) | | | ....0 | | |
| 2.21 | Common stocks of affiliates | | | ....0 | | |
| 3. | Mortgage loans | | | ....0 | ....(1,593,771) | |
| 4. | Real estate | | | ....0 | | |
| 5. | Contract loans | | | ....0 | | |
| 6. | Cash, cash equivalents and short-term investments | | | ....0 | | |
| 7. | Derivative instruments | | | ....0 | | |
| 8. | Other invested assets | ....2,994,312 | ....(9,140,558) | ....(6,146,246) | ....(13,368) | |
| 9. | Aggregate write-ins for capital gains (losses) | ....0 | ....0 | ....0 | ....0 | ....0 |
| 10. | Total capital gains (losses) | ....18,380,965 | ....(38,872,311) | ....(20,491,346) | ....(2,459,097) | ....0 |

### DETAILS OF WRITE-INS

| | | | | | | |
|---|---|---|---|---|---|---|
| 0901. | | | | ....0 | | |
| 0902. | | | | ....0 | | |
| 0903. | | | | ....0 | | |
| 0998. | Summary of remaining write-ins for Line 9 from overflow page | ....0 | ....0 | ....0 | ....0 | ....0 |
| 0999. | Totals (Lines 0901 thru 0903 plus 0998) (Line 9 above) | ....0 | ....0 | ....0 | ....0 | ....0 |

Annual Statement for the year 2009 of the  **Life Insurance Company of the Southwest**

## EXHIBIT 1 - PART 1 - PREMIUMS AND ANNUITY CONSIDERATIONS FOR LIFE AND ACCIDENT AND HEALTH CONTRACTS

| | 1 Total | 2 Industrial Life | Ordinary 3 Life Insurance | Ordinary 4 Individual Annuities | 5 Credit Life (Group and Individual) | Group 6 Life Insurance | Group 7 Annuities | Accident and Health 8 Group | Accident and Health 9 Credit (Group & Individual) | 10 Other | 11 Aggregate of All Other Lines of Business |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **FIRST YEAR (other than single)** | | | | | | | | | | | |
| 1. Uncollected | 40,142 | | 40,142 | | | | | | | | |
| 2. Deferred and accrued | 1,165,017 | | 1,127,875 | | | | | | | | |
| 3. Deferred, accrued and uncollected: | | | | | | | | | | | |
| 3.1 Direct | 1,165,017 | | 1,165,017 | | | | | | | | |
| 3.2 Reinsurance assumed | 0 | | 0 | | | | | | | | |
| 3.3 Reinsurance ceded | 0 | | 0 | | | | | | | | |
| 3.4 Net (Line 3.1 + Line 3.2 - Line 3.3) | 1,168,017 | | 1,168,017 | | | | | | | | |
| 4. Advance | 22,630 | | 22,630 | | | | | | | | |
| 5. Line 3.4 - Line 4 | 1,145,387 | | 1,145,387 | | | | | | | | |
| 6. Collected during year: | | | | | | | | | | | |
| 6.1 Direct | 576,600,238 | | 56,654,911 | 506,428,214 | | 13,417,113 | | | | | |
| 6.2 Reinsurance assumed | 11,765 | | 11,765 | | | | | | | | |
| 6.3 Reinsurance ceded | 894,541 | | 894,541 | | | | | | | | |
| 6.4 Net | 576,017,463 | | 55,172,135 | 506,428,214 | | 13,417,113 | | | | | |
| 7. Line 5 + Line 6.4 | 576,153,050 | | 56,317,722 | 506,428,214 | | 13,417,113 | | | | | |
| 8. Prior year (uncollected + deferred and accrued - advance) | 1,132,987 | | 1,132,987 | | | | | | | | |
| 9. First year premiums and considerations: | | | | | | | | | | | |
| 9.1 Direct | 575,912,868 | | 56,067,661 | 506,428,214 | | 13,417,113 | | | | | |
| 9.2 Reinsurance assumed | 11,765 | | 11,765 | | | | | | | | |
| 9.3 Reinsurance ceded | 894,541 | | 894,541 | | | | | | | | |
| 9.4 Net (Line 9.1 + Line 9.2 - Line 9.3) | 575,030,112 | | 55,184,765 | 506,428,214 | | 13,417,113 | | | | | |
| | **SINGLE** | | | | | | | | | | |
| 10. Single premiums and considerations: | | | | | | | | | | | |
| 10.1 Direct | 627,508,314 | | 18,233,903 | 609,960,096 | | 1,255 | | | | | |
| 10.2 Reinsurance assumed | 0 | | 0 | | | | | | | | |
| 10.3 Reinsurance ceded | 19,708 | | 19,708 | | | | | | | | |
| 10.4 Net | 627,488,608 | | 18,283,207 | 609,960,096 | | 1,255 | | | | | |
| | **RENEWAL** | | | | | | | | | | |
| 11. Uncollected | 268,214 | | 253,092 | | | 11,779 | | | | 4,385 | |
| 12. Deferred and accrued | 5,069,637 | | 5,052,434 | | | 17,203 | | | | | |
| 13. Deferred, accrued and uncollected: | | | | | | | | | | | |
| 13.1 Direct | 5,369,779 | | 5,326,454 | | | 28,940 | | | | 4,385 | |
| 13.2 Reinsurance assumed | 0 | | 0 | | | 0 | | | | | |
| 13.3 Reinsurance ceded | 20,076 | | 20,676 | | | | | | | | |
| 13.4 Net (Line 13.1 + Line 13.2 - Line 13.3) | 5,503,801 | | 5,305,378 | | | 28,940 | | | | 4,385 | |
| 14. Advance | 120,414 | | 124,402 | | | 377 | | | | 1,595 | |
| 15. Line 13.4 - Line 14 | 5,212,487 | | 5,181,094 | | | 28,563 | | | | 2,830 | |
| 16. Collected during year: | | | | | | | | | | | |
| 16.1 Direct | 376,698,370 | | 189,571,033 | 191,200,338 | | 34,265 | 69,762,247 | | | 90,866 | |
| 16.2 Reinsurance assumed | 442,789 | | 442,789 | | | | | | | | |
| 16.3 Reinsurance ceded | 3,197,155 | | 3,197,155 | | | | | | | | |
| 16.4 Net | 373,911,709 | | 185,607,667 | 191,200,338 | | 34,265 | 69,762,247 | | | 90,866 | |
| 17. Line 15 + Line 16.4 | 377,124,278 | | 15,997,761 | 191,200,333 | | 34,265 | 69,762,247 | | | 273 | |
| 18. Prior year (uncollected + deferred and accrued - advance) | 5,533,601 | | 5,516,949 | | | 62,828 | 69,762,247 | | | 161,103 | |
| | | | | | | 22,615 | | | | 3,170 | |
| 19. Renewal premiums and considerations: | | | | | | | | | | | |
| 19.1 Direct | 378,734,542 | | 118,853,537 | 191,200,338 | | 40,214 | 69,762,247 | | | 98,306 | |
| 19.2 Reinsurance assumed | 442,789 | | 442,789 | | | | | | | | |
| 19.3 Reinsurance ceded | 3,194,926 | | 8,194,917 | | | | | | | | |
| 19.4 Net (Line 17 + Line 18.2 - Line 19.3) | 371,982,204 | | 10,881,912 | 191,200,338 | | 40,214 | 69,762,247 | | | 273 | |
| | | | | | | | | | | 93,993 | |
| | **TOTAL** | | | | | | | | | | |
| 20. Total premiums and annuity considerations: | | | | | | | | | | | |
| 20.1 Direct | 1,583,303,744 | | 192,590,081 | 1,306,599,648 | | 41,469 | 83,179,361 | | | 93,306 | 0 |
| 20.2 Reinsurance assumed | 454,554 | | 454,554 | | | | | | | 213 | 0 |
| 20.3 Reinsurance ceded | 4,108,973 | | 4,108,660 | | | | | | | 213 | 0 |
| 20.4 Net (Line 9.4 + Line 10.4 + Line 19.4) | 1,579,500,925 | | 191,935,954 | 1,306,509,648 | | 41,460 | 83,179,361 | | | 97,993 | 0 |

9

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 1 - PART 2 - DIVIDENDS AND COUPONS APPLIED, REINSURANCE COMMISSIONS AND EXPENSE ALLOWANCES AND COMMISSIONS INCURRED (direct business only)

| | 1 Total | 2 Industrial Life | Ordinary 3 Life Insurance | 4 Individual Annuities | 5 Credit Life (Group and Individual) | Group 6 Life Insurance | 7 Annuities | 8 Group | Accident and Health 9 Credit (Group & Individual) | 10 Other | 11 Aggregate of All Other Lines of Business |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **DIVIDENDS AND COUPONS APPLIED (Included in Part 1)** | | | | | | | | | | | |
| 21. To pay renewal premiums | 2,000 | | 2,000 | | | | | | | | |
| 22. All other | 125 | | 125 | | | | | | | | |
| **REINSURANCE COMMISSIONS AND EXPENSE ALLOWANCES INCURRED** | | | | | | | | | | | |
| 23. First year (other than single): | | | | | | | | | | | |
| 23.1 Reinsurance ceded | 422,447 | | 422,447 | | | | | | | | |
| 23.2 Reinsurance assumed | 0 | | | | | | | | | | 0 |
| 23.3 Net ceded less assumed | 422,447 | | 422,447 | 0 | | 0 | 0 | 0 | 0 | | 0 |
| 24. Single: | | | | | | | | | | | |
| 24.1 Reinsurance ceded | 0 | | | | | | | | | | 0 |
| 24.2 Reinsurance assumed | 0 | | | | | | | | | | 0 |
| 24.3 Net ceded less assumed | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| 25. Renewal: | | | | | | | | | | | |
| 25.1 Reinsurance ceded | 87,805 | | 87,773 | | | | | | | 32 | |
| 25.2 Reinsurance assumed | 0 | | | | | | | | | | 0 |
| 25.3 Net ceded less assumed | 87,805 | | 87,773 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | 0 |
| 26. Totals | | | | | | | | | | | |
| 26.1 Reinsurance ceded (Page 6, Line 8) | 510,252 | | 510,220 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | |
| 26.2 Reinsurance assumed (Page 6, Line 22) | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| 26.3 Net ceded less assumed | 510,252 | | 510,220 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | 0 |
| **COMMISSIONS INCURRED (direct business only)** | | | | | | | | | | | |
| 27. First year (other than single) | 115,422,668 | | 58,634,969 | 56,141,543 | | | 646,176 | | | | |
| 28. Single | 48,225,412 | | | 46,225,412 | | | | | | | 0 |
| 29. Renewal | 22,995,017 | | 8,507,955 | 12,007,029 | | | 4,442,773 | | | 259 | 0 |
| 30. Deposit-type contract funds | 0 | | | | | | | | | | 0 |
| 31. Totals (to agree with Part 6, Line 21) | 184,605,116 | | 68,142,926 | 116,373,984 | 0 | 0 | 5,088,949 | 0 | 0 | 259 | 0 |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 2 - GENERAL EXPENSES

| | | Insurance | | | | |
|---|---|---|---|---|---|---|
| | 1 Life | Accident and Health | | 4 All Other Lines of Business | 5 Investment | 6 Total |
| | | 2 Cost Containment | 3 All Other | | | |
| 1. Rent | 440,517 | | 810 | | | 441,327 |
| 2. Salaries and wages | 12,520,114 | | 18,011 | | | 12,538,125 |
| 3.11 Contributions for benefit plans for employees | 2,757,997 | | 4,781 | | | 2,762,778 |
| 3.12 Contributions for benefit plans for agents | | | | | | 0 |
| 3.21 Payments to employees under non-funded benefit plans | | | | | | 0 |
| 3.22 Payments to agents under non-funded benefit plans | | | | | | 0 |
| 3.31 Other employee welfare | 264,405 | | | | | 264,405 |
| 3.32 Other agent welfare | 33,193 | | | | | 33,193 |
| 4.1 Legal fees and expenses | 565,709 | | | | | 565,709 |
| 4.2 Medical examination fees | | | | | | 0 |
| 4.3 Inspection report fees | 63,576 | | | | | 63,576 |
| 4.4 Fees of public accountants and consulting actuaries | 334,669 | | | | | 334,669 |
| 4.5 Expense of investigation and settlement of policy claims | | | | | | 0 |
| 5.1 Traveling expenses | 862,182 | | | | | 862,182 |
| 5.2 Advertising | 402,676 | | | | | 402,676 |
| 5.3 Postage, express, telegraph and telephone | 1,349,177 | | | | | 1,349,177 |
| 5.4 Printing and stationery | 993,802 | | 1,048 | | | 994,849 |
| 5.5 Cost of depreciation of furniture and equipment | 68,713 | | 728 | | | 68,940 |
| 5.6 Rental of equipment | 17,201 | | | | | 17,201 |
| 5.7 Cost or depreciation of EDP equipment and software | 444,446 | | | | | 444,446 |
| 6.1 Books and periodicals | 12,318 | | | | | 12,318 |
| 6.2 Bureau and association fees | 106,051 | | | | | 106,051 |
| 6.3 Insurance, except on real estate | 8,010 | | | | | 8,010 |
| 6.4 Miscellaneous losses | | | | | | 0 |
| 6.5 Collection and bank service charges | | | | | 258,581 | 258,581 |
| 6.6 Sundry general expenses | 135,586 | | | | | 135,586 |
| 6.7 Group service and administration fees | | | | | | 0 |
| 6.8 Reimbursements by uninsured plans | | | | | | 0 |
| 7.1 Agency expense allowance | 19,966 | | | | | 19,966 |
| 7.2 Agents' balances charged off (less $........0 recovered) | 981,830 | | | | | 981,830 |
| 7.3 Agency conferences other than local meetings | 2,951,317 | | | | | 2,951,317 |
| 9.1 Real estate expenses | | | | | | 0 |
| 9.2 Investment expenses not included elsewhere | | | | | 5,011,663 | 5,011,663 |
| 9.3 Aggregate write-ins for expenses | 12,064,172 | 0 | 0 | 0 | 0 | 12,064,172 |
| 10. General expenses incurred | 37,493,124 | 0 | 25,878 | 0 | 5,270,235 | (a) 42,794,237 |
| 11. General expenses unpaid December 31, prior year | 3,910,560 | | 321 | | 546,290 | 4,457,591 |
| 12. General expenses unpaid December 31, current year | 4,778,501 | | 297 | | 566,671 | 5,345,969 |
| 13. Amounts receivable relating to uninsured plans, prior year | | | | | | 0 |
| 14. Amounts receivable relating to uninsured plans, current year | | | | | | 0 |
| 15. General expenses paid during year (Lines 10 + 11 - 12 - 13 + 14) | 36,630,204 | 0 | 25,901 | 0 | 5,249,855 | 41,905,959 |
| **DETAILS OF WRITE-INS** | | | | | | |
| 09.301. Consulting fees | 837,599 | | | | | 837,599 |
| 09.302. Life product management services | 9,095,220 | | | | | 9,095,220 |
| 09.303. Services provided by other companies | 2,131,352 | | | | | 2,131,352 |
| 09.398. Summary of remaining write-ins for Line 9.3 from overflow page | 0 | 0 | 0 | 0 | 0 | 0 |
| 09.399. Totals (Lines 09.301 thru 09.303 plus 09.398)(Line 9.3 above) | 12,064,172 | 0 | 0 | 0 | 0 | 12,064,172 |

(a) Includes management fees of $..........0 to affiliates and $.......0 to non-affiliates.

## EXHIBIT 3 - TAXES, LICENSES AND FEES (EXCLUDING FEDERAL INCOME TAXES)

| | 1 Life | Insurance 2 Accident and Health | 3 All Other Lines of Business | 4 Investment | 5 Total |
|---|---|---|---|---|---|
| 1. Real estate taxes | | | | | 0 |
| 2. State insurance department licenses and fees | 805,870 | 973 | | | 806,843 |
| 3. State taxes on premiums | 3,781,999 | 2,070 | | | 3,784,068 |
| 4. Other state taxes, including $........0 for employee benefits | 137,576 | | | | 137,576 |
| 5. U.S. Social Security taxes | 503,914 | | | | 503,914 |
| 6. All other taxes | 325,210 | | | 1,130 | 326,340 |
| 7. Taxes, licenses and fees incurred | 5,554,568 | 3,043 | 0 | 1,130 | 5,558,641 |
| 8. Taxes, licenses and fees unpaid December 31, prior year | 1,074,942 | 88 | | | 1,075,030 |
| 9. Taxes, licenses and fees unpaid December 31, current year | 1,060,804 | 88 | | | 1,060,571 |
| 10. Taxes, licenses and fees paid during year (Lines 7 + 8 - 9) | 5,942,707 | 3,043 | 0 | 1,130 | 5,945,900 |

## EXHIBIT 4 - DIVIDENDS OR REFUNDS

| | 1 Life | 2 Accident and Health |
|---|---|---|
| 1. Applied to pay renewal premiums | 2,000 | |
| 2. Applied to shorten the endowment or premium-paying period | | |
| 3. Applied to provide paid-up additions | 125 | |
| 4. Applied to provide paid-up annuities | | |
| 5. Total Lines 1 through 4 | 2,125 | 0 |
| 6. Paid in cash | 31,928 | |
| 7. Left on deposit | 2,107 | |
| 8. Aggregate write-ins for dividend or refund options | | 0 |
| 9. Total Lines 5 through 8 | 36,161 | 0 |
| 10. Amount due and unpaid | | |
| 11. Provision for dividends or refunds payable in the following calendar year | 24,551 | |
| 12. Terminal dividends | | |
| 13. Provision for deferred dividend contracts | | |
| 14. Amount provisionally held for deferred dividend contracts not included in Line 13 | | |
| 15. Total Lines 10 through 14 | 24,551 | 0 |
| 16. Total from prior year | 24,078 | |
| 17. Total dividends or refunds (Lines 9 + 15 - 16) | 36,635 | 0 |
| **DETAILS OF WRITE-INS** | | |
| 0801. | | |
| 0802. | | |
| 0803. | | |
| 0898. Summary of remaining write-ins for Line 8 from overflow page | 0 | 0 |
| 0899. Totals (Line 0801 thru 0803 plus 0898) (Line 8 above) | 0 | 0 |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**
## EXHIBIT 5 - AGGREGATE RESERVE FOR LIFE CONTRACTS

| 1 Valuation Standard | 2 Total | 3 Industrial | 4 Ordinary | 5 Credit (Group and Individual) | 6 Group |
|---|---|---|---|---|---|
| **Life Insurance:** | | | | | |
| 0100001. 41 CSO 3% NL | 263,617 | | 210,494 | | 53,123 |
| 0100002. 41 CSO 3 1/2% NL | 2,465 | | 2,465 | | |
| 0100003. 58 CSO 2 1/2% NL | 4,297 | | 4,297 | | |
| 0100004. 58 CSO 3% NL | 4,434,870 | | 4,434,870 | | |
| 0100005. 58 CSO 3% CRVM | 2,435,010 | | 2,435,010 | | |
| 0100006. 58 CSO 3 1/2% NL | 397,776 | | 279,279 | | 118,497 |
| 0100007. 58 CSO 3 1/2% CRVM | 6,428,189 | | 4,878,072 | | 1,528,117 |
| 0100008. 58 CSO 4% CRVM | 583,895 | | 583,895 | | |
| 0100009. 58 CSO 4 1/2% NL | 109,573 | | 109,573 | | |
| 0100010. 58 CSO 4 1/2% CRVM | 18,397,610 | | 13,507,695 | | 4,339,915 |
| 0100011. 58 CSO 3 1/2% ALB NL | 8,694,994 | | 4,985,653 | | 3,709,341 |
| 0100012. 58 CSO 3 1/2% ALB CRVM | 1,009,482 | | 1,009,482 | | |
| 0100013. 58 CSO 4% ALB CRVM | 190,322 | | 190,322 | | |
| 0100014. 80 CSO 4% CRVM | 2,292,665 | | 2,292,665 | | |
| 0100015. 80 CSO 4 1/2% NL | 28,907 | | 28,907 | | |
| 0100016. 80 CSO 4 1/2% CRVM | 32,564,589 | | 32,564,589 | | |
| 0100017. 80 CSO 5 1/2% NL | 35,131,797 | | 35,131,797 | | |
| 0100018. 80 CSO 6% NL | 30,865,174 | | 30,865,174 | | |
| 0100019. 80 CSO 6% CRVM | 58,914 | | 58,914 | | |
| 0100020. 80 CSO 6% CRVM | 22,255 | | 22,255 | | |
| 0100021. 80 CSO 2% CMT CRVM | 155,263,379 | | 155,263,379 | | |
| 0100022. 80 CSO 4% MODEL UL | 163,094,028 | | 163,094,028 | | |
| 0100023. 80 CSO 6% YRT | 555 | | 555 | | |
| 0199997. Totals (Gross) | 453,072,363 | 0 | 443,263,370 | 0 | 9,808,993 |
| 0199998. Reinsurance ceded | 23,525,234 | | 23,525,234 | | |
| 0199999. Totals (Net) | 429,547,129 | 0 | 419,738,136 | 0 | 9,808,993 |
| **Annuities (excluding supplementary contracts with life contingencies):** | | | | | |
| 0200001. 37 STD ANN 3% | 0 | XXX | | XXX | |
| 0200002. 71 IAM 6% | 12,974 | XXX | 12,974 | XXX | |
| 0200003. 71 IAM 6 1/2% | 0 | XXX | | XXX | |
| 0200004. 83 IAM 5.25% | 3,484,141 | XXX | 3,484,141 | XXX | |
| 0200005. 83 IAM 5.55% | 8,456,837 | XXX | 8,456,837 | XXX | |
| 0200006. 83 IAM 6% | 834,661 | XXX | 834,661 | XXX | |
| 0200007. 83 IAM 8.25% | 540,737 | XXX | 540,737 | XXX | |
| 0200008. 83 IAM 6 1/2% | 1,694,893 | XXX | 1,694,893 | XXX | |
| 0200009. 83 IAM 6 3/4% | 1,648,242 | XXX | 1,648,242 | XXX | |
| 0200010. 83 IAM 7% | 491,587 | XXX | 491,587 | XXX | |
| 0200011. 83 IAM 7 1/4% | 535,532 | XXX | 535,532 | XXX | |
| 0200012. 83 IAM 7 3/4% | 173,148 | XXX | 173,148 | XXX | |
| 0200013. 83 IAM 8% | 12,853 | XXX | 12,853 | XXX | |
| 0200014. 83 IAM 8 1/4% | 464,776 | XXX | 464,776 | XXX | |
| 0200015. 83 IAM 8 3/4% | 211,605 | XXX | 211,605 | XXX | |
| 0200016. 83 IAM 9 1/4% | 17,790 | XXX | 17,790 | XXX | |
| 0200017. SPDA CARVM 4 1/2% | 121,583,368 | XXX | 121,583,368 | XXX | |
| 0200018. SPDA CARVM 4 3/4% | 603,077,182 | XXX | 603,077,182 | XXX | |
| 0200019. SPDA CARVM 5% | 648,720,458 | XXX | 648,720,458 | XXX | |
| 0200020. SPDA CARVM 5 1/4% | 22,086,815 | XXX | 22,086,815 | XXX | |
| 0200021. SPDA CARVM 5 1/2% | 192,357,781 | XXX | 191,245,494 | XXX | 1,112,287 |
| 0200022. SPDA CARVM 5 3/4% | 38,179,302 | XXX | 37,862,642 | XXX | 316,660 |
| 0200023. SPDA CARVM 6% | 14,399,814 | XXX | 13,614,316 | XXX | 785,298 |
| 0200024. SPDA CARVM 6 1/4% | 13,691,908 | XXX | 13,108,333 | XXX | 583,570 |
| 0200025. SPDA CARVM 6 1/2% | 52,340,525 | XXX | 41,988,452 | XXX | 10,352,073 |
| 0200026. SPDA CARVM 6 3/4% | 31,096,547 | XXX | 31,096,547 | XXX | |
| 0200027. SPDA CARVM 7% | 50,015,223 | XXX | 47,875,893 | XXX | 2,139,330 |
| 0200028. SPDA CARVM 7 1/4% | 9,008,517 | XXX | 2,771,017 | XXX | 6,237,500 |
| 0200029. SPDA CARVM 8 1/2% | 11,136,871 | XXX | 1,414,572 | XXX | 9,722,299 |
| 0200030. FPDA ACCUMULATION | 4,842,089,455 | XXX | 3,582,924,215 | XXX | 1,259,162,240 |
| 0299997. Totals (Gross) | 6,587,767,620 | XXX | 5,377,356,363 | XXX | 1,290,411,257 |
| 0299999. Totals (Net) | 6,587,767,620 | XXX | 5,377,356,363 | XXX | 1,290,411,257 |
| **Supplementary Contracts with Life Contingencies:** | | | | | |
| 0300001. 37 STD ANN 3% | 8,951 | | 8,951 | | |
| 0300002. 83 IAM 5.25% | 154,744 | | 154,744 | | |
| 0300003. 83 IAM 8.00% | 15,683 | | 15,683 | | |
| 0300004. 83 IAM 6.50% | 687,466 | | 687,466 | | |
| 0300005. 83 IAM 8.75% | 30,321 | | 30,321 | | |
| 0300006. 83 IAM 7% | 8,412 | | 8,412 | | |
| 0300007. 83 IAM 8% | 3,318 | | 3,318 | | |
| 0300008. 83 IAM 8.25% | 5,895 | | 5,895 | | |
| 0399997. Totals (Gross) | 912,789 | 0 | 912,789 | 0 | 0 |
| 0399999. Totals (Net) | 912,789 | 0 | 912,789 | 0 | 0 |
| **Accidental Death Benefits:** | | | | | |
| 0400001. 26 ADB 3% | 0 | | | | |
| 0400002. 59 ADB 3% | 15,776 | | 15,776 | | |
| 0400003. 59 ADB 4.5% | 13,781 | | 13,781 | | |
| 0499997. Totals (Gross) | 29,557 | 0 | 29,557 | 0 | 0 |
| 0499999. Totals (Net) | 29,557 | 0 | 29,557 | 0 | 0 |
| **Disability - Active Lives:** | | | | | |
| 0500001. 26 CLASS 3 TABLE 3% | 105 | | 105 | | |
| 0500002. 52 DIS. TABLE 3% | 43,600 | | 43,540 | | 60 |
| 0500003. 52 DIS. TABLE 4% | 17,965 | | 17,965 | | |
| 0500004. 52 DIS. TABLE 5% | 609 | | 609 | | |
| 0500005. 65 DIS. TABLE 4.5% | 2,972,636 | | 2,972,636 | | |
| 0599997. Totals (Gross) | 3,034,915 | 0 | 3,034,855 | 0 | 60 |
| 0599998. Reinsurance ceded | 8,446 | | 8,446 | | |
| 0599999. Totals (Net) | 3,026,469 | 0 | 3,026,409 | 0 | 60 |
| **Disability - Disabled Lives:** | | | | | |
| 0600001. 52 DIS TABLE 3% | 131,128 | | 60,823 | | 70,305 |
| 0600002. 68 GROUP DIS 3 1/2% | 870,879 | | | | 870,879 |
| 0600003. 70 GROUP DIS 3 1/2% | 272,948 | | | | 272,948 |
| 0600004. 85 DIS TABLE 4.50% | 1,265,359 | | 1,265,359 | | |
| 0699997. Totals (Gross) | 2,540,114 | 0 | 1,326,182 | 0 | 1,213,932 |
| 0699998. Reinsurance ceded | 8,734 | | 8,734 | | |
| 0699999. Totals (Net) | 2,531,380 | 0 | 1,317,448 | 0 | 1,213,932 |
| **Miscellaneous Reserves:** | | | | | |
| 0700001. DEF. RESERVES | 27,877 | | 27,877 | | |
| 0700002. NONDEDUCTION OF D.F.P. | 72,854 | | 66,851 | | 6,003 |
| 0700003. ADD'L RES-ASSET/LIAB. | 0 | | | | |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 5 - AGGREGATE RESERVE FOR LIFE CONTRACTS

| 1 Valuation Standard | 2 Total | 3 Industrial | 4 Ordinary | 5 Credit (Group and Individual) | 6 Group |
|---|---|---|---|---|---|
| 0700004. DELTA EXTENSION | 0 | | | | |
| 0700005. GROUP CONVERSION | 43,163 | | 43,163 | | |
| 0700006. NONPAR ORD. ERRORS | 0 | | | | |
| 0700007. PAYOR DTH/GIR/EXTRA | 1,353,440 | | 1,353,440 | | |
| 0799997. Totals (Gross) | 1,497,139 | 0 | 1,491,136 | 0 | 6,003 |
| 0799998. Reinsurance ceded | 1,266,248 | | 1,266,248 | | |
| 0799999. Totals (Net) | 230,891 | 0 | 224,888 | 0 | 6,003 |
| 9999999. Totals (Net) - Page 3, Line 1 | 7,104,045,885 | 0 | 5,802,605,650 | 0 | 1,301,440,245 |

12.1

Annual Statement for the year 2003 of the **Life Insurance Company of the Southwest**

# EXHIBIT 5 - INTERROGATORIES

1.1 Has the reporting entity ever issued both participating and non-participating contracts? Yes [X] No [ ]
1.2 If not, state which kind is issued........
2.1 Does the reporting entity at present issue both participating and non-participating contracts? Yes [ ] No [X]
2.2 If not, state which kind is issued.......... NON-PARTICIPATING
3. Does the reporting entity at present issue or have in force contracts that contain non-guaranteed elements? Yes [X] No [ ]
If so, attach a statement that contains the determination procedures, answers to the interrogatories and an actuarial opinion as described in the instructions.

4. Has the reporting entity any assessment or stipulated premium contracts in force? If so, state: Yes [ ] No [X]
4.1 Amount of insurance: $..........
4.2 Amount of reserve: $..........
4.3 Basis of reserve:
4.4 Basis of regular assessments:
4.5 Basis of special assessments:
4.6 Assessments collected during year: $..........
5. If the contract loan interest rate guaranteed in any one or more of its currently issued contracts is less than 5%, not in advance, state the contract loan rate guarantees on any such contracts.

6. Does the reporting entity hold reserves for any annuity contracts that are less than the reserves that would be held on a standard basis? Yes [ ] No [X]
6.1 If so, state the amount of reserve on such contracts on the basis actually held: $..........
6.2 That would have been held (on an exact or approximate basis) using the actual ages of the annuitants; the interest rate(s) used in 6.1; and the same mortality basis used by the reporting entity for the valuation of comparable annuity benefits issued to standard lives. If the reporting entity has no comparable annuity benefits for standard lives to be valued, the mortality basis shall be the table most recently approved by the state of domicile for valuing individual annuity benefits: $..........
Attach statement of methods employed in their valuation.
7. Does the reporting entity have any Synthetic GIC contracts or agreements in effect as of December 31 of the current year? Yes [ ] No [X]
7.1 If yes, state the total dollar amount of assets covered by these contracts or agreements: $..........
7.2 Specify the basis (fair value, amortized cost, etc.) for determining the amount:

7.3 State the amount of reserves established for this business: $..........
7.4 Identify where the reserves are reported in the blank.

# EXHIBIT 5A - CHANGES IN BASES OF VALUATION DURING THE YEAR

| 1 | Valuation Basis | | 4 |
|---|---|---|---|
| Description of Valuation Class | 2<br>Changed From | 3<br>Changed To | Increase in Actuarial Reserve Due To Change |
| LIFE CONTRACTS (including supplementary contracts set up on a basis other than that used to determine benefits) (Exhibit 5) | | | |
| 0100001. Reinsurance Ceded On Policies Valued on 2001 CSO Basis | 1980 CSO | 2001 CSO | 1,666,683 |
| 0199999. Subtotal (Page 7, Line 6) | XXX | XXX | 1,666,683 |
| 9999999. Total (Column 4 only) | | | 1,666,683 |

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 6 - AGGREGATE RESERVES FOR ACCIDENT AND HEALTH CONTRACTS

| | 1 | 2 | 3 | 4 | 5 | 6 | Other Individual Contracts | | |
| | | | | | | | 7 | 8 | 9 |
| | Total | Group Accident and Health | Credit Accident and Health (Group and Individual) | Collectively Renewable | Non-Cancellable | Guaranteed Renewable | Non-Renewable for Stated Reasons Only | Other Accident Only | All Other |
|---|---|---|---|---|---|---|---|---|---|
| **ACTIVE LIFE RESERVE** | | | | | | | | | |
| 1. Unearned premium reserves | 12,359 | | | | 15 | 12,193 | | | .51 |
| 2. Additional contract reserves (a) | 734,829 | | | | 399 | 734,030 | | | |
| 3. Additional actuarial reserves - Asset/Liability analysis | .0 | | | | | | | | |
| 4. Reserve for future contingent benefits | | | | | | | | | |
| 5. Reserve for rate credits | .0 | | | | | | | | |
| 6. Aggregate write-ins for reserves | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 7. Totals (Gross) | 747,188 | | | | 374 | 746,223 | | | .81 |
| 8. Reinsurance ceded | .24 | | | | | .24 | | | .0 |
| 9. Totals (Net) | 747,164 | .0 | .0 | .0 | 374 | 746,229 | .0 | .0 | .61 |
| **CLAIM RESERVE** | | | | | | | | | |
| 10. Present value of amounts not yet due on claims | | | | | | | | | |
| 11. Additional actuarial reserves - Asset/Liability analysis | .0 | | | | | | | | |
| 12. Reserve for future contingent benefits | .0 | | | | .0 | | | | .0 |
| 13. Aggregate write-ins for reserves | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 14. Totals (Gross) | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 15. Reinsurance ceded | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 16. Totals (Net) | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 17. TOTALS (Net) | 747,164 | .0 | .0 | .0 | 374 | 746,229 | .0 | .0 | .61 |
| 18. TABULAR FUND INTEREST | .17,276 | | | | .13 | 17,263 | | | .0 |

### DETAILS OF WRITE-INS

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| 0601. | | | | | | | | | |
| 0602. | | | | | | | | | |
| 0603. | | | | | | | | | |
| 0698. Summary of remaining write-ins for Line 6 from overflow page | .0 | | | | .0 | .0 | | | .0 |
| 0699. Totals (Lines 0601 thru 0603 plus 0698) (Line 6 above) | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |
| 1301. | | | | | | | | | |
| 1302. | | | | | | | | | |
| 1303. | | | | | | | | | |
| 1398. Summary of remaining write-ins for Line 13 from overflow page | .0 | | | | .0 | .0 | | | .0 |
| 1399. Totals (Lines 1301 thru 1303 + 1398) (Line 13 above) | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 | .0 |

(a) Attach statement as to valuation standard used in calculating this reserve, specifying reserve bases, interest rates and methods.

14

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 7 - DEPOSIT-TYPE CONTRACTS

| | 1 Total | 2 Guaranteed Interest Contracts | 3 Annuities Certain | 4 Supplemental Contracts | 5 Dividend Accumulations or Refunds | 6 Premium and Other Deposit Funds |
|---|---|---|---|---|---|---|
| 1. Balance at the beginning of the year before reinsurance. | 48,061,684 | | 35,027,707 | 1,882,999 | 18,710 | 13,032,066 |
| 2. Deposits received during the year. | 44,735,330 | | 8,541,832 | 1,430,000 | | 34,763,558 |
| 3. Investment earnings credited to the account. | 885,709 | | 324,970 | 16,595 | | 224,905 |
| 4. Other net change in reserves. | 5,085,061 | | 5,600,383 | (804,305) | | |
| 5. Fees and other charges assessed. | 0 | | | | | |
| 6. Surrender charges. | 0 | | | | | |
| 7. Net surrender or withdrawal payments. | 44,776,724 | | 13,594,676 | 444,610 | | |
| 8. Other net transfers to or (from) Separate Accounts. | 0 | | | | | |
| 9. Balance at the end of current year before reinsurance (Lines 1 + 2 + 3 + 4 - 5 - 6 - 7 - 8). | 55,690,510 | | 36,400,217 | 2,530,268 | 18,710 | 16,940,325 |
| 10. Reinsurance balance at the beginning of the year. | 0 | | | | | |
| 11. Net change in reinsurance assumed. | 0 | | | | | |
| 12. Net change in reinsurance ceded. | 0 | | | | | |
| 13. Reinsurance balance at the end of the year (Lines 10 + 11 - 12). | 0 | | 0 | 0 | | 0 |
| 14. Net balance at the end of the current year after reinsurance (Lines 9 + 13). | 55,690,510 | | 36,400,217 | 2,530,268 | 18,710 | 16,940,325 |

15

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 8 - CLAIMS FOR LIFE AND ACCIDENT AND HEALTH CONTRACTS
### PART 1 - Liability End of Current Year

| | 1 | 2 | Ordinary | | | | Group | | Accident and Health | | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Industrial Life | 3 Life Insurance | 4 Individual Annuities | 5 Supplementary Contracts | 6 Credit Life (Group and Individual) | 7 Life Insurance | 8 Annuities | 9 Group | 10 Credit (Group and Individual) | Other |
| **1. Due and unpaid:** | | | | | | | | | | | |
| 1.1 Direct | 0 | | | | | | | | | | |
| 1.2 Reinsurance assumed | 0 | | | | | | | | | | |
| 1.3 Reinsurance ceded | 0 | | | | | | | | | | |
| 1.4 Net | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2. In course of settlement:** | | | | | | | | | | | |
| **2.1 Resisted:** | | | | | | | | | | | |
| 2.11 Direct | 2,814,400 | | 2,814,400 | | | | | | | | |
| 2.12 Reinsurance assumed | | | | | | | | | | | |
| 2.13 Reinsurance ceded | 494,786 | | 494,786 | | | | | | | | |
| 2.14 Net | 2,119,614 | 0 | (b)...2,119,614 | (b)...0 | | (b)...0 | (b)...0 | | (b)...0 | (b)...0 | (b)...0 |
| **2.2 Other:** | | | | | | | | | | | |
| 2.21 Direct | 5,930,779 | | 5,692,782 | 270,367 | | | 47,409 | 5,221 | | | |
| 2.22 Reinsurance assumed | 85,444 | | 85,444 | | | | | | | | |
| 2.23 Reinsurance ceded | 1,580,748 | | 1,580,748 | | | | | | | | |
| 2.24 Net | 4,055,474 | 0 | (b)...3,762,478 | (b)...270,367 | | (b)...0 | (b)...47,409 | 5,221 | (b)...0 | (b)...0 | (b)...0 |
| **3. Incurred but not unreported:** | | | | | | | | | | | |
| 3.1 Direct | 1,659,410 | | 1,615,014 | | | | 21,897 | 5,221 | | | 24,500 |
| 3.2 Reinsurance assumed | 34,096 | | 34,096 | | | | | | | | |
| 3.3 Reinsurance ceded | 509,594 | | 509,594 | | | | | | | | 200 |
| 3.4 Net | 1,183,913 | 0 | (b)...1,137,717 | (b)...0 | | (b)...0 | (b)...21,897 | 5,221 | (b)...0 | (b)...0 | (b)...24,500 |
| **4. Totals:** | | | | | | | | | | | |
| 4.1 Direct | 10,254,590 | | 9,885,598 | 270,367 | | | 69,306 | 5,221 | | 0 | 24,500 |
| 4.2 Reinsurance assumed | 119,540 | | 119,540 | | | | | | | 0 | 0 |
| 4.3 Reinsurance ceded | 2,085,128 | | 2,584,928 | | | | 0 | | | 0 | 200 |
| 4.4 Net | 7,989,002 | 0 | (a)...7,019,988 | 270,367 | | | (a)...69,306 | 5,221 | (a)...0 | 0 | 24,500 |

(a) Including matured endowments (but not guaranteed annual pure endowments) unpaid amounting to $.........0 in Column 2, $.........0 in Column 3 and $.........0 in Column 7.

(b) Include only portion of disability and accident and health claim liabilities applicable to assumed "incurred" benefits. Reserves (including reinsurance assumed and net of reinsurance ceded) for unaccrued benefits for
Ordinary Life Insurance $.........0; Individual Annuities $.........0; Credit Life (Group and Individual) $.........0; and Group Life $.........0; Credit (Group and Individual) Accident and Health $.........0 and Other Accident and Health $.........0
are included in Page 3, Line 1 (See Exhibit 5, Section on Disability Disabled Lives); and for Group Accident and Health $.........0
are included in Page 3, Line 2, (See Exhibit 6, Claim Reserve).

16

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

## EXHIBIT 8 - CLAIMS FOR LIFE AND ACCIDENT AND HEALTH CONTRACTS

### PART 2 - Incurred During the Year

| | 1 Total | 2 Industrial Life (a) | Ordinary 3 Life Insurance (b) | 4 Individual Annuities | 5 Supplementary Contracts | 6 Credit Life (Group and Individual) | Group 7 Life Insurance (c) | 8 Annuities | 9 Group | 10 Credit (Group and Individual) | 11 Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **1. Settlements during the year:** | | | | | | | | | | | |
| 1.1 Direct | 70,846,726 | | 31,281,174 | 35,214,544 | 102,031 | | 228,959 | 3,777,666 | | | 46,354 |
| 1.2 Reinsurance assumed | 461,188 | | 461,188 | | | | | | | | |
| 1.3 Reinsurance ceded | 5,375,003 | | 5,375,003 | | | | | | | | |
| 1.4 Net | (0)...65,732,993 | 0 | 26,367,339 | 35,214,544 | 102,031 | 0 | 228,959 | 3,777,666 | 0 | 0 | 46,354 |
| **2. Liability December 31, current year from Part 1:** | | | | | | | | | | | |
| 2.1 Direct | 10,254,589 | | 9,885,195 | 270,387 | | | 69,306 | 5,221 | | | 24,500 |
| 2.2 Reinsurance assumed | 119,540 | | 119,540 | | | | | | | | |
| 2.3 Reinsurance ceded | 2,965,128 | | 2,464,628 | | | | | | | | 200 |
| 2.4 Net | 7,886,002 | | 7,019,006 | 270,387 | 0 | | 69,306 | 5,221 | | 0 | 24,300 |
| 3. Amounts recoverable from reinsurers December 31, current year | 452,111 | | 452,111 | | | | | | | | |
| **4. Liability December 31, prior year:** | | | | | | | | | | | |
| 4.1 Direct | 8,286,618 | | 7,821,867 | 336,515 | | | 83,650 | 22,266 | | | 24,500 |
| 4.2 Reinsurance assumed | 204,772 | | 204,772 | | | | | | | | |
| 4.3 Reinsurance ceded | 1,693,834 | | 1,493,654 | | | | | | | | 200 |
| 4.4 Net | 7,000,458 | | 6,532,985 | 336,515 | 0 | | 83,650 | 22,266 | 0 | 0 | 24,300 |
| 5. Amounts recoverable from reinsurers December 31, prior year | 667,222 | | 667,222 | | | | | | | | |
| **6. Incurred benefits:** | | | | | | | | | | | |
| 6.1 Direct | 72,611,769 | | 33,344,513 | 35,148,398 | 102,031 | 0 | 211,015 | 3,759,491 | 0 | 0 | 46,354 |
| 6.2 Reinsurance assumed | 375,936 | | 375,936 | | | | | | | | 0 |
| 6.3 Reinsurance ceded | 8,691,196 | | 8,691,196 | | | 0 | 0 | 0 | 0 | 0 | 0 |
| 6.4 Net | 68,296,560 | 0 | 27,029,393 | 35,148,398 | 102,031 | 0 | 211,015 | 3,759,491 | 0 | 0 | 46,354 |

(a) Including misband endowments (but not guaranteed annual pure endowments) amounting to $........0 in Line 1.1, $........0 in Line 1.4, $........0 in Line 6.1 and $........0 in line 6.4.
(b) Including matured endowments (but not guaranteed annual pure endowments) amounting to $....621,877 in Line 1.1, $....621,877 in Line 1.4, $....621,877 in Line 6.1 and $....621,877 in line 6.4.
(c) Including matured endowments (but not guaranteed annual pure endowments) amounting to $........0 in Line 1.1, $........0 in Line 1.4, $........0 in Line 6.1 and $........0 in line 6.4.
(d) Includes $....91,749 premium waived under total and permanent disability benefits.

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

# EXHIBIT OF NONADMITTED ASSETS

| | 1 Current Year Total Nonadmitted Assets | 2 Prior Year Total Nonadmitted Assets | 3 Change in Total Nonadmitted Assets (Col. 2 - Col. 1) |
|---|---|---|---|
| 1. Bonds (Schedule D) | | | 0 |
| 2. Stocks (Schedule D): | | | |
| 2.1 Preferred stocks | | | 0 |
| 2.2 Common stocks | | | 0 |
| 3. Mortgage loans on real estate (Schedule B): | | | |
| 3.1 First liens | | | 0 |
| 3.2 Other than first liens | | | 0 |
| 4. Real estate (Schedule A): | | | |
| 4.1 Properties occupied by the company | | | 0 |
| 4.2 Properties held for the production of income | | | 0 |
| 4.3 Properties held for sale | | | 0 |
| 5. Cash (Schedule E-Part 1), cash equivalents (Schedule E-Part 2) and short-term investments (Schedule DA) | | | 0 |
| 6. Contract loans | | | 0 |
| 7. Other invested assets (Schedule BA) | | | 0 |
| 8. Receivables for securities | | | 0 |
| 9. Aggregate write-ins for invested assets | 0 | 0 | 0 |
| 10. Subtotals, cash and invested assets (Lines 1 to 9) | 0 | 0 | 0 |
| 11. Title plants (for Title insurers only) | | | 0 |
| 12. Investment income due and accrued | | | 0 |
| 13. Premiums and considerations: | | | |
| 13.1 Uncollected premiums and agents' balances in the course of collection | | | 0 |
| 13.2 Deferred premiums, agents' balances and installments booked but deferred and not yet due | | | 0 |
| 13.3 Accrued retrospective premiums | | | 0 |
| 14. Reinsurance: | | | |
| 14.1 Amounts recoverable from reinsurers | | | 0 |
| 14.2 Funds held by or deposited with reinsured companies | | | 0 |
| 14.3 Other amounts receivable under reinsurance contracts | | | 0 |
| 15. Amounts receivable relating to uninsured plans | | | 0 |
| 16.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 |
| 16.2 Net deferred tax asset | 23,465,277 | 33,457,227 | 9,991,950 |
| 17. Guaranty funds receivable or on deposit | | | 0 |
| 18. Electronic data processing equipment and software | 902,397 | 553,965 | (348,432) |
| 19. Furniture and equipment, including health care delivery assets | 172,998 | 132,468 | (40,530) |
| 20. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 |
| 21. Receivables from parent, subsidiaries and affiliates | | | 0 |
| 22. Health care and other amounts receivable | 15,911,922 | 10,782,435 | (5,129,487) |
| 23. Aggregate write-ins for other than invested assets | 246,248 | 394,083 | 147,835 |
| 24. Total assets excluding Separate Accounts, Segregated Accounts and Protected Cell Accounts (Lines 10 through 23) | 40,698,841 | 45,320,178 | 4,621,338 |
| 25. From Separate Accounts, Segregated Accounts and Protected Cell Accounts | | | 0 |
| 26. TOTALS (Lines 24 and 25) | 40,698,841 | 45,320,178 | 4,621,338 |

DETAILS OF WRITE-INS

| | | | |
|---|---|---|---|
| 0901. | | | 0 |
| 0902. | | | 0 |
| 0903. | | | 0 |
| 0998. Summary of remaining write-ins for Line 9 from overflow page | 0 | 0 | 0 |
| 0999. Totals (Lines 0901 thru 0903 plus 0998) (Line 9 above) | 0 | 0 | 0 |
| 2301. Prepaid Expenses | 203,760 | 324,447 | 120,687 |
| 2302. Items not allocated | 14,494 | 42,152 | 27,658 |
| 2303. Leasehold Improvements | 27,492 | 24,476 | (3,016) |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | 501 | 3,007 | 2,506 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398) (Line 23 above) | 246,248 | 394,083 | 147,835 |

1. Summary of Significant Accounting Policies

   A. Accounting Practices

   The financial statements of Life Insurance Company of the Southwest (the Company) are presented on the basis of accounting practices prescribed or permitted by the Texas Department of Insurance.

   The Texas Department of Insurance recognizes only statutory accounting practices prescribed or permitted by the state of Texas for determining and reporting the financial condition and results of operations of an insurance company for determining its solvency under the Texas Insurance Law. The National Association of Insurance Commissioners' (NAIC) Accounting Practices and Procedures manual (NAIC SAP) has been adopted as a component of prescribed or permitted practices by the State of Texas.

   With permission of the Texas Department of Insurance, substantive amendments to the NAIC Accounting Practices and Procedures Manual for SSAP No. 10R, *Income Taxes – Revised, a Temporary Replacement of SSAP No. 10*, is permitted. The Company recognized a gain in surplus of $8,246,061 with the application of SSAP No. 10R.

   A reconciliation of the Company's net income and capital and surplus between NAIC SAP and practices prescribed and permitted by the State of Texas is shown below:

   | | | State of Domicile | 2009 | 2008 |
   |---|---|---|---|---|
   | (1) | Net Income (Loss) Texas State basis | | $ 51,774,524 | $ (37,005,494) |
   | (2) | State Prescribed Practice (Income) | TX | -0- | -0- |
   | (3) | State Permitted Practices (Income) | TX | -0- | -0- |
   | (4) | Net Income, NAIC SAP | | 51,774,524 | (37,005,494) |
   | (5) | Statutory Surplus Texas basis | | 484,063,454 | 420,121,367 |
   | (6) | State Prescribed Practice (Surplus) | TX | -0- | -0- |
   | (7) | State Permitted Practice (Surplus) | TX | 8,246,061 | -0- |
   | (8) | Statutory Surplus, NAIC SAP | | $ 492,309,515 | $ 420,121,367 |

   B. Use of Estimates in the Preparation of the Financial Statements

   The preparation of financial statement in conformity with Statutory Accounting Principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities. It also requires disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the period. Actual results could differ from those estimates.

   C. Accounting Policy

   Life premiums are recognized as income over the premium paying period of the related policies. Annuity considerations are recognized as revenue when received. Health premiums are earned ratably over the terms of the related insurance and reinsurance contracts or policies. Expenses incurred in connection with acquiring new insurance business, including acquisition costs such as sales commissions, are charged to operations as incurred.

   In addition, the company uses the following accounting policies:

   (1) Short-term investments are stated at amortized cost.

   (2) Bonds not backed by other loans are stated at amortized cost using the interest method.

   (3) Common stocks are stated at fair market value.

   (4) Preferred stocks are stated in accordance with the guidance provided in SSAP No. 32.

   (5) Mortgage loans on real estate are stated at the aggregate unpaid balance.

   (6) Loan-backed securities and structured securities are stated at the lower of amortized cost or fair market value. The retrospective adjustment method is used to value all securities.

   (7) Not applicable.

   (8) The Company has minor ownership interest in joint ventures. The Company carries a Partnership interest based on the underlying audited GAAP equity of the investee. Investment in Non-Guaranteed Federal Low Income Housing Tax Credits are carried at amortized cost.

Annual Statement for the year 2009 of the **Life Insurance Company of the Southwest**

    (9)    All derivatives are stated at fair value.

    (10)  The Company anticipates investment income as a factor in the premium deficiency calculation, in accordance with SSAP No. 54, *Individual and Group Accident and Health Contracts.*

    (11)  Liabilities for losses and loss/claim adjustment expenses for accident and health contracts are estimated by the Company's valuation actuary using statistical claim development models to develop best estimates of liabilities for medical expense business and using tabular reserves employing mortality/morbidity tables and discount rates specified by regulatory authorities for disability income business.

    (12)  The Company has not modified its capitalization policy from the prior year.

    (13)  Not applicable.

2.  Accounting Changes and Corrections of Errors

    A.  Material Changes in Accounting Principles and Correction of Errors

        None

3.  Business Combinations and Goodwill

    A.  Statutory Purchase Method

        None

    B.  Statutory Merger

        None

    C.  Assumption Reinsurance

        None

    D.  Impairment Loss

        None

4.  Discontinued Operations

    None

5.  Investments

    A.  Mortgage Loans, including Mezzanine Real Estate Loans

        (1)    The maximum and minimum lending rates for mortgage loans during 2009 were: 7.5% and 6.5%.

        (2)    During 2009 the Company did not reduced interest rates of any outstanding mortgage loans.

        (3)    The maximum percentage of any one loan to the value of security at the time of the loan, exclusive of insured or guaranteed or purchase money mortgages was: 75%

|  |  | Current Year | Prior Year |
|---|---|---|---|
| (4) | As of year end, the Company held mortgages with interest more than 180 days past due with a recorded investment, excluding accrued interest | $ -0- | $ -0- |
|  | a. Total interest due on mortgages with interest more than 180 days past due | $ -0- | $ -0- |
| (5) | Taxes, assessments and any amounts advanced and not included in the mortgage loan total | $ -0- | $ -0- |