# APPENDIX 1

**COPY**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890), BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California St., Ste. 2300, San Francisco, CA 94111
TELEPHONE NO: **(415) 421-6140**   FAX NO: **(415) 398-5030**
ATTORNEY FOR *(Name):* Joyce Walker, Kim Bruce Howlett and Muriel Spooner

FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2010 SEP 24   AM 1: 05

CLERK OF THE COURT
BY: _____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center

CASE NAME:
Walker, Howlett, Spooner, et al. v. Life Insurance Co. of the Southwest

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **CGC-10-504020** |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☑ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 24, 2010
Brian P. Brosnahan
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

COPY

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2010 SEP 24  AM 1: 05

2010 SEP 29  A 11:00

CASE MANAGEMENT CONFERENCE SET

FEB 2 5 2011 -9:00 AM

DEPARTMENT 212

1  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
   CHARLES N. FREIBERG (SBN 70890)
2  BRIAN P. BROSNAHAN (SBN 112894)
   JACOB N. FOSTER (SBN 250785)
3  101 California Street, Suite 2300
   San Francisco, California  94111
4  Telephone:  (415) 421-6140
   Facsimile:  (415) 398-5030
5
   LEVINE & MILLER
6  HARVEY R. LEVINE (SBN 61879)
   CRAIG A. MILLER (SBN 116030)
7  550 West C Street, Suite 1810
   San Diego, CA 92101-8596
8  Telephone:  (619) 231-9449
   Facsimile:  (619) 231-8638
9
   Attorneys for Plaintiffs,
10 JOYCE WALKER, KIM BRUCE HOWLETT,
   and MURIEL SPOONER, on behalf of themselves
11 and all others similarly situated

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              CITY AND COUNTY OF SAN FRANCISCO

14                      CGC-10-504020

15 JOYCE WALKER, KIM BRUCE            CLASS ACTION
16 HOWLETT, and MURIEL SPOONER, on
   behalf of themselves and all others similarly   CASE NO.:
17 situated,
                                      CLASS ACTION COMPLAINT
18              Plaintiffs,
                                      DEMAND FOR JURY TRIAL
19     v.
                                      Action Filed:
20 LIFE INSURANCE COMPANY OF THE
   SOUTHWEST, a Texas corporation, and
21 Does 1-50,

22              Defendant.

23

24

25

26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

Complaint

Plaintiffs Joyce Ann Walker, Kim Bruce Howlett, and Muriel Lynn Spooner (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, allege, upon knowledge as to their own acts and otherwise upon information and belief, as follows:

## OVERVIEW

1.      This class action seeks to redress the unfair, unlawful, and fraudulent business acts and practices of defendant Life Insurance Company of the Southwest ("LSW" or "Defendant") with respect to its indexed universal life insurance policies.  LSW sells indexed universal life insurance policies, including the SecurePlus Provider policy and the SecurePlus Paragon policy, to individuals throughout California.  LSW represents that the policies are retirement or investment vehicles and deceptively presents projected investment gains that will purportedly provide the policyholder with significant yearly income for life.  LSW does not specifically disclose and identify the cost of buying and maintaining the policies but instead conceals these very substantial costs within the projected earnings of the policies.  LSW also does not disclose material risks that the policies will not perform as illustrated.  As a result of these misrepresentations and nondisclosures, policyholders are induced to invest substantial assets in the policies, in many cases by cashing out their retirement accounts or selling their homes.  Once policyholders realize that the policies are not what LSW represented, they are unable to take their money out of the policies without paying enormous surrender charges.

2.      SecurePlus Provider and SecurePlus Paragon are equity-indexed universal life insurance policies that have a fixed interest rate component as well as an indexed account option. Life insurance is designed to provide a death benefit to a designated beneficiary upon the death of the insured person.  Indexed universal life insurance policies allow a policyholder also to accumulate cash value based on the performance of certain stock indices.  The indexed account option accumulates cash value in the policy based on the performance of the Standard & Poor's (S&P) 500.  The actual interest credited to the policy's cash value is determined by changes in the S&P 500, the "participation rate," (i.e., the percentage at which the policyholder is given

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  credit for gains in the S&P 500), and any cap that may be imposed on the policyholder's gain in
2  a single year.

3      3.    LSW engaged in unlawful, unfair, and fraudulent business acts and practices by
4  developing, encouraging, and implementing a scheme to sell the policies. LSW's unlawful
5  scheme involves marketing the policies as retirement or investment vehicles, concealing the true
6  cost of the policies from policyholders, concealing the risks that the policies will not perform as
7  represented, and misrepresenting the safety and security of the policies as investment or
8  retirement vehicles. The centerpiece of LSW's deceptive scheme is the use of policy
9  illustrations that were created by LSW. The illustrations are distributed to prospective
10 policyholders through agents or brokers who rely on LSW's illustrations to sell the policies.

11     4.    In perpetuating its unlawful scheme, LSW disregards and violates the express,
12 detailed provisions of the California Insurance Code that govern the use of life insurance
13 illustrations. Insurance Code Section 10509.955(b)(1) states, "When using an illustration in the
14 sale of a life insurance policy, an insurer or its producers or other authorized representatives shall
15 not do any of the following: . . . (1) Represent the policy as anything other than a life insurance
16 policy." LSW's marketing scheme and its policy illustrations violate the statute by touting the
17 policies as retirement or investment vehicles.

18     5.    The "Life Insurance Illustration" ("Illustration") is copyrighted by LSW. A cover
19 page used by LSW describes the policies as follows:

# LSW

Life Insurance Company of the Southwest

A Revolutionary Concept in Financial Independence

## Revolutionary Life

*Life Insurance You Don't Have to Die to Use*

Since the insured person must die in order to use the main feature of all life insurance, LSW is
necessarily marketing the policies as something other than a life insurance policy, i.e., a
retirement or investment plan. Interior pages of the Illustration focus on "Retirement Income"

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  and the purportedly superior investment features of the policies.  LSW represents that the

2  policies will provide "[c]ash accumulation for additional retirement income, college expenses or

3  to meet emergencies."  LSW also uniformly represents that the policies are retirement or

4  investment plans that provide policyholders with financial independence through streams of

5  income, and this, rather than any life insurance benefits, is the primary basis on which the

6  policies are sold.  LSW markets the policies as retirement or investment vehicles without regard

7  to whether the policyholder actually wants or needs life insurance.

8         6.      The Illustration includes deceptive presentations of two sets of projected policy

9  values (labeled the "guaranteed basis values" and "current basis values"), and these presentations

10  are virtually the sole focus of the illustrations.  Indeed, the specific and significant expenses that

11  will be incurred by the policyholder because the policies are life insurance policies are almost

12  entirely omitted from the Illustration.  Instead, these charges are deceptively embedded in the

13  policy value illustrations, effectively hiding the costs from policyholders.  The result is that the

14  disclosures focus almost entirely on the earnings or income generation capabilities of the policies

15  and not on the cost of the insurance features of the policies.  LSW fails to separately identify and

16  disclose, among other things, the following expenses that are charged annually or monthly by

17  LSW: the monthly cost of insurance charge; premium expense charge; the monthly percent of

18  accumulated value charge (for the SecurePlus Paragon policy); and the monthly policy fee.

19  LSW's failure to separately identify and disclose these expenses is particularly misleading in

20  light of its disclosure of a "Monthly Administrative Charge" and its statement that the policies

21  are subject to only "One Policy Fee."  While a reasonable policyholder would believe that the

22  "Monthly Administrative Charge" includes all expenses that will be charged by LSW, in fact the

23  "Monthly Administrative Charge" does not include any of the expenses described above.

24         7.      Projected index crediting from gains in the S&P 500 is highly dependent on

25  nonguaranteed variables, including market performance, participation rates, index earnings caps,

26  and allocation of policy premiums among different crediting strategies.  Policy expenses can

27  render illusory any projected gains from indexing, and LSW's illustrations, by concealing these

28  expenses, makes the policies appear to be much more favorable investments than they are in

reality.  Unless credited index gains exceed administrative and insurance costs, the cash values of the policies are depleted.  While LSW deceptively represents that the policies will remain in force indefinitely, and universal life insurance is touted to provide policyholders with permanent life insurance, depletion of cash value will ultimately cause the policies to lapse.  Though LSW markets the policies as providing retirement income through policy loans, the Illustration does not disclose that policy lapse exposes the policyholder to liability for ordinary income taxes on any policy loans outstanding at the time of lapse.  Such liability could be enormous and in many or most cases would be realized and incurred only *after* the loan proceeds needed to pay the tax had already been spent.

8.      Although the policies are marketed under the "SecurePlus" brand name as safe and secure investment or retirement vehicles, LSW conceals material risks that the policies will not perform as illustrated but will, instead, lapse unless additional money is paid into the policies.  LSW conceals these risks by concealing the substantial policy expenses discussed above and by projecting non-guaranteed values based only upon index crediting scenarios that assume essentially constant rates of return derived from the S&P 500.  Although LSW knows that the rates of return from index crediting tied to the S&P 500 will be highly variable, it conceals the substantial risks of policy failure that such variability introduces given LSW's deduction of substantial cost of insurance and administrative expenses, which occur whether or not the S&P 500 experiences positive or negative returns.  Cost of insurance deductions increase if the accumulated value of the policy decreases, so the expenses that LSW charges to the policy tend to increase if the S&P 500 performs poorly, which in turn reduces the accumulated value of the policy, thus reducing the principal amount available to generate earnings should there be an improvement in the performance of the S&P 500.

9.      LSW also markets and sells the policies on the basis that they will provide guaranteed returns to policyholders, even if the projected returns are not realized.  However, the guaranteed values used in the Illustration are misrepresented as annual guarantees when in fact they are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus Provider) on the basis of *average* annual guarantees, and they are further deceptive

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  and misleading because the guaranteed values are calculated based on net premiums (i.e., after

2  deduction of all of the costs described above, which are not specifically identified and disclosed).

3  Though LSW knows that policyholders will not receive an annual guarantee, it fails to disclose

4  this material information to policyholders in the Illustration. This is particularly misleading

5  because policyholder gains in certain indexed account options are subject to an annual cap (e.g.,

6  a limit of 10% even if the S&P 500 rose 20%), but the minimum floor provided by the

7  guaranteed values is not provided annually. The Illustration also fails to disclose that even the

8  "guaranteed" values are not actually guaranteed but are dependent on LSW's claims-paying

9  ability.

10        10.    The Illustration created by LSW obfuscates the nature and economic terms of the

11  policies. The terms of the policies and their projected performance are incomprehensible to a

12  typical policyholder because of the misleading and insufficient information provided in the

13  Illustrations.

14        11.    LSW's misrepresentations and omissions induce policyholders to purchase the

15  policies. Policyholders reasonably rely on LSW's representations and nondisclosures and on the

16  expert and superior knowledge of LSW. LSW deliberately misrepresents the nature and

17  economic terms of the transaction through the Illustrations. For example, Plaintiff Joyce Walker

18  paid $224,000 in premiums before she discovered that her policy was not the reasonably safe and

19  secure retirement or investment vehicle that had been represented to her. Plaintiff Kim Howlett

20  paid $105,750 and Plaintiff Muriel Spooner paid $59,500, before they made that discovery.

21        12.    Any policyholder who purchases one of the policies is in a precarious situation.

22  The projected gains are contingent upon numerous nonguaranteed variables, but the costs of the

23  policies are invariably significant. These costs significantly diminish the accumulation of value

24  in the policies, regardless of whether the projected gains are realized. In the event that a

25  policyholder discovers LSW's misrepresentations and omissions, she must pay a huge "surrender

26  charge" if she wishes to terminate the policies.

27        13.    As detailed below, LSW's unlawful scheme violates the detailed legal

28  requirements of the California Insurance Code that govern the regulation of life insurance. LSW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   violates Insurance Code Section 10509.955(b)(1) by selling the policies as retirement or

2   investment plans rather than on the basis of their life insurance benefits.  The Illustrations

3   provided by LSW also violate the express requirements of Insurance Code Sections

4   10509.955(b)(6), 10509.955(b)(2), 10509.955(b)(3), 10509.950; 10509.955; 10509.971;

5   10509.972, 10509.956(a)(13), and 10509.956(b)(4) by, among other things, misrepresenting the

6   costs of the policies, misrepresenting the risks, safety, and security of the policies, treating policy

7   lapse in a misleading manner, deceptively presenting the guaranteed values, failing to define key

8   terms, and implying that nonguaranteed elements are annual guarantees.

9       14.    LSW's conduct in marketing and selling the policies also violates California's

10  common law of fraudulent concealment and California's Unfair Competition Law (Cal. Bus. &

11  Prof. Code Section 17200, et seq.).  As a result of LSW's unlawful, unfair, and fraudulent

12  business acts and practices, Plaintiffs and the class have incurred damages and have suffered

13  injury in fact and lost money or property and are entitled to compensatory and punitive damages

14  as well as declaratory, injunctive, and restitutionary relief as set forth below.

15                                              **VENUE**

16      15.    Venue in this county is proper under California Code of Civil Procedure

17  Section 395(a) because the Defendant does not reside in California, has not designated a

18  principal business office in California, and Plaintiffs designated this county in their Complaint.

19                                          **THE PARTIES**

20      16.    Plaintiff Joyce Walker (formerly, Joyce Schmidtbauer) is a resident of San Diego,

21  California.

22      17.    Plaintiff Kim Bruce Howlett is a resident of San Diego, California.

23      18.    Plaintiff Muriel Lynn Spooner is a resident of San Diego, California.

24      19.    Defendant Life Insurance Company of the Southwest is, and at all relevant times

25  was, a corporation organized and existing under the laws of the State of Texas with its principal

26  place of business in Dallas, Texas.

27      20.    Plaintiffs are currently unaware of the identities of Does 1 through 50, who were

28  the agents of LSW or who conspired with LSW to commit the misconduct described herein.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## LSW'S UNFAIR, UNLAWFUL AND FRADULENT MARKETING AND SALE OF INDEXED UNIVERSAL LIFE POLICIES

21.     Plaintiffs are informed and believe and based thereon allege that, at all relevant times, LSW was an issuer of life insurance policies, including so-called indexed or "equity-indexed" universal life insurance policies.

22.     Life insurance generally refers to a form of insurance that pays on the death of the insured person, who is typically the policyholder.  The purpose of life insurance is to provide a death benefit to a designated beneficiary upon the death of the insured.  Equity-indexed universal life insurance policies allow a policyholder to allocate premium payments towards the investment or cash value of the policy and accumulate cash value based on the performance of certain stock indices.

23.     The California Insurance Code imposes detailed requirements on the use of life insurance illustrations, including prescribing minimum standards to be followed when illustrations are used, and specifying disclosures that are required in connection with illustrations.  Insurance Code Section 10509.955(b)(1) states, "When using an illustration in the sale of a life insurance policy, an insurer or its producers or other authorized representatives shall not do any of the following: . . . (1) Represent the policy as anything other than a life insurance policy."  LSW's marketing scheme, which uses the policy illustrations as its centerpiece, violates Section 10509.955(b)(1).

24.     Plaintiffs are informed and believe and based thereon allege that LSW developed, marketed, and sold equity-indexed universal life insurance policies, including SecurePlus Provider and SecurePlus Paragon.  SecurePlus Provider and SecurePlus Paragon provide policyholders with an indexed account option that is used to allocate premium payments to accounts whose performance is tied to the S&P 500.  The actual interest credited to the policies' cash value is determined by changes in the S&P 500, the "participation rate," (i.e., the percentage at which the policyholder is given credit for gains in the S&P 500), and any cap that may be imposed on the policyholder's gain in a single year.

25.     Plaintiffs are informed and believe and based thereon allege that, at all relevant

times, LSW developed, marketed, and sold the policies in the State of California.

26.     LSW markets and sells the policies through agents or brokers who rely upon an Illustration format that is provided by LSW.  Through its unlawful, unfair, and fraudulent business acts and practices, LSW induces policyholders to purchase the policies by marketing them as an investment or retirement plan and misrepresenting their material costs and risks. Specifically, LSW, through its standardized Illustration, misrepresents to policyholders that their policies will provide them with retirement income and financial independence.  The Illustration markets the policies primarily as an investment or retirement vehicle and not primarily as an insurance policy.  For example, a cover page used on the Illustration states:

A Revolutionary Concept in Financial Independence

## Revolutionary Life

*Life Insurance You Don't Have to Die to Use*

Interior pages of the Illustration emphasize how the policies will generate "Retirement Income," "Cash accumulation," and **"financial peace of mind."**  These references tout the policies as retirement or investment plans.

27.     LSW conceals and fails to disclose that a substantial part of the premiums paid by the policyholder will not be invested in the indexing option and instead will be used to pay an array of administrative or insurance charges.  LSW further conceals and fails to disclose that the premiums used to pay these costs will not return any investment income.  The Illustration does not disclose the cost of insurance charges of the plan or most administrative costs of the plan; these are embedded in the projected policy values but are not separately identified or disclosed. LSW conceals and fails to disclose, among others, the following costs that are charged annually or monthly by LSW:

   a.  Monthly cost of insurance charge (this cost varies with the policyholder, the policyholder's age, and the accumulated value of the policy.  By way of example, in Mr. Howlett's case, the costs deducted were approximately $480 per month);

   b.  Premium expense charge (6% of the premiums paid by Mr. Howlett and Ms. Spooner, and 5% of the premiums paid by Ms. Walker);

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

c.   The monthly percent of accumulated value charge (This charge of .04% applies to the SecurePlus Paragon policy); and a

d.   Monthly policy fee of $5 per month.

28.     LSW also made misleading partial disclosures by disclosing a "Monthly Administrative Charge" and by stating that the policy is subject to only "One Policy Fee." Since the "Monthly Administrative Charge" is the only charge disclosed in the Illustration and the policy is stated to be subject to only "One Policy Fee," a reasonable policyholder would assume that the "Monthly Administrative Charge" includes all costs that will be deducted from the policy values. In fact, the Monthly Administrative Charge does not include any of the expenses listed above, all of which are charged by LSW in addition to the Monthly Administrative Charge.

29.     LSW's misrepresentations and omissions regarding the cost of the policies also make the policies appear to be more attractive investments than they are in reality. For example, the premium expense charge is comparable to a front-end mutual fund load because such loads are deducted at the outset and reduce, often by approximately 5%, the amount invested. Whereas mutual fund loads are disclosed to buyers, LSW does not disclose the premium expense charge. As a result, policyholders are unable to evaluate the relative costs of the policies *vis a vis* other investments such as mutual funds.

30.     In addition to failing to disclose the expenses of the policies, the Illustrations also conceal material risks that the policies will not perform as illustrated and misrepresent the safety and security of the policies as retirement or investment vehicles. Such concealment and misrepresentation is effected in several ways in addition to concealment of policy expenses. First, the Illustrations are extremely complex and are incomprehensible to the typical policyholder. Second, key terms essential to the projections of non-guaranteed values (i.e., "Current Basis A" and "Current Basis B") are not defined. Third, the Illustrations project non-guaranteed values using an essentially constant rate of return, without year-to-year variability. The Illustrations suggest that it is reasonable to project non-guaranteed values this way because the projected rates of return are less than the historical average returns of the S&P 500. But

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  LSW conceals from policyholders the fact – of which it is well aware – that policy performance

2  is highly dependent on the variability of rates of return.  Because policy expenses such as cost of

3  insurance charges and administrative costs are being deducted from the accumulated value of the

4  policy each year, variability in annual rates of return can have a very substantial impact on policy

5  value regardless of the *average* rate of return.  This effect is aggravated by the fact that cost of

6  insurance deductions increase with the "net amount at risk," which is the difference between the

7  death benefit and the accumulated value of the policy.  This means that as the accumulated value

8  of a policy decreases, cost of insurance deductions increase, which further drives down the

9  accumulated value of the policy.  This in turn drives up cost of insurance deductions.

10
11         31.     Policy expenses, including cost of insurance charges, are deducted from

12  accumulated policy values even if the policy earns low or no returns in a particular year.  A

13  succession of low return years can produce a downward spiral in policy value from which the

14  policy cannot recover – leading to policy lapse and the loss of the policyholder's entire

15  investment in the policy.  This risk is especially great as the policyholder ages because 1) the

16  cost of insurance charge also increases with age (because mortality risk increases with age); and

17  2) policy withdrawals taken to provide living expenses after retirement reduce accumulated

18  policy value and thus reduce the amount that can generate policy earnings.  A policy that is

19  sufficiently well funded to provide retirement income in a scenario with constant rates of return

20  may lapse or "crater" if rates of return are variable – even if the *average* rate of return is the

21  same in the two scenarios.  The Illustration also does not disclose that the risk of policy failure

22  increases if the policyholder takes advantage of the "flexible premium" option under the policy

23  to reduce the amount paid in.

24         32.     LSW is aware that annual rates of return will not resemble the constant, average

25  rates of return depicted in its Illustrations but will instead be highly variable.  But LSW does not

26  disclose the risks that variable rates of return pose for the safety and security of the policies as

27  retirement or investment vehicles.  Instead, LSW conceals those risks by depicting only constant

28  rate of return scenarios, which are inherently misleading.  A policy may have a substantial risk of

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

failure, but still appear to be reasonably safe and secure based on LSW's misleading Illustrations depicting only constant return scenarios. Thus, although the policies are called "SecurePlus" policies and marketed as safe and secure investment or retirement vehicles, the riskiness of the policies is concealed from policyholders.

33. The Illustrations also treat the question of policy lapse in a deceptive manner by failing to use an asterisk, as required by California Insurance Code Section 10509.956(a)(13), to draw attention to the fact that the policies will lapse if further premiums are not paid. Instead, the Illustration indicates that policyholders would still be charged $0 in premiums. As a result of these misrepresentations and omissions, policyholders are deceived to believe that the planned periodic premium payments are sufficient to allow policyholders to continue the policies in force, and withdraw money from the cash value of the policies, without paying any further premiums, even after the policies have lapsed due to nonpayment of premiums.

34. In addition to misrepresenting and concealing the risk of policy lapse, the Illustrations also conceal the consequences of policy lapse for policyholders who have taken out loans against the cash value of their policies. The Illustrations do not disclose that if the policyholder borrows against any cash value built up in the policy, and then the policy lapses, the policyholder will owe income taxes – at tax rates charged on ordinary income rather than capital gains – on policy earnings borrowed from the policy.

35. The Illustrations also misrepresent the guaranteed rate of return under the policies. The Illustrations falsely represent that policyholders will be entitled to a guaranteed annual rate of return. The representation is false and misleading because the "guaranteed" rate of return is presented as a guaranteed annual rate of return but is in fact calculated upon policy termination (or in five-year intervals in the case of the SecurePlus provider) on the basis of an *average* rate over the lifetime of the policy. The misrepresentation of the guaranteed values as annual guarantees is particularly misleading because the cap on gains in certain indexed account options applies annually. A reasonable policyholder would believe that if the policy guarantees, by way

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  of example 2.5%, that the policy will in fact provide him with a 2.5% gain even in a year where

2  the S&P 500 is flat.  Not so.  If the policy was in effect for four years in which the S&P 500 had

3  zero gains for the first three years and a 10% gain in the fourth year, the policyholder would not

4  receive her guarantee of 2.5% for years one, two, and three, and a 10% gain in year four, for a

5  total gain of 17.5%.  Instead, the policyholder would only receive a 10% gain because the

6  average gain of 2.5% equals or exceeds the guaranteed rate of return over the four year lifetime

7  of the policy.[1]  The guaranteed values are further deceptive and misleading because the

8  guaranteed values are calculated based on net premiums (i.e., after deduction of all of the costs

9  described above, which are undisclosed), and because they are dependent on the claims-paying

10  ability of LSW.

11

12      36.     The Illustrations also make the policies appear to be more attractive than they

13  actually are because the participation rates and cap rates used to project policy performance can

14  be reduced by LSW at any time.  Thus, if the S&P 500 has a succession of good years,

15  policyholders may not reap all of the anticipated benefits of that success because LSW can

16  reduce participation and/or cap rates, resulting in lower earnings being credited to the policies.

17      37.     LSW developed, encouraged, and implemented its scheme with disregard for, and

18  in violation of, the California Insurance Code.  The provisions of the California Insurance Code

19  violated by LSW are designed to prevent the deceptive and misleading use of life insurance

20  illustrations and include:

21

22      a.      Insurance Code Section 10509.955(b)(1), which states, "When using an

23  illustration in the sale of a life insurance policy, an insurer or its producers or other authorized

24  representatives shall not do any of the following: . . . (1) Represent the policy as anything other

25  than a life insurance policy."  LSW violates this provision by developing, encouraging, and

26

27  _____
   [1] This example uses simple interest instead of compound interest for ease of presentation.
   Plaintiffs make no contention at this time concerning whether LSW would augment the 10% gain
28  to account for compounding of an average annual rate of return.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

implementing an unlawful and fraudulent scheme to market and sell the policies as a retirement or investment vehicle, using policy illustrations as the centerpiece of that scheme. For example, the Illustrations used in the sale of the LSW policies purchased by Ms. Walker, Mr. Howlett, and Ms. Spooner represented the policies as retirement or investment plans that would give them financial independence through streams of income and this, rather than any life insurance benefit, was the basis on which these policies were sold.

      b.    Insurance Code Section 10509.955(b)(6), which prohibits an insurer from providing "an applicant with an incomplete illustration." LSW violates this provision by:

      i.    Failing to disclose the economic costs of the insurance aspects of the policies, including the premium expense charge, deductions for the cost of insurance, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy fee;

      ii.    Using the term "guaranteed values" without disclosing that the values are not annual guarantees, are calculated based on net premiums (i.e., only after deduction of costs which are undisclosed), and are not truly guaranteed because they are dependent on the claims-paying ability of LSW.

      iii.    Failing to disclose the material risks of policy failure that arise due to the fact that rates of return in the S&P 500 will not be experienced at a constant level, as depicted in the Illustrations, but will instead be highly variable.

      c.    Insurance Code Section 10509.955(b)(2), which states that an insurer shall not "[u]se or describe nonguaranteed elements in a manner that is misleading or has the capacity or tendency to mislead." LSW violates this provision by using the earnings projections to conceal the costs of the policies, which are embedded in the earnings projections, and by providing illustrations which falsely portray that the annual income will be paid even if the policies have lapsed because they earned only the guaranteed values. LSW also violates this

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  provision by failing to disclose the impact that variability in the rates of return experienced by

2  the S&P 500 may have on the risks of policy failure, including but not limited to the fact that

3  cost of insurance charges will be higher if the accumulated value of the Policy does not increase

4  as depicted in the Illustrations.

5          d.       Insurance Code Section 10509.950, which requires insurers to "define

6  terms used in the illustration in language that is understandable by a typical person within the

7  segment of the public to which the illustration is directed."   LSW violates this provision by:

8                   i.       Defining the "Monthly Administrative Charge" as "an

9                            administrative charge which is deducted from the accumulated

10                           value of the policy each month" but excluding most administrative

11                           charges from the amount disclosed as the "Monthly Administrative

12                           Charge";

13                  ii.      Designing the Illustration to obfuscate the nature and economic

14                           terms of the policies by providing misleading and insufficient

15                           information;

16                  iii.     Failing to define the terms "Current Basis A" and "Current

17                           Basis B."

18          e.       Insurance Code Section 10509.956(b)(4), which requires that all key terms

19  be defined.  LSW violates this provision by failing to provide in the Illustration an explanation of

20  how the cost indexes are to be used and failing to define "Account Value Enhancement," "Basic

21  Strategy," "Current Basis A," and "Current Basis B."

22          f.       Insurance Code Section 10509.955(b)(3), which states that an insurer may

23  not "[s]tate or imply that the payment or amount of nonguaranteed elements is guaranteed."

24  LSW violates this provision by misrepresenting the guaranteed values as annual rates of return.

25  In fact, they are calculated upon policy termination (or in five-year intervals in the case of the

26  SecurePlus provider) on the basis of *average* annual guarantees, and are further deceptive and

27  misleading because the guaranteed values are calculated based on net premiums, but many of the

28  costs deducted from the premiums are not disclosed.  The Illustration also fails to disclose that

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  the "guaranteed" values are not really guaranteed because they are dependent on the claims-
2  paying ability of the insurer.

3        g.    Insurance Code Section 10509.956(a)(13), which requires that "If a
4  contract premium is due, the premium outlay display shall not be left blank or show zero unless
5  accompanied by an asterisk or similar mark to draw attention to the fact that the policy is not
6  paid up." LSW violates this provision by showing a zero for the premium outlay display instead
7  of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse
8  without further payment of premiums.

9        38.    LSW's unlawful scheme to market the policies as investment or retirement
10  vehicles, and its unlawful and material misrepresentations, concealment, and omissions
11  described above led Plaintiffs and the class members to submit applications to purchase the
12  policies. As part of the application process, LSW solicited confidential and private information
13  from Plaintiffs and class members, including medical history information and the results of
14  health examinations. Only after Plaintiffs and the class applied to purchase the policies, and
15  submitted confidential medical information, did LSW deliver the policies and certain other
16  information concerning the terms of the policies. To the extent that the policies themselves, or a
17  Life Insurance Buyer's Guide or other information delivered along with the policies, clarified or
18  contradicted the Illustration, Plaintiffs and the class did not receive these additional disclosures
19  until after Plaintiffs and the class had incurred the effort and inconvenience of the application
20  process and had decided to purchase the policies. Further, delivery of the policies and other
21  information cannot cure the failure of the Illustration to conform to the Insurance Code's
22  requirements for policy illustrations.

23        39.    As a result of LSW's unlawful, unfair, and fraudulent business acts and practices,
24  Plaintiffs and the class have suffered injury in fact and lost money or property. In reliance on
25  LSW's material misrepresentations and omissions, Plaintiffs and the class purchased the policies,
26  paid the undisclosed cost of insurance and other administrative charges, and were required to pay
27  surrender charges if they learned the truth and terminated the policies.

28

## PLAINTIFFS' PURCHASE AND RENEWAL OF LSW POLICIES

**Plaintiff Joyce Walker**

40.     Plaintiff Joyce Walker purchased SecurePlus Provider policy no. LS0156670 from LSW, with a policy date of December 27, 2007.  This policy accumulates interest or cash value based in part on the performance of the S&P 500.  In connection with Ms. Walker's purchase of her policy, she was presented with several policy Illustrations.  Her initial premium was to be $112,637, with a total of five planned periodic premium payments of $112,637 annually.[2]

41.     LSW marketed the policy to Ms. Walker by engaging in numerous unlawful, unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38, above.

42.     Ms. Walker is not an insurance or investment expert and was therefore unfamiliar with the insurance and investment terminology, actuarial assumptions, and other technical investment and insurance terms used in the Illustration and the policy.  Ms. Walker trusted in LSW's expert and superior knowledge, as well as its long-standing experience, in accepting the representations of the Illustration and purchasing the policy.

43.     After making two periodic payments of $112,000 each, Ms. Walker discovered, inter alia, that the policy was not the reasonably safe and secure retirement vehicle that it had been represented to be.  After LSW denied Ms. Walker's request for a refund of premiums, her only options were to surrender the policy and incur a very high "surrender charge," or to forfeit her entire $224,000.  Ms. Walker ultimately decided to surrender her policy, incurring a surrender penalty of $55,013.42, which was taken out of the purported "accumulated cash value" of $197,647.21.  Ms. Walker received $142,633.79 from LSW for a net loss in excess of $81,366.21.

44.     Absent LSW's misrepresentations and failure to disclose the material information

---

[2] Although Ms. Walker's policy listed a planned annual premium of $112,637, the annual premium actually charged by LSW was $112,000.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   described in paragraphs 21-38, above, Ms. Walker would not have purchased the policy.

2   **Plaintiff Kim Bruce Howlett**

3   45.     Plaintiff Kim Bruce Howlett purchased SecurePlus Paragon policy no.

4   LS0149017 from LSW, with a policy date of September 26, 2007.  This policy accumulates

5   interest or cash value based in part on the performance of the S&P 500.  In connection with

6   Mr. Howlett's purchase of his policy, he was presented with several policy Illustrations.  His

7   initial premium was $105,750, with a total of five planned periodic premium payments of

8   $105,750 annually.

9   46.     LSW marketed the policy to Mr. Howlett by engaging in numerous unlawful,

10  unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38,

11  above.

12  47.     Mr. Howlett is not an insurance or investment expert and was therefore unfamiliar

13  with the insurance and investment terminology, actuarial assumptions, and other technical

14  investment and insurance terms used in the Illustration and the policy.  Mr. Howlett trusted in

15  LSW's expert and superior knowledge, as well as its long-standing experience, in accepting the

16  representations of the illustration and purchasing the policy.

17  48.     After making one initial periodic payment of $105,750, Mr. Howlett discovered,

18  inter alia, that the policy was not the reasonably safe and secure retirement vehicle that it had

19  been represented to be. After LSW denied Mr. Howlett's request for a refund of premiums, his

20  only options were to surrender the policy and incur a very high "surrender charge," or to forfeit

21  his entire $105,750.  Since the surrender charge exceeded the cash value of Mr. Howlett's policy,

22  he has not surrendered his policy.  Mr. Howlett's loss exceeds $105,750.

23  49.     Absent LSW's misrepresentations and failure to disclose the material information

24  described in paragraphs 21-38, above, Mr. Howlett would not have purchased the policy.

25  **Plaintiff Muriel Lynn Spooner**

26  50.     Plaintiff Muriel Lynn Spooner purchased SecurePlus Provider policy no.

27  LS0149018 from LSW, with a policy date of October 5, 2007.  This policy accumulates interest

28  or cash value based in part on the performance of the S&P 500.  In connection with

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  Ms. Spooner's purchase of her policy, she was presented with several policy Illustrations. Her

2  initial premium was $59,500, with a total of five planned periodic premium payments of $59,500

3  annually.

4      51.    LSW marketed the policy to Ms. Spooner by engaging in numerous unlawful,

5  unfair, and fraudulent business acts and practices, as described more fully in paragraphs 21-38,

6  above.

7      52.    Ms. Spooner is not an insurance or investment expert and was therefore

8  unfamiliar with the insurance or investment terminology, actuarial assumptions, and other

9  technical investment and insurance terms used in the Illustration and the policy. Ms. Spooner

10  trusted in LSW's expert and superior knowledge, as well as its long-standing experience in the

11  business, in accepting the representations of the illustration and purchasing the policy.

12      53.    After making one initial periodic payment of $59,500, Ms. Spooner discovered

13  that the policy was not the reasonably safe and secure retirement vehicle that it had been

14  represented to be. After LSW denied Ms. Spooner's request for a refund of premiums, her only

15  options were to surrender the policy and incur a very high "surrender charge," or to forfeit her

16  entire $59,500. Ms. Spooner ultimately decided to surrender her policy. She incurred a

17  surrender penalty of $31,981.82, which was taken out of the purported "accumulated cash value"

18  of $36,794.45. Ms. Spooner received $4,813.17 from LSW for a net loss in excess of

19  $54,686.83.

20      54.    Absent LSW's misrepresentations and failure to disclose the material information

21  described in paragraphs 21-38, above, Ms. Spooner would not have purchased the policy.

## CLASS ACTION ALLEGATIONS

23      55.    Plaintiffs bring this action on behalf of themselves and all others similarly situated

24  as a class action pursuant to California Code of Civil Procedure Section 382.

25      56.    The class that Ms. Walker, Mr. Howlett, and Ms. Spooner seek to represent is

26  composed of and defined as follows:

27      All persons who purchased an indexed universal life insurance
        policy, including but not limited to persons who purchased a
28      SecurePlus Provider policy or SecurePlus Paragon policy, from

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Life Insurance Company of the Southwest on or after September 24, 2006 and who resided in California at the time the policy was initially issued.

57.     Specifically excluded from the class are past or present officers, directors, agents, brokers, or employees of the Defendant, or its parents or subsidiaries; any agents, brokers, or others who sold policies for the Defendant, or its parents or subsidiaries; any entity in which the Defendant has a controlling interest; the affiliates, legal representatives, attorneys or assigns of the Defendant, or its parents or subsidiaries; any judge, justice or judicial officer presiding over this matter and the staff and immediate family of any such judge, justice or judicial officer.

58.     As more fully set forth below, this action is appropriately brought as a class action pursuant to California Code of Civil Procedure Section 382 because:  there is a sufficiently numerous, ascertainable class; a well-defined community of interest; and certification will provide substantial benefits to litigants and the courts.

**Numerosity and Ascertainability**

59.     The class members are so numerous that the individual joinder of all class members is impracticable under the circumstances of this case.  Plaintiffs are informed and believe that the class has hundreds or thousands of members, whose identities can be determined from the records of LSW.

**Community of Interest**

60.     There is a well defined community of interest in the questions of law and fact involved because there are (A) predominant common questions of law or fact; (B) the class representatives have claims typical of the class; and (C) the class representatives can adequately represent the class.

A.     **Predominant Common Questions of Law or Fact**

61.     Common questions of law and fact exist as to all class members and predominate over any possible questions that might affect only individual class members.  These common questions of law and fact include, among others:

a.     Whether LSW marketed the policies as retirement or investment plans;

b.     Whether LSW failed to separately identify and disclose in the Illustrations

Complaint

19

the costs of the policies (including cost of insurance charges, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy fee);

c.      Whether LSW failed to disclose in the Illustrations that the guaranteed values would not provide policyholders with annual guarantees, were calculated based on net premiums, and were not really guaranteed because they were dependent on the company's claims-paying ability.

d.      Whether LSW concealed the material risks and consequences of policy failure and misrepresented the safety and security of the policies as investment or retirement vehicles.

e.      Whether LSW violated the California Insurance Code;

f.      Whether LSW's practices, as alleged herein, violate California's common law of fraudulent concealment.

g.      Whether LSW's practices, as alleged herein, violate California's Unfair Competition Law.

**B.     Typicality**

62.     Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner's claims are typical of those of the class members. Plaintiffs' claims are based on the same legal theories as the claims of the other class members and are based on the same acts of fraudulent concealment and the same unlawful, unfair or fraudulent business acts or practices. Plaintiffs and class members suffered injury in fact and lost money or property as a result of LSW's common course of conduct as complained of herein.

**C.     Adequacy**

63.     Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs and the other class members were injured by the same acts of fraudulent concealment and the same unlawful, unfair or fraudulent business acts or practices, and Plaintiffs have no interests that are adverse to the interests of absent class members. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex class actions, consumer protection litigation and litigation challenging the practices of insurance companies.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**Certification Will Provide Substantial Benefits to Litigants and the Court**

64.     This action is appropriate as a class action under California Code of Civil Procedure Section 382.  Questions of law and fact common to the class members predominate and a class action is superior to any other possible method for the fair and efficient adjudication of the controversy.

a.     Common questions of law and fact predominate, and individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

b.     Class members have little interest in individually controlling the prosecution of separate actions.  The substantial fees and costs required to challenge LSW's wrongful conduct greatly exceed the damages suffered by any individual class member and it would not be feasible or desirable for individual class members to prosecute separate actions against the Defendant.

c.     There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rather, the expense and burden of litigation would make it difficult or impossible for individual class members to maintain individual actions.  Moreover, even if such individual litigation were practicable, the cost to the court system of adjudication of individualized litigation would be substantial.  This action will result in an orderly and expeditious administration of class claims.  Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### (For Fraudulent Concealment)

65.     Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner reallege paragraphs 1-64, above, and incorporate them as if fully set forth herein.

66.     LSW has a duty to disclose to Plaintiffs the truth about the policies for the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  following reasons, without limitation:

2       a.    LSW has a duty to disclose based on its statutory obligations under

3  Insurance Code Sections 330, 332, and 10509, et seq. Section 330 states that "[n]eglect to

4  communicate that which a party knows, and ought to communicate, is concealment." Section

5  332 requires that "[e]ach party to a contract of insurance shall communicate to the other, in good

6  faith, all facts within his knowledge which are or which he believes to be material to the contract

7  and as to which he makes no warranty, and which the other has not the means of ascertaining."

8  Section 10509, *et seq.*, as alleged in paragraph 37, above, imposes duties on LSW not to use

9  deceptive, misleading, or incomplete life insurance illustrations.

10       b.    LSW also has a duty to disclose as a result of its partial disclosures, which

11  contained only half-truths or were otherwise false or misleading, as alleged in this Complaint,

12  including specifically, but without limitation:

13          i.  Since LSW discloses a "Monthly Administrative Charge" and

14          states that the policy is subject to only "One Policy Fee," a

15          reasonable policyholder would assume that the "Monthly

16          Administrative Charge" includes all charges that will be deducted

17          from the policy values. Because LSW also charged policyholders

18          premium expense charges, monthly percent of accumulated value

19          charge (for the SecurePlus Paragon policy), monthly cost of

20          insurance charges, and a monthly policy fee, its representations

21          were misleading and gave rise to a duty to disclose all the costs to

22          policyholders.

23         ii.  LSW represents to policyholders that they will receive a

24          guaranteed return, but this representation is false and misleading

25          because the guaranteed values used in the illustrations are

26          calculated upon policy termination (or in five year intervals in the

27          case of the SecurePlus Provider) on the basis of average annual

28          rates of return, are calculated based on net premiums, and are not

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

in fact guaranteed because they are dependent on the claims-paying ability of the insurer.  Because LSW's representations were false and misleading, they gave rise to a duty to disclose to policyholders the truth about the guaranteed values.

iii.  LSW represents that the policies are reasonably safe and secure investment or retirement vehicles, but conceals the risks that the policies will not perform as illustrated by (1) concealing the true costs of the policy in the earnings projections; (2) using Illustrations that are extremely complex and incomprehensible to the typical policyholder; (3) not defining key terms that are essential to the projections of non-guaranteed values; and (4) projecting non-guaranteed values based upon index crediting scenarios that assume constant rates of return derived from the S&P 500.  These representations are misleading, *inter alia*, because the rates of return from index crediting tied to the S&P 500 are highly variable and the variability of annual rates of return can have a very substantial impact on policy value and cost of insurance deductions, and can lead to a downward spiral in policy value from which the policy cannot recover.  Because LSW's representations were misleading, they gave rise to a duty to disclose to policyholders the likelihood of year-to-year variability in rates of return and the associated risks of policy failure, as further discussed in paragraphs 6-10; 27-38, above.

iv.  LSW markets the policies as investment or retirement vehicles, from which loans can be taken to provide retirement or other income, but LSW's Illustrations do not disclose the tax consequences of this arrangement if the Policy lapses, i.e., that the policyholder would owe taxes, at ordinary income tax rates, on any

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

part of the loan that was taken from policy earnings.  Because LSW's marketing of the policies as vehicles from which to draw retirement income through policy loans was misleading, this gave rise to a duty to disclose the potentially devastating consequences of that practice if the policy lapses.

c.     LSW additionally has a duty to disclose because it had superior knowledge about its fraudulent and unlawful marketing of the policies as investment or retirement vehicles and concealment of the material costs and risks.  As between LSW and its policyholders, information regarding the costs and material risks of the policies were known or accessible only to LSW, LSW knew that policyholders were purchasing their policies based on their unawareness of the costs and material risks of the policies, and LSW knew that policyholders were unaware of these facts or could not reasonably discover these facts.

67.    LSW fraudulently conceals the following material facts, without limitation:

a.     LSW conceals the economic costs of the insurance aspects of the policies, including the premium expense charge, deductions for the cost of insurance, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy fee.  In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

b.     LSW conceals that the "guaranteed values" are calculated based on net premiums (i.e., only after deduction of undisclosed costs), are not calculated based on annual rates of return, and that they are not in fact guaranteed but are dependent on the claims-paying ability of LSW.  In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

c.     LSW conceals material risks that the policies will not perform as illustrated but will, instead, fail (i.e., lapse) unless additional money is paid into the policies.  In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

d.     LSW's Illustrations conceal the adverse tax consequences of policy lapse

if the policyholder has outstanding policy loans.   In failing to disclose such information, LSW intends that policyholders rely on such nondisclosures in deciding whether to purchase the policies.

68.   LSW's omissions were material in that there was a substantial likelihood that a reasonable prospective purchaser of the policies would have considered them important when deciding whether or not to purchase the policies.

69.   Plaintiffs relied on these fraudulent omissions in purchasing their policies and are informed and believe that the class members likewise relied on these omissions in deciding to purchase their policies.  LSW's fraudulent omissions were a direct and proximate cause of Plaintiffs' injury in fact and loss of money or property.  If not for LSW's fraudulent omissions, Plaintiffs and, on information and belief, the class members would not have purchased their policies.  As a result of these omissions, Plaintiffs and the class members have incurred damages, including cost of insurance charges and other administrative charges, the reduction in policy value as a result of the undisclosed material risks and consequences of policy lapse, and the surrender charges that Plaintiffs and class members were required to pay if they learned the truth and terminated their policies.

70.   The conduct of LSW as alleged above was despicable conduct that was carried on by LSW with a willful and conscious disregard of the rights or safety of Plaintiffs and the class, that has subjected Plaintiffs and the class to cruel and unjust hardship in conscious disregard of their rights, and that involved deceit or concealment of one or more material facts known to LSW with the intention on the part of LSW of thereby depriving Plaintiffs and the class of property or legal rights or otherwise causing injury.  Plaintiffs are informed and believe that LSW authorized or ratified the wrongful conduct of its agents or employees alleged above and that such authorization or ratification was done on the part of an officer, director, or managing agent of LSW.  Plaintiffs and the class are accordingly entitled to an award of punitive or exemplary damages.

Complaint
25

## SECOND CAUSE OF ACTION
### (For Violation of California's Unfair Competition Law)

71.     Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner reallege paragraphs 1-70, above, and incorporate them as if fully set forth herein.

72.     California Business & Professions Code Section 17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent acts or practices and any unfair, deceptive, untrue or misleading advertising.

73.     LSW used and continues to use unlawful, unfair or fraudulent acts or practices in connection with the marketing and sale of the policies.  Such acts and practices have continued and will continue unabated unless enjoined.

74.     LSW's unlawful acts or practices are described in paragraphs 1-54 & 66-70, above, and include LSW's violation of the following California laws:

a.     Insurance Code Section 10509.955(b)(1), which states, "When using an illustration in the sale of a life insurance policy, an insurer or its producers or other authorized representatives shall not do any of the following: . . . (1) Represent the policy as anything other than a life insurance policy." LSW violates this provision by developing, encouraging, and implementing an unlawful and fraudulent scheme to market and sell the policies as retirement or investment vehicles, using policy Illustrations as the centerpiece of that scheme.  For example, the Illustrations used in the sale of the LSW policies purchased by Ms. Walker, Mr. Howlett, and Ms. Spooner represented the policies as retirement or investment plans that would give them financial independence through streams of income and this, rather than any life insurance benefit, was the primary basis on which these policies were sold.

b.     Insurance Code Section 10509.955(b)(6), which prohibits an insurer from providing "an applicant with an incomplete illustration."  LSW violates this provision by:

i.     Failing to disclose the economic costs of the insurance aspects of the policies, including the premium expense charge, deductions for the cost of insurance, the monthly percent of accumulated value charge (for the SecurePlus Paragon policy), and the monthly policy

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

fee;

    ii.   Using the term "Monthly Administrative Charge," which does not include any of the costs listed above, all of which are charged in addition to the monthly administrative fee;

    iii.   Using the term "guaranteed values" without disclosing that the values are not annual guarantees, are calculated based on net premiums (i.e., only after deduction of undisclosed costs), and are not truly guaranteed but are dependent on the claims-paying ability of LSW.

    iv.   Failing to disclose the material risks and consequences of policy lapse.

c.    Insurance Code Section 10509.955(b)(2), which states that an insurer shall not "[u]se or describe nonguaranteed elements in a manner that is misleading or has the capacity or tendency to mislead." LSW violates this provision by failing to disclose separately and comprehensibly the costs that are charged, by embedding such charges in the earnings projections, and by providing Illustrations which falsely portray that the annual income will be paid even if the policies lapsed because they earned only the guaranteed values. LSW also violates this provision by failing to disclose the impact that variability in the rates of return experienced by the S&P 500 may have on the risks of policy failure, including but not limited to the fact that cost of insurance deductions will be higher if the accumulated value of the policy does not increase as depicted in the Illustrations.

d.    Insurance Code Section 10509.950, which requires insurers to "define terms used in the illustration in language that is understandable by a typical person within the segment of the public to which the illustration is directed." LSW violates this provision by:

    i.   Defining the "Monthly Administrative Charge" as "an administrative charge which is deducted from the accumulated value of the policy each month" but excluding most administrative charges from the amount disclosed as the "Monthly Administrative

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Charge";

ii. Designing the Illustration to obfuscate the nature and economic terms of the policies by providing misleading and insufficient information.

iii. Failing to define the terms "Account Value Enhancement," "Basic Strategy," "Current Basis A," and "Current Basis B."

e. Insurance Code Section 10509.956(b)(4), which requires that all key terms be defined. LSW violates this provision by failing to provide an explanation of how the cost indexes are to be used and failing to define "Account Value Enhancement," "Basic Strategy," "Current Basis A," and "Current Basis B."

f. Insurance Code Section 10509.955(b)(3), which states that an insurer may not "[s]tate or imply that the payment or amount of nonguaranteed elements is guaranteed." LSW violates this provision by misrepresenting the guaranteed values as annual rates of return. In fact, they are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus Provider) on the basis of average annual guarantees, and are further deceptive and misleading because the guaranteed values are calculated based on net premiums, but many of the costs deducted from the premiums are not disclosed. The Illustration also fails to disclose that the "guaranteed" values are not really guaranteed because they are dependent on the claims-paying ability of the insurer.

g. Insurance Code Section 10509.956(a)(13), which requires that "If a contract premium is due, the premium outlay display shall not be left blank or show zero unless accompanied by an asterisk or similar mark to draw attention to the fact that the policy is not paid up." LSW violates this provision by showing a zero for the premium outlay display instead of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse without further payment of premiums.

h. Insurance Code Section 330, which provides, "Neglect to communicate that which a party knows, and ought to communicate, is concealment," and Insurance Code Section 332, which provides, "Each party to a contract of insurance shall communicate to the

other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." LSW violated these provisions by failing to disclose material facts concerning the policies, including but not limited to the policy expenses, the material risks of policy failure, and the tax consequences of policy lapse, as described in Paragraphs 1-14 & 24-54, above.

i.      Insurance Code Section 780, which provides "An insurer or officer or agent thereof, or an insurance broker or solicitor, shall not cause or permit to be issued, circulated or used, any misrepresentation of the following:  (a) The terms of a policy . . . (b) the benefits or privileges promised thereunder . . . ." LSW violates this provision by its use of misleading policy Illustrations as described in Paragraph 1-14 & 24-54, above.

j.      Civil Code Section 1572 and California's common law of fraudulent concealment.  LSW violated these provisions as described in Paragraphs 66-69, above.

75.    LSW's fraudulent acts or practices are described in paragraphs 1—50 & 66-70, above, and include the following, without limitation:

a.      LSW does not inform, disclose to, or advise policyholders of the costs of the policies as life insurance policies; these costs are deceptively embedded in the policy value illustrations, effectively hiding the costs from policyholders.  LSW makes misleading partial disclosures by disclosing a "Monthly Administrative Charge" and stating that the policy is subject to only "One Policy Fee," when in fact the "Monthly Administrative Charge" does not include all the costs that are charged, including the premium expense charge; cost of insurance charges; the monthly percent of accumulated value charge (for the SecurePlus Paragon policy); and the monthly policy fee.  The misrepresentation and nondisclosure of this information is material to a reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

b.      LSW does not inform, disclose to, or advise policyholders that the guaranteed values used in the illustrations are calculated upon policy termination (or in five-year intervals in the case of the SecurePlus Provider) on the basis of average annual rates of return, are calculated based on net premiums, and are not really guaranteed because they are dependent

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  on the claims-paying ability of the insurer.  This is particularly likely to deceive policyholders

2  because any caps on interest credited to the policies are applied annually.  The misrepresentation

3  and nondisclosure of this information is material to a reasonable policyholder's decision to

4  purchase the policy and is likely to mislead policyholders.

5          c.     LSW conceals the material risks that the policy will not perform as

6  illustrated and misrepresents the safety and the security of the policies as retirement or

7  investment vehicles.  The misrepresentation and nondisclosure of this information is material to a

8  reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

9          d.     LSW conceals the adverse tax consequences that can occur if the policy

10  lapses while a policy loan is outstanding.  The nondisclosure of this information is material to a

11  reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

12          e.     LSW misrepresents that a policyholder will be able to make cash

13  withdrawals for the rest of his or her life without having the policy lapse.  The illustrations

14  provided by LSW show a zero for the premium outlay display instead of showing an asterisk or

15  similar mark to draw attention to the fact that the policies will lapse without further payment of

16  premiums.  The misrepresentation and nondisclosure of this information is material to a

17  reasonable policyholder's decision to purchase the policy and is likely to mislead policyholders.

18          f.     LSW provides policyholders with illustrations that contain numerous other

19  incomplete and misleading features, as described more fully in paragraph 37, above.  The

20  misrepresentation and nondisclosure of this information is material to a reasonable

21  policyholder's decision to purchase the policy and is likely to mislead policyholders.

22          g.     LSW provides policyholders with illustrations that obfuscate the nature

23  and economic terms of the policies.  Through its use of illustrations that violate the California

24  Insurance Code, through the use of illustrations that are deceptive and misleading, and through

25  the sheer complexity of presentation, LSW markets the policies in a manner that makes material

26  terms incomprehensible to a typical person within the segment of the public to which the

27  illustration is directed.  The misrepresentation and nondisclosure of this information is material

28  to a reasonable policyholder's decision to purchase the policy and is likely to mislead

1    policyholders.

2        76.    LSW's unfair acts or practices are described in paragraphs 1-50 & 66-70, above,

3    and include the following, without limitation:

4            a.    LSW developed, encourages, and implements an unlawful and fraudulent

5    scheme to market and sell the policies as retirement or investment vehicles, using policy

6    Illustrations as the centerpiece of that scheme. For example, the Illustrations used in the sale of

7    the LSW policies purchased by Ms. Walker, Mr. Howlett, and Ms. Spooner represented the

8    policies as retirement or investment plans that would give them financial independence through

9    streams of income and this, rather than any life insurance benefit, was the primary basis on

10   which these policies were sold.

11           b.    LSW does not inform, disclose to, or advise policyholders that the cost of

12   the policies as life insurance policies is almost entirely omitted from the Illustration. LSW

13   makes misleading partial disclosures by disclosing a "Monthly Administrative Charge" and

14   stating that the policy is subject to only "One Policy Fee," when in fact the "Monthly

15   Administrative Charge" does not include all the costs that are charged, including premium

16   expense charges; cost of insurance deductions; the monthly percent of accumulated value charge

17   (for the SecurePlus Paragon policy); and the monthly policy fee.

18           c.    LSW does not inform, disclose to, or advise policyholders that the

19   guaranteed values used in the Illustrations are calculated upon policy termination (or in five-year

20   intervals in the case of the SecurePlus Provider) on the basis of average annual rates of return,

21   are calculated based on net premiums, and are not guaranteed because they are dependent on the

22   claims-paying ability of the insurer.

23           d.    LSW conceals the material risks that the policy will not perform as

24   illustrated and misrepresents the safety and the security of the policies as retirement or

25   investment vehicles.

26           e.    LSW conceals the adverse tax consequences that can occur if the policy

27   lapses while a policy loan is outstanding.

28           f.    LSW misrepresents that a policyholder will be able to make cash

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

withdrawals for the rest of his or her life without the policy lapsing. The Illustrations provided by LSW show a zero for the premium outlay display instead of showing an asterisk or similar mark to draw attention to the fact that the policies will lapse without further payment of premiums.

g.   LSW provides policyholders with illustrations that contain numerous other incomplete and misleading features, as described more fully in paragraph 37, above.

h.   LSW provides policyholders with illustrations that obfuscate the nature and economic terms of the policies. Through its use of illustrations that violate the California Insurance Code, through the use of illustrations that are deceptive and misleading, and through the sheer complexity of presentation, LSW markets the policies in a manner that makes material terms incomprehensible to policyholders.

i.   LSW's nondisclosures and misrepresentations in its Illustrations and marketing practices are unfair because the gravity of harm to policyholders far outweighs any utility of LSW's conduct. The injury to policyholders is substantial, including loss of substantial money or property; this substantial injury is not outweighed by any benefit to consumers or competition as a result of LSW's wrongful acts; and policyholders themselves cannot reasonably avoid the injury since the Illustrations and marketing practices are deliberately calculated to conceal the truth and to obfuscate the nature and economic terms of the transaction.

j.   LSW's nondisclosures and misrepresentations are also unfair because they threaten an incipient violation of the law or violate the policy or spirit of the law, including but not limited to the unlawful acts described in paragraph 74, above.

77.   Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Lynn Spooner relied on LSW's misrepresentations, concealment, and omissions described above. Plaintiffs suffered injury in fact and have lost money or property as a result of LSW's acts of unfair competition. Absent LSW's acts of unfair competition, Plaintiffs and, on information and belief, the class members would not have purchased the policies. LSW's acts of unfair competition should be enjoined and the Court should make such other orders or judgments as may be necessary to prevent such acts, including a declaration that each Plaintiff and class member is entitled to

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    rescind his or her policy.  Plaintiffs also seek an order restoring to Plaintiffs and the class all

2    money or property which may have been acquired by LSW by means of such unfair competition.

3                               **PRAYER FOR RELIEF**

4          WHEREFORE, Plaintiffs pray for judgment against LSW, as follows:

5          a.      For an Order determining that this action may be maintained as a class action and

6    providing class certification as requested herein;

7          b.      For compensatory and punitive damages against LSW based on its fraudulent

8    concealment as alleged herein.

9          c.      For preliminary and permanent injunctive relief against LSW enjoining LSW

10   from engaging in the unlawful, unfair, and fraudulent practices alleged herein;

11         d.      For a restoration of all money or property which may have been acquired by LSW

12   by means of unfair competition;

13         e.      For declaratory relief regarding the unlawful, unfair, and fraudulent practices

14   alleged herein, including a declaration that each Plaintiff and class member is entitled to rescind

15   his or her policy;

16         f.      For reasonable attorneys' fees, and all costs, expenses and disbursements,

17   including, without limitation, filing fees and reasonable costs of suit, including, but not limited to

18   an award of attorneys' fees, costs, expenses and disbursements under California Civil Code

19   Section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine as appropriate;

20   and

21         k.      For such other and further relief as this Court deems just and proper.

22   Dated:  September 24, 2010          Respectfully submitted,

23                                       KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

24

25

26                                       By: _____

27                                       CHARLES N. FREIBERG
                                         BRIAN P. BROSNAHAN
28                                       JACOB N. FOSTER

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Complaint
33

LEVINE STEINBERG MILLER & HUVER
   HARVEY R. LEVINE
   CRAIG A. MILLER


Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT, and
MURIEL SPOONER, on behalf of themselves and all others
similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# DEMAND FOR JURY TRIAL

Plaintiffs JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL LYNN SPOONER, on behalf of themselves and all others similarly situated, demand a trial by jury of all issues that may be so tried as of right.

DATED:  September 24, 2010

KASOWITZ BENSON TORRES & FRIEDMAN LLP

By: _____

Charles N. Freiberg
Brian P. Brosnahan
Jacob N. Foster

LEVINE STEINBERG MILLER & HUVER
HARVEY R. LEVINE
CRAIG A. MILLER

Attorneys For Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

Complaint
35