JONATHAN A. SHAPIRO (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:   (650) 858-6101
Fax:   (650) 858-6100
jonathan.shapiro@wilmerhale.com

ANDREA J. ROBINSON (PRO HAC VICE)
TIMOTHY J. PERLA (PRO HAC VICE)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER on behalf of themselves and all others similarly situated, | Case No.: 10-09198 JVS(RNBx) |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50, | Honorable James V. Selna |
| Defendant. | Date:    September 12, 2011 |
| | Time:    1:30 p.m. |
| | Courtroom:  10C |

## Table of Contents

Page

INTRODUCTION ...................................................................................................... 2

BACKGROUND ....................................................................................................... 3

    A.    Factual Background ............................................................................ 3

    B.    Procedural History ............................................................................. 6

ARGUMENT ............................................................................................................ 6

I.     PLAINTIFFS STILL FAIL TO STATE A CLAIM CONCERNING LSW'S ILLUSTRATION OF GUARANTEED OR NON-GUARANTEED VALUES ............ 8

    A.    Plaintiffs Fail to Allege Injury Caused By LSW's Illustration of Guaranteed Values ............................................................................ 9

    B.    Plaintiffs Fail to Allege Reasonable Reliance on Expressly "Non-Guaranteed" Values ................................................................ 11

II.    PLAINTIFFS ONCE AGAIN FAIL TO ALLEGE ANY INJURY RESULTING FROM THE TAX CONSEQUENCES OF POLICY LOANS .................................. 12

III.  PLAINTIFFS CANNOT REPACKAGE THEIR CLAIMS UNDER INSURANCE CODE SECTION 10509.950 AS UNFAIRNESS CLAIMS UNDER THE UCL ....................................................................................... 13

CONCLUSION ...................................................................................................... 15

# Table of Authorities

Page

## Federal Cases

*Ashcroft v. Iqbal,*
  -- U.S. ---, 129 S. Ct. 1937 (2009) ............................................................... 7

*Azadpour v. Sun Microsystems, Inc.,*
  2007 WL 2141079 (N.D. Cal. July 23, 2007) ............................................ 8

*Bates v. Hartford Life & Acc. Ins. Co.,*
  765 F. Supp. 2d 1218 (C.D. Cal. 2011) ...................................................... 15

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
  637 F.3d 1047 (9th Cir 2011) ................................................................... 6-7

*Curry v. Baca,*
  497 F. Supp. 2d 1128 (C.D. Cal. 2007) ...................................................... 7

*In re Actimmune Mktg. Litig.,*
  2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ........................................... 8, 9

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ................................................................... 7

*Newsom v. Countrywide Home Loans, Inc.,*
  2010 WL 2034769 (N.D. Cal. May 19, 2010) .......................................... 7

*Omni Home Fin. Inc. v. Hartford Life & Annuity Ins. Co.,*
  2008 WL 4616796 (S.D. Cal. Aug. 1, 2008) ............................................ 13

*Ross v. U.S. Bank Nat. Ass'n,*
  542 F. Supp. 2d 1014 (N.D. Cal. 2008) ..................................................... 7

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ..................................................................... 3

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ................................................................... 7

*Vinci Inv. Co. v. Mid-Century Ins. Co.*
  2008 WL 4447102 (C.D. Cal. Sept. 30, 2008) ...................................... 14-15

<u>State Cases</u>

*Centennial Ins. Co. v. U.S. Fire Ins. Co.,*
    88 Cal. App. 4th 105 (2001) ............................................................ 3

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010) ........................................................ 8

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009).................................................................. 8, 9

*Kaldenbach v. Mut. of Omaha Life Ins. Co.,*
    178 Cal. App. 4th 830 (2009) ....................................................... 7, 9

*Panoutsopoulos v. Chambliss,*
    157 Cal. App. 4th 297 (2007) ........................................................ 11

*People v. Hagedorn,*
    127 Cal. App. 4th 734 (2005) ........................................................ 13

*Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pitts.,*
    118 Cal. App. 4th 1061 (2004) ...................................................... 14


<u>State Statutes</u>

Bus. & Prof. Code § 17204 ............................................................ 8, 9

Ins. Code § 335.............................................................................. 13

Ins. Code § 10509................................................................... 4, 6, 13


<u>Federal Rules</u>

Fed. R. Civ. P. 12(c) ...................................................................... 1, 6

Fed. R. Civ. P. 8 ................................................................................. 7

Fed. R. Civ. P. 9(b) ................................................................... *passim*

1    **<ins>NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS</ins>**

2        TO THE COURT, PLAINTIFFS, AND ALL COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that on September 12, 2011, or as soon thereafter as the

4    matter may be heard, in Courtroom 10C, located at 411 West Fourth Street, Santa Ana,

5    California, 92701, Defendant Life Insurance Company of the Southwest ("LSW") will, and

6    hereby does, move the Court for a judgment on the pleadings, pursuant to Federal Rule of

7    Civil Procedure 12(c), concerning the allegations in Plaintiffs' First Amended Complaint

8    ("FAC") regarding guaranteed and non-guaranteed values, tax consequences, and

9    California Insurance Code Section 10509.

10        Plaintiffs' FAC does not cure the pleading deficiencies the Court identified in its

11    Order Granting in Part and Denying in Part LSW's Motion to Dismiss.  ECF No. 59

12    ("Order").  Instead, the FAC reasserts the same deficient allegations that the Court

13    determined did not state a claim in the original Complaint and adds other allegations that

14    fail to meet the pleading requirements of the Federal Rules of Civil Procedure.

15        This Motion is supported by the accompanying Memorandum of Points and

16    Authorities, a Proposed Order granting the Motion for Judgment on the Pleadings, and such

17    other evidence or argument as may be presented at or before the hearing.

18
19                                    Respectfully submitted,

20                                    WILMER CUTLER PICKERING HALE AND
                                      DORR LLP
21

22                                    By:  */s/ Jonathan A. Shapiro*
23                                    Jonathan A. Shapiro (257199)
                                      Andrea J. Robinson (*pro hac vice*)
24                                    Timothy J. Perla (*pro hac vice*)

25                                    Attorneys for Defendant Life Insurance Company of
                                      the Southwest
26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Despite the Court's clear guidance that several of the claims in Plaintiffs' original Complaint ("Compl.") were inactionable and deficient, Plaintiffs now seek to reassert the very same theories of liability without addressing the reasons why this Court dismissed them.  More specifically, none of Plaintiffs' few new allegations overcome the fundamental problems with these theories that led this Court to dismiss claims based on illustrated guaranteed values, illustrated non-guaranteed values, tax consequences, and miscellaneous alleged violations of the California Insurance Code.  For this reason, the Court's earlier decision entitles LSW to a judgment on the pleadings in four important respects:[1]

*First*, Plaintiffs do not, and cannot, adequately allege they were injured because illustrations misrepresented guaranteed values.  Documents before this Court confirm that each Plaintiff either (1) received *more* money than was illustrated at guaranteed rates; or (2) received less because she paid less than the premiums illustrated, and not because LSW credited less than the amount illustrated at guaranteed rates.

*Second*, as this Court ruled previously, Plaintiffs cannot allege they reasonably relied on the "non-guaranteed" values in their Illustrations because of the myriad warnings that "actual results could vary" or that the disclosed assumptions on which the constant hypothetical returns were based were "not likely to occur" and "were subject to change." The express warnings contained in the Illustrations belie any conclusion that Plaintiffs (or any other consumer) could reasonably rely on or be misled by these projections.

---

[1]    LSW has answered the FAC.  ECF No. 69 (filed July 11, 2011).  This motion, by contrast, is directed only to those portions of the FAC that re-assert the same deficient theories that the Court has already dismissed once before and that, for the reasons stated, are not any more viable the second time around.

*Third*, no Plaintiff experienced the hypothetical scenario they allege would lead them to incur adverse tax consequences upon policy lapse.  These allegations — premised solely on conjecture — cannot be the basis for a claim upon which relief can be granted.

*Finally,* Plaintiffs cannot sidestep the Court's holding that there is no private right of action under Insurance Code Section 10509 by simply repackaging those allegations as violations under the unfairness prong of the UCL.  Courts do not permit plaintiffs to circumvent the bar on private rights of action by using such form-over-substance pleading.

## BACKGROUND[2]

### A.    Factual Background

Between September and December 2007, the Plaintiffs (aged 48-55) each applied for LSW equity indexed universal life insurance Policies, which LSW issued.  *See* FAC ¶¶ 48, 53, 58.  Soon thereafter, the Policies were issued and delivered to Plaintiffs, with delivery triggering ten-day "free look" periods during which they could return their Policies for full refunds, for any reason or for no reason at all.  *See* FAC ¶ 31; *see also, e.g.,* FAC Ex. D at 4 (disclosing free look period in bold type).  No Plaintiff did so.

The Policies are contracts between LSW and each Plaintiff, which establish the products' terms.  *See Centennial Ins. Co. v. U.S. Fire Ins. Co.*, 88 Cal. App. 4th 105, 115 (2001) (insurance policies are contracts that "govern[]" the insurer's "obligations to an insured").  According to the Policies, a substantial death benefit becomes payable if the policyholder dies while the Policy is in force.  *See, e.g.*, FAC Ex. D at 25.[3]  During a policyholder's lifetime, the Policy maintains an "Accumulated Value," which earns interest

---

[2]    Except where noted in LSW's Answer, LSW does not admit the truth of the allegations in the FAC.  For the purposes of this motion, the Court takes the allegations of the FAC as true, except "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[3]    For brevity, where discussed policy terms are substantively identical in all three Plaintiffs' Policies, this Memorandum will cite one Policy as an example.  LSW will provide complete citation to all three Policies upon request.

based on the returns of the S&P 500 index (subject to a guaranteed minimum of interest credits), and/or based on a fixed interest rate, at the option of the policyholder. *E.g., id.* at 28-30.

During the first ten years, the Policy is subject to a surrender charge, payable upon full surrender of the Policy. *Id.* at 32. Each Policy describes the existence and operation of this surrender charge (*id.*) and provides a table showing what that charge would be during each year that could apply. *Id.* at 10. At any given time, a Policy's "Cash Surrender Value" (*i.e.,* amount available upon a full surrender of the Policy) is the Accumulated Value less the surrender charge (and less any loan LSW has made to the Policyholder). *Id.* at 32. In order to maintain the Policy in force, the Cash Surrender Value must remain high enough to pay at least the next month's costs. *Id.* at 22. The Policy provides for flexible premium payments in amounts and on schedules at the discretion of the policyholder, for so long as the Policy is kept in force. *Id.* at 23.

In addition to providing a death benefit, the Policy permits access to cash value. After the first year, a policyholder may make penalty-free withdrawals (subject only to a $25 withdrawal fee) of up to the entire Cash Surrender Value less three months worth of costs. *Id.* at 32. Additionally, a policyholder may take loans of up to the Loan Value of the Policy (a contractually specified number) at a specified rate of interest. *Id.* at 33-35.

In addition to their Policies, Plaintiffs received Illustrations — documents provided to prospective life insurance policyholders (or existing policyholders, upon request) that provide summary information about the values that would be "guaranteed" to accrue based upon illustrated premium payments. Their Illustrations also illustrate various hypothetical scenarios for how "*non*-guaranteed" values could accrue, under specifically disclosed assumptions about unknowable future variables (*e.g.,* future S&P 500 performance, future applicable caps, future applicable participation rate, future timing and amount of premium payments). *See* Cal. Ins. Code § 10509.953(h) (defining illustration).

Plaintiffs' Illustrations each contained a cover page titled "Life Insurance Illustration," which also appeared on the top of each additional page. *See, e.g.,* FAC Ex. E at 2; *see also, e.g.*, *id.* at 11 (identifying product as "a life insurance product"). The additional pages identified the death benefit, accumulated value, cash surrender value, and other amounts that are "guaranteed" under the policy based on its minimum interest crediting rates, and assuming that all illustrated premiums are timely and fully paid. *Id.* at 15-19 (stating that illustration of "values assumes payments are made in the amounts shown").

The Illustrations also showed other "*non*-guaranteed" values depicting how the Policy might perform if future results exceed the guaranteed minimums. *Id.* at 19-21. The Illustrations clearly and repeatedly labeled all non-guaranteed values as being not guaranteed, subject to change, and based on disclosed assumptions. *Id.* at 4 ("These values are not guaranteed.  The assumptions they are based on are subject to change by the insurer. Actual results may be more or less favorable"); 5 ("This illustration assumes that the currently illustrated non-guaranteed elements will continue unchanged for all years shown. This is not likely to occur and actual results may be more or less favorable than those shown"); 8, 15-21 ("Benefits and values are not guaranteed.  The assumptions on which they are based are subject to change by the insurer.  Actual results may be more or less favorable").  On the last page of his or her Illustration, each Plaintiff signed an affirmation that he/she understood the non-guaranteed nature of those illustrated values. *See, e.g.*, *id*. at 25.

Ms. Walker surrendered her policy after making two scheduled premium payments, and received $142,633.79 in surrender value.  FAC ¶ 51.  Her illustration showed that she was guaranteed to have a cash surrender value of $129,250 in the second policy year.  FAC Ex. A at 15.  Ms. Spooner surrendered her policy after making only one premium payment, and failing to make any of the other "planned periodic premium payments."  FAC ¶¶ 58,

61.  Upon surrender, she incurred the surrender charge that was disclosed on her illustration.  *Compare* FAC ¶ 61 (surrender charge of $31,981.82) *with* FAC Ex. E at 22 (surrender charge in policy year three of "31,981").  Similarly, Mr. Howlett made only one of "five planned periodic premium payments."  FAC ¶¶ 53, 56.  Mr. Howlett never surrendered his policy.  *Id*. at ¶ 56.

## B.  Procedural History

On September 24, 2010, Plaintiffs Joyce Walker, Kim Bruce Howlett and Muriel Spooner (collectively, "Plaintiffs") filed suit in San Francisco Superior Court, alleging that LSW fraudulently concealed various charges and misrepresented the hypothetical performance of the policies in Illustrations provided at the point of sale.  LSW removed, and subsequently moved to dismiss Plaintiffs' Complaint.  The Court dismissed with leave to amend the vast majority of Plaintiffs' complaint but concluded that it was "unclear" whether LSW disclosed the generic charges or the premium expense charge for the Policies, and on that basis concluded that Plaintiffs had stated a claim for fraudulent concealment and unfair competition.

Plaintiffs filed the FAC on June 6, 2011, reasserting the same underlying theories as the previous Complaint that this Court substantially dismissed, with additional allegations that fail to rectify the pleading deficiencies of the initial Complaint.  Based upon this Court's prior ruling that such allegations do not state a claim upon which relief may be granted, LSW seeks judgment on the pleadings with respect to the allegations concerning guaranteed and non-guaranteed values, tax consequences and California Insurance Code Section 10509.

## ARGUMENT

The standard applied on a Rule 12(c) motion for judgment on the pleadings mirrors the Rule 12(b)(6) standard.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir 2011) (*Iqbal* and Rule 9(b) apply to Rule 12(c) motions because

"Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule"); *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008) ("Rules 12(c) and 12(b)(6) are substantially identical").[4]

Plaintiffs' claims for fraudulent concealment and unfair competition grounded in fraud must satisfy the exacting requirements of Rule 9(b).  Order at 3; Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (where claim "grounded in fraud," "pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to UCL claim grounded in fraud).[5]

To state a claim for fraudulent concealment, "(1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."  Order at 4-5 (*citing Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009)).

A claim for violation of the fraudulent business practices prong of the UCL "must allege the existence of a duty to disclose."  *Newsom v. Countrywide Home Loans, Inc.*, 2010 WL 2034769, at *9 (N.D. Cal. May 19, 2010).  A UCL claim grounded in fraud must

---

[4]    Judgment on the pleadings is appropriate where, as here, the defendant answers the complaint and seeks judgment on only a subset of the allegations therein.  *See Curry v. Baca*, 497 F. Supp. 2d 1128, 1130, 1136 (C.D. Cal. 2007) (granting judgment on the pleadings and dismissing with prejudice some of the claims against defendant); *Ross*, 542 F. Supp. 2d at 1023 ("it is common to apply Rule 12(c) to individual causes of action").

[5]    Although Plaintiffs have not complied with Rule 9(b) (as discussed), judgment on the pleadings would also be appropriate under Federal Rule of Civil Procedure 8, which requires pleading of "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, -- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009).

- 7 -

1   also allege that Plaintiffs themselves actually relied upon the alleged misrepresentation or

2   omission.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) (UCL plaintiff must allege

3   actual reliance).  These requirements also apply to the extent that Plaintiffs purport to allege

4   violations of the UCL's "unfair" or "illegal" prongs.  *See In re Actimmune Mktg. Litig.*,

5   2010 WL 3463491, at **8-9 (N.D. Cal. Sept. 1, 2010); *see also Durell v. Sharp Healthcare*,

6   183 Cal. App. 4th 1350, 1363 (2010).  Finally, all UCL claims (under any prong) must

7   allege injury in fact caused by alleged unfair competition.  Cal. Bus. & Prof. Code § 17204.

8        In its Order, the Court addressed Plaintiffs' allegations by theory — policy costs,

9   guaranteed and non-guaranteed values, tax advice, and various UCL claims.  Order at 5-10.

10  Those same theories underlie Plaintiffs' FAC.  *Compare* Compl. ¶¶ 65-77 *with* FAC ¶¶ 72-

11  87 (containing same theories with few additional allegations).  The Court correctly

12  dismissed the claims based on guaranteed and non-guaranteed values, tax advice, and UCL

13  claims based on violation of Section 10509.950 *et seq*.  Nothing in Plaintiffs' FAC alters

14  that result.[6]

15  **I.    PLAINTIFFS STILL FAIL TO STATE A CLAIM CONCERNING LSW'S**
16  **ILLUSTRATION OF GUARANTEED OR NON-GUARANTEED VALUES**

17       Like its predecessor, the FAC fails to state a claim based on guaranteed and non-

18  guaranteed values.  Just as it did once before, the Court should conclude that "the Court's

19  holding in *Krall* and the disclosures in the Illustration are sufficient to preclude" their

20  claims based on illustrated values.  Order at 7-8.[7]

21

22  [6]    Plaintiffs cannot contradict the claims of their previous Complaint in order to survive
23  judgment on the pleadings of the FAC.  *Azadpour v. Sun Microsystems, Inc.*, 2007 WL
    2141079, at *2 n.2 (N.D. Cal. July 23, 2007) ("[w]here allegations in an amended
24  complaint contradict those in a prior complaint, a district court need not accept the new
25  alleged facts as true, and may, in fact, strike the changed allegations as false and sham").
    [7]    Because Plaintiffs' UCL claims on this theory are similarly rooted in "fraudulent
26  concealment" — *i.e.*, that LSW did not disclose certain information it should have
27  disclosed — the same failings (lack of reliance and lack of injury) doom both their fraud

- 8 -

### A.   Plaintiffs Fail to Allege Injury Caused By LSW's Illustration of Guaranteed Values

Plaintiffs previously alleged that LSW failed to describe, in sufficient detail, the method by which it calculated guaranteed values (*e.g.*, whether the guarantee is an annual floor or applied over the life of the policy).  Compl. ¶ 35.  That same allegation persists in the FAC (*see* FAC ¶ 42), despite the policies' clear recitation of how guaranteed values are derived.  *See* FAC Ex. D at 15.  In its Order, the Court determined that "Plaintiffs have alleged no injury arising out of the depiction of guaranteed minimum interest rates."  Order at 7.  According to the Court, Plaintiffs' allegations that they made payments to LSW and "discovered that the Policy was not the reasonably safe and secure retirement vehicle that it had been represented to be" did not "establish under Rule 9(b) what each Plaintiff reasonably expected based on LSW's representations and why LSW's policies failed to meet their expectations regarding what was represented to them."  *Id.*  In addition, "[t]he Plaintiffs suffered a loss because they surrendered their Policies and incurred surrender penalties, not because of representations of guaranteed rates."  *Id*.  Accordingly, the Court concluded that "Plaintiffs do not allege an injury or damage because they received an amount less than what was labeled in the Illustrations as being guaranteed."  *Id*.

Similarly, none of the new allegations in the FAC establishes that Plaintiffs suffered any injury "because they received an amount less than what was labeled in the Illustrations as being 'guaranteed'" (Order at 7), and they have failed to state a claim for fraudulent concealment or unfair competition on that basis.  *Kaldenbach*, 178 Cal. App. 4th at 850; Bus. & Prof. Code § 17204.

*First*, Plaintiffs still do not allege that they received "less than what was labeled in the Illustrations as being guaranteed."  Order at 7.  Instead, Plaintiffs now allege — without any basis — that they "received lower amounts upon surrender of their policies than they

and UCL claims.  *In re Tobacco II Cases*, 46 Cal. 4th at 328; *In re Actimmune*, 2010 WL 3463491, at **8-9; Cal. Bus. & Prof. Code § 17204.

would have received had LSW applied the guaranteed rates of return annually . . . rather than on an average annual basis." FAC ¶ 42.  In other words, *if* the policies functioned differently, and *if* the illustrations had described that different policy, their surrender values *may* have been higher.  This is in no way any injury caused by LSW's actual illustration of guaranteed values.

In any event, documents before this Court establish that Plaintiffs suffered no injury resulting from the illustration of guaranteed values.  Plaintiffs either (a) received more than their guaranteed illustrated values upon surrender (*Compare* FAC ¶ 51 ("Ms. Walker received $142,633.79") *with* FAC Ex. A at 15 (Cash Surrender Value End Year equal to $129,250 in Policy Year 2)) or (b) failed to pay their illustrated insurance premiums, and therefore any "loss" is not due to the presentation of illustrated values which "assume[] payments are made in the amounts shown."  *Compare* FAC ¶¶ 60-61 ("Ms. Spooner made only "one" of "five planned periodic premium payments") *with* Ex. E at 15-21.[8]

*Second*, Plaintiffs now allege that they "expected" that their policy values would "earn" a guaranteed rate "prorated for partial years."  FAC ¶¶ 50, 55, 60.  However, they do not allege any basis for this "expectation" (let alone any allegation sufficient to state a claim under Rule 9(b)) — they do not cite a single word of their Illustrations that would support that impression.  To the contrary, the Illustrations clearly state that the illustrated values are the values "at the end of the policy year."  *See, e.g.*, FAC Ex. E at 7.

*Finally*, Plaintiffs now allege that, if the S&P 500 experienced "several low return years in a row," this hypothetical scenario "can cause the policy to lapse" earlier than projected by the guaranteed rates. FAC ¶¶ 35-36.  This does not change the fundamental failure of Plaintiffs' guaranteed value allegations — that the Plaintiffs have not alleged that they suffered injury-in-fact as a result of LSW's guaranteed illustrated values.  None of the

---

[8]    Mr. Howlett cannot even make this inaccurate allegation because he has not surrendered his policy.  FAC ¶ 56.

- 10 -

1    Plaintiffs does (or can) allege that his or her policy lapsed earlier than projected because of
2    the hypothetical "several low return years in a row."[9]

3          **B.    Plaintiffs Fail to Allege Reasonable Reliance on Expressly "Non-
4                  Guaranteed" Values**

5          Plaintiffs previously sought to sustain their claims on the basis of deficient
6    allegations that LSW failed to disclose that certain illustrated values were not guaranteed,
7    and that the actual returns may be variable.  Plaintiffs alleged that LSW misled them by
8    assuming a "constant" as opposed to "volatile" rate of return when preparing illustrations.
9    *See* Order at 7; Compl. ¶¶ 8, 66(b)(iii).  The Court concluded that such allegations were
10   insufficient because "reliance on the Illustration is not justified because the Illustration
11   contained warnings that the 'benefits and values are not guaranteed.  The assumptions on
12   which the illustrations are based are subject to change by the insurer.  Actual results may be
13   more or less favorable.'  What is more, the Illustration was clear about what was assumed
14   to create the non-guaranteed future values."  Order at 7.  This absence of reasonable
15   reliance was fatal to Plaintiffs' fraudulent concealment and UCL claims.  *Id.* at 4-5, 11.

16         Although the Court provided Plaintiffs with the opportunity to amend their
17   Complaint to address the absence of any reasonable reliance, it is apparent that the new
18   allegations in the FAC change nothing about this failure.  *First*, they suggest that
19   "volatility" in policy returns can "deplete the value of the policy" because it can cause
20   policy costs to increase.  FAC ¶ 35.  This allegation about *injury*, however, does nothing to
21   overcome the fundamental failing that Plaintiffs cannot plead the *separate and distinct*
22   *element* that they *reasonably relied* upon the illustrated non-guaranteed values in the first
23   place.  *See Panoutsopoulos v. Chambliss*, 157 Cal. App. 4th 297, 308 (2007) (the "right to
24   rely or justifiable reliance" is a "distinct element" from "damage resulting from such

25   _____
     [9]      Similarly, none of the Plaintiffs can allege any injury as a result of LSW's disclosure
26   of a Monthly Administrative Charge that would decrease over the life of the policy, as none
27   of the Plaintiffs held the policies long enough to actually experience any such injury.

28

reliance").  Plaintiffs' hypothetical say-so allegations about how speculative market performance may impact returns that have never been guaranteed is a far cry from a sustainable allegation that any purchase decision in the past was procured by an actionable lie about the future.  This allegation cannot satisfy the pleading standards, especially where LSW specifically stated that it was "not likely" that the actual S&P 500 results would remain constant every year, and that as a result "actual results may be more or less favorable than those [non-guaranteed illustrated values] shown."  *E.g.*, Ex. E. at 5; *see also* Order at 7.

   *Second*, Plaintiffs allege that LSW misled them by using "participation rates and cap rates" that "can be reduced by LSW at any time."  FAC ¶ 44.  However, Plaintiffs' Illustrations also clearly disclosed that participation rates and earnings caps were subject to change.  *See, e.g.*, Ex. A. at 13 ("Each Equity Indexed Segment will have a Participation Rate and Index Earning Cap, which are determined in advance for each twelve-month period ***and are subject to change on each segment anniversary***") (emphasis added).  For this reason, this Court rejected the exact same allegation when it was made in the related *Krall* litigation.  *See Krall Order* at 4, ECF No. 29 Mar. 3, 2010 (No. 09-1043) (rate and cap allegation dismissed because it "is explicitly contradicted" by disclosure "hat the rate and cap could change").  The same result follows here.

## II.   PLAINTIFFS ONCE AGAIN FAIL TO ALLEGE ANY INJURY RESULTING FROM THE TAX CONSEQUENCES OF POLICY LOANS

   Plaintiffs alleged previously that LSW failed to disclose that outstanding policy loans would be treated as ordinary income in the event of policy lapse.  Compl. ¶ 34.  This Court rejected Plaintiffs' tax theory for two reasons:  (1) Plaintiffs failed to allege "damage or injury;" and (2) "they do not allege they have misunderstood the income tax consequences of Policy lapse for policyholders."  Order at 8.  Moreover, the Court acknowledged that

1   "even if the tax concealment obligations are taken at face value, it is questionable whether

2   failure to disclose the tax laws is actionable." *Id.* at 8 n.5, *see also* Cal. Ins. Code § 335.[10]

3         Instead of demonstrating that Plaintiffs themselves suffered injury as a result of this

4   alleged non-disclosure, Plaintiffs rely upon an extended hypothetical about what may

5   happen *if* Mr. Howlett held the policy until he retired, and *if* he took out a policy loan, and

6   *if* he used that loan to fund his retirement.  FAC ¶ 40 (emphasis added).  But Plaintiffs do

7   not allege that these speculative contingencies — which even they characterize as "difficult

8   to determine" — have occurred.  *Id.*  None of the Plaintiffs claim to have taken any loans.

9   Nor do they claim to have suffered any tax consequences as a result of these hypothetical,

10  never-taken loans and an eventual policy lapse.  This falls well short of the requirement to

11  plead damage or injury, let alone with the specificity required by Rule 9(b).

12        In any event, as the Court appropriately noted, LSW was under no obligation to

13  disclose the operation of the Internal Revenue Code.  Order at 8; *see People v. Hagedorn*,

14  127 Cal. App. 4th 734, 748 (2005) (citizens are presumed to know the law); Ins. Code §

15  335 (insured presumed to be aware of information available to her).  An insurer such as

16  LSW is under no obligation to act as tax advisor for its insureds.  *Omni Home Fin. Inc. v.*

17  *Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796, at *4 (S.D. Cal. Aug. 1, 2008)

18  ("while it may be reasonable to rely on insurance agents for information regarding scope of

19  coverage it is not automatically reasonable to rely on insurance agents for tax and legal

20  advice").

21
22  **III.   PLAINTIFFS CANNOT REPACKAGE THEIR CLAIMS UNDER INSURANCE CODE SECTION 10509.950 AS UNFAIRNESS CLAIMS UNDER THE UCL**
23
24        Plaintiffs' original Complaint included a claim for unfair competition premised upon

25  alleged violations of Insurance Code § 10509.950 *et seq.*  The Court concluded that

---

26  [10]   The absence of any injury or damage disposes of both Plaintiffs' fraudulent

27  concealment and UCL claims for this claim as well.  *See supra.*

- 13 -

28

1  "Plaintiffs cannot use section 10509.955 or 10509.956 as the basis for *a UCL claim*. . . .

2  The Court is not convinced [cases Plaintiffs cited] or that *Moradi-Shalal v. Fireman's Fund*

3  *Ins. Cos.* and *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg* need not apply

4  where the purported violation of the Insurance Code did not amount to an attempt to bring a

5  third-party bad faith claim—support Plaintiffs' arguments." Order at 9-10 (emphasis

6  added) (citations omitted).

7  Plaintiffs seem to suggest in the FAC that this holding was meant to apply only to the

8  unlawfulness prong of the UCL, and that the Court's ruling left them free to reallege the

9  exact same facts and exact same alleged violations by repackaging such claims under the

10  unfairness prong. *See, e.g.*, FAC ¶ 85(i). This theory is unsupported by this Court's prior

11  ruling or the law. In fact, the Court's ruling that Section 10509.950 *et seq.* cannot be the

12  basis of "a UCL claim" precludes such a transparent end-run. The authority the Court cited

13  holds that Plaintiffs cannot plead around the absence of a private right of action by "merely

14  relabeling their cause of action as one for *unfair competition*." *Textron Fin. Corp. v. Nat'l*

15  *Union Fire Ins. Co. of Pitts.*, 118 Cal. App. 4th 1061, 1070 (2004) (emphasis added).

16  Moreover, the Central District of California has expressly rejected Plaintiffs' suggestion

17  that the unfairness prong allows Plaintiffs to "plead around and circumvent" this restriction.

18  In *Vinci Investment Co. v. Mid-Century Insurance Co.*, the Court held that the plaintiff

19  there could not bring a claim under the "unfair" or "fraudulent" prongs of UCL where the

20  absence of any private right of action in the underlying statute left them unable to bring

21  same claim under the "unlawful" prong of section 17200. 2008 WL 4447102, at *5 (C.D.

22  Cal. Sept. 30, 2008). Specifically, the *Vinci* court held that:

23  While Plaintiff concedes that *Moradi-Shalal* and its progeny
   restrict claims brought under the "unlawful" prong of section

24  17200, Plaintiff claims that the section 17200 claim remains valid
   because it is brought only under the "unfair" and "fraudulent"

25  prongs. **Plaintiff's distinction is without merit. The California**

26  **courts have not created any distinction between the three prongs**

27

- 14 -

28  NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND
   AUTHORITIES IN SUPPORT THEREOF, 10-09198 JVS(RNBx)

*of section 17200* and its interplay with the UIPA.  Rather, the courts created a general rule that bar [to] private causes of action for violation of section 17200 against insurers that violate the provisions of the UIPA.  ***To allow an action to proceed with a section 17200 claim based on the "unfair" and "fraudulent" prongs would allow a party to plead around and circumvent the restrictions explained in Moradi-Shalal and assert an unfair competition claim***.

*Id*.  (citing *Moradi-Shalal* and *Textron*); *see also Bates v. Hartford Life & Acc. Ins. Co.*, 765 F. Supp. 2d 1218, 1221 (C.D. Cal. 2011) (bar on private right of action by underlying statute precluded UCL claim based on "fraudulent, unfair, deceptive, and unlawful" prongs).  The same reasoning applies here.

## CONCLUSION

For these reasons, the Court should grant LSW's motion for judgment on the pleadings.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By:  */s/ Jonathan A. Shapiro*
Jonathan A. Shapiro (257199)
Andrea J. Robinson (*pro hac vice*)
Timothy J. Perla (*pro hac vice*)

Attorneys for Defendant Life Insurance Company of the Southwest

1

## PROOF OF SERVICE

2

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, CA 94304.  On July 25, 2011, I served the within document(s):

3

4

5

     DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

6

7

     I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, CA addressed as set forth below.

8

     I personally caused to be hand delivered the document(s) listed above to the person(s) at the address(es) set forth below.

9

10

[X]     I electronically filed the document(s) listed above via the CM/ECF system.

11

12

                  Charles N. Freiberg
                  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

13

                  101 California Street, Suite 2300
                  San Francisco, CA 94111

14

15

                  Harvey R. Levine

16

                  LEVINE & MILLER
                  550 West C. Street, Suite 1810

17

                  San Diego, CA 92101-8596

18

19

                  */s/ Jonathan A. Shapiro*
                  Jonathan A. Shapiro

20

21

22

23

24

25

26

27

28