JONATHAN A. SHAPIRO (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858-6101
Fax: (650) 858-6100
jonathan.shapiro@wilmerhale.com

ANDREA J. ROBINSON (PRO HAC VICE)
TIMOTHY J. PERLA (PRO HAC VICE)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50,<br><br>Defendant. | Case No.: 10-09198 JVS(RNBx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Honorable James V. Selna<br><br>Date: October 17, 2011<br>Time: 1:30 p.m.<br>Courtroom: 10C |

## Table of Contents

Page(s)

I. PLAINTIFFS FAIL TO PLEAD A FRAUD OR UCL CLAIM BASED ON GUARANTEED VALUES .................................................................................. 2

II. PLAINTIFFS HAVE NOT PLED ANY CAUSE OF ACTION BASED ON ILLUSTRATED NON-GUARANTEED VALUES ......................................... 5

III. PLAINTIFFS CANNOT SUCCESSFULLY BASE A CLAIM ON HYPOTHETICAL, NEVER-REALIZED TAX CONSEQUENCES .......................... 7

IV. PLAINTIFFS CANNOT USE THE UCL UNFAIRNESS PRONG TO END-RUN THIS COURT'S RULING .................................................................................. 9

- i -

REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

Table of Authorities

Page(s)

Federal Cases

*Anderson v. United States*,
  No. 01-3747, 2004 U.S. Dist. LEXIS 22021 (N.D. Cal. Oct. 14, 2004) .......................... 7-8

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .......................................................................... 4, 9

*Cholakyan v. Mercedes-Benz USA, LLC*,
  -- F. Supp. 2d --, 2011 WL 2682975 (C.D. Cal. June 30, 2011) .......................... 4

*Hovsepian v. Apple, Inc.*,
  2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ................................................... 3

*Meaunrit v. Pinnacle Foods Grp., LLC*,
  2010 WL 1838715 (N.D. Cal. May 5, 2010) .................................................... 4

*Omni Home Fin. Inc. v. Hartford Life & Annuity Ins. Co.*,
  2008 WL 4616796 (S.D. Cal. Aug. 1, 2008) ..................................................... 7

*Spiegler v. Home Depot U.S.A., Inc.*,
  552 F. Supp. 2d 1036 (C.D. Cal. 2008) ............................................................ 2

*Tirakian v. N.Y. Life Ins. Co.*,
  2011 U.S. Dist. LEXIS 54637 (C.D. Cal. May 13, 2011) ................................ 11

*Vinci Inv. Co. v. Mid-Century Ins. Co.*,
  2008 WL 4447102 (C.D. Cal. Sept. 30, 2008) ................................................ 10

*Webb v. Carters Inc.*,
  272 F.R.D. 489 (C.D. Cal. 2011) ...................................................................... 4

State Cases

*Hughes v. Progressive Direct Ins. Co.*,
  196 Cal. App. 4th 754 (2011) ......................................................................... 11

*Pastoria v. Nationwide Ins.*,
  112 Cal. App. 4th 1490 (2003) ....................................................................... 11

*Rogers v. Warden*,
  20 Cal. 2d 286 (1942) ....................................................................................... 8

*Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg*,
  118 Cal. App. 4th 1061 (2004) ....................................................................... 10

*Vega v. Jones, Day, Reavis & Pogue*,
  121 Cal. App. 4th 282 (2004) ........................................................................... 8

State Statutes

Cal Ins. Code § 335 ................................................................................................. 7

Plaintiffs fail to remedy the pleading problems that already once compelled dismissal of claims challenging guaranteed values, non-guaranteed values, putative tax consequences, and alleged violation of Section 10509 of the Insurance Code. The Opposition ("Opp.") is long on rhetoric about alleged "defects" and "concealment," but short on responses to simple, dispositive points.

1. Plaintiffs cannot have a claim for misrepresentation of guaranteed values where LSW indisputably paid what it guaranteed, and never promised anything else.

2. Plaintiffs likewise cannot predicate a claim on non-guaranteed values, where this Court has already held (repeatedly) that such values cannot be reasonably relied upon as promises of anything.

3. Plaintiffs cannot successfully claim concealment of the fact that the Internal Revenue Code sometimes taxes income from life insurance (a fact equally knowable to all members of the public), particularly where Plaintiffs never incurred the tax or were in danger of doing so.

4. Plaintiffs cannot end run this Court's dismissal of their UCL unlawfulness allegations simply by crossing out "unlawful" in favor of "unfair."

This Court has already once found many of these flaws to be determinative. *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss and Denying Defendant's Motion to Strike, Dkt. 59 ("Order"). Plaintiffs have responded by bloating their First Amended Complaint (the "FAC") with allegations about their own subjective "expectations" and "understandings," untethered to representations in the Illustrations they received and, in many cases, ***directly at odds*** with the information that was disclosed in their Illustrations and Policies. These allegations cannot insulate their claims from disposition and entry of judgment under Rule 12(c).

## I. PLAINTIFFS FAIL TO PLEAD A FRAUD OR UCL CLAIM BASED ON GUARANTEED VALUES

Plaintiffs' Opposition fails to address the fundamental flaw in their guaranteed values allegation — that Plaintiffs received what the Illustrations guaranteed. Opp. at 9-11. Memorandum in Support of LSW's Motion for Judgment on the Pleadings, Dkt. 72 ("Mem.") at 10. The Illustrations guaranteed that the Policies would have certain accumulated values at the end of each policy year if Plaintiffs made all periodic premium payments. *See, e.g.*, FAC Ex. A at 11-14 (setting forth "guaranteed values"). Plaintiffs do not allege that they received less than the amounts illustrated. Mem. at 10; *see also* Opp. at 14 (making clear that Plaintiffs are not "challenging" the "specific numbers that appear" in the columns depicting guaranteed values). The Illustrations do not state — **anywhere** — that these values are based on any "annual guarantee." *Compare* Opp. at 9 (claiming a "representation of annual guarantees" without citing any language in the Illustrations) *with* FAC Ex. A (never using the phrase). Thus, Plaintiffs have not identified a misrepresentation — *i.e.*, LSW delivered what it said it would deliver. Nor have Plaintiffs identified any redressible injury — *i.e.*, Plaintiffs received what was guaranteed. Their claims should end there.

Plaintiffs cannot alter the result by referencing their own subjective expectations concerning the method of calculating guarantees, and then declaring those expectations to be inconsistent with LSW's actual practice. Opp. at 11-13 (asserting that Plaintiffs "expected" to receive particular guaranteed annual crediting and were injured because the calculation was done differently).

*First*, Plaintiffs fail to identify a misrepresentation to support their subjective expectation theory. *See* Order at 4 (concealed material fact is an element of fraud); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1047-48 (C.D. Cal. 2008) (dismissing UCL claim for failure to plead misrepresentation or omission). Plaintiffs cite no language from the Illustrations (or elsewhere) that created their asserted "expectation" of

an "annual guarantee," let alone with Rule 9(b) specificity. Order at 7 (dismissing guaranteed values claim because Plaintiffs failed to "establish under Rule 9(b) what each Plaintiff expected ***based on LSW's representations*** and why LSW's policy failed to meet their expectations ***regarding what was represented to them***") (emphasis added).[1] Nor does the FAC cite *any* language from the Illustrations that created their "expectation" of pro-rated values.[2] Plaintiffs note that LSW presented numbers on an annual basis, but cannot plead any facts to show with specificity how Plaintiffs (or any other reasonable consumer) could interpret this as a representation about how those numbers are calculated. The point is simple and dispositive: Plaintiffs may have "expected" any number of things (*e.g.*, certain methods of calculation, the Giants to win the World Series), but if not grounded in a pleaded, actionable representation by LSW, there is no claim. *See Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009) ("generalized allegations with respect to consumer expectations also are insufficient to meet Rule 9(b)'s heightened pleading requirements" unless grounded in a specific misrepresentation).

*Second*, Plaintiffs' asserted expectation is inconsistent with the language of their Policies. The Policies are clear that the guarantee is an average guarantee over the duration of the Policies — *not* a guarantee of any particular rate of return over any given interim period of time (a week, a month, a quarter, a year, or several years). *See, e.g.*, FAC Ex. B at 15 ("[o]n the fifth anniversary of each Equity-Indexed Segment, Index Earnings will be increased as necessary so that the annual rate of Index Earnings over the five-year length of

---

[1] For instance, page 9 of the Opposition refers to "representations of annual guarantees," and cites paragraphs 43 and 44 of the FAC in support. But FAC ¶¶ 43 and 44 do not cite any representation of an annual guarantee.

[2] It is particularly strange that the Opposition cites Policy language, given that Plaintiffs have for several months insisted that information disclosed in their Policies is irrelevant. *Compare* Opp. at 9-10 *with* Order at 11. In any event, the language they cite says nothing about how guaranteed values are calculated—it is from an entirely different section of the Policy—let alone anything about "pro rated" values.

- 3 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR
JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

1  the segment is at least equal to the guaranteed minimum rate of 2.00%"). Nothing in the
2  Illustrations is to the contrary.

3      *Finally*, Plaintiffs' subjective expectation theory lacks injury. However Plaintiffs
4  now say that they "expected" their Policies to operate, the dispositive fact remains that *the*
5  *actual guaranteed dollar figures that they walked away with were higher than the dollar*
6  *figures they were expressly told to "expect."* Whether LSW calculated guaranteed values
7  at the end of each year, at the end of five years, or otherwise, Plaintiffs got what was
8  "guaranteed."

9      Plaintiffs also cannot conjure up injury by resorting to lengthy hypotheticals about
10 what could have happened *if* they had held onto their Policies (they did not) for years under
11 assumed market conditions (which never came to pass). *See* FAC ¶ 40; Opp. at 13 (relying
12 on the "hypothetical set forth in the FAC" about what would happen "[i]f the policy was in
13 effect for four years in which the S&P 500 had zero gains"). Courts have repeatedly
14 rejected this pleading tactic. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)
15 (claimed defect did not amount to loss of money or property because the allegations rested
16 on a merely hypothetical risk of injury to other consumers); *Webb v. Carters Inc.*, 272
17 F.R.D. 489, 499 (C.D. Cal. 2011) (alleged defect did not affect all consumers, therefore
18 plaintiffs did not allege a cognizable injury in overpayment, loss in value, or loss of
19 usefulness); *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *2-3 (N.D. Cal.
20 May 5, 2010) (plaintiffs that alleged only that there was a "potential for contamination"
21 because microwaved pot pies "may not reach" the required temperature, but did not allege
22 "that they were injured by contaminated pot pies" or "others have become ill," did "not
23 plead a cognizable injury in fact"); *Cholakyan v. Mercedes-Benz USA, LLC*, -- F. Supp. 2d -
24 -, 2011 WL 2682975, at *7 (C.D. Cal. June 30, 2011) ("[t]o have standing to assert UCL"
25 claims, plaintiff "must allege that his vehicle experienced the water leak defect" at issue).[3]

---

[3] Plaintiffs incorrectly rely upon *Kwikset* and progeny to suggest that their purchases of "defective" products are an injury. Opp. at 10-11. These cases are inapplicable because

- 4 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR
JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

## II. PLAINTIFFS HAVE NOT PLED ANY CAUSE OF ACTION BASED ON ILLUSTRATED NON-GUARANTEED VALUES

Plaintiffs' Opposition cannot escape the critical defect in their non-guaranteed value allegations — the Court's repeated prior rulings that neither Plaintiffs, nor any other reasonable person, could rely upon non-guaranteed values as an assurance or prediction of constant future performance in light of LSW's specific and repeated warnings. *See* Mem. at 11; Order at 7. Absent reliance — which this Court has foreclosed based on the warnings that pervade the Illustrations — Plaintiffs' claims continue to fail. *See* Order at 7.

Plaintiffs cannot circumvent this ruling by re-phrasing their grievance to be about the potential for "volatility" in the S&P 500 to affect non-guaranteed policy values. No matter how window-dressed, Plaintiffs' claim is still grounded in impermissible reliance on non-guaranteed illustrated values. In order to have been mislead, Plaintiffs need to have relied on some representation by LSW. The FAC and Opposition make clear that Plaintiffs are arguing that they relied on illustrated constant non-guaranteed values, and therefore did not appreciate that variable returns could affect their policy values. Opp. at 16-17 (claiming Plaintiffs were mislead because the Illustrations "depict[ed] only constant rate of return scenarios"). Plaintiffs' continuing reliance upon the "constant rate of return scenarios" in illustrated non-guaranteed values is highlighted by the fact that neither the FAC nor the Opposition cites any other representation anywhere in Plaintiffs' Illustrations. *See* Opp. at 20 (describing what a "reasonable policyholder would understand" without specifically identifying anything LSW said that caused any misunderstanding). However, this Court has foreclosed reliance on precisely these non-guaranteed values in light of the Illustrations' pervasive warnings.

---

there is no "defect" in the Policies—*the guarantee worked exactly as described in the Policies and Plaintiffs got the amount they were told they would get*. In fact, the FAC does not allege that anyone, anywhere in the world, has ever actually suffered this "defect."

- 5 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

Indeed, such reliance would be particularly unreasonable because the Illustrations specifically warned that it was "not likely" that the actual S&P 500 results would remain constant every year, and that as a result "actual results may be more or less favorable than those [non-guaranteed illustrated values] shown." *E.g.*, FAC Ex. E. at 1; *see also* Order at 7. This is not a "standard disclaimer[]" (Opp. at 20) — it is a specific warning that variable returns were likely and could cause Plaintiffs' policy values to fall short of illustrated non-guaranteed values. Plaintiffs cannot allege that they were misled in light of this clear disclosure.[4]

Plaintiffs' remaining arguments merely rehash legal issues this Court has already addressed. *Compare, e.g.,* Opp. at 18 (citing *Tobacco II* for a "presumption of reliance" on material representations) *with* Plaintiffs' Opposition to LSW's Motion to Dismiss, Dkt. 43 ("MTD Opp.") at 9 (containing the exact same language verbatim). This Court has already considered the scope of the reliance requirements under fraud and the UCL, and the adequacy of LSW's warnings to overcome any purported presumption of reliance on the non-guaranteed illustrated values and assumptions that were used "to create the non-guaranteed future values." *See* Order at 7. Taking all of those factors into account, the Court held that Plaintiffs' previous allegations were insufficient, and the new allegations have changed nothing. The Opposition's attempt to seek reconsideration of the Court's ruling is improper and irrelevant.

---

[4] The Court should ignore Plaintiffs' rhetoric that the Policies contain a "hidden defect." Plaintiffs' asserted defect boils down to the obvious proposition that, if a product's returns are based on the S&P 500, then product returns will be lower when S&P 500 returns are lower, higher when S&P 500 returns are higher, and everything in between. This same "defect" permeates any market-based investment or product—and thus is not "hidden."

## III. PLAINTIFFS CANNOT SUCCESSFULLY BASE A CLAIM ON HYPOTHETICAL, NEVER-REALIZED TAX CONSEQUENCES

This Court previously identified two problems with Plaintiffs' tax advice claim: no duty to disclose, and no injury. Order at 8 & n.5. The Amended Complaint remedies neither.

With respect to duty of disclosure, Plaintiffs try and fail to characterize their claim as something other than a raw demand for an explanation of the tax code. *See* Opp. at 21 (conceding that LSW was not required "to educate policyholders about the tax code"). However dressed up, Plaintiffs' reference to a "hidden defect" in the Policies is just a round-about way of complaining that the Internal Revenue Code taxes income. In the case of life insurance, the IRS taxes income earned on the policy in the event of policy surrender. That information is equally available to Plaintiffs and every member of the public, which means LSW need not disclose it. *See* Cal Ins. Code § 335. Unsurprisingly, Plaintiffs cite ***no authority*** — not one case, statute, regulation, or article — that an insurer has a duty to make tax disclosures. *See* Opp. at 21-22 (no cites); *compare Omni Home Fin. Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796, at *4 (S.D. Cal. Aug. 1, 2008) ("while it may be reasonable to rely on insurance agents for information regarding scope of coverage it is not automatically reasonable to rely on insurance agents for tax and legal advice" (internal citation omitted)).[5] Neither *Carolina Casualty* nor *Unionamerica* concerns disclosures about taxes, or even Section 335 of the Insurance Code. Instead, each case involves an insured making false statements about information only they know, not an insurer omitting a description of tax laws, which everyone is presumed to know. *Anderson*

---

[5] Plaintiffs attempt to distinguish *Omni* because they are not suggesting that LSW is "automatically" under a duty to provide tax advice. Opp. at 21, n.8. However, Plaintiffs do not identify any reason why LSW would be subject to a heightened duty to provide tax advice that would overcome this strong presumption that there is no duty to dispense such advice.

- 7 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

*v. United States*, No. C 01-3747 VRW, 2004 U.S. Dist. LEXIS 22021, at *11 (N.D. Cal. Oct. 14, 2004) ("it is presumed plaintiff was aware of all applicable tax laws").

Plaintiffs incorrectly assert that LSW had a duty to describe how the Tax Code may treat all possible situations that may unfold under their Policies because the Illustrations mentioned taxes in a completely different context. Opp. at 22 (Illustrations mention "potential tax issues" regarding "overfunding a policy" and "accelerated benefits riders").[6] Plaintiffs do not and cannot explain how these narrow references — which have nothing to do with this case — in any way mislead them about the tax treatment of policy lapse. Instead, Plaintiffs appear to theorize that because LSW mentioned taxes at all, it had to describe the workings of the Tax Code in full (*i.e.*, even on unrelated topics). However, none of the cases Plaintiffs cite support such a conclusion; they each involve partial disclosures about the precise issue that was omitted. *Compare Rogers v. Warden*, 20 Cal. 2d 286, 289-90 (1942) (when defendants said "why they wanted a deed," they had a duty to disclose "the true reason why they were seeking the deed"); *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004) (law firm that "prepared a proper disclosure schedule" with certain stock provisions provided "a different sanitized version" of the same schedule, without these stock provisions). In the absence of a duty of disclosure, Plaintiffs' fraud and UCL claims fail.

With respect to injury, Plaintiffs do not (and cannot) allege that they ever took any loans from their Policies (or even contemplated doing so), that their Policies lapsed while loans were outstanding, or that they paid any income taxes on loan proceeds.[7] They have,

---

[6] Plaintiffs also vaguely refer to how LSW "markets the policies" as providing "tax deferral or tax avoidance." Opp. at 22. However, neither the Opposition nor the FAC cites any such specific representation by LSW in any marketing materials. *See* FAC ¶¶ 39-40; 73(b)(iv) (paragraphs cited by Plaintiffs, which do not identify any specific representation).

[7] Plaintiffs incorrectly rely upon *Kwikset* to suggest injury because they either wouldn't have bought the Policies if they knew the "truth" or wouldn't have paid as much. Opp. at 23-24. The truth (i.e., taxation) was equally available to them. And Plaintiffs have not

- 8 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

therefore, suffered no injury based on hypothetical tax consequences of policy loans never taken or contemplated. *See Birdsong*, 590 F.3d at 961 (no UCL injury because plaintiff's allegation of the "capability" that some harm "may" happen is "conjectural and hypothetical" in absence of any allegation that plaintiffs "have suffered or are substantially certain to suffer" alleged injury).[8]

## IV. PLAINTIFFS CANNOT USE THE UCL UNFAIRNESS PRONG TO END-RUN THIS COURT'S RULING

Plaintiffs' Opposition makes no attempt to rebut LSW's argument that the "unfairness" allegations in the FAC are *exactly* the same allegations (often verbatim), under *exactly* the same statute (Section 10509 *et seq.* of the Insurance Code), that this Court has already rejected under the unlawful prong. Mem. at 14.[9] This Court has already held that Plaintiffs cannot circumvent the absence of any private right of action under Section 10509 of the Insurance Code by repackaging those claims under the UCL. Order at 9. In so doing, the Court expressly rejected Plaintiffs' argument that the cases upon which the Court relied (*Moradi-Shalal* and *Textron*) were only applicable in the context of the UIPA. *See* Order at 9-10. Instead, the Court concluded that Plaintiffs' narrow reading of these cases to "third-party bad faith claim[s]" under the UIPA was unsupported, and that "Plaintiffs cannot use section 10509.955 or 10509.956 as the basis for a UCL claim." *Id*.[10]

---

plead any facts to show how disclosure of tax consequences would change the price of LSW policies. Opp. at 24-25.

[8] Although Plaintiffs accuse LSW of "fail[ing] to acknowledge . . . controlling authority" (Opp. at 24), they themselves fail to cite *Birdsong*, the only 9th Circuit case on the subject.

[9] Plaintiffs accuse *LSW* of seeking "reconsideration" of this Court's prior ruling. Opp. at 3. Their examples do not support their heated rhetoric, as the Court did not actually rule on either issue. *See* Opp. at 4 (duty to disclose issue that Court did not mention in prior order); 4-6 (unfairness issue that was not even raised earlier because Plaintiffs had not yet attempted to use "unfairness" to end-run the bar on a private right of action).

[10] Although this language is contained in the section on the "unlawful" prong, it is the only discussion of Section 10509 in the Court's opinion, and contains no language cabining the holding in the manner that Plaintiffs now suggest.

- 9 -
REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS, 10-09198 JVS(RNBx)

Undeterred, Plaintiffs now recycle the exact same allegations under the "unfair" prong of the UCL. Mem. at 13-14. In their Opposition, they attempt to justify this maneuver by again arguing that the prohibition on bringing UCL claims under the unfair or unlawful prongs is "narrowly limited to barring UCL claims premised on violations of the UIPA." Opp. at 6-7 (purporting, once again, to distinguish *Moradi-Shalal* and *Textron*).[11] In other words, Plaintiffs say, in UIPA cases the absence of a private right of action may prohibit UCL claims under the unlawful prong and the unfair prong, but in every other case Plaintiffs are free to circumvent that limitation by bringing suit under the unfair prong. This distinction finds no support in any case either party cites, and is directly at odds with the purpose of the rule to prevent Plaintiffs from "plead[ing] around" the absence of a private right of action "by merely relabeling their cause of action as one for unfair competition." *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 118 Cal. App. 4th 1061, 1070 (2004).[12]

In fact, Plaintiffs' theory has been rejected in the only case to squarely address the question of whether a plaintiff could "plead around and circumvent" the absence of a private right of action by making the exact same allegations under the unfair prong. *Vinci Inv. Co. v. Mid-Century Ins. Co.*, 2008 WL 4447102, at *5 (C.D. Cal. Sept. 30, 2008) ("California courts have not created any distinction between the three prongs" of the UCL on this issue). None of the cases Plaintiffs cite has authorized Plaintiffs' pleading tactic of re-alleging the exact same allegations that are forbidden under the unlawful prong — in

---

[11] *See also* Opp. at 8, in which Plaintiffs cite *Stop Youth Addiction* to argue that "*Moradi-Shalal* applies only where the statute underlying a UCL claim provides an express bar to bringing a UCL claim"—the exact same argument, relying on the exact same authority, that this Court already rejected. *Compare* Order at 9-10 ("the case law [including *Stop Youth Addiction*] does not support [Plaintiffs'] position").

[12] Plaintiffs' observation that the analysis of these cases is "restricted to [the] UIPA" is unsurprising considering that the UIPA was the issue in each case. Opp. at 7. None of the cases suggests that the UIPA is the outer limit of its application, and this Court has already rejected Plaintiffs' argument that the cases should be so limited.

each such case, the unfair claims that were allowed to proceed were either allegations tied to a different statute which *could* serve as predicate for an "unlawful" UCL claim[13] or different allegations untethered to *any* statute.[14]

## CONCLUSION

For these reasons, the Court should grant LSW's motion for judgment on the pleadings.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Jonathan A. Shapiro*
Jonathan A. Shapiro (257199)
Andrea J. Robinson (*pro hac vice*)
Timothy J. Perla (*pro hac vice*)

Attorneys for Defendant Life Insurance Company of the Southwest

---

[13] *See, e.g.*, *Hughes v. Progressive Direct Ins. Co.*, 196 Cal. App. 4th 754, 770 (2011) (Section 785.5 of the Insurance Code can form the basis of both unlawful and unfair theories); *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1497-98 (2003) (Section 330 of the Insurance Code can form the basis of both unlawful and unfair theories).

[14] *See, e.g.*, *Tirakian v. N.Y. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 54637, at *20-21 (C.D. Cal. May 13, 2011) (unlawfulness allegation based on claim filing not permitted, but allegations of "unfair" practices allowed to proceed because they are "viable even in the absence of the filing of claims").

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, CA 94304. On October 3, 2011, I served the within document(s):

REPLY MEMORANDUM IN SUPPORT OF LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS

☐ I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, CA addressed as set forth below.

☐ I personally caused to be hand delivered the document(s) listed above to the person(s) at the address(es) set forth below.

☒ I electronically filed the document(s) listed above via the CM/ECF system.

Charles N. Freiberg
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111

Harvey R. Levine
LEVINE & MILLER
550 West C. Street, Suite 1810
San Diego, CA 92101-8596

*/s/ Jonathan A. Shapiro*
Jonathan A. Shapiro