JONATHAN A. SHAPIRO (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:   (650) 858-6101
Fax:   (650) 858-6100
jonathan.shapiro@wilmerhale.com

ANDREA J. ROBINSON (PRO HAC VICE)
TIMOTHY J. PERLA (PRO HAC VICE)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com
Attorneys for Defendant Life Insurance Company of the Southwest

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50,<br><br>Defendant. | Case No.: 10-09198 JVS(RNBx)<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' EX PARTE CROSS-APPLICATION FOR A CORRECTIVE NOTICE<br><br>Judge James V. Selna<br><br>Courtroom:  10C |

OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

I. INTRODUCTION

Plaintiffs' Cross-Application is an attempt to turn a shared (and obvious) problem into a unilateral restriction on LSW's legitimate communications with its own policyholders — including those who are not, and some who will never be, a part of any as-yet-uncertified class in this litigation. *See* Plaintiffs' Ex Parte Cross-Application for Order re Contacts with Members of the Proposed Class ("Plaintiffs' Cross-Application" or "Cross-App."), Dkt. 156, at 18-20. The better solution to this shared problem is to establish an even-handed process to ensure that all communications with LSW's policyholders are fair and responsible, such as the procedure established by this Court in the *Toyota* litigation that LSW has asked for in its Application. *See* Ex Parte Application for Entry of Order re Contacts with Putative Class Members ("LSW's Application" or "LSW App."), Dkt. 146.

Instead, Plaintiffs now seek to obtain a litigation advantage by insisting that they will *only* agree to the *Toyota* approach *if* LSW will send, on its own letterhead, a piece of advocacy penned by Plaintiffs' counsel (their "corrective notice") *and* otherwise restricts LSW's right to communicate with its policyholders. They do so based on a tortured reading of LSW's correspondence with its policyholders and an even more distorted summary of the facts that precipitated this issue. It was Plaintiffs, not LSW, that started the parties down this road by sending what they call a "form letter" — without screening the letter with LSW or the Court — to LSW's policyholders, whom they do not currently represent and many of whom they will never represent. It was Plaintiffs, not LSW, who made misleading statements about this litigation and suggested that addressees "may be entitled to receive money damages," which necessitated LSW's letter to clarify the situation for its customers.

There is, however, a path forward other than Plaintiffs' proposal to turn this shared problem into yet another unnecessary and hostile he-said-she-said shouting match. **Both** parties believe that their own communications with policyholders were responsible and fair. **Both** parties believe that the other's communications with policyholders were misleading

- 2 -
OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

and unfair. **Both** parties claim a legitimate need to communicate with LSW's policyholders. **Both** parties have an obligation to ensure that all this happens in a responsible manner that doesn't unduly disrupt LSW's business nor intruce into the lives of those who will never be part of any proposed class. The correct solution is one that governs both parties equally — and it is for an order mirroring the process established by this Court in the *Toyota* litigation as sought by LSW's Application.[1]

## II.   FACTS

The correspondence between the parties on this issue is described in detail in LSW's Application and contained in full in the exhibits thereto.

For the purposes of Plaintiffs' Cross-Application, the two most relevant documents are Plaintiffs' letter to LSW policyholders (Brosnahan Decl. Ex. A, "Plaintiffs' Letter") and LSW's response to that letter (Brosnahan Decl. Ex. B, "LSW's Letter"). Neither party provided the other advance notice of the content or substance of these letters before they were sent. Both parties have subsequently defended their own communications as accurate and described the other's communications as unfair and misleading.

Instead of describing the substance of the two letters, much of Plaintiffs' Cross-Application focuses on two red herrings: (1) a discussion of when LSW learned about Plaintiffs' Letter; and (2) an attempt to malign LSW's selection of sample policies. Neither is relevant to the substance of Plaintiffs' Cross-Application, and neither is accurate.

*First*, Plaintiffs' attempt to infer what LSW knew, and when LSW knew it, has nothing to do with the substantive propriety of LSW's letter — the document says what it says. In any event, Plaintiffs' notion that LSW's decision to correspond with its own policyholders (instead of immediately running to Court to complain about Plaintiffs' letter)

---

[1] Plaintiffs again requested an oral argument on the parties' *ex parte* applications. *See* Cross-App. at 3. LSW is happy to appear for an argument if the Court thinks that would prove helpful. Plaintiffs have told LSW that they will imminently be filing a Motion for Leave to Further Amend their First Amended Complaint, which may be a convenient time to hold a single hearing on these applications as well.

- 3 -
OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

somehow creates an inference that LSW knew it was acting improperly is baseless. LSW does and always has stood behind the substance of its letter, and the Court can evaluate that letter for itself. Plaintiffs did not pre-screen their letter with the Court or LSW, so it is not clear why they believe LSW was obligated to pre-screen its own letter to its customers.

*Second*, Plaintiffs spill a lot of ink on the issue of whether the sample of policyholders was meant to include only putative class members. This is entirely unrelated to the relief sought by the Cross-Application. *See* Cross-App. at 1. In any event, LSW meticulously followed the sampling procedure required by the parties' joint stipulation and by Judge Block's order. *See* Revised Joint Stipulation Regarding Plaintiffs' Motion to Compel Production of Documents, Sept. 13, 2011 ("Joint Stipulation"), Dkt. 100. That carefully negotiated document required LSW to produce every 82nd policy from the set of "all Paragon or Provider universal life insurance policies issued in California." *Id.* at 2. In the Stipulation and elsewhere, Plaintiffs demanded "strict compliance with the methodology of the sample" because strict compliance was "essential to its accuracy." *Id.* at 3. LSW complied, submitted an affidavit attesting to the compliance, and was completely transparent in the way it did so.[2]

## III. ARGUMENT

Where, as here, the parties to a putative class action have a legitimate need to gather facts and communicate with potential members of an as-yet-nonexistent class, courts routinely protect their right to do so. *See, e.g., Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005). However, in the interest of protecting those non-class-members, courts will frequently establish a process governing such communications to prevent them from being misled or inconvenienced. *See, e.g., Gottstein v. National Ass'n for the Self Employed*, 186 F.R.D. 654, 655 (D. Kan. 1999); *In re: Toyota*

---

[2] An extensive explanation about LSW's adherence to the sampling protocol is set forth in Jonathan Shapiro's February 28, 2012 letter to Brian Brosnahan. *See* Brosnahan Dec., Ex. H.

*Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 8:10ML2151 JVS (FMOx) (Dkt. 2200) (C.D. Cal. Feb. 3, 2012) (the "Toyota Order"). For the reasons set forth in LSW's Application, this is the solution that the Court should adopt here as well by entering an order similar to the Court's order *Toyota* order.

    LSW has an ongoing and important relationship with its policyholders — the men and women who are receiving these communications (and whom Plaintiffs wish to burden with even more letters). By contrast, Plaintiffs' counsel do not currently, and may never, have any attorney-client relationship with these individuals.[3] Nonetheless, it was Plaintiffs who decided (without advance notice to LSW and without providing an opportunity for either LSW or the Court to review the content or substance of that communication) to send letters to these people's homes. Plaintiffs' Application proceeds from the premise that their own decision to send such a letter was legitimate and fair, while LSW's decision to respond to this letter was despicable, misleading and improper. That premise is incorrect—but perhaps more importantly, the parties' shared dispute is precisely why a shared (*i.e.*, not one-sided) solution is necessary.

    In any event, LSW's communication with its policyholders was entirely accurate and fair. LSW provided additional clarification to certain misleading or confusing statements made in Plaintiffs' letter and — as with most materials that an insurance company sends to policyholders — invited the policyholders to call their insurance agent or LSW's customer service line if they wished to discuss their policies. It did not purport to offer a summary of the heavily disputed claims in the case, and it did not tell policyholders that they could not (or even should not) speak with Plaintiffs' counsel. Plaintiffs' claim that a few sentences in that letter, wrenched from context, may be misleading depends upon a contorted interpretation of the letter that no readers would possibly share unless they were trying to

---

[3] In fact, Plaintiffs sent copies of their "form letter" to some unknown number of people—LSW's best guess is more than three dozen—who will *never* be a member of any class, either because they are insureds rather than policyholders or because they purchased their policies outside of the class period.

- 5 -
OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

conjure up a basis for motion practice. In fact, none of Plaintiffs' specified problems or "corrections" hold water.

### A. LSW Correctly Stated that Plaintiffs' Counsel Does Not Have An Attorney-Client Relationship With Absent Members of the Putative Class

Plaintiffs first claim that LSW's letter was "misleading" because it stated that:

> The Plaintiffs' attorney claims in his solicitation to have filed the lawsuit 'on your behalf.' However, he is not your attorney in the lawsuit and the Court has yet to consider whether it would be appropriate to let the case even go forward as a class action. While the plaintiffs' attorney suggests that you contact them, you have no obligation to do so. (Cross-App. at 14)

This statement in LSW's letter adds much-needed context to Plaintiffs' counsel's claim to be acting "on behalf" of absent members of the putative class. *Cf. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (discussing potential circumstances in which interests of class counsel and absent class members may be misaligned). Every sentence quoted by Plaintiffs is true and accurate.

*First*, Plaintiffs' counsel did tell LSW's policyholders that he had filed the lawsuit "on behalf of you and other people who purchased LSW's EIUL policies after September 24, 2006." Plaintiffs' Letter at 1.

*Second*, it is black-letter law that no attorney-client relationship exists between Plaintiffs' counsel and putative members of the absent class. *See, e.g., Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1084 (C.D. Cal. 2002) (noting that "The Second Circuit, state and federal district courts in California, and a leading treatise" all conclude that "no attorney-client relationship yet exists" between plaintiffs' counsel and absent members of the putative class before certification). No motion for class certification has been filed, let alone granted. In fact, in the case of many recipients of Plaintiffs' letter, they are not even members of the proposed class, meaning that this lawsuit will never be conducted "on [their] behalf." Plaintiffs' letter to LSW's policyholders failed to provide any of this information. *See* Plaintiffs' Letter.

*Finally*, it is clear that absent potential members of the as-yet-uncertified putative class have no obligation to speak with attorneys for either party. *See Toyota* Order.

### B. LSW Correctly Stated that Portions of Plaintiffs' Original Letter Were Misleading

Next, Plaintiffs take issue with the statement in LSW's letter that "[w]e believe that [plaintiffs'] letter, which does not acknowledge our defenses to the lawsuit, is misleading." Cross-App. at 14. This was not, as Plaintiffs argue, some broad-based attack on the character of Plaintiffs' counsel. It simply stated that there are two sides to this litigation, and was followed by three bullet points providing additional information to clarify specific misperceptions that may have been created by Plaintiffs' letter. LSW's Letter at 1. LSW's letter fairly and accurately specified what it believed were misrepresentations, and corrected them.

*First*, LSW provided an important clarification to its policyholders that it had not volunteered their personal identifying information to Plaintiffs' counsel, but instead that LSW had been required to turn over this information by court order. LSW's Letter at 1. This clarification has been endorsed by this Court in its *Toyota* order and by other courts as well. *See Toyota* Order; *Gottstein*, 186 F.R.D. at 659. Plaintiffs' counsel's letter failed to provide this information. Plaintiffs' Letter at 1.

*Second*, LSW's letter clarified that absent potential members of the as-yet-uncertified putative class have no obligation to speak to attorneys for either party. LSW's Letter at 1. This, too, was important information that was omitted from Plaintiffs' letter. *Compare Toyota* Order (requiring such disclosure).

*Third*, Plaintiffs' counsel's letter claimed to have filed suit "on behalf" of recipients of the letter. Plaintiffs' Letter at 1. In fact, no motion to certify a class has been filed and no class has been certified. *Gottestein*, 186 F.R.D. at 659 (in communications with absent members of a putative class, it is important that parties clarify whether the court has, in fact, approved the action to proceed as a class action). Accordingly, there is *no* attorney-client

- 7 -
OPPOSITION TO PLAINTIFFS'' EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

relationship between Plaintiffs' counsel and LSW's policyholders. Moreover, Plaintiffs' letter was sent to many individuals who would *never* possibly be a part of any certified class, because either they are not policy owners at all (but instead insureds) or their policies were purchased outside of Plaintiffs' proposed class period. Plaintiffs' letter failed to disclose any of this information. *See* Plaintiffs' Letter at 1.

*Finally*, Plaintiffs' letter was misleading in other ways that LSW's letter did not attempt to correct explicitly. Most notably, it claimed that the recipient "and others who have purchased LSW EIUL policies are members of the proposed class of plaintiffs and may be entitled to receive money damages or other relief based on your payment of premiums to LSW." Plaintiffs' Letter at 1. But this was not true for recipients—like the twelve-year-old girl whose mother contacted LSW—who were merely insureds (and not policyholders) or who purchased policies outside the class period. Nor did Plaintiffs disclose that the Court has not yet ruled on the merits of *any* of their allegations, or disclose the substance of any of LSW's vigorous defenses to their allegations. *Id.*

### C. LSW Properly Referred to Plaintiffs' Letter as a "Solicitation" Under the Ordinary Meaning of that Term

Plaintiffs also complain about LSW's use of the word "solicitation" to describe their letter, because of the "connotations of the term" and its "association ... with certain unethical attorney practices." Cross-App. at 14. LSW's letter did not accuse Plaintiffs' counsel of any unethical attorney practices, and no reader would possibly share the willfully hyper-sensitive interpretation Plaintiffs adopt.

*First*, LSW's letter was sent **by a non-lawyer** to **an audience of non-lawyers**. *See* LSW's Letter at 1. Where neither the signatory nor the recipients of a letter are attorneys, it is reasonable to ascribe ordinary (non-legal) meanings to the words used therein (note, for example, the quotation marks around "plaintiffs," acknowledging that this basic term may be unfamiliar to many readers). The ordinary meaning of "solicitation" is: "the practice or act of soliciting" where "to solicit" is defined as "to make petition to" or "to approach with

- 8 -

a request or plea." Merriam-Webster Collegiate Dictionary 1187 (11th ed. 2006). That is *exactly what* Plaintiffs did: they approached LSW's policyholders with a request that the policyholders contact them (by phone, email, or otherwise) to provide information about their "experience with LSW and your EIUL policy." Plaintiffs' Letter at 1. And that is exactly what a reasonable reader would understand LSW's letter to mean.

*Second*, even if LSW's policyholders read the Company's letter through law-colored glasses, Plaintiffs' proffered interpretation is not even the primary legal definition. Black's Law Dictionary lists *five* definitions for "solicitation." *See* Black's Law Dictionary 1427 (8th ed. 2004). The *first* definition is the one that LSW used: "the act or instance of request or seeking to obtain something; a request or petition." *Id.* The negative connotation of "solicitation" about which Plaintiffs complain, is only addressed, indirectly, in the fourth entry, which defines a solicitation as "an attempt or effort to gain business" and notes "The Model Rules of Professional Conduct place certain prohibitions on lawyers' direct solicitation of potential clients." *Id.*

It is unclear exactly whom Plaintiffs believe would be misled by LSW's use of the word "solicitation." No non-lawyer would be familiar with Plaintiffs' proffered interpretation, and any lawyer who received LSW's letter would know, correctly, that LSW was using the ordinary meaning of "solicitation."

**D.  LSW Correctly Stated That Plaintiffs' Letter Was Sent Without Its Knowledge**

Next, Plaintiffs take issue with LSW's statement that the Plaintiffs' letter "was sent to [policyholders] without [LSW's] knowledge." Cross-App. at 15. Again, this statement is entirely accurate. Although Plaintiffs' counsel said last summer that at some undefined point in the future they would "talk to a prospective class member," LSW had no advance knowledge that Plaintiffs expected to send a "form letter" to policyholders, nor when, nor did LSW have any idea of the content or substance of any such letter. Plaintiffs never

provided any of that information to LSW in advance. Accordingly, the letter was in fact sent without LSW's knowledge.

### E. LSW Correctly Stated That No Court Has Addressed The Merits of Plaintiffs' Allegations

Plaintiffs next complain about LSW's statement that "[n]o Court has addressed the merits of [Plaintiffs'] allegations." Cross-App. at 15. Plaintiffs' letter included a several-page summary of their own version of their own theory of the case, with little indication that these claims were merely allegations. *See* Shapiro Decl. in Support of LSW App. Ex. A at 4.[4] LSW appropriately noted that these theories were just Plaintiffs' claims, and not findings that had ever been made by any court of law. LSW's Letter at 1. LSW also appropriately noted that Plaintiffs' letter did not even mention that LSW has defenses and a different view of the facts. *Id.* Plaintiffs' complaint about this straight-forward clarification abandons both ordinary and legal meaning to adopt a bizarre interpretation of the "merits" of their allegations uniquely their own. When laypeople refer to the "merits," of a lawsuit, they mean "the substance of a legal case apart from matters of jurisdiction, procedure, or form." Merriam-Webster Collegiate Dictionary 777 (11th ed. 2006). And, of course, all lawyers know that a decision denying a Rule 12 motion on the pleadings is not a judgment about the "merits" of a case or the factual allegations that underlie the complaint. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 585 (2007) ("Rule 8(a)(2) does not contemplate a court's passing on the merits of a litigant's claim at the pleading stage").

Instead, Plaintiffs appear to suggest that "addressed the merits of the allegation" means "addressed whether untested allegations satisfy the pleading standards of Rules 8(a) and 9(b)." If Plaintiffs want to tell LSW's policyholders that (some of) their untested allegations were sufficient to survive dismissal, they are free to do so. But LSW should not be forced to "correct" a non-existent misunderstanding.

---

[4] Tellingly, the letter attached as Exhibit A to each declaration Plaintiffs filed in Support of the Cross-Application omitted this portion of the letter.

- 10 -
OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)

### F. LSW Correctly Invited Its Customers to Contact it with Any Questions

Next, Plaintiffs make the novel claim that it was somehow misleading or coercive of LSW to invite its customers to contact customer service or their agents with any questions about their life insurance policy. Cross-App. at 16.

In light of their acknowledgement that "[p]arties are generally allowed to contact putative class members without the preapproval of the court" (*id.* at 13), it is not clear how Plaintiffs can argue that it was "wholly improper" for LSW to invite its policyholders "communicate with LSW." *Id.* at 15-16. Their suggestion that LSW was inviting policy owners to contact their insurance agents or Customer Service "so that LSW can obtain admissions or other statements that can be used against the proposed class or the individual policyholder" has no factual basis. *Id.* at 16.

Plaintiffs do not — and, of course, cannot — identify any basis for their suggestion that this was improper. Unlike Plaintiffs, LSW was not even asking policyholders to contact LSW's lawyers about the lawsuit. *Compare* Plaintiffs' Letter at 2. It invited them to call their *agents* or *customer service* with questions about their *policy*. LSW's Letter at 1. This was an eminently reasonable response to help repair any damage to the business relationship that was caused by receipt of Plaintiffs' response. In fact, LSW (presumably like any insurance company) encourages policyholders to talk to their agents or call the 1-800 customer line all the time.

The cases that Plaintiffs cite in support of their theory are plainly irrelevant. The defendant in *Sjoblom* interviewed potential class members under the false pretext of an employer-required training session and procured affidavits from them without disclosing that they might be members of a proposed class action. *See Sjoblom v. Charter Communications, LLC*, 3:07-CV-0451-BBC, 2007 WL 5314916, at *2, 4 (W.D. Wis. Dec. 26, 2007) *order clarified*, 2008 WL 4510581 (W.D. Wis. Jan. 25, 2008). The situation in *Kleiner* was similarly extreme: the defendant violated an existing protective order to solicit exclusion affidavits from almost 2800 class members through a telephone campaign that

1  took place just two days before the scheduled date of a class notice mailing. *See Kleiner v.*
2  *First Nat. Bank of Atlanta*, 751 F.2d 1193, 1198 (11th Cir. 1985).  Obviously, LSW has
3  done nothing of the sort.
4      Plaintiffs' Cross-Application is a transparent attempt to prevent LSW from
5  conducting its business, and engaging in its own fact-gathering in order to prepare its
6  defense by, among other things, speaking with any policyholders who were never misled by
7  anything or whose purchase processes demonstrate that Plaintiffs' experiences were
8  atypical of other class members. *See* Cross-App. at 19-20 (threatening to bar LSW from
9  using "statements that would . . . prejudice the class").  Plaintiffs should not be permitted to
10 use this shared problem as a smoke-screen to present an imbalanced, inaccurate, and one-
11 sided record on class certification or future briefs by using only the testimony of hand-
12 picked policyholders and preventing LSW from responding with statements from satisfied
13 policyholders, whose voices deserve to be heard.

### G.  Plaintiffs' Remaining Discovery Demands Are Unwarranted As No Corrective Notice Is Necessary

16     Finally, Plaintiffs motion seeks to compel LSW to provide the name and address of
17 each person who received LSW's letter, along with any statements, scripts, or other
18 instructions regarding how to respond to class member calls. Cross-App. at 1.  These
19 demands are based on the mistaken predicate that LSW's correspondence was misleading
20 and a corrective notice is necessary. *Id*.  But, for the reasons set forth above, this predicate
21 fails.
22     If Plaintiffs believe that they are independently entitled to this information, they can
23 seek it through ordinary discovery channels — not an emergency motion for the Court to
24 ask the questions.[5]  Indeed, Plaintiffs' Ninth Set of Requests for Production, served on
25 February 25, 2012, seeks essentially identical information. *See* Shapiro Declaration in

---

[5] It may be that the information that plaintiffs seek is protected by attorney-client privilege or the work product doctrine

Support of LSW's Opposition, Ex. A.  LSW's responses to these requests are due on March 26, and LSW will respond in kind.  Moreover, Plaintiffs provide no explanation as to why they are entitled to immediate satisfaction of their discovery requests when they have not yet replied to LSW's First Set of Interrogatories, seeking similar information about Plaintiffs' bulk mailing, which were served on February 16, 2012.  Shapiro Dec., Ex. B.

There has been no meet-and-confer process about Plaintiffs' Ninth Set of Requests and Plaintiffs' Cross-Application is not styled as a motion to compel in compliance with Local Rule 37-1 (or directed to Judge Block).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Cross-Application should be denied, and LSW's Application for an even-handed order based on this Court's *Toyota* Order should be entered instead.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Jonathan A. Shapiro*
Jonathan A. Shapiro (257199)
Andrea J. Robinson (*pro hac vice*)
Timothy J. Perla (*pro hac vice*)

Attorneys for Defendant Life Insurance Company of the Southwest

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, CA 94304. On March 7, 2012 I served the within document(s):

OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE

I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, CA addressed as set forth below.

I personally caused to be emailed the document(s) listed above to the person(s) at the address(es) set forth below.

[X] I electronically filed the document(s) listed above via the CM/ECF system.

Charles N. Freiberg
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com

Harvey R. Levine
LEVINE & MILLER
550 West C. Street, Suite 1810
San Diego, CA 92101-8596
lsmh@levinelaw.com

_/s/ Jonathan A. Shapiro_
Jonathan A. Shapiro

- 14 -

OPPOSITION TO PLAINTIFFS" EX PARTE APPLICATION FOR A CORRECTIVE NOTICE, 10-09198 JVS(RNBx)