1  JONATHAN A. SHAPIRO (257199)
   WILMER CUTLER PICKERING HALE AND DORR LLP
2  950 Page Mill Road
   Palo Alto, CA 94304
3  Tel:  (650) 858-6101
   Fax:  (650) 858-6100
4  jonathan.shapiro@wilmerhale.com

5  ANDREA J. ROBINSON (PRO HAC VICE)
   TIMOTHY J. PERLA (PRO HAC VICE)
6  WILMER CUTLER PICKERING HALE AND DORR LLP
   60 State Street
7  Boston, MA 02109
   Tel:  (617) 526-6000
8  Fax:  (617) 526-5000
   andrea.robinson@wilmerhale.com
9  timothy.perla@wilmerhale.com

10
   Attorneys for Defendant Life Insurance
11 Company of the Southwest

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>            Defendant. | CASE NO.: CV 10-9198 JVS (RNBx)<br><br>**LIFE INSURANCE COMPANY OF THE SOUTHWEST'S FIRST SET OF INTERROGATORIES**<br><br>Judge:    Hon. James V. Selna<br>Courtroom:  10C |

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS JOYCE WALKER, KIM HOWLETT, AND MURIEL SPOONER

Pursuant to Fed. R. Civ. P. 33, defendant Life Insurance Company of the Southwest propounds the following interrogatories to plaintiffs Joyce Walker, Kim Howlett, and Muriel Spooner to be answered in accordance with Fed. R. Civ. P. 33 and the Instructions and Definitions set forth below.

## DEFINITIONS

The following definitions apply to the interrogatories set forth below and to the instructions provided heretofore.

1. The terms "YOU," "YOUR," or "PLAINTIFFS" mean any or all of Joyce Walker, Kim Bruce Howlett and/or Muriel Spooner, and each of their respective agents, attorneys, accountants, trustees, and any other person who acted on or purported to act on any or all of their behalf. These terms expressly include, without limitation, all partners, employees, and agents of the Kasowitz, Benson, Torres & Friedman law firm.

2. The term "LSW" means Life Insurance Company of the Southwest, its employees and its parent corporation, National Life Insurance Company.

3. The terms "COMMUNICATION" or "COMMUNICATIONS" mean any contact, transmission, or exchange of information between two or more persons, orally, in writing, or electronically, including, without limitation, any conversation or discussion whether by chance or prearranged, formal or informal, face to face, by telephone, fax, electronic or other media.

4. "And" and "or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

5. The term "PUTATIVE CLASS MEMBER" means a member of the putative class defined at paragraph 64 of the Amended Complaint.

6. The term "LETTER" refers to a letter sent by Brian Brosnahan or any other attorney acting on behalf of PLAINTIFFS to PUTATIVE CLASS MEMBERS, other than PLAINTIFFS. An example of a LETTER is attached hereto as Exhibit A. "LETTER" expressly includes, but is not limited to, any copy of Exhibit A sent to a different addressee and/or sent on a different date.

## INSTRUCTIONS

The following instructions apply to the interrogatories below and should be considered as a part of each such interrogatory.

1. In the event that any Interrogatory is not answered in whole or in part on the basis of an assertion of the attorney-client privilege, the work-product doctrine, or any other claim of privilege or immunity, answer each such Interrogatory to the extent consistent with the privilege or immunity asserted, and provide information sufficient to permit the Court to make a determination whether a proper basis exists for the assertion of privilege or immunity.

2. These Interrogatories shall be deemed continuing and, to the extent that YOUR answers may be enlarged, amplified, diminished, or otherwise modified by information acquired subsequent to the production of YOUR initial answers, YOU are required promptly to produce supplemental answers reflecting such changes and/or additional information.

## INTERROGATORY NO. 1

Please state the name and street address of all persons to whom a LETTER was sent, and the date(s).

**INTERROGATORY NO. 2**

With respect to each person identified in response to Interrogatory No 1, please state if the content and substance of the LETTER (i.e., everything other than the recipient's name, address, etc.) was the same as that attached as Exhibit A; and if not, please state the content and substance of the LETTER.

**INTERROGATORY NO. 3**

Please state the name and street address of all PUTATIVE CLASS MEMBERS who have had any COMMUNICATIONS with PLAINTIFFS.

**INTERROGATORY NO. 4**

With respect to each person identified in response to Interrogatory No 3, please state the content and substance(s) of all such communications.

**INTERROGATORY NO. 5**

Please state the name and street address of all PUTATIVE CLASS MEMBERS who have retained Kasowitz, Benson, Torres & Friedman LLP, or any attorney affiliated therewith, to represent them in connection with the above-captioned lawsuit.

**INTERROGATORY NO. 6**

Please state the name and street address of all persons to whom YOU intend to send the LETTER or other COMMUNICATIONS that are substantively similar to the LETTER, including any COMMUNICATIONS with PUTATIVE CLASS MEMBERS that request that PUTATIVE CLASS MEMBERS contact YOU or that purport to summarize YOUR claims in this litigation.

| | | |
|---|---|---|
| 1 | DATED: February 16, 2012 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | By: /s/ Jonathan Shapiro |
| 4 | | Jonathan A. Shapiro |
| | | Andrea J. Robinson |
| 5 | | Timothy J. Perla |
| 6 | | Attorneys For Defendant |
| | | Life Insurance Company of the Southwest |

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of February, 2012, a copy of the foregoing was sent via the means set forth below, to the following persons:

Charles N. Freiberg (*by email and first-class mail*)
Brian P. Brosnahan (*by email and first-class mail*)
Jacob N. Foster (*by email and first-class mail*)
KASOWITZ, BENSON, TORRES & FREIDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com
bbrosnahan@kasowitz.com
jfoster@kasowitz.com

Harvey R. Levine (*by first-class mail*)
Craig A. Miller (*by first-class mail*)
Levine & Miller
550 West C Street, Suite 1810
San Diego, CA 92101

James Lux

# EXHIBIT A

# KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

A NEW YORK LIMITED LIABILITY PARTNERSHIP

101 CALIFORNIA STREET

SUITE 2300

SAN FRANCISCO, CALIFORNIA 94111

415-421-6140

FACSIMILE: 415-398-5030

BRIAN P. BROSNAHAN
PARTNER
EBROSNAHAN@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEWARK
NEW YORK

January 30, 2012



Re:  Your Equity-Indexed Life Insurance Policy from Life Insurance Company of the Southwest

Dear ▮:

    We are attorneys for plaintiffs Joyce Walker, Kim Howlett, and Muriel Spooner (collectively, "the Plaintiffs"), three individuals who bought equity-indexed life insurance ("EIUL") policies issued by Life Insurance Company of the Southwest ("LSW"). We are writing to you because you purchased (or had purchased for you) an EIUL policy from LSW sometime after September 24, 2006. The names LSW uses for these kinds of policies are "SecurePlus Provider" and "SecurePlus Paragon."

    The Plaintiffs have filed a class action lawsuit against LSW, in the United States District Court for the Central District of California, on behalf of you and other people who purchased LSW's EIUL policies after September 24, 2006. The suit alleges that LSW made misleading statements and failed to disclose material information during the sales process, including the failure to disclose the true costs of purchasing and maintaining the policies, the true guaranteed interest rates applicable to such policies, certain defects in the structure of the policies that make them risky investments, and other defects that subject the policy owner to substantial tax risks if the policy owner uses the policy to provide retirement income through policy loans.

    A summary of the claims against LSW is enclosed. You and others who have purchased LSW EIUL policies are members of the proposed class of plaintiffs and may be entitled to receive money damages or other relief based on your payment of premiums to LSW.

    We would like to know about your experience with LSW and your EIUL policy. The information you provide will help us develop further evidence and enable us to bring more of the key facts to the attention of the judge in this case. We received your name from LSW because, as a purchaser of an LSW EIUL policy after September 24, 2006, you are a member of the proposed class on whose behalf the Plaintiffs have brought this case. Please rest assured that this information has not been disclosed to anyone other than the Plaintiffs and their attorneys, and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

January 30, 2012
Page 2

LSW and their attorneys, and is subject to a confidentiality order entered by the court, which requires that information to be maintained in the strictest confidence.

We would appreciate it if you would call Lesa Dinglasan, a paralegal in our office, at (415) 655-4315, or you may complete the enclosed form and return it in the postage-paid envelope to us and Lesa will call you if you wish. You may also contact her by email at LDinglasan@kasowitz.com. We look forward to hearing from you.

Very truly yours,

Brian P. Brosnahan

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP

101 CALIFORNIA STREET • SUITE 2300 • SAN FRANCISCO, CALIFORNIA 94111

(415) 421-6140 • FACSIMILE: (415) 398-5030

**Response Form**

Name of person responding: _____

Name of policy purchaser if different from person responding:

_____

**Please check any or all of the boxes below and then provide the information requested:**

☐       Please call me to discuss information I have about LSW and my EIUL policy.

☐       The best number at which to reach me is (_____) _____-_____

☐       The best time to call is _____ AM  PM

☐       I wish to receive updates by e-mail.

        My e-mail address is _____

☐       I wish to receive updates by regular mail.  *The best address to send these to is:*

_____
Street Address                                                    Apt. #

_____
City                                                State      ZIP

## Summary of Plaintiffs' Claims Concerning LSW's Equity-Indexed Life Insurance Policies and the Status of the Case Against LSW

The three individuals who have filed the lawsuit against LSW are known as the "Plaintiffs." The Plaintiffs allege claims against LSW generally as follows.

Since at least September 24, 2006, LSW has sold equity-indexed life insurance policies ("EIUL"). The names LSW uses for these kinds of policies are "SecurePlus Provider" and "SecurePlus Paragon." LSW markets the policies based on certain cash accumulation features whereby the cash value of the policy can increase over time depending upon the performance of the S&P 500. LSW and its agents further tout the policies as providing "tax free" retirement income that can be obtained by using policy loans or withdrawals to tap into the accumulated value built up in the policies over time. Plaintiffs in the lawsuit allege that LSW made misleading statements and failed to disclose material information during the sales process. Plaintiffs' allegations include the following:

- **Policy Fees:** LSW's illustrations state that there is only "**One Policy Fee**," and the illustrations depict only one fee, which is labeled the "Monthly Administrative Charge." In fact, however, LSW imposes several other fees that substantially reduce policy values. These include a premium expense charge of 5% (for the SecurePlus Provider policy) or 6% (for the SecurePlus Paragon policy) of all premium payments made; monthly cost of insurance charges that vary in amount depending upon the policyholder; a monthly policy fee of $5.00; and a monthly percentage of accumulated value charge (for the SecurePlus Paragon policy) of .04% of the accumulated value of the policy. LSW's illustrations also show the Monthly Administrative Charge dropping to a reduced level after the policy has been in effect for 10 years. But in fact the Monthly Administrative Charge provided for in the policy does not decrease after 10 years or at any time during the life of the policy.

- **Guaranteed Interest Rate:** LSW's illustrations represent that the policyholder will receive a guaranteed minimum interest rate on the accumulated value in the policy regardless of the performance of the S&P 500. For the SecurePlus Provider policy, the guaranteed interest rate shown in the illustration is 2% per year, and for the SecurePlus Paragon policy, it is 2.5% per year. But in fact, LSW's interest rate guarantee is not provided each year, but only on an *average* annual basis calculated retrospectively at policy termination (or in five-year intervals in the case of the SecurePlus Provider). Plaintiffs allege that a reasonable policyholder would understand that if the policy guarantees, for example, 2.5%, then the policy will in fact provide a 2.5% gain even in a year where the S&P 500 does not increase, but this is not how LSW applies its guarantee. The following example may help to explain the difference: If the policy was in effect for four years, during which the S&P 500 had zero gains for the first three years and a 10% gain in the fourth year, the policyholder would not receive his or her guarantee of 2.5% for years 1, 2, and 3, plus 10% in year 4, for a total gain of 17.5%. Instead, the policyholder would receive only a 10% total gain (plus a little extra interest due to compounding) because the *average* annual

gain over the four-year lifetime of the policy would equal or exceed the 2.5% guaranteed interest rate.

- **Volatility in the S&P 500:** LSW's illustrations purport to show how the policy will perform if the S&P 500 produces the same average returns in the future as it has in the past 20 or more years. These illustrations assume that the S&P 500 gain is the same every year. However, as LSW knows, the S&P 500 is actually highly volatile (meaning that there is significant variation in the index from one year to the next). Because significant charges are being deducted from the policy each year, this volatility can have a major impact on the performance of the policy even if the average performance of the S&P 500 over time is exactly what LSW's illustration assumes. LSW does not disclose that this volatility, coupled with the deduction of policy charges, creates a defect in the policy that can cause the policy to lapse (meaning run out of money) even if the average S&P 500 performance is exactly what LSW's illustration assumes.

- **Tax Risk:** Although LSW and its agents tout the policies as providing "tax free" retirement income through the use of policy loans or withdrawals to tap into the accumulated value built up in the policies over time, the illustration does not disclose the substantial tax risks associated with the use of policy loans. A policy loan can only be used to avoid or reduce taxes if the policy is kept in force until the death of the insured. If there are any policy loans outstanding at the time the policy lapses, then the policyholder will owe income taxes on any accumulated earnings that the policyholder took out through policy loans, and this amount will be taxed at the higher rates applicable to ordinary income rather than capital gains. If a policyholder has taken a loan to tap into accumulated earnings in the policy, the only way to avoid this adverse tax consequence is to keep the policy in force until the death of the insured, and the policyholder is thus obligated to continue paying LSW's policy fees and charges until the death of the insured.

- We are also investigating several other practices relating to LSW's illustrations of the future policy values. These practices may significantly inflate the "Current Basis" values shown in the illustrations.