KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California  94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

LEVINE & MILLER
HARVEY R. LEVINE (SBN 61879)
CRAIG A. MILLER (SBN 116030)
LEVINE & MILLER
550 West C Street, Suite 1810
San Diego, CA 92101-8596
Telephone:  (619) 231-9449
Facsimile:  (619) 231-8638

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>                    Defendant. | <u>**CLASS ACTION**</u><br><br>CASE NO.:  CV 10-9198 JVS (RNBx)<br><br>Formerly Case No.:  3:10-cv -04852 JSW<br>from Northern District of California<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>District Judge James V. Selna<br><br>Date:  April 16, 2012<br>Time:  1:30 p.m.<br>Courtroom:  10C<br><br>Discovery Cutoff:  November 5, 2012<br>Pretrial Conference:  January 14, 2013<br>Trial Date:  January 22, 2013 |

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.      INTRODUCTION........................................................................................3

II.     THE PROPOSED AMENDMENTS .......................................................5

III.    STATEMENT OF FACTS.......................................................................10

      A.      Procedural Background..................................................................10

      B.      Discovery And The Meet and Confer Process.................................11

IV.     ARGUMENT ...........................................................................................15

      A.      Good Cause Exists To Provide Leave To Amend Under 16(b) Because Of Plaintiffs' Diligence And The Importance Of The Amendments To The Class.................................................................15

      B.      Amendment Is Appropriate Because LSW Will Not Be Prejudiced And There Is No Strong Showing Of Undue Delay, Bad Faith, Or Repeated Amendments .................................................19

V.      CONCLUSION ........................................................................................20

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ascon Properties, Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) .................................................................. 19

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) .................................................................... 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................. 19

*Feezor v. Sears, Roebuck & Co.*,
U.S. Dist. LEXIS 66144 (E.D. Cal. June 9, 2011) ................................... 19

*Foman v. Davis*,
371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962) .............................. 19

*Genentech, Inc. v. Abbott Laboratories*,
127 F.R.D. 529 (N.D. Cal. 1989) ............................................................. 19

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973) .................................................................. 15

*Monday v. Saxon Mortg. Servs.*,
2011 U.S. Dist. LEXIS 72785 (E.D. Cal. July 7, 2011) ...................... 15, 16

**RULES**

F. R. Civ. P. 15(a) .................................................................................. 15, 19

F. R. Civ. P. 15(a)(2) .................................................................................. 19

F. R. Civ. P. 16(b) ...................................................................................... 15

Local Rule 7-3 .............................................................................. 14, 15, 17

Local Rule 15.............................................................................................. 19

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 16, 2012, or as soon thereafter as the matter may be heard in the courtroom of the Honorable James V. Selna, Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Spooner ("Plaintiffs"), by and through their counsel of record, will and hereby do move this Court for leave to file a Second Amended Complaint in this action pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4).

This motion is based on this notice, the attached memorandum of points and authorities, the proposed order, the declaration of Brian P. Brosnahan, the pleadings, records and files in this case, and such other matters as may be considered by the Court.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 29, 2012.

DATED:  March 12, 2012          KASOWITZ BENSON TORRES & FRIEDMAN
                                LLP


                                By:   s/Brian P. Brosnahan
                                      Brian P. Brosnahan

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court should grant Plaintiffs' motion for leave to file a second amended complaint because the amendment presents valid and important claims on behalf of the proposed class, Plaintiffs were diligent in moving to amend their complaint after uncovering the additional claims, and Defendant Life Insurance Company of the Southwest ("LSW") would not be prejudiced by amendment.  The proposed amendments would not require modification of the current pre-trial and trial schedule.

The operative First Amended Complaint ("FAC") involves a putative class action lawsuit against LSW for acts of fraud and unfair competition in its marketing and sale of equity-indexed universal life insurance policies ("IUL").  Plaintiffs generally allege that LSW perpetrates a bait and switch scheme to foist on consumers policies with little value by providing them with deceptive illustrations that present projected investment gains that will purportedly provide the policyholder with significant tax-free income through policy loans, while concealing the true cost of the policy, the true guaranteed rate, the tax risks associated with policy loans, and material risks that the policies will not perform as illustrated.

Although this Court's May 21, 2011 Order for Jury Trial (Dkt. 61) required amendment within 60 days, or by July 11, 2011, LSW did not produce documents in response to discovery until long after that date and it was thus impossible for Plaintiffs to seek amendment based on newly discovered information contained in those documents within the period originally contemplated by this Court.  As this Court previously held in determining that good cause existed to extend the dates in the pretrial scheduling order, "Plaintiffs were diligent in serving their document production requests, diligent in attempting to resolve the disputes between the parties without resort to this Court's intervention, and diligent in presenting their

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Motions to Compel to the Magistrate Judge."  However, this Court recognized that "[d]espite this diligence, engaging in that process took several months to complete. . ."  In fact, Plaintiffs did not receive discovery confirming the amended claims until Thursday, February 23, 2012, and Plaintiffs received LSW's response to Plaintiffs' correspondence seeking LSW's justification for its practices on Friday, February 24, 2012.  Plaintiffs sent the proposed second amended complaint ("SAC") to LSW on Monday, February 27, 2012 and requested that LSW stipulate to amendment.  LSW refused.  Plaintiffs filed this motion on the earliest possible date thereafter.  *See* Declaration of Brian P. Brosnahan in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint ("Brosnahan Decl."), ¶¶17-20.

Plaintiffs seek to amend their complaint to conform to the evidence that they have gathered regarding two additional deceptive aspects of the policy illustrations that are used by LSW in the marketing and sale of its equity-indexed policies.  In particular, LSW's illustrations purport to project policy values based on the non-guaranteed rates and charges "currently" applied by LSW to its existing policyholder accounts.  LSW includes in these calculations a reduced Monthly Administrative Charge beginning in the eleventh policy year (for both the SecurePlus Provider and Paragon policies) and an annual "Account Value Enhancement" of 1.25% beginning in the tenth policy year (for SecurePlus Provider policies), which are represented as "current" rates and charges even though no policyholder currently receives (or has ever received) these benefits.  Inclusion of these items significantly inflates the policy values and makes the policies appear far more attractive than they actually are.  Since Plaintiffs were not in possession of the data needed to reverse engineer LSW's policy illustrations, it was not until the discovery process was well underway that they were able to confirm that the illustrated policy values were based on these so called "current" rates and charges and that this was true of all illustrations classwide.  Plaintiffs also

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

could not determine without discovery that the policy features were not in fact part of LSW's "current" rates and charges and never have been provided to any policyholder.  Nor could Plaintiffs determine that LSW had no justification for treating these features as part of its "current" rates and charges.

The Court should grant Plaintiffs leave to amend in order to allow the full scope of LSW's deception in its policy illustrations to be litigated on the merits. This is particularly true because this case is a putative class action, and rational class members might choose to opt-out and/or file separate class actions pursuing these claims if the claims are not going to be adjudicated in this case.  Litigating the claims also will not materially complicate or delay this action because the claims are straightforward and plainly common to the class.  Addition of these classwide claims will not require postponement of the class certification hearing, nor will it impede trial in this action as currently scheduled for January 22, 2013.

## II. <u>THE PROPOSED AMENDMENTS</u>

Plaintiffs' proposed amendments read as follows:

9.     The Illustrations also misrepresent LSW's current rates and charges and the associated "Current Basis A" and "Current Basis B" values (including the surrender values and the accumulated values) depicted in the Illustrations.  The Illustrations project non-guaranteed values on two different bases.  Both "Current Basis A" and "Current Basis B" purport to project non-guaranteed values assuming application of  LSW's rates and charges that are "current" at the time the Illustration is prepared.  Current Basis A reflects projected values under the assumption that the non-guaranteed assumed interest rate equals LSW's then current variable loan rate.  Current Basis B reflects projected values under the assumption that the non-guaranteed assumed interest rate equals the weighted average of LSW's then current index rates (including application of caps and participation rates) applicable to the various "equity-indexed strategies" that the policyholder may select and assuming the historical performance of the S&P 500.  Since the performance of the policy will depend on index earnings and not on the variable interest rate, Current Basis B values are presented as being more relevant to the prospective

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

policyholder than Current Basis A values, which are included just "as a point of comparison," according to the Illustration.

10.    For both the Provider and the Paragon policy, the policy values projected in the Illustrations under Current Basis A and Current Basis B include reductions in the Monthly Administrative Charge beginning after the tenth policy year.  In the case of the Provider policy, policy values projected in the Illustrations under Current Basis A and Current Basis B include a so-called "Account Value Enhancement" of 1.25% per year beginning in the tenth year the policy has been in force; LSW deems the reduced Monthly Administrative Charge and the "Account Value Enhancement" to be part of its "current" rates and charges for purposes of depicting "Current Basis A" and "Current Basis B" policy values.

11.    Even when not guaranteed, "current" rates and charges are meaningful to prospective policyholders because they are actually applied to the accounts of real policyholders.  Charges that are actually applied to policyholder accounts are the product of market forces and are thus more likely to be applied to the prospective policyholder's account than other rates and charges that have no marketplace reality.  This higher level of confidence that prospective policyholders place in truly "current" rates and charges, even if non-guaranteed, is why LSW uses projections of Current Basis A and Current Basis B policy values in its Illustrations.

12.    The Current Basis A and Current Basis B policy values depicted in LSW's Illustrations are false and misleading because certain of the rates and charges upon which they are based are not part of LSW's current rates and charges because they are not currently applied to any policyholder's account.  They are entirely fictional.  A reasonable policyholder would understand the concept of "current" rates and charges, and the terms "Current Basis A" and "Current Basis B," to include only those rates and charges that are currently applied to policyholder accounts.  But the Account Value Enhancement of 1.25% per year that is used to inflate the Current Basis A and Current Basis B policy values in LSW's Provider Illustrations is not currently applied to any policyholder's account because it begins in the tenth year that the policy has been in force, but the Provider has been sold only since 2005, so there is not a single Provider policyholder who currently receives (or has ever received) an Account Value Enhancement.  Similarly, Provider Illustrations depict a substantial

decrease in the Monthly Administrative Charge beginning after the tenth policy year, but no Provider policyholder currently receives (or has ever received) such a decrease in his or her Monthly Administrative Charge because no Provider policy has been in effect for ten years or more.  Paragon illustrations depict a decrease in the Monthly Administrative Charge to zero beginning after the tenth policy year, but no Paragon policyholder currently receives (or has ever received) such a decrease in his or her Monthly Administrative Charge because the Paragon policy was first sold in 2007, so there is not a single Paragon policyholder who currently receives (or has ever received) a reduction in his or her Monthly Administrative Charge.

13.     Not only do LSW's Account Value Enhancement and the reduction in the Monthly Administrative charge lack marketplace reality because no LSW policyholder has ever received those benefits, but, on information and belief, it is unlikely that LSW will continue selling the Provider or Paragon policies for a full ten years, so LSW will not need to provide an Account Value Enhancement or a reduced Monthly Administrative Charge in order to sell new policies.  Thus, the need to sell new policies will not impose market pressure on LSW to provide the Account Value Enhancement or the reduced Monthly Administrative Charge to new policyholders.  These facts are known to LSW but not to prospective policyholders.   LSW has already stopped selling the Paragon policy.  Prospective policyholders are also unaware that LSW's true "current" rates and charges do not include either the Account Value Enhancement or the reduced Monthly Administrative Charge and are unaware that the Current Basis A and Current Basis B policy values depicted in the Illustrations are significantly inflated, as discussed below.

14.     The addition of the Account Value Enhancement and the reduction in the Monthly Administrative Charge has a substantial impact on the Current Basis A and Current Basis B policy values depicted in the Illustration, and this is the reason that LSW includes them in the current basis values.  In Joyce Walker's case, her October 3, 2007 Illustration (attached hereto as Exhibit A) depicts Current Basis B values that will provide her with annual retirement income until she reaches age 99 and with $1,311,622 remaining in the policy at that time as its cash surrender value.  However, if the Account Value Enhancement and the reduction in the Monthly Administrative Charge were not included in the projections, the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Illustration would show the policy running out of money (i.e., lapsing) before Ms. Walker reaches the age of 71.  Current Basis A values shown in the Illustration are similarly inflated by the inclusion of the Account Value Enhancement and the reduction in the Monthly Administrative Charge.  The Current Basis A and Current Basis B policy values depicted in the Illustration are thus entirely fictional.

15.     In Kim Howlett's case, his July 27, 2007 Illustration (attached hereto as Exhibit C) depicts Current Basis B values that will provide him with annual retirement income until he reaches age 93 and with $159,495 remaining in the policy at that time as its cash surrender value.  However, if the reduction in the Monthly Administrative Charge were not included in the projections, the Illustration would show the policy running out of money (i.e., lapsing) before Mr. Howlett reaches the age of 80.  Current Basis A values shown in the Illustration are similarly inflated by the inclusion of the reduced Monthly Administrative Charge.  The Current Basis A and Current Basis B policy values depicted in the Illustration are thus entirely fictional.

16.     In Muriel Spooner's case, her July 27, 2007 Illustration (attached hereto as Exhibit E) depicts Current Basis B values that will provide her with annual retirement income until she reaches age 91 and with $114,165 remaining in the policy at that time as its cash surrender value.  However, if the reduction in the Monthly Administrative Charge were not included in the projections, the Illustration would show the policy running out of money (i.e., lapsing) before Ms. Spooner reaches the age of 80.  Current Basis A values shown in the Illustration are similarly inflated by the inclusion of the reduced Monthly Administrative Charge.  The Current Basis A and Current Basis B policy values depicted in the Illustration are thus entirely fictional.

17.     LSW is aware that the inclusion of the Account Value Enhancement and the reduction in the Monthly Administrative Charge in the projected policy values causes the projected non-guaranteed values of the Provider and Paragon policies to appear far more attractive to prospective policyholders than the projected non-guaranteed values would appear if only LSW's actual current rates and charges were applied, and further that the values are not realistic.  Peter Weinbaum, an "Advanced Sales Consultant" for LSW who works with policy illustrations, commented in an email to his

colleagues, including Matthew DeSantos, Vice-President of Marketing and Business Development for LSW,

> "It seems to me that any illustration of non-guaranteed elements of a life insurance contract is a hallucination. That's why VUL [variable life insurance] was so hot 7 years ago, and why IUL [indexed universal life] is so hot today. People want to believe the illustrated values. It seems to me that it's just a matter of strong disclosures. If we work too hard to protect customers from stumbling and falling, our competitors will be only too happy to give them the opportunity."

*See* LSW-E00037050, attached hereto as Exhibit G.

18. It is apparent that LSW knows that its projections of non-guaranteed values are deceptive since the projections include as "current" items that have no marketplace reality and are included simply to inflate policy values, because when LSW submitted exemplar Provider Illustrations to the California Department of Insurance ("CID"), LSW omitted all references to the Account Value Enhancement and the reduction in the Monthly Administrative Charge. Compare Exhibit H (2005 Provider Illustration submitted to CID) at LSW-00000162 & LSW-00000169 and Exhibit I (2009 Provider Illustration submitted to CID) at LSW-00018084 & LSW-00018097 with Exhibit A (Joyce Schmidtbauer's October 3, 2007 Illustration) at LSW-00002336 & LSW-00002349. When LSW submitted an exemplar Paragon Illustration to the CID, LSW omitted all references to the reduction in the Monthly Administrative Charge. Compare Exhibit J (2006 Paragon Illustration submitted to CID) at LSW-00000480 with Exhibit C (Kim Howlett's July 27, 2007 Illustration) at LSW-00001230. Although these items were omitted from the exemplars of Illustrations provided to the California Department of Insurance, Plaintiffs are informed and believe that they are included in all Provider and Paragon illustrations, respectively, that are presented to prospective LSW policyholders.

*See* Brosnahan Decl., Ex. A at ¶¶9-18. Similar and related allegations also have been added to the complaint elsewhere, as reflected in the attached blackline comparison filed concurrently with this motion.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## III.   STATEMENT OF FACTS

### A.   Procedural Background

Plaintiffs filed this putative class action in San Francisco Superior Court on September 24, 2010, alleging that LSW engaged in fraud and unfair competition in its marketing and sale of their indexed universal life insurance policies.   LSW removed, and the case was transferred to this Court.  With respect to LSW's Motion to Dismiss the Complaint, the Court issued an Order on May 5, 2011 (Dkt. 59) granting in part and denying in part the motion, while providing Plaintiffs with leave to amend.  The operative FAC, filed on June 6, 2011, corrected the deficiencies identified by the Court.  On October 17, 2011, this Court denied in part and granted in part LSW's motion for judgment on the pleadings, sustaining all but one of Plaintiffs' claims and theories with respect to LSW's fraudulent and unfair scheme.[1] *See* Dkt. 112.

On May 11, 2011, the Court issued an Order for Jury Trial (Dkt. 61) that required amendment within 60 days, or by July 11, 2011.  Plaintiffs had served their first set of document requests on April 7, 2011, practically as soon as they were permitted under the Federal Rules.  On May 16, 2011, LSW served its responses, in which it objected to a substantial number of Plaintiffs' requests. Just four days later, on May 20, 2011, Plaintiffs sent LSW the first of six meet and confer letters containing detailed explanations of Plaintiffs' positions and the relevance of the requested documents, and offering to narrow certain document requests so that LSW would promptly begin producing documents.  But LSW refused to withdraw numerous objections, and those few documents it agreed to produce were not forthcoming, forcing Plaintiffs to move to compel.  At two separate hearings on Plaintiffs' motion to compel – on August 30 and

---

[1] In addition to adding the new claims discussed herein, the SAC also excises references to the claim for which the Court granted judgment on the pleadings.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

September 14, 2011 – Magistrate Judge Block resolved the parties' substantive disputes and also established a schedule for LSW's production of documents.

Since LSW effectively delayed producing documents until after adjudication of Plaintiffs' motion to compel (as of September 7, LSW had produced only 4,697 pages), Plaintiffs moved for an extension of the pretrial scheduling deadlines, which LSW opposed.  On November 9, 2011, this Court granted Plaintiffs' motion:

> Plaintiffs were diligent in serving their document production requests, diligent in attempting to resolve the disputes between the parties without resort to this Court's intervention, and diligent in presenting their Motions to Compel to the Magistrate Judge. (See generally Foster Decl.) Despite this diligence, engaging in that process took several months to complete, and now that production has begun in earnest, both sides appear to agree that several thousand documents have been and/or will be produced by Defendant and must be reviewed by Plaintiffs."

*See* Amended Pretrial Scheduling Order and Order Granting Plaintiffs' Motion to Modify the Pretrial Scheduling Order (Dkt. 117) at 1-2.

## B.    Discovery And The Meet and Confer Process

Following the orders by Magistrate Judge Block requiring that LSW produce numerous documents, LSW began producing documents in earnest in October 2011 and has since produced over 100,000 pages of documents.  Brosnahan Decl., ¶10.  Plaintiffs worked diligently to review these documents and, in doing so, Plaintiffs noted that no documents explained how a reduced Monthly Administrative Chage or an annual Account Value Enhancement could be considered "current" or how their inclusion in the "Current Basis" values could be justified.

As Plaintiffs were reviewing these documents, they were also working with their experts to try to understand the basis for LSW's Current Basis A and Current Basis B value calculations.  This process was slowed because LSW had not (and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

still has not) produced the data input files that underlie the calculations in its policy illustrations, including particularly its cost of insurance tables.

During the August 30, 2011 discovery hearing, LSW agreed to produce documents explaining the derivation of accumulated and cash surrender values with respect to the individual Plaintiffs' policies, as well as "all data input files from which values used in the calculations of [illustrations] were drawn, e.g., cost of insurance tables." Brosnahan Decl., Ex. C at 81:11-82:18. The Court ordered LSW to provide this information within two weeks. *Id.* at 82:23. LSW, however, failed to include the data input files that the Court ordered LSW to provide Plaintiffs, including but not limited to cost of insurance tables, mortality tables, and the formula for calculating the accumulated values and cash surrender values. LSW's refusal to provide these files is the subject of a presently pending motion to compel. *Id.* at ¶8. LSW's delays in producing this information required Plaintiffs' experts to develop a work-around to permit modeling of LSW's illustrations, including Current Basis A and Current Basis B policy values, to a reasonable approximation, which they did in January, 2012. *Id.* ¶9.

Based on their review of the documents and their work with their experts, Plaintiffs began to suspect that there was no basis for LSW to represent the reduced Monthly Administrative Charge and annual Account Value Enhancement as part of LSW's "current" rates and charges other than a desire to inflate the illustrated policy values. In January, 2012, Plaintiffs' experts performed an analysis of the effect of the reduced Monthly Administrative Charge and an annual "Account Value Enhancement" on the Current Basis A and Current Basis B values, which demonstrated that these practices have a very substantial impact on the policy values portrayed in the illustrations. *Id.* at ¶11. Examples of these calculations are set forth in paragraphs 14-16 of the SAC.

On January 24, 2012, Plaintiffs wrote to LSW requesting that LSW confirm whether "the Current Basis A and Current Basis B values depicted in the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

illustrations include, and are significantly inflated by, charge levels and account crediting methodologies that are not "current" in any normal sense of that word." *Id*. at ¶12 & Ex. D.   Plaintiffs also requested that, if true, "these practices be discontinued immediately unless LSW provides a legitimate explanation and justification for these practices within 20 days from the date of this letter." *Id.*

LSW did not respond to Plaintiffs' letter.  On February 16, Plaintiffs wrote to LSW again requesting a response.  *Id.* at ¶14 & Ex. F.  On February 24, counsel for LSW responded to Plaintiffs' letter by stating that "the 'features' you identified in your letter concern non-guaranteed product events anticipated for policyholders who have maintained their policies for ten years."  *Id.* at Ex. ¶H.  LSW did not agree to discontinue the practices in question, nor did it offer any justification.

On January 24, 2012, Plaintiffs served their Second Set of Requests for Admission which, *inter alia*, requested that LSW admit that the Current Basis A and Current Basis B values in illustrations provided to the named plaintiffs and all class members were calculated based on a reduced Monthly Administrative Charge beginning in the eleventh policy year (for both the SecurePlus Provider and Paragon policies) and an annual "Account Value Enhancement" beginning in the tenth policy year (for SecurePlus Provider policies).  *Id.* at Ex. E.  On February 23, 2012, LSW responded by admitting that, in regards to the named plaintiffs' illustrations, the Current Basis A and Current Basis B values were calculated using "the Monthly Administrative Charge and all applicable rates and charges deemed current as of the date of, and as set forth in, the particular, individualized illustration" and that (for the Provider policy) they were calculated "using all applicable rates and charges (including, but not limited to, a 1.25% Account Value Enhancement) as of the date of, and as set forth in, the particular, individualized illustration."  *Id.* at Ex. G.  (LSW's Responses, *see e.g.*, RFA Nos. 88-89).

Moreover, LSW admitted that this practice applied to the entire class by stating that the current values "set forth in illustrations generated by ICS Solutions

software for SecurePlus Paragon and SecurePlus Provider Indexed Universal Life policies are calculated using the Monthly Administrative Charge and all applicable rates and charges deemed current as of the date of, and set forth in, a particular, individualized illustration." *Id*. (RFA Nos. 80-81). LSW's response refused to admit or deny that all class member illustrations included the Account Value Enhancement in the policy values, indicating that LSW could not identify any class member illustrations that did not include the Account Value Enhancement. *Id*. (RFA Nos. 91-92).

LSW responded to Plaintiffs' requests for admission that "No PROVIDER or PARAGON policyholder is currently paying a REDUCED MONTHLY ADMINISTRATIVE CHARGE" and that "no PROVIDER or PARAGON policyholder has ever paid a REDUCED MONTHLY ADMINISTRATIVE CHARGE" by admitting that "because no SecurePlus Paragon or SecurePlus Provider policy has yet reached its tenth policy anniversary, any events illustrated to occur beginning on such a policy's tenth policy anniversary have not yet occurred." *Id*. (RFA Nos. 78-79). LSW responded to Plaintiffs' requests for admission that it is "not currently crediting" Account Value Enhancements to any policyholders in the class and that "no policyholder" has ever received an Account Value Enhancement by admitting that because "no policy has yet reached its tenth anniversary, LSW has not yet applied a 1.25% Account Value Enhancement to the Accumulated Values of any in-force Provider policies." *Id*. (RFA Nos. 82-83).

Upon receipt of LSW's letter and discovery responses on February 23 and 24 confirming its practices, and the uniform applicability of its practices to the class as a whole, Plaintiffs prepared and transmitted the proposed SAC to LSW on the following Monday, February 27, and requested that LSW stipulate to its filing. *Id*. at Ex. J. Pursuant to Central District of California Local Rules 7-3, the parties had a telephonic conference on February 29. *Id*. at Ex. K. In the conference, LSW refused to stipulate to the filing of the SAC and indicated that it would oppose

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Plaintiffs' motion.  *Id.*  After waiting the ten days required by Local Rule 7-3, Plaintiffs filed this motion at the earliest permissible date, although Plaintiffs agreed to delay the hearing date one week to accommodate the schedule of defense counsel, Mr. Shapiro.  *Id*., at ¶19.

## IV.   <u>ARGUMENT</u>

The Court should grant Plaintiffs' motion for leave to file the SAC because the purpose of pleadings is to facilitate a proper decision on the merits rather than erecting formal and burdensome impediments in the litigation process.  *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  Unless undue prejudice to the opposing party will result, trial courts should ordinarily permit a party to amend its complaint.  *Id.*

Where, as here, a plaintiff moves for leave to amend after the time for amending has expired under the court's pretrial scheduling orders, amendment should be granted where (1) there is "good cause" for seeking the amendment under Federal Rule of Civil Procedure 16(b); and (2) the defendant does not make a showing of prejudice, or strong showing of undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, or futility under Federal Rule of Civil Procedure 15(a).  *Monday v. Saxon Mortg. Servs.*, 2011 U.S. Dist. LEXIS 72785, at *1-2 (E.D. Cal. July 7, 2011).

### A.   Good Cause Exists To Provide Leave To Amend Under 16(b) Because Of Plaintiffs' Diligence And The Importance Of The Amendments To The Class

Good cause exists under Federal Rule of Civil Procedure 16(b) where the movant has exercised diligence in its attempt to comply with the deadlines set forth in the court's scheduling order.  *Monday*, 2011 U.S. Dist. LEXIS 72785, at *2. Diligence and, thus, good cause, exist where the amended complaint is based on materials or information produced during the discovery process.  *Id*. ("Because

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    plaintiff moves to amend her complaint based on facts uncovered during discovery,

2    the court finds that plaintiff has good cause to seek leave to amend.").

3        As this Court already has found, Plaintiffs were diligent in serving

4    discovery, but "[d]espite this diligence," did not obtain documents until after the

5    time for amending the complaint had passed.  It took many months for Plaintiffs to

6    analyze the extremely complex policy illustrations, identify these additional

7    deceptive practices, and work with experts to identify and quantify their impact.

8    *See* Brosnahan Decl., ¶4.  As soon as Plaintiffs believed that they had a basis for

9    amending its complaint, they served discovery and sent meet and confer

10   correspondence to LSW to confirm their suspicions.

11       In particular, Plaintiffs' proposed SAC is based on information gleaned from

12   discovery over the last few months.  First, LSW did not confirm until February 23

13   and 24, 2012 that its illustrations include in their calculation of Current Basis A

14   and Current Basis B policy values an annual "Account Value Enhancement" of

15   1.25% beginning in the tenth policy year as well as a reduced Monthly

16   Administrative Charge beginning in the eleventh policy year.  Brosnahan Decl., at

17   ¶¶4, 10-16.

18       Second, Plaintiffs were unable to confirm that these claims were shared by

19   all class members until LSW responded to meet and confer correspondence and

20   discovery on February 23 and 24.  *Id*. at ¶¶15, 17.  Such correspondence and

21   discovery responses confirmed that these practices are applied uniformly to the

22   entire class and the claims are shared by the class.

23       Third, Plaintiffs and their experts were initially unable to assess the

24   importance and materiality of these practices because LSW did not (and still has

25   not) produced cost of insurance tables that would allow efficient reverse

26   engineering of the policy values in the illustrations.  *Id*. at ¶¶4, 7-9.  As a result,

27   Plaintiffs' work with experts on this issue has been difficult and time consuming.

28   *Id*.  In January, 2012, Plaintiffs' experts effected a work-around that demonstrated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

that inclusion of these items significantly inflates the Current Basis A and Current Basis B policy values and makes the policy appear far more attractive on a current basis than it actually is.  *Id*. at ¶11. Examples of these calculations are reflected in the proposed SAC, at paragraph nos. 14-16.

Fourth, it took Plaintiffs months to review over one hundred thousand pages of documents produced by LSW beginning in late October 2012 following Plaintiffs' motion to compel; that review revealed no documents showing how the Account Value Enhancement and the reduced Monthly Administrative Charge could be considered "current" and how these practices could be justified.  It was not until February 23 and 24, 2012, that LSW responded with its belief that the features were current and their inclusion in the calculation was justified because they are "anticipated," though not guaranteed by LSW, and that the only sense in which they are "current" is that LSW "deems" them to be current.  *Id*., Exs. G & H.  This confirmed that in fact these features are not "current" in any commonly understood meaning of that term, and that LSW has no justification for its practice of substantially inflating its Current Basis A and Current Basis B policy values by the inclusion of rates and charges that are not currently provided to anyone and never have been provided to anyone.

After receiving LSW's confirmation on Friday, February 24, that the policy values are inflated by the reduced Monthly Administrative Charge and Account Value Enhancement, and that LSW could offer no justification for this practice, Plaintiffs provided LSW with a proposed amendment on the following Monday, February 27, and requested that LSW stipulate to the proposed filing.  *See* Brosnahan Decl. ¶¶17-19.  A telephonic meet-and-confer call pursuant to L.R. 7.3 occurred on February 29; LSW refused to stipulate.  After allowing the required ten day period to run after the meet and confer session pursuant to L.R. 7.3, Plaintiffs filed this motion in time to obtain the first available hearing date, April 9,

but agreed to request April 16 based on the unavailability of defense counsel on April 9.  Brosnahan Decl. at Ex. L.

Moreover, good cause exists to allow amendment here because these are valid and important class claims, and it is more efficient for them to be adjudicated in this proceeding.  Plaintiffs represent a class of approximately 37,000 policyholders.  All class members have an interest in having these claims adjudicated, and a failure to adjudicate them in this proceeding risks additional litigation by class members who might choose to opt-out and/or pursue the claims in a separate class action litigation.

The interest of the class is particularly strong given the substantial impact that these deceptive practices have on the Current Basis B values depicted in LSW's illustrations (which are presented as the most likely and important set of values).  For example, named plaintiff Joyce Walker's Illustration depicts Current Basis B values that will provide her with annual retirement income until she reaches age 99 and with $1,311,622 remaining in the policy at that time as its cash surrender value.  However, if the Account Value Enhancement and the reduction in the Monthly Administrative Charge were not included in the projections, the Illustration would show the policy running out of money (i.e., lapsing) before Ms. Walker reaches the age of 71.  The impact of these practices on the Illustrations provided to other class members is similarly dramatic for other class members.  These same deceptive Illustrations are at the core of other claims being asserted in this case.

In sum, Plaintiffs have been diligent in preparing and seeking leave to file the proposed SAC, which contains meritorious claims that should be adjudicated by the Court as part of this class action.  On these facts the Court should find good cause to provide leave to amend.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## B.    Amendment Is Appropriate Because LSW Will Not Be Prejudiced And There Is No Strong Showing Of Undue Delay, Bad Faith, Or Repeated Amendments

Federal Rule of Civil Procedure 15(a)(2) directs the Court to freely grant leave to amend when justice so requires.  The rule reflects a "policy of favoring amendments", *see Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989), and is "to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  This policy in favor of amendment applies regardless of whether the amendment seeks to add claims or parties.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

"In exercising its discretion regarding granting or denying leave to amend, a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities."  *Feezor v. Sears, Roebuck & Co.*, U.S. Dist. LEXIS 66144, at *2-3 (E.D. Cal. June 9, 2011).  Under Rule 15's liberal policy favoring amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted.  *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530-531 (N.D. Cal. 1989).

The Supreme Court has held that leave to amend should be freely given in the absence of undue delay, bad faith or dilatory motives of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).  The most important factor is prejudice.  *Eminence Capital*, 316 F.3d at 1052.  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  *Id*.

There is no prejudice here.  Plaintiffs do not seek to redepose LSW witnesses who already have been deposed in this action for the purpose of

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

inquiring about these additional claims.  Nor do Plaintiffs seek to modify the existing schedule of pre-trial or trial dates.  Since the claims are common to all of LSW's illustrations, the amendments will not delay class certification proceedings. Nor are the claims or LSW's defenses complex because LSW has stated that it believes its practices are legitimate simply because they are "anticipated." Although Plaintiffs notified LSW about these potential claims prior to Ms. Walker's deposition, counsel for LSW chose to ask no questions on the subject.  Brosnahan Decl., ¶20.  LSW, of course, also would have the right to file a motion to dismiss the additional claims.

Nor has there been undue delay, bad faith or dilatory motive by Plaintiffs. Discovery in this case is still active, with a discovery cut-off that is still many months away and a trial date that is almost a year away.  Plaintiffs moved diligently to investigate these claims, acted diligently in placing LSW on notice of the claims, and acted diligently in moving to amend the complaint.

## V.    **CONCLUSION**

Plaintiffs' proposed SAC is timely and is consistent with the policy of trying cases on the merits.  Good cause exists for the request herein, and Plaintiffs respectfully request that the Court provide leave to allow Plaintiffs to file their SAC.


DATED:  March 12, 2012          KASOWITZ BENSON TORRES & FRIEDMAN LLP



By:   s/Brian P. Brosnahan
        Brian P. Brosnahan