KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

LEVINE & MILLER
HARVEY R. LEVINE (SBN 61879)
CRAIG A. MILLER (SBN 116030)
550 West C Street, Suite 1810
San Diego, CA 92101-8596
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>Defendant. | **CLASS ACTION**<br><br>CASE NO.: CV 10-9198 JVS (RNBx)<br><br>Formerly Case No.: 3:10-cv -04852 JSW from Northern District of California<br><br>**DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date: April 16, 2012<br>Time: 1:30 p.m.<br>Courtroom: 10C |

DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT
Case No. CV 10-9198 JVS (RNBx)

1. I am an attorney authorized to practice in the courts of California and in the United States District Court for the Central District of California. I am a partner of Kasowitz, Benson, Torres & Friedman, LLP, counsel for Plaintiffs in these proceedings. I have personal knowledge of the facts stated herein and if required could and would testify under oath thereto.

2. Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' proposed Second Amended Complaint.

3. Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' proposed Second Amended Complaint, with blackline comparison to the operative First Amended Complaint.

4. Plaintiffs' proposed SAC is based on information gleaned from discovery over the last few months. First, LSW did not confirm until February 23 and 24 that its illustrations include in its calculation of Current Basis A and Current Basis B policy values an annual "Account Value Enhancement" of 1.25% beginning in the tenth policy year as well as a reduced Monthly Administrative Charge beginning in the eleventh policy year. Second, Plaintiffs were unable to confirm that these claims were shared by all class members until LSW responded to meet and confer correspondence and discovery on February 23 and 24. Third, Plaintiffs' work with experts on this issue has been difficult and time consuming, and it has taken many months for Plaintiffs to analyze LSW's extremely complex policy illustrations, identify these additional deceptive practices and work with experts to identify and quantify their impact. This process has been slowed because LSW did not (and still has not) produced cost of insurance tables that would allow efficient reverse engineering of the policy values in the illustrations. Fourth, it took Plaintiffs months to review over one hundred thousand pages of documents produced by LSW; that search revealed no documents showing how the Account Value Enhancement and the reduced Monthly Administrative Charge could be considered "current" or how these practices could be justified.

5. Plaintiffs served their first set of document requests on April 7, 2011, practically as soon as they were permitted under the Federal Rules. On May 16, 2011, LSW served its responses, in which it objected to a substantial number of Plaintiffs' requests. Just four days later, on May 20, 2011, Plaintiffs sent LSW the first of six meet and confer letters containing detailed explanations of Plaintiffs' positions and the relevance of the requested documents, and offering to narrow certain document requests so that LSW would promptly begin producing documents. But LSW refused to withdraw numerous objections, and those few documents it agreed to produce were not forthcoming, forcing Plaintiffs to move to compel. At two separate hearings on Plaintiffs' motion to compel – on August 30 and September 14, 2011 – Magistrate Judge Block resolved the parties' substantive disputes and also established a schedule for LSW's production of documents.

6. Since LSW effectively delayed producing documents until after adjudication of Plaintiffs' motion to compel (as of September 7, LSW had produced only 4,697 pages), Plaintiffs moved for an extension of the pretrial scheduling deadlines, which LSW opposed. On November 9, 2011, this Court granted Plaintiffs' motion.

7. During the August 30, 2011 discovery hearing, LSW agreed to produce certain documents explaining the derivation of accumulated and cash surrender values with respect to the individual Plaintiffs' policies, as well as "all data input files from which values used in the calculations of [illustrations] were drawn, e.g., cost of insurance tables." The Court ordered LSW to provide this information within two weeks. Attached hereto as Exhibit C is a true and correct copy of excerpts of the transcript of the August 30, 2011 hearing.

8. LSW, however, failed to include the data input files that the Court ordered LSW to provide Plaintiffs, including but not limited to cost of insurance tables, mortality tables, and the formula for calculating the accumulated values and cash surrender values. As a result, expert analysis of the policy values displayed in

DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
Case No. CV 10-9198 JVS (RNBx)
2

LSW's illustrations has been time consuming and difficult.  LSW's continued refusal to provide these files is the subject of a presently pending motion to compel.

9. LSW's delays in producing this information required Plaintiffs' experts to develop a work-around to permit modeling LSW's illustrations, including Current Basis A and Current Basis B policy values, to a reasonable approximation, which they did in January, 2012.

10. While Plaintiffs and their experts were trying to understand the basis for LSW's Current Basis A and Current Basis B value calculations, Plaintiffs were also reviewing the documents that LSW had produced following the motion to compel.  Between October, 2011 and the present, LSW produced over one hundred thousand pages of documents.  In reviewing these documents, Plaintiffs noticed that no documents explained how a reduced Monthly Administrative Charge and an annual "Account Value Enhancement" could be considered "current" or how their inclusion in the "Current Basis" values could be justified.

11. Based on their review of the documents and their work with the experts, Plaintiffs began to suspect that there was no basis for LSW's considering the reduced Monthly Administrative Charge and annual Account Value Enhancement as part of LSW's current rates and charges other than a desire to inflate illustrated policy values.  In January, 2012, Plaintiffs' experts performed an analysis of the effect of the reduced Monthly Administrative Charge and an annual "Account Value Enhancement" on the Current Basis A and Current Basis B values, which demonstrated that these practices have a very substantial impact in inflating the Current Basis A and Current Basis B values depicted in the illustrations.  Examples of these calculations are set forth in paragraphs 14-16 of the proposed SAC.

12. On January 24, 2012, Plaintiffs wrote to LSW requesting that LSW confirm whether "the Current Basis A and Current Basis B values depicted in the

DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
Case No. CV 10-9198 JVS (RNBx)

illustrations include, and are significantly inflated by, charge levels and account crediting methodologies that are not "current" in any normal sense of that word." Plaintiffs also requested that, if true, "these practices be discontinued immediately unless LSW provides a legitimate explanation and justification for these practices within 20 days from the date of this letter." Attached hereto as Exhibit D is a true and correct copy of a letter from me to Jonathan Shapiro, dated January 24, 2012.

13. Also on January 24, 2012, Plaintiffs served their Second Set of Requests for Admission which, *inter alia*, requested that LSW admit that the Current Basis A and Current Basis B values in illustrations provided to the named plaintiffs and all class members were calculated based on a reduced Monthly Administrative Charge beginning in the eleventh policy year (for both the SecurePlus Provider and Paragon policies) and an annual "Account Value Enhancement" beginning in the tenth policy year (for SecurePlus Provider policies). Attached hereto as Exhibit E is a true and correct copy of Plaintiffs' Second Set of Requests for Admission, dated January 24, 2012.

14. LSW did not respond to Plaintiffs' letter. On February 16, Plaintiffs wrote to LSW again requesting a response. Attached hereto as Exhibit F is a true and correct copy of a letter from me to Jonathan Shapiro, dated February 16, 2012.

15. On February 23, 2012, LSW responded to Plaintiffs' requests for admission by admitting that, in regards to the named plaintiffs' illustrations, the Current Basis A and Current Basis B values were calculated using "the Monthly Administrative Charge and all applicable rates and charges deemed current as of the date of, and as set forth in, the particular, individualized illustration" and that (for the Provider policy) they were calculated "using all applicable rates and charges (including, but not limited to, a 1.25% Account Value Enhancement) as of the date of, and as set forth in, the particular, individualized illustration." Moreover, LSW admitted that this practice applied to the entire class by stating that the current values "set forth in illustrations generated by ICS Solutions

DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
Case No. CV 10-9198 JVS (RNBx)
4

software for SecurePlus Paragon and SecurePlus Provider Indexed Universal Life policies are calculated using the Monthly Administrative Charge and all applicable rates and charges deemed current as of the date of, and set forth in, a particular, individualized illustration." LSW's response refused to admit or deny that all class member Provider illustrations included the Account Value Enhancement in the policy values, indicating that LSW could not identify any class member illustrations that did not include the Account Value Enhancement. LSW responded to Plaintiffs' request for admission that it is "not currently crediting" Account Value Enhancements to any policyholders in the class and that "no policyholder" has ever received an Account Value Enhancement by admitting that because "no policy has yet reached its tenth anniversary, LSW has not yet applied a 1.25% Account Value Enhancement to the Accumulated Values of any in-force Provider policies"; LSW made a similar admission concerning the reduced Monthly Administrative Charge. Attached hereto as Exhibit G is a true and correct copy of LSW's Objections and Responses to Plaintiffs' Second Set of Requests for Admission, dated February 23, 2012.

16. On February 24, counsel for LSW responded to Plaintiffs' letter by stating that "the 'features' you identified in your letter concern non-guaranteed product events anticipated for policyholders who have maintained their policies for ten years." LSW did not agree to discontinue the practices in question, nor did it offer any justification. Attached hereto as Exhibit H is a true and correct copy of a letter from Mr. Shapiro to me, dated February 24, 2012. I note that Mr. Shapiro's February 24, 2012 letter states that "On February 2, 2012, you could not have been more explicit in your assurance that the Walker plaintiffs have no interest in amending their First Amended Complaint (because, as you put it, you were more than happy with the case as it now exists)." This is not an accurate recitation of my discussion with Mr. Shapiro on February 2, 2012. That conversation was a meet-and-confer discussion concerning certain discovery that is presently the

subject of a motion to compel. In that conversation, Mr. Shapiro stated that part of the reason his client was concerned with permitting the discovery Plaintiffs had requested was that LSW was worried that Plaintiffs were simply trying to probe all aspects of LSW's business in order to discover new claims because their existing claims lacked merit. I told Mr. Shapiro that this was not the purpose of the discovery, that Plaintiffs were very happy with their claims, and that LSW should be very concerned about the claims. There was no discussion concerning whether Plaintiffs would seek to amend their First Amended Complaint. In particular, there was no discussion of the claims that Plaintiffs now seek to add through the proposed Second Amended Complaint. I gave no "assurance" to Mr. Shapiro that Plaintiffs would not seek to amend their First Amended Complaint, nor would I have done so since nine days earlier, on January 24, 2012, I sent Mr. Shapiro my letter (attached hereto as Exhibit D) as part of a meet-and-confer process that was preparatory to the instant motion for leave to file the proposed Second Amended Complaint. Indeed, in my February 6, 2012 letter following up on the February 2 meet and confer call, Plaintiffs responded to a request by LSW that Plaintiffs make a proposal concerning terms on which Plaintiffs would agree not to propound any further document requests. My letter proposed that if LSW agreed to produce the discovery then in dispute as well as the discovery served concurrently with the proposal, Plaintiffs would agree not to propound new document requests, subject to certain limited carve-outs. Among the carve-outs included in Plaintiffs' proposal was "Documents relevant to any new claims that may hereafter be added to this litigation." A true and correct copy of my February 6, 2012 letter to Mr. Shapiro is attached hereto as Exhibit I.

17. Upon receipt of the letter and discovery responses from LSW on February 23 and 24 confirming its practices, and the uniform applicability of its practices to the class as a whole, Plaintiffs prepared and transmitted the proposed SAC to LSW on Monday, February 27 and requested that LSW stipulate to its

1 filing. Attached hereto as Exhibit J is a true and correct copy of an e-mail from me
2 to Mr. Shapiro dated February 27, 2012.

3     18.    Pursuant to Central District of California Local Rules 7-3, the parties
4 had a telephonic conference on February 29. In the conference, LSW refused to
5 stipulate to the filing of the SAC and indicated that it would oppose Plaintiffs'
6 motion. Attached hereto as Exhibit K is a true and correct copy of an e-mail from
7 me to Mr. Shapiro dated March 1, 2012, confirming our conversation.

8     19.    After waiting the ten days required by Local Rule 7-3, Plaintiffs filed
9 this motion at the earliest permissible date, although Plaintiffs agreed to delay the
10 hearing date one week to accommodate the schedule of defense counsel,
11 Mr. Shapiro. Attached hereto as Exhibit L is a true and correct copy of an e-mail
12 from me to Mr. Shapiro dated March 9, 2012 with an attached email string
13 showing our discussion regarding scheduling of the motion.

14     20.    Although Plaintiffs first notified LSW about these potential claims on
15 January 24, 2012, prior to Ms. Walker's deposition on January 27, 2012, counsel
16 for LSW chose to ask Ms. Walker no questions on the subject.

18 DATED: March 12, 2012    KASOWITZ BENSON TORRES & FRIEDMAN LLP

21     By:  /s/ Brian P. Brosnahan
22           Brian T. Brosnahan

DECLARATION OF BRIAN P. BROSNAHAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
Case No. CV 10-9198 JVS (RNBx)
7