# EXHIBIT 1

# WILMERHALE

February 13, 2012

**Jonathan A. Shapiro**

+1 650 858 6101 (t)
+1 650 858 6100 (f)
jonathan.shapiro@wilmerhale.com

***By E-mail***

Brian Brosnahan, Esq.
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, CA 94111

Re: <u>Walker et al. v. Life Insurance Company of the Southwest</u>

Dear Brian:

I write on behalf of Life Insurance Company of the Southwest ("LSW") in response to your February 6, 2012 letter (the "Letter") regarding outstanding discovery issues in connection with Plaintiffs' Fifth, Sixth, and Seventh Sets of Document Requests, Plaintiffs' First and Second Sets of Interrogatories, Plaintiffs' First Set of Requests for Admission, Plaintiffs' Notice of Deposition to LSW, and various other requests that Plaintiffs have made along the way. This letter will address only the particular matters raised in your February 6 letter with respect to which you requested a response, and will track your headings (although I note that the level of generality with which the letter addresses some broad categories may obscure any concrete issue that may be tied to the requests themselves).[1]

To fully appreciate the overbreadth and irrelevance of Plaintiffs' requests — and why LSW objects to this apparently endless cycle of even more burdensome discovery — I respectfully suggest that we step back and focus on the fact that this case is about *four* specific alleged omissions from illustrations. LSW *long ago* produced to Plaintiffs the documents that are legitimately relevant to those particular claims (in addition to documents and information well beyond that). That production has included (*i*) all marketing materials concerning California Paragon and Provider, (*ii*) a sample of 400 policyholder documents; (*iii*) copious data concerning all California policyholders, (*iv*) LSW's relevant policies and procedures, (*v*) tens of thousands of pages of email from at least 24 custodians; (*vi*) LSW's training materials, product development materials, and much, much more. In the process, LSW has already responded to *seven* sets of Requests For Production (totaling 115), a very lengthy set of Requests For Admission (totaling 60), and two sets of Interrogatories. LSW has, at Plaintiffs' insistence, conducted all of this discovery on a highly expedited basis (*e.g.*, an email review pace of tens of thousands of documents per week). All this has cost this insurance company — and the policyholders who own it — millions of dollars. Yet, your letter seems to pay no regard to the

---

[1] LSW herein incorporates by reference its Responses to each of Plaintiffs' written discovery documents listed below, as well as its previous correspondence in connection with those Requests (including but not limited to its January 23, 2012 letter to you).

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 2

burden LSW faces in responding to your unfettered, unending and duplicative discovery requests.[2]

Our interactions this last week present an apt example. During the parties' *several hour* meet-and-confer call on Thursday, February 2, you said that Plaintiffs were willing to limit and prioritize their various discovery requests. But something must have happened over the weekend that sent you in the *opposite* direction. Along with your Letter, Plaintiffs have now served *more* document requests, *more* requests for admission, *more* interrogatories, and *more* deposition topics — all of which are, **by your own admission**, broader requests that are (in whole or substantial part) duplicative of requests that have already been served. It is hard to see progress or compromise, for example, when after hours of meeting/conferring and many eye-blurring "for the record" letters, Plaintiffs talk about withdrawing *one* Rule 30(b)(6) deposition topic (out of forty), only to simultaneously serve "new" requests for five more.

LSW remains open to resolving our differences with a compromise that will end the discovery cycles with both sides making a legitimate concession of positions that they believe to be principled and correct. There also needs to be an end-game whereby issues get narrowed and closed out (as opposed to incrementally reduced one day, without prejudice or commitment, only to be expanded the next). Plaintiffs are plainly are not willing to entertain that. Thus, LSW has no choice but to oppose further discovery on Rule 26(c) grounds, including that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . .

Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs' discovery requests have long since crossed these thresholds.

I address below the specific topics of your letter

A Compromised Solution

After 18 months and truckloads of discovery, we should not be ending each month with more issues on the table than have been resolved. This neither advances the case nor comports with

---

[2] Your comment last week about how *your* clients are not among those policyholders who own the Company—i.e., "not my problem"—only spotlights the insensitivity. We have a *shared* obligation to proceed efficiently.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 3

our shared obligation to manage the case responsibly. As LSW made clear during our call, it believes that everyone involved (the parties and the Court) would benefit by a negotiated end to the cycles of new discovery requests and compulsive letter writing. We are all tripping over ourselves with hopelessly duplicative (and irrelevant) requests to the point where we find ourselves in a discovery sinkhole.

For this reason, LSW asked Plaintiffs to propose a legitimate compromise in light of whatever additional material it believes that it needs, and what it could live without. I explained that LSW viewed Plaintiffs' latest round of discovery as being objectionable, burdensome, and irrelevant, but that LSW would consider providing some amount of irrelevant and unnecessary discoveryif doing so would achieve meaningful bilateral compromise that would spare the expense of motion practice and bickering, and get us beyond discovery.

Your letter largely does not offer a compromise. Rather, it insists over and over that "LSW must comply" with Plaintiffs' laundry list of document requests, deposition topics, interrogatories, etc. Simply grouping your requests and insisting (without further elaboration) that LSW withdraw its legitimate objections is neither realistic nor productive. To the contrary, your insistence that LSW (a company based in Vermont) respond within 48 hours to a very long letter sent after 9:00 PM Vermont time — followed by your insistence on initiating motion practice just one business day (or less) after receiving LSW's response to your letter — suggests that you don't much care what LSW has to say.[3]

To the extent your letter speaks of compromise, it has no substance. First, the few requests that you agreed to withdraw were irrelevant to begin with. Agreeing not to pursue discovery of LSW's *other* life insurance products (*i.e.* products that plaintiffs neither bought nor are at issue in this case) provides no value — Plaintiffs would never be entitled to that anyway. Second, it is not much of a compromise for Plaintiffs to withdraw several requests, but at the same time serve new ones (which they have done this week). Third, the frequent "if/then" attempts to conditionally and contingently withdraw objectionable requests only if LSW makes some sweeping "stipulation" that a broad topic is "irrelevant" for purposes of the entire case isn't particularly intelligible or constructive either.

Fourth, LSW does appreciate that Plaintiffs have, for the first time, acknowledged our question of when they will stop serving discovery requests. Unfortunately, the letter doesn't really answer the question because, while Plaintiffs purport to offer an end to discovery, the "carve outs" that you specified render that end illusory. A proposal that allows Plaintiffs to serve unending further requests (beyond the hundreds already out there) as long as future requests are framed in terms of

---

[3] The need for a discovery fire drill certainly isn't apparent from your recent correspondence, with just recently raised requests to re-open discussion about an agreement reached in September for supposedly central discovery topics that were never broached in your first seven sets of document requests.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 4

documents "sufficient to show" is not a limitation at all (especially since Plaintiffs' preferred alternative formulation of document requests, "all documents that refer or relate," has already been held presumptively overbroad by Judge Block). The second carve-out fares no better, as they would seem to permit Plaintiffs to serve new requests as long as the subject (at some high level of abstraction) is something that you deem may be "relevant to class certification or to any of LSW's defenses."

Finally, the statement that any discovery compromise must "carve-out" the Plaintiffs' right to seek future discovery so long as it relates to "any new claims that may hereafter be added to this litigation" (Letter at 2) leapt off the page. On our meet-and-confer call, when I addressed this very topic, you could not have been more assuring that Plaintiffs' new discovery requests were ***not*** an attempt to expand the lawsuit. You then told me about how perfectly happy Plaintiffs were with their existing claims, had no need to re-do them, and did not anticipate amending the Complaint again. Please explain why Plaintiffs are requesting a formal "carve-out" for future discovery on "any new claims" at the same time that you are assuring us that you do not have "new claims" and are not pressing all these discovery issues to find any. Let me be very clear: LSW is relying on, and has long been relying on, that assurance; the time for new claims has long passed — especially when from the get-go LSW's compromising and accommodating on breathtakingly expensive discovery has been based on what we thought was a shared principle that, whatever we do, we should do it right so we only do it once.

LSW remains open to compromise, but cannot explore it unless the Plaintiffs are willing to offer a legitimate proposal. LSW cannot make the proposal: only Plaintiffs know which discovery they need in order to prosecute whatever strategy they have in mind. If you insist on proceeding to motion practice, we expect it will be very clear to the Court that Plaintiffs precipitated it in lieu of a meaningful exploration of compromise.

Competition Documents:

Your statement that "LSW must comply" with all of Plaintiffs' requests for documents concerning other insurance companies and other insurance products is not persuasive. This (and other, similar assertions in your letter) are not attempts to compromise in any way.

If Plaintiffs are insistent on bringing this matter before Judge Block again, so be it. Judge Block has already once denied Plaintiffs' motion to compel any documents about insurance company competitors other than "documents constituting comparisons between LSW disclosures and those of other life insurance companies, as well as the underlying documents compared." Minute Order, Dkt. 99 at 2. LSW is confident that this remains the scope of permitted discovery.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 5

Financial and Pricing Information:

Again, LSW is unpersuaded by your insistence that it "must comply" with the entirety of these nine requests and five deposition topics. Plainly, the parties disagree about whether the "actual value" of the Paragon and Provider policies (to the extent it even exists) can be determined based on abstract, non-market-facing information (such as LSW's internal financial data) instead of the many subjective and varying reasons why policyholders decide to purchase a particular product.

Your explanation that this is a "very broad" category for discovery, which entitles Plaintiffs to essentially every document about every feature of an insurance policy that may have "value" to someone somewhere in the world, only validates LSW's position that such an interpretation is contrary to the law of California and is certainly contrary to the limitations imposed upon the discovery process by Rule 26.[4]

As LSW has stated, it is willing to meet Plaintiffs somewhere in the middle as a part of a reasonable and even-handed compromise. If Plaintiffs are willing to identify a smaller set of these "financial and pricing" documents that are really necessary to make Plaintiffs' case, LSW is willing to engage in that dialog. However, it appears that Plaintiffs are unwilling to offer any priorities or accept any limitations upon their own requests, which makes mutually beneficial bargaining impossible.

Plaintiffs cannot excuse their failure to prioritize among their many "financial and pricing" requests by proposing that LSW propose the priorities. This suggestion is inconsistent with the Federal Rules, which impose upon Plaintiffs as the requesting party the burden to demonstrate that the documents sought are relevant to the litigation. It also makes no sense — how can LSW possibly be expected to know which documents are the highest priority for Plaintiffs' case under circumstances where LSW's opinion is that the case lacks merit and that all the new "actual value" requests are not relevant at all? It is up to Plaintiffs to develop their own priorities and convey them to LSW in a way that can facilitate agreement. Your letters have not done so in any meaningful way.

You also propose that you will withdraw some of these requests, but only if "LSW stipulates that evidence concerning riders is not relevant to class certification or any defenses LSW may raise."

---

[4] LSW's belief that this information is, in fact, not relevant (let alone fundamental, as you now insist) to any of Plaintiffs' claims is further strengthened by the fact that Plaintiffs waited nearly a year to serve document requests about the "actual value" of the policies.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 6

Letter at 2. Again, this is not compromise. It is Plaintiffs' duty to request only relevant documents, not LSW's responsibility to preemptively waive defenses.[5]

Assorted Statistical Data:

LSW is confirming whether or not it separately projects the number of policyholders it expects to pay death benefits. Separate and apart from whether that information even exists, LSW stands by its objection that these documents are not relevant to any claim or defense involved in the litigation. LSW has already produced data showing the number of death benefits that have been paid, as well as projections of the number of policies that would lapse or be surrendered. There is no reason why this additional data is relevant or necessary.

As we discussed during our meet-and-confer call, Deposition Topics 13-21 and 30 appear to demand that an LSW employee sit down at a deposition and read tables in order to vocalize information that is available on the tables themselves. LSW welcomes the opportunity to provide a stipulation rather than subjecting one of its employees to such (frankly, improper) testimony. LSW sees no need for this issue to be raised with the Court. Please propose a form of stipulation that would satisfy Plaintiffs.

Affirmative Defenses:

As discussed below, LSW has a difficult time agreeing prospectively to provide a substantive response to an interrogatory in light of Plaintiffs' stated position that "all of LSW's objections are waived because it answered these interrogatories." January 20, 2012 Letter from Brian Brosnahan to Jonathan Shapiro at 4.

In any event, whether or not Plaintiffs' newly-served interrogatory is proper or not, a deposition topic that simply states "LSW's Affirmative Defenses" is improper, overbroad, and raises serious privilege concerns. LSW is not willing to preemptively waive objections to an interrogatory (just seven days after the interrogatory was served) simply to precipitate the withdrawal of deposition topic that should never have been requested weeks ago.

SecurePlus Life:

Plaintiffs' requests for documents and testimony about another product that is not at issue in this litigation are facially overbroad and irrelevant. *See* Requests No. 87-93. Accordingly, LSW is not moved by the suggestion that Plaintiffs' willingness to (conditionally and contingently) abandon these requests is a real step towards compromise on the laundry lists of new and

---

[5] In addition, your proposal is in no way reciprocal. Plaintiffs' requests seek information about the *profitability* of riders, not riders in general. It may well be the case that riders themselves are relevant, but the profits that LSW earns from the riders certainly are not.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 7

resurrected discovery issues where Plaintiffs have always been intransigent. In any event, it is Plaintiffs' duty to propound relevant discovery requests, and LSW should not be extorted into waiving any available defenses simply to avoid discovery that is irrelevant, overbroad, and improper in the first place. Accordingly, it is for Plaintiffs to decide whether to withdraw these requests or not.

Minimum Monthly Premium:

Again, Plaintiffs' request seeks discovery that is irrelevant, overbroad, and improper. The method by which LSW calculates the Minimum Monthly Premium is not mentioned or referred to anywhere in the First Amended Complaint. LSW should not be forced to waive any defenses simply to avoid producing documents in response.[6]

Contractual Relationships with National Life:

LSW agrees that a stipulation in connection with this request is superior to the parties incurring the expense of reviewing and producing documents with such marginal relevance to this litigation. LSW is working on drafting language that should accommodate your stated rationale for seeking this discovery and will respond with such a stipulation as soon as possible.

Creation or Design of SecurePlus Provider:

Plaintiffs seem to be moving away from mutual agreement rather than towards it. On our meet-and-confer call, Plaintiffs indicated that they would be willing to limit this request to a subset 6-7 individuals from the list of custodians whose emails have already been searched (in fact, over the phone it appeared that Plaintiffs already had the list of 6-7 and you were counting the names). Plaintiffs were also going to propose a narrower set of search terms to run across these email boxes. LSW still thinks that both the current, agreed-upon time period for production is sufficient to capture all potentially relevant documents, and that further discovery is burdensome and unlikely to yield meaningful results. But LSW also is willing to abandon principled positions for pragmatic reasons, *i.e.*, to move the case beyond these discovery matters. To that end, we said we would seriously entertain an agreement along the lines of Plaintiffs' proposal in the interest of finality and avoiding an unnecessary dispute.

However, your letter seems to have abandoned the agreed-upon framework. Instead, you list *twice as many custodians* as you suggested initially, many of whom have never previously been identified as email custodians. As LSW has explained, the process of even pulling email custodians for review is costly and time-intensive, and the parties should endeavor to do so as

---

[6] Your proposed stipulation makes no sense: the *method by which the Minimum Monthly Premium is calculated* has nothing to do with the terms of the policy protection period.

**WILMERHALE**

Brian Brosnahan, Esq.
February 13, 2012
Page 8

few times as possible. Proposing several new names this late in the discovery process is antithetical to the parties' shared responsibility to minimize costs and manage the litigation in a reasonable manner. LSW remains willing to confer about a list of priority custodians and priority search terms for an email pull if Plaintiffs are willing to move towards compromise rather than move away from it, particularly where the custodian list has been in place for six months and is already very large.

Other Deposition Topics:

With respect to Topic No. 12, LSW stands by its objections to the topic as worded, which would require someone from LSW to prepare to be deposed on every single piece of marketing material ever created or approved by LSW and broader marketing strategies that have nothing to do with this litigation (*e.g.*, strategies for increasing sales to women or to business executives). As indicated, LSW is willing to provide testimony concerning marketing as it relates to the specific alleged omissions at issue in this case. In addition, LSW is willing to offer testimony about its marketing strategy generally (*i.e.*, untethered to any specific marketing materials). LSW's compromise proposal would appear to resolve any dispute on this Topic.

With respect to Topic No. 26, LSW is unable to assent to provide testimony about this topic because it simply does not understand what the topic means (and therefore could not adequately prepare a witness to offer testimony on behalf of a large organization). We again explained this problem during our call. Your letter is not helpful because it simply demands testimony and repeats the phrase "interpretation of the illustrations," *i.e.*, regurgitates the same language without explanation. It is improper for Plaintiffs to attempt to compel an LSW witness to appear for a deposition simply to read an illustration to you, but that is exactly what this topic seems to ask for. Again, simple clarification of what is meant by the topic could likely resolve this matter.

With respect to Topic No. 27, it remains unclear what Plaintiffs mean when they use the phrase "policy forms." In an effort to clarify, LSW has proposed that it offer testimony about the SecurePlus Paragon and SecurePlus Provider policies received by the Plaintiffs. It appears that your definition of "policy forms" also includes riders to those policies. Although LSW is dubious as to the relevance of this subject, if Plaintiffs intend that the phrase "policy form" include riders, then LSW will provide testimony about the riders available in connection with SecurePlus Paragon and SecurePlus Provider in California. Is there some other policy form that Plaintiffs believe may be relevant? If so, please explain and perhaps LSW can accommodate that request as well.

With respect to Topic No. 35, Plaintiffs' attempt to revive and relitigate this issue is transparent. Judge Block has already ruled that the subject of "Patrick Kelly and/or the concept of tax free retirement" is not relevant. We should be moving forward, not reaching back to revisit the past.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 9

With respect to Topic No. 36, your statement that Plaintiffs "require a deposition on Topic No. 36" does not, in any way, either address LSW's objections or attempt to propose a compromise that might alleviate some of these issues. The First Amended Complaint does not include any allegations about LSW's "financial relationship" with agents, its "commission structure," or the "compensation" it pays to agents. Accordingly, testimony on those topics is overbroad, unduly burdensome, and irrelevant.

With respect to Topic No. 40, LSW agrees that your proposal sounds workable, and the parties can address the subject in the context of specific questions at a deposition.[7]

Interrogatories:

As we have repeatedly discussed, LSW is unable to further respond to pending interrogatories (although it is prepared to do so), as it stated in its responses. Because Plaintiffs have taken the position that any substantive response waives all objections. I refer you to your January 20, 2012 letter in which Plaintiffs expressly took this position. We await Plaintiffs' withdrawal of that position and confirmation that they are no longer claiming that the provision of a substantive discovery response waives objections.

Information Request Regarding Letter of September 13, 2011 from James Lux to Brian Brosnahan:

LSW stands by its position that the letter and exhibits it prepared and provided (at great expense) were fully compliant with the parties' agreement and Judge Block's order. Nonetheless, on our last call, LSW proposed that Plaintiffs provide a list of the specific information that they believe to be missing so that there could be no further misunderstanding or disagreement.

Your letter has failed to do so. First, your request for "all data input files LSW uses" is well beyond the scope of anything that the parties agreed to, which was limited to "all data input files from which values used in the calculation of [Plaintiffs' accumulated values at various times] were drawn." Second, having now seen the precise calculations at issue, Plaintiffs are certainly able to specify which "data input files" they believe they need but have not yet received. You have had the calculations for more than *five months* but still have not done so, leaving LSW to guess which specific "data input files" will satisfy Plaintiffs.

Nonetheless, LSW is willing to provide the cost of insurance and mortality tables from which the values used in Mr. Lux's September 13, 2011 letter were drawn. Will LSW's compromise

---

[7] I do, however, note the deep irony in your insistence that testimony about pre-deposition preparation of a witness is unlikely to be privileged "if the privilege objection is asserted broadly," given that you instructed your client (Ms. Walker) to not answer questions (on privilege grounds) about *whether your law firm even represents her*.

WILMERHALE

Brian Brosnahan, Esq.
February 13, 2012
Page 10

resolve this issue? (LSW thinks it does, but because LSW thought this issue was resolved last September, I want to make sure that "done" means "done").

Policyholder-Identifying Information:

LSW notes that it has produced all the information that Plaintiffs have requested regarding policyholder data, including policy numbers, policyholder names, and policyholder contact information. Your letter does not appear to dispute that fact. I am not sure why Plaintiffs think it is LSW's job to organize data for you. Nonetheless, LSW is willing to provide the data in the format requested by your Letter. It expects to do so promptly (indeed, perhaps by February 21), but cannot commit to this timing in advance.

Timing of Depositions:

As LSW has repeatedly made clear, it assumes and expects that the parties will work cooperatively to ensure that every witness is deposed only once. Plaintiffs have never quibbled with this point, nor could they do so reasonably. LSW remains willing to work with Plaintiffs to set mutually convenient deposition times and locations. However, please understand that if you insist on taking depositions before the parties' outstanding disputes about 30(b)(6) deposition topics are finally resolved, that will necessitate Plaintiffs' cooperation in limiting their objectionable topics to prevent witnesses from being re-deposed.

With regards to Mr. Mayr, LSW has previously indicated its position that Mr. Mayr's documents are irrelevant and duplicative of documents that have already been reviewed and produced. However, LSW has informed you that it may be willing to agree to go to the great expense and burden of pulling and reviewing Mr. Mayr's inbox provided that Plaintiffs can provide meaningful assurances that, with Mr. Mayr's addition, the list of custodians is complete (*i.e.*, LSW will not be asked to again repeat the exact same exercise one week later when Plaintiffs come up with another custodian name). Your letter did not indicate whether or not Plaintiffs have finalized their custodian list, and your suggestion of new names in connection with Request No. 102 suggests that again Plaintiffs may be backing away from compromise. The bottom line is this: this is the last call for Plaintiffs to identify email custodians.

Sincerely,

Jonathan A. Shapiro
cc: Andrea J. Robinson, Esq.
    Timothy Perla, Esq.
    James Lux, Esq.