# EXHIBIT A

1

1        UNITED STATES DISTRICT COURT

2

3        CENTRAL DISTRICT OF CALIFORNIA

4        WESTERN DIVISION

5

6
JOYCE WALKER, ET AL.,              )
7                                  )
                                   )
8                                  )
        PLAINTIFFS,                )
9                                  )
        VS.                        ) CASE NO. CV 10-9198-JVS(RNBX)
10                                 ) SANTA ANA, CALIFORNIA
                                   ) MARCH 20, 2012
11  LIFE INSURANCE COMPANY OF THE  )
    SOUTHWEST,                     ) (9:50 A.M. TO 11:58 A.M.)
12                                 ) (1:47 P.M. TO 2:13 P.M.)
        DEFENDANT.                 ) (3:26 P.M. TO 3:39 P.M.)
13  _____)

14
                        DISCOVERY CONFERENCE
15          BEFORE THE HONORABLE ROBERT N. BLOCK
                UNITED STATES MAGISTRATE JUDGE
16

17
    APPEARANCES:              SEE NEXT PAGE
18
    COURT REPORTER:           RECORDED; COURT SMART
19
    COURTROOM DEPUTY:         KERRI HAYS
20
    TRANSCRIBER:              DOROTHY BABYKIN
21                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
22                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
23

24  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFFS:          KASOWITZ BENSON TORRES & FRIEDMAN
 2                                BY:  BRIAN P. BROSNAHAN
                                       JEANETTE T. BARZELAY
 3                                     ATTORNEYS AT LAW
                                  101 CALIFORNIA STREET
 4                                SUITE 2300
                                  SAN FRANCISCO, CALIFORNIA  94111
 5

 6   FOR THE DEFENDANT:           WILMER CUTLER PICKERING
                                    HALE & DOOR
 7                                BY:  JONATHAN A. SHAPIRO
                                       JOEL FLEMING
 8                                     ATTORNEYS AT LAW
                                  950 PAGE MILL ROAD
 9                                PALO ALTO, CALIFORNIA  94304

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2    CASE NO. CV 10-9198-JVS(RNBX)              MARCH 20, 2012

3    PROCEEDINGS:   PLAINTIFFS' MOTION TO COMPEL; LSW'S MOTION FOR
                    PROTECTIVE ORDER
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          SANTA ANA, CALIFORNIA; TUESDAY, MARCH 20, 2012

2                          9:50 A.M.

3          THE CLERK:  PLEASE REMAIN SEATED AND COME TO ORDER.

4  THIS UNITED STATES DISTRICT COURT IS NOW IN SESSION.

5          THE HONORABLE MAGISTRATE JUDGE ROBERT N. BLOCK

6  PRESIDING.

7          CALLING CASE NUMBER CV 10-9198, JOYCE WALKER, ET

8  AL. VERSUS LIFE INSURANCE COMPANY OF THE SOUTHWEST.

9          COUNSEL, PLEASE STATE YOUR APPEARANCES.

10         MR. BROSNAHAN:  GOOD MORNING, YOUR HONOR.

11         BRIAN BROSNAHAN FOR THE PLAINTIFFS.

12         MS. BARZELAY:  JEANETTE BARZELAY FOR THE

13  PLAINTIFFS.

14         MR. SHAPIRO:  GOOD MORNING, JUDGE BLOCK.

15         IT'S JONATHAN SHAPIRO FOR THE DEFENDANT LIFE

16  INSURANCE OF THE SOUTHWEST.

17         MR. FLEMING:  AND JOEL FLEMING ALSO FOR LIFE

18  INSURANCE COMPANY OF THE SOUTHWEST.

19         THE COURT:  ALL RIGHT.  ALL RIGHT.  COUNSEL, GOOD

20  MORNING.

21         LET'S START WITH MY TENTATIVE RULING.  I'LL HEAR

22  FROM PLAINTIFFS' COUNSEL FIRST.

23         MR. BROSNAHAN:  THANK YOU, YOUR HONOR.

24         WE APPRECIATE THE OPPORTUNITY TO ADDRESS THE

25  COURT'S CONCERNS.

5

1        I THINK THE QUICKEST WAY TO GET TO THE HEART OF THE

2   MATTER MIGHT BE IF I MAY ASK THE COURT A QUESTION ABOUT THE

3   TENTATIVE.

4            THE COURT:   OKAY.   I MAY NOT ANSWER, BUT YOU CAN

5   ASK.

6            MR. BROSNAHAN:   I JUST -- I DON'T UNDERSTAND HOW

7   THE TENTATIVE REQUIRES DENIAL OF THE MOTION UNLESS THE

8   COURT'S CONCERN TURNS ON THE WORD "RESOLD" IN THE QUOTE THAT

9   THE COURT PUT IN THE -- IN THE TENTATIVE, WHERE IT SAYS,

10            "IN DECEIT CASES THE VALUE OF AN ARTICLE IS

11             NORMALLY DETERMINED BY THE PRICE AT WHICH

12             IT COULD BE RESOLD IN AN OPEN MARKET OR BY

13             PRIVATE SALE IF ITS QUALITY OR OTHER

14             CHARACTERISTICS WHICH AFFECT ITS VALUE WERE

15             KNOWN."

16        OBVIOUSLY, IN A CASE LIKE THIS THE PLAINTIFFS CAN'T

17   RESELL THE INSURANCE POLICY.

18            THE COURT:   BUT THE QUESTION -- IT'S NOT A MATTER

19   OF RESELL.   NO, THAT WASN'T IT.   IT WAS WHAT WOULD THE VALUE

20   OF THE POLICY BE IF THESE ALLEGED NON-DISCLOSURES HAD BEEN

21   DISCLOSED.

22        NOW, IT SEEMS TO ME BASED ON THE CASES -- AND I'VE

23   READ EVERY SINGLE ONE OF YOUR CASES.   AND NOT ONE OF THEM IS

24   EVEN CLOSE TO BEING ON POINT -- THAT IN ORDER TO ESTABLISH

25   THAT, IF THAT'S YOUR THEORY OF DAMAGES, YOU'RE GOING TO NEED

6

1  AN EXPERT TO TESTIFY WHAT HE THINKS THESE POLICIES WOULD HAVE

2  BEEN WORTH TO A PURCHASER IF THESE DISCLOSURES HAD BEEN MADE.

3          LET ME GIVE YOU THIS EXAMPLE.  I THOUGHT OF A MORE

4  CONCRETE EXAMPLE BECAUSE, LIKE I SAID, YOU CITED A BUNCH OF

5  CASES THAT DON'T REALLY HELP ME FIND IN YOUR FAVOR.  YOU

6  KNOW, IN THE LAST COUPLE OF WEEKS APPLE RELEASED THE IPAD 3

7  OR CALLS IT "THE NEW IPAD," RIGHT?

8          MR. BROSNAHAN:  YES.

9          THE COURT:  AND THEY TOUTED A LOT OF ITS FEATURES.

10  AND ONE OF ITS MOST TOUTED FEATURES IS IT'S THE FIRST APPLE

11  PRODUCT THAT HAS THE CAPABILITY TO RECEIVE DATA VIA THE 4G

12  NETWORK, RIGHT?

13          MR. BROSNAHAN:  YES.

14          THE COURT:  SUPPOSE SOMEONE DISCOVERED THAT THAT

15  WASN'T TRUE, THE NEW IPAD DOESN'T ACTUALLY DOWNLOAD DATA AT

16  4G SPEEDS.  IT REALLY DOWNLOADS THEM AT 3G SPEEDS LIKE THE

17  IPAD 2.  AND, SO, THERE WAS SOME ACTION BROUGHT.  AND THE

18  ISSUE BECAME WHAT WAS -- YOU KNOW, THEORY OF DAMAGES WAS THE

19  ACTUAL VALUE.  YOU KNOW, THAT IF APPLE HAD DISCLOSED THAT,

20  NO, IT REALLY DOESN'T DO 4G SPEED, IT'S 3G SPEED.

21          WELL, THE ANSWER TO THAT QUESTION HAS NOTHING

22  WHATSOEVER TO DO WITH HOW MUCH PROFIT APPLE MADE ON ITS

23  PRODUCT, WHETHER IT WAS $5 PER UNIT, A HUNDRED DOLLARS PER

24  UNIT, $350 PER UNIT.  IT HAS NOTHING WHATSOEVER TO DO WITH

25  THE ACTUAL VALUE OF THAT PRODUCT IF THE ACCURATE

7

1 REPRESENTATIONS HAVE BEEN MADE.

2          SO, I TOTALLY REJECT YOUR THEORY OF RELEVANCE WITH

3 RESPECT TO ALL OF THESE AREAS OF THE DISCOVERY REQUEST THAT

4 YOU SAY ARE RELEVANT TO YOUR ACTUAL VALUE DAMAGES THEORY.

5          AND IF YOU WANT THAT DISCOVERY, YOU'RE GOING TO

6 HAVE TO GET IT FROM JUDGE SELNA BECAUSE YOU'RE NOT GETTING IT

7 FROM ME.

8          DO YOU HAVE ANY OTHER QUESTIONS?

9          MR. BROSNAHAN:  I'D BE HAPPY TO ADDRESS THE COURT'S

10 ISSUE.  I THINK THAT IN YOUR APPLE HYPOTHETICAL THE QUESTION

11 IS WHAT WOULD THAT PRODUCT HAVE SOLD FOR ON AN OPEN MARKET IF

12 IT'S -- IF THE FACT THAT IT WAS REALLY ONLY 3G WERE

13 DISCLOSED.

14          THE COURT:  CORRECT.

15          MR. BROSNAHAN:  IF IT SOLD FOR $400 WHEN NOBODY

16 KNEW THAT IT WAS ONLY 3G SPEED, THE QUESTION WOULD BE IF

17 EVERYONE KNEW THAT, WHAT WOULD IT SELL FOR.  AND YOU WOULD

18 HAVE EXPERTS COME IN.  AND THE EXPERTS WOULD ANALYZE

19 COMPETITIVE PRODUCTS.  THEY WOULD ANALYZE THE COSTS.  THEY

20 WOULD ANALYZE AN ENTIRE BUT/FOR WORLD AS WE HAVE IN ANTITRUST

21 CASES ALL THE TIME WHERE EXPERTS ANALYZE BUT/FOR WORLDS OF

22 WHAT A PRODUCT WOULD HAVE SOLD FOR UNDER DIFFERENT

23 CONDITIONS.  AND THEY LOOK AT FINANCIAL DATA.  THEY LOOK AT

24 COSTS.  THEY LOOK AT COMPETITIVE PRODUCTS --

25          THE COURT:  I DISAGREE.  WHAT DIFFERENCE DOES IT

8

1   MAKE TO WHETHER APPLE MADE A LOT OF MONEY OR A LITTLE MONEY

2   ON ITS PRODUCT TO WHAT A PURCHASER WOULD BE WILLING TO PAY

3   FOR THAT PRODUCT.

4           MR. BROSNAHAN:  WELL, THE QUESTION ISN'T WHAT A

5   PURCHASER WOULD BE WILLING TO PAY --

6           THE COURT:  WELL, ACCORDING TO THE CALIFORNIA

7   SUPREME COURT IT IS.

8           MR. BROSNAHAN:  THE QUESTION IS WHAT THE MARKET --

9           THE COURT:  THE MARKET VALUE AT THE TIME OF

10  PURCHASE.

11          MARKET VALUE -- YOU KNOW, I WAS AN ECON MAJOR.  SO,

12  MARKET VALUE IS WHAT A WILLING PURCHASER IS WILLING TO PAY.

13          MR. BROSNAHAN:  WELL, IT'S ALSO WHAT A WILLING

14  SELLER IS WILLING TO SELL.  AND --

15          THE COURT:  I DON'T AGREE WITH THAT THEORY.  LET'S

16  NOT WASTE ANY TIME BECAUSE, LIKE I SAID, YOU'RE NOT GOING TO

17  TALK ME OUT OF THAT PART OF MY TENTATIVE.

18          MR. BROSNAHAN:  THAT'S FINE, YOUR HONOR.

19          IF I MAY, THOUGH, I'D LIKE TO POINT TO A COUPLE OF

20  THE REQUESTS THAT ARE WITHIN THE SCOPE OF THIS PART OF THE

21  TENTATIVE THAT HAVE BASES IN ADDITION TO JUST A PURE "ACTUAL

22  VALUE" THEORY.

23          ONE OF THEM HAS TO DO WITH THE OFFSET.  WE'VE

24  REQUESTED --

25          THE COURT:  WHICH REQUEST ARE WE TALKING ABOUT?

9

1          MR. BROSNAHAN:  WELL, THIS WOULD BE TOPIC NUMBER

2     33.  AND THE DOCUMENT REQUESTS THAT GO ALONG WITH THAT WOULD

3     BE NUMBER 100 AND NUMBER 110.

4          THE COURT:  OKAY.  LET'S START WITH 100.

5          MR. BROSNAHAN:  NOW, ONE -- THIS DOCUMENT REQUEST

6     SEEKS DOCUMENTS SUFFICIENT TO SHOW THE CURRENT AND GUARANTEED

7     COST OF INSURANCE RATES FOR TERM PRODUCTS.

8          THE COURT:  HANG ON A SECOND.

9          (PAUSE IN PROCEEDINGS.)

10          THE COURT:  IN YOUR PLAINTIFFS' CONTENTION SECTION,

11     MEET AND CONFER DISCUSSIONS, YOU EXPLAINED THAT THESE

12     DOCUMENTS ARE RELEVANT TO YOUR ACTUAL VALUE OF DEATH BENEFIT

13     THEORY.  AND YOU ARGUED ACTUAL VALUE ON PAGE 77 -- THAT WAS

14     IN YOUR MEET AND CONFER SESSION.

15          SO, WHERE IN YOUR ARGUMENT DID YOU SAY THEY WERE

16     RELEVANT TO SOMETHING OTHER THAN ACTUAL VALUE?

17          MR. BROSNAHAN:  CERTAINLY ON PAGE 77 WE SAY ON LINE

18     19  LINE 18:

19          "MOREOVER, IN THE EVENT THAT PLAINTIFFS ARE

20           SUCCESSFUL IN SEEKING RESCISSION OF THE POLICIES

21           AND A FULL REFUND OF WHAT THEY PAID LSW, LSW MAY

22           SEEK TO ARGUE THAT BECAUSE IT PROVIDED DEATH

23           BENEFIT PROTECTION TO CLASS MEMBERS WHILE THEIR

24           POLICIES WERE IN FORCE, IT SHOULD BE ENTITLED TO

25           A CREDIT OR OFFSET FOR THE VALUE OF THE DEATH

10

```
 1              BENEFIT PROTECTION IT PROVIDED TO ITS

 2              POLICYHOLDERS.

 3              "LSW'S CHARGES FOR DEATH BENEFIT PROTECTION ON

 4              ITS TERM LIFE INSURANCE POLICIES MAY BE PROBATIVE

 5              OF THE AMOUNT OF ANY SUCH CREDIT OR OFFSET THAT

 6              LSW MAY SEEK."

 7              THE COURT:  WELL, I MUST SAY I OVERLOOKED THAT AS A

 8    DISTINCTION BECAUSE THEN YOU CONCLUDE THE PARAGRAPH WITH

 9              "THUS, DOCUMENTS ARE DIRECTLY RELEVANT TO THE

10               CLAIMS ALLEGED IN THE FAC AND PREMIUMS PROOF

11               OF ACTUAL VALUE."

12              WHAT'S LSW'S RESPONSE TO THAT POINT.

13              MR. SHAPIRO:  YOUR HONOR, A FEW RESPONSES.

14              FIRST, OUR UNDERSTANDING WAS THIS WAS ACTUAL VALUE.

15              BUT IN ANY EVENT, TO THE EXTENT THAT PLAINTIFFS ARE

16    ARGUING THAT THIS DISCOVERY IS NECESSARY FOR THEM TO DEAL

17    WITH AN ARGUMENT THAT WE HAVEN'T RAISED, WE WOULD SAY IT'S

18    PREMATURE.

19              AND IN ANY EVENT, THE COST OF --

20              THE COURT:  WELL, BUT IT'S NOT GOING TO DO THEM ANY

21    GOOD IF YOU RAISE IT PAST THE DISCOVERY CUT-OFF DATE.

22              MR. SHAPIRO:  WELL, FAIR ENOUGH, YOUR HONOR.  AND

23    THAT WOULD BE AT OUR TREMENDOUS PERIL.

24              THE COURT:  NO, NO.  MAYBE I SHOULD ASK YOU NOW,

25    ARE YOU WILLING TO STIPULATE YOU'RE NOT GOING TO RAISE THAT
```

11

1   ARGUMENT.  AND IF YOU SAY NO, THEN THAT PUTS THIS --

2           MR. SHAPIRO:  I WILL BE -- I'LL BE VERY CLEAR ON

3   THE RECORD.  WE ARE NOT GOING TO ARGUE THAT THERE'S AN OFFSET

4   BASED ON THE COST OF TERM INSURANCE.  THIS IS ABOUT A

5   DIFFERENT PRODUCT, YOUR HONOR.  THERE IS A COST OF INSURANCE

6   COMPONENT FOR THE PERMANENT PRODUCT DISCLOSED IN THE POLICY

7   --

8           THE COURT:  ARE YOU GOING TO ARGUE -- AS I

9   UNDERSTAND IT -- AND I DIDN'T -- IT DIDN'T JUMP OUT AT ME.

10  AND WE CAN DO -- I WANT TO DO THESE ONE AT A TIME, THAT THEY

11  ARE SAYING THAT IF THEY SEEK -- YOU KNOW, ONE REMEDY HERE

12  WOULD BE RESCISSION, RIGHT?

13          MR. SHAPIRO:  YES, YOUR HONOR.

14          THE COURT:  AND THEY'RE SAYING AND IF YOU'RE GOING

15  TO ARGUE THAT THE RESCISSION REMEDY SHOULD -- YOU SHOULD

16  RECEIVE A CREDIT, YOU KNOW, UNDER WHATEVER THEORY, EXPERT

17  TESTIMONY OR WHATEVER, FOR THE DEATH BENEFIT PROTECTION THAT

18  THE PLAINTIFFS RECEIVED DURING THE PERIOD OF TIME THE POLICY

19  WAS IN FORCE, THAT SOMEHOW THEY SHOULDN'T GET A HUNDRED

20  PERCENT BACK OF WHAT THEY PAID FOR THE POLICY BECAUSE IF THEY

21  HAD DIED THEY WOULD HAVE GOTTEN THE BENEFIT OF THE DEATH.

22          MR. SHAPIRO:  OH, ABSOLUTELY.

23          THE COURT:  AND, SO, IF YOU'RE GOING -- IF YOU'RE

24  GOING TO MAKE --

25          MR. SHAPIRO:  IN FACT, WE WOULD MAKE THAT ARGUMENT.

1          THE COURT:  OKAY.  SO, YOU ARE GOING TO MAKE THAT

2     ARGUMENT.

3          SO, THE QUESTION BECOMES THEN DOES DOCUMENT REQUEST

4     100 SEEK INFORMATION RELEVANT TO THAT ARGUMENT OR NOT.

5     BECAUSE THE ANSWER MIGHT BE YOU ARE GOING TO MAKE THAT

6     ARGUMENT, BUT IT'S STILL NOT RELEVANT.

7          MR. SHAPIRO:  IT'S STILL NOT RELEVANT, YOUR HONOR,

8     BECAUSE WE'RE TALKING HERE -- AS I READ THIS.  AND, YOU KNOW,

9     I'M AT SOME RISK OF GETTING LOST IN THE DOCUMENT.  BUT TO THE

10    EXTENT IT HAS TO DO WITH TERM LIFE INSURANCE, IT'S A

11    FUNDAMENTALLY DIFFERENT PRODUCT IN PART BECAUSE IT'S

12    UNDERWRITTEN ON THE BASIS THAT IT EXPIRES AS OPPOSED TO A

13    PERMANENT PRODUCT WHICH IS WITH YOU, YOU KNOW, UNDER AGE 95

14    OR, YOU KNOW, GOD WILLING YOU LIVE BEYOND THAT.

15         SO, THERE'S NO PART OF ANY ARGUMENT THAT WE WOULD

16    MAKE THAT AN OFFSET HAS ANYTHING TO DO WITH AN ENTIRELY

17    DIFFERENT PRODUCT.  IT WOULD BE LIKE MATCHING APPLES AND

18    ORANGES.  THERE IS CERTAINLY A MORTALITY COMPONENT, A COST OF

19    INSURANCE, THAT IS OBVIOUSLY PART OF THE PERMANENT LIFE

20    INSURANCE PRODUCT.  AND THERE IS, IN FACT, YOU KNOW, A FIXED

21    COST OF INSURANCE THAT GOES UP OVER THE YEARS.  AND THAT'S

22    ALL SET AT THE TIME OF PURCHASE.  IT DOESN'T CHANGE AROUND.

23    BUT THAT'S NOT TERM LIFE INSURANCE.  THAT'S THE MORTALITY

24    COMPONENT HERE.

25         AND CERTAINLY ACTUARIES -- AND THIS WOULD BE A

13

1  PRIME EXAMPLE OF SOMETHING THAT BASED ON PUBLISHED

2  COMMISSIONER'S DATA ON WHEN PEOPLE DIE IN AMERICA -- PUBLIC

3  STUFF, THAT ACTUARIES COULD GO BACK AND FORTH ON WHAT THE

4  TRUE VALUE OF INSURANCE COVERAGE WAS IN THE CASE OF ONE OF

5  THE PLAINTIFFS --

6          THE COURT:  BUT SUPPOSE YOU HAVE DOCUMENTS -- I

7  MEAN, THAT YOU'VE ALREADY GET THOSE CALCULATIONS.

8          MR. SHAPIRO:  WE DO.

9          THE COURT:  SO, WHY SHOULDN'T YOU PRODUCE THEM.

10          MR. SHAPIRO:  JUST NOT WITH RESPECT TO THE TERM

11  PRODUCT.  WE WOULD PRODUCE THEM WITH RESPECT TO THE PERMANENT

12  LIFE INSURANCE, WHICH IS AN ENTIRELY DIFFERENT PRODUCT.

13  BECAUSE PERMANENT LIFE INSURANCE HAS TO BE UNDERWRITTEN FOR

14  SOMEONE WHO, LIKE MYSELF, PERSONALLY I'VE GOT A 20-YEAR

15  POLICY.  AND MY INSURANCE COSTS ARE LOWER ON THE 20-YEAR

16  POLICY BECAUSE, YOU KNOW, ALL THINGS BEING EQUAL, I'M

17  PROBABLY GOING TO OUTLIVE THAT 20 YEARS.

18          THE COURT:  WELL, LET'S BACK UP.  YOU JUST TOLD ME

19  THAT IF PLAINTIFFS SUCCEED IN OBTAINING RESCISSION OF THE

20  POLICIES, YOU ARE GOING TO ARGUE THAT THERE SHOULD BE SOME

21  CREDIT --

22          MR. SHAPIRO:  YES, SIR.

23          THE COURT:  -- AFFORDED.

24          MR. SHAPIRO:  YES, SIR.  JUST LIKE, FOR EXAMPLE --

25          THE COURT:  AND WHAT POLICIES ARE WE TALKING --

1   WHEN YOU SAY RESCISSION OF THE POLICIES, WHAT POLICIES ARE WE

2   REFERRING TO?

3           MR. SHAPIRO:  ONLY PERMANENT POLICIES ARE THE ONLY

4   ONES IN THE CASE -- PERMANENT LIFE INSURANCE.

5           THE COURT:  IS THAT RIGHT?

6           MR. BROSNAHAN:  YES.  PROVIDER AND PARAGON.

7           THE COURT:  PROVIDER AND PARAGON.  LET'S BE

8   SPECIFIC.

9           SO, IF PLAINTIFFS -- IF PLAINTIFFS OBTAIN

10   RESCISSION OF PROVIDER AND PARAGON POLICIES, LSW WILL SEEK A

11   CREDIT -- WHAT? -- FOR THE VALUE OF THE DEATH PROTECTION

12   PROVIDED DURING THE PERIOD OF TIME THE POLICIES WERE IN

13   FORCE?

14           MR. SHAPIRO:  YES.  YOU SAID IT NOW PERFECTLY TWICE

15   IN THE SENSE THAT THERE IS ECONOMIC VALUE, YOUR HONOR, TO BE

16   --

17           THE COURT:  NO.  I UNDERSTAND.

18           AND THAT'S WHAT YOU WERE REFERRING TO IN THOSE

19   LINES THAT YOU MENTIONED --

20           MR. BROSNAHAN:  YES, YOUR HONOR.

21           THE COURT:  -- TO ME.  OKAY.

22           SO, THE QUESTION PRESENTED IS DOCUMENT REQUEST

23   NUMBER 100 -- SO, FORGET ABOUT ACTUAL VALUE, PLAINTIFFS'

24   DAMAGES THEORY, BECAUSE I REJECT IT -- NOT THAT I REJECT THE

25   THEORY.  I REJECT THEIR ARGUMENTS THAT HOW WE -- YOU KNOW, I

15

1   WON'T REPEAT MYSELF.

2           BUT NUMBER 100 SAYS,

3           "DOCUMENTS SUFFICIENT TO SHOW YOUR CURRENT

4           AND GUARANTEED COST OF INSURANCE RATES,

5           INCLUDED, BUT NOT LIMITED TO, YOUR COSTS OF

6           INSURABLE TABLES FOR ANY AND ALL TERM LIFE

7           INSURANCE PRODUCTS THAT YOU SELL."

8           NOW, WE WERE JUST REFERRING TO PERMANENT POLICIES,

9   WHICH ARE NOT THE SAME AS TERM POLICIES.

10          MR. SHAPIRO:  THAT'S CORRECT, YOUR HONOR.

11          THE COURT:  SO, HOW DOES -- SINCE THIS REQUEST ASKS

12  FOR INFORMATION REGARDING TERM INSURANCE PRODUCTS, NOT

13  PERMANENT INSURANCE PRODUCTS, HOW IS THIS INFORMATION

14  RELEVANT TO THIS CREDIT THEORY?

15          MR. BROSNAHAN:  YOUR HONOR, THIS IS RELEVANT

16  BECAUSE THE COST OF INSURANCE PER TERM IS A MORE FAIR -- OR

17  THE COURT WOULD BE CERTAINLY FREE TO CONCLUDE THAT IT WAS A

18  MORE FAIR AND REASONABLE MEASURE OF OFFSET THAN THE COST OF

19  INSURANCE THAT'S BUILT INTO THE FRAUDULENT PRODUCTS.

20          BY ASSUMPTION, IF RESCISSION IS BEING GRANTED, THE

21  COURT HAS CONCLUDED THAT THE PLAINTIFFS WERE DEFRAUDED IN

22  PURCHASING THE POLICIES.

23          WE KNOW THAT THE COST OF INSURANCE IS NOT DISCLOSED

24  IN THE ILLUSTRATIONS.  THAT'S ONE OF THE CHARGES THAT WE ARE

25  COMPLAINING ABOUT.

16

1          WE ALSO KNOW FROM VARIOUS DOCUMENTS THAT THEY LOAD

2     MARGINS INTO THEIR COST-OF-INSURANCE CHARGES SO THAT THOSE

3     CHARGES ARE INFLATED.  THEY'RE NOT A TRUE MEASURE OF --

4          THE COURT:  ALL RIGHT.  JUST -- YOU KNOW, YOU'RE

5     STARTING TO WANDER ON ME NOW.  I WANTED TO UNDERSTAND --

6     WE'RE FOCUSING ON NOW THESE LINES YOU POINTED OUT, THE OFFSET

7     FOR THE VALUE OF DEATH BENEFIT PROTECTION.  OKAY.

8          SO, MY QUESTION IS -- WHICH WAS SORT OF BURIED IN

9     THAT PARAGRAPH I THOUGHT YOU WERE TALKING ABOUT YOUR ACTUAL

10    VALUE DAMAGES THEORY.  BUT NOW YOU'VE GOTTEN ME FOCUSED ON

11    IT.  AND I STATED THE ISSUE PRECISELY ACCORDING TO MR.

12    SHAPIRO.

13         SO, THE QUESTION IS, ARE THE DOCUMENTS SOUGHT BY

14    NUMBER 100 OR SOME SUBSET OF THOSE DOCUMENTS IF IT WAS

15    NARROWED RELEVANT TO THIS CREDIT ISSUE?  THAT'S THE ONLY

16    QUESTION.

17         MR. BROSNAHAN:  YES.  SO, THE QUESTION IS HOW IS

18    THE COURT GOING TO DETERMINE THE AMOUNT OF THE OFFSET.

19         THE COURT:  RIGHT.

20         MR. BROSNAHAN:  AND THEY WILL ARGUE -- AND I THINK

21    MR. SHAPIRO HAS ALREADY INDICATED -- THAT THEY WOULD ARGUE

22    THAT THE CORRECT AMOUNT OF THE CREDIT IS THE

23    COST-OF-INSURANCE CHARGE THAT IS FOUND IN THE PROVIDER AND

24    PARAGON POLICIES.

25         AND WE WILL SAY, NO, YOUR HONOR.  THAT IS NOT A

17

1   CORRECT MEASURE OF THE OFFSET BECAUSE THOSE CHARGES ARE

2   INFLATED BY THE FRAUD.

3           AND TO FIND THE CORRECT AMOUNT OF THE CREDIT, YOU

4   HAVE TO LOOK AT OTHER SOURCES.  ONE WOULD BE THE COST OF TERM

5   INSURANCE WHICH IS NOT INFLATED BY THE FRAUD.

6           ANOTHER WOULD BE REQUEST NUMBER 110, WHICH LOOKS TO

7   THE ACTUARY -- IT'S THE MORTALITY TABLES THAT THEY USE WHICH

8   ESTABLISH THE ACTUARIALLY FAIR COST OF THE DEATH BENEFIT

9   COMPONENT.  BUT THAT DOESN'T BUILD IN THEIR EXPENSES OR ANY

10  AMOUNT OF PROFIT IN IT.

11          BUT I THINK THE COURT SHOULD BE ABLE TO LOOK AT

12  BOTH OF THOSE ALTERNATIVE MEASURES TO CONSIDER WHAT IT

13  BELIEVES IS THE CORRECT AMOUNT OF THE OFFSET.  BECAUSE THE

14  COST-OF-INSURANCE CHARGE IN THE PROVIDER AND PARAGON ARE

15  INFLATED BY THE FRAUD.

16          (PAUSE IN PROCEEDINGS.)

17          THE COURT:  SO, 110 IS THE MORTALITY TABLES USED IN

18  PRICING IUL.

19          MR. BROSNAHAN:  YES.  THAT WOULD BE PARAGON AND

20  PROVIDER.

21          THE COURT:  THAT IS PARAGON AND PROVIDER.

22          MR. BROSNAHAN:  YES.  THOSE ARE THE MORTALITY

23  TABLES.

24          THE COURT:  AS OPPOSED TO 100 WHICH TALKS ABOUT

25  TERM.

18

1          MR. BROSNAHAN:  RIGHT.  WE BELIEVE WE SHOULD BE

2    ABLE TO ADDUCE EVIDENCE OF BOTH OF THOSE BECAUSE THE

3    MORTALITY TABLES DON'T HAVE ANY EXPENSE OR PROFIT LOAD IN

4    THEM.  TERM DOES.  IT HAS EXPENSE AND PROFIT LOADS IN IT, BUT

5    THEY'RE DIFFERENT FROM PROVIDER AND PARAGON BECAUSE PROVIDER

6    AND PARAGON'S ARE INFLATED BY THE FRAUD.

7          WE THINK THE COURT SHOULD BE ABLE TO SEE BOTH OF

8    THOSE SETS OF NUMBERS IN DECIDING WHAT IS THE APPROPRIATE

9    AMOUNT OF THE OFFSET.

10          THE COURT:  AND IN YOUR ARGUMENT SECTION ON 110,

11          "BECAUSE PARAGON PROVIDED A BUNDLE OF DIFFERENT

12          ATTRIBUTES INCLUDING THE PURE INSURANCE

13          PROTECTION PROVIDED BY THE DEATH BENEFIT,

14          PLAINTIFFS ARE ENTITLED TO SELL AT THE ACTUAL

15          VALUE OF THIS ATTRIBUTE OF THE POLICIES BY

16          REFERENCE TO THE MORTALITY TABLES."

17          AND YOU DID ARGUE ABOUT THE OFFSETS.

18          SO, BEFORE WE COME BACK TO 101, JUST FOCUSING ON

19    110, WHY ISN'T THAT INFORMATION RELEVANT TO THIS OFFSET

20    ISSUE?

21          MR. SHAPIRO:  IT'S FOCUSING ON 110 --

22          THE COURT:  YES.

23          MR. SHAPIRO:  -- WHICH IS NOT THE TERM.

24          THE COURT:  RIGHT.

25          MR. SHAPIRO:  WE HAVE A WEAKER ARGUMENT.

1          THE COURT:  OKAY.

2          MR. SHAPIRO:  BECAUSE IT'S NOT TERM.  THEY ARE HERE

3   -- THIS REQUEST IS DIRECTED -- IT IS DIRECTED TO THE

4   PRODUCTS AT ISSUE, OR IT COULD BE NARROWED, AT LEAST TO

5   PARAGON AND PROVIDER, THE PRODUCTS AT ISSUE.

6          WE UNDERSTOOD THIS TO BE UNDER ACTUAL VALUE

7   REQUEST.

8          THE COURT:  SO DID I BASED ON WHAT --

9          MR. SHAPIRO:  YES.

10          THE COURT:  -- WHEN YOU MET AND CONFERRED, YOU KNOW

11  --

12          MR. SHAPIRO:  SO, IF I MAY, YOUR HONOR, TAKE MY

13  SHOT AT WHY IT'S NOT RELEVANT.

14          THE COURT:  YES.

15          MR. SHAPIRO:  THE IRRELEVANCE OF THIS ONE -- CARVED

16  OUT-- IS NOT LIKE IRRELEVANT FROM SPACE, WHICH IS

17  EFFECTIVELY, YOUR HONOR, OUR ARGUMENT WITH THE TERM.

18          HERE, THIS CASE HAS BEEN SUSTAINED ON THE BASIS OF

19  FOUR ALLEGED LIES IN THE PRODUCT LITERATURE.  NONE --

20          THE COURT:  BUT THOSE FOUR LIES MIGHT STILL BE

21  SUFFICIENT TO -- I MEAN, I'M NOT GOING TO SPECULATE.  AT THE

22  END OF THE DAY IF THEY GET RESCISSION, RIGHT?  SO, IT DOESN'T

23  REALLY MATTER TO ME -- IT DOESN'T HAVE TO RELATE TO THE FOUR

24  ALLEGED LIES.  IF AT THE END OF THE DAY THE REMEDY IS

25  RESCISSION, THEN, THE ISSUE BECOMES WHAT OFFSET, IF ANY, IS

20

1  LSW ENTITLED TO FOR THE DEATH BENEFIT PROTECTION IT PROVIDED

2  DURING THE PERIOD OF TIME THE POLICIES WERE IN FORCE.

3           IF NUMBER 110 WERE LIMITED TO THE PROVIDER AND

4  PARAGON POLICIES, WHY WOULDN'T THOSE MORTALITY TABLES BE AT

5  LEAST ARGUABLY RELEVANT TO THAT ISSUE.

6           MR. SHAPIRO:  THEY WOULDN'T.

7           THE COURT:  THEY WOULD.

8           MR. SHAPIRO:  NO.  AND WE'VE BEEN THINKING ABOUT IT

9  THAT IN TERMS OF THE ACTUAL VALUES, CALL IT THE --

10          THE COURT:  SO, 110 THEN I WOULD GRANT WITH RESPECT

11 TO THE PROVIDER AND PARAGON POLICIES, RIGHT?

12          SO, NOW, LET'S GO BACK TO 101, WHICH WASN'T

13 DIRECTED TO THE PARAGON AND PROVIDER POLICIES.  IT'S DIRECTED

14 TO TERM INSURANCE.

15          PLAINTIFFS HAVE ARTICULATED A THEORY.  IT'S NOT MY

16 FUNCTION IN RULING ON A DISCOVERY MOTION TO MAKE IT AN IN

17 LIMINE RULING.  YOU KNOW, THIS IS NOT THE SAME AS MY SAYING,

18 YOU KNOW, YOUR COSTS ARE NOT RELEVANT TO THEIR ACTUAL VALUE

19 BECAUSE I LOOKED AT THEIR CASES.  AND THOSE CASES DON'T

20 SUPPORT THEM AT ALL.

21          BUT NOW THEY'VE ARTICULATED A THEORY THAT THEY SAY

22 THEY WOULD ARGUE THAT THE VALUE OF THE DEATH BENEFIT

23 PROTECTION IS -- SHOULD BE MEASURED, YOU KNOW, IF THAT'S AN

24 ATTRIBUTE OF THE POLICY THAT THE EVIDENCE OF THE COST OF

25 PROVIDING IT IN A TERM POLICY IS RELEVANT.  IT'S NOT APPLES