# EXHIBIT C

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

A NEW YORK LIMITED LIABILITY PARTNERSHIP

IOI CALIFORNIA STREET

SUITE 2300

SAN FRANCISCO, CALIFORNIA 94111

415-421-6140

FACSIMILE: 415-398-5030

CHARLES N. FREIBERG
PARTNER
CFREIBERG@KASOWITZ.COM
DIRECT DIAL 415-655-4326

ATLANTA
HOUSTON
MIAMI
NEWARK
NEW YORK

June 22, 2012

**By U.S. Mail and Email**

Jonathan A. Shapiro
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

> Re:     *Walker et al. v. Life Insurance Company of the Southwest*
>         *USDC Case No. CV 10-9198-JVS (RNBx)*

Dear Jonathan:

We write in response to your June 18 letter regarding Howlett Exhibit 12 and Mr. Fleming's June 8 letter regarding Mr. Howlett's deposition errata, respectively.

*Howlett Exhibit 12*

Regarding Howlett Exhibit 12, your "deposition-by-ambush" accusation is ridiculous, as is your accusation that somehow Exhibit 12 should have been produced to you before the deposition. Exhibit 12 was created during a break in the deposition in response to your misleading use of Exhibit 11. Mr. Howlett had never seen Exhibit 11 before, it was created for someone other than Mr. Howlett, and it had fee amounts that were a small fraction of the fees that applied to Mr. Howlett. You could have prepared an exhibit that contained fee numbers relevant to Mr. Howlett, but you chose not to do so and instead utilized an irrelevant and confusing document pertaining to a different policyholder. Exhibit 12 reflects fee numbers that pertain to Mr. Howlett. Exhibit 12 obviously could not have been produced to you before the deposition because we did not know that you planned to use Exhibit 11. Plaintiffs will not agree not to rely on Exhibit 12 or associated testimony, as they may be appropriate evidence in the future, particularly if LSW attempts to use Exhibit 11 or associated testimony.

*Mr. Howlett's Deposition Errata*

The accusations of obstructionism set forth in Mr. Fleming's June 8 letter are unfounded. Mr. Howlett was prepared to begin his April 26 deposition at 9:00 a.m. per the deposition notice you served, but the deposition did not commence until 10:50 a.m. because of an error by the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Jonathan A. Shapiro
June 22, 2012
Page 2

court reporter hired by LSW.  It was this two-hour delay – not any obstructionism on Mr. Howlett's or our part – that resulted in termination of the deposition at 6:30 p.m., when Mr. Howlett had become too tired (after making himself available for a full day) to continue.  At any rate, Mr. Howlett reappeared two weeks later and has provided LSW with seven hours (if not more) testimony.

Your accusations regarding "comical, excessive 'breaks'" are equally baseless and irrelevant.  Since Mr. Howlett provided seven hours of testimony, LSW was not prejudiced by the length of Plaintiffs' recesses, some of which were at LSW's request, and which were, in any event, reasonable under the circumstances.  There is nothing improper in taking breaks during a deposition to consult with a client being deposed.  Quite the opposite, "[c]ounsel's ability to consult with his or her client during a recess protects against misleading questions and inadvertent answers."  William W. Schwarzer, A. Wallace Tashima, & M. Wagstaffe, CAL. FED. CIV. PROC. BEFORE TRIAL § 11:1574 (Rutter Group 2012).  Plaintiffs' counsel had the right and need to use consultations for exactly that purpose for the two longer recesses (*e.g.*, with respect to Exhibit 11).  The other longer recess was at LSW's request, during which we took the necessary time to assess – again, at your request – attorney-client privilege issues implicated by a question you had posed to Mr. Howlett.[1]  In fact, after that break, we allowed Mr. Howlett to answer your question.  None of this constitutes obstructionism.

As for the substance of Mr. Howlett's errata, you are incorrect that the changes made by Mr. Howlett in entries 30 and 31 are improper.  Rule 30(e) broadly provides that a deponent may make changes to a deposition transcript "in form or substance."  Fed. R. Civ. Proc. 30(e)(B).  Although Ninth Circuit courts have held that this rule may be used for "corrective," not "contradictory" changes (*see, e.g., Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005)), entries 30 and 31 of Mr. Howlett's errata do not contradict Mr. Howlett's testimony.  Quite the opposite, they clarify and correct inaccurate answers that Mr. Howlett inadvertently gave after being repeatedly and improperly badgered by Mr. Shapiro's repetitive questioning.  Mr. Shapiro asked Mr. Howlett whether certain cost information had been provided to him by Mr. Cooper, and Mr. Howlett testified *five times*, subject to counsel's asked and answered objections, that he did not recall receiving certain cost information from Mr. Cooper – which is precisely what his corrected testimony states.  Unsatisfied with Mr. Howlett's answer, however, Mr. Shapiro improperly persisted in asking Mr. Howlett the same question over and over and over again:

> Q. Is it your testimony, sir, that the numbers that are handwritten on Exhibit No. 12 were never provided to you by Mr. Cooper in any form?
>
> THE WITNESS: *I don't recall receiving information like this from Mr. Cooper.*

---

[1] You also mischaracterized the length of certain recesses on the record as being longer than they actually were.  *Compare* Tr. at 228:21-23 (Mr. Shapiro stating that Plaintiffs had taken a 25-minute break followed by a 45-minute break), *with* Tr. at 214:15-16 (court reporter recording recess of 20 minutes), *and* Tr. at 228:10-12 (court reporter recording recess of 34 minutes).

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Jonathan A. Shapiro
June 22, 2012
Page 3

Q. Okay. One more time I'm going to ask the question. Is it your testimony, sir, that the numbers that are handwritten on Exhibit 12 were never provided to you by Mr. Cooper in any form?

MR. FREIBERG: Objection, asked and answered.-

THE WITNESS: *I don't recall him providing this kind of information in this detail.*

BY MR. SHAPIRO:
Q. Fair enough. Putting aside the format, the font, or the organization, is it your testimony, sir, that Mr. Cooper never provided you the cost information and handwriting on Exhibit 12 in any form, oral or written?

MR. FREIBERG: Objection. Asked and answered, vague and ambiguous.

THE WITNESS: I don't recall – *I don't recall him providing this information as provided in handwriting in this form*

BY MR. SHAPIRO:
Q. So if Mr. Cooper had a memory of telling you – strike that. So if Mr. Cooper had a memory of telling you about these costs, would you think he was lying?

MR. FREIBERG: Objection, improper hypothetical, calls for speculation, lacks foundation.

THE WITNESS: I have no idea.

BY MR. SHAPIRO:
Q. You just don't know either way. Correct?

MR. FREIBERG: Objection, asked and answered.

THE WITNESS: I'm not clear what the question is.

BY MR. SHAPIRO:
Q. You have no memory either way whether Mr. Cooper told you about these costs?

MR. FREIBERG: Objection, misstates the testimony of the witness.

THE WITNESS: *I don't recall him providing this information.*

BY MR. SHAPIRO:
Q. Are you testifying that he didn't or that you just don't know?

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Jonathan A. Shapiro
June 22, 2012
Page 4

      MR. FREIBERG:  Objection, misstates the testimony of the witness, vague and ambiguous.

      THE WITNESS:  *I don't recall ever receiving information like this from Mr. Cooper.*

      BY MR. SHAPIRO:
      Q.  I just want to be clear on this point, Mr. Howlett.  Are you testifying that you don't remember whether or not he provided the information, or you were testifying that he did not?

      MR. FREIBERG:  Objection, Counsel.  He has testified now three times that he doesn't recall ever receiving this information from Mr. Cooper.  You have now asked him a fourth time the same question over and over.  So this question has been asked and answered, you are now on the fourth time you have asked him, and you just don't like the answer that he's given you.  So enough is enough.

      Q.  I don't understand the answer he's given me.

      MR. FREIBERG:  Yes, it's clear –

      BY MR. SHAPIRO:
      Q.  Do you understand the question, sir?

      A.  Yes.

      Q.  Please be clear in your answer.

      MR. FREIBERG:  Objection.

      BY MR. SHAPIRO:
      Q.  Did he share this information with you orally?  Yes, or no, or I just don't know.

      MR. FREIBERG:  Objection, asked and answered.  This is the fourth time, Counsel.

      THE WITNESS:  I – I don't recall.

      BY MR. SHAPIRO:
      Q.  Is it possible that he provided you the information and you just don't remember it?

      A.  I really don't recall.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Jonathan A. Shapiro
June 22, 2012
Page 5

*See* Tr. at 273:20-277:6 (emphases added).

      In fact, Mr. Howlett promptly realized that he had given inaccurate answers in response to Mr. Shapiro's unduly repetitive and harassing questioning, and he corrected those answers on the record later in the deposition:

> BY MR. FREIBERG:
> Q. Mr. Howlett, did Mr. Cooper tell you before you bought your policy from LSW in writing or orally that you would have to pay six percent of each premium you put into the policy on top of the administrative charge?
>
> A. *I don't recall him telling me that.*
>
> Q. Mr. Howlett, did Mr. Cooper tell you in writing or orally before you bought your policy from LSW that you would have to pay in your first year a cost of insurance charge of in excess of $5,000 on top of the administrative charge shown in the July illustration?
>
> A. *I don't recall him telling me that.*
>
> Q. Mr. Howlett, did Mr. Cooper tell you before you bought your policy from LSW in writing or orally that you would have to pay approximately $25,000 in your first year for that policy?
>
> A. *I don't recall him telling me that.*

*See* Tr. at 277:21-278:13 (emphases added).

      Entries 30 and 31 are not contradictory changes, therefore, but changes that are consistent with Mr. Howlett's testimony on the topic of costs and that correct inaccurate responses that were only provided because of Mr. Shapiro's repeated harassment of Mr. Howlett. LSW cannot improperly badger a witness and subsequently prevent the witness from correcting the error caused by that improper conduct. *See Peterson v. Memorial Hosp. of Laramie Cty.*, 2003 U.S. Dist. LEXIS 27984, at *4-6 (D. Wyo. May 30, 2003) (deposing counsel may not engage in "the [inappropriate and disruptive] practice of asking and re-asking the same question over and over again, with the hope of soliciting a different response"). LSW's repetitive and harassing questioning – not Mr. Howlett's corrective errata – was improper. *Id.*; *Hardaway v. Withrow*, 147 F. Supp. 2d 697, 704 (E.D. Mich. 2001) (sustaining asked and answered objection where witness had answered the same line of questioning four times), *rev'd in part on other grounds.*

      Accordingly, Plaintiffs do not agree to withdraw the changes in entries 30 and 31 from Mr. Howlett's errata. Nor is there any justification to strike the corrected responses. Further, if LSW moves to strike these entries, Plaintiffs will seek a ruling on Plaintiffs' objections to this

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Jonathan A. Shapiro
June 22, 2012
Page 6


line of questioning – including their asked and answered objections – and will seek to exclude Mr. Shapiro's repetitive questions and the corresponding answers.

If you would like to meet and confer regarding these matters further, we are available next week on June 27, after 10:30 a.m.

Sincerely,

Charles N. Freiberg

CNF/JTB/jac

cc:    James Lux, Esq. (via email only)
       Timothy Perla, Esq. (via email only)
       Andrea Robinson, Esq. (via email only)
       Joel Fleming, Esq. (via email only)
       Brian P. Brosnahan, Esq. (via email only)
       Jacob N. Foster, Esq. (via email only)
       Jeanette T. Barzelay, Esq. (via email only)