JONATHAN A. SHAPIRO (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:   (650) 858-6101
Fax:   (650) 858-6100
jonathan.shapiro@wilmerhale.com

ANDREA J. ROBINSON (PRO HAC VICE)
TIMOTHY J. PERLA (PRO HAC VICE)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>                    Defendant. | CASE NO.:  CV 10-9198 JVS (RNBx)<br><br>**LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF PATRICK L. BROCKETT**<br><br>Judge:        Hon. James V. Selna<br>Date:         Sept. 10, 2012<br>Time:         1:30p.m.<br>Courtroom:  10C |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

    I.      Summary Testimony Is Not Expert Testimony, At Any Stage ...........................2

    II.     Whether Dr. Brockett Was Opining On Consumer Understanding, Or Merely Summarizing Plaintiffs' Allegations, His Statements Must Be Stricken ...........................4

    III.    Dr. Brockett Is Not Qualified To Render An Expert Opinion In This Case.......................6

        A.     Dr. Brockett Is Not an Actuary But Gave an Actuarial Opinion ...........................6

        B.     Dr. Brockett's Recent Adoption of a Fraud on the Market Theory Strays Even Further From His Expertise ...........................9

CONCLUSION..................................................................................................11

ActiveUS 100492580v2

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

CASES

4

5

*Amakua Dev. LLC v. Warner*,
    05 C 3082, 2007 WL 2028186 (N.D. Ill. July 10, 2007) ............................................4

6

7

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) ............................................11

8

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ............................................11

9

10

*Connecticut Ret. Plans & Trust Funds v. Amgen Inc.*,
    660 F.3d 1170 (9th Cir. 2011) ............................................11

11

12

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................1, 2

13

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*,
    96 F.3d 135 (5th Cir. 1996) ............................................1, 2, 4, 9

14

*Goodman v. Harris County*,
    571 F.3d 388 (5th Cir. 2009) ............................................4, 5

15

16

*Grand Acadian Inc. v. United States*,
    101 Fed.Cl. 398 (Fed. Cl. 2011) ............................................3

17

18

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009) ............................................11

19

20

*In re Google AdWords Litig.*,
    2012 WL 28068 (N.D. Cal. Jan. 5, 2012) ............................................9

21

*Krall v. Life Ins. Co. of the S.W.*,
    Case No. 8:09-cv-01043-JVS-RNB, Dkt. 29 (Mar. 3, 2010) at 3 ............................................8

22

23

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ............................................7

24

25

*Pelster v. Ray*,
    987 F.2d 514 (8th Cir. 1993) ............................................3

26

REPLY IN SUPPORT OF MOTION TO STRIKE
DECLARATION OF PATRICK L. BROCKETT, 10-9198-JVS(RNBx)

ActiveUS 100492580v2

*Spielholz v. Los Angeles Cellular Telephone Co.*,
    No. BC 186787, 2002 WL 34421007 (Cal. Sup. Oct. 23, 2002) ...........................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...............................................................................2

*Williams v. Illinois*,
    132 S.Ct. 2221 (2012) ...............................................................................3

OTHER AUTHORITIES

Actuaries, QUALIFICATION STANDARDS FOR ACTUARIES ISSUING STATEMENTS OF
    ACTUARIAL OPINION IN THE UNITED STATES, Appendix 1 (Jan. 1, 2008),
    http://dev.actuary.org/files/qualifation_standards.pdf ..................................6

Black's Law Dictionary (9th ed. 2009) .....................................................6

F.R.E. 701(c) .......................................................................................5

Fed. R. Evid. 702...............................................................................4, 5

Order on Motion to Dismiss, Dkt. 112 .....................................................9

Rules 701 and 702...............................................................................5

ActiveUS 100492580v2

Defendant Life Insurance Company of the Southwest ("LSW") hereby submits this Reply in Support of its Motion to Strike the Declaration of Patrick Brockett.

## INTRODUCTION

The Opposition reaffirms that the Court should strike Dr. Brockett's Declaration. Plaintiffs readily admit that the Dr. Brockett is no expert on subjects covered in his Declaration, including consumer behavior. They also acknowledge that portions of the Declaration are not Dr. Brockett's opinions at all, but rather are (hearsay) recitations of case background learned from counsel and/or the complaint. None of this is appropriate expert testimony. And nothing Plaintiffs argue can alter that conclusion.

*First*, the Court must not accept Plaintiffs' attempt to defend Dr. Brockett's hearsay summaries of allegations on the ground that *Daubert* is relaxed when no jury is present. The Ninth Circuit rejected that argument last year and held that *Daubert* applies on class certification. The Supreme Court recently reaffirmed that experts cannot properly be used as conduits for hearsay, ever.

*Second*, if, as Plaintiffs concede, Dr. Brockett is not a consumer behavior expert, then he cannot opine on that topic, period. Plaintiffs' argument that some of the challenged statements are "well supported" is both incorrect and beside the point: an expert cannot properly stray from his expertise.

*Third*, Plaintiffs' argument that Dr. Brockett's opinion is "statistical", not "actuarial", is myopic. Dr. Brockett admitted during deposition that he sought to render an actuarial opinion in his report, which is the only fair conclusion because he employed many actuarial techniques (mortality tables, present value discounting, Monte Carlo simulations) in his analysis. Whether some of those techniques, in a vacuum, have non-actuarial applications is irrelevant: Dr. Brockett used them to value life insurance—a core actuarial task that he is not qualified to perform.

*Finally*, Dr. Brockett cannot bolster his qualifications or salvage his opinion by asserting that he has used a "market" (or fraud on the market) theory of damages that does not depend on individualized valuation or disclosure. That damages theory is not

ActiveUS 100492580v2

recognized for the claims at issue, and Dr. Brockett is unqualified to opine on it.

## ARGUMENT

## I.   SUMMARY TESTIMONY IS NOT EXPERT TESTIMONY, AT ANY STAGE

Plaintiffs do not dispute that portions of Dr. Brockett's Declaration contain mere summaries of allegations or background.  *See, e.g.*, Opp. 4 (arguing that testimony is not "speculation" because it is "merely background information about Plaintiffs' claims or the life insurance industry generally.").  As detailed below, they even try to salvage some of his statements by contending that they are mere summary material, and not expert opinion.  *See infra* § II.  However, such summaries are not appropriate expert testimony.

*First*, Plaintiffs cannot avoid *Daubert* standards by arguing that anything goes because only the Court, not a jury, will review the Declaration.  *See* Opp. 10.  In *Ellis v. Costco Wholesale Corporation*, the Ninth Circuit held that a district court *must* apply *Daubert* to evaluate expert testimony submitted in support of a motion for class certification.  657 F.3d 970, 982 (9th Cir. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553-54 (2011) ("The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so[.]").  Thus, any of Brockett's "'inference[s] or assertion[s] must be derived by the scientific method' to be admissible." *Ellis*, 657 F.3d at 982 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).  Here, as Plaintiffs admit, Brockett's assertions include repeated recitations of Plaintiffs' claims or his interpretation of deposition testimony. *See* Opp. 5-6.  These are not assertions derived by the scientific method and are not admissible as expert testimony.[1]

---

[1] Moreover, Plaintiffs' argument for lax *Daubert* standards on class certification is backwards.  On class certification, even if expert evidence is admissible under *Daubert*, the Court still must delve into the merits and conduct a "rigorous analysis" of that evidence that is *even stricter* than trial admissibility standards.  *See Ellis*, 657 F.3d at 982.

ActiveUS 100492580v2

In fact, the Supreme Court has recently amplified and reaffirmed that expert testimony must not stray beyond the declarant's expertise, because allowing that would create hearsay concerns:

> [T]rial courts can screen out experts who would act as conduits for hearsay by strictly enforcing the requirement that experts display genuine 'scientific, technical, or other specialized knowledge' to help the trier of fact understand the evidence or determine a fact at issue.

*Williams v. Illinois*, 132 S.Ct. 2221, 2241 (2012).  But using Dr. Brockett as a "conduit for hearsay" is precisely what Plaintiffs are attempting to do.  *See id.; Grand Acadian Inc. v. United States*, 101 Fed.Cl. 398,  4-5-07 (Fed. Cl. 2011) (recitations contained in an expert report are inadmissible hearsay); *Pelster v. Ray*, 987 F.2d 514 (8th Cir. 1993) (expert's recounting of evidence outside of area of expertise constitutes inadmissible hearsay).  Dr. Brockett is a statistician, not an expert in the Plaintiffs' allegations, or in the "background" of this case.   The Court's gatekeeping function is to screen this material out.

*Second,* it is irrelevant whether or not some of the summaries contain "reliable and pertinent information about the relevant regulatory scheme and LSW's illustrations." Opp. 1.  The relevant question is the *scope of Dr. Brockett's* expertise, and not whether statements he made are "pertinent."  No one disputes that the "relevant regulatory scheme" is "pertinent." Opp. 1.  It is certainly pertinent that *none* of regulations requires disclosure of *any* of the information demanded in Plaintiffs' omission claims.  But these are not statistical issues, and Brockett is no expert about the regulations governing illustrations.  *See* Fleming Dec., Ex. A ("Brockett Dep.") 125:10-11 ("I have nothing to say about the NAIC regulations."); Brockett Dep. 260:1-7 ("Q… Do you have any understanding whatsoever of what the NAIC model insurance reg says about costs and fees are supposed to be illustrated?... A. That was not part of my charge. I have not read the NAIC regulations for that purpose.").   Dr. Brockett's summaries, pertinent or not, are outside of his expertise.  As a result, they are not appropriate expert testimony.  *See*

*Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (an expert may not "go beyond the scope of his expertise in giving his opinion.").

Many of Dr. Brockett's sweeping assertions suffer from this flaw. For example, Plaintiffs argue that Brockett may appropriately give an expert opinion that "sales illustrations are the primary tools used by agents to solicit new customers" because he cites testimony from an LSW employee that illustrations are provided to customers and are important. *See* Opp. 13. Similarly, Plaintiffs argue that Dr. Brockett may opine that "LSW is aware that its illustrations are deceptive" because he read an email chain among LSW executives. *See* Opp. 7 n.2. In both cases, however, Dr. Brockett is merely drawing inferences from selected evidence, on a subject outside of his expertise. There is nothing about Dr. Brockett's knowledge, skill, experience, training or education that makes him specially qualified for the task. *See* Fed. R. Evid. 702; *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (experts' "opinion of dishonesty goes beyond the scope of expertise. They looked at boxes of documents and… concluded that O'Dom was dishonest. Their conclusion will not substitute for evidence of dishonesty."); *Amakua Dev. LLC v. Warner*, 05 C 3082, 2007 WL 2028186, at *16 (N.D. Ill. July 10, 2007) (striking expert testimony where testimony was opinion beyond the scope of expert's expertise and "based on anecdotes he collected from others in the field, not his own experience.").

## II.    WHETHER DR. BROCKETT WAS OPINING ON CONSUMER UNDERSTANDING, OR MERELY SUMMARIZING PLAINTIFFS' ALLEGATIONS, HIS STATEMENTS MUST BE STRICKEN

In its Opening Memorandum, LSW challenged portions of Dr. Brockett's Declaration in which he purports to opine (outside of his expertise) on what consumers understand or how they behave. Plaintiffs' response is confusing and internally inconsistent. They begin by conceding that they "do not offer expert testimony from Dr.

- 4 -

ActiveUS 100492580v2

Brockett about consumer understanding."[2]  *See* Opp. at 1, 4. But then Plaintiffs go on to defend some the offending opinions as being "well supported" (Opp. at 8-9) and others as being mere background summaries (Opp. at 4).  This does not work.  If, as Plaintiffs concede, Dr. Brockett is *not an expert on consumer understanding and behavior, then he may not opine on that topic, period.  See* F.R.E. 701(c) (only an expert may offer opinions requiring "technical, or other specialized knowledge within the scope of Rule 702").  Plaintiffs' argument that some of the offending opinions are "well supported" is both wrong[3] and irrelevant:   Rules 701 and 702 do not contain an exception allowing opinions outside of a declarant's expertise if they are "well supported."  A non-expert simply cannot offer expert opinions.  *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (an expert may not "go beyond the scope of his expertise in giving his opinion").

Plaintiffs fare no better arguing that some of Dr. Brockett's statements about consumer understanding and behavior merely recite or summarize Plaintiffs' allegations, and are not his opinions at all.  *See* Opp. 1, 4 (arguing that some of Dr. Brockett's statements about consumer understanding were preceded—sometimes sentences earlier— by "Plaintiffs contend").  If Dr. Brockett was merely summarizing what Plaintiffs allege, that is problematic because, as addressed above, they are hearsay and they are outside of his expertise.

---

[2] This concession alone is fatal to Plaintiffs' motion for class certification — Plaintiffs' trial plan purports to identify Brockett as their only witness who can describe what matters to policyholders and what information they receive, testimony that they now admit he cannot provide.  Moreover, it is impossible for Brockett to opine about "consumer-side willingness to pay, which turns on the value to the consumer" (Opp. n.6) unless he is an expert in consumer understanding and behavior.

[3] Dr. Brockett's opinions are not well supported.  He takes a highly generic premise ("riskier assets are worth less"), assumes its truth, and then extrapolates inappropriate conclusions regarding what people would pay for particular insurance policies in particular cases.  However, as LSW's Opposition to Class Certification details, insurance policies are sold through individualized interactions that defy such generalities.

ActiveUS 100492580v2

### III.   DR. BROCKETT IS NOT QUALIFIED TO RENDER AN EXPERT OPINION IN THIS CASE

#### A.   Dr. Brockett Is Not an Actuary But Gave an Actuarial Opinion

Dr. Brockett offered opinions regarding the value of life insurance policies to policy owners based on, among other things, statistical calculation of the risks associated with future market performance, statistical calculation of the risks of policy lapse, and a variety of expected mortality rates, all discounted to present value.  This is self-evidently actuarial testimony.  *See, e.g.*, Black's Law Dictionary (9th ed. 2009) (an actuary is a "statistician who determines the present effects of future contingent events; esp., one who calculates insurance and pension rates on the basis of empirically based tables"); *see also* American Academy of Actuaries, QUALIFICATION STANDARDS FOR ACTUARIES ISSUING STATEMENTS OF ACTUARIAL OPINION IN THE UNITED STATES, Appendix 1 (Jan. 1, 2008), http://dev.actuary.org/files/qualifation_standards.pdf (listing "non-guaranteed elements opinion," "actuarial appraisal," "expert testimony," "sales illustrations," and "pricing opinion" as "Statements of Actuarial Opinion").  Dr. Brockett himself admitted as much when he testified that his Declaration was "an actuarial opinion" based on "actuarial calculations" and "subject to the actuarial standards of practice."  Brockett Dep. 7:21-8:18.

Plaintiffs' Opposition ignores this forest for the trees.  They backtrack and argue that Dr. Brockett has not offered an actuarial opinion (deposition admission to the contrary notwithstanding) because, taken *alone*, each of his techniques (mortality tables, present value discounting, Monte Carlo simulations) is not *necessarily* actuarial.  Opp. at 19.  But Dr. Brockett is not performing any of these steps in a vacuum — he is using all of them in constructing a single model to value life insurance.  He can call himself a "statistician" all he wants, but he is not calculating batting averages, he is *valuing life insurance policies.*  The kind of statistician qualified to do that is an actuary.  And, taken *together*, Dr. Brockett's use of numerous actuarial principles to construct an actuarial

ActiveUS 100492580v2

model which generates actuarial results on a profoundly actuarial subject renders his expert testimony a "Statement of Actuarial Opinion."  Mem. at 11, 13.

Actuarial opinions may not be rendered except in accordance with a rigid series of self-regulatory requirements, including that they be issued only by members of specified actuarial organizations who have a specified level of actuarial experience, who have passed specified examinations, and who undertake substantial continuing education.  Dr. Brockett does not satisfy these requirements, and the Opposition does not argue otherwise.  Instead, the Opposition gratuitously repeats line items from Dr. Brockett's Curriculum Vitae.  Reply at 2, 19-20.  But the relevant question is not whether Dr. Brockett is a smart or accomplished person, but whether the actuarial opinion he would offer to this Court "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert" in the actuarial field.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  As Dr. Brockett would be prohibited from issuing an actuarial opinion in the field, he cannot be permitted to do so in the courtroom.

Plaintiff are also wrong in arguing that LSW has not advanced "any substantive or methodological criticism of Dr. Brockett in its motion" (Opp. at 3).  LSW believes that Dr. Brockett's entire method is fundamentally flawed because it is based on the incorrect assumption that purchasers are *always* exposed to illustrations and are exposed to illustrations *only*.  Dr. Brockett's report did not describe the vast majority of the calculations that he claims to have performed, so it is difficult for LSW to even know, let alone criticize, how he performed those calculations.  In fact, because Dr. Brockett's analysis was not subject to peer review, no disinterested actuary has ever had any chance to see his analysis.[4]  In any event, the few steps in Dr. Brockett's methodology that he

---

[4] Plaintiffs' assertion that peer review of Dr. Brockett's analysis is unnecessary because certain of the techniques he employed, performed by others (presumably certified actuaries), have been peer reviewed in the past.  Opp. 17 n.5.  This is nowhere near sufficient.  Dr. Brockett combined several techniques—some of which he has shown to be peer reviewed, some not—in a unique methodology.  Plaintiffs have made no showing that there has been any peer review of the *combination* of techniques that comprised Dr. Brockett's methodology in this case.

does describe are riddled with errors, as described in depth in the Pfeifer Declaration. *See generally* Declaration of Timothy Pfeifer (Dkt. 253) ¶¶ 6-7, 11-65.[5]

For example, Dr. Brockett asserts that LSW has "significantly higher projected lapse rates" of 12-15%, but that is not true — the 12-15% number he cites is a projection of *surrender rates*. Obviously, the dynamics that would cause a policy to lapse are radically different than those in which a policyholder decides to surrender their policy. Moreover, Dr. Brockett baldly asserts that an illustration provides non-guaranteed information "concerning the policy's *expected* value." Brockett Declaration in Opposition to Motion to Strike at 8 (emphasis added). But this Court has already held that it is "simply not plausible" for policyholders to expect that they would get the non-guaranteed values contained in LSW's illustrations. *Krall v. Life Ins. Co. of the S.W.*, Case No. 8:09-cv-01043-JVS-RNB, Dkt. 29 (Mar. 3, 2010) at 3.[6]

Of course, even if Plaintiffs are correct and Dr. Brockett's opinion is not actuarial, that just raises a separate fatal problem. Plaintiffs' proposed model for calculating damages *requires actuarial calculations* in order to compare two different appraised values for life insurance policies, based on assumed levels of risk, assumed mortality rates, and present-value discounting. An actuary needs to do that sort of work and any valid approach would be actuarial in nature (in addition to being individualized). If Plaintiffs are now disclaiming that they have offered a damage model that is actuarially sound, that is an independent reason to strike Dr. Brockett's Declaration (as unreliable

---

[5] Plaintiffs assert that Pfeifer's declaration was somehow deficient because it did not comply with standards of the Academy of Actuaries. Opp. n.7. This is an odd charge for Plaintiffs to make — since their own expert candidly admits that he is not complying with the Academy's rules. In any event, the rule does not require any particular form of words, and Pfeifer's Declaration fully complies. Fleming Dec., Ex. B ("Pfeifer Dep.") 66:1-75:10.

[6] Similarly, Brockett asserts that illustrations are "central" to sales—without speaking with a single consumer or ever selling a life insurance policy himself—because it is the only document that "show[s] the buyer the mechanics of the policy." Opp. at 12. But this is not true: *the policy itself shows the mechanics of the policy*, the illustration simply presents some values that may result under disclosed assumptions. And, of course, agents' oral representations may also explain the mechanics of the policy.

REPLY IN SUPPORT OF MOTION TO STRIKE
DECLARATION OF PATRICK L. BROCKETT, 10-9198-JVS(RNBx)

ActiveUS 100492580v2

and irrelevant to any issue before the Court).  And, if Plaintiffs have offered *no witness* to support a damages model, that provide another reason why class certification should be denied.  *In re Google AdWords Litig.*, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) (Plaintiffs must "affirmatively demonstrate[] that restitution can be calculated by methods of common proof").

## B.    Dr. Brockett's Recent Adoption of a Fraud on the Market Theory Strays Even Further From His Expertise

Confronted with challenges to his qualifications (*i.e.* actuarial work by a non-actuary) and analyses (*e.g.,* purporting to model what was "represented" but failing to consider many sources of disclosure), Dr. Brockett now asserts that his damage model is "market" based and *does not depend on individual disclosure or valuation*.  *See* Brockett Reply Dec. ¶¶ 13-21; *id.* 15 n.7 ("Just as an individual's demand does not determine LSW's prices, neither does whether the individual sees or understands the pricing information given in the illustration…").  In essence, he now advances a securities-style "fraud on the market" theory of inflationary damages whereby an alleged lack of information dissemination inflates everyone's purchase price.  This approach has four fatal problems.

*First*, this model *has nothing to do with Plaintiffs' claims.*  Plaintiffs claim that they were harmed because LSW failed to disclose six pieces of information to them, and "would not have purchased" had they known.  *See, e.g.,* Second Am. Compl. ¶ 1 (very first complaint paragraph announcing class action about information that LSW does "not disclose"); *id.* ¶¶ 57, 62, 67 (alleging that named Plaintiffs were damaged because particular information was not told to them); *id.* ¶¶ 59, 64, 69 (alleging that named Plaintiffs "would not have purchased").[7]  But Dr. Brockett proffers a damage model that assigns damages irrespective of disclosures received.  *See* Brockett Dep. 180:11-15 ("Q· ·

---

[7] *See also* Order on Motion to Dismiss, Dkt. 112 at 6 ("Plaintiffs allege that had full disclosure been made, Plaintiffs would have paid less for the policies.").

REPLY IN SUPPORT OF MOTION TO STRIKE
DECLARATION OF PATRICK L. BROCKETT, 10-9198-JVS(RNBx)

ActiveUS 100492580v2

So if a policyholder received, quote, full disclosure, closed quote, on some document other than what you call the illustration, that would not change your analysis? A· That's correct.").[8]

*Second*, fraud-on-the-market damages do not exist for California fraud or UCL claims.  In *Mirkin v. Wasserman*, the California Supreme Court considered and rejected the suggestion that fraud-on-the-market theory could apply to fraud. 5 Cal. 4th 1082, 1108 (1993) ("[T]o incorporate the fraud-on-the-market doctrine into the common law of deceit would only bring about difficulties that the state Legislature and the federal courts have apparently attempted to avoid. … [W]e decline to do so.").  Similarly, in *Rooney v. Sierra Pac. Windows*, the District Court for the Northern District of California rejected plaintiff's attempt to apply fraud-on-the-market damages under the UCL, noting that (like Plaintiffs here) he had failed to cite any authority supporting such an expansion of the doctrine. 10-CV-00905-LHK, 2011 WL 5034675, at *10 (N.D. Cal. Oct. 11, 2011) ("Plaintiff has failed to cite any authority applying *Blackie*, which applied a 'fraud on the market' theory to securities fraud, to a consumer case under the UCL.").

*Third*, Dr. Brockett is not qualified to advance this latest inflation theory of damages because he is no expert on market efficiency.  He testified that market efficiency *is not relevant* to his analysis.  *See* Brockett Dep. 188:15-21 ("Q. Are you familiar with the term "efficient to market"? [*sic*] A. Yes. Q. Is there an efficient market for these products? A I -- I don't know that that's a relevant term for this.").  His CV does not contain any references to expertise in market efficiency, and his Declaration does not assert that he is an expert in it.  In short, by delving into an efficient market theory of damages, he has now *strayed even further* from his areas of expertise.

---

[8] *See also id.* 281:18-282:2 ("Q… Earlier you said if I told one person the absolute truth, that that wouldn't matter one lick to your analysis, right?  A· · Correct… Q· · What if I stood at the corner of California and Embarcadero with one of those big signs and said it? Would that be good enough? A. No.").

1

2

3

4

5

6

7

8

*Finally*, likely because Dr. Brockett is well outside of his expertise, he made an obvious and fatal error.  The pre-condition for inflationary or "market" damages is an efficient market.  *See, e.g.*, *Connecticut Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011) ("[T]he district court was correct to require Connecticut Retirement to prove at the class certification stage that the market for Amgen's stock was efficient[.]") *cert. granted*, 132 S. Ct. 2742, 183 L. Ed. 2d 614 (U.S. 2012).  But Dr. Brockett and Plaintiffs have not attempted to show that the market for Paragon and Provider is efficient.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Nor could they.  All five of the *Cammer* factors weigh against that finding.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 613 (C.D. Cal. 2009) (applying *Cammer* factors to determine market efficiency). Specifically: (1) Paragon and Provider policies do not "trade[] at a high weekly volume;"  (2) "securities analysts" do not "follow and report on" the products; (3) the policies do not have "market makers and arbitrageurs;" (4) no "SEC registration form S-3" is filed in connection with Paragon or Provider policies; and (5) there are no "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the… price." *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)). *See also Spielholz v. Los Angeles Cellular Telephone Co.*, No. BC 186787, 2002 WL 34421007 (Cal. Sup. Oct. 23, 2002) (declining to apply fraud-on-the-market in consumer fraud case under Consumer Legal Remedies Act; denying motion for class certification) ("In non-securities cases…there is no public market such that one can assume that any available false information necessarily affects a market price.").

23

## CONCLUSION

24

25

For the foregoing reasons, LSW's Motion to Strike the Declaration of Patrick Brockett should be granted.

26

ActiveUS 100492580v2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND
DORR LLP


By:  */s/ Jonathan A. Shapiro*
    Jonathan A. Shapiro
    Andrea J. Robinson
    Timothy J. Perla

DATED:  August 27, 2012    Attorneys For Defendant
    Life Insurance Company of the Southwest

REPLY IN SUPPORT OF MOTION TO STRIKE
DECLARATION OF PATRICK L. BROCKETT, 10-9198-JVS(RNBx)

ActiveUS 100492580v2

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, California 94304.  On August 27, 2012, I served the within document(s):

REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF PATRICK BROCKETT

I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail addressed as set forth below.

I personally caused to be hand delivered the document(s) listed above to the person(s) at the address(es) set forth below.

I emailed the document(s) listed above to the person(s) at the address(es) set forth below.

☒ I electronically filed the document(s) listed above via the CM/ECF system.

Brian P. Brosnahan
(bbrosnahan@kasowitz.com)
Charles N. Freiberg j
(cfreiberg@kasowitz.com)
Jacob N. Foster
(jfoster@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111

Harvey R. Levine
(lsmh@levinelaw.com)
LEVINE & MILLER
550 West C. Street, Suite 1810
San Diego, CA 92101-8596

/s/ Joel A. Fleming
Joel A. Fleming

ActiveUS 100492580v2