**EXHIBIT A**

145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

208 Cal.App.4th 201

Court of Appeal, First District, Division 5, California.

Diane TUCKER et al., Plaintiffs and Appellants,

v.

PACIFIC BELL MOBILE SERVICES et al., Defendants and Respondents.

No. A132619.  |  Aug. 7, 2012.

**Synopsis**

**Background:** Subscribers brought putative class action against cellular telephone service providers for alleged violations of Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA) in allegedly making false and deceptive representations in the promotion, marketing, and sale of airtime bucket plans. The Superior Court, San Mateo County, No. CIV436164, Robert D. Foiles, J., sustained demurrer to class allegations without leave to amend. Subscribers appealed.

**Holdings:** The Court of Appeal, Bruiniers, J., held that:

[1] subscribers failed to allege community of interest on issue of causation as to fraud and CLRA claims;

[2] subscribers failed to allege community of interest on issue of reliance as to UCL restitution claims;

[3] subscribers failed to allege measurable amount of classwide restitution under UCL; but

[4] subscribers stated claim for classwide injunctive relief under UCL.

Affirmed in part and reversed in part.

**Attorneys and Law Firms**

**\*345** Franklin & Franklin, J. David Franklin, San Diego; Law Offices of Anthony A. Ferrigno and Anthony A. Ferrigno, Walnut Creek, for Plaintiffs and Appellants.

Drinker Biddle & Reath, Michael J. Stortz and Beth O. Arnese, San Francisco, for Defendants and Respondents.

**Opinion**

BRUINIERS, J.

Plaintiffs alleged that the defendant wireless telephone companies (collectively, Defendants)[1] made material misrepresentations to the consuming public as to the actual number of usable (i.e., conversational) airtime minutes in advertised subscriber rate plans.[2] The trial court sustained Defendants' demurrer to the class action allegations of the fifth amended complaint without leave to amend, relying in part on *Knapp v. AT & T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 944, 124 Cal.Rptr.3d 565 (*Knapp* ), involving similar allegations. We reverse as to dismissal of Plaintiffs' equitable claims under the unfair competition law (UCL; Bus. & Prof.Code, § 17200 et seq.),[3] and otherwise affirm.

**\*346 I. BACKGROUND**

[1] Plaintiffs'[4] complaint, originally filed in December 2003, challenged Defendants' disclosures of the practice of billing for airtime in full minute increments, with partial minutes of use rounded up.[5] Plaintiffs alleged that Defendants' advertisements and other promotional materials misrepresented or inadequately disclosed this rounding up policy, in violation of the UCL and the false advertising law (§ 17500 et seq.). Plaintiffs filed their fifth amended complaint (FAC) in this action in approximately February 2011. The first three causes of action of the FAC assert claims under the UCL. The first cause of action claims unlawful

business practices, the second cause of action alleges unfair business practices, and the third cause of action sets forth a claim for fraudulent business practices. The fourth cause of action claims fraud by Defendants. The fifth cause of action asserts a claim for the violation of the Consumer's Legal Remedies Act (CLRA; Civ.Code, § 1750 et seq.) Plaintiffs sought to represent a class composed of "all consumers who have subscribed to a term contract for wireless telephone service in California from one or more of the Defendants herein, at any time from and after January 1, 1999 until the present time." Plaintiffs requested damages, restitution, and injunctive relief.

Defendants demurred to the class allegations of the FAC on the ground that there was no reasonable probability Plaintiffs could certify a class following the decision in *Knapp,* and that Plaintiffs were collaterally estopped from doing so. Defendants requested judicial notice of portions of the papers Plaintiffs had filed in support of their motion for leave to file the FAC, of trial court pleadings filed in *Ball,* of the then unpublished appellate decision in *Knapp,* and of the operative trial court pleading at issue in *Knapp.* Plaintiffs also filed a request seeking judicial notice of prior pleadings in the instant case, certain trial court pleadings in *Ball,* and a declaration filed on behalf of Cingular Wireless in the Alameda County Superior Court in coordination proceedings seeking to compel arbitration (*Cellphone Termination Fee Cases,* JCCP No. 4332).

A hearing on the demurrer was held on June 17, 2011. The court granted the unopposed requests for judicial notice of both parties. The demurrer of the Defendants to the class allegations of the FAC was sustained without leave to amend. [6]  **\*34** Citing *Knapp,* the trial court concluded that "there is no reasonable possibility that Plaintiffs can establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact."

[ ]  The court entered its order after hearing on July 1, 2011. A timely notice of appeal was filed on July 13, 2011. [7]

## II. DISCUSSION

Plaintiffs contend that the trial court erred in making a determination of class sufficiency at the pleading stage, and in its reliance on *Knapp,* which Plaintiffs insist is a case involving the policies, practices and procedures of a completely separate entity in the marketing and sale of rate and service plans.

[3]   [4]   We first note our standard of review in this circumstance. We do not consider here the denial of a motion for class certification. In that instance, " '[b]ecause trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.... [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation].... "Any valid pertinent reason stated will be sufficient to uphold the order." ' " [Citations.]" (*Sav–On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327, 17 Cal.Rptr.3d 906, 96 P.3d 194.)

[5]   "On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' [Citation.] We may also consider matters that have been judicially noticed. [Citations.]" (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42, 105 Cal.Rptr.3d 181, 224 P.3d 920.) " '[W]hen the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former. [Citations.]' [Citation.] We give the same precedence to facts evident from exhibits attached to the pleading. [Citations.]" (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300, 128 Cal.Rptr.3d 109.)

[6]   If denying class certification, the trial court must state at least one valid reason for denying the motion. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440, 435–436, 97 Cal.Rptr.2d 179, 2 P.3d 27 (*Linder* ).) If a demurrer is sustained, we exercise our independent judgment on whether a cause of action has been stated as a matter of law, regardless of reasons stated by the trial court. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111, 55 Cal.Rptr.3d 621.) We affirm if the trial court's **\*34**  decision was correct on any theory. (*Gutierrez v. California Commerce Club, Inc.* (2010) 187 Cal.App.4th 969, 975–976, 114 Cal.Rptr.3d 611 (*Gutierrez* ).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.) Leave to amend should not be granted where amendment would be futile. (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1100, 13 Cal.Rptr.3d 343 (*Newell* ).)

"The plaintiff 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law' and 'must show the complaint alleges facts sufficient to establish every element of [the] cause of action.' [Citation.]" (*Sui v. Price* (2011) 196 Cal.App.4th 933, 938, 127 Cal.Rptr.3d 99.)

**A.** *Disposition of Class Actions on Demurrer*

 [7]    The decision whether a case is suitable to proceed as a class action ordinarily is made on a motion for class certification. But our Supreme Court found it "settled" that courts are authorized "to weed[ ] out" legally meritless class action suits prior to certification by demurrer or pretrial motion. (*Linder, supra,* 23 Cal.4th at p. 440, 97 Cal.Rptr.2d 179, 2 P.3d 27.) "When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards." (*Ibid.*) However, a court may decide the question by "sustaining a demurrer to the class action allegations of a complaint only if it concludes as a matter of law that, assuming the truth of the factual allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied. [Citations.]" (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041–1042, 135 Cal.Rptr.3d 905; *Gutierrez, supra,* 187 Cal.App.4th at p. 975, 114 Cal.Rptr.3d 611.)

There is a divergence in intermediate appellate authority on the level of scrutiny to be given to demurrer rulings on class action pleadings, particularly to those sustaining a demurrer. In this District, we have said that "[C]ourts have routinely decided the issue of class certification on demurrer, sustaining demurrers without leave to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.]" (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234, 271 Cal.Rptr. 72 (*Clausing* ); accord, *Silva v. Block* (1996) 49 Cal.App.4th 345, 349, 56 Cal.Rptr.2d 613.) Demurrers may serve "as a screening mechanism for improperly pleaded class action allegations." (*TJX Companies, Inc. v. Superior Court* (2001) 87 Cal.App.4th 747, 752–753, 104 Cal.Rptr.2d 810; see also *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1231–1232, 49 Cal.Rptr.3d 892 ["may be proper at the pleading stage to strike class allegations if the face of the complaint and other matters subject to judicial notice reveal the invalidity  **\*349**  of the class allegations"]; *Newell, supra,* 118 Cal.App.4th at pp. 1101–1102, 13 Cal.Rptr.3d 343 ["[w]hen class certification is challenged by demurrer, 'the trial court must determine whether "there is a 'reasonable possibility' plaintiffs can plead a prima facie community of interest among class members" ' "]; *Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5, 79 Cal.Rptr.2d 897 ["where the invalidity of the class allegations is revealed on the face of the complaint, and/or by matters subject to judicial notice, the class issue may be properly disposed of by demurrer or motion to strike"]; *Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1435, 37 Cal.Rptr.2d 778 ["[b]efore a hearing may be held on the propriety of a class action, the complaint must contain sufficient allegations of class interest or the pleading is vulnerable to a general demurrer"]; *Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 989, 198 Cal.Rptr. 916 ["policy considerations which justify class actions equally compel the dismissal of ... inappropriate actions at the pleading stage"].)

Some courts have stated broadly that "it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage. In other cases, particularly those involving wage and hour claims, class suitability should not be determined by demurrer." [8] (*Prince, supra,* 118 Cal.App.4th at p. 1325, 13 Cal.Rptr.3d 725, fn. omitted; see also *Gutierrez, supra,* 187 Cal.App.4th at pp. 979–980, 114 Cal.Rptr.3d 611 ["well established principle" that " 'only in mass tort actions ... [should] class suitability ... be determined at the pleading stage' "]; accord *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1512, 92 Cal.Rptr.3d 131 (*Tarkington* ).) These cases have concluded that there is a policy disfavoring the determination of class suitability issues at the pleading

stage. (*Prince,* at p. 1325, 13 Cal.Rptr.3d 725; *Gutierrez,* at p. 976, 114 Cal.Rptr.3d 611; *Tarkington,* at p. 1510, 92 Cal.Rptr.3d 131; see also *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59, 27 Cal.Rptr.3d 877; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 487–488, 104 Cal.Rptr.3d 545 (*Arce* ).) We believe such statements are perhaps too broad. These decisions, directly or indirectly, rely on *Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 98 Cal.Rptr. 779 (*Beckstead* ) for the proposition that our Supreme Court "has expressed its disfavor with this practice as applied to class action suits" and "has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation." (*Beckstead,* at pp. 782–783, 98 Cal.Rptr. 779.) *Beckstead* cited four Supreme Court decisions in support of this conclusion: *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (*La Sala* ); *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (*Vasquez* ); *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (*Jones* ); and *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (*Daar* ). We are unable to find any such rule articulated in the cited cases.

In *La Sala, supra,* 5 Cal.3d at p. 868, 97 Cal.Rptr. 849, 489 P.2d 1113, the trial court dismissed a borrowers' class action against the lending bank on the grounds **\*3** that the named plaintiffs no longer represented the class by virtue of a waiver by the lender of a challenged acceleration clause in the lender's deed of trust. The Supreme Court reversed, holding that the plaintiffs had to be afforded an opportunity to amend their pleading to cure the defect, and that the nature of the claims presented did not preclude maintenance of the suit as a class action. (*Id.* at pp. 868–869, 97 Cal.Rptr. 849, 489 P.2d 1113.) The Court said nothing about the propriety of demurrer in these circumstances. In *Vasquez,* the trial court sustained demurrers to the class action aspect of a claim of in consumer installment sales contracts. In doing so, the trial court "made it clear that it was not concerned with the sufficiency of the particular allegations to assert a class action but, rather, that in its view a class action for fraud may not be maintained by consumers." (*Vasquez, supra,* 4 Cal.3d at pp. 805–806, 94 Cal.Rptr. 796, 484 P.2d 964, fn. omitted.) The Supreme Court disagreed on this issue because "plaintiffs may be able to demonstrate a community of interest as to the elements of their claim of fraud" and concluded that the trial court erred in finding that that class allegations were insufficient. (*Id.* at p. 815, 94 Cal.Rptr. 796, 484 P.2d 964.) *Vasquez* did discuss possible procedures which a trial court could utilize in assessing whether plaintiffs could actually demonstrate that the action meets class requirements, including hearing procedures under Civil Code section 1781 and Federal Rules of Civil Procedure, rule 23. (*Vasquez,* at pp. 820–821, 94 Cal.Rptr. 796, 484 P.2d 964.) The Court also observed that these examples were "intended to be illustrative and not exhaustive." (*Id.* at p. 821, 94 Cal.Rptr. 796, 484 P.2d 964) *Jones* was an action by a minority stockholder in a savings and loan association. The Supreme Court reversed the trial court's grant of demurrers without leave to amend on the plaintiff's nonclass fiduciary and derivative causes of action. (*Jones, supra,* 1 Cal.3d at pp. 101, 115, 81 Cal.Rptr. 592, 460 P.2d 464.) The defendants filed a cross-appeal of the trial court's order overruling certain grounds for demurrer, including class action allegations. (*Id.* at p. 119, 81 Cal.Rptr. 592, 460 P.2d 464.) While finding the contested rulings interlocutory and nonappealable, the Supreme Court "deem[ed] it appropriate to comment on defendants' contentions" since the issues might arise again on appeal from a final judgment. (*Ibid.*) The Supreme Court simply observed that "[i]t is apparent that the requisite community of interest exists among the minority shareholders of the Association and that the class is readily ascertainable. The demurrer was properly overruled." (*Id.* at p. 121, 81 Cal.Rptr. 592, 460 P.2d 464.) Finally, in *Daar* the Supreme Court again reversed a trial court order sustaining a demurrer without leave to amend, concluding, on review of the pleadings that each count of the complaint showed the existence of an ascertainable class and a well defined community interest in the questions of law and fact and that, "accordingly, the complaint and each count thereof sets forth sufficient facts to establish a class action." (*Daar, supra,* 67 Cal.2d at p. 717, 63 Cal.Rptr. 724, 433 P.2d 732.) Contrary to *Beckstead*'s characterization, in none of these cases did the Supreme Court "express disfavor" with use of demurrer to challenge the sufficiency of class allegation, nor did the Court "mandate" that a complaint for class action be allowed to survive the pleading stages of litigation "if at all possible." In each instance, the Supreme Court simply found the pleading allegations sufficient to survive demurrer.

Continued reliance on *Beckstead*'s questionable conclusion that consideration of the sufficiency of class action allegations **\*3** by demurrer is disfavored seems especially difficult to reconcile with the Supreme Court's far more recent statement that "nothing prevents a court from weeding out legally meritless suits prior to certification via a defendant's demurrer or pretrial motion. In fact, it is settled that courts are authorized to do so. [Citations.] [¶] When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment,

145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

or summary adjudication) that affords proper notice and employs clear standards." (*Linder, supra,* 23 Cal.4th at p. 440, 97 Cal.Rptr.2d 179, 2 P.3d 27, fn. omitted.)

[ ]  [9]  [ ]  [ ]  [ ]  Our Supreme Court has clearly recognized the substantial benefits inherent in consumer class actions. (See *Vasquez, supra,* 4 Cal.3d at pp. 807–810, 94 Cal.Rptr. 796, 484 P.2d 964.) The Court has also recognized that, while class actions provide a necessary remedy to "large numbers of people [who have been harmed] in small amounts instead of small numbers of people in large amounts," they have the potential to promote injustice as well. (*Linder, supra,* 23 Cal.4th at p. 446, 97 Cal.Rptr.2d 179, 2 P.3d 27.) Therefore, "[w]hen class certification is challenged by demurrer, 'the trial court must determine "whether there is a 'reasonable possibility' plaintiffs can plead a prima facie community of interest among class members...." ' " (*Newell, supra,* 118 Cal.App.4th at p. 1101, 13 Cal.Rptr.3d 343.) "If there is a reasonable possibility the plaintiffs can plead a prima facie community of interest among class members, ' " 'the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation.' " ' [Citation.]" (*Gutierrez, supra,* 187 Cal.App.4th at p. 975, 114 Cal.Rptr.3d 611.) " ' ' " 'The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage.' [Citation.]' [Citation.]" (*Newell,* at p. 1101, 13 Cal.Rptr.3d 343.) "Where a complaint, on its face, fails to allege facts sufficient to establish a community of interest as to the elements of the class claims, it would be a waste of time and judicial resources to require a full evidentiary hearing when the matter can properly be disposed of by demurrer." (*Clausing, supra,* 221 Cal.App.3d at p. 1234, 271 Cal.Rptr. 72.)

## Class Action Requirements

[ ]  [ ]  3  [ ]  4  Our Supreme Court has only recently had occasion to review the requirements for maintaining a class action. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513 (*Brinker* ).) "Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court....' (Code Civ. Proc., § 382; see *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078 [56 Cal.Rptr.3d 861, 155 P.3d 268];  **\*3**  *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701].) Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. (Code Civ. Proc., § 382; *Fireside Bank,* at p. 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268]; *Linder* [, *supra,*] 23 Cal.4th [at p.] 435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; *City of San Jose,* at p. 459 [115 Cal.Rptr. 797, 525 P.2d 701].) 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' (*Fireside Bank,* at p. 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268], quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)" (*Brinker,* at p. 1021, 139 Cal.Rptr.3d 315, 273 P.3d 513, parallel citations omitted.) [9] "To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary. [Citations.]" (*Id.* at p. 1025, 139 Cal.Rptr.3d 315, 273 P.3d 513.)

[ ]  [ ]  [ ]  [ ]  The question here is whether Plaintiffs' complaint adequately presents predominant common questions of law or fact. "Commonality as a general rule depends on whether the defendant's liability can be determined by issues common to all class members: ' "A class may be certified when common questions of law and fact predominate over individualized questions. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.... [T]o determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of

action alleged." ' [Citations.] [¶] 'In examining whether common issues of law or fact predominate, the court must consider the plaintiff's legal theory of liability. [Citation.]' " (*Knapp, supra,* 195 Cal.App.4th at p. 941, 124 Cal.Rptr.3d 565.)

In sustaining Defendants' demurrer in this case to the class allegations without leave to amend, the trial court cited *Knapp* and concluded that "[f]or the same reasons as *Knapp* the members of the proposed class here 'stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned' " and that "there is no reasonable possibility that Plaintiffs can establish a community of interest among the potential class members **\*3 3** and that individual issues predominate over common questions of law and fact."

Plaintiffs, citing *Prince, supra,* 118 Cal.App.4th at page 1326, 13 Cal.Rptr.3d 725, contend that their only pleading obligation is to set forth prima facie claims, alleging facts that "tend to show" that there is an ascertainable class of plaintiffs and questions of law and fact that are common to the class.

### Knapp

The complaint in *Knapp* was filed in the Orange County Superior Court (the Orange County case) by the same law firms representing Plaintiffs here, alleging as in the instant case, fraud and violations of the UCL and CLRA, based on claims that the defendant's "descriptions of its wireless service plans as providing a certain number of minutes each month for a certain rate were misleading in light of the ... billing practice of rounding up any partially used minutes for a call to the next full minute." [10] (*Knapp, supra,* 195 Cal.App.4th at p. 935, 124 Cal.Rptr.3d 565.) The trial court denied a motion for class certification on the ground that common issues did not preponderate. (*Id.* at p. 938, 124 Cal.Rptr.3d 565.) The Fourth District Court of Appeal affirmed, finding that substantial evidence supported the trial court's conclusion that common issues of fact did not predominate over the proposed class " 'because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned.' " (*Id.* at p 943, 124 Cal.Rptr.3d 565.) The certification motion in *Knapp* was based on the contention that the defendant "violated the UCL and the CLRA and engaged in common law fraud by making representations about its service plans which misled Knapp and others to believe that the number of minutes attached to each of [its] service plans were all usable airtime minutes when in fact it [was defendant's] policy to round up partially used airtime minutes to the next full minute for billing purposes." (*Ibid.*) The court found, however, that "[t]he face of the complaint itself reveals that [the defendant's] alleged misrepresentations were not uniformly made to proposed class members. The complaint acknowledges some misrepresentations were oral and others were made in various written materials. [¶] The evidence produced in connection with the motion for class certification confirmed the lack of commonality in representations (or omissions) by [defendant] to members of the proposed class regarding its service plans.... [¶] ... Thus, what business practices were allegedly unfair, unlawful, or fraudulent necessarily turns on an individualized assessment of which representations were made to each proposed class member." (*Id.* at pp. 943–944, 124 Cal.Rptr.3d 565.)

### Plaintiffs' FAC

The operative pleading allegations of the FAC before us, and of the third amended complaint at issue in *Knapp,* are substantially similar, although not identical, as are the theories of recovery. Plaintiffs' counsel, in the court below, asserted that "[t]he misrepresentation that was made by the Defendant in the Orange County case is precisely the same misrepresentation made by the Defendants in the case at bar.... Thus, just as in that case, in the case at bar, the Plaintiffs allege that each and every rate plan offered for sale by the **\*354** defendants in this case contains a material misrepresentation with respect to the actual number of airtime minutes that is contained in each and every rate plan." While insisting that in their briefing that "[t]here is no connection whatsoever between the facts alleged in this case and the facts that formed the basis for the decision of the Court of Appeal in *Knapp,*" Plaintiffs' complaint here similarly reiterates that Defendants "published common misrepresentations in their contract documents, specifically, in their rate plan/service plan brochures. The common representations made by the Defendants set forth that a subscriber or a prospective subscriber can obtain a package of *x* number of airtime minutes at a price per month of *y,*" and that "[t]hese common misrepresentations made to subscribers and prospective subscribers have always been the same in all cases." (FAC, ¶ 16.) They further allege that "[e]ach of the Plaintiffs and each member of the Plaintiff class had to review the standardized service plan/rate plan brochures published by the Defendants at the time that the Plaintiff and each member of the Plaintiff Class were considering whether or not to enter into an agreement for wireless service from the Defendants, since

Case 2:10-cv-09198-JVS-RNB Document 325-1 Filed 09/06/12 Page 8 of 16 Page ID #:14592

each had to select a rate plan/service plan. All of the service plan/rate plan brochures contained the same misrepresentations with respect to each and every package of airtime minutes as described hereinabove." (FAC, ¶ 19.) Plaintiffs acknowledge that each cause of action in the FAC is based on the same underlying facts. Those underlying facts are indistinguishable from those on which the plaintiffs' claims in *Knapp* were premised.

#### Material Judicially Noticed

The trial court took judicial notice, without objection, [11] of portions of the pleadings filed by Plaintiffs in support of their motion for leave to file the FAC, including excerpts from the 2009 deposition testimony of plaintiffs Knapp and Hodge, and a January 11, 2010 declaration submitted by Knapp in the Orange County case. The court also took judicial notice of the declaration of Cingular counsel, Neal Berinhout, submitted in Judicial Council Coordination Proceedings No. 4332 (*Cellphone Termination Fee Cases*), attaching an "Amendment to Cingular Wireless Service Agreement Extension of Service Commitment and Phone Replacement" signed by plaintiff Rel on July 27, 2002. The pleadings and declarations are records of a court of this state and therefore qualified for permissive judicial notice under Evidence Code section 452, subdivision (d).

Knapp testified that she was originally a customer of AT & T Wireless Services, Inc. (AT & T), defendant in the Orange County case, and her testimony focused on her original purchase of wireless service from AT & T. In selecting a rate plan with AT & T, Knapp reviewed plan information on the AT & T Web site and then spoke on the telephone with an AT & T representative. (*Knapp, supra,* 195 Cal.App.4th at pp. 937–938, 124 Cal.Rptr.3d 565.) She selected a "Digital Advantage" rate plan for $39.99 per month, rather than a cheaper **\*355** plan available at $29.99 per month for 250 airtime minutes, to ensure that she would have "a little bit of a cushion" and not incur overage charges. She subsequently switched to the $29.99 per month plan. She was provided an AT & T "Wireless Service Guide" with her telephone handset, but did not review the guide. [12] Knapp became a Cingular customer as a result of Cingular's acquisition of AT & T in October 2004. In Plaintiffs' renewed motion for leave to file the FAC, counsel represented that "[t]he misrepresentation that was made by the Defendant in the Orange County case is precisely the same misrepresentation that is made by the Defendants in the case at bar."

Hodge obtained wireless service with Cingular in 2004. She testified that she called her landline carrier to discuss her account, and was offered her a mobile phone with Cingular. The carrier representative discussed the various rate plans available. Hodge wanted the cheapest rate plan, which provided 250 minutes of airtime, plus night and weekend minutes, under a two-year contract. [13] She did not recall any discussion of how the 250 minutes were calculated. She produced billing records that indicated that she had exceeded her plan minutes in only three months. When asked if she had any written materials regarding false or deceptive representations in Defendants' promotion, marketing and sale of airtime minutes, she identified the "Welcome Kit" provided to new subscribers. She complained that she was being billed for 250 minutes per month, when she was actually receiving less, and that her rate plan was therefore misrepresented. [14]

Rel activated wireless service with Pacific Bell on or about December 8, 1998. Rel went to a Cingular retail store and signed an amendment to her wireless service agreement with Cingular on July 27, 2002. The "Terms and Conditions" of the amendment provide: "Airtime and other measured usage (chargeable time) is billed in full minute increments and actual airtime and usage is rounded up to the next full minute increment at end of each call for billing purposes, e.g., CINGULAR charges a full minute of airtime usage for every fraction of the last minute of airtime used on each wireless call."

#### Commonality

Considering the allegations of the FAC, the pleading exhibits, and the judicially noticed facts, have Plaintiffs pled a prima facie community of interest among class members? (*Newell, supra,* 118 Cal.App.4th at pp. 1101–1102, 13 Cal.Rptr.3d 343; *Canon U.S.A., Inc. v. Superior Court,* **\*35** *supra,* 68 Cal.App.4th at p. 5, 79 Cal.Rptr.2d 897.)

Plaintiffs insist that nothing in the judicially noticed facts detracts from their pleading contentions that Defendants engaged in a common scheme involving false representations and the concealment of material facts in the marketing and sale of rate plans to the consuming public. They argue that the FAC adequately sets forth the existence and predominance of common

questions of fact and law on whether the Defendants falsely represented to members of the putative class, the number of usable airtime minutes contained within each of the Defendants' rate and service plans, and whether the Defendants concealed from the putative class members, through uniform billing practices that the number of usable airtime minutes contained in each of the Defendants' rate and service plans are reduced by up to 25 percent. (FAC, ¶¶ 25, 30.) Plaintiffs allege that they, and members of the proposed class, were deceived and led to believe that they were being provided more usable airtime minutes than what was actually being provided. (FAC, ¶ 30.)

Defendants respond that the FAC alleges, and the attached exhibits demonstrate, that subscriber rate plan information was communicated to class members through a variety of written materials, including "a 'terms and conditions' booklet, the rate plan brochure and the features brochure" (FAC, ¶ 16 & Exhibits A, B, C [portions of two wireless service agreements and a rate plan brochure] ); through the mail (FAC, ¶ 32); and via "the internet at the website of AT & T Mobility, formerly Cingular" (FAC, ¶ 31 & Exhibit D). As reflected in the FAC exhibits, and in the deposition testimony of the named Plaintiffs, rate plan information was also provided by telephone and in retail stores. Therefore, Defendants claim, both the FAC and the judicially noticed facts establish that here, as in *Knapp,* Plaintiffs " 'stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned' " (*Knapp, supra,* 195 Cal.App.4th at p. 943, 124 Cal.Rptr.3d 565), making this case unsuitable for class treatment.

As in *Knapp,* Plaintiffs' central pleading contention here is that Defendants "violated the UCL and the CLRA and engaged in common law fraud by making representations about its service plans which misled [Plaintiffs] and others to believe that the number of minutes attached to each of [Defendants'] service plans were all usable airtime minutes when in fact it is [Defendants'] policy to round up partially used airtime minutes to the next full minute for billing purposes." (See *Knapp, supra,* 195 Cal.App.4th at p. 943, 124 Cal.Rptr.3d 565; *Tucker I, supra,* 186 Cal.App.4th at p. 1552, 115 Cal.Rptr.3d 9.)

The putative class consisted of "all consumers who have subscribed to a term contract for wireless telephone service in California from one or more of the Defendants herein, at any time from and after January 1, 1999 until the present time." The pleading exhibits and judicially noticed materials before the trial court make clear that, as in *Knapp,* Defendants' alleged misrepresentations were made to the named Plaintiffs and to proposed class members in a variety of ways. Individual members of this broad group may, or may not, have seen or relied upon any of them. It is not even clear that the named Plaintiffs allege actual reliance. Hodge, for example, selected her rate plan because it was the cheapest available, and recalled no discussion of how the 250 minutes in her plan were calculated. She identified a "Welcome Kit" provided to new subscribers, but testified that she did not review the service agreement or the terms and conditions provided. The evidence also reflects **\*35** that, at least in some instances, the policy of billing in full-minute increments and rounding up partial minutes of use was disclosed to subscribers in the same materials that Plaintiffs cite in support of their misrepresentation claims. A consumer who saw, or was otherwise aware of such disclosures, could not have been deceived.

### *Fraud and CLRA Claims*

With respect to the common law fraud and CLRA claims in the fourth and fifth causes of action of the FAC, actual reliance must be established for an award of damages. (*Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 980, 101 Cal.Rptr.3d 37 (*Cohen* ) [CLRA]; *Hill v. Roll Internat. Corp.*, *supra,* 195 Cal.App.4th at p. 1307, 128 Cal.Rptr.3d 109 ["[u]nlike 'fraud' as used in the statutory sense for consumer protection ..., common law fraud requires particularity of pleading for all the traditional elements, including not just misrepresentation, but the plaintiff's justifiable reliance"].) The CLRA allows recovery when a consumer "suffers any damage *as a result of* " the unlawful practice. (Civ.Code, § 1780, subd. (a), italics added.) This provision "requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm. [Citation.]" (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292, 119 Cal.Rptr.2d 190 (*Massachusetts Mutual* ).)

**3** **4** It is true that causation, on a class-wide basis, may be established by materiality. (*Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1292, 119 Cal.Rptr.2d 190 ["plaintiffs [may] satisfy their burden of showing causation as to each by showing materiality as to all"].) "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class. [Citation.] This is so because a representation is considered material if it induced

Tucker v. Pac. Bell Mobile Services, 208 Cal.App.4th 201 (2012)

145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

the consumer to alter his position to his detriment. [Citation.]" (*In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 129, 103 Cal.Rptr.3d 83 (*Vioxx Cases* ); *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 668, 22 Cal.Rptr.2d 419 (*Caro* ).) If the issue of materiality or reliance, however, is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action. (*Caro,* at p. 668, 22 Cal.Rptr.2d 419.)

The above cited cases are illustrative. In *Massachusetts Mutual,* the trial court certified a class of life insurance policy purchasers who alleged that, when they when they bought their policies, the insurer had no intention of maintaining the discretionary dividend rate which it had been paying, and failed to disclose information about its plans to lower the rate of dividends. (*Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1286, 119 Cal.Rptr.2d 190.) The trial court found the misrepresentations to be material, and the appellate court affirmed the class certification order, holding a plaintiff in these circumstances did not need to present individual proof that each class member relied on particular representations made by the insurer or its agents in order to establish liability for a nondisclosure under either the UCL or the CLRA. (*Id.* at pp. 1292–1293, 119 Cal.Rptr.2d 190.)

In contrast, in the *Vioxx Cases,* the appellate court affirmed a trial court order denying class certification of CLRA and UCL claims which alleged that the manufacturer misled consumers into buying Vioxx, providing misleading information, or failing to disclose information, about **\*35** associated cardiovascular risks. (*Vioxx Cases, supra,* 180 Cal.App.4th at p. 120, 103 Cal.Rptr.3d 83.) The plaintiffs contended that this nondisclosure induced consumers to buy Vioxx, rather than available generic medications which were less expensive, equally effective, and safer. The plaintiffs sought to recover the difference paid by consumers between the cost of Vioxx and the cost of the generic medication. (*Id.* at p. 122, 103 Cal.Rptr.3d 83.) The trial court denied class certification, finding that the efficacy and safety of Vioxx, and its comparative merits with generic medication, was a question "dependent on each individual patient's specific medical needs and history." (*Id.* at p. 126, 103 Cal.Rptr.3d 83.) Materiality and reliance for a CLRA claim could therefore not be established on a class-wide basis. (*Id.* at pp. 133–134, 103 Cal.Rptr.3d 83.)

In *Cohen,* the plaintiff alleged that the defendant satellite television company made advertising misrepresentations concerning the technical specifications of its high definition television services. (*Cohen, supra,* 178 Cal.App.4th at pp. 969–970, 101 Cal.Rptr.3d 37.) The trial court found that common issues of fact did not predominate because the proposed class would include subscribers who never saw the advertisements or representations of any kind before deciding to purchase the company's HD services, or who decided to subscribe to the services for entirely different reasons. (*Id.* at p. 979, 101 Cal.Rptr.3d 37.) The Second District Court of Appeal affirmed "because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned, namely, that DIRECTV violated the CLRA and the UCL by inducing subscribers to purchase HD services with false advertising." (*Ibid.,* fn. omitted.)

In *Caro,* the plaintiff alleged that the defendant's advertising and labeling of orange juice as "fresh" was false and misleading. (*Caro, supra,* 18 Cal.App.4th at p. 652, 22 Cal.Rptr.2d 419.) The trial court denied class certification on the basis, inter alia, that "individual issues involving the existence and nature of any material misrepresentation would predominate over common issues." (*Id.* at p. 668, 22 Cal.Rptr.2d 419.) " ' "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment" ' " and that " ' "without the misrepresentation, the plaintiff would not have acted as he did." ' " (*Id.* at p. 668, 22 Cal.Rptr.2d 419.) In *Caro,* the trial court properly concluded that the issue of whether any asserted misrepresentation induced the purchase of orange juice would vary from consumer to consumer, with each consumer required individually to prove liability and damages. (*Id.* at pp. 667–669, 22 Cal.Rptr.2d 419; see also *Davis–Miller v. Automobile Club of Southern California, supra,* 201 Cal.App.4th at pp. 117–118, 123–126, 134 Cal.Rptr.3d 551 [class certification properly denied on CLRA claim of false advertising of roadside battery assistance/replacement program since only a small portion of the classes were likely to have seen alleged false advertising, and no basis to uniformly infer that the advertising was material to purchase decisions of large numbers of the class].)

5  In the instant case, neither Knapp nor Hodge claimed that they had based their decision to purchase cellular service, or to purchase a particular service plan, on any advertising material or representations made by Defendants. Rather, each indicated separate considerations in their purchasing choices. Knapp originally selected a more expensive plan to give herself a "cushion" to avoid overage **\*35** charges, but later switched to a less expensive plan. Hodge simply wanted the least expensive plan available. In fact the gist of Plaintiffs' claims here, as evidenced in Hodge's deposition testimony, and in counsel's colloquy

at that deposition, is not that the undisclosed rounding up billing practice induced any plaintiff to act as she did, but that resulting effect of that practice was to provide less than what was promised.

While it may be true, as Plaintiffs' contend, that the case before us involves the "policies, practices and procedures of a completely separate entity" than those at issue in *Knapp,* the fact remains that the policies, practices and procedures that Plaintiffs challenge here are identical to those complained of in *Knapp,* where it was alleged that " 'the number of airtime minutes which were represented to be available for the customers' use was substantially overstated ... because ... every single telephone call is rounded up.' " (*Knapp, supra,* 195 Cal.App.4th at pp. 944–945, 124 Cal.Rptr.3d 565.) Here Plaintiffs allege that the Defendants "misrepresent the amount of usable airtime minutes contained in each of their rate plans/service plans which are offered for sale to the consuming public, and fail "to disclose to their prospective customers the percentage of airtime minutes in each one of the Defendants' rate plans/service plans which are rendered unusable to the subscribers as a result of uniform practices and uniform billing practices engaged in by the Defendants."

We find *Knapp* factually indistinguishable. As in *Knapp,* the purported misrepresentations were communicated to class members through a variety of written materials, through the mail, via the Internet, by telephone and in retail stores. (*Knapp, supra,* 195 Cal.App.4th at p. 937, 124 Cal.Rptr.3d 565.) As in *Knapp,* nothing before the court here, either in the pleadings or the testimony of either Knapp or Hodge, reflects that Defendants "ever represented that the number of minutes associated with a particular rate plan were all 'usable airtime minutes.' " (*Id.* at p. 945, 124 Cal.Rptr.3d 565.) As in *Knapp,* the essence of Plaintiffs' claim here is that Defendants were "deceitful in attaching a certain number of minutes to a rate plan when a fraction thereof would not be usable in light of the rounding up policy." (*Ibid.*) We also note that here, as in *Knapp,* the evidence before the trial court reflects that the service agreements provided to the each of the named Plaintiffs disclosed that each call " 'is billed in full minute increments with partial minutes rounded up to the next full minute.' " (*Id.* at p. 944, 124 Cal.Rptr.3d 565.) While Knapp and Hodge said they had not read these disclosures, as the court noted in *Knapp,* "other members of the proposed class may very well have seen this express disclosure or discussed the rounding up policy with a sales representative in person or on the telephone...." (*Ibid.*) We agree with the court's conclusion in *Knapp,* which we find equally applicable here, that whether other members of the putative class were unaware of the rounding up policy, and "[w]hether the mere association of a certain number of minutes to a rate plan would mislead proposed class members necessarily involves individualized inquiries...." (*Id.* at pp. 944–945, 124 Cal.Rptr.3d 565.) The trial court was therefore justified in determining, on the pleadings, that there was a lack of commonality of issues to support class treatment of these claims.

### *The UCL Claims*

Somewhat different considerations apply in evaluating the sufficiency of the UCL causes of action at the pleading stage. The first three causes of action of **\*3** the FAC assert claims under the UCL. "The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Therefore, under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.' [Citation.]" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311, 93 Cal.Rptr.3d 559, 207 P.3d 20 (*Tobacco II Cases* ).) Plaintiffs here present claims under each prong of the statute: the first cause of action claims unlawful business practices, the second cause of action alleges unfair business practices, and the third cause of action sets forth a claim for fraudulent business practices.

"The definitions of unlawful and fraudulent business practices are straightforward and well established. An unlawful business practice under the UCL is ' " ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " ' [Citation.] A fraudulent business practice is one in which ' " ' "members of the public are likely to be deceived." ' " ' [Citation.]" (*Morgan v. AT & T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1254, 99 Cal.Rptr.3d 768 (*Morgan* ).) The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud and " 'relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]" (*Tobacco II Cases, supra,* 46 Cal.4th at p. 326, 93 Cal.Rptr.3d 559, 207 P.3d 20.)

[29] [30] Section 17200 is a consumer protection statute designed, in part, to protect the public by prohibiting false, unfair, misleading or deceptive advertising. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660.) " 'The determination as to whether a business practice is deceptive is based on the likely

145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

effect such [a] practice would have on a reasonable consumer.' [Citation.]" (*Morgan, supra,* 177 Cal.App.4th at pp. 1256–1257, 99 Cal.Rptr.3d 768.) "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." (*Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 332–333, 74 Cal.Rptr.2d 55 (*Day* ).)

**[3]** The scope of the remedies available under the UCL, however, is limited. " 'A UCL action is equitable in nature; damages cannot be recovered. [Citation.] ... We have stated under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." [Citation.]' [Citation.]" (*Tobacco II Cases, supra,* 46 Cal.4th at p. 312, 93 Cal.Rptr.3d 559, 207 P.3d 20; § 17203.)

### *Materiality and Presumptive Reliance Under the UCL*

Plaintiffs argue that *Tobacco II Cases* provides support for their UCL claims, without regard to class-wide proof of reliance and materiality. Plaintiffs emphasize that the Supreme Court's statement that " 'a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. [Citations.] A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" [citations], and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." [Citation.]' [Citation.]" (*Tobacco II Cases, supra,* 46 Cal.4th at p. 327, 93 Cal.Rptr.3d 559, 207 P.3d 20.)

**3** Both before and after *Tobacco II Cases,* courts have found class certification appropriate based on an inference of common reliance. (See *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 178, 191–192, 105 Cal.Rptr.3d 704 [failure in advertising campaign to disclose premature color erosion of roof tiles in long-term advertising campaign]; *Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1294, 119 Cal.Rptr.2d 190 ["general rule permitting common reliance where material misstatements have been made to a class of plaintiffs."].)

Further, some cases have held that a complaint alleging advertising fraud under the UCL is sufficient to survive pleading challenges unless it can be said as a matter of law that the purported misrepresentations *cannot* be considered material. In *Morgan, supra,* 177 Cal.App.4th 1235, 99 Cal.Rptr.3d 768, the trial court sustained a demurrer without leave to amend to a UCL complaint alleging material misrepresentations by AT & T about the characteristics and supported technology of one of its premium cellular telephones, finding that the complaint presented no actionable misrepresentation. (*Id.* at pp. 1241, 1252, 99 Cal.Rptr.3d 768.) The Second District Court of Appeal reversed, holding that " '[u]nless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [AT & T's alleged conduct], we must hold that [plaintiffs] stated a cause of action.' [Citation.]" (*Id.* at p. 1257, 99 Cal.Rptr.3d 768.) In *Day, supra,* 63 Cal.App.4th at pages 328–329, 333, 74 Cal.Rptr.2d 55, the court reversed in part an order sustaining a demurrer to UCL claims of false or misleading advertising of prepaid telephone cards (also involving purportedly undisclosed rounding up of minutes used), holding that "unless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [AT & T's alleged conduct], we must hold that [plaintiffs] stated a cause of action."

**[32] [33] [3] [3]** Other courts, however, have observed that *Tobacco II Cases,* 46 Cal.4th at page 306, 93 Cal.Rptr.3d 559, 207 P.3d 20, which focused on post-Proposition 64 requirements for standing, [15] did not suggest that the Supreme Court "intended our state's trial courts to dispatch with an examination of commonality when addressing a motion for class certification" and that factual questions of reliance by class members on allegedly false representation remained a proper criterion for trial court consideration when examining commonality. (*Cohen, supra,* 178 Cal.App.4th at p. 981, 101 Cal.Rptr.3d 37.) "[W]e do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice." (*Id.* at p. 980, 101 Cal.Rptr.3d 37.) And "one who was not exposed to the alleged misrepresentations and therefore could not possibly **3 2**have lost money or property as a result of the unfair competition is not entitled to restitution." (*Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631, 105 Cal.Rptr.3d 795.) A class action for a fraudulent business practice under the UCL still requires that a defendant have

Texas v. Florida Mgmt. Services, 208 Cal.App.4th (2012)
145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

"engaged in uniform conduct likely to mislead the entire class." (*Fairbanks v. Farmers New World Life Ins. Co.* (2011) 197 Cal.App.4th 544, 562, 128 Cal.Rptr.3d 888; *Knapp, supra,* 195 Cal.App.4th at pp. 942–943, 124 Cal.Rptr.3d 565.) "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action. [Citation.]" (*Vioxx Cases, supra,* 180 Cal.App.4th at p. 129, 103 Cal.Rptr.3d 83.)

[3] [3] Plaintiffs insist that, by virtue of Defendants' rounding up billing practices, uniform misrepresentations as to the true number of useable minutes in each of the rate plans are necessarily made to all consumers. But as discussed *ante,* and as in *Knapp,* whether members of the putative class (of *all consumers* who have subscribed to one of Defendants' service plans) were aware of the rounding up policy, and "[w]hether the mere association of a certain number of minutes to a rate plan would ... mislead proposed class members necessarily involves individualized inquiries...." (*Knapp, supra,* 195 Cal.App.4th at pp. 944–945, 124 Cal.Rptr.3d 565.) The rule permitting an inference of common reliance where material misstatements have been made to a class of plaintiffs will not arise where the record will not permit it. (*Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1294, 119 Cal.Rptr.2d 190.)

### Restitution Under the UCL

[3] [39] [0] [ ] Even if we assume that there were a common misrepresentation as to the number of conversational minutes in the Defendants' advertised rate plans, and that the representations were material, Plaintiffs could not present UCL class claims for restitution. "[I]n order to obtain classwide restitution under the UCL, plaintiffs need establish not only a misrepresentation that was likely to deceive [citation] but also the existence of a 'measurable amount' of restitution, supported by the evidence. [Citation.]" (*Vioxx Cases, supra,* 180 Cal.App.4th at p. 136, 103 Cal.Rptr.3d 83.) Section 17203 provides for restitution "to restore to any person in interest any money or property, real or personal, which may have been acquired" by means of the unfair practice. [16] "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1149, 131 Cal.Rptr.2d 29, 63 P.3d 937 (*Korea Supply* ).) "[T]he notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the [3] [3] victim must have given up something which he or she was entitled to keep." (*Day, supra,* 63 Cal.App.4th at p. 340, 74 Cal.Rptr.2d 55.) Section 17203 "operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice. The intent of the section is to make whole, equitably, the victim of an unfair practice. While it may be that an order of restitution will also serve to deter future improper conduct, in the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect." (*Id.* at p. 338, 74 Cal.Rptr.2d 55.) Those who were aware of the rounding up practice, by disclosure or otherwise, could not be said to be entitled to return of any amounts paid to the Defendants. Even as to those who may have been unaware of the practice, what measurable restitution would be due to a class plaintiff who never exceeded the available conversational minutes within the bucket of minutes provided by his/her plan? The nature of such a plan is that a customer is not charged on a per minute basis. Hodge, for example, only apparently exceeded her rate plan allotment in a total of three months during the class period. "A court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices." (*Korea Supply, supra,* 29 Cal.4th p. 1148, 131 Cal.Rptr.2d 29, 63 P.3d 937.) "[D]isgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." (*Id.* at p. 1145, 131 Cal.Rptr.2d 29, 63 P.3d 937.) [17]

### Equitable Relief

[2] This does not mean that Plaintiffs' UCL claims for other equitable relief are [3] necessarily barred. Section 17200 has been interpreted broadly to bar all ongoing wrongful business activity, including misleading advertising, including language used is likely to deceive, mislead or confuse. (*Day, supra,* 63 Cal.App.4th at p. 332, 74 Cal.Rptr.2d 55.) Section 17203 provides for injunctive relief in the case of unfair competition. A trial court has "broad power under the UCL to 'enjoin on-going

Case 2:10-cv-09198-JVS-RNB Document 325-1 Filed 09/06/12 Page 14 of 16 Page ID #:14598

Tucker v. Pacific Bell Mobile Services, 208 Cal.App.4th 201 (2012)
145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

wrongful business conduct in whatever context such activity might occur.' [Citations.]" (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1015, 112 Cal.Rptr.3d 607.)

[ **3**]  The FCA does not prevent a plaintiff from maintaining a state law action in state court for an alleged failure to disclose a particular rate or rate practice. (*Ball, supra,* 81 Cal.App.4th at p. 543, 96 Cal.Rptr.2d 801.) Both *Day* and *Ball* assumed that, on demurrer, a UCL claim for injunctive relief could be maintained on sufficient allegations of deceptive or misleading advertising. (*Ball,* at p. 543, 96 Cal.Rptr.2d 801; *Day, supra,* 63 Cal.App.4th at pp. 332–333, 74 Cal.Rptr.2d 55.)

[     ] We believe the trial court erred in sustaining demurrer, without leave to amend, as to the first, second and third causes of action of the FAC to the extent that those claims seek injunctive relief under the UCL. We cannot say, as a matter of law, that Plaintiffs cannot state a claim on this basis. (*Morgan, supra,* 177 Cal.App.4th at p. 1257, 99 Cal.Rptr.3d 768; *Day, supra,* 63 Cal.App.4th at p. 333, 74 Cal.Rptr.2d 55.) Regardless of whether Plaintiffs are able to pursue claims for individual damages or class restitution, the adequacy of Defendants' disclosures of the contested billing practice, and whether at least some members of the public are likely to be deceived are not issues that can be resolved as a matter of law on demurrer, even with the matter judicially noticed.

How does this result square with *Knapp,* which presents nearly identical facts, and which we have found persuasive in other respects? Simply that, as we noted initially, we are required to apply a different standard of review when the decision below is made on the pleadings. Ultimately, it is still up to the trial court, in the exercise of its considerable discretion, to determine if Plaintiffs' UCL claims for equitable relief are appropriate for class treatment at all. (*Brinker, supra,* 53 Cal.4th at p. 1022, 139 Cal.Rptr.3d 315, 273 P.3d 513.) That issue is not before us on this record and we express no opinion on it.

The order sustaining Defendants' demurrer to the first, second and third causes of action of Plaintiffs' FAC is reversed. The judgment is otherwise affirmed. Each party will bear its own costs.

We concur: SIMONS, Acting P.J., NEEDHAM, J.

208 Cal.App.4th 201, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

Footnotes

1    The named defendants, Cingular Wireless LLC (Cingular) and Pacific Bell Mobile Services (Pacific Bell), are cellular telephone service providers. By way of merger and acquisition, Pacific Bell's customers became customers of Cingular in October 2000, and Defendants represent that the entities are now known as AT & T Mobility LLC.
2    These rate or service plans are sometimes referred to as "bucket plans." "A ' "bucket plan" gives a customer a certain number of minutes of use per month' for a monthly rate." (*Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1550, 115 Cal.Rptr.3d 9 (*Tucker I* ); see *Ball v. GTE Mobilnet of California* (2000) 81 Cal.App.4th 529, 535–536, fn. 1, 96 Cal.Rptr.2d 801 (*Ball* ).)
3    All further statutory references are to the Business and Professions Code unless otherwise indicated.
4    Diane Tucker was the named plaintiff when this matter was first filed in the San Mateo County Superior Court on December 8, 2003. Tucker lost her standing to sue under the UCL with the passage of Proposition 64 in November 2004. Angela Rel was added as a plaintiff in place of Tucker in a first amended complaint filed in October 2006. Julia Knapp and Monica Zoe Hodge were added as plaintiffs in a third amended complaint in May 2007. Knapp voluntarily dismissed her claims without prejudice on June 17, 2011.
5    A rounding up policy is standard in the telecommunications industry. (*Knapp, supra,* 195 Cal.App.4th at p. 944, 124 Cal.Rptr.3d 565.) In prior related litigation, challenges to the rounding up policy itself were found to be preempted by the rate setting authority of the Federal Communications Commission (FCC). (*Ball, supra,* 81 Cal.App.4th at pp. 540–541, 96 Cal.Rptr.2d 801.) Federal law does not, however, preempt a plaintiff from maintaining a state law action for an alleged failure to disclose a particular rate or rate practice. (*Id.* at p. 543, 96 Cal.Rptr.2d 801.)

145 Cal.Rptr.3d 340, 12 Cal. Daily Op. Serv. 9011, 2012 Daily Journal D.A.R. 10,953

6    Defendants also demurred to the fourth cause of action of the FAC for fraud on the ground that the Plaintiffs' failed to plead fraud with the requisite specificity, and demurred to each cause of action of the FAC on the ground that the claims are time-barred. The demurrer to the fourth cause of action was sustained with leave to amend. The demurrer on the grounds that the claims were time-barred was overruled. The Defendants' moved to strike those portions of the FAC seeking restitution or damages on the basis of federal preemption. That motion was denied without discussion.

7    The order had the effect of denying certification as a class action. It effectively was the "death knell" for the class claims, and was tantamount to a dismissal of the action as to all members of the class other than the named plaintiffs. In essence, it is a final judgment on those claims, and is therefore immediately appealable. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757–758, 122 Cal.Rptr.3d 153, 248 P.3d 681; *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1322, fn. 2, 13 Cal.Rptr.3d 725 (*Prince* ) ["[w]hatever its form, an order that has the effect of denying certification as a class action disposes of that action and is an appealable final judgment"].)

8    But see *In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298–1299, 78 Cal.Rptr.3d 257 (class allegations in a wage and hour case properly resolved on motion to strike); *Alvarez, supra,* 143 Cal.App.4th 1223, 1240, 49 Cal.Rptr.3d 892 (class overtime wage claim properly resolved on demurrer based on collateral estoppel).

9    Class claims under the CLRA are governed by Civil Code section 1781, " 'which sets out the four conditions that, if met, mandate certification of a class: (1) it is impracticable to bring all members of the class before the court; (2) the questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members; (3) the claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class; and (4) the representative plaintiffs will fairly and adequately protect the interests of the class.' " (*Davis–Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 116, 134 Cal.Rptr.3d 551.) The commonality requirement under the UCL and CLRA are substantially similar. (*Id.* at p. 123, 134 Cal.Rptr.3d 551.)

10    As in the case below us, the originally named plaintiff was Tucker. (*Knapp, supra,* 195 Cal.App.4th at p. 935, 124 Cal.Rptr.3d 565.) As here, Knapp was added as plaintiff after Tucker lost standing under Proposition 64. (*Id.* at pp. 935–936, 124 Cal.Rptr.3d 565.)

11    Plaintiffs here object only that judicial notice cannot properly be taken of the truth of matters contained in judicially noticed pleadings, and that a hearing on a demurrer cannot be turned into a contested evidentiary hearing under the guise of judicial notice of contested or controverted documents. While that is generally correct, a court may take judicial notice of a party's admissions or concessions in cases where the admission " 'cannot reasonably be controverted,' " such as in answers to interrogatories or requests for admission, or in affidavits and declarations filed on the party's behalf. (*Arce, supra,* 181 Cal.App.4th at p. 485, 104 Cal.Rptr.3d 545.)

12    The Wireless Service Guide included information that "[a]irtime usage on each call is billed in full minute increments, with partial minutes of use rounded up to the next full minute." The disclosure, in small font text and undistinguished from surrounding information, is on page 22 of the Wireless Service Guide, under the heading "CHARGES/PAYMENTS/DEFAULT."

13    At the time of her deposition, Hodge had apparently changed to a rate plan offering her 900 minutes per month. The circumstances of the change are not revealed in the deposition excerpts provided.

14    The Welcome Kit included a customer copy of the "Cingular Wireless Service Agreement." The "Terms & Conditions" included, in two full pages of text, the statement, in capitalized type, that "AIRTIME AND OTHER MEASURED USAGE ('CHARGEABLE TIME') IS BILLED IN FULL MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE IS ROUNDED UP TO THE NEXT FULL MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. CINGULAR CHARGES A FULL MINUTE OF AIRTIME USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRELESS CALL."

15    Proposition 64 amended section 17204 to require that a private plaintiff "suffer[ ] injury in fact and has lost money or property as a result of such unfair competition" in order to bring an action under the UCL. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228, 46 Cal.Rptr.3d 57, 138 P.3d 207 (*Mervyn's* ).) The effect of Proposition 64 was to "prevent uninjured private persons from suing for restitution on behalf of others." (*Mervyn's, supra,* 39 Cal.4th at p. 232, 46 Cal.Rptr.3d 57, 138 P.3d 207, italics omitted.) "These procedural modifications to the statute, however, 'left entirely unchanged the substantive rules governing business and competitive conduct. Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted.' [Citation.]" (*Tobacco II Cases,* 46 Cal.4th at p. 314, 93 Cal.Rptr.3d 559, 207 P.3d 20.)

16    Section 17203 provides, in pertinent part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." This language is "patently less stringent" than the standing requirement for the class representative under section 17204 ("a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."). (*Tobacco II Cases, supra,* 46 Cal.4th at p. 320, 93 Cal.Rptr.3d 559, 207 P.3d 20.)

17    We see another apparent impediment to the restitution claims. As we have noted, Plaintiffs are precluded from challenging the rounding up billing practice itself by federal preemption, under section 332(c)(3)(A) of title 47 of the United States Code, of rates charged for cellular communications services. (*Ball, supra,* 81 Cal.App.4th at pp. 540–541, 96 Cal.Rptr.2d 801.) In *Ball,* plaintiffs also sought "restitution of all amounts overpaid by [them] and other members of the general public ... as a result of the aforesaid unfair business act or practice," as well as "a permanent injunction enjoining defendants from engaging in any of these unfair or unlawful business practices." (*Id.* at p. 536, 96 Cal.Rptr.2d 801.) As the court observed in *Ball,* the rate charged for wireless service includes both price and time. (*Id.* at p. 538, 96 Cal.Rptr.2d 801.)

In *Day,* this District Court of Appeal specifically addressed the viability of a UCL restitution claim in a closely related context. The plaintiffs there sought injunctive relief and disgorgement of profits under both the UCL and FAL, alleging misleading and deceptive advertising of prepaid phone cards by virtue of the rounding up policy on minutes used. (*Day, supra,* 63 Cal.App.4th at pp. 328–329, 74 Cal.Rptr.2d 55.) The trial court sustained a demurrer without leave to amend on the ground that the action was barred by the "filed rate doctrine." (*Id.* at p. 330, 74 Cal.Rptr.2d 55.) Decided prior to *Ball,* the court found that "[a]ny attempt to calculate a monetary amount to be paid on behalf of those who purchased the cards would necessarily result in a refund or rebate of properly collected fees for services. This would enmesh the court in the rate-setting process.... Appellants are not entitled to seek restoration of any money under section 17203." (*Id.* at p. 340, 74 Cal.Rptr.2d 55.) While we disagree with *Day* in its application of the filed rate doctrine (see discussion in *Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 311–316, 319, fn. 19, 122 Cal.Rptr.3d 726), the same rate preemption considerations found in *Ball* under section 332(c)(3)(A) of title 47 of the United States Code would seemingly apply here and preclude claims for individual or class restitution.

At oral argument both parties agreed that the preemption issue is not directly raised in this appeal. Since we otherwise decide that reversal and remand is required on the UCL causes of action, we do not decide this question.

---

End of Document                                      © 2012 Thomson Reuters. No claim to original U.S. Government Works.