# EXHIBIT A

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

LEVINE & MILLER
HARVEY R. LEVINE (SBN 61879)
CRAIG A. MILLER (SBN 116030)
LEVINE & MILLER
550 West C Street, Suite 1810
San Diego, CA 92101-8596
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>Defendant. | **CLASS ACTION**<br><br>CASE NO.: CV 10-9198 JVS (RNBx)<br><br>Formerly Case No.: 3:10-cv -04852 JSW<br>from Northern District of California<br><br>**PLAINTIFFS' RESPONSE TO LSW'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Judge James V. Selna<br>Courtroom: 10C |

PLAINTIFFS' RESPONSE TO LSW'S NOTICE OF SUPPLEMENTAL AUTHORITY
Case No. CV 10-9198 JVS (RNBx)

*Tucker v. Pacific Bell Mobile Services*, 208 Cal. App. 4th 201 (2012) does not counsel for denial of certification. First, *Tucker* and the "virtually indistinguishable" case upon which it relied (*Knapp v. AT&T,* 195 Cal.App.4th 932, 944 (2011)) involved situations where the "the face of the complaint itself" revealed that representations in oral conversations and "various written materials" were "not uniformly made," and, in fact, the information that plaintiffs claimed was undisclosed was expressly disclosed "in the same materials that Plaintiffs cite in support of their misrepresentation claims." *Tucker*, 208 Cal. App. 4th at 221. *Tucker* has no application to Plaintiffs' volatility and tax defect claims, as to which LSW does not identify any relevant disclosures, and is distinguishable from Plaintiffs' illustration claims because LSW does not dispute that each subclass member was exposed to deceptive illustrations. *Cf. id*. at 225 ("nothing before the Court" showed that deceptive representations were made).

*Tucker* at most implicates whether the bait and switch aspect of the Minimum Guaranteed Interest claim should be certified in light of LSW's contention that some subclass members received a Buyer's Guide at or before the time they applied for the policy, thus arguably raising individual issues. *Tucker* does not extend to any alleged oral disclosures as to the Undisclosed Fees, Minimum Guaranteed Interest, and Current Basis claims because of the Ninth Circuit's controlling decision in *Yokoyama v. Midland Nat'l Life Ins. Co*, 594 F.3d 1087, 1093 (9th Cir. 2008).[1] *Tucker* does not bear on any written disclosures provided in the policy and the Buyer's Guide at the time of policy delivery because all class members received these disclosures, so no individual issues are presented by the giving of such disclosures at the time of policy delivery. LSW contends, however, that some subclass members received, at or before the time of policy application, a Buyer's Guide that disclosed that the interest guarantee is not a true

---

[1] LSW does not identify any relevant oral disclosures as to the Guaranteed Monthly Administrative Charge reduction claim.

PLAINTIFFS' RESPONSE TO LSW'S NOTICE OF SUPPLEMENTAL AUTHORITY
Case No. CV 10-9198 JVS (RNBx)

1

annual guarantee, and that this raises individual issues with respect to the bait and switch claim under the UCL. The Buyer's Guide does not bear on Plaintiffs' other illustration-based claims, and none of the other written marketing documents potentially provided by agents before policy delivery even arguably corrects the false impression conveyed by the illustration. *See* Plaintiffs' Reply at 11-13 (Dkt. 291); Foster Dec. ¶¶ 5, 15-39 (Dkt. 307).

As to the Minimum Guaranteed Interest bait and switch claim, *Tucker* is inapplicable for numerous reasons. First, the Buyer's Guide does not alert policyholders that no guaranteed interest is credited to policies that lapse or that the guaranteed minimum values stated in the illustration are incorrect. Second, LSW does not contest that all subclass members received an illustration that deceptively presented the minimum interest guarantee. Third, on the facts in *Tucker*, the court rejected a presumption of common reliance under the UCL because the record there "would not permit it" due to the named plaintiffs' failure to allege reliance and because the allegedly undisclosed information was disclosed "in the same materials that Plaintiffs cite in support of their misrepresentation claims." *Tucker*, 208 Cal. App. 4th at 221, 224, 227. Here, in contrast, each of the named plaintiffs alleges reliance on the deceptive illustration. Fourth, LSW has asserted that it does not contest reliance. Opp'n at 17:1-10. Finally, LSW has offered no evidence that any significant number of subclass members received the Buyer's Guide at or before the time of application.

*Tucker* also contains *dicta* about restitution that is inapposite and contrary to the law. *Tucker's* discussion of restitution is inapposite because it considered a refund measure of damages whereas this Court has authorized an actual value measure of damages based on the price at which the policies were sold.[2] Thus,

---

[2] The only refund measure advanced by Plaintiffs is the alternative "refund" theory for the Undisclosed Fees and Minimum Guaranteed Interest claims. See Declaration of William Brockett in Support of Motion for Class Certification (Dkt. 228) at ¶¶ 105 & 108.

anyone who would not have bought the policy but for the deception (i.e., who relied or is presumed to have relied) was harmed, and is entitled to restitution, because they purchased a policy whose actual value is less than what the policyholder paid for it.

*Tucker's* discussion of restitution is contrary to the law because it conflicts with the California Supreme Court's decision in *In re Tobacco II*, 46 Cal. 4th 298, 320 (2009) and the cases upon which that court relied. *Id*. at 320 (*citing Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d. 442, 452 (1979), *Committee on Children's Television v. General Foods Corp*., 35 Cal. 3d 197, 211 (1983) and *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264 (1992)). *Tucker* concluded in *dicta* that "even if we assume that there were a common misrepresentation as to the number of conversational minutes in the Defendant's advertised rate plans, and that the representations were material, . . . Those who were aware of the rounding up practice, by disclosure or otherwise, could not be said to be entitled to return of any amounts paid to the Defendants." *Tucker*, 208 Cal. App. 4th at 228-29.  But the Supreme Court in *Fletcher* held *exactly the opposite* in the context of Business and Professions Code Section 17535, which has the same language regarding restitution as does the UCL.  *Fletcher*, 23 Cal. 3d at 449-54.  *Fletcher's* holding that individualized proof of knowledge is not required for restitution was broadened and adopted in the context of the UCL by subsequent Supreme Court cases, leading the Court in *Tobacco II* to find that courts have " repeatedly and consistently" held that relief under the UCL is available without individualized proof of deception, reliance and injury," and that "to hold that the absent class members on whose behalf a private UCL action is prosecuted must show on an individualized basis that they have 'lost money or property as a result of the unfair competition' (§ 17204) would conflict with the language in section 17203 authorizing broader relief—the 'may have been acquired' language—and implicitly overrule a fundamental holding in our previous decisions, including

*Fletcher, Bank of the West* and *Committee on Children's Television*." *In re Tobacco II*, 46 Cal. 4th at 320.[3]

The *Tucker* court's *dicta* would mean that class actions for restitution under the fraudulent prong could never be certified because the knowledge of each individual class member would always need to be examined. The *Tucker dicta* thus would overrule *sub silentio* the presumption of classwide knowledge, reliance and injury established by the Supreme Court in *Fletcher* and its progeny, including *Tobacco II*.[4]

Dated: September 10, 2012   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By:   /s/ Brian P. Brosnahan

---

[3] Lest LSW try to argue that *Tobacco II* is limited to the issue of standing under Section 17204, it must be observed that the discussion of restitution above was a *premise* of the Court's conclusion that individualized proof was not needed for standing. The Court reasoned that *because* individualized proof was not needed for restitution, it made no sense to require it for standing.   46 Cal. 3d at 320.

[4] The cases cited by *Tucker* do not support its *dicta*. In *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 136 (2009) there was no common reliance and measurement of restitution would have involved individual issues of medical history, patient needs, and drug interaction. In *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 340 (2998) restitution was barred by the filed rate doctrine.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111