**EXHIBIT 4: [PROPOSED] EXHIBITS TO
SUPPLEMENTAL DECLARATION OF JOEL FLEMING**

Case 2:10-cv-09198-JVS -RNB   Document 346-4   Filed 10/02/12   Page 1 of 19   Page ID
 #:15283

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                         SOUTHERN DIVISION
 3

     _____
 4                                    )
     JOYCE WALKER, KIM BRUCE          )
 5   HOWLETT, and MURIEL SPOONER,     )
     on behalf of themselves and      )
 6   all others similarly situated,   )
                                      )
 7            Plaintiffs,             )
                                      )
 8      vs.                           ) No. CV 10-9198-JVS (RNBx)
                                      )
 9   LIFE INSURANCE COMPANY OF        )
     THE SOUTHWEST, a Texas           )
10   corporation, and DOES 1-50,      )
                                      )
11            Defendants.             )
                                      )
12   _____)
13
14
15                  DEPOSITION OF JOYCE WALKER
16                    San Francisco, California
17                    Friday, January 27, 2012
18                            Volume I
19
20
21   Reported by:
     GINA GLANTZ
22   CSR No. 9795, RPR, RMR
23   JOB No. 131931
24
25   PAGES 1 - 244
```

Page 1

```
 1  we up to?
 2          THE REPORTER:  19.
 3          (Walker Exhibit 19 was marked.)
 4          MR. SHAPIRO:  Maybe the court reporter can just
 5  mark the one that Charlie -- if you wouldn't mind.
 6          MR. FREIBERG:  That's 20.
 7          THE REPORTER:  I don't have a 20 yet.
 8  BY MR. SHAPIRO:
 9      Q   The court reporter has handed you a document which
10  has been marked as Walker Exhibit 19, and it bears a Bates
11  number JW000678.  Do you recognize your signature at the
12  bottom of that?
13      A   Yes, I do.
14      Q   And the date next to that?
15      A   1/11/08.
16      Q   On January 11th, 2008, did you sign your name
17  acknowledging your receipt of your life insurance policy,
18  a life insurance buyer's guide, an IUL buyer's guide and a
19  proposal which matches the policy you received?
20      A   I did sign this on that date.
21      Q   Did you get each of those documents that are
22  referenced in the one sentence above which you signed?
23      A   I received the policy, the buyer's guide, but not
24  an illustration.
25      Q   Okay.  Just so we're clear, you received the
```

Page 205

```
 1   policy, the life insurance buyer's guide, and also the IUL
 2   buyer's guide?
 3       A   I don't know what the IUL buyer's guide is, so I
 4   don't know what that is.
 5       Q   Okay.  Well, fair to say, on January 11th, 2008,
 6   you certified with your signature that you received those
 7   first three things, correct, the policy, the life
 8   insurance buyer's guide and the IUL buyer's guide?
 9       A   It says "if applicable" and I don't know if it was
10   applicable.
11       Q   Okay.  So you read "if applicable" applying to the
12   IUL buyer's guide?
13       A   Correct.
14       Q   Okay.  Let's take the first one, the policy.  Did
15   you get a copy of your life insurance policy?
16       A   I did.
17       Q   Did you read it?
18       A   I did not.  I assumed that the illustration from
19   October 3rd would be a fair and accurate description --
20   depiction of the policy.
21       Q   Okay.  So just so we're clear, on this date,
22   January 11, 2008, you handed over a check for $112,000?
23       A   That is correct.
24       Q   And you handed over a check for $112,000 for a
25   life insurance policy; correct?
```

Page 206

```
 1          MR. FREIBERG:  Objection.  Argumentative.
 2          THE WITNESS:  I handed over a check for a
 3   retirement vehicle that I believed would perform as in the
 4   illustration.
 5   BY MR. SHAPIRO:
 6       Q   Okay.  And --
 7       A   I mean --
 8       Q   You were handed --
 9       A   I'm sorry.
10       Q   No, keep going.
11       A   At this juncture, where I'm sending -- handing
12   over a check and the policy is coming from Mr. Botkin and
13   Mr. Stemler, my buying decision had already been made.
14       Q   Okay.  So in the same meeting, you handed this
15   gentleman a check for $112,000, right, and you got, in
16   return, a bunch of documents, one of which was something
17   called a life insurance policy that you purchased; right?
18       A   Yes.
19       Q   Did you have an opportunity to read that life
20   insurance policy if you wanted to?
21       A   Not at that time, I did not.
22       Q   Did you take it home with you that night?
23       A   I left a few minutes after this very short meeting
24   to go to Los Angeles to work for the better part of the
25   next few weeks, and I did not take it with me.
```

Page 207

```
 1     Q    Okay.  So your schedule was busy, so you decided
 2   not to read the life insurance policy?
 3     A    I decided not to read it because I assumed that
 4   the October 3rd illustration, which had been used
 5   extensively in the explanation of the policy, was a fair
 6   and accurate depiction of the policy.
 7     Q    Have you ever read the life insurance policy?
 8     A    I read parts of it while preparing for the --
 9   writing the letter to Brenda, and have read parts of it in
10   preparing for the deposition.
11     Q    Did anyone prevent you from reading that life
12   insurance policy, ma'am?
13     A    No.
14     Q    Was that your decision?
15     A    It was my decision, based on the time that -- the
16   illustration was a depiction, a fair and accurate and
17   complete depiction, of the policy.
18     Q    As you sit here today, do you think it was a good
19   idea not to read the life insurance policy?
20     A    I can't say.
21     Q    Today, if you were to buy a product that's called
22   the life insurance policy, and hand over a check for
23   $112,000, would you read it?
24          MR. FREIBERG:  Objection.  Incomplete and improper
25   hypothetical.
```

Page 208

```
 1              THE WITNESS:  I don't know what I would do.
 2    BY MR. SHAPIRO:
 3        Q     Okay.  Did you read the life insurance buyer's
 4    guide?
 5        A     I did not.
 6        Q     Was that your decision?
 7        A     Yes.
 8        Q     Fair to say if you don't know if you actually
 9    received an IUL buyer's guide, you don't know if you
10    actually read an IUL buyer's guide?
11        A     Correct, I don't know what IUL stands for.  If you
12    know, that could clarify for me if I -- if it's a document
13    that I received.
14        Q     You signed a certification acknowledging receipt
15    of a number of items, if applicable, and you don't know
16    what one of those items mean?
17              MR. FREIBERG:  Objection.  Argumentative, asked
18    and answered.
19              THE WITNESS:  That's correct.  It looks as if this
20    statement says "if applicable."
21    BY MR. SHAPIRO:
22        Q     Okay.  You just don't know --
23        A     Which could mean --
24        Q     -- if you got it or not?
25        A     Which could mean that that was not applicable or
```

Page 209

```
 1   that one or the other was applicable.  I can't -- I don't
 2   know at this point which one the "if applicable" refers
 3   to.
 4       Q    Did you receive a proposal "which matches the
 5   policy I received"?
 6       A    I did not.
 7       Q    Okay.  So that part of your acknowledging receipt
 8   is just simply false?
 9       A    I signed an illustration, but did not receive a
10   copy of that illustration.
11       Q    I'm just looking at this exhibit, which is Walker
12   Exhibit No. 19, and there's something called an owner's
13   signature.  It's your signature, and you're signing one
14   sentence in which you're acknowledging receipt of some
15   documents.  The last document you're acknowledging receipt
16   of is something called a proposal, which matches the
17   policy you received; right?
18       A    Um-hmm, yes.
19       Q    Okay.  Is this a true acknowledgment that you
20   signed?
21            MR. FREIBERG:  Objection.  Asked and answered,
22   argumentative.
23            THE WITNESS:  What I believe occurred is that I
24   had an illustration placed in front of me, was signed, but
25   was not left with me, and possibly, I was told, that I
```

**EXHIBIT B**

**EXHIBIT B**

```
              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
                    SOUTHERN DIVISION
                        --oOo--
```

JOYCE WALKER, KIM BRUCE
HOWLETT, and MURIEL SPOONER,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

    vs.                Case No. CV-10-9198-JVS

LIFE INSURANCE COMPANY OF
THE SOUTHWEST, a Texas
corporation, and DOES 1-50,

       Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~

```
                     DEPOSITION OF
                   KIM BRUCE HOWLETT
                Thursday, May 10, 2012
                       VOLUME II
                  (Pages 194 - 289)
                      2:10 P.M.

                 101 California Street
                      23rd Floor
               San Francisco, California


               Corey W. Anderson, CSR 4096
```



Toll Free: 800.211.DEPO
Facsimile: 415.591.3335

Suite 1100
44 Montgomery Street
San Francisco, CA 94104
www.esquiresolutions.com

```
 1   you buy a policy?
 2           MR. FREIBERG:  Objection.  Argumentative.
 3           THE WITNESS:  I bought a policy based on
 4   the July 27th illustration.
 5           BY MR. SHAPIRO:
 6       Q.  Did you ever read the policy you
 7   purchased?
 8       A.  I have not read the policy.
 9       Q.  Ever in your life?
10       A.  I have read a portion.
11       Q.  When?
12       A.  As part of information that was compiled
13   by my legal team.
14       Q.  Before or after you sued?
15       A.  After.
16       Q.  So it's your testimony that you bought an
17   insurance policy, but never read it until after you
18   filed a class action lawsuit based on the policy?
19       A.  I purchased a policy based on the July
20   27th illustration.
21       Q.  Did you --
22           MR. FREIBERG:  Wait.
23           THE WITNESS:  I did not -- and I did not
24   read it subsequently, subsequent to purchase.
25           BY MR. SHAPIRO:
```



Toll Free: 800.211.DEPO
Facsimile: 415.591.3335

Suite 1100
44 Montgomery Street
San Francisco, CA 94104
www.esquiresolutions.com

```
 1       Q.   Did you have a chance to read your
 2   insurance policy?
 3       A.   Yes.
 4       Q.   Was it your decision not to?
 5       A.   Yes.
 6       Q.   And you take responsibility for that
 7   decision as well, sir.
 8            Right?
 9            MR. FREIBERG:  Objection, vague and
10   ambiguous.
11            THE WITNESS:  Yes.
12            BY MR. SHAPIRO:
13       Q.   And notwithstanding your counsel's
14   objection, you understand what it means to take
15   responsibility for something.
16            Right?
17            MR. FREIBERG:  Objection, vague and
18   ambiguous.
19            THE WITNESS:  I think it depends on the
20   context as to what you mean by responsibility.
21            BY MR. SHAPIRO:
22       Q.   Are you responsible for the honesty of the
23   court papers that are put in front of the federal
24   court with your name on it?
25            MR. FREIBERG:  Objection, vague,
```



Toll Free: 800.211.DEPO
Facsimile: 415.591.3335

Suite 1100
44 Montgomery Street
San Francisco, CA 94104
www.esquiresolutions.com

**EXHIBIT C**

**EXHIBIT C**

Page 1

UNITED STATES DISCTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

  v.                        CASE NO.:
                           10-9198JVS(RNBx)

LIFE INSURANCE COMPANY OF THE
SOUTHWEST, a Texas corporation,

        Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

MURIEL L. SPOONER

June 29, 2012

9:10 a.m.

Kasowitz, Benson, Torres & Friedman LLP

101 California Street, Suite 2300

San Francisco, California 94111


Reported by Mary Goff - CSR
California Certificate No. 13427



Case 2:10-cv-09198-JVS -RNB   Document 346-4   Filed 10/02/12   Page 16 of 19   Page ID #:15298

MURIEL L. SPOONER
WALKER vs. LIFE INS. CO. OF THE S.W.
June 29, 2012
Confidential
Page 156

1  to read your insurance policy carefully?
2          MR. FREIBERG:  Objection; vague and ambiguous.
3      A   They -- had -- had they had this on the list
4  of important things to consider.  So yeah, you know, it
5  would be something you would consider doing.
6      Q   (BY MR. SHAPIRO) Did you read your policy
7  carefully, as stated by the National Association of
8  Insurance Commissioners?
9      A   No.
10     Q   Did you read your policy at all?
11     A   Not after just receiving it, no.
12     Q   Have you ever in your life read your insurance
13 policy?
14     A   I have read through it now.
15     Q   When was the first time you read your
16 insurance policy?
17     A   Again, reading through it when we went through
18 it with our -- with Jack Dugan.
19     Q   So what, more than a year after you purchased
20 it?
21     A   Approximately, yes.
22     Q   Any reason why you couldn't have read the
23 insurance policy when it was provided to you and you
24 acknowledged receiving it in October of 2007?
25     A   No.  There would be no reason.



Case 2:10-cv-09198-JVS -RNB   Document 346-4   Filed 10/02/12   Page 17 of 19   Page ID #:15299

MURIEL L. SPOONER                                           June 29, 2012
WALKER vs. LIFE INS. CO. OF THE S.W.                        Confidential
Page 232

```
 1    A    Yes.
 2    Q    And that was the same evening meeting in which
 3  you and your husband reviewed for the first time the
 4  July 27 illustration, correct?
 5    A    Yes, that is correct.
 6    Q    Sequentially in that meeting, which did you do
 7  first, dictate your application or review the
 8  illustration?
 9    A    I don't recall the order.
10    Q    Okay.  Do you remember -- strike that.
11         Were you also in Mr. Cooper's office on
12  October 11, 2007, when he reviewed with you the as
13  issued illustration --
14         MR. FREIBERG:  Objection.
15    Q    (BY MR. SHAPIRO) -- Spooner Exhibit 12?
16         MR. FREIBERG:  Objection; misstates the
17  testimony of the witness.
18    A    As I recall, we met in his office to receive
19  this.
20    Q    (BY MR. SHAPIRO) Were you in a conference room
21  or in his office?
22    A    To my best recollection, it was his office.
23    Q    Husband was there, right?
24    A    Yes, that's correct.
25    Q    Anyone else in the room?
```



**EXHIBIT D**

Policy Cost and Benefit Summary
Prepared for
JOYCE ANN SCHMIDTBAUER LS015667000-UDA 3HN

Presented by JEFFREY STEMLER

$2,464,759 LSW Provider with benefits previously described.

Age 48
Verified Standard NT
Female
State - CA

| Policy Year | Guaranteed Annual Cash Flow | Guaranteed End Year Net Cash Value | Guaranteed End Year Net Death Benefit | Current Basis B Annual Cash Flow* | Current Basis B End Year Net Cash Value* | Current Basis B End Year Net Death Benefit* |
|---|---|---|---|---|---|---|
| 5 | $ (112,637) | $446,792 | $2,464,759 | $ (112,637) | $ 533,218 | $ 2,464,759 |
| 10 | 0 | 423,404 | 2,464,759 | 0 | 734,572 | 2,464,759 |
| 20 | (48,198) | 580,267 | 2,464,759 | (48,198) | 2,086,807 | 2,464,759 |
| 23 | (48,198) | 627,048 | 2,464,759 | (48,198) | 2,817,349 | 3,239,952 |

| Policy Year | Averaged Annual Cash Flow* | Averaged Net Equity End Year* | Averaged Net Death Benefit End Year* |
|---|---|---|---|
| 5 | $ (112,637) | $ 488,472 | $ 2,464,759 |
| 10 | 0 | 567,822 | 2,464,759 |
| 20 | (48,198) | 1,230,285 | 2,464,759 |
| 23 | (48,198) | 1,543,496 | 2,464,759 |

* Benefits and values are not guaranteed. The assumptions on which they are based are subject to change by the insurer. Actual results may be more or less favorable.

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed. I UNDERSTAND THAT HISTORICAL PERFORMANCE OF THE S&P 500® INDEX SHOULD NOT BE CONSIDERED A REPRESENTATION OF THE PAST OR FUTURE PERFORMANCE FOR ANY OF THE INDEXED STRATEGIES IN THE POLICY.

Date 1/11/08   Applicant By [signature] JOYCE ANN SCHMIDTBAUER

I certify that this illustration has been presented to the applicant and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration.

Date 1/11/08   Agent [signature]

LIFE INSURANCE COMPANY OF THE SOUTHWEST, DALLAS, TX 75247-4921

December 27, 2007
TC37133(1007)

This illustration is not complete without all pages.
Copyright

Page 23 of 23
v3

Confidential

Walker
EXHIBIT NO. 20
DATE 1-27-12
GINA GLANTZ - NO. 9795

LSW 00002303