WILMERHALE

June 7, 2012

Timothy Perla

+1 617 526 6696(t)
+1 617 526 5000(f)
timothy.perla@wilmerhale.com

*Via E-mail*

Brian Brosnahan, Esq.
Kasowitz, Benson, Torres, & Friedman LLP
101 California Street, Suite 2300
San Francisco, CA 94111

Re: <u>Walker et al. v. Life Insurance Company of the Southwest</u>

Dear Brian:

We write in response to your May 24, 2012 letter. LSW disagrees with Plaintiffs' position, and is confident that the testimony provided by its corporate designees on May 1-3, 2012 satisfies its obligations under applicable law. Accordingly, LSW declines to permit further deposition on the topics in question.

Most fundamentally, your letter ignores the governing standard. Rule 30(b)(6) requires that a party noticing a corporate deposition "describe with reasonable particularity the matters for examination." The party being deposed then designates witnesses and "may set out the matters on which each person designated will testify." While witnesses are required to be reasonably knowledgeable and prepared on their designated topics, they *are not required* to know the answer to every question put before them. *Costa v. County of Burlington*, 254 F.R.D. 187, 190 (D. N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witnesses.").

This is particularly true where, as here, deposition topics were broad and confusing, and where questioning repeatedly detoured outside of designated topics. *See United States v. Guidant Corp.*, 2009 WL 3103836, *3 (M.D. Tenn. 2009) (Motion to compel additional deposition testimony denied in part because "the listed [deposition] topics were so broad that they did not give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic."); *Oakley v. Fed'n Employment and Guidance Services*, 2011 WL 2946133, *3 (S.D.N.Y. 2011) (Motion for sanctions denied in part because the Court "[found] that the primary reason [the witness] struggled with answering questions at his deposition was the problematic nature of plaintiff's counsel's questions."). Here, Plaintiffs served 45 confusing, redundant, overlapping, vague, and often irrelevant topics. LSW received minimal cooperation in eliminating irrelevant topics, or clarifying vagaries and redundancies (it took an order from Magistrate Judge Block to remove many of the most objectionable topics). Once depositions began, Plaintiffs asked questions in a meandering, disorganized manner. Plaintiffs' counsel did not organize questioning by topic, strayed back and forth between and among topics, failed to

WILMERHALE

Brian Brosnahan, Esq.
June 7, 2012
Page 2

identify which topics pertained to which series of questions, and *very often strayed entirely outside of designated topics*.[1]

Notwithstanding the confusing environment that Plaintiffs created, LSW chose as deponents the six persons best suited to address the topics in question (based on LSW's understanding of lengthy and confusing topics).  LSW specified in writing the topics or portions thereof for which each witness would be designated to testify (as further detailed below, many of your protestations relate to your disregard of those designations).  Once designated, the witnesses prepared for well in excess of 60 hours, reviewed thousands of pages of documents (all of which have been produced), and gathered information from other knowledgeable LSW employees.  The witnesses then sat for nearly 18 hours of testimony over three days (waiving limitations on length of days), truthfully answering every question put to them to the best of their ability.  On this record, LSW is very comfortable that it has satisfied its obligations.  I address your specific contentions below.

Topic No. 5:  Your criticism of Ms. McDonald's testimony on Topic No. 5 ignores the limitations of Ms. McDonald's designation and fails even to acknowledge that Ms. Rusnock was also designated for the topic.  On April 26, 2012, I sent a letter to you stating that Ms. McDonald "will be LSW's designee for Topics 1-5 to the extent they call for testimony identifying the written statements and the decision around what documents to mandatorily provide policyholders.  To the extent Plaintiffs seek testimony about non-mandatory written disclosures by LSW, Ms. Rusnock will testify."[2]  During her deposition, Ms. McDonald answered questions concerning the topic within the limitations of her designation.  *See* McDonald Depo. at 25-32.  Ms. Rusnock then proceeded to fully and truthfully answer all questions put to her (including on Topic No. 5), and you make no contention that her testimony was inadequate (as to Topic No. 5 or otherwise).

Topic No. 33:  Plaintiffs contend that Ms. Burmester was unprepared to testify regarding Deposition Category No. 33.  The transcript refutes this contention.  Plaintiffs spent a significant amount of time questioning Ms. Burmester about cost of insurance charges and she answered a wide variety of questions on the topic, despite the fact that Topic 33 is particularly broad and vague.  Burmester Depo. at 27, 46-48, 143-49, 152-56, 183-88, 190-227.  In particular, Ms. Burmester answered a number of questions related to expected mortality experience.  *Id.* at 201-207; 222-25.  That Ms. Burmester could not answer a specific question is irrelevant, especially

---

[1] As you will recall, Defense counsel was forced to object *dozens of times*  to questions falling outside of designated topics, which questions were often also harassing.  *See, e.g.,* McDonald Depo. at 64-65 (asking if Ms. McDonald had ever heard of a place called Monte Carlo).

[2] At the beginning of Ms. Rusnock's deposition, which immediately followed Ms. McDonald's deposition, I even reminded you that Ms. Rusnock was available to testify regarding Topics 1-5, and handed you a copy of the letter in which LSW made that designation.  Rusnock Depo. at 11.

WILMERHALE

Brian Brosnahan, Esq.
June 7, 2012
Page 3


where that question related to "actual mortality experience" (your question) and not "expected mortality experience" (the topic).

Topic No. 37:  LSW is confused by Plaintiffs' contention that Ms. McDonald was unprepared to testify regarding Topic No. 37, "particularly in regards to electronically stored information." Ms. McDonald was not designated for electronically stored information—a fact that you plainly understood.  *See* McDonald Depo. at 69-70 (Plaintiffs' counsel referring to Topic 37: "[a]s I understand it, you are not going to be testifying about the electronic policyholder files, but you'll be testifying about hard copy policyholder files; is than an accurate statement?").  To the extent you further complain that Ms. McDonald said that she would be testifying on "specifically new business," that does not mean her testimony was inadequate.  "New Business" is the area of LSW that processes documents relating to individual policyholders (*i.e.,* the topic).  Ms. McDonald answered your questions about policyholder hard copy documents.[3]

You also incorrectly posit that Ms. McDonald "stated that she was not aware of LSW's policies regarding retention of policy illustrations."  Letter at 3.  This is an inaccurate description of the testimony.  Ms. McDonald was not asked about "LSW's policies regarding retention of policy illustrations."  You asked, "[d]oes LSW have a policy of maintaining a copy of a signed illustration in the policy file" and "[d]oes LSW have a copy of a signed illustration for each of the Provider and Paragon policies that have been issued?"  *Id.* at 78.  By even asking these questions, you violated our April 23 agreement (memorialized in my April 26 letter) that "the topics do not call for review of policyholder files for the presence of disclosures."  Simply put, it was ridiculous to expect any human being to know whether each policy file (*i.e.*, over 30,000 of them) contains any particular document, which is why we agreed beforehand that witnesses would not be asked to do so.  Of course, Ms. McDonald did nonetheless answer numerous questions related to retention of illustrations. McDonald Depo. at 70-91.

Topic No. 42:  Plaintiffs contend that Mr. Escobedo was unprepared to testify regarding Topic No. 42 because he supposedly "had no knowledge of LSW's policies, procedures, and practices regarding maintaining electronic documents pertaining to the Provider or Paragon policies."  *But that was not the topic*.  Topic No. 42 said nothing about Paragon and Provider.  Rather, the Topic was highly general:  "LSW's data systems, including email systems, and LSW's policies, procedures, and practices regarding maintaining hard-copy and electronic documents, including but not limited to LSW's policies and methods regarding retention and retrieval of email and other electronic documents of current and former LSW employees."  Consistent with the generalized nature of the topic (which you over the phone described to me as 'very standard" document retention topic), Mr. Escobedo testified to LSW's company-wide file and email

---

[3] You also now claim that information regarding "individual policyholder premium, fee, interest credits, lapse, and death benefit information" is "not within the purview of new business." However, Plaintiffs never asked Ms. McDonald about any of these items as they related to Topic 37.  Plaintiffs cannot complain after the fact that they did not receive certain information when they never asked questions that would elicit such information.

WILMERHALE

Brian Brosnahan, Esq.
June 7, 2012
Page 4


computer systems.  It is unremarkable (and appropriate) that Mr. Escobedo could not answer all of your highly specific questions about the storage of particular data (which questions in any event fall outside of the topic).  For example, Mr. Escobedo was asked "[i]f you wanted to find the gross premiums paid on LSW's Provider product, do you know what system you would obtain that data from?"  Escobedo Depo. at 32.  That question is simply outside of a topic that speaks generally to a large company's computer systems.  If you wanted that level of detail, your obligation was to serve a topic that called for it.

Accordingly, LSW declines to allow Plaintiffs to re-depose witnesses.  To the extent Plaintiffs would like to propose stipulations (either as to authenticity or as to additional information that Plaintiffs seek), LSW is always willing to explore efficiencies, and awaits a more specific proposal.

Finally, Plaintiffs continue to ignore the very serious practical problem posed by Topic No. 20.  As LSW has repeatedly informed Plaintiffs, LSW cannot with reasonable burden obtain the requested information.  As you know from your request of the named Plaintiffs' data, it takes weeks to obtain data for each individual policyholder.  LSW was willing to do that for three named Plaintiffs; doing it for a class of tens of thousands is not even close to reasonable.  That same problem would hold true in the case of a deposition (i.e., there is no way a witness could gather or learn the data).  Accordingly, LSW stands by its prior position.

Sincerely,


*/s/ Timothy Perla*

Timothy Perla

cc:   Jonathan A. Shapiro, Esq.
      Andrea J. Robinson, Esq.
      James Lux, Esq.
      Joel Fleming, Esq.
      Charles N. Freiberg, Esq.
      Jacob N. Foster, Esq.
      Jeanette T. Barzelay, Esq.