Jonathan A. Shapiro (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  93304
Tel:    (650) 858-6101
Fax:    (650) 858-6100
jonathan.shapiro@wilmerhale.com

Andrea J. Robinson (pro hac vice)
Timothy J. Perla (pro hac vice)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Tel:    (617) 526-6000
Fax:    (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50<br><br>Defendant. | Case No.: CV 10-9198-JVS(RNBx)<br><br>**DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF NEW AND REMAINING CLAIMS RELATING TO CURRENT BASIS POLICY VALUES**<br><br>Judge:    Hon. James V. Selna<br>Date:     March 4, 2013<br>Time:     1:30 P.M.<br>Courtroom:  10C |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  ARGUMENT...........................................................................................2

    A.  Plaintiffs Cannot Establish Predominance ..............................................2

        1.  Class Members Who Receive Truthful Information Cannot Sustain UCL or Fraud Claims.....................................................2

    B.  Class Certification is Improper Where, As Here, Determining What Class Members Were Told Requires Individualized Inquiry......3

    C.  To Defeat Certification, LSW Is Not Required to Prove That Certain "Magic Words" Have Been Used During Sales.......................8

    D.  Yokoyama Is Not to the Contrary ..........................................................9

III.  CONCLUSION.....................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bradberry v. John Hancock Mut. Life Ins. Co.*,
222 F.R.D. 568 (W.D. Tenn. 2004)...................................................................6

*Cohn v. Mass. Mut. Life Ins. Co.*,
189 F.R.D. 209 (D. Conn. 1999).....................................................................7

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
178 Cal. App. 4th 830 (2009) ...................................................................7, 11

*Markarian v. Conn. Mut. Life Ins. Co.*,
202 F.R.D. 60 (D. Mass. 2001) .......................................................................7

*Matter of Ross*,
94 B.R. 210 (M.D. Ga. Bankr. 1988)..............................................................8

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)...................................................................passim

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*,
71 Cal. App. 4th 1260 (1999) ........................................................................12

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .....................................................................2, 6

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)....................................................................................6

*Yokoyama v. Midland National Life Insurance Company*,
594 F.3d 1087 (9th Cir. 2008) .............................................................9, 10, 11

STATUTES

Cal. Ins. Code §10509.956(d)..............................................................................10

- ii -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION, 10-CV-09198-JVS (RNBx)

## RULES

Fed. R. Civ. P. 23 ...................................................................................................2, 6

# I.    INTRODUCTION

Plaintiffs' Motion for Class Certification shares many of the defects of their Motion to Amend.  *First*, it is untimely.  The deadline to file motions for class certification expired on May 14, 2012, and Plaintiffs offer no excuse that can justify the lateness of their filing.  *Second*, Plaintiffs seek to certify claims that cannot survive on the merits as to any class member.  *Finally,* Plaintiffs re-argue claims that this Court has already correctly held cannot be certified.  As to all of these  points, LSW relies on, and incorporates by reference, its Opposition to the Motion to Amend.

This Opposition focuses on another fatal flaw of Plaintiff's Motion for Certification of a Class relating to the repackaged claims they now seek to assert : lack of predominance.  To certify a class, Plaintiffs must prove that certain information about the three enhancements was entirely omitted from each and every sale that took place between thousands of agents and tens of thousands of class members.  They cannot do so.

Plaintiffs' core argument is that class members probably did not receive the allegedly omitted information.  But that does not establish predominance.  Under Ninth Circuit precedent, LSW is not required to present *any* evidence concerning what disclosures were made to particular class members.  Rather, certification must be denied given that *determining what disclosures were made is an individualized issue at the very heart of the case.*

Of course, even though LSW has no burden, even the existing evidence from the last round of briefing regarding class certification shows that the predominance problem is unavoidable.  Class members *were given* individualized disclosures

about the enhancements.  Thus, to determine whether there was an omission in each individual case will require individual fact-finding about each sale.  These issues cannot be resolved for all putative class members in one stroke. [1]

## II.     ARGUMENT

### A.     Plaintiffs Cannot Establish Predominance

#### 1.     Class Members Who Receive Truthful Information Cannot Sustain UCL or Fraud Claims

Rule 23(b)(3) permits certification only if the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  This determination "begins, of course, with the elements of the underlying cause of action."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011)).  Here, Plaintiffs seek to certify a current-basis claim that LSW should have "disclos[ed] to policyholders that [the non-guaranteed, eleventh-year] benefits had never been provided[.]" Pl.'s Mot. to Amend, Dkt. 368, at 5.  The existence of this omission is the first, necessary element of their claim.  *See* Pl.'s Mot. for Class Cert., Dkt. 371 at 17-18 (listing "Common Omissions" as first element of claim sought to be certified).

---

[1] To avoid repetition, LSW hereby incorporates by reference its filings on Plaintiffs' first Motion for Class Certification.  In that regard, although this brief focuses on predominance, particularly to the extent Rule 23 requirements overlap (*e.g.,* whether individual issues predominate informs superiority), the analysis of the other elements is guided by the  predominance analysis.

1
2
3
4
5
6
7
8
9

In *Mazza*, the Ninth Circuit held that a class could not be certified where it included members who "learned of the . . . allegedly omitted limitations before they purchased."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012).[2]  *Davis v. HSBC*, another Ninth Circuit decision, is the same.  There, the Ninth Circuit held that, under California law, a plaintiff received the allegedly omitted information cannot recover either for fraud or under the UCL.  691 F.3d 1152, 1163, 1169-70 (9th Cir. 2012).  For this case, *Mazza* and *Davis* (as well as the California decisions on which they rely) mean that policyholders who learned the allegedly concealed information during the sales process have no claim.[3]

10
11

> B.   **Class Certification is Improper Where, As Here, Determining What Class Members Were Told Requires Individualized Inquiry**

12
13
14
15

Application of the above rule is dispositive of class certification because the only way to determine what information each class member learned is by examining each sale individually, including the highly individualized interactions between each agent and each class member.

16
17

The record shows that "[e]ach sale is, at bottom, a human interaction." Dkt. 263 ("DeSantos Dec.") ¶¶ 3-4, 8.  There are no sales scripts and, aside from general

18
19
20
21
22
23
24
25
26

_____

[2] The Court's prior opinion addressed only the portion of *Mazza* concerning how the class must be defined.  Dkt. 353 at 29 (citing *Mazza*, 666 F.3d at 594 ("the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading.")).  The instant argument is based on an entirely separate *Mazza* holding—the portion which is fatal here.

[3] The Court has already observed that Plaintiffs can only establish liability for the fraud and UCL claims if they can show that information was actually concealed from class members.  See Dkt. 353 at 7, 20 n.13, 21, 38.

27
28

guidelines (*e.g.*, honesty), LSW does not constrain agents' discretion regarding what information to provide to policyholders. To the contrary, agents use their professional judgment to serve their clients' varied best interests. *Id.* ¶ 7; Dkt. 257 ("Birnbaum Dec.") ¶ 13; Dkt. 255 ("Foulk Dec.") ¶ 12. LSW has already submitted five agent declarations, which show a complete lack of uniformity in sales practices. Agents sell Paragon and Provider policies through numerous face-to-face meetings, during which agents explain the policies in unscripted oral communications. Dkt. 259 ("Obregon Dec.") ¶¶ 14, 16; Foulk Dec. ¶ 22; Birnbaum Dec. ¶¶ 12-13; Dkt. 256 ("Norona Dec.") ¶ 8. Sometimes agents provide written disclosures, which could include any of hundreds of LSW-generated documents, agent-generated materials, and/or written communications and notes. Obregon Dec. ¶ 15; DeSantos Dec. ¶¶ 6-7. Other times, agents provide no written sales materials whatsoever. Norona Dec. ¶ 9; Dkt. 258 ("Covi Dec.") ¶¶ 23-24. Meetings sometimes involved only the agent and prospective applicant. Other times, meetings involved other persons too, including lawyers, accountants, other insurance agents, and family members. Foulk Dec. ¶ 22.

Although it has no evidentiary burden, LSW has previously submitted evidence showing that in some of these meetings, agents conveyed the specific information that Plaintiffs now allege was omitted.

- Agent Mark Birnbaum testified that he "told some of [his] clients that their Provider policies may provide them with an Account Value Enhancement after ten policy years. When [he] started selling Provider, [he] told … clients that the product was brand new. Therefore, these clients knew that the policies had not been available for ten years yet." Birnbaum Dec. ¶ 22.

- Agent Sean Covi's declaration stated: "When presenting a Provider illustration to my clients, I sometimes point out that the illustrated values include a non-guaranteed Account Value Enhancement after ten policy years, but that (again) this is not guaranteed and may never happen." Covi Dec. ¶ 26.

- Agent Scott Foulk testified that he has "never told [his] clients that they are guaranteed to get either an Account Value Enhancement or a reduction of the monthly administrative charge." Foulk Dec. ¶ 46 "To the contrary," he "typically tell[s] his clients that they should not assume that they will get any of the non-guaranteed values featured in their illustrations." *Id.* ¶ 47.  Mr. Foulk "explain[s] that LSW's use of the term 'current' means non-guaranteed" and does "not tell [his] clients that 'current' values are actually being paid to anybody (to the contrary, [he] make[s] clear that the 'current' values are just an average of how the S&P 500 has performed over the past thirty years)." *Id.* ¶ 49.

Plaintiffs do not contest that agent interactions are individualized (they just ask the Court to ignore them, addressed *infra*).  But those interactions matter because they determine the foundational question in this case — did a given class member learn the allegedly concealed information?  And that question calls for individualized analysis.  In *Mazza*, the Ninth Circuit held that it was reversible error to certify a class that may include "members who learned of the … allegedly omitted [information] before they purchased," because these individuals had no claim, could not be class members, and as a result "common questions of fact [did] not predominate."  666 F.3d at 596.

- 5 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, 10-CV-09198-JVS (RNBx)

The Ninth Circuit's holding in *Mazza* is just one of a line of recent decisions that come out similarly. The Supreme Court has held that certification must be denied where the "validity of each one of the [class members'] claims" cannot be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And, applying *Dukes*, the Ninth Circuit elaborated that Rule 23(b)(3) predominance is absent where "there [is] no cohesion among the [putative class] members because they were exposed to quite disparate information from various representatives of the defendant." *Stearns*, 655 F.3d at 1020.

Earlier decisions by other federal courts have reached the same conclusion, finding that life insurance sales cases are inappropriate for Rule 23(b)(3) certification if the claims depend upon the facts of individual transactions between agents and purchasers. *See, e.g.*, *Bradberry v. John Hancock Mut. Life Ins. Co.*, 222 F.R.D. 568, 572-73 (W.D. Tenn. 2004) ("Defendant's sales of insurance policies use a non-uniform, non-standardized process…. it is impossible for the Court to consider issues of what representations were made or not made to each class member … without examining the individual circumstances of each person's transaction.").

In *Avritt v. Reliastar Life Ins. Co.*, for example, the Eighth Circuit held that class certification was improper where — as here — insurance policies "were sold by thousands of independent agents who did not follow a particular sales script" and were "free to answer any questions that customers had about the product." 615 F.3d 1023, 1035 (8th Cir. 2010). The district court in *Keyes v. Guardian Life Ins. Co. of America* reached the same result, rejecting plaintiffs' "repeated incantations regarding … alleged use of 'uniform' illustrations" because—again, just like here—"sales presentations differed from agent to agent, from client to client, and

---

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, 10-CV-09198-JVS (RNBx)

from transaction to transaction," thus requiring an "individualized inquiry as to the mix of information received by each class member." 194 F.R.D. 253, 256-57 (S.D. Miss. 2000).  Other courts have reached similar conclusions.  *See, e.g.*, *Markarian v. Conn. Mut. Life Ins. Co.*, 202 F.R.D. 60, 69 (D. Mass. 2001) (no certification because "total mix of information made available to each purchaser was distinctive, if not unique" because of varying written documents, "oral representations," and "independent sources of advice"); *Cohn v. Mass. Mut. Life Ins. Co.*, 189 F.R.D. 209, 214-15 (D. Conn. 1999) (no certification because varied training, sales presentations, uses of illustrations, and discussions required "individualized fact-finding" into whether misrepresentation or omission occurred).

California courts have reached the same conclusion in insurance sales cases involving UCL claims.  In *Fairbanks v. Farmers New World Life Insurance Company*, the court rejected plaintiffs' attempt to "proceed with a class action based solely on the allegedly misleading language of the policies" without considering information conveyed by agents because "class members may have received information explaining the allegedly concealed fact."  197 Cal. App. 4th 544, 564 (2011); *see also Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 842, 850 (2009) (affirming denial of certification where plaintiff "argued commonality could be found based solely on the use of illustrations" but "the viability of a UCL claim would turn on inquiry into … what … disclosures, representations, and explanations were given to any given purchaser.").  The same result follows here.

### C.  To Defeat Certification, LSW Is Not Required to Prove That Certain "Magic Words" Have Been Used During Sales

Plaintiffs have not quarreled with the notion that the sales process is individualized.  Instead, the thrust of their argument has been a demand for proof that disclosures during particular sales have included a precise form of words that discloses, to their satisfaction, what they say is the problem.  *See, e.g.*, Pl.'s Reply In Support of Mot. for Class Cert., Dkt. 291 at 9-10; Pl.'s Obj. and Resp. to LSW's Appendices A and B, Dkt. 298 at 1-18.  They have then relied on this parsing to claim that "LSW has presented no evidence that even a single policyholder—let alone a significant number—received any oral or written disclosure that corrected the deception in LSW's illustration." Pl.'s Prop. Reply to LSW's Supp. Mem. In Support of Mot. for Class Cert., Dkt. 348-1, at 3.  Basically, they are demanding that LSW prove certain magic words were used in each of tens of thousands of sales.[4]

Accepting Plaintiffs' position would constitute reversible error.  LSW has no burden whatsoever on this motion, and permitting Plaintiffs to shift the evidentiary burden onto LSW at this stage would be reversible error.  *See Mazza*, 666 F.3d at 595 (reversing class certification order, even though "there was no evidence that [Honda's] customers received" the allegedly omitted information).  LSW is not required to come forward with forty-thousand pieces of evidence to show what

---

[4] Even if Plaintiffs can come up with a precise form of words that have never been said by LSW's agents, that is not the test. "Unlike sorcery, the law does not require the invocation of magic words." *Matter of Ross*, 94 B.R. 210, 215 (M.D. Ga. Bankr. 1988). At minimum, LSW is entitled to put the disclosures in each individual sale in front of a jury and allow them to determine whether the disclosures are sufficient.

1   each policyholder was and was not told.  It is not required to provide *any* evidence

2   of what *any* individual policyholder was told.  Rather, as the above case law

3   demonstrates, it is the *very fact of an individualized sales process* that defeats class

4   certification.  Because that sales process creates *an individualized question* (which

5   does not need *answering* here) that will drive liability:  what were people told

6   about the allegedly omitted information?

7        Thus, in *Mazza*, the Ninth Circuit reversed the lower court's certification

8   order, even though the lower court had found "that while the omitted information

9   may have been available, there was *no evidence that customers received it*,"

10  because it was the Plaintiffs' burden to show that their case could be established by

11  common proof.  666 F.3d at 588, 595-96 (emphasis added).  Where the allegedly

12  omitted information "may have been available," proving its omission on a common

13  basis is impossible.  *See id.* at 595-96.

14       In any event— and even though LSW has no burden—the existing record

15  from the last round of briefing demonstrates that agents made individualized

16  disclosures about the enhancements. *See supra* (citing Birnbaum Dec. ¶ 22; Covi

17  Dec. ¶ 26; Foulk Dec. ¶¶ 46-49). These pieces of evidence are not necessary for

18  LSW to prevail, but they spotlight the problem that defeats predominance:

19  *answering the question of what policyholders were told* is individualized.

20

21       D.   ***Yokoyama* Is Not to the Contrary**

22     Recognizing the hurdle that an individualized sales process poses to

23  certification, Plaintiffs have argued that this Court cannot consider agent

24  disclosures at all.  Citing *Yokoyama v. Midland National Life Insurance Company*,

25  594 F.3d 1087, 1093 (9th Cir. 2008), Plaintiffs focus on a written certification

26

27

28

appearing on illustrations that agents sign that they "have made no statements that are inconsistent with the illustration." Pl.'s Mot. for Class Cert., Dkt. 371 at 20. Plaintiffs then argue that the same certification was present in *Yokoyama*, and that it somehow precludes LSW from offering *any* individualized evidence concerning agent interactions. *Id.* None of this is correct.

*First,* Plaintiffs distort the holding of *Yokoyama.* The *Yokoyama* court did not hold or suggest that any agent certification precludes consideration of agent-specific disclosures. Rather, the court merely *noted the existence of the certification*, once, in the "Background" section of its opinion, and then never discussed it again. 594 F.3d at 1090. The actual analysis addressed the narrow (and irrelevant here) issue of whether the district court had properly interpreted Hawaii's consumer protection laws. *Id.* at 1093-94. The opinion simply contains no holding concerning the certification.

*Second*, LSW's certification and the certification present in *Yokoyama* are critically different. *Yokoyama* concerned a unique certification implemented by the defendant insurer, specifically related to brochures (not illustrations), which stated, "I have made no statements which *differ in any significant manner* from this material." *Id.* at 1090. In contrast, LSW's certification (excerpted above) is imposed by California statute *on all illustrations by all insurers* and speaks to "statements that are inconsistent with the illustration." Pl.'s Prop. Reply to LSW's Supp. Mem. In Supp. Of Mot. for Class Cert., Dkt. 348-1 at 1; Cal. Ins. Code §10509.956(d). This wording difference is crucial because there is nothing "inconsistent" (*i.e.*, LSW's certification) about agents providing additional

information beyond that which appears in an illustration, even if that information
"differ[s] in a significant manner" (*Yokoyama* certification) from the illustration.[5]

Indeed, other courts confronted with the same certification that LSW uses have
had no trouble finding that agent disclosures remain relevant, and a barrier to class
certification.  *Fairbanks* and *Kaldenbach* both involved California illustrations,
which were required to include the same statutory certification present here, and
both courts found that class certification was improper based on the need for the
factfinder to examine the other disclosures provided by each agent to each putative
class member.  *See* 197 Cal. App. 4th 544 (2011); 178 Cal. App. 4th 830 (2009).

*Finally*, Plaintiffs have argued that the certification "estop[s]" LSW from
offering any evidence of agent disclosures in its defense.  *See, e.g.*, Pl.'s Reply in
Supp. Of. Mot. for Class Cert., Dkt. 291, at 17 ("To the extent that an agent
declarant clearly claims to make statements inconsistent with the illustration, LSW
should be estopped from relying on such evidence.").  That radical position finds
no support in *Yokoyama*, which does not speak to preclusion or estoppel.  Indeed,
Plaintiffs have been unable to identify *any* case holding that the California

---

[5] The flaw of Plaintiffs' position is further exposed by the fact that all insurers use the
same statutorily imposed certification as LSW.  It is nonsensical to suggest that the
California legislature meant to prevent all insurance agents in all insurance sales from
providing any information to policyholders beyond what appears within the four corners
of illustrations.

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION, 10-CV-09198-JVS (RNBx)

certification has any estoppel effect that would somehow prevent LSW from putting its individualized evidence before a trier of fact.[6]

## III.   CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for certification of the Current-Basis Claim should be denied.

Dated:        January 30, 2013              */s/ Jonathan A. Shapiro*
                                            Jonathan A. Shapiro

_____

[6] Of course, adopting Plaintiffs' estoppel argument would only exacerbate the class certification problem because establishing estoppel for each policyholder would itself require individualized fact finding.  "[T]o establish an equitable estoppel: … the party asserting the estoppel must be ignorant of the true state of facts; and … he must rely upon the conduct to his injury." *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal. App. 4th 1260, 1268 (1999) (internal quotations omitted) (cited by Plaintiffs in Dkt. 291 at 17). Both of these elements require an individualized analysis.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I am a resident of the Commonwealth of Massachusetts, over the age of eighteen years, and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109.  On January 30, 2013, I electronically filed the document(s) listed below via the CM/ECF system:

**LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF NEW AND REMAINING CLAIMS RELATING TO CURRENT BASIS POLICY VALUES**

Charles N. Freiberg
Brian P. Brosnahan
Jacob N. Foster
Jeanette T. Barzelay
KASOWITZ, BENSON, TORRES & FREIDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com
bbrosnahan@kasowitz.com
jfoster@kasowitz.com

Harvey R. Levine
Levine & Miller
550 West C Street, Suite 1810
San Diego, CA 92101
lmsh@levinelaw.com

Craig A. Miller
Law Offices of Craig A. Miller
225 Broadway, Suite 1310
San Diego, CA 92101
cmiller@craigmillerlaw.com

/s/ Joel Fleming
Joel Fleming

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, 10-CV-09198-JVS (RNBx)