Jonathan A. Shapiro (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 93304
Tel:    (650) 858-6101
Fax:    (650) 858-6100
jonathan.shapiro@wilmerhale.com

Andrea J. Robinson (pro hac vice)
Timothy J. Perla (pro hac vice)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50 <br><br> Defendant. | Case No.: CV 10-9198-JVS(RNBx) <br><br> **DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE** <br><br> Judge:      Hon. James V. Selna <br> Date:       April 8, 2013 <br> Time:       1:30 P.M. <br> Courtroom:  10C |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................1

II.    Argument ..................................................................2

      A.    The Court Should Revise Plaintiffs' Proposed Notice To Render
          It Neutral and Accurate ..........................................................2

          1.    Plaintiffs' Proposed Notice Contains Redundant and
               Argumentative Content ................................................3

          2.    Plaintiffs' Proposed Notice Contains Inaccuracies....................7

          3.    Plaintiffs' Proposed Notice Contains Improper Allusions to
               Financial Benefit ........................................................11

          4.    Plaintiffs' Proposed Notice Should Not Suggest That the
               Court is Encouraging Class Members to Sue LSW .................12

          5.    Plaintiffs' Proposed Notice Should Include Basic
               Information About LSW and Its Counsel .................................13

      B.    Sending the Notice is Premature Because the Special Master
          Must First Ascertain the Subclass ........................................15

III.   CONCLUSION............................................................16

- i -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MEMORANDUM IN OPPOSITION TO
MOTION FOR APPROVAL OF CLASS NOTICE, 10-CV-09198-JVS (RNBx)

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
  2010 WL 4054109 (E.D. Cal. Oct. 15, 2010) ..........................................3, 4

*Advance Drywall Co. v. U.S. Gypsum Co.*,
  565 F.2d 1123 (9th Cir. 1977) ..................................................................3

*Craft v. Ray's LLC*,
  2008 WL 5458947 (S.D. Ind. Dec. 31, 2008) ..........................................7

*Garcia v. Elite Labor Serv., Ltd.*,
  1996 WL 33500122 (N.D. Ill. July 11, 1996) ..........................................12

*Greenstreak Group, Inc. v. P.N.A. Constr. Techs., Inc.*,
  2008 WL 5504708 (E.D. Mo. Apr. 10, 2008) ..........................................4

*Hampton Hardware, Inc. v. Cotter & Co.*,
  156 F.R.D. 630 (N.D. Tex. 1994) ..............................................................13

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ..........................................................................3, 5, 12

*In re Potash Antitrust Litig.*,
  161 F.R.D. 411 (D. Minn. 1995) ..............................................................8

*In re Traffic Executive Ass'n Eastern R.R.*,
  627 F.2d 631 (2d Cir. 1980) ......................................................................3

*Krzesniak v. Cendant Corp.*,
  2007 WL 4468678 (N.D. Cal. Dec. 17, 2007) ..........................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................4

*PHL Variable Ins. Co. v. Abrams*,
  2012 WL 10686 (S.D. Cal. Jan. 3, 2012) ..................................................10

*Roberts v. Heim*,
    130 F.R.D. 416 (N.D. Cal. 1988) ..................................................................3

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................3

*Schaefer v. Overland Exp. Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996) ................................................................3

*Smith v. Family Video Movie Club, Inc.*,
    2012 WL 1252708 (N.D. Ill. Apr. 11, 2012) ........................................11, 12

**RULES**

Rule 23 ..................................................................................................1, 2, 7, 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const., First. Am. ............................................................................13

Life Insurance Company of the Southwest ("LSW") respectfully submits this Memorandum in Opposition to Plaintiffs' Motion for Approval of Class Notice.

## I.    INTRODUCTION

The parties appear to agree that class members must receive "the best notice that is practicable under the circumstances" (*see* Rule 23(c)), in order to afford them an informed opportunity to decide whether to participate in this litigation.  And LSW has largely accepted Plaintiffs' proposed form of class notice.   However, that proposed notice has several flaws that render it unbalanced and unclear.  Thus, LSW has submitted a revised proposed notice (Appendix A) and blackline (Appendix B, the "Blackline"), together with this memorandum.  Broadly speaking, Plaintiffs' proposed notice is flawed as follows.

*First*, Plaintiffs' proposed notice is neither neutral nor clear.  Their notice repeatedly uses inflammatory terminology — *i.e.*, unnecessarily hyperbolic and provocative — to refer to LSW's alleged conduct in ways that imply judicial endorsement of their claims.  It also contains redundant, lengthy passages about Plaintiffs' allegations—those allegations do need to be described, but not repeatedly.  In response, LSW has proposed wording changes and simple reorganization to make the notice shorter, less redundant, and easier to understand.

*Second*, Plaintiffs' proposed notice is factually incorrect in a few key respects.  It misstates LSW's role in illustration creation and the life insurance sales process, does not correctly describe policy guarantees and conditions for lapse, and misstates the preclusive effect of this litigation.  LSW's draft corrects these mistakes.

*Third*, Plaintiffs' proposed notice contains repeated suggestions that "money and benefits" will become available, and misstates what relief could ever be awarded.  Policyholders are entitled to understand what relief is at stake, but Plaintiffs have gone

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MEMORANDUM IN OPPOSITION TO MOTION FOR APPROVAL OF CLASS NOTICE, 10-CV-09198-JVS (RNBx)

overboard — the class notice should not be a vehicle for gathering support for litigation through repeated allusions to financial payouts.  LSW's draft notice balances these references, and eliminates unnecessary ones.

*Fourth,* Plaintiffs' proposed notice implies a judicial endorsement of litigation against LSW, and does not include any reference to the identity of LSW's counsel. LSW's version of the notice corrects these issues.

*Finally*, to the extent Plaintiffs request immediate distribution of the notice, their request is premature because subclass membership has not been ascertained.  This Court has ordered that a special master must ascertain subclass membership.  Until that occurs, the parties and the Court cannot issue the best practicable form of notice, which would be a notice that informs each recipient of his or her subclass status.  In order to ensure that the notice is not delayed, simultaneously herewith, LSW has filed a motion for appointment of a special master.  LSW's proposed notice includes bracketed language for use in cases where a recipient is in the subclass.  That form of notice should go out promptly after the special master has ascertained the subclass.

In short, the Court should approve a form of notice as revised by LSW, and order that it be sent promptly after the special master ascertains subclass membership.

## II.   ARGUMENT

### A.   The Court Should Revise Plaintiffs' Proposed Notice To Render It Neutral and Accurate

Rule 23(c)(2)(B) states that the Court must direct to class members "the best notice that is practicable under the circumstances."  The Rule calls for conciseness, as well as "plain, easily understood language."  Consistent with this, the Supreme Court requires that in "oversee[ing] the notice-giving process, courts must be scrupulous to respect judicial neutrality," and "must take care to avoid even the appearance of judicial

endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  To that end, any class notice must be "sufficiently balanced, accurate, and informative" to "satisfy due process concerns." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also In re Traffic Executive Ass'n Eastern R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (class notice must be "scrupulously neutral"); *Schaefer v. Overland Exp. Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996) (class notice must be "neutral and objective in tone, and should neither promote nor discourage the assertion of claims"); *Advance Drywall Co. v. U.S. Gypsum Co.*, 565 F.2d 1123, 1124-25 (9th Cir. 1977) (class notice must present a "fair recital" of the issues).  Where one or the other party proposes an imbalanced or argumentative notice, courts routinely require "a more balanced and detailed description of the action." *Roberts v. Heim*, 130 F.R.D. 416, 422 (N.D. Cal. 1988); *see also Adoma v. Univ. of Phoenix, Inc.*, 2010 WL 4054109, at *2-3 (E.D. Cal. Oct. 15, 2010) (requiring plaintiffs to revise class notice language that is "misleading, adversarial and argumentative").[1]

### 1.   Plaintiffs' Proposed Notice Contains Redundant and Argumentative Content

#### a)   Plaintiffs' Proposed Notice Contains Argumentative Labels Regarding LSW's Policies

LSW proposes revisions to remove unnecessary and argumentative language and labels; that is, adjectives that seem calculated to be provocative but add nothing more informative.  LSW's draft:

---

[1] Plaintiffs cannot override this law by citing the Federal Judicial Center forms.  FJC models must be adapted for each case to create a balanced, accurate, and informative notice. *See Adoma*, 2010 WL 4054109, at *2.  Indeed, Plaintiffs have only selectively followed the forms.  For instance, the cited FJC model includes *five lines* summarizing the claims.  Plaintiffs' proposed notice devotes many pages to describing their claims.

- Replaces "*high* risk" of lapse with "risk" of lapse.  Blackline at 5.
- Replaces "*high* risk that the Policy value will decrease *substantially*" with "risk that the Policy value will decrease."  *Id.* at 7.
- Removes the statement that "the Policies are *lapse-prone*."  *Id.*
- Removes the assertion that "it is *highly unlikely* that the policyholder" will realize tax benefits.  *Id.*
- Removes the assertion that policyholders must "keep paying LSW's *large* Policy fees until the death of the insured."  *Id.*
- Replaces "*substantial* Policy fees" with "Policy fees."  *Id.* at 5.
- Replaces "*high* fees" with "fees."  *Id.*

LSW's proposal, in every instance, is more neutrally worded and accurate.  Plaintiffs' argumentative characterizations have no place in a class notice.  *Cf. Greenstreak Group, Inc. v. P.N.A. Constr. Techs., Inc.*, 2008 WL 5504708, at *1 (E.D. Mo. Apr. 10, 2008) (rejecting "hyperbole such as the use of unnecessary adverbs and adjectives to describe the positions and conduct of the parties").  The FJC model that Plaintiffs claim to have followed eschews such language; so too should this notice.

Plaintiffs insist that LSW's changes "minimize" their claims so as to seem "less compelling" to class members (Plaintiffs' Memorandum in Support of Motion for Approval of Class Notice, Dkt. 404 ("Mem.") at 20) — but this misses the purpose of a class notice.  The class notice is not Plaintiffs' chance to encourage participation in the class, nor (to use Plaintiffs' terminology) make a more "compelling" pitch to absent litigants.  It is meant to be a fair, even-handed notice "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).  Similarly, Plaintiffs are off-base in protesting that LSW is modifying the notice's summary of

"Plaintiffs' *contentions*."  Mem. at 19 (emphasis in original).  The notice is not meant to reflect adversarial parties' competing attempts to sway class members to the truth of their "contentions."  The whole notice, not just parts of it, must be neutral.[2]

b)   **Plaintiffs' Proposed Notice Contains Argumentative Description of the Claims**

LSW's proposal replaces Plaintiffs' argumentative and confusing labels for their claims with more balanced descriptions.  Blackline at 7, 9.  In each instance, Plaintiffs proposed that their labels be preceded by the phrase "This is called…," as if the label were of the Court's own invention.  Blackline at 7.  This is untrue and creates the "appearance of judicial endorsement of the merits of the action."  *Hoffmann-La Roche*, 493 U.S. at 174.  Instead, LSW proposes that the description accurately reflect that it is Plaintiffs who have developed these labels.  Blackline at 7.

Next, Plaintiffs propose unbalanced labels for their claims that seem calculated solely to create undue fear amongst LSW policyholders.  Accordingly, LSW's proposal:

- Replaces "Volatility Defect Claim" with "Volatility Claim."  *Id*. at 7, 9.
- Replaces "Tax Defect Claim" with "Tax Claim."  *Id*.
- Replaces "Non Disclosure of Fees and Lapse Accelerators Claim" with "Undisclosed Fees Claim."  *Id*.
- Replaces "Failure to Disclose That Interest Is Credited Retrospectively Claim" with "Minimum Guarantees Claim."  *Id*.

---

[2] Plaintiffs also incorrectly suggest that LSW favors opt outs.  Mass opt-outs would just raise the specter of future litigation.  LSW's only interest is in a fair and balanced notice, so that any class preclusion cannot later be challenged on sufficiency of notice grounds.  Plaintiffs, on the other hand, have a financial incentive to minimize opt-outs (potentially increasing any fee award), and thus not to craft a balanced notice.

- Replaces "Illustrations Do Not Match Policy Re Eleventh Year Reduction in Fees Claim" with "No Guaranteed Fee Reduction Claim." *Id*.

Each of these labels are less argumentative and more balanced. They are also more consistent with the requirement of "plain, easily understood language" — "Re Eleventh Year Reduction in Fees" is not plain or comprehensible language.

Plaintiffs misleadingly suggest that these labels are "the Court's terminology for referring to the" claims. Mem. at 18. But the Court's class certification ruling made clear that its use of "Plaintiffs' terminology" in that order did not "imply factual findings or legal conclusions," and were used "only for ease of discussion." Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify a Class, Dkt. 353 ("Class Cert. Order") at 4 n. 7. The use of shorthand labels amongst the Court and counsel who are well familiar with the contours and posture of this litigation does not mean that the same terminology is appropriate for use with lay class members. In the class notice context, such one-sided descriptions create the undue impression of endorsement and are at odds with the requirement of scrupulous neutrality.

Plaintiffs' final resort is speculation that there could be "confusion" if a policyholder got the notice, went to the website, downloaded and read the Court's class certification order, and was unable to match these labels one-to-one with the labels used by the Court. Mem. at 18. This risk is remote, and in any event, the similar descriptions of the claims would certainly alleviate any confusion.[3]

---

[3] Plaintiffs suggest that LSW objects to including certain Court orders on any class website. Mem. at 18. This is untrue. LSW merely believes that exhaustively listing the contents of the website in a notice is unnecessary and confusing to class members who, for example, have no idea what a motion for "judgment on the pleadings" is.

c)     **Plaintiffs' Proposed Notice Contains Lengthy and Redundant Summaries of the Parties' Positions**

LSW's proposal consolidates redundant language that Plaintiffs proposed in a number of different locations into one section that describes what the lawsuit is about. Blackline at 5-8.  Plaintiffs' proposal unnecessarily describes the contentions of the parties once under the heading "What is this lawsuit about," then provides another, longer description under the headings "What does this lawsuit complain about" and "How does LSW answer."  Declaration of Charles Freiberg, Dkt. 404-1 ("Freiberg Dec.") Ex. A at 4, 6-7.  The result is an unnecessarily long and redundant notice that is at odds with the requirement for a clear and concise notice.  Fed. R. Civ. P. 23(c)(2)(B); *see also Craft v. Ray's LLC*, 2008 WL 5458947, at *1-2 (S.D. Ind. Dec. 31, 2008) (striking redundant sections of proposed class notice).  It is also at odds with the requirements that any class notice present information in a neutral and balanced way.[4]

2.     **Plaintiffs' Proposed Notice Contains Inaccuracies**

a)     **Plaintiffs' Proposed Notice Misstates LSW's Role in Issuing Policies**

LSW's proposal replaces the statement that policies are "marketed and sold by LSW" with the statement that policies are "issued by LSW."  Blackline at 5.  LSW's language is more accurate in describing LSW's role and more readily understandable by class members.  Policyholders purchased their policies through, and  interact with, independent insurance agents, not LSW.  There is a real risk that policyholders will be confused into thinking that they did not purchase a policy "marketed and sold" by LSW

---

[4] LSW agrees that the class notice need not attach an Exclusion Request Form.

when they had no contact with LSW.  Instead, "issued" is the proper terminology for LSW's role in the transaction, and one that policyholders can easily understand.

### b) Plaintiffs' Proposed Notice Misstates the Definition of Policy Lapse

LSW's proposal strikes the statement that lapse "mean[s] run out of money and terminate."  Blackline at 5.  This is an inaccurate statement of the definition of policy lapse, and the phrase "run out of money" creates a risk that current, in-force policyholders may inaccurately believe that their policy is losing money.  *See In re Potash Antitrust Litig.*, 161 F.R.D. 411, 412-13 (D. Minn. 1995) (notice with "neutral content" is essential to avoid "unnecessary disadvantage" to defendants' business).

### c) Plaintiffs' Proposed Notice Misstates LSW's Role in Creating Illustrations

LSW's proposal replaces "the Policy Illustration documents prepared by LSW and used by agents and brokers" with "certain illustrations used by agents and brokers." Blackline at 7.  The reference in the notice to illustrations "prepared by LSW" is inaccurate and likely to create confusion.  Pre-application illustrations are *almost always* created by the agent or broker, not LSW.  Indeed, those illustrations state, explicitly, that they are "Prepared" for the insured "By" his or her agent.  So, for example, the cover page of one of Ms. Walker's illustrations states that it was:

> ***Prepared*** on December 27, 2007 for
> Joyce Ann Schmidtbauer LS01566700-UDA 3HN
> ***By Jeffrey Stemler***

Second Amended Complaint Ex. A at 1 (emphasis added).[5]  The suggestion that Plaintiffs' claims are about illustrations "prepared by LSW" creates a substantial risk that these policyholders could be confused into thinking that they do not share these claims because their illustrations were prepared by their agent, not by LSW.

Plaintiffs' contention that LSW "did, in fact, design and prepare the illustration documents and software used by its agents" (Mem. at 19) is beside the point.  LSW did *create the software* that can generate pre-application illustrations, but by and large did not create the illustrations.  Plaintiffs' wording is, therefore, inaccurate.

### d)   **Plaintiffs' Proposed Notice Misstates the Guarantees in LSW Policies**

LSW's proposal replaces "provides no such guarantees" with "guarantees that this interest increase will happen retrospectively after a period of years."  Blackline at 7.  Plaintiffs' proposal implies that there is no guaranteed cash value accumulation under the policies.  Plaintiffs' version is both incorrect (*i.e.,* there is a guarantee) and unfair to LSW (*i.e.,* who would be subject to having policyholders misunderstand, en masse, that there are no guarantees).[6]

### e)   **Plaintiffs' Proposed Notice Misstates the Relief That May Become Available**

LSW's proposal modifies the statement that one form of relief sought by Plaintiffs is "the option to undo (or 'rescind') the Policies and seek refunds of the premiums paid

---

[5] Mr. Stemler was one of the independent agents who sold Ms. Walker (nee Schmidtbauer) her policy.

[6] Such misunderstanding would be particularly unfortunate because the "vast majority" of policyholders' policies are performing well above this guarantee.  Declaration of Stephanie Burmester, Dkt. 261 at ¶¶ 5-6.

for the rescinded Policies."  Blackline at 8-9.  Specifically, LSW seeks revisions to indicate that rescission would rescind "insurance coverage under those Policies," and that refunds would be limited to "a portion of the premiums paid."  *Id*.  Both additions are accurate, clear and balanced.

Plaintiffs' omission of these two details risks misleading class members, who must decide (based, in part, on the class notice's description of the relief being sought) whether to remain in the class or opt out.  These policyholders are entitled to know that the rescission option they may receive is not cost-free — *i.e.*, that "rescinding" a policy would entail forfeiting the policy's substantial death benefit protection that they purchased for themselves — and that they would not be entitled to a complete refund of premium payments.  *See* Joint Stipulation on Plaintiffs' Motion to Compel, Dkt. 120 at 77 (acknowledging that rescinding class members may not be able to get a refund of the cost of death benefit protection they have had while the policy was in force); *PHL Variable Ins. Co. v. Abrams*, 2012 WL 10686, at *6 (S.D. Cal. Jan. 3, 2012) (life insurer may assert setoff to "retain premiums received in a rescission action").

f)      **Plaintiffs' Proposed Notice Misstates the Preclusive Effect of This Litigation**

LSW's proposal revises the description of the preclusive effect of a final judgment in this action.  Blackline at 2, 11.  Plaintiffs take issue with LSW's proposal, which describes the preclusive effect as extending to "any omissions or misrepresentations in connection with [a class member's] Policy."  Mem. at 17.  However, the Court has already addressed this issue.  In deciding that Plaintiffs' proposed subclass satisfied the ascertainability requirement in Rule 23, the Court held that:

> A judgment resulting from the claims asserted by the class will necessarily have a res judicata effect on the claims of the subclass.  This is so because claims asserted by both the class and the subclass are based on ***material***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> ***omissions in connection with the purchase of the Policies***.  Thus, although they differ as to whether they are based on a wholesale omission or a less-than-full disclosure, ***both types of claims are premised on the same factual predicate, and as such, would be barred from re-litigation***.

Class Cert. Order at 34-35 (emphasis added).  In fact, the Court explicitly rejected the suggestion that res judicata is limited to claims presented in the action.  *Id*. (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) for the proposition that "the res judicata effect of a class-action settlement and judgment" extends to "claims that not presented in the class action").  Shouldn't class members determining whether to exercise their opt-out right have the right to know the scope of preclusion if they decide to stay in the class?  Plaintiffs' proposal does not accomplish this.

### 3.    Plaintiffs' Proposed Notice Contains Improper Allusions to Financial Benefit

#### a)    Plaintiffs' Proposed Notice Should Not Refer to "Money or Benefits" in the Introduction

On Page 2 of the Introduction, LSW's proposal replaces references to "money or benefits" with "recovery (if any)."  Blackline at 2.  It is improper for a class notice to promise or imply the likelihood of a monetary recovery, especially in the introduction. *See Smith v. Family Video Movie Club, Inc.*, 2012 WL 1252708, at *1 (N.D. Ill. Apr. 11, 2012) (refusing to adopt proposed notice where "[t]he first page" in a proposed class notice "emphasizes . . . the possibility of getting money or benefits" and therefore "fails to make clear that the court is not endorsing either side in this action" and fails to notify proposed class members "in a neutral manner").  Indeed, Plaintiffs' proposed notice uses the phrase "money or benefits" *four times on Page 2 alone*.  Freiberg Dec. Ex. A at 2. There is no need to refer to monetary recovery here, and in any event it is essential to note the possibility that there may be no recovery of any kind.

### b) Plaintiffs' Proposed Notice Should Not Imply That Class Members Will Get Money After Trial

LSW's proposal removes what was Plaintiffs' Heading 21, entitled "Will I get money after the trial?"  Blackline at 16.  A class notice should not promise or imply that policyholders will be monetary relief at any stage.  *See Family Video Movie Club*, 2012 WL 1252708, at *1; *Garcia v. Elite Labor Serv., Ltd.*, 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996) (modifying proposed class notice that "promises the potential recipients too much" because it "states that they will receive money if the judge enters final judgment in favor of the class").  Strikingly, after beginning with the question "will I get money after the trial," Plaintiffs' proposed text nowhere explicitly answers the question by informing class members that they may not get money after the trial.  *See* Blackline at 16.

This language is also unnecessary, as it describes a claims process that is potentially years away and has no bearing on the information in the notice itself.  *Id.* There is no need to invite confusion or bias simply to convey irrelevant information.

### 4. Plaintiffs' Proposed Notice Should Not Suggest That the Court is Encouraging Class Members to Sue LSW

LSW's proposal removes the suggestion that an absent class member "should talk to [his or her] own lawyer soon, because [his or her] claims may be subject to a time limit . . ."  Blackline at 11.  A class notice "must take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Hoffmann-La Roche*, 493 U.S. at 174. Plaintiffs' language risks confusion among class members, who may read it as a Court instruction that they talk to their attorney because they have claims they should assert swiftly.  In any event, this language is unnecessary, as most (maybe all) class members

who opt out for the purpose of "start[ing] or continu[ing] [his or her] own lawsuit against LSW" (Blackline at 11) are presumably already in contact with their attorney.[7]

### 5.   Plaintiffs' Proposed Notice Should Include Basic Information About LSW and Its Counsel

Plaintiffs' Motion also addresses two additions in LSW's proposal, that present information about the company, which they claim present "serious ethical concerns." Mem. at 23-25.  That is nonsense.

First, LSW's proposal adds language informing policyholders that if they "have any questions about [their] insurance policy other than about this Notice or this Class Action, [they] should contact LSW or your insurance agent as usual," and provides publicly-available contact information for LSW customer service.  Appendix A at 1, 12. This simply recognizes the fact that many class members have in-force policies with LSW, and may have routine reasons to contact LSW for information about their policies. LSW has a First Amendment right to such "business communications" with its customers.  *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 634 (N.D. Tex. 1994).

Plaintiffs' discussion of this addition in their memorandum is surprising, because *Plaintiffs have already agreed to include this language* and this exact language is reflected in Plaintiffs' proposed class notice.  Accordingly, there should be no dispute and this language should be included in any notice that goes out.

---

[7] To the extent that the Court feels notice should address the pending *Maraldo* litigation, LSW's proposed notice reflects a simple, straight-forward statement about other pending putative class actions.  Blackline at 11.  Plaintiffs' proposed addition is three paragraph long and improperly implies that policyholders should prefer participation in this class over *Maraldo*.  Mem. at 22-23.  No *Maraldo* language is better than Plaintiffs' language.

1    Instead of discussing the content of the notice, Plaintiffs instead request that the

2    Court issue an order prohibiting LSW from communicating with its policyholders about

3    "this lawsuit, or any issues directly related thereto."  Mem. at 24-25.  LSW has no

4    intention of communicating with class members about this lawsuit.  But Plaintiffs'

5    wording is broad and amorphous, and simply an invitation to future disputes.  What

6    constitutes an "issue directly related to" this lawsuit — if a policyholder calls LSW and

7    asks how guarantees are calculated on her policy, would LSW be entitled to answer that

8    question?  LSW is willing to engage with Plaintiffs on reaching a mutually agreeable and

9    fully workable order.[8]  But the Court should deny Plaintiffs' ambiguous motion and enter

10   an agreed-upon order when properly presented by joint stipulation.

11   Second, Plaintiffs take issue with the inclusion of basic information about LSW's

12   counsel in the class notice.  LSW's proposal simply reflects attorney names, a law firm,

13   an address, and a website — it does not include any contact information, and it

14   specifically directs class members that "LSW's counsel do not represent you or any other

15   Class Members."  Blackline at 14.  Such information is routinely included in class

16   notices, especially where care is taken not to include contact information.  *See Arevalo v.*

17   *D.J.'s Underground*, 2010 WL 2639888, at *3-4 (D. Md. June 29, 2010) (collecting

18   cases).  Indeed, the Northern District of California has recognized that including the

---

24   [8] Plaintiffs did not give time for this to happen.  They initiated a meet-and-confer process

25   about this proposed order just hours before filing their motion.  When LSW asked for the text of the proposed order so that it could understand what it was being asked to assent to,

26   Plaintiffs sent it after business hours at LSW's Vermont headquarters had ended.

identity of defense counsel is "a matter of basic fairness."  *Krzesniak v. Cendant Corp.*, 2007 WL 4468678, at *3 (N.D. Cal. Dec. 17, 2007).[9]

**B.    Sending the Notice is Premature Because the Special Master Must First Ascertain the Subclass**

Plaintiffs' position is also flawed insofar as they demand that the notice go out immediately.  While LSW agrees that the notice should go out as soon as possible, that cannot occur until subclass membership has been ascertained.  As LSW further explains in its Motion to Appoint a Special Master (incorporated herein by reference), until that occurs, the Court is not in a position to send out the best practicable notice.

As LSW's Motion elaborates, LSW has a due process right to have the subclass ascertained prior to trial.  Under circumstances where subclass membership will soon be known, it makes sense to use that information to craft a class notice that is as informative as possible.  That is, if a notice were to be sent now, it could recite the subclass definition (recipients of pre-application illustrations), but could do no more.  Recipients would be forced to search their memories of events up to seven years ago (Did I receive an illustration at all?  When?  When did I apply for my policy?  Etc.) and speculate about the impact on subclass membership when deciding whether to participate in this lawsuit.  Plainly, a class notice would be better (*i.e.,* more informative, easier to understand) if it actually informs each recipient about whether he or she is in the subclass.  This is possible if we simply begin the special master process now, and use its fruits when crafting the notice.

---

[9] Although Plaintiffs complain about the length of LSW's deliberation over its proposed changes to the notice (Mem. at 2-5), there was no delay — the motion to approve notice was timely filed and LSW has timely opposed.  LSW's deliberation was lengthy because it was had to propose extensive edits to Plaintiffs' one-sided notice to reflect, among other things, the parties' obviously differing views over the timing of the special master.

Unfortunately, LSW has raised this proposal with the Plaintiffs, and they have refused to accept it.  Accordingly, simultaneously herewith, LSW has filed a motion for appointment of a special master.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion insofar as they seek immediate distribution of their proposed form of notice, and instead: (i) approve a form of notice as revised by LSW; (ii) promptly appoint a special master; and (iii) send the notice promptly after the subclass has been ascertained and that information has been used to craft the best practicable notice.

Dated:          March 18, 2013                    __/s/ Jonathan A. Shapiro__
                                                  Jonathan A. Shapiro

**CERTIFICATE OF SERVICE**

I am a resident of the Commonwealth of Massachusetts, over the age of eighteen years, and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109.  On March 18, 2013 I served the within document(s):

**DEFENDANT LIFE INSURANCE COMPANY OF SOUTHWEST'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE**

I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail addressed as set forth below.

I personally caused to be hand delivered the document(s) listed above to the person(s) at the address(es) set forth below.

I emailed the document(s) listed above to the person(s) at the address(es) set forth below.

☒     I electronically filed the document(s) listed above via the CM/ECF system.

Charles N. Freiberg
Brian P. Brosnahan
Jacob N. Foster
Jeanette T. Barzelay
KASOWITZ, BENSON, TORRES & FREIDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com
bbrosnahan@kasowitz.com
jfoster@kasowitz.com

Harvey R. Levine
Levine & Miller
550 West C Street, Suite 1810
San Diego, CA 92101
lmsh@levinelaw.com

Craig A. Miller
Law Offices of Craig A. Miller
225 Broadway, Suite 1310
San Diego, CA 92101
cmiller@craigmillerlaw.com

*/s/ Joel Fleming*
Joel Fleming