Jonathan A. Shapiro (257199)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 93304
Tel: (650) 858-6101
Fax: (650) 858-6100
jonathan.shapiro@wilmerhale.com

Andrea J. Robinson (pro hac vice)
Timothy J. Perla (pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50<br><br>Defendant. | Case No.: CV 10-9198-JVS(RNBx)<br><br>DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER<br><br>Judge: Hon. James V. Selna<br>Date: April 22, 2013*<br>Time: 1:30 P.M.<br>Courtroom: 10C<br><br>*Hearing has been vacated per Dkt. 411 |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................. 2

     A.    LSW Is Entitled To Know Who Is In the Subclass Before Going to Trial ................................................................................................. 2

     B.    LSW Cannot Ascertain the Subclass Without the Aid of a Special Master ............................................................................................. 7

     C.    Potential Subclass Members Cannot Self-Ascertain .......................... 10

     D.    LSW's Motion Is Timely ..................................................................... 12

     E.    LSW's Proposed Special Master Instructions Are Sound, But LSW Is Always Willing To Meet-And-Confer .................................. 13

III.  CONCLUSION ........................................................................................ 14

- i -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Dukes v. Wal-Mart Stores, Inc.*,
　603 F.3d 571 (9th Cir. 2010) ............................................................................3, 8

*Holman v. Experian Info. Solutions, Inc.*,
　2012 U.S. Dist. LEXIS 91626 (N.D. Cal. July 2, 2012) ......................................4

*In re U. S. Fin. Sec. Litig.*,
　609 F.2d 411 (9th Cir. 1979) ...............................................................................6

*Matter of Rhone-Poulenc Rorer, Inc.*,
　51 F.3d 1293 (7th Cir. 1995) ...............................................................................7

*On the House Syndication, Inc. v. Fed. Express Corp.*,
　203 F.R.D. 452 (S.D. Cal. 2001) .........................................................................4

*Penk v. Oregon State Bd. of Higher Educ.*,
　99 F.R.D. 511 (D. Or. 1983) ................................................................................4

*United States v. James Daniel Good Real Prop.*,
　510 U.S. 43 (1993) ...............................................................................................3

*Valentino v. Carter-Wallace, Inc.*,
　97 F.3d 1227 (9th Cir. 1996) .............................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
　131 S. Ct. 2541 (2011) .....................................................................................8, 9

**STATE STATUTES**

Cal. Ins. Code § 10509.958(b)(2), (d) .........................................................................8

- ii -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

**RULES**

Fed.R.Civ.P. 53(b) ..................................................................................................6

Fed. R. Civ. P. 23 ...............................................................................................4, 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Am. VII............................................................................................7

**OTHER AUTHORITIES**

Thomas M. Byrne & Stacey McGavin Mohr, *Class Actions*, 63 MERCER L. REV. 1183, 1183 (2012) ........................................................................................8

- iii -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

## I. INTRODUCTION

LSW has made a simple and compelling argument for why the special master must be appointed now: LSW needs—and, indeed, has a due process right—to understand subclass membership to craft its defenses against these substantial claims *before* trial of those claims. Plaintiffs have no persuasive response. The Opposition ("Opp."): *(i)* ignores many of LSW's cited cases concerning due process, and essentially offers no substantive response to LSW's specific reasons why it needs to understand who is in the subclass; *(ii)* conflates the Court-ordered "response-required questionnaire" with the special master process (which can proceed with or without a questionnaire) in order to fabricate a false barrier to special master appointment; and *(iii)* argues illogically that LSW's motion is presently untimely, but that a special master can nonetheless somehow be appointed (presumably by motion) much later.

The Court should not permit Plaintiffs to walk away from the special master process after they told this Court that the process would be a **"simple" and "easy"** way to resolve what everyone agrees are individualized questions bearing on who is in the illustration class that is bringing three of the five claims left in the case.[1] Instead, the Court now should appoint the special master its class certification Order referenced, so that LSW can evaluate subclass membership (including the potential economic exposure and the evidentiary issues those members present) and set to the important work of preparing for class trial.

---

[1] Plaintiffs try, but fail, to explain away "simple. Opp. at 18. They do not even address their prior assertion that the special master process will be "easy." *Id.*

- 1 -

## II. ARGUMENT

### A. LSW Is Entitled To Know Who Is In the Subclass Before Going to Trial

In its opening memorandum ("Mem."), LSW explained precisely why it needs to know who is in the subclass before proceeding to trial.[2]  Mem. at 5-11.  In response, Plaintiffs: (i) do not dispute that LSW must be given an opportunity to present defenses, including defenses that are individualized (such as rebutting reliance),[3] and (ii) make no attempt to explain how LSW could ever present these defenses without knowing who is in the subclass.  This should end the issue.  However, Plaintiffs instead seek to erect three barriers to special master appointment; none is persuasive.[4]

### 1. *Plaintiffs Do Not Address The Controlling Precedent*

Plaintiffs begin with an irrelevant due process discussion about what, in the abstract, they say supposedly is or is not required for LSW to have a fair shot at defending their lawsuit.   Mem. at 7-11.  But LSW has never argued that there is a cookie cutter right to ascertain subclass membership prior to trial.  Rather, LSW's point is that, *in this particular case*, it needs to know subclass membership to put on its defenses.  That is precisely what the Supreme Court has called for, having

---

[2] LSW is not, through this motion, proposing to take discovery from the class.  It is proposing to begin the special master process that this Court ordered.
[3] Dkt.  353 ("Class Cert Order") at 24 (LSW "must be given the opportunity" to rebut the presumption of reliance, "which is an individualized inquiry").
[4] Plaintiffs assert that LSW has been "vague" about why it needs to know subclass membership.  Opp. at 12.  But LSW has specifically explained that it needs to know who is in the subclass to craft its defenses and rebut a presumption of reliance.  For example, if policyholder Doe is in the costs subclass, then LSW will put on trial evidence that Mr. Doe received cost disclosures and did not rely on the absence of costs.  *See* Mem. at 7-8.

- 2 -

"expressly rejected the notion [of] … a 'one-size-fits-all' formula for deciding every due process claim[.]" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 66 (1993). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 627 (9th Cir. 2010) *rev'd on other grounds*, 131 S. Ct. 2541 (2011) (quoting *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)).

In its opening brief, LSW cited several cases—including a controlling Supreme Court decision—which stand for the principle that defendants have a right to know the identities of class members before trial on the merits. *See* Mem. at 5 (citing cases). That precedent is before the Court and, as such, there is no basis for Plaintiffs to minimize it by falsely asserting that LSW "fail[ed] to identify a single case" supporting its argument. Opp. at 12. Plaintiffs barely attempt (and fail) to distinguish the cases that LSW cited.

For starters, Plaintiffs flat out ignore *Van West v. Midland National Life Insurance Company*, where the court held that a class action could not go forward unless it was possible "to identify the putative class members with [a] degree of precision in advance of trial." 199 F.R.D. 448, 451 (D.R.I. 2001) (cited in Mem. at 5). Plaintiffs offer only the most superficial response to *Waters v. International Precious Metals Corporation*, where the court referred determinations of class membership to a special master, holding that "any and all matters concerning who the members of the Plaintiff class [would] be for resolution before trial." 172 F.R.D. 448, 451 (D.R.I. 2001) (cited in Mem. at 5). Specifically, Plaintiffs simply note that a special master had already been appointed in *Waters,* and that the *Waters* court did

- 3 -

not use the term "due process" in explaining its decision. Opp. at 12 n.2. But they make no attempt to explain why those distinctions make any difference. *Id.*

Finally, Plaintiffs claim that the Supreme Court's opinion in *American Pipe* "suggest[s] only that the Court should ensure that absent class members are bound" before trial. Opp. at 12. Not so. In fact, the Supreme Court expressly stated that Rule 23 was designed to "assure that members of the class *would be identified before trial on the merits <u>and</u>* would be bound by all subsequent orders and judgments." 414 U.S. 538, 547 (1974) (emphasis added). [5]

None of the cases that Plaintiffs cite permits a deferred determination of class membership where, as here, the defendant needed to know the identities of individual class members to present a proper defense to liability. To the contrary, many of the cases that Plaintiffs cite assume that liability *could* be resolved without a determination of class membership. *See, e.g.*, *Penk v. Oregon State Bd. of Higher Educ.*, 99 F.R.D. 511, 513-14 (D. Or. 1983) (noting that "defendant will be able to defend the class liability claims") (cited in Opp. at 8); *On the House Syndication, Inc. v. Fed. Express Corp.*, 203 F.R.D. 452, 458 (S.D. Cal. 2001) (referring to gathering information from individual class members "after a determination of liability.") (cited in Opp. at 9); *Holman v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 91626, at *10-11 (N.D. Cal. July 2, 2012) (Ryu, M.J.) (referring to "the event of a class-wide liability finding.") (cited in Opp. at 9). These cases, in which

---

[5] Plaintiffs do not dispute that a class member could wait until after an adjudication to decide whether to be in the subclass—violating the rule of *American Pipe*, 414 U.S. at 547 (class members must be "identified before trial on the merits"). Instead, they suggest the one-way intervention rule does not apply to subclasses. *See* Opp. at 17. Yet they cannot identify cases adopting this proposed distinction (*Id.* at 16-17) or explain how it can be reconciled with Rule 23(c)(5), requiring that "subclasses [be] treated as a class."

- 4 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

liability could be resolved without information about individual class members, cannot control the result here.

### 2. *The Court Has Not Already Ruled That The Special Master Process Must Be Deferred Until After Trial*

Plaintiffs fare no better arguing that this Court already "implicitly" decided the timing of the special master process. *See* Opp. at 6 ("[T]he Court implicitly ruled that the questionnaire will go out after determination of liability on common issues because the Court later stated that the questionnaire was response-required") (citing Class Cert Order at 33). Plaintiffs conflate the special master process and the questionnaire. Under the class certification order, a questionnaire is just *one part* of the special master process. Thus, even if Plaintiffs were correct that distributing the questionnaire must wait until after trial, the special master process could still begin.[6] In any event, Plaintiffs are wrong. The class certification order says nothing about the timing of either the special master of the questionnaire. And the use of the words "response-required" do not imply that the questionnaire must wait—there is no required "opt in" because LSW is not asking for a procedure whereby policyholders must respond to the questionnaire to have any hope of subclass membership.[7]

---

[6] Plaintiffs themselves assert that the special master could ascertain most of the subclass without a questionnaire. *See* Opp. at 14 (referring to the "one-third of policyholders whose subclass membership cannot be determined from a file review").

[7] Plaintiffs lean heavily on the Court's reference to a "response-required" questionnaire. Opp. at 7. The Court knows what it meant by that statement, and LSW does not read it to create an opt-in. Regardless, it is now clear that *neither party* is demanding a opt-in questionnaire, so there is no need for one.

- 5 -

### 3. *Removing LSW's Defenses From the "Common Trial" Is No Answer*

Plaintiffs make a final fallback argument that LSW can put on its defenses "after the common issues are adjudicated." *See* Opp. at 14 (LSW can submit proof that an individual policyholder received disclosures of the fees "omitted… after the common issues are adjudicated."). Apparently, Plaintiffs now envision a trial bifurcation whereby some undefined "trial of common issues" occurs, followed by separate trials for each policyholder to adjudicate aspects of liability such as exposure to truthful information, or rebuttal of reliance.

Plaintiffs' new proposal—to defer litigation of *prima facie* liability elements until after the "common" trial—is a very different animal from the special master process that this Court has authorized. This Court held that a special master could ascertain the subclass, not decide liability issues.[8] Class Cert Order at 33.

Moreover, Plaintiffs' own trial plan (submitted to demonstrate their right to class certification) forecloses their argument that the special master process—and, thus, the issue of what disclosures were made to individual policyholders—can be deferred until after a "common trial." Opp. at 14. In their trial plan, Plaintiffs promised that "[a]ll of the elements of all of Plaintiffs' claims will be tried on a class basis through common proof, " "[t]he handful of… individual issues…presented may be easily addressed at trial," and "Plaintiffs will establish through common proof that LSW *uniformly* failed to disclose the omitted facts to policyholders[.]" (Dkt. 227-1, Ex. Z ("Trial Plan") at BPB 507-508, 523). In proposing to defer the

---

[8] A special master could not adjudicate liability issues. At most, a "trial judge may appoint a master under Fed.R.Civ.P. 53(b) to *assist* the jury" but this "is ' . . . the exception and not the rule . . . ,' because" it represents an "inroad on the jury's traditional sphere." *In re U. S. Fin. Sec. Litig.*, 609 F.2d 411, 428 (9th Cir. 1979).

- 6 -

special master process and the question of disclosures to individual policyholders until after a "common trial," Plaintiffs are abandoning all of those commitments.

In short, Plaintiffs' bifurcation proposal does not present a reason to delay the special master. Plaintiffs do not deny that LSW must be given an opportunity to put on defenses, including defenses that logically or strategically require knowledge of subclass membership (*e.g.*, rebutting reliance by each subclass member). Whichever part of the "trial" on liability includes LSW's right to litigate such defenses, it necessarily must come after LSW knows the identities of the subclass members who are bringing the claims it is defending. Thus, whether this is one trial, two, or 42,000, the special master must ascertain the class beforehand.[9]

**B.     LSW Cannot Ascertain the Subclass Without the Aid of a Special Master**

LSW's right to know who is suing it in order to prepare for trial cannot be brushed aside by the suggestion that LSW should make its own determination of subclass membership. In fact, Plaintiffs offer two contradictory statements concerning LSW's ability to ascertain the subclass without aid of a special master. On one hand, Plaintiffs claim that LSW can "readily conduct its own review of the policy files and/or contact the agent to determine whether a sales illustration was used." Opp. at 13. Yet they then make the flatly inconsistent acknowledgement that "one-third of policyholders['] … subclass membership cannot be determined from a file review." Opp. at 14.

---

[9] Inserting the special master process after a trial of some common issues but before a trial of individualized issues (*i.e.*, disclosures) going to liability would be extraordinarily inefficient. All liability issues have to be determined by the same jury. The Seventh Amendment provides "a right to have juriable issues determined by the first jury impaneled to hear them[.]" *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995).

- 7 -

Plaintiffs argue that, for those policyholders for whom LSW cannot ascertain subclass membership, LSW is somehow blameworthy because its files are not a one-stop-shop for all pre-sale illustrations, and that an appropriate punishment would be to delay the special master process. Opp. at 14. That argument—that LSW's due process right to know who is in the subclass that is suing it has been waived by records management—makes no sense on the facts or law.

There is no legal requirement for LSW to retain *pre-sale* illustrations. The California Insurance Code requires insurers to retain only a copy of the "basic illustration… sent with the policy." Cal. Ins. Code § 10509.958(b)(2), (d). But the subclass definition is not concerned with the basic illustrations sent at the time of policy delivery. The subclass definition asks about sales illustrations used before application. Class Cert. Order at 40 (Illustrations Subclass includes only those "who were provided a policy Illustration at or before Policy application."). California law does not require insurers to retain those documents. And this Court had recognized that LSW's business purpose for keeping policy files does not require this information either. *See* Class Cert. Order at 31 ("the file is intended to contain only the administrative information LSW needs to determine whether to issue a policy"); *compare Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011) (defendant's "policy against having uniform employment practices" that would "provide the commonality needed for a class action" is a "very common and presumptively reasonable way of doing business."). [10] So, Plaintiffs' criticism of

---

[10] Plaintiffs' suggestion that *Dukes* is a narrow decision limited to the trial-by-formula concept (Opp. at 11) is illogical. *See, e.g.*, Thomas M. Byrne & Stacey McGavin Mohr, *Class Actions*, 63 MERCER L. REV. 1183, 1183 (2012) (referring to "Supreme Court's landmark recalibration of class certification requirements in *Wal-Mart Stores, Inc. v. Dukes*").

the state of LSW's files is unfounded.  And Plaintiffs identify no cases supporting the radical proposition that even poor record keeping could ever cause forfeiture of due process rights.

Even if LSW had the necessary information, Plaintiffs acknowledge that ascertaining the subclass would require LSW to duplicate the work of the special master by reviewing 8 million pages of policyholder files. *Id.* at 13 n.3.  LSW would also have to precisely anticipate (a) the guidance the special master will be given for reviewing files; (b) how the special master decides to resolve every one of the "close[] questions" that the Court has noted will arise during the process; and (c) how policyholders will respond to whatever questionnaire they receive (if the questionnaire is part of the pre-trial special master process).  Plaintiffs admit that they refused to respond to an interrogatory asking them to identify subclass members. Opp. at 13.  And even though all policyholder files have now been produced to them, Plaintiffs still have not attempted to update their interrogatory answer.  LSW should not be forced to bank its trial preparation and trial strategy on guesswork approximating the special master's conclusions when a "simple" and "easy" alternative—appointing the special master now—is available.

Finally, Plaintiffs' surprising assertion that they may lose at trial, thereby rendering the special master unnecessary (Opp. at 17), is no reason to delay the process.  If Plaintiffs' case is sufficiently weak that LSW's Due Process rights are not in jeopardy, they should say so.  In any case, Plaintiffs' argument proves too much. Litigation—and the panoply of associated due process protections—always involves significant costs and there is always the risk that Plaintiffs' expenses will be "wasted" if the defendant is not found liable.  If that risk justifies deferring the

- 9 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

due process requirements here, then the "risk" of a defendant's victory would justify deferring due process requirements in every case.

### C. Potential Subclass Members Cannot Self-Ascertain

Plaintiffs also do not address how absent class members can be given the "best notice practicable" under circumstances where—by Plaintiffs' own admission—many of them will not know whether or not they are members of the subclass.

In its opening brief, LSW cited Ninth Circuit authority interpreting Rule 23's best-practicable-notice requirement to mean that each class member must be informed whether she is in the subclass. *See* Mem. at 11-12 (citing, *inter alia*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("[M]any potential members of the classes cannot yet know if they are part of the class. We therefore have serious due process concerns about whether adequate notice under Rule 23(c)(2) can be given to all class members to enable them to make an intelligent choice as to whether to opt out")). Plaintiffs attempt to distinguish *Valentino* by identifying a distinction—the relative "objectiv[ity]" of class criteria—that the Ninth Circuit's opinion does not mention. *See* Opp. at 16. Notably, Plaintiffs do not identify a single case that adopts this distinction. *See* Opp. 15-16 (citing *Valentino* and *In re Paxil Litig.*, 212 F.R.D. 539, 545 (C.D. Cal. 2003) as "inapposite"; failing to cite any additional cases).

The absence of case law supporting Plaintiffs' "objective criteria" distinction is not surprising. Even if this were a case where the criteria for determining subclass membership were deemed "objective" (or simple or easy), that still would be irrelevant because the vast majority of class members are unlikely to know *whether*

- 10 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

*they meet those objective criteria.*[11]  That is, as Plaintiffs acknowledge that the very substantial passage of time means that "some class members may not recall whether they received a sales illustration." Opp. at 16.  And, of course, recalling that an illustration was received (up to eight years ago) is still not enough.  To ascertain subclass membership, absent class members must also recall whether they received that illustration *before* or *after* submitting an application.  *See* Class Cert Order at 40 (Illustrations Subclass includes only those "who were provided a policy Illustration at or before Policy application.").

The named plaintiffs provide a perfect example of the difficulties that policyholders will experience in trying to determine their own subclass membership.  Mr. Howlett and Ms. Spooner lost their applications, not long after purchasing the policy.  *See* Fleming Dec., Ex. A ("We have looked for copies of our applications for the life insurance policies and can't find them.").  And, even after she received copies of her application in discovery, Ms. Spooner admitted that she *still* did not know whether she received her illustration before or after filling out her application.[12]

---

[11] Plaintiffs also offer no response to LSW's argument that Plaintiffs' counsel have themselves stated that determining subclass membership is a "legal opinion" that can only be resolved with the assistance of counsel.  *See* Mem. at 13-14.

[12] *See* Dkt. 346-4 at Ex. C ("Spooner Tr.") 232:2-9 ("Q.  And that was the same evening meeting in which you and your husband reviewed for the first time the July 27 illustration, correct? A.  Yes, that is correct.  Q.  Sequentially in that meeting, which did you do first, dictate your application or review the illustration? A.  I don't recall the order.").

- 11 -

### D. LSW's Motion Is Timely

Unable to defeat LSW's motion on the merits, Plaintiffs resort to a make-weight argument that LSW's motion is untimely. Opp. at 2-3. LSW disagrees.

In the Fourth Amended Pretrial Scheduling Order, the Court ordered that "any disputes among the parties concerning *the content of the class notice*" be filed within ten days after the Ninth Circuit's denial of LSW's 23(f) petition. *See* Dkt. 362 ¶ 2 (emphasis added). The Court undoubtedly knows what it meant in this Order, so LSW will not belabor the point. However, this is not a dispute about the contents of the class notice. The only connection between the special master and the contents of the class notice that Plaintiffs have been able to identify is that a questionnaire might be included *with* the class notice. Opp. at 2-3.[13] But even if Plaintiffs are correct, as mentioned above, the Court could withhold the questionnaire until after the special master has completed reviewing the policyholder files. Thus, even that tenuous connection to the "content of the class notice" should not pose a procedural barrier.[14] Dkt. 362 ¶ 2.

Moreover, Plaintiffs agreed to this schedule. In a March 5, 2013 email, Mr. Freiberg agreed that "[w]ith respect to the procedure for bringing any class notice

---

[13] Indeed, by Plaintiffs' reasoning, most any motion in this case would be untimely because most everything about the case at some high level "concerns the content of the class notice" about the case. For instance, if LSW prevails on summary judgment as to some claims, class notice contents will change.

[14] To the extent that Plaintiffs are arguing that the special master relates to the "content of the class notice" because the special master is mentioned in the class notice, that is spurious. The class notice summarizes the happenings of the litigation. If a special master is appointed and makes subclass membership determination, it would likely be reported in a class notice (as would any other event of similar importance to absent class members).

- 12 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

disputes before the Court, pursuant to your request we will proceed by a regularly-noticed motion filed by Plaintiffs *as opposed to simultaneous filings*." *See* Fleming Dec., Ex. B (emphasis added). Plaintiffs can hardly claim to have been surprised or otherwise prejudiced by LSW's motion—their own motion regarding class notice spent eight pages discussing the timing of the special master process. *See* Dkt. 404 at 6-14.

Finally, Plaintiffs have not explained why it was LSW's burden to seek appointment of a special master in the first place nor why any "delay" by LSW in moving for such appointment means the entire process can be called off. It was Plaintiffs who suggested that a special master be appointed as the fast/easy fix to the ascertainability problem. Dkt. 408-5 ("Hearing Tr.") at 59:17-18. It is Plaintiffs who represent a class that was certified *because* the special master process was available. *See* Class Cert Order at 33.[15]

### E. LSW's Proposed Special Master Instructions Are Sound, But LSW Is Always Willing To Meet-And-Confer

In prior meet-and-confer discussions, Plaintiffs were unwilling to brook any discussion of a special master process that began at any time before trial.[16] Nonetheless, LSW welcomes Plaintiffs' belated willingness to discuss these issues.

---

[15] LSW is only the moving party here because Plaintiffs failed to move for appointment of the special master that they had requested. Indeed, if a motion to appoint a special master is untimely today, then how could a special master be appointed after trial (as Plaintiffs say it must)?

[16] *See, e.g.*, Fleming Dec., Ex. B ("Plaintiffs have not prepared markups of the alternative notices you circulated, or the draft questionnaire, as we disagree that separate notices should be sent to members of the subclass (who, as you know, are also members of the Class), and we believe that dissemination of a questionnaire at this stage in the proceedings is premature …").

- 13 -

*See* Opp. at 25. LSW is willing to meet-and-confer with Plaintiffs about the timing of the questionnaire and about the guidance that should be provided to the special master (as discussed in Section V of Plaintiffs' Opposition). *See* Opp. at 19-25.

Meet-and-confer discussions about the allocation of special master costs, however, would not be productive. LSW was under no obligation to retain sales illustrations and its conduct has plainly not "necessitated the reference to the master." Opp. at 18. Plaintiffs should be estopped from arguing that they will not bear the costs of the special master, having already taken a contrary position in urging the Court to delay the process. See Dkt. 404 at 19.

## III. CONCLUSION

For the foregoing reasons, the Court should order that a special master be appointed with the costs to be borne by Plaintiffs and either adopt LSW's proposed order or order that the parties meet-and-confer over the details of implementation, including the guidance to be given to the Special Master.

Dated:	April 8, 2013

    /s/ Jonathan A. Shapiro

Jonathan A. Shapiro

Attorneys for Defendant
Life Insurance Company of the Southwest

- 14 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)

# CERTIFICATE OF SERVICE

I am a resident of the Commonwealth of Massachusetts, over the age of eighteen years, and not a party to the within action. My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109. On April 8, 2013 I served the within document(s):

LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER

☒   I electronically filed the document(s) listed above via the CM/ECF system.

Charles N. Freiberg
Brian P. Brosnahan
Jacob N. Foster
Jeanette T. Barzelay
KASOWITZ, BENSON, TORRES & FREIDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com
bbrosnahan@kasowitz.com
jfoster@kasowitz.com

Harvey R. Levine
Levine & Miller
550 West C Street, Suite 1810
San Diego, CA 92101
lmsh@levinelaw.com

Craig A. Miller
Law Offices of Craig A. Miller
225 Broadway, Suite 1310
San Diego, CA 92101
cmiller@craigmillerlaw.com

/s/ Joel Fleming
Joel Fleming

- 15 -

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A SPECIAL MASTER, 10-CV-09198-JVS (RNBx)