KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

LAW OFFICES OF CRAIG A. MILLER
CRAIG A. MILLER (SBN 116030)
225 Broadway, Suite 1310
San Diego, CA 92101
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>                    Defendant. | **CLASS ACTION**<br><br>CASE NO.: CV 10-9198 JVS (RNBx)<br><br>Formerly Case No.: 3:10-cv-04852 JSW from Northern District of California<br><br>**PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED**<br><br>District Judge James V. Selna<br>Date: May 6, 2013<br>Time: 1:30 p.m.<br>Court: 10C |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..................................................................................... 1

II.    ARGUMENT .......................................................................................... 2

    A.    Common Issues Predominate Among Subclass Members ................... 2

        1.    The Court Has Previously Found That The Subclass Claims Present Numerous Common Issues ................................ 2

        2.    Collecting Data Pertaining to Subclass Membership Is A Manageable Ministerial Task. ........................................ 3

            a)    The File Evidence Will Establish Subclass Membership for A Large Majority of the Subclass. ........ 3

            b)    Relevant Data Can Be Collected Relatively Quickly And Inexpensively. .............................................. 5

            c)    Sending A Response-Required Questionnaire to the Remaining 28% of the Class Does Not Present A Significant Burden. ................................................. 12

            d)    The Special Master Would Review the Data Collected And Make Recommendations to the Court or Jury. ....................................................... 14

        3.    The Court Has Broad Authority to Appoint A Special Master to Oversee the Review of LSW's Policy Files And To Make Recommendations to the Court or Jury About Subclass Membership. ...................................... 15

        4.    Alternatively, Plaintiffs or Both Parties Could Conduct A Review of LSW's Files And Present Evidentiary Findings to A Special Master, the Court, And/Or A Jury. ....... 20

    B.    Manageability Issues Do Not Justify Decertification. ....................... 21

    C.    Class Treatment Is Superior. ........................................................ 25

III.    CONCLUSION ..................................................................................... 25

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED    Case No. CV 10-9198 JVS (RNBX)

i

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aoki Tech. Lab. v. FMT Corp.*,
   1999 U.S. Dist. LEXIS 22711 (D.N.H. Apr. 22, 1999)...................19

*Arthur Young & Co. v. U.S. Dist. Ct.*,
   549 F.2d 686 (9th Cir. 1977) .....................................................19

*Bonito v. Guardian*,
   1997 U.S. App. LEXIS 27068 (9th Cir. 1997) ...........................15

*Caleb & Co. v. E.I. Du Pont de Nemours & Co.*,
   110 F.R.D. 316 (S.D.N.Y. 1986) ..........................................15, 16

*Carrera v. Bayer Corp.*,
   2011 U.S. Dist. LEXIS 135198 (D.N.J. Nov. 22, 2011)...............24

*Chesner v. Stewart Title Guar. Co.*,
   2008 U.S. Dist. LEXIS 19303 (N.D. Ohio Jan. 23, 2008)............24

*Cohen v. Chi. Title Ins.*,
   242 F.R.D. 295 (E.D. Pa. 2007).................................................24

*Durham v. Cont'l Cent. Credit*,
   2010 U.S. Dist. LEXIS 70445 (S.D. Cal. Jul. 14, 2010) ...............17

*Franklin v. Kelly*,
   1992 U.S. Dist. LEXIS 14300 (D.D.C. Sept. 24, 1992) .................6

*Herrera v. LCS Fin. Servs. Corp.*,
   274 F.R.D. 666 (N.D. Cal. 2011)................................................24

*Hinckley v. Bechtel Corp.*,
   41 Cal. App. 3d 206 (1974) .......................................................11

*Hofmann v. EMI Resorts, Inc.*,
   689 F. Supp. 2d 1361 (S.D. Fla. 2010) ........................................6

*In re Checking Acct. Overdraft Litig.*,
   275 F.R.D. 666 (S.D. Fla. 2011).................................................20

*In re OSB Antitrust Litig.*,
   2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007)................19

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ................................................................3

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED         Case No. CV 10-9198 JVS (RNBX)

ii

*In re: VisaCheck/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)..................................................................22, 24

*Kendrick v. Standard Fire Ins. Co.*,
  2010 U.S. Dist. LEXIS 135694 (E.D. Ky. Sept. 30, 2010) ...........................18

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ....................................................................24

*L.K. Comstock & Co. v. Becon Constr. Co.*,
  932 F. Supp. 906 (E.D. Ky. Jan. 27, 1993) ...................................................19

*Lau v. Arrow Fin. Servs., LLC*,
  245 F.R.D. 620 (N.D. Ill. 2007) ....................................................................22

*Lauber v. Belford High Sch.*,
  2012 U.S. Dist. LEXIS 165780 (E.D. Mich. Jan. 23, 2012)...........................16

*Morris v. Homco Int'l, Inc.*,
  1987 U.S. Dist. LEXIS 8285 (E.D. La. Sept. 9, 1987) ..................................15

*Perez v. First Am. Title Ins. Co.*,
  2009 U.S. Dist. LEXIS 75353 (D. Ariz. Aug. 12, 2009)....................18, 19, 24

*Polin v. Dun & Bradstreet, Inc.*,
  634 F.2d 1319 (10th Cir. 1980) .....................................................................19

*Ramirez v. Palisades Collection LLC*,
  250 F.R.D. 366 (N.D. Ill. 2008) ....................................................................22

*Sadler v. Midland Credit Mgmt.*,
  2009 U.S. Dist. LEXIS 26771 (N.D. Ill. Mar. 31, 2009)................................21

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*,
  271 F.R.D. 139 (N.D. Ill. 2010).....................................................................22

*Slapikas v. First Am. Title Ins. Co.*,
  250 F.R.D. 232 (W.D. Pa. 2008) ...................................................................24

*Smith v. Ga. Energy U.S.*,
  259 F.R.D. 684 (S.D. Ga. 2009) ....................................................................17

*Stauble v. Warrob*,
  977 F.2d 690 (1st Cir. 1991) ..........................................................................16

*Stuart v. Radioshack Corp.*,
  2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009) ................................21

*Thompson v. Clear Channel*,
  247 F.R.D. 98 (C.D. Cal. 2007)......................................................................22

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED     Case No. CV 10-9198 JVS (RNBX)

iii

*U.S. v. City of N.Y.*,
   276 F.R.D. 22 (E.D.N.Y. 2011) ...........................................................15

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...............................................................25

*Waters v. Int'l Precious Metals Corp.*,
   172 F.R.D. 479 (S.D. Fla. 1996) .....................................................17, 21

*Wilson v. Kiewit Pac. Co.*,
   2010 U.S. Dist. LEXIS 133304 (N.D. Cal. Dec. 6, 2010) ....................16

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ..........................................................22, 23

*Young v. Pierce*,
   685 F. Supp. 984 (E.D. Tex. 1988) ...........................................6, 22, 23

**STATUTES**

Cal. Civ. Code § 3548 ....................................................................................11

Cal. Ins. Code § 10509.955(b)(6) ..................................................................11

**RULES**

Fed. R. Civ. P. 23(b)(3) ..................................................................................22

Fed. R. Civ. P. 23(b)(3)(A)-(C) .....................................................................25

Fed. R. Civ. P. 53 ...........................................................................................14

Fed. R. Civ. P. 53(c)(1)(B) ...............................................................................6

Fed. R. Civ. P. 53(e)-(f) .................................................................................14

Fed. R. Civ. P. 53(f)(3) ..................................................................................14

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

iv

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## I.   <u>INTRODUCTION</u>

On April 12, 2013 the Court issued its Order to Show Cause re Reconsideration (Dkt. 417), which addressed the process, including time and expense of reviewing 42,000 policyholder files (totalling 8.8 million pages) in order to determine membership in the Illustration Subclass.  The Court commented that "the necessity for such an effort – either before trial as LSW urges or after – raises doubts about whether common issues predominate with regard to an Illustration Subclass and doubts whether such a subclass is a superior method of proceeding."  *Id.* at 2 (footnote omitted).  The Court further stated that "these issues should be revisited," and ordered the parties to show cause why the Court should not decertify the Illustration Subclass.  The Order to Show Cause identified no other issue as to which a further submission by the parties was requested.

As discussed below, no great difficulty is presented by the task of reviewing the 42,000 policyholder files to identify members of the Illustration Subclass.  There is no need to manually review each of the 8.8 million pages in the files, because data analysis and claims administration companies routinely use a combination of computer software and manual reviewers to extract the relevant documents from files like the LSW policyholder files.  Plaintiffs have obtained proposals from several such vendors.  Whether working under the supervision of a Special Master or directly under the supervision of the Court or the parties, a data analysis and claims administration company can complete the rquired review of the 42,000 policyholder files for as little as $█████ based on a █████ schedule.  *See* Declaration of Jacob Foster in Support of Plaintiffs' Submission on Order to Show Cause ("Foster Dec. re OSC") at ¶11 & Exs. I, J&K.

For the reasons discussed below, the need to identify members of the Illustration Subclass poses no obstacle to class certification and does not require reconsideration of the Court's previous conclusions that common issues

---

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED   Case No. CV 10-9198 JVS (RNBX)

1

predominate with respect to the subclass claims and that a class action is a superior method of proceeding to determine the subclass claims.

## II.   ARGUMENT

### A.   Common Issues Predominate Among Subclass Members

#### 1.   The Court Has Previously Found That The Subclass Claims Present Numerous Common Issues.

Common issues predominate among individuals in the Illustration Subclass, who assert UCL and common law fraud claims based on alleged misrepresentations that "are necessarily tied to the internal workings of [LSW's] software as expressed by the Illustrations produced by that software." Class Certification Order (Dkt. 353) ("Op.") at 36-37.  As the Court held, "all who received Illustrations before or when they applied for their Policies share common questions" because "the uniform application of [LSW's] software results in the uniform type of misrepresentation that forms the basis of this action." *Id.* Specifically, "the Illustrations uniformly fail to disclose the fees and lapse accelerators and uniformly fail to disclose that interest is credited retrospectively," and "all indications are that the defects alleged by Plaintiffs to be present in the Illustrations are present in all Illustrations produced." *Id.* at 37.  Further, the question of whether this undisclosed information is material is subject to common adjudication "[b]ecause [of] the nature of the specific omissions at issue, with their inherent tendency to [a]ffect the value of the Policy under the simplest of laws of economics." Op. at 23 (rejecting LSW's argument that "materiality differs because its policyholders purchased their Policies for varying reasons"); *id.* at 38-39.  For purposes of the fraud claim, which requires a showing of reliance on the alleged misrepresentations and nondisclosures, the question of subclass members' reliance also is subject to common proof because "reliance can generally be presumed when materiality is found."[1]  Op. at 15, 23-25, & 38-39.

---

[1] Plaintiffs' UCL claims do not require a showing of individualized reliance.  Op.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

2

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

### 2. Collecting Data Pertaining to Subclass Membership Is A Manageable Ministerial Task.

#### a) The File Evidence Will Establish Subclass Membership for A Large Majority of the Subclass.

Common treatment of the claims of the Illustration Subclass is not unmanageable because the indicia of subclass membership in LSW's policyholder files can be collected relatively quickly and inexpensively and will determine membership in the subclass for a large majority of the subclass. As discussed by both parties in the class certification briefing and at oral argument, three types of documents in LSW's files may provide evidence of whether the policyholder received a sales illustration. These are (1) the policy application; (2) an agent's report; and (3) an illustration dated on or before the date of application.[2] *See, e.g.,* Supplemental Declaration of Lesa Dinglasan ("Supp. Dinglasan Dec.") (Dkt. 339-1) ¶3; Perla Dec. in Opp. to Class Cert. (Dkt. 251) ¶7; Op. at 31-34. After extensive briefing, the Court held that membership in the Illustration Subclass is established if any of the following is true:

> 1. The box on the application, which is to be checked if no signed illustration of the policy applied for is submitted with the application, is not checked, meaning that "the agent and applicant have both certified that an Illustration matching the Policy was provided to the applicant."[3] Op. at 31-32. The Court found that this is the "surest indication of membership in the Illustrations based subclass."[4] *Id.* at 32;

at 22-23 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009)).

[2] Since the class certification briefing, LSW has introduced a fourth document, a separate "sales illustration certification" form. This seldom used document contains essentially the same information as the certification section on the policy application, as discussed in Part II.A.2.b, *infra*.

[3] The Court's order states that if the box *is* checked, that is an indication that an illustration matching the policy was provided to the applicant (Op. at 32), but this is apparently a typographical error. LSW agrees. *See* LSW's Memorandum in Support of Motion to Appoint Special Master (Dkt. 408-1) at 18:15-17 & n.13.

[4] Although an unchecked box is evidence that a policyholder is in the subclass, a checked box is *not* evidence that a policyholder is *not* in the subclass. The Court's order implicitly approves this proposition, which Plaintiffs have briefed several times. *See* Pls. Supp. Submission Re Identification of Class Members (Dkt. 339) at

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED                Case No. CV 10-9198 JVS (RNBX)

3

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

2.      An Agent's Report, which asks the agent for a "description…of 'any sales materials, including illustrations, used relating to the new application,'" indicates that an "Illustration," "Ill.," "ICS," "ICS Solutions," or "quick calc" was used, which the Court found "also establishes subclass membership."  *Id.* at 31-32 & n.16; or

3.      A sales illustration – *i.e.*, an illustration with a print date that predates the date of application – is found in the policy file, and it was signed by the applicant "on a date that pre-dates the Policy issuance," which also "would establish [sub]class membership."  *Id.* at 33 & n.18.

In connection with Plaintiffs' class certification motion and as part of the supplemental briefing, Plaintiffs reviewed a sample of 400 policyholder files produced by LSW to determine the incidence of sales illustration use as reflected in LSW's files.  That initial review revealed that in 66.5% of cases, uncontradicted evidence from the policy files showed that a policyholder received a sales illustration (*see* Supp. Dinglasan Dec. (Dkt. 339-1) ¶3), which supported the Court's finding that "a review of the Policy file by a court-appointed Special Master or a class administrator could identify approximately two-thirds of the members of the class as subclass members."  Op. at 33.

Although LSW stipulated that the original 400 policy file Sample ("Sample") would be considered statistically significant for class certification purposes, LSW refused to extend that stipulation beyond class certification.  *See* Declaration of Lesa Dinglasan Re Order to Show Cause ("Dinglasan Dec. Re OSC") ¶6.  In February 2012, LSW produced what it represented to be all of the policyholder files, and Plaintiffs then constructed an expanded Sample containing 800 policyholder files (the "Expanded Sample").  *Id.* ¶7.  Plaintiffs began by extending the initial Sample, which had a cutoff date of September 14, 2011, to include later-issued policies that were not included in the initial Sample.  *Id.* Plaintiffs used the same method by which the initial Sample was selected,

3:6-4:12; Pls. Mot. to File Reply to LSW's Substituted Supp. Mem. (Dkt. 348) at 4:7-5:17; Pls. Mem. in Opp. to LSW Special Master Mot. (Dkt. 413) at 21:6-23:17.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

4

including every 82nd policy through the end of the production, which resulted in the selection of an additional 147 policies.  *Id.*  Plaintiffs also excluded from the Expanded Sample 30 policies from the initial Sample that were issued before the start of the class period.  *Id.* ¶8.  Finally, Plaintiffs included an additional 283 policies that were selected from a randomized list of all policy numbers.  *Id.*  Plaintiffs thus reviewed an additional 430 additional files, for a total Expanded Sample of 800 files issued on or after September 24, 2006.  *Id.*

Of the 800 files in the Expanded Sample, 574, or 72%, satisfy one or more of the above-described criteria for subclass membership set forth in the Court's Order.[5]  *Id.* ¶9.[6]  Accordingly, it has now been reaffirmed that for a large majority of the class, and necessarily an even larger majority of the subclass, a review of the policy file alone will be sufficient to establish subclass membership.

### b)    Relevant Data Can Be Collected Relatively Quickly And Inexpensively.

The Court's April 12, 2013 minute order does not question the soundness of the Court's prior observations concerning how to interpret the relevant file documents or that LSW's files can determine subclass membership for two-thirds or more of the class.  Rather, the Court inquires whether "the file review would be an overwhelming task" since approximately 42,000 files consisting of approximately 8.8 million pages would need to reviewed.  *See* April 12, 2013 Minute Order.  But the collection of relevant data from LSW's policy files can be performed at a fraction of the cost and time described in the Order to Show Cause by employing one of a number of highly experienced computer forensic and

---

[5] Plaintiffs' analysis of the Expanded Sample complies with the Court's ruling concerning when a sales illustration is sufficient to establish subclass membership (*i.e.*, it is signed on or before the date of policy issuance).

[6] Dr. Patrick Brockett attests that the sampling results presented in the Dinglasan Dec. Re OSC are statistically significant at a high level of confidence.  *See* Declaration of Patrick L. Brockett in Support of Plaintiffs' Submission on Order to Show Cause at ¶¶9 & 12-15.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED                    Case No. CV 10-9198 JVS (RNBX)

5

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

document analysis companies, under the direction of a Special Master.[7]

Reviewing LSW's policy files to locate the three indicia of subclass membership as set forth in the Court's Class Certification Order is a ministerial task involving straightforward collection of data.  This ministerial function need not be performed by the Special Master himself, but can be performed by a data analysis company chosen by the Court, the Special Master, or the parties.  *See, e.g.,* Fed. R. Civ. Proc. 53(c)(1)(B) ("Unless the appointing order directs otherwise, a master may…take all appropriate measures to perform the assigned duties fairly and efficiently.").  Numerous courts, in appointing Special Masters, have granted the master the authority to employ assistants and specialists to carry out his assigned duties.  *See, e.g., Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1366-67 (S.D. Fla. 2010) (order granted Special Master authority to "appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the [Master] deems necessary"); *Franklin v. Kelly*, 1992 U.S. Dist. LEXIS 14300, at *9 (D.D.C. Sept. 24, 1992) (Special Master had "power to retain such outside consultants or assistants as he deems necessary to complete his responsibilities"); *Young v. Pierce*, 685 F. Supp. 984, 985-86 (E.D. Tex. 1988) (providing that "Special Master shall [have] the right to hire assistants as he deems necessary, subject to the approval of the court, and his authority…will extend to any other individual whom he designates").

Under such an arrangement, the Special Master would not conduct the policy file review himself, but instead would analyze specific information collected from the files by data collection and analysis experts in order to issue recommendations about who meets the criteria for subclass membership and, thus, is entitled to recover if Plaintiffs prevail on the subclass claims.  With respect to

---

[7] As set forth in Part II.A.4, *infra*, the Court also has the option to require this task to be undertaken by Plaintiffs, or both parties, who would utilize the services of one of those companies to undertake the necessary data analysis.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

6

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

approximately 72% of the class, and necessarily a much larger percentage of the subclass, the Special Master should be able to determine subclass membership based on review of an Excel spreadsheet or similar compilation of data about the contents of the three documents identified as capable of showing subclass membership (an application, agent's report, or sales illustration signed on or before policy issuance).  *See* Op. at 32-33; Foster Dec. Re OSC Ex. B.  As to the remaining subclass members, determination of subclass membership would involve making recommendations based on a combination of data retrieved from the file and any data collected from response-required questionnaires returned by persons asserting membership in the subclass.  *See* Part II.A.2.c-d, *infra*.

Neither the Special Master's oversight and analysis, nor the underlying review, would cost 7 figures or require years of work.  Plaintiffs requested bids from several data analysis and claims administration companies (hereinafter "vendors") as to what it would cost and how long it would take to review and retrieve the pertinent data from the policyholder files.  Foster Dec. Re OSC ¶2-12.  Plaintiffs prepared a detailed Request for Proposal ("RFP") specifying the approximate number of files (42,000) and pages (8.8 million) to be reviewed, the specific documents to be located and retrieved for further analysis, and the Court's guidelines for determining from those documents whether an individual is or is not a member of the subclass.  *Id.* ¶5-8, Ex. A.  In addition, upon signing the protective order, each vendor was given access to the computer database containing the policyholder files produced by LSW so that the vendor could examine the files and run tests of various methodologies for data extraction and analysis.  *Id.* ¶9.  As set forth in Exhibits I, J, & K to the Foster Declaration, ███████████ submitted proposals to complete the project within ████████████████████████████ ████████; ████ submitted proposals to complete the project within ████████ ████████████████████; and ████████████████████████ submitted proposals to complete the project within ████████████████████████████

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED                    Case No. CV 10-9198 JVS (RNBX)

7

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

███████. These cost ranges (from $████ to $████ per class member) are small relative to the damages sought in this case. *See* Declaration of Patrick Brockett in Support of Class Certification (Dkt. 228) at 54-66.

Not only is the cost modest as compared to the financial stakes at issue in this case, but the volume of data also is relatively small considering the size of this case and as compared to other class actions and complex litigation in which the bidding vendors have been involved. These companies routinely deal with far larger data universes than the 42,000 LSW policyholder files, and they routinely work with Special Masters and magistrate judges in compiling data to be analyzed and used in their reports, including in class actions. *Id.* ¶12, Exs. I, J, & K.

In addition, most documents contained in the policyholder files are irrelevant to the question of whether an individual received a sales illustration – which LSW does not dispute. A data analysis and computer forensics vendor can easily and accurately extract the file documents utilizing a combination of computerized searches to locate the relevant documents and document review by experienced and trained reviewers, who can review the few pertinent documents and disregard those that are irrelevant to the question of subclass membership.

Using Joyce Walker's policyholder file as an example, the vendor would use computerized searches to identify and extract Ms. Walker's application, agent's report, and all illustrations. Although her file contains an October 3, 2007 illustration dated before the date of her application (November 14, 2007), that illustration is unsigned and thus, under the guiding principles set forth in the Court's certification order, that illustration would not by itself establish class membership. Further, the box in Part 7 on her application is checked. Although there is no dispute that Ms. Walker in fact received the October 3, 2007 illustration before she submitted her application, *see* Walker Dec. (Dkt. 230) ¶3 and Walker Reply Dec. (Dkt. 295) ¶8 & Ex. A, no signed illustration was submitted with the application; therefore the agent was required to check the box in Part 7 on the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

application.  The agent correctly listed "Illustration" in Part 7 on the Agent's Report, indicating that an illustration was used in this sale.  Thus, review of the policyholder file demonstrates that Ms. Walker is in fact a member of the subclass according to the criteria established by the Court.  *See* Suppl. Dinglasan Dec. Regarding Identification of Class Members in Support of Plaintiffs' Motion for Class Certification (Dkt. 339-1) at ¶9 & Ex. H (Illustration), Ex. I (Application), and Ex. J (Agent's Report).

Although most of the file documents are irrelevant, LSW suggests that the master should review the entire policy file in the event that there *might* be other evidence that a sales illustration was or was not used.  *See* LSW Proposed Order Re Special Master (Dkt. 408-2) at 3:5-8.  But LSW has never identified any other document that would establish whether someone is in the subclass.  The only other document referenced by LSW is a "Sales Illustration Certification" form, which serves the same purpose as and "tracks the language used in the Sales Illustration Certification on the application."  LSW Mem. ISO Mot. to Appoint Special Master (Dkt. 408-1) at 18:18-21.  Like the certification on the application, the form asks agents to certify that "no illustration was used in the sale of this life insurance policy *or the policy applied for was not as illustrated*," and asks policyholders to certify that "no illustration conforming to *the policy applied for* was provided." *See* Perla Dec. ISO Mot. to Appoint Special Master, Ex. D (Dkt. 408-5) (emphases added).  LSW contends that the existence of a Sales Illustration Certification form in the policy file means that the individual "is not a member of the subclass" (*see* LSW Mem. ISO Mot. to Appoint Special Master at 18:18-21), but that is false.  *See* Op. at 31-34 (implicitly rejecting LSW's argument that the same certification on an application is proof that an individual did not receive an illustration); *see also* note 4, above.  Neither the certification on the application nor the Sales Illustration Certification form can prove that someone is *not* in the subclass because the policyholder is certifying only that he did not receive a sales illustration *of the*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

*policy applied for*, not that he did not receive a sales illustration at all.[8]

Further, to the extent there are individualized issues that may arise with respect to the file evidence, those issues are *de minimus* and do not counsel against certification of the subclass.  For instance, some illustrations may include an optional report that separately identifies the fees to be charged.  *See, e.g.,* Dinglasan Dec. ISO Class Cert. (Dkt. 229) ¶10(c)-(d) & Ex. F.  On their class certification motion, Plaintiffs "offered evidence, not controverted by LSW, that LSW set the default settings for the software" (Op. at 36-37), including that the optional fee report is, by default, *not* generated with the illustration (*see* Brockett Dec. ISO Class Cert. (Dkt. 228) ¶¶32-33, n. 30-32), and that only a small percentage of illustrations contain this report.  *See* Dinglasan Dec. ISO Class Cert. (Dkt. 229) ¶10(c) (approximately 2% of policyholders in the initial Sample received the optional report).  The Expanded Sample reveals an even smaller percentage – less than 1.0% – received a sales illustration containing the optional report on fees.  *See* Dinglasan Dec. Re OSC ¶11.  These individuals would be part of the subclass as defined by the Court.  *See* Op. at 39-40.  Per Plaintiffs' RFP to the vendors, any policy files containing this report would be recorded and could be used either by the Special Master or by LSW as evidence that fees were disclosed to a given policyholder.[9]  *See* Foster Dec. Re OSC ¶7, Exs. B&H.  Given the small number of policyholders who received this report, collection of this data does not raise any significant manageability problems.

Nor does evidence that a policyholder was shown a computerized illustration

---

[8] Nevertheless, Plaintiffs included this document as part of the RFP, which can be reviewed and recorded by the designated vendor along with the other three documents.  *See* Foster Dec. Re OSC ¶7, Exs. A, B, & G.

[9] Plaintiffs proposed a separate subclass for the undisclosed fees claim, but the Court simplified the subclass definition by using one Illustration Subclass. *Compare* Pl. Mem. ISO Class Cert. (Dkt. 226) at 7-8, *with* Op. at 39-40.  It makes no practical difference whether the optional fee report is used as evidence to exclude recipients of the report from the subclass or as evidence that they cannot recover on the undisclosed fees claim because they received disclosure of the fees.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED                Case No. CV 10-9198 JVS (RNBX)

10

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

or a "QuickCalc" report create individual issues or manageability concerns.  The Court has held that an Agent's Report indicating that a policyholder was shown an illustration using LSW's computer software or a "QuickCalc" report establishes subclass membership.  Op. at 32-33 & n.16.  The Court's rationale for reconsidering the manageability of the subclass claims does not change this reasoning.  That some policyholders viewed illustrations on a computer or received a QuickCalc – which "generate[s] the same forecasts as the sales Illustrations themselves, and thus are subject to the same defects" (Op. at 32 n.16) – is not a material individual issue.  This is especially so because there is a presumption that if a policyholder was shown an illustration on a computer, he was shown a complete illustration.  *See* Cal. Ins. Code § 10509.955(b)(6) (prohibiting an insurer or agent from providing an applicant with "an incomplete illustration"); *see also* Civ. Code § 3548 (presumption that "[t]he law has been obeyed."); *Hinckley v. Bechtel Corp.*, 41 Cal. App. 3d 206, 212-13 (1974) (where insurer had a statutory duty to send certain information to policyholder, Civil Code Section 3548 created a "strong disputable presumption" that the law had been followed and the information given).  If LSW has evidence to the contrary, it can present such evidence in that small number of cases, but this does not defeat the predominance of common issues, as the Court found previously.

Nor are there any material conflicts in the file evidence that render the subclass unmanageable.  At oral argument and in supplemental briefing, Plaintiffs explained that the only document that can create a "conflict" is an agent's report that states that no illustration was used.  *See* Foster Dec. Re OSC, Ex. L(Class Cert. Tr. at 15:9-1).  In its order, the Court determined that the presence of any *one* indicium that a policyholder received a sales illustration is sufficient to establish subclass membership.  *See* Op. at 32-33.  Thus, if there is either (1) a sales illustration in the file that is signed on or before the date of policy issuance, *or* (2) a policy application where the certification box is not checked, *or* (3) an agent's

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

11

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

report that indicates a sales illustration was used (*e.g.*, it states "Illustration"), any of these documents independently establishes membership in the subclass *even if* there is also an agent's report in the file that states that "no" sales materials were used. *Id*. But even if the Court decides to view this as a conflict, the number of such instances is minimal and would not consume significant time of a Special Master. In the Expanded Sample, such "conflicts" occur in only 2 of 800 of cases. *See* Dinglasan Dec. Re OSC ¶10.[10]

### c) Sending A Response-Required Questionnaire to the Remaining 28% of the Class Does Not Present A Significant Burden.

Since LSW's policy files will contain sufficient evidence to establish subclass membership for approximately 72% of the class, questionnaires need only be sent to 28% of the class to obtain additional information bearing on whether an individual belongs in the subclass. Class members who did not receive a sales illustration would not need to return the questionnaire, though the questionnaire would be "response-required" for members of the subclass. The questionnaire thus would instruct any individual who did not receive an illustration that he or she need not return the questionnaire. This would minimize the number of questionnaires that would need to be reviewed. Moreover, the record suggests that the number of individuals among the 28% who would assert subclass membership would not be very large. As LSW has repeatedly stated, "LSW does not require illustration use prior to application" (LSW Mem. in Opp. to Class Cert. (Dkt. 250) at 7), and several of LSW's agents testified that they often do not present sales illustrations to their clients. *See* Norona Dec. (Dkt. 256) ¶18; Covi Dec. (Dkt. 258)

---

[10] For the initial Sample, Plaintiffs calculated a conflict rate of 1.5%, but that included sales illustrations regardless of whether they were signed or unsigned. Since the Court's Certification Order treats sales illustrations as establishing class membership only if they were signed before policy issuance, only these illustrations have been counted for purposes of determining the number of conflicts in the Expanded Sample. Dinglasan Dec. Re OSC ¶10.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

12

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

¶24.  Since the policy files establish that 72% of the class did receive a sales illustration, and since LSW and its agents have stated that illustrations often are not used, it is likely that only a small portion of the remaining 28% received a sales illustration and would submit a questionnaire.

Further, it would not be unduly burdensome or create manageability concerns justifying decertification for a vendor and/or Special Master to collect and analyze those questionnaires that are returned.  The questionnaire will be relatively simple and need only consist of a few basic questions to determine whether the policyholder received or was shown an illustration:  (1) Did you receive or were you shown a policy illustration on or before the date you applied for your policy?; and (2) Were you shown the policy illustration on a computer screen?  The questionnaire could also attach exemplar pages of the illustration to assist recipients in understanding the questions being asked.  Policyholders would be asked to answer each question by circling either "Yes," "No," or "I don't recall" and to include a copy of any sales illustrations they may have.  Plaintiffs estimate that it would take less than 5 minutes on average to review each questionnaire and log the pertinent information.  Even assuming that 1000 questionnaires are returned, reviewing these questionnaires would take a Special Master (even without vendor assistance) approximately 83 hours, which at the Court's estimated "modest rate" of $200 per hour would cost only approximately $16,600.

Reviewing policyholders' responses to these basic questions and reviewing any returned sales illustrations will be, in most cases, a ministerial task because a Special Master – either independently or with the Court's guidance – can develop rules for which responses establish membership and to resolve any generic conflicts that may exist between the file evidence and the evidence in the questionnaire (which conflicts, if any, will be minimal as discussed above). Accordingly, reviewing the questionnaires will be manageable both because reviewers will be guided by such rules and because only a small number of

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

13

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

questionnaires will be returned.

### d) The Special Master Would Review the Data Collected And Make Recommendations to the Court or Jury.

Following the initial file review and collection of data from returned questionnaires, the Special Master would analyze the data collected and prepare recommended findings as to whether each policyholder is or is not a member of the subclass based on the data in his or her file and/or questionnaire and in accordance with the guidelines provided by the Court.  In accordance with Rule 53, this report would be submitted to the Court for review, and the parties would file any objections to the report (within 21 days or a longer period of time to be determined by the Court) concerning any particular policyholder as to whom the party believes the master's recommendation is incorrect.  Fed. R. Civ. Proc. 53(e)-(f).  The parties would have "an opportunity to be heard," which may include evidence either party may offer to refute the recommended factual findings of the master.  *Id.*

Although this "opportunity to be heard" does not require a formal hearing and does not provide for discovery or cross-examination of Special Masters, the provisions of Rule 53 provide ample opportunity for the parties to make objections and present evidence to refute the Special Master's findings before the Court (or jury) decides whether or not to accept the master's recommendations.  *See* Wright & Miller, Cal. Fed. Civ. Proc. Before Trial § 16:250 (Rutter Group 2012) ("The requirement that the court must afford an opportunity to be heard can be satisfied by taking written submissions when the court acts on the report without taking live testimony.") (citing Advisory Committee Notes to 2003 Amendments to former Fed. R. Civ. Proc. 53(g)); Manual for Complex Litig. § 11.52 (4th ed. 2004) (noting that parties are ordinarily limited to the Special Master's report and do not have the opportunity for cross-examination); Fed. R. Civ. Proc. 53(f)(3) ("The court must decide de novo all objections to findings of fact made or recommended by a master.").  Nevertheless, nothing in Rule 53 explicitly prohibits the Court

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

from allowing, in its discretion, cross-examination of the Special Master or any third parties on whom he has relied in making his findings.  Indeed, some courts have given counsel the opportunity to cross-examine a master about his report.  *See Morris v. Homco Int'l, Inc.*, 1987 U.S. Dist. LEXIS 8285, at *1 (E.D. La. Sept. 9, 1987) ("counsel were given the opportunity to cross examine the Special Master regarding his report" and to "submit affidavits attempting to refute any portion of the report"); *cf. Bonito v. Guardian*, 1997 U.S. App. LEXIS 27068, at *6-7 (9th Cir. 1997) (suggesting that whether to allow parties to question the Special Master about the basis for his report is a matter of the court's discretion).

### 3. The Court Has Broad Authority to Appoint A Special Master to Oversee the Review of LSW's Policy Files And To Make Recommendations to the Court or Jury About Subclass Membership.

Not only is it administratively feasible for a Special Master to oversee and analyze the review of LSW's policy files, but the court also has considerable discretion to appoint a Special Master (among a wide range of other potential procedures) for purposes of determining individualized issues, such as who belongs in the subclass.  *See, e.g., U.S. v. City of N.Y.*, 276 F.R.D. 22, 50 (E.D.N.Y. 2011) (defendant's argument that "the fact that the Court is considering appointment of a Special Master to make thousands of individualized determinations is strong evidence that the individualized determinations are so unmanageable that class action treatment is not superior" was "backwards" because "a Special Master is one of the tools available to the court to make class actions more manageable"); *Caleb & Co. v. E.I. Du Pont de Nemours & Co.*, 110 F.R.D. 316, 321 (S.D.N.Y. 1986) ("[T]he predominance of common issues justifies the maintenance of this class action and consideration of the individual issues can later be decided through a separate trial or through the use of a Special Master."); Newberg on Class Actions § 9:59 (4th ed. 2002) ("[T]here are numerous means available for resolving irreducible individual issues, primarily through the use of

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

delegation to magistrates, Special Masters, and others, and by the development through consent of the parties or by court direction of simplified procedures for resolving individual claims under the supervision of the court."); *id.* § 9:70 ("Delegation is the primary means for the court that presided over the adjudication of common issues in a class action…to determine issues affecting the individual claims of each class member," including by enlisting masters "in appropriate circumstances to aid in resolving individual questions"); Moore's Fed. Civ. Prac. § 53.10 (MB 2012) ("In class actions, masters serve as claims administrators to determine preliminarily whether claimants belong in the class…."). Indeed, courts "have long relied on assistants, such as magistrates and Special Masters" who "may appropriately analyze a wide variety of preparatory functions, *e.g.*, overseeing discovery and spearheading pretrial factual inquiries in complicated controversies" and may also perform a variety of "consummatory, remedy-related issues." *Stauble v. Warrob*, 977 F.2d 690, 693-695 (1st Cir. 1991) (noting that "there is an important distinction between such collateral issues, on the one hand, and *fundamental determinations of liability*, on the other hand") (emphasis added).

Where, as here, "individualized issues" relate not to fundamental determinations of liability, "but to the applicability of defenses and the ultimate ability of individual class members to recover," those issues do not defeat class certification and may be resolved through the appointment of a Special Master. *Lauber v. Belford High Sch.*, 2012 U.S. Dist. LEXIS 165780, at *28 (E.D. Mich. Jan. 23, 2012) (certifying class and holding that in the event the jury finds defendant liable, "the Court has options at its disposal to address" individual issues, including "the appointment of a Special Master to preside over the damages phase of the litigation"); *see also Wilson v. Kiewit Pac. Co.*, 2010 U.S. Dist. LEXIS 133304, at *27 (N.D. Cal. Dec. 6, 2010) (granting certification and finding that "when the time comes for proof of damages and what is owed to the employees, that process will be determined largely by defendant's documents and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED     Case No. CV 10-9198 JVS (RNBX)

16

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

manageable through a number of potential methods, including review by a Special Master").

Courts have appointed Special Masters in class actions to identify members of the class.  In *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 509-10 (S.D. Fla. 1996), for instance, a securities litigation premised on omissions, the court certified a number of claims to be tried on a classwide basis.[11]  After certification, the court appointed a Special Master to oversee "any and all matters concerning who the members of the Plaintiff class will be for resolution before trial." *Id.* at 509.  The plaintiffs were directed to identify, through computerized customer records, "which persons are in the Plaintiff class" and to present that evidence to the Special Master.  *Id.*  Defendants were given fifteen days to object to plaintiffs' identification of class members, followed by an opportunity for the plaintiffs to respond.  The Special Master was then instructed to conduct a hearing to resolve any disagreements with respect to class membership and to submit a final report to the trial court before proceeding to jury trial.  *Id.* at 509-10.

*Waters* and other authorities make clear that delegating the determination of subclass membership is neither a usurpation of the Court's judicial functions nor a violation of jury trial rights.  Courts routinely allow use of summary or relatively informal procedures to resolve disputes about class membership, which courts have suggested are distinct from questions of individual liability.  *Smith v. Ga. Energy U.S.*, 259 F.R.D. 684, 692-693 (S.D. Ga. 2009) ("[D]etermining class membership…will not involve any courtroom proceedings or require the services of a jury."); *Durham v. Cont'l Cent. Credit*, 2010 U.S. Dist. LEXIS 70445, at *15 (S.D. Cal. Jul. 14, 2010) (distinguishing between "proper defense as opposed to a challenge to class membership").  Indeed, "litigants and the parties should not

---

[11] The *Waters* court recognized defendants' right to present individualized defenses to certain claims – for instance, to rebut the presumption of reliance on an individual basis – but held defendants would be given that opportunity "subsequent to the conclusion of the jury trial" on common issues of liability.  *Id.* at 509.

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED     Case No. CV 10-9198 JVS (RNBX)

17

automatically presume that adversary proceedings [to determine individual issues] necessarily require the full panoply of formal procedural and evidentiary rules and jury trial rights associated with traditional nonclass litigation."  Newberg on Class Actions § 9:63 (4th ed. 2002).

As discussed in *Kendrick v. Standard Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694, at *33-34 (E.D. Ky. Sept. 30, 2010), it is "anything but certain" "that any true factual disputes will arise in conjunction with class membership," which might implicate jury rights.  In *Kendrick*, the court rejected the defendants' argument that the question of class membership is a "key factual issue that is the core to liability" which "cannot be removed from the jury's province."  *Id.* at *32-34.  The court found that because the class was appropriately defined in terms of objective data, the procurement of that data consisted of matters that, "while detailed, are not disputed in the sense of requiring adjudication."  *Id.* at *32.  Rather, "most of the inquiries associated with discerning class membership are not actually facts in dispute, but objective details in need of verification."  *Id.* at *34.  The same is true here because the subclass is defined based on objective criteria (whether an individual received a sales illustration) and can be determined by reference to objective data contained in the policy files or in verified questionnaires, which are predominantly details in need of verification, not facts in dispute.

Other courts similarly have held that proof of class membership need not be established through a "file-by-file trial," but can instead be determined through non-trial proceedings.  *Perez v. First Am. Title Ins. Co.*, 2009 U.S. Dist. LEXIS 75353, at *20-21 (D. Ariz. Aug. 12, 2009).  In *Perez*, the court certified a class over defendant's objections that class treatment was not superior and was unmanageable because "it ha[d] no database or other central source of information that will enable it or Plaintiffs to determine" who was in the class.  *Id.* at *20.  The court agreed with the plaintiffs that the necessary facts could be proven from databases or other common documents maintained by the defendant, and that

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

18

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

"[e]ven if it takes a substantial amount of time to review files and determine who is eligible for the discount, that work can be done during discovery," and "proof of class membership would be relatively easy" if the jury determined that such individuals were entitled to recover.  *Id.* at *20-21.  The court concluded that although the issue "may involve a file-by-file *review*" to determine class membership and eligibility to recover, "it will not require a file-by-file *trial*" of each individual class member's entitlement to relief.  *Id.* (emphases added).

Moreover, even assuming, *arguendo*, that the question of whether an individual received a sales illustration is a disputed question of fact that must be decided by the jury, delegating the underlying task of reviewing policy files and making recommended findings of fact would not violate any jury trial right.  The Special Master could present his findings to the jury, which, like the Court, could independently decide to accept or reject any or all of the master's findings.  *See, e.g.*, *Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319, 1319 (10th Cir. 1980) ("[T]he Master's report in a jury case is merely evidence which a jury may disregard."); *Aoki Tech. Lab. v. FMT Corp.*, 1999 U.S. Dist. LEXIS 22711, at *9 n.6 (D.N.H. Apr. 22, 1999) ( "the Special Master's findings, if admissible, would be presented to the jury as evidence"); *L.K. Comstock & Co. v. Becon Constr. Co.*, 932 F. Supp. 906, 909-10 (E.D. Ky. Jan. 27, 1993) ("The jury may accept or reject the findings of the Special Master as it sees fit, and this process preserves the right of a jury trial.").  Given that disputes between the parties about the file evidence are likely to be minimal in number, the potential need for a separate jury trial on disputed questions of individual subclass membership would not predominate over common issues.  Such issues could easily be bifurcated and deferred until after trial on common issues.  *See, e.g.*, *Arthur Young & Co. v. U.S. Dist. Ct.*, 549 F.2d 686, 698-699 (9th Cir. 1977) (bifurcating individual issues from trial of common issues does not violate Seventh Amendment rights); *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *27 (E.D. Pa. Aug. 3, 2007) ("[C]hallenges to individual

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED     Case No. CV 10-9198 JVS (RNBX)

19

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

claims based on class membership may be resolved at the claims phase of the litigation."). Thus, even if some class membership questions must be decided by a second jury after the trial of common issues, this would not upset the predominance of common issues and would not justify denial of certification.

### 4. Alternatively, Plaintiffs or Both Parties Could Conduct A Review of LSW's Files And Present Evidentiary Findings to A Special Master, the Court, And/Or A Jury.

The authorities make clear that the Court has the authority to appoint a Special Master to undertake and oversee the review of LSW's policy files, and that the Special Master has the authority to make use of third parties – such as one of the data analysis vendors Plaintiffs have consulted – to perform these ministerial tasks. But the appointment of a Special Master is not the only procedural means by which data pertinent to subclass membership can be collected and presented to the Court. To the extent the Court elects not to appoint a Special Master to oversee this review, Plaintiffs or both parties could instead hire one or more data analysis vendors to review LSW's files as previously described herein. Courts have approved the use of experts or vendors hired by the parties to determine membership in a class or subclass. *See, e.g., In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 672 (S.D. Fla. 2011) (approving the use of Plaintiffs' expert to "mine [defendant's] data to determine who are the members of the class").

Here, Plaintiffs could independently hire a vendor to review the files and prepare a report summarizing the indicia of subclass membership in the files. LSW could opt either to (1) review the report prepared by Plaintiffs' vendor and stipulate to some or all of the factual findings and/or challenge the findings as to particular class members, or (2) hire its own vendor to review the files and prepare a separate report, which would then be compared with Plaintiffs' vendor's report to determine as to whom and how the parties' data is in dispute. There should be very few actual disputes because for most files, the file either contains the indicia of subclass membership or it does not, and as Plaintiffs' review of the Expanded

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED   Case No. CV 10-9198 JVS (RNBX)

20

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Sample has reaffirmed, such indicia are present in approximately 72% of files. The parties can determine through meet and confer those policyholders as to whom there is a dispute, and can present evidence either to a Special Master or directly to the Court or jury, which would review the evidence and make a determination of whether each such individual is or is not in the subclass. *See, e.g., Waters*, 172 F.R.D. at 509-10 (instructing plaintiffs to present evidence of class membership to Special Master for review). Plaintiffs or both parties also could supervise the questionnaire process and oversee the review of returned questionnaires by the data analysis vendor (following the same general procedures described in Part II.A.2.c, above); meet and confer to determine as to which policyholders there is no dispute; and present evidence with respect to any disputed files to a Special Master, the Court, or the jury for resolution.

## B. Manageability Issues Do Not Justify Decertification.

Manageability issues do not justify decertification here simply because 42,000 files and a number of questionnaires must be reviewed to collect data to be used in determining subclass membership. As shown by the Foster Declaration, this review is largely ministerial in nature and can be done relatively quickly and inexpensively. Foster Dec., ¶¶10-12, Exs. I, J, & K. Under similar circumstances, courts have routinely held that a ministerial review of documents to determine class membership – even if it would be "administratively burdensome" – does not render the class action unmanageable or counsel against certification. *See, e.g., Stuart v. Radioshack Corp.*, 2009 U.S. Dist. LEXIS 12337, at *44 (N.D. Cal. Feb. 5, 2009) ("Determining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy, and will likely be resolved by documents. Those determinations will not predominate this case."); *Sadler v. Midland Credit Mgmt.*, 2009 U.S. Dist. LEXIS 26771, at *4-5 (N.D. Ill. Mar. 31, 2009) (although a manual review of files "might prove 'administratively burdensome,'" "a review for such straightforward 'objective criteria' nevertheless

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

remains ministerial in nature" and weighs in favor of certification) (quoting *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 370 (N.D. Ill. 2008)); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007) (that determining class membership "will require inquiry into the records of each potential class member" is "not so daunting" and does not counsel against certification).

Indeed, as a general principle, "[t]he failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *Thompson v. Clear Channel*, 247 F.R.D. 98, 148-49 (C.D. Cal. 2007) (quoting *In re: VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.)).  This principle applies with even greater weight here, where the manageability "issue" is a ministerial file review that can easily be achieved through the use of a data collection vendor overseen by a Court-appointed master (or the parties). Moreover, the fact that LSW's policy files are insufficient to determine subclass membership for 28% of the class – thereby creating additional (but not irresolvable) manageability issues – is due to LSW's own failure to maintain complete records.  This, too, weighs in favor of certification because refusing to certify the subclass "would create a perverse incentive – it would reward a class action defendant for its failure to maintain customer records." *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010). "[W]hether a class action is appropriate cannot be a function of [defendant's] record-keeping practices." *Id.*

Even in cases involving much larger classes and more voluminous records than are at issue here, courts have held that "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012).  In *Young*, the Court of Appeal affirmed the District Court's certification of subclasses consisting of over *fourteen million* policyholders over defendants'

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

22

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

objections on superiority and manageability grounds.  In so doing, the court rejected arguments that identifying who belonged to the subclasses would render the class unmanageable or defeat predominance because the "subclasses can be discerned with reasonable accuracy…though the process may require additional, *even substantial*, review of files." *Id.* (emphasis added).[12]  The defendants argued that the class was not administratively feasible "because it would entail a large number of individual determinations in order to ascertain class membership" (*id.* at 539 & n.2), but the Sixth Circuit rejected these arguments, noting:

> Equally – if not more – persuasive is the district court's practical rationale:  '[T]he need to manually review files is not dispositive.  If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'  We find this reasoning compelling."

*Id*. at 540.  Accordingly, the court affirmed the certification order and "reject[ed] Defendants' attacks on administrative feasibility based on the number of insurance policies at issue." *Id.*

Unlike in *Young*, which involved significantly more policyholders and required proof of multiple facts for purposes of establishing class membership, proof of subclass membership is much simpler here and requires proof of just one fact (based on review of just a few points of data) to establish subclass membership:  whether a policyholder received a sales illustration.  To deny certification here, where proof of subclass membership is administratively feasible, would be contrary to *Young* and the many other cases that have granted certification notwithstanding manageability concerns and the sheer number of class

---

[12] The court held that certification was proper even though class membership would require proof of many facts, including "the location of the insured risk/property; the geographical boundaries for the relevant local government; the local tax for a particular taxing district within whose boundaries the insured property is located; and the local tax charged and collected from the policyholder." *Id.*

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED                    Case No. CV 10-9198 JVS (RNBX)

23

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

members.  *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (holding that the sheer size of a class and the concomitant size of liability "alone cannot defeat an otherwise proper certification"); *Chesner v. Stewart Title Guar. Co.*, 2008 U.S. Dist. LEXIS 19303, at *53-54 (N.D. Ohio Jan. 23, 2008) (rejecting as "overblown" defendant's arguments that certification should be denied because of manageability concerns that identifying class members would require "voluminous" and prolonged discovery into the files of "hundreds" of third parties); *Cohen v. Chi. Title Ins.*, 242 F.R.D. 295, 299-302 (E.D. Pa. 2007) (in certifying a class potentially consisting of over 100,000 policyholders, the court rejected defendant's arguments that the class action would be unmanageable because it would be "difficult, if not impossible, to search the policyholder files to determine" who is in the class); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250 (W.D. Pa. 2008) (finding class action manageable despite First American's assertion that "no database exists easily and efficiently to make the determination that would be required for each file"); *Perez v. First Am. Title Ins. Co.*, 2009 U.S. Dist. LEXIS 75353, at *20-21 (D. Ariz. Aug. 12, 2009).

In addition, courts considering manageability issues regarding the identification of class members have held that the need to rely on evidence obtained from questionnaires or affidavits to establish class membership does not make a class action unmanageable where common issues of liability predominate. *See, e.g., Carrera v. Bayer Corp.*, 2011 U.S. Dist. LEXIS 135198, at *9-11 (D.N.J. Nov. 22, 2011) (class action was not unmanageable where consumer records could establish the majority of class members and claim forms or affidavits could be used "to establish the remaining class membership" because "'the manageability inquiry will rarely, if ever, be in itself sufficient to prevent certification of a class'") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272-73 (11th Cir. 2004)); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 680 (N.D. Cal. 2011) (individualized inquiries to determine the limits of the class, including questionnaires to thousands

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED     Case No. CV 10-9198 JVS (RNBX)

24

of individuals, did not predominate over the central question of defendant's liability). These authorities make clear that the type of review required here does not justify decertification.

**C.   Class Treatment Is Superior.**

Class treatment of the subclass claims remains a superior method of adjudication, notwithstanding that some individualized inquiry is required to determine who is in the subclass. As the Court previously held, the first three superiority factors set forth in Rule 23(b)(3)(A)-(C) weigh in favor of certification. *See* Op. at 26 & 39. The fourth factor, "the likely difficulties in managing a class action" – which the Court previously found weighed in favor of class treatment and which is the principal issue being reexamined here – continues to weigh in favor of certification of the subclass because, as discussed above, determining who is a member of the subclass can be achieved relatively quickly and inexpensively and will not present significant manageability problems, and denying a proper certification based solely on manageability concerns is heavily disfavored. Certification of the subclass claims is superior because determination in one trial of common issues of liability will reduce litigation costs and promote efficiency, and no realistic alternative to class resolution exists. *See, e.g.,* Op. at 26 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)).

**III.   CONCLUSION**

The Illustration Subclass should not be decertified.

DATED:  April 29, 2013          KASOWITZ BENSON TORRES & FRIEDMAN LLP


By: _____
     Brian P. Brosnahan

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

PLAINTIFFS' SUBMISSION ON ORDER TO SHOW CAUSE WHY ILLUSTRATION SUBCLASS SHOULD NOT BE DECERTIFIED          Case No. CV 10-9198 JVS (RNBX)

25