Jonathan A. Shapiro (257199)
Mintz Levin Cohn Ferris Glovsky and Popeo PC
44 Montgomery Street
San Francisco, California 94104
Tel: (415) 432-6000
Fax: (415) 432-6001
JAShapiro@mintz.com

Andrea J. Robinson (pro hac vice)
Timothy J. Perla (pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Attorneys for Defendant Life Insurance
Company of the Southwest

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>      vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50<br><br>        Defendant. | Case No.: CV 10-9198-JVS(RNBx)<br><br>DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO DECERTIFY<br><br>Judge: Hon. James V. Selna<br>Date: October 21, 2013<br>Time: 1:30 P.M.<br>Courtroom: 10C |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT....................................................................................1

    A.   The Class Should Be Decertified Because The Volatility and Tax Claims Depend On Proof of Pre-Sale Illustration Receipt, and Thus Lack Predominance .................................................2

        1.   Receipt of a Pre-Application Illustration Is Indispensable To Plaintiffs' Theory of Liability .....................................2

        2.   LSW's Defense Also Depends Upon Pre-Sale Illustrations.......5

        3.   Plaintiffs Cannot Adequately Represent the Class If They Abandon Pre-Application Illustrations .......................6

    B.   *Comcast* Requires Decertification.....................................................10

        1.   Plaintiffs' Opposition Confirms That Dr. Brockett's Model Is Not "Consistent with [Plaintiffs'] Liability Case" Because He Awards Damages to the Undamaged .......................10

        2.   Dr. Brockett Is Not Appropriately Measuring Actual Value....12

        3.   Rescission Is Unavailable .......................................................13

III.  CONCLUSION..............................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Campbell v. PricewaterhouseCoopers, LLP*,
  287 F.R.D. 615 (E.D. Cal. 2012) ...........................................................2

*Campion v. Old Republic Home Prot. Co., Inc.*,
  272 F.R.D. 517 (S.D. Cal. 2011) .........................................................12

*Coleman v. Gen. Motors Acceptance Corp.*,
  220 F.R.D. 64 (M.D. Tenn. 2004) ..........................................................7

*Conley v. R.J. Reynolds Tobacco Co.*,
  286 F. Supp. 2d 1097 (N.D. Cal. 2002) ..................................................3

*In re Google AdWords Litig.*,
  2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .............................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ............................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  2013 WL 4038561 (D.C. Cir. Aug. 9, 2013) .........................................10

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004) ..............................................................9

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ..................................................................2

*Mazzei v. Money Store*,
  288 F.R.D. 45 (S.D.N.Y. 2012) ..............................................................6

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012) ............................................................2

*Noonan v. Ind. Gaming Co.*,
  217 F.R.D. 392 (E.D. Ky. 2003) .............................................................8

*Pearl v. Allied Corp.*,
   102 F.R.D. 921 (E.D. Pa. 1984)............................................................8

*Rogers v. Desiderio*,
   58 F.3d 299 (7th Cir. 1995) ..............................................................8

*Schramm v. JPMorgan Chase Bank*,
   2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ..................................14

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000)......................................................1

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978)........................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)................................................................4, 6

*Wu v. Pearson Educ., Inc.*,
   277 F.R.D. 255 (S.D.N.Y. 2011) ......................................................7

STATE CASES

*Fairbanks v. Farmers New World Life Ins. Co.*,
   197 Cal. App. 4th 544 (2011) ..........................................................4

*Knapp v. AT & T Wireless Servs., Inc.*,
   195 Cal. App. 4th 932 (2011) ........................................................12

*Kunert v. Mission Fin. Servs. Corp.*,
   110 Cal. App. 4th 242 (2003) ........................................................12

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010) ........................................................14

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012) ........................................................12

STATUTES

California Civil Code § 3343 ..............................................................12

**OTHER AUTHORITIES**

C.D. Cal. L.R. 16-2.6 ................................................................................11

C.D. Cal. L.R. 16-6.3 ................................................................................11

C.D. Cal. L.R. 7.16 ....................................................................................2

E.D. Cal. L.R. 78-230(k) ...........................................................................2

Fed. R. Civ. P. 12(c) .............................................................................9, 10

Fed. R. Civ. P. 23 ................................................................................2, 11

Fed. R. Civ. P. 60(b) .................................................................................2

# I.   INTRODUCTION

Plaintiffs' opposition ("Opp.") fails to resolve the concerns that render class treatment inappropriate, now that the Court has held that the need to prove pre-sale illustration receipt defeats predominance.

*First*, the Opposition confirms that Plaintiffs' theory of liability requires them to rely on pre-application illustrations.  They claim that policyholders are misled about "unexpected" policy performance in a volatile S&P 500 environment.  What is "unexpected" is relative.  Illustrations are what supposedly set the contrary "expectation" from which the deception allegedly flows.

*Second*, even if Plaintiffs could, in the abstract, litigate illustration-free claims, that would not alter the result.  Plaintiffs cannot now claim that illustrations are irrelevant, given their repeated assertions that illustrations are the "centerpiece" that supposedly add strength to the claims.  Moreover, given these assertions, class members who received pre-application illustrations cannot be asked to ignore them.  By walking away from illustration-based claims, the named Plaintiffs have put themselves into conflict with the class.

*Finally*, the Opposition confirms that Plaintiffs have not established predominance under *Comcast*, which requires proof that "that damages are capable of measurement on a classwide basis" via a common damages model that is "consistent with [Plaintiffs'] liability case."  Plaintiffs' proposed damage model is not consistent with their liability case because it:  (i) awards damages to undamaged policyholders, and (ii) employs a method of measuring "actual value" that is inconsistent with California law.

# II.   ARGUMENT

As a threshold matter, Plaintiffs are incorrect in arguing that a reconsideration standard applies.  Opp. at 3.  "[A] Court's usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (C.D. Cal.

2000) (citing *Ballard v. Equifax Check Serv.*, Inc., 186 F.R.D. 589, 593 n.6 (E.D.Cal.1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed.R.Civ.P. 60(b) or E.D. Local Rule 78-230(k) [the counterpart to C.D. Local Rule 7.16].")).

Plaintiffs are similarly mistaken in arguing that LSW bears the burden of proof. Opp. at 25 n.7. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (on a motion to decertify, the "district court … properly placed the burden on [the plaintiff] to demonstrate that Rule 23's class-certification requirements had been met.").[1]

### A.   The Class Should Be Decertified Because The Volatility and Tax Claims Depend On Proof of Pre-Sale Illustration Receipt, and Thus Lack Predominance

#### 1.   *Receipt of a Pre-Application Illustration Is Indispensable To Plaintiffs' Theory of Liability*

Plaintiffs do not deny that:  (i) only some class members received pre-application illustrations; and (ii) the Court has ruled that determining which policyholders have received them creates predominance-defeating individualized issues. *Compare* Dkt. 465-1 ("Mem.") at 1 with Opp. at 9-10.  These propositions are dispositive because pre-application illustrations are central to Plaintiffs' theories of class liability, so it is necessary to determine who received them.  That, in turn, defeats predominance.

Plaintiffs spend pages trying to rewrite the record and re-cast their volatility and tax claims to distance them from pre-application illustrations.  For example,

---

[1] The treatise and district court case that Plaintiffs cite are simply wrong.  *Marlo* expressly holds that the plaintiff bears the burden.  *See Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 619 (E.D. Cal. 2012) (citing *Marlo*); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 598 n.1 (C.D. Cal. 2012) (same).

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO DECERTIFY, 10-CV-09198-JVS (RNBx)

Plaintiffs now assert that the volatility and tax claims "are not based on 'misleading partial disclosures' in the illustrations." Opp. at 8. But, in fact, that is precisely the argument they made at the motion to dismiss stage. *See* Dkt. 43 at 29 ("LSW's partial truths gave rise to a duty to disclose the whole truth …. LSW gave information about what returns the policy would generate based on an assumption of constant returns in the S&P 500. But this was misleading because LSW knew that S&P 500 returns would in fact be highly variable [.]'"). The Opposition never explains how Plaintiffs could or would prosecute the volatility and tax claims without relying on predominance-defeating pre-application illustrations.

It is evident that explanation is lacking because Plaintiffs' claims are premised on the proposition that S&P 500 volatility can create "unexpected" policy performance that leads to early lapse. Opp. at 6, 21. But what is "unexpected" is relative. If Plaintiffs are going to assert that particular performance was unexpected (and raised a duty of disclosure), they must ground it in proof of what was "expected." *See, e.g.*, *Conley v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 1097, 1115 (N.D. Cal. 2002) (dismissing on summary judgment claim that products did not meet customers' expectations where evidence could not establish what "the expectations of the ordinary consumer were"). Plaintiffs consistently have pointed to pre-application illustrations depicting a constant S&P 500 as establishing what policy performance is supposedly "expected." Dkt. 165-1 ("SAC") ¶¶ 43, 46; Dkt. 43 at 29; Dkt. 94 at 17 ("LSW conceals those risks [of volatility] by depicting only constant rate of return scenarios, which are inherently misleading.").[2] They have never pointed to any other document or evidence (common or otherwise) that could supposedly fill that role.

Without a pre-application illustration to set (alleged) expectations, Plaintiffs'

---

[2] Plaintiffs have placed similar emphasis on pre-sale illustrations to support the tax claim. *See* Dkt. 94 at 21 ("LSW had a duty to disclose this relationship between the Tax Code and key policy features because the illustrations were likely to mislead consumers regarding the tax implications of the policy loan feature[.]").

claim collapses into the implausible proposition that, in a vacuum, "no reasonable policyholder would expect that the interaction between the Policy design and natural S&P 500 volatility creates a significant risk that the Policy will lapse or suffer reduced value[.]" Opp. at 6. Plaintiffs are essentially positing that people have an inherent, common conception that equity-indexed universal life policies are "expected" to never lose value or terminate.[3] That premise is unsupportable.[4] *Compare Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 565 (2011) (holding that purchasers of universal life insurance have a host of different needs and widely varying expectations; crediting testimony that "'many, if not most' buyers of universal life do not intend for the insurance to be permanent or do not have an expectation one way or the other[.]").

In addition, and more importantly, class certification is evidentiary: Plaintiffs have not offered *any* evidence that policyholders harbor a particular common expectation about the mechanics of universal life insurance. Indeed, the very fact that Plaintiffs are now making assertions about what people by default "expect" is predominance-defeating, because that is inherently subjective and idiosyncratic to each purchaser.[5] And, of course, LSW would be entitled to offer evidence to prove the contrary. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

---

[3] The 90% "lapse" projection that Plaintiffs reference (Opp. at 12) is, in fact, a 90% *termination* rate—it includes both lapses (*i.e.*, policy terminates without value) and surrenders. Fleming Dec., Ex. B ("MacGowan Dep.") at 257:14-20. Plaintiffs who choose to surrender or replace their policies (or simply not pay the illustrated premiums) have, of course, not experienced the alleged volatility defect (*i.e.*, lapse due to variable returns).

[4] This explains why the Court sustained the Volatility Claim only because of pre-application illustrations. Dkt. 112 at 7 ("[r]eliance on non-guaranteed assumed rates would be unjustified. However, with the new allegations, *Plaintiffs explain illustrations that effectively disguise risks* that are inherent in the policies because of the Policies' features and terms.") (emphasis supplied)

[5] The Opposition barely even addresses the tax claim. Plaintiffs do not even try to explain how it could exist independent of illustrations. Plainly, it could not, because the premise is LSW has made "representations regarding tax-free earnings through loans against the Policy" that are misleading without countervailing disclosure. Dkt. 112 at 8; *see also* Dkt. 94 at 21.

2561 (2011) ("a class cannot be certified" on the premise that [the defendant] will not be entitled to litigate" its defenses to individual claims).[6]

Finally, Plaintiffs cannot persuasively argue that the Court has already considered and rejected LSW's argument that illustrations are relevant to the pure omission claim. Opp. at 3-4 (citing Dkt. 250 at 9 n.11). It was only after the class was certified that the Court (on the basis of a more developed record) held that illustration receipt presents a predominance-defeating individualized inquiry. The Court thus decertified the subclass. However, the Court has never considered whether that holding should also apply to the class. *See* Order Decertifying Subclass (Dkt. No. 447) (describing scope of Court's inquiry, not including consideration of whether class should be decertified).

### 2.   *LSW's Defense Also Depends Upon Pre-Sale Illustrations*

LSW has also argued that pre-sale illustrations "are not just part of Plaintiffs' affirmative case, they are also highly relevant to LSW's defense." Mem. at 8. Plaintiffs respond that illustration disclosures are common because all policyholders eventually receive them (*i.e.*, potentially after the sale). Opp. at 12.

However, LSW's merits defense depends on illustration *contents* that are not uniform or common. As further detailed below, Plaintiffs have now conceded that some policyholders received illustrations showing non-guaranteed values that were *lower* than what Plaintiffs contend those figures should have been in order to reflect volatility. This is powerful evidence to refute a volatility claim—how can a policyholder claim that LSW led him to underestimate the effect of volatility if even Plaintiffs' own model shows that the illustrated values were *more conservative* than the values Dr. Brockett's model would project?

---

[6] Even if policyholders have a default expectation about the rates at which IULs terminate (*i.e.*, surrender or lapse), LSW policies are on par with the industry. *Compare* Opp. at 12 (Plaintiffs allege LSW policies have a 90% lapse rate over life expectancy) *with* Brockett Dec. ¶ 44 (noting industry-wide average annual termination rate of 4.6%, which results in a 90% termination rate over 50 years).

This creates a need for individualized inquiry because the only way to know *which* illustrations yield this result is to find them, read them, and run Dr. Brockett's analysis on them—one by one, for over 40,000 class members.  LSW is entitled to put on that defense, even if it means that predominance is lacking as a result.  *See Dukes*, 131 S. Ct. at 2561 (2011) ("a class cannot be certified" where the defendant has individualized defenses); *Mazzei v. Money Store*, 288 F.R.D. 45, 68 (S.D.N.Y. 2012) ("the existence of individualized defenses can overcome predominance and defeat a motion for class certification[.]").

In any event, as detailed below, the timing of illustration receipt is critical and Plaintiffs cannot render it irrelevant by arguing that everyone receives an illustration at some point.  Just as Plaintiffs would like to show that disclosures came later in the process (or not at all), LSW will make a contrary showing that disclosures came early and often.

### 3. *Plaintiffs Cannot Adequately Represent the Class If They Abandon Pre-Application Illustrations*

Finally, even if Plaintiffs could, in principle, cobble together an illustration-free theory of liability, that would not salvage class certification because an intra-class conflict would emerge that destroys adequacy.  Plaintiffs can never change the facts that: (i) for some undefined portion of the class, pre-application illustrations were part of the sale process, and (ii) Plaintiffs are repeatedly on record asserting that pre-application illustrations add strength (indeed, are central) to the class claims—they describe pre-sale illustrations as the "centerpiece" of establishing liability.  SAC ¶ 3.

If Plaintiffs are correct, they are obligated to present that evidence on behalf of absent class members who received pre-application illustrations.  Class representatives are not at liberty to cast off the supposedly strongest claims of some class members in order to establish or preserve a class.  If they do, they come into conflict with class members, and become inadequate.  *See* Mem. at 8 (citing

*Cholakyan v. Mercedes-Benz*, 281 F.R.D. 534, 565 (C.D. Cal. 2012) (noting "concerns about … adequacy" where plaintiff's attorneys were willing "potentially to sacrifice individual class members' right to pursue the recovery of monetary damages" in order to preserve certification); *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (finding a disabling conflict between plaintiff's interests and those of the putative class where plaintiff chose to pursue only an economic injury theory, abandoning the personal-injury theory of absent class members)). Nothing in Plaintiffs' opposition alters this reality.

*First*, Plaintiffs' primary response—that they are not "required" to present evidence of pre-application illustrations—misses the point. Opp. at 11. The named Plaintiffs could in theory foreswear any piece of evidence or claim, but that does not salvage their adequacy, it destroys it. Plaintiffs cannot walk away from their repeated arguments that pre-application illustrations are integral to their claims. *See, e.g.*, Dkt. 43 at 29 ("LSW gave information about what returns the policy would generate based on an assumption of constant returns … this was misleading because LSW knew that S&P 500 returns would in fact be highly variable[.]"); Dkt. 94 at 21 ("LSW had a duty to disclose [the] relationship between the Tax Code and key policy features because the illustrations [allegedly] were likely to mislead consumers regarding the tax implications of the policy loan feature[.]"). Attorneys and class representatives who abandon strong—indeed, supposedly their strongest—arguments are inadequate. *See, e.g.*, *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 271 (S.D.N.Y. 2011) (noting that an adequacy concern would exist "where the class representatives had left aside the far stronger claims … and sought to have the weaker claims certified[.]"); *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 82 (M.D. Tenn. 2004) (collecting cases in which courts have held adequacy to be lacking "where the class representatives had left aside the far stronger claims … and sought to have the weaker claims

1  certified[.]").[7]  This is because the named Plaintiffs' inability to assert the

2  (supposedly) *best theory* for class members defeats certification.  *See Noonan v.*

3  *Ind. Gaming Co.*, 217 F.R.D. 392, 398 (E.D. Ky. 2003) (holding that adequacy was

4  lacking where it was "possible … based on the facts, [that] different legal theories

5  could best serve different members of the proposed class and offer different

6  chances of success" yet named plaintiff could not assert all of those theories).[8]

7          *Second*, Plaintiffs fare no better arguing that absent class members can

8  decide for themselves whether to stay in the class and live with a supposedly

9  weaker theory of recovery.  As a threshold matter, if there is an intra-class conflict,

10  the named Plaintiff is inadequate—no notice can cure that.  *See supra* (cases

11  finding inadequacy regardless of availability of notice).  Regardless, the class

12  notice does not inform absent class members that the named Plaintiffs intend to

13  pursue a theory of liability that ignores pre-application illustrations.  *Contra* Opp.

14  at 11.  To the contrary, an absent class member who visits the "LSW Class Action

15  Website" established by Plaintiffs will read a Second Amended Complaint that

16  refers to illustrations as the "centerpiece" of LSW's alleged deceptive scheme.

17  SAC ¶ 3.  She would naturally assume that evidence of pre-sale illustrations would

18  feature prominently—not be ignored in order to salvage class treatment.

19          *Third*, Plaintiffs cite only readily distinguishable cases for the proposition

20  that "plaintiffs are not required to advance claims that are not certifiable."  Opp. at

21  11 (citing *Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 265 (N.D. Cal.

---

23  [7] *See also In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 209
24  F.R.D. 323, 339-40 (S.D.N.Y. 2002) (collecting cases); *Pearl v. Allied Corp.*, 102
   F.R.D. 921, 923 (E.D. Pa. 1984) ("the plaintiffs' efforts to certify a class by
25  abandoning some of the claims of their fellow class members have rendered them
   inadequate class representatives.").

26  [8] For this reason, Plaintiffs' invocation of *res judicata* (Opp. at 11) is backwards—
27  the *res judicata* effect of this litigation is exactly why named Plaintiffs must pursue
   the theories that they have declared to be the strongest.  *Cf. Rogers v. Desiderio*, 58
   F.3d 299, 300 (7th Cir. 1995) (claim preclusion encourages plaintiffs to make all of
28  their arguments in a single proceeding, otherwise … "the first court will not have
   entertained all of the arguments, and the missing ones may have been winners.").

1978); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 669 (D. Kan. 2004)). *Sullivan* found no adequacy problem in abandoning entire claims because it followed the minority rule that absent class members with separate causes of action "unsuitable for class treatment can bring those claims on an individual basis, and [r]es judicata will not bar those claims because absent class members had no opportunity to litigate those issues in this lawsuit." *Sullivan*, 79 F.R.D. at 265.[9] Here, however, "Plaintiffs are not abandoning any claims," they are abandoning a theory in support their claims. Opp. at 11. Thus, there is no question that absent class members would be precluded from relitigating the Volatility and Tax Claims, if Plaintiffs lose on their new, far weaker theory.

In *Universal Services*, the court recognized that many courts have found adequacy problems where class representatives abandoned "stronger claims … and [sought] to have the weaker claims certified." 219 F.R.D. at 669. The *Universal Services* court distinguished its case as being one in which the plaintiffs "were not pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims." *Id.* Here, by contrast, Plaintiffs are abandoning the "centerpiece" of their theory. SAC ¶ 3.

*Finally*, Plaintiffs cannot alter the result by positing—for the first time after three years of litigation—that they could try to include *post-sale* illustrations in their proof. Opp. at 10. Doing so abandons the "bait and switch" theory on which this case advanced past the Rule 12(c) stage. *See* Dkt. 112 at 7. Plaintiffs long ago chose to focus their case only on the pre-application time period. *See, e.g.*, Dkt. 43 at 6 (arguing that "the UCL prohibits representations that are likely to bait or entice the buyer into purchase of a product" even where true disclosures are later made). They have thus taken the position that the purchase decision occurs at the time of

---

[9] This Court has followed the majority rule and held that the litigation of Class Claims will bar relitigation of the Subclass Claims. *See* Dkt. 353 at 34-35 (class and subclass claims are "premised on the same factual predicate, and as such, would be barred from relitigation").

application, and everything thereafter is irrelevant.  *See, e.g.*, *id.*; Dkt. 226 at 20 (arguing that materials provided at the time of Policy delivery are "irrelevant" because "later disclosures do not resolve faulty initial disclosures.") (internal quotations omitted); Fleming Dec., Ex. A at 11:19-20 ("We are not relying on the batch illustrations [*i.e.*, the illustrations delivered with the policy]").[10]  They cannot reverse course without undermining the Rule 12(c) ruling that got them to this point.  Dkt. 112 at 7.

Regardless, post-application illustrations are no substitute for pre-application illustrations.  If a policyholder made a purchase decision without ever seeing an illustration, then logic alone dictates that illustrations played no role in that decision.  At a minimum, Plaintiffs cannot seriously dispute that the probative value of pre- and post-application illustrations is very different.  Knowing *when* someone received an illustration is highly relevant to determining what they were told and when—and there is no common way to answer that question.

## B.   *Comcast* Requires Decertification

The Supreme Court's decision in *Comcast v. Behrend* also defeats certification because Plaintiffs have failed to show "that damages are capable of measurement on a classwide basis" by offering a common damages model that is "consistent with [their] liability case."  *See* Motion to Decertify at 9.  Nothing in the Opposition salvages Dr. Brockett's damage model.

### 1.   *Plaintiffs' Opposition Confirms That Dr. Brockett's Model Is Not "Consistent with [Plaintiffs'] Liability Case" Because He Awards Damages to the Undamaged*

*Comcast* requires Plaintiffs to proffer a damage model that is consistent with their theory of liability.  That requirement is unmet if the proffered model awards damages to undamaged class members.  *See In re Rail Freight Fuel Surcharge*

---

[10] Undoubtedly, this was a strategic decision to try to avoid LSW's argument that the policy document itself (often delivered after application) discloses everything that Plaintiffs claim was omitted.

*Antitrust Litig.*, 2013 WL 4038561, at *5 (D.C. Cir. Aug. 9, 2013) (*Comcast* standard would "shred the plaintiffs' case for certification" if model "detects injury where none could exist"). That is precisely what Plaintiffs' model does.

Plaintiffs now admit that Dr. Brockett's damage model awards damages to policyholders—including 14 policyholders from just the 99 in his sample—where PA (which Plaintiffs define as the value of the policy as it actually functions) *is greater than* PR (which Plaintiffs define as the value of the policy as represented). Opp. at 21-22; Brockett Opp. Dec. ¶ 5.[11] If PR is a lower value for a given policyholder, as Plaintiffs concede is true for some policyholders (Brockett Opp. Dec. ¶ 5), it means that the non-guaranteed values appearing in that policyholder's illustration were in fact *lower and more conservative* than the values that Dr. Brockett's Monte Carlo analysis suggests would have reflected volatility. Such policyholders are not damaged.

This approach creates a Rule 23(b)(3) predominance problem because (i) *Comcast* requires Plaintiffs to proffer a common damage model that calculates damages *in accordance with the theory of liability*; (ii) Plaintiffs' model does not do so because it awards damage to the undamaged; and (iii) thus they are left with no viable damage model, which is fatal under *Comcast*.[12]

Finally, Plaintiffs cannot avoid the certification problem by arguing for a theory of damage whereby supposedly misleading pre-application illustrations given to some policyholders yield the conclusion that everyone overpaid for the product. Opp. at 24. That would inappropriately award damages to people who

---

[11] This concession makes Plaintiffs' objections to LSW's Appendix (Dkt. 470-3) irrelevant. The objections are, in any event, improper. *See* L.R. 16-6.3 (rule provides for objections "in the Final Pretrial Conference Order," but not before); Dkt. 353 at 13 (evidence presented on "class certification need not be admissible at trial."); L.R. 16-2.6 (parties must "attempt to resolve any objections").

[12] Plaintiffs' reliance on *Leyva* (Opp. at 14) is misplaced. There, plaintiff introduced evidence into the record that defendant's computerized systems would enable the court to accurately calculate damages and related penalties for each claim and defendant's removal notice even performed the calculations. 716 F.3d 510, 514 (9th Cir. 2013). No such proof exists here, nor can it be proffered.

were not subjected to misrepresentation or wrongdoing.  *See Knapp v. AT & T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 945 (2011) (affirming denial of certification; "we do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice.").  The UCL does not allow restitution to a class member who suffered no harm.  *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 533 (S.D. Cal. 2011) (denying certification of UCL claim where "[i]ndividual inquiries and proof would … be required to determine whether the alleged 'unfair' conduct actually caused injury to each class member and to determine appropriate restitution."); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 229 (2012) (affirming dismissal of class allegations; "The intent of the section is to make whole, equitably, the [alleged] victim of an unfair practice.").[13]

> ### 2.   *Dr. Brockett Is Not Appropriately Measuring Actual Value*

Predominance is also lacking under *Comcast* because Plaintiffs' damage model is not consistent with their "actual value" theory of liability.  *Compare Comcast*, 133 S. Ct. at 1433 (damage model must be "consistent with [Plaintiffs'] liability case").  In its opening memorandum, LSW cited a raft of cases holding that "actual value" must be measured by reference to competitor products.[14]  In their Opposition, Plaintiffs do not deny that their model ignores competitor products.  The analysis ends there–Plaintiffs have not proffered a valid model of

---

[13] Plaintiffs' case otherwise collapses into the proposition that the price was simply too high.  That is not a cognizable claim.  *See, e.g., Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 264 (2003) (UCL "was not intended to eliminate retailers' profits by requiring them to sell at cost").

[14] The only authority that Plaintiffs cite in support of their approach—California Civil Code § 3343 (Opp. at 7)—is no help.  *See* § 3343(b)(1) ("nothing in this section shall . . . permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.")

actual value damages under California law.[15]

Plaintiffs also cannot alter the result by distorting this Court's prior rulings. This Court has never held that Plaintiffs are permitted to depart from a market-based approach to measuring actual value. To the contrary, Magistrate Judge Block held (and this Court affirmed) that actual value refers to *market value*. Dkt. 169 at 5; Dkt. 221 at 3.

Finally, Plaintiffs cannot avoid scrutiny of their model by claiming that LSW has prevented them from obtaining information about other insurance products. Opp. at 15-17 (arguments concerning course of discovery, and estoppel). Although LSW objected to the breadth of Plaintiffs' discovery requests, LSW voluntarily "*agreed to produce any documents constituting comparisons between LSW disclosures and those of other life insurance companies, as well as the underlying documents compared.*" Dkt. 84 at 47 (emphasis added).[16] Magistrate Judge Block accepted that proposal. Dkt. 99 at 2. Thus, Plaintiffs received whatever documents LSW had in its possession that compared disclosures for Paragon and Provider to those of competitors' products.[17] LSW also pointed out that Plaintiffs were free to serve third party subpoenas if they wanted more from other insurers. Dkt. 84 at 47.

### 3. Rescission Is Unavailable

Finally, in a last ditch effort to avoid decertification, Plaintiffs assert that

---

[15] Plaintiffs' model also inappropriately ignores how LSW and competitor products actually perform. *See In re Google AdWords Litig.*, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) (denying certification of UCL class where it was "difficult to calculate the actual value of what advertisers received" because "significant revenues and other benefits from ads placed on parked domains and error pages … would need to be individually accounted for in [calculating] restitution[.]").

[16] LSW made a relevance objection, which was appropriate because not every shred of paper concerning other insurance companies is needed for a competitive analysis of products. Dkt. 84 at 45, 47.

[17] When Plaintiffs renewed their request for documents concerning competitors' products, Dkt. 120 at 25-36, LSW objected because the requests were duplicative of the issue the parties resolved (*see supra*) and that such documents were equally available to Plaintiffs by way of subpoena. *See* Dkt. 120 at 29 n.19.

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO DECERTIFY, 10-CV-09198-JVS (RNBx)

"LSW ignores Plaintiffs' claim for rescission that is independent of Dr. Brockett's model." Opp. at 25. While Plaintiffs cite their prayer for recessionary relief, they cite no legal authority for the proposition that such relief is actually available. It is not. "[T]here is no authority supporting the remedy of rescission in a UCL action." *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1018 (2010). Further, Plaintiffs cannot obtain rescission on behalf of a class. *Schramm v. JPMorgan Chase Bank*, 2011 WL 5034663, at *12 (C.D. Cal. Oct. 19, 2011) ("a class-wide rescission remedy is not appropriate").

## III.   CONCLUSION

The Court should decertify the Class.


/s/ Jonathan A. Shapiro

Jonathan A. Shapiro

Jonathan A. Shapiro (257199)
Mintz Levin Cohn Ferris Glovsky
and Popeo PC
44 Montgomery Street
San Francisco, California  94104
Tel:    (415) 432-6000
Fax:    (415) 432-6001
JAShapiro@mintz.com

Andrea J. Robinson (pro hac vice)
Timothy J. Perla (pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
Tel:    (617) 526-6000
Fax:    (617) 526-5000
andrea.robinson@wilmerhale.com
timothy.perla@wilmerhale.com

Dated:        October 7, 2013

## CERTIFICATE OF SERVICE

I am a resident of the Commonwealth of Massachusetts, over the age of eighteen years, and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109.  On October 7, 2013 I served the within document(s):

> LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO DECERTIFY; DECLARATION OF JOEL FLEMING AND EXHIBITS THERETO

X        I electronically filed the document(s) listed above via the CM/ECF system.

Charles N. Freiberg
Brian P. Brosnahan
Jacob N. Foster
Jeanette T. Barzelay
KASOWITZ, BENSON, TORRES & FREIDMAN LLP
101 California Street, Suite 2300
San Francisco, CA 94111
cfreiberg@kasowitz.com
bbrosnahan@kasowitz.com
jfoster@kasowitz.com

Harvey R. Levine
Levine & Miller
550 West C Street, Suite 1810
San Diego, CA 92101
lmsh@levinelaw.com

Craig A. Miller
Law Offices of Craig A. Miller
225 Broadway, Suite 1310
San Diego, CA 92101
cmiller@craigmillerlaw.com

/s/ Joel Fleming
Joel Fleming

DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S REPLY IN SUPPORT OF MOTION TO DECERTIFY, 10-CV-09198-JVS (RNBx)