KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
CHARLES N. FREIBERG (SBN 70890)
BRIAN P. BROSNAHAN (SBN 112894)
JACOB N. FOSTER (SBN 250785)
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

LAW OFFICES OF CRAIG A. MILLER
CRAIG A. MILLER (SBN 116030)
225 Broadway, Suite 1310
San Diego, CA 92101
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiffs
JOYCE WALKER, KIM BRUCE HOWLETT,
and MURIEL SPOONER, on behalf of themselves
and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, and MURIEL SPOONER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation,<br><br>Defendant. | **CLASS ACTION**<br><br>CASE NO.: CV 10-9198 JVS (RNBx)<br><br>Formerly Case No.: 3:10-cv -04852 JSW<br>from Northern District of California<br><br>**PLAINTIFFS' SUBMISSION IN ADVANCE OF STATUS CONFERENCE**<br><br>Judge: James V. Selna<br>Date: May 6, 2014<br>Time: 9:30 a.m.<br>Courtroom: 10C |

Plaintiffs Joyce Walker, Kim Bruce Howlett, and Muriel Spooner ("Plaintiffs") respectfully submit the following statement in advance of the status conference scheduled for May 6, 2014 at 9:30 a.m.

## I. Resolution of the Fraudulent Concealment Claim Does Not Resolve the UCL Claims, And A Second Phase Is Needed to Address the 17200 Claims.

Despite acknowledging during trial that the 17200 claims are "broader" than the fraudulent concealment claim before the jury, LSW now takes a contrary position in light of the favorable verdict on the fraudulent concealment claim in an effort to deny Plaintiffs their day in court as to the UCL claims. LSW has asserted, without any supporting authority, that "[i]t seems to [LSW], given [Plaintiffs'] theory of the case, the resolution of the fraudulent concealment claim for all intents and purposes resolves the UCL claim." *See* Exhibit A hereto. Plaintiffs disagree for the following reasons.

### A. The Jury's Verdict on Fraudulent Concealment Does Not Resolve the UCL Claims, Which Are Governed By Materially Different Legal Standards.

The jury's verdict was specific to the fraudulent concealment claims. It has no application to the UCL claims, which have different elements. With respect to the fraudulent prong of the UCL in particular, a major difference is that there is no intent requirement under the UCL.[1] *See, e.g.,* May 5, 2011 Op., Dkt. 59, at 11 ("During the hearing, Plaintiffs argued that the UCL 'is far broader than common-law fraud in terms of the type of conduct that it prohibits,' and that disclosures in the Policy would be insufficient 'to cure deception in the [I]llustration.' This is a correct statement. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ('This prong of the UCL is governed by the reasonable consumer test: a plaintiff may demonstrate a violation by showing that reasonable members of the

---

[1] A complete discussion of the UCL claims and their elements should await plenary briefing in connection with the evidentiary phase discussed below.

public are likely to be deceived….*This deception need not be intended.*')" (emphasis added). Intent was a key issue in the jury trial that is irrelevant to the UCL claims that remain to be tried by the Court.

The elements required to satisfy the UCL unfairness prong also are different and broader than fraudulent concealment. To prove unfair conduct under the UCL, Plaintiffs need to prove that LSW engaged in "conduct 'whose harm to the victim outweighs its benefits.'" *See, e.g.,* May 5, 2011 Op., Dkt. 59, at 10; November 9, 2012 Class Cert. Op., Dkt. 353, at 8. There is no intent or duty to disclose requirement under the unfairness prong. *See, e.g., State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1102-03 (1996) ("The [UCL] imposes strict liability. It is not necessary to show that the defendant intended to injure anyone."); *Aguilar v. General Motors LLC*, 2013 U.S. Dist. LEXIS 104560, at *16 (E.D. Cal. July 25, 2013) (failure to establish duty to disclose warranted dismissal of UCL claim under the fraudulent prong, but did not warrant dismissal of plaintiffs' claims under the unfairness and unlawfulness prongs).

Likewise, the legal standard for Plaintiffs' remaining unlawfulness claim is distinct from the standard for fraudulent concealment. Plaintiffs concede that the jury verdict as to fraudulent concealment effectively resolves their unlawfulness claim on behalf of the Class, which was predicated on the common law of fraudulent concealment and Civil Code 1572, which codifies common law fraud. But Plaintiffs have an unlawfulness claim pertaining to the individual illustration-based claims that is predicated on Insurance Code Sections 330, *et seq.*, which, unlike common law fraud, does not require intent.

Accordingly, at a minimum, evidence offered during the jury trial concerning LSW's intent or lack thereof, or LSW's good faith, is irrelevant to the UCL claims that will be tried by the Court. Thus, for example, testimony by LSW witnesses that they believed they were complying with various regulations and evidence about other company practices (which were admitted only as to LSW's

intent and good faith) would be irrelevant for purposes of the UCL claims.

Another key difference concerns the individual illustration-based claims, which rely on a "bait and switch" theory pursuant to *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976). Unlike the fraud claim, under *Chern* and the bait and switch theory, the policy and other later disclosures – and the fact that the named Plaintiffs did not read their policies – are irrelevant. *See, e.g.* May 5, 2011 Op., Dkt. 59, at 11-12. Thus, even though the jury did not find that LSW committed fraudulent concealment with respect to the named Plaintiffs' individual illustration claims, the Court may find that LSW violated the UCL under Plaintiffs' bait and switch theory.

For example, with respect to the illustration's deceptive representation of minimum guaranteed interest, the Court may find that LSW's illustrations were likely to deceive, unlawful, or unfair – and as to Mr. Howlett and Ms. Spooner, the evidence in their favor on this issue is essentially uncontradicted.[2] The illustration represents that minimum guaranteed interested accumulates at 2.5% *every policy year*, and the numbers used in the illustration's Guaranteed Values reflect a true annual interest rate of 2.5%; there is no evidence that the agent, Mr. Cooper, told Mr. Howlett or Ms. Spooner that LSW actually calculates the 2.5% minimum guaranteed interest as an average lookback at termination of the policy because, as Mr. Cooper testified, even he thought that Mr. Howlett and Ms. Spooner would receive a minimum of 2.5% *every year* (*see* Apr. 16 Trial Tr. at 56:13-57:9, 80:24-81:5); and the disclosure in the policy (even assuming it is clear and conspicuous) is irrelevant under UCL bait and switch law. Thus, even though the jury did not find fraud when consideration of the effect of post-illustration documents was

---

[2] Plaintiffs acknowledge that Ms. Walker's agent, Jeffrey Stemler, testified that he told Ms. Walker how LSW actually calculates the minimum guaranteed interest, notwithstanding how it is represented in the illustration. Plaintiffs do not concede that this testimony was truthful, or that Mr. Stemler's oral statements to Ms. Walker were sufficient to cure LSW's deceptive presentation of the minimum guaranteed interest in the illustration.

allowed and intent to deceive was required, the Court should find on facts relevant to the claims that LSW violated the UCL.

The same is true for the claim concerning the Monthly Administrative Charge reduction.  All three Plaintiffs testified that they were deceived by LSW's depiction of the MAC reduction in the illustration as being the guaranteed price; there is no evidence that their agents disclosed to them that the reduction was not the guaranteed price; and Ms. MacGowan and other LSW witnesses testified that a policyholder would need to consult the policy to figure out that the MAC reduction is not guaranteed, but the policy is irrelevant under *Chern* (making this a classic "bait and switch").[3]  *See* Apr. 17 Trial Tr. at 221:8-224:6 (MacGowan); Apr. 22 Trial Tr. at 162:22-163:24 (Smith); Tivilini Dep. at 103-07.

Finally, regarding the undisclosed fees claim, all three Plaintiffs testified that they did not know that they would be charged policy fees in addition to the MAC, and they did not know the amount of those fees; the only evidence suggesting that their agents told them about additional fees is generic, is too late, and is not specific enough to overcome the "bait" of the illustration's representation that there is "One Policy Fee" and the illustration of only one fee, the Monthly Administrative Charge;[4] there is evidence and testimony from LSW witnesses indicating that the policy is LSW's "main" document for disclosing fees, making this a classic "bait and switch"; and there is no conceivable benefit to consumers or competition that outweighs the harm to consumers of not disclosing the fees in the illustration given that LSW's software is already programmed to be able to provide a specific breakdown of fee information (the "Optional Report") to policyholders

---

[3] Indeed, the pertinent illustration regulation as adopted in California requires that if it is not guaranteed, the reduction in the MAC must be described in the policy, but it is not, so Plaintiffs would prevail as a matter of law in any event because the policy, even if relevant, does not cure the deception in the illustration.  *See* Cal. Ins. Code § 10509.956(e)(3).

[4] In any event, the Court will need to assess the supposed oral disclosures regarding fees against the illustration's representations that there is "One Policy Fee," the Monthly Administrative Charge.

with its illustrations, which LSW could easily require be provided.

### B. Plaintiffs Seek to Introduce Evidence That the Court Excluded Under Rule 403 in the Jury Trial And, Depending on the Court's Rulings, May Offer Limited Live Testimony.

Not only are the elements for the UCL claims different from the fraud claims, but the evidence that the Court may consider in deciding whether LSW violated the UCL is also different. As discussed during the trial, Plaintiffs seek to introduce evidence during the UCL phase that the Court excluded pursuant to Rule 403 in the jury trial. In particular, Plaintiffs seek to submit the following evidence:

- The lapse/surrender statistics from Dr. Brockett's reports (*see* Opening Expert Report at ¶¶ 50-57; Rebuttal Expert Report at ¶¶ 52-56; Reply Expert Report at ¶¶ 143-72);
- The related LIMRA lapse/surrender statistics (*id.*);
- The Weber video (Exhibit 326) and associated exhibits (Exhibits 505-507 and 548);
- Exhibit 584 (relating to lapse and lapse/surrender statistics, as to which Plaintiffs were unable to fully question Ms. MacGowan);
- Exhibit 34 (the "hallucination" email) and related deposition designations;
- Exhibits 62, 398, 415, and 417 (relating to Monte Carlo simulations); and
- Exhibit 10 (relating to lapse, which Plaintiffs did not offer during the jury trial in light of the Court's prior rulings).

Assuming the Court admits all of the evidence above, Plaintiffs anticipate needing approximately a half-day of trial proceedings to put on live testimony from Dr. Brockett (relating to the lapse and lapse/surrender statistics) and live testimony from Craig Smith and/or Elizabeth MacGowan regarding some of the other exhibits that will be offered. Thus, to some degree, how much time the UCL trial will take depends on how the Court rules on the above materials and evidence that

were previously excluded on Rule 403 grounds. The time required for courtroom proceedings should be minimal, however, because testimony that is not unique to the UCL phase should have been submitted in the jury trial.[5] Testimony concerning evidence that is unique to the UCL phase (such as the evidence excluded from the jury trial under Rule 403) should not consume significant trial time.

Plaintiffs also intend to submit evidence regarding Dr. Brockett's four-year restitution calculations for the UCL class. If, however, there is no other need for Dr. Brockett to testify (for instance, if the Court does not admit the lapse/surrender evidence), then Plaintiffs do not see any reason why LSW would need to cross-examine Dr. Brockett regarding these figures because they were determined using the same model as damages for the fraudulent concealment claim, and LSW cross-examined Dr. Brockett at length about his model during the jury trial.

## II.   Timing of the UCL Phase.

Plaintiffs propose that the UCL phase, including written submissions and any in-court proceedings that may be necessary, take place during the first and second weeks of June, with any in-court proceedings to begin on Tuesday, June 10. If that date does not work, then Plaintiffs could be available for in-court proceedings on June 4, 5, 6, or 11 (or in July, as Dr. Brockett is unavailable from June 12-28). Plaintiffs' counsel have significant time commitments throughout the month of May that would make preparation for and participation in a UCL trial phase infeasible during the rest of this month.

## III.   A Rule 54(b) Judgment Is Not Appropriate In This Case.

Rule 54(b) provides that the court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if* the court expressly

---

[5] While initially suggesting that it might wish to examine Dr. Brockett separately with respect to the 17200 claims, LSW's counsel later confirmed that LSW would not need an additional opportunity to examine Dr. Brockett regarding the 17200 claims. *See* Apr. 11 Trial Tr. at 139:11-16.

determines that there is no just reason for delay." (Emphasis added).  Here, there is just reason for delay because a significant part of the evidence is the same for both the fraudulent concealment claim and the UCL claims, and the 17200 claim can be resolved expeditiously by the Court.  Efficiency would be further served by allowing any appeal as to the fraudulent concealment claims or the UCL claims to proceed together.  *See, e.g., Wood v. GCC Bend, LLC*, 422 F.3d 873, 882-83 (9th Cir. 2005) (in the context of Rule 54(b), "[a]bsent a seriously important reason, both the spirit of Rule 1 and the interests of judicial administration counsel against certifying claims or related issues in remaining claims that are based on interlocking facts, in a routine case, that will likely lead to successive appeals"); *Page v. Gulf Oil Corp.*, 775 F.2d 1311, 1313 n.2 (5th Cir. 1985) (Rule 54(b) was adopted "to avoid injustice, not to overturn the settled rule against piecemeal appeals" and should not be granted routinely); *Lapin v. La Maur, Inc.*, 11 F.R.D. 339, 340 (D. Minn. 1951) (purpose of Rule 54(b) is to avoid possible injustice which might be occasioned by delay in entry of final judgment on distinctively separate, determined claims by awaiting determination of the entire controversy).

Respectfully submitted,

DATED:  May 5, 2014            KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By:   /s/Brian P. Brosnahan
   CHARLES N. FREIBERG
   BRIAN P. BROSNAHAN
   JACOB N. FOSTER

# EXHIBIT A

**Jeanette T. Barzelay**

| | |
|---|---|
| **From:** | Martens, Matthew T. [Matthew.Martens@wilmerhale.com] |
| **Sent:** | Tuesday, April 29, 2014 1:32 PM |
| **To:** | Brian P. Brosnahan; Charles N. Freiberg; Jeanette T. Barzelay; Jacob N. Foster |
| **Cc:** | Perla, Timothy; Robinson, Andrea; Lux, James; Moskowitz, Seth A.; Monahan, Caitlin W.; Boyle Jr, Brian J. |
| **Subject:** | Walker, et al. |

Brian,

In anticipation of our status conference next week, I wanted to confer in advance regarding any remaining litigation regarding the UCL claim. It seems to me that, given your theory of the case, the resolution of the fraudulent concealment claim for all intents and purposes resolves the UCL claim. If you disagree, could you please let me know your basis for your view?

Regards,
--Matt

**Matthew T. Martens\* | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6921 (t)
+1 703 887 1976 (c)
+1 202 663 6363 (f)
matthew.martens@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

1