Jonathan A. Shapiro (257199)
jonathan.shapiro@bakerbotts.com
Baker Botts LLP
101 California Street, Suite 3600
San Francisco, California 94111
Tel: (415) 291-6200
Fax: (415) 291-6300

Andrea J. Robinson (*pro hac vice*)
andrea.robinson@wilmerhale.com
Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
James T. Lux (*pro hac vice*)
james.lux@wilmerhale.com
Wilmer Cutler Pickering Hale
    and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000

Matthew T. Martens (*pro hac vice*)
matthew.martens@wilmerhale.com
Wilmer Cutler Pickering Hale
    and Dorr LLP
1875 Pennsylvania Ave. NW
Washington, DC  20006
Tel:  (202) 663-6000
Fax: (202) 663-6363

Attorneys for Defendant Life Insurance
Company of the Southwest

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOYCE WALKER, KIM BRUCE HOWLETT, MURIEL SPOONER, TALINE BEDELIAN, and OSCAR GUEVARA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, and DOES 1-50<br><br>        Defendant. | Case No.: CV 10-9198-JVS-JDE<br><br>**DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE REGARDING "GUARANTEED VALUES" INJURY UNRELATED TO A DEFINITION**<br><br>Judge:      Hon. James V. Selna<br>Date:        November 27, 2018<br>Time:        8:00 a.m.<br>Courtroom: 10C |

Defendant Life Insurance Company of the Southwest ("LSW") hereby moves this Court for an order *in limine* precluding Plaintiffs Joyce Walker, Kim Bruce Howlett, Muriel Spooner, Taline Bedelian, and Oscar Guevara ("Plaintiffs") from offering testimony or evidence purporting to establish an injury related to their claim for violation of Cal. Ins. Code 10509.956(b)(4) that is not specifically caused by the alleged absence of a definition of the phrase "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%."[1]

Plaintiffs have already tried (and lost) a case asserting that they were misled, generally, by their illustrations into believing that their Provider or Paragon policies would guarantee them 2% or 2.5% annual cash value accumulation.  That verdict was affirmed on appeal.  What remains on remand is far narrower—a claim that LSW violated the Illustration Statute by failing to define the phrase "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%."  However, Plaintiffs have indicated that they will try to establish injury that is not limited to that caused by the absence of a definition, but is rather based on allegedly being misled about the nature of the guarantee by other aspects of the illustration, other documents, and even oral representations.

Plaintiffs' more general allegations of having been deceived regarding guaranteed values, however, have already been rejected by this Court.  Moreover, Plaintiffs' UCL claims require a specific nexus between the allegedly unlawful conduct — here, the alleged lack of a brief definition — and the required injury in fact.  Therefore, evidence purporting to show that Plaintiffs were misled regarding guaranteed values untethered to the alleged absence of a brief definition is

---

[1] Also submitted herewith is the Declaration of Timothy Perla in Support of LSW's Motions *in Limine* Nos. 1-3, which attaches all exhibits cited in LSW's three motions *in limine*.  The exhibits cited herein are cited as "Ex. []."

irrelevant and a waste of time, and must be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.

## I.   BACKGROUND

Plaintiffs' 2014 trial included a "guaranteed values" claim, which the Court classified as follows:

> [Plaintiffs assert] that they were misled because their illustration did not disclose that the annual floor on indexed credits for Provider and Paragon was zero percent (with retrospective guaranteed growth), rather than an annual floor of 2-2.5 per cent.

Order Regarding Post-Jury Trial UCL Proceedings, Dkt. 791 ("UCL Order") at 42. In support of this claim, Plaintiffs introduced evidence during the prior trial purporting to show that each of them was led to believe, by their illustrations and oral conversations with their agents, that the policies would guarantee 2% or 2.5% every year, rather than guaranteeing 0% per year with additional retrospective guaranteed accumulation. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Dkt. 785 ¶¶ 382-389, 413-416, 457-464, 540-547, 578-583, 595(d).

Both the jury and the Court rejected Plaintiffs' guaranteed values claim, concluding that, among other things, policy illustrations did in fact disclose the 0% floor, that agents also described the floor, and that other documents (such as the policy contract and buyer's guides) provided further explanation of how policy guarantees work. *See, e.g.*, UCL Order at 67-70. This verdict was affirmed on appeal in its entirety.

The Ninth Circuit did, however, remand one "narrow issue" — "UCL claims based on violations of the Illustration statute." Order Granting Plaintiffs' Motion for Clarification and Denying Plaintiffs' Request that the Court Grant Plaintiffs' Motion for Summary Judgment, Dkt. 939 at 4. Following summary

judgment, only two purported violations remain, including an assertion that LSW violated Cal. Ins. Code 10509.956(b)(4) by failing to include a "brief definition" of the phrase "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%" in the Provider and Paragon illustrations, respectively.  *See* Cal. Ins. Code 10509.956(b)(4) ("A basic illustration shall include . . . a brief definition of column headings and key terms used in the illustration"); *see also* Feb. 12, 2018 Hr'g Tr., Dkt. 892 at 8:11-20 (Court noting that only "very narrow" and "discrete" issues have emerged from summary judgment).

Plaintiffs, however, have never explained how they could be injured specifically by the absence of such a "brief definition."  Instead, Plaintiffs revert once again to the general assertions that they tried in 2014, claiming that their illustrations as a whole left them with an incorrect impression of how policy guarantees would function.  For example, Joyce Walker testified at her deposition that her understanding that "the 2 percent guarantee was going to be applied to [her] policy on an annual basis" was based on "being shown an annual illustration" and that she "could make no other assumption [than] that [guarantees] would be anything other than yearly, since I'm being shown figures – different figures in each policy year."  Ex. A, 2018 Walker Tr. at 35:15-24.  When asked further to identify any particular language in the illustration that indicated the policy guaranteed annual 2% growth, she testified "it is my understanding that it was annually.  And I'm not sure where it is in the illustration . . . .  But I believe that that is what it was indicated to be annually."  *Id.* at 39:9-23.  She continued, asserting that she assumed the guarantee was annual because the illustration *as a whole* was presented with annual values:

> Everything that -- everything that this policy illustration talked about
> was annual. Everything was annual. Every conversation I had was
> about annual. It wasn't about retrospective. It wasn't about anything

other than annual. Is the word -- there's annual -- there's annual used in -- annual loan, annual income. Guaranteed annual cash flow. Annual is sort of -- annual planned payment. There is annual everywhere on this.

. . .

I would just have to say it again. The whole thing is based on a policy year. The illustration shows me policy years. The way it was transcribed to me was policy year. That, to me, says annually.

*Id*. at 39:25-41:23.

Ms. Walker also claimed that her alleged misunderstanding was informed by "how [the guarantee] was presented to [her] orally every single time [she] had a conversation with [her agents] Mr. Botkin and Mr. Stemler." *Id*. at 43:8-18; *see also id. at* 49:2-18, 148:6-24. Ms. Walker's deposition testimony mirrors declarations that she has submitted following remand. Ms. Walker's declarations do not even use the word "definition" or any of its derivatives in describing how she was harmed by the depiction of guaranteed values. *See, e.g.*, Decl. of Joyce Walker in Support of Pls' Mot. for Class Certification, Dkt. 915.[2] Instead, she recites testimony she already gave at trial in 2014, claiming that she generally "understood from the October 3, 2007 illustration that this was an annual interest rate." *Id*. ¶ 4.

This pattern is not unique to Ms. Walker. Each of the named Plaintiffs has articulated injury relating to illustrated depictions of guaranteed values in different ways, but none has articulated injury tied specifically to the purported absence of a definition. Mr. Howlett and Ms. Spooner, for example, follow Ms.

---

[2] In their trial plan, Plaintiffs have identified this declaration as reflecting the testimony that they intend to offer to show injury at trial because Plaintiffs "understood the minimum guaranteed interest rate to be a true annual rate and that it was a substantial factor in their decision to purchase the policies." *See* Pls' Trial Plan in Support of Mot. for Class Certification, Dkt. 916-5 at 8.

Walker in relying on the same testimony and assertions that they presented at trial in 2014, claiming generally that they "understood the guaranteed interest feature to mean that [they] would always earn a minimum of 2.5% every year."  *See* Decl. of Kim Bruce Howlett in Support of Pls' Mot. for Class Certification, Dkt. 912 ¶ 4.  Ms. Bedelian said that her understanding of how policy guarantees work was based upon language in the illustration other than the phrase that Plaintiffs claim was not defined, oral conversations with her agents, and a presentation that she attended put on by her agents before she had ever seen an illustration.  Ex. F, Bedelian Tr. at 234:14-237:9.  And Mr. Guevara testified that he understood the guarantees to operate in a fashion entirely different from Plaintiffs' theory, claiming that he thought he was guaranteed 2% over and on top of any annual S&P 500 growth based entirely on oral conversations with his agents.  Ex. G, Guevara Tr. at 186:6-190:1.

## II.   ARGUMENT

### A.   Evidence Asserting Injury Generally Arising From The Illustration Is Irrelevant Because The Court Has Already Rejected Plaintiffs' Claim To Being Misled By The Illustrations Generally

To succeed on their UCL claims at the forthcoming trial, each of the Plaintiffs will have to prove that he or she "suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code 17204.  Of relevance to this motion, the "unfair competition" means the use of a "basic illustration" for their insurance policies that allegedly did not include a "brief definition" of the "key term" "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%."  Cal. Ins. Code 10509.956(b)(4).

In the Ninth Circuit, a court is "ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case" by

1   the law of the case doctrine.  *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir.

2   2012) *see also Sec. Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir.

3   1996); (same).  The law of the case doctrine "promotes the finality and efficiency

4   of the judicial process by protecting against the agitation of settled issues."

5   *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

6           The binding character of these earlier findings is only enhanced where, as

7   here, they have been reviewed and affirmed by the Ninth Circuit.  *United States v.*

8   *Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (under mandate rule, "whatever was

9   before [the Ninth Circuit] and disposed of by its decree, is considered as finally

10  settled" and cannot be varied or revisited "even for apparent error").  Thus, this

11  Court "could not revisit its already final determinations unless the mandate [from

12  the Ninth Circuit] allowed it."  *United States v. Cote*, 51 F.3d 178, 181 (9th Cir.

13  1995).

14          The Court has already rejected Plaintiffs' claim that they were generally

15  "misled because their illustration did not disclose that the annual floor on indexed

16  credits for Provider and Paragon was zero percent (with retrospective guaranteed

17  growth), rather than an annual floor of 2-2.5 per cent."  UCL Order at 42, 67-70.

18  That judgment was appealed and affirmed by the Ninth Circuit.  As such,

19  Plaintiffs' opportunity to prove injury arising generally from the annual

20  presentation of values in their illustrations, or other language in the illustration, or

21  their general assumptions and understandings, or the oral conversations they may

22  have had with their agents, has come and gone.  The Court now lacks jurisdiction

23  to find that they have been misled by any of this, even if its prior ruling could be

24  shown to contain "apparent error."  *Thrasher*, 483 F.3d at 981.  Therefore, all

25

26

27

28

such evidence cannot be "of consequence in determining the action." Fed. R. Evid. 401. It is therefore irrelevant and not admissible. Fed. R. Evid. 402.[3]

Plaintiffs cannot avoid this bar by asserting that the general proof they now intend to put forth is somehow different from what was previously presented. The law of the case prevents not only the re-litigation of claims previously decided, but also precludes Plaintiffs from trying to present new theories or evidence going to the same issues that it already litigated. The Ninth Circuit has said it is "clear" that "a party cannot revisit theories that it raises but abandons . . . . By the same token, a party cannot offer up successively different legal or factual theories that could have been presented in a prior request for review." *Vigman*, 74 F.3d at 937 (internal quotation marks and citation omitted). Plaintiffs thus face a double-bind in seeking to assert that they have been deceived generally by their illustrations, other documents, or oral conversations in this proceeding. Either such evidence was presented at an earlier stage, in which case it was "subsumed within [the judgment], and thus is law of the case," or else it was "abandoned on appeal, and therefore is waived." *Id*. Either way, such testimony has no evidentiary value at this stage in the proceeding and must be excluded.

## B. Evidence Asserting Injury Generally Arising From The Illustration Is Also Irrelevant Because The UCL Requires Proof Of Injury Specifically Tied To The Allegedly Unlawful Conduct

Even if Plaintiffs could use the forthcoming trial to end-run the Court's prior, binding findings, the general evidence of injury they seek to introduce is irrelevant to the causation element of their UCL claim. "[T]he phrase 'as a result of' in the UCL imposes a causation requirement; that is, the alleged unfair

---

[3] Even if the evidence Plaintiffs seek to introduce was relevant, it should still be excluded as cumulative and a waste of time pursuant to Rule 403.

competition must have caused the plaintiff to lose money or property." *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 467 (Cal. Ct. App. 2008).  This requires more than "a mere factual nexus between the [defendant's] conduct and the consumer's injury." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 687 (Cal. Ct. App. 2010).  The injury must tie back to the specific conduct prohibited by law; "there must be a causal connection between the harm suffered and the unlawful business activity." *Daro v. Superior Ct.*, 61 Cal. Rptr. 3d 716, 729 (Cal. Ct. App. 2007).

"That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law," and so "a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party." *Id.*  As the Court has repeatedly found, given the nature of the allegations Plaintiffs are making, this causal chain requires that Plaintiffs prove reliance on the specific unlawful conduct—that is, reliance on the absence of a definition of the phrase "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%." *See, e.g.*, Order Granting in Part and Denying in Part Parties Motions for Summary Judgment, Dkt. 874 at 7-10.

As noted above, Plaintiffs have indicated that they will seek to introduce evidence that goes far afield of the specific causal connection required in a UCL case.  Instead, Plaintiffs have asserted that they harbored some generalized misunderstanding of how the guarantee feature on their policies worked, and that this misunderstanding emerged from the annual presentation of values in their illustrations, or other language in the illustration, or their general assumptions and

understandings, or the oral conversations they may have had with their agents.[4] Tellingly, not a single Plaintiff claimed at deposition to have taken any steps to try to learn the definition of the phrase "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%" in his or her illustration after having come across it.

These claims of a generalized misunderstanding have no tendency to make the material fact — whether Plaintiffs were specifically injured by the alleged absence of a definition — any more or less likely; they are therefore irrelevant and must be excluded. Fed. R. Evid. 401, 402. Moreover, even if Plaintiffs were able to string together some tangential relationship between the things their agents told them and their own misunderstandings, this tenuous connection would bear so little evidentiary value that it would be substantially outweighed by the time that would be wasted litigating Plaintiffs' generalized misunderstandings in a case that is, by the Court's own framing, exceedingly narrow. Order Granting Plaintiffs' Motion for Clarification and Denying Plaintiffs' Request that the Court Grant Plaintiffs' Motion for Summary Judgment, Dkt. 939 at 4. Accordingly, such evidence must be excluded. Fed. R. Evid. 403.[5]

## III. CONCLUSION

For the foregoing reasons, LSW respectfully requests that the Court issue an order precluding Plaintiffs from introducing evidence asserting injury related

---

[4] Plaintiffs cannot claim that this evidence is relevant because a brief definition would have prevented them from being misled by any of these sources. Among other things, the Court has already rejected the premise of such a claim — that Plaintiffs were misled by their illustrations generally or by oral conversations with their agents. *See supra*.

[5] "Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power." *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (same).

to "Guaranteed Values at 2.00%" or "Guaranteed Values at 2.50%" that is not tied specifically to the alleged lack of a definition of those terms.


Dated: October 30, 2018                    LIFE INSURANCE COMPANY OF THE
                                           SOUTHWEST
                                           By its attorneys,


                                           */s/ Timothy Perla*_____

                                           Andrea J. Robinson (*pro hac vice*)
                                           Timothy J. Perla (*pro hac vice*)
                                           Matthew T. Martens (*pro hac vice*)
                                           James T. Lux (*pro hac vice*)
                                           WilmerHale LLP

                                           Jonathan A. Shapiro (257199)
                                           Baker Botts LLP